IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| **GREEN COPPER HOLDINGS, LLC** | ) | **CASE NO. 25-10088-T** |
| EIN # xx-xxx9708 | ) | Chapter 7 |
| | ) | |
| | ) | |
| **Debtor.** | ) | |

**TRUSTEE'S NOTICE AND MOTION FOR ORDER AUTHORIZING BIDDING PROCEDURES AND TERMINATION FEE AND NOTICE OF OPPORTUNITY FOR HEARING**

Comes now the Trustee and states:

1. The principal assets of this estate are an iconic Frank Loyd Wright structure and related real property located at 510 Dewey Avenue in Bartlesville, Oklahoma, referred to as the *Price Tower* and all personal property located therein as of the date these proceedings were commenced ("*Personalty*").

2. The Trustee has entered into an Asset Purchase Agreement ("APA") with McFarlin Building LLC ("McFarlin"), an Oklahoma limited liability company, for the purpose of selling *Price Tower* and the *Personalty* free and clear of all claims, encumbrances and interests pursuant to 11 U.S.C. § 363(b) for **$1.4 million.** Attached hereto as **Ex A** is a copy of the APA. As noted, the APA identifies McFarlin as a "Stalking Horse Bidder" and the initial offer from McFarlin of $1.4 million as the "Stalking Horse Bid." The APA is additionally subject to certain proposed "Bidding Procedures" which are subject to approval by this Court. Attached hereto as **Ex B** is the proposed "Bidding Procedures" which will govern the process for submitting competitive bids for sums higher than the Stalking Horse Bid and ultimately a private auction in the courtroom. Finally, the APA and

related Bidding Procedures provide for a "Termination Fee" to be paid to McFarlin in the event McFarlin is not the successful bidder.

3. As also noted in the APA, the Frank Lloyd Wright Building Conservancy, an Illinois not-for-profit corporation filed a Conservation Easement. Attached hereto as **Ex C** is a copy of that Easement. The Trustee makes no representations of any kind with respect to the terms and enforceability of the Easement.

4. **Bidding Procedures:** As noted in **Ex B,** it is proposed that the Trustee provide: notice of the APA to all necessary and interested parties including prospective bidders; notice of deadlines for submitting competitive bids; and notice of an auction in the court room involving McFarlin and any qualified bidders. Trustees are entitled to use their discretion and business judgment in determining how to conduct a sale of assets. See *In re Sunland Inc.* 507 B.R. 753 (Bankr. New Mexico 2014). Bidding procedures are intended to ensure maximum value through a fair competitive bidding process. See *In re C.S. Mining LLC* 574 B.R. 259 (Bankr. Utah 2017). Attached as **Ex D** is the Declaration of the estate's expert David R. Payne ("Payne") with respect to the reasonableness of the proposed Bidding Procedures which are intended to ensure a fair and competitive process that will maximize the value of the subject assets.

5. **Termination Fee:** The proposed Termination Fee is 3% of the Stalking Horse Bid or **$42,000** plus reimbursement of expenses totaling $30,286.04. Termination Fees are intended to encourage a potential purchaser to make an initial bid which may be used to attract higher bids. See *In re Twenver* 149 B.R. 954 citing *In re Integrated Resources Inc.* 135 B.R. 746, 750 (Bankr. S.D.N.Y. 1992). In *Off. Comm. Of Unsecured Creditors v.*

*Bouchard Transp Co.* (In re Bouchard Transp Co.) 74 F.4th 743, 752, the court discussed the benefits to the bankruptcy estate of termination fees:

"Furthermore. The break-up fee and expense reimbursement provided numerous benefits to the estate. First, by securing Hartree's participation as the stalking horse bidder, it helped Bouchard avoid a 'naked auction' auction. When an auction begins with no known bidder, the debtor risks receiving no offers or being forced to sell its assets below market value. As Bouchard's investment banker testified, that concern animated the decision to negotiate with Hartree. With just hours to go before the sale, there was a real risk of a naked auction. By getting Hartree to set a floor price, Bouchard secured value for the estate."

In the matter of *In re JW Res. Inc.* 536 B.R. 193, 195 (E.D. Kentucky 2015), the court addressed the purpose of break-up fees:

"The purpose of a break-up fee is to induce the stalking horse bidder to enter into and pursue a transaction through an auction and closing. (authorities omitted). The stalking horse bidder spends substantial time and money performing due diligence and negotiating an agreement. In bankruptcy auctions subsequent bidders will often forego due diligence because they gain the required comfort from the willingness of the stalking horse bidder to enter into the proposed agreement."

Again, the Trustees should be afforded broad discretion in the exercise of their business judgment in deciding matters related to a Termination Fee. See *Bouchard* supra at 750.

Payne's expert report likewise establishes the benefit to the estate of the proposed Termination Fee. As noted in Payne's report, the proposed fee is particularly applicable to the instant case given the uniqueness of the assets and the time and expense need to value the assets.

6. The Trustee asserts that the proposed Bidding Procedures and Termination Fee are reasonable and necessary and intended to maximize the value to the estate.

7. **NOTICE OF OPPORTUNITY FOR HEARING - Your rights may be affected. You should read this document carefully and consult your attorney about your rights and the effect of this document. If you do not want the Court to grant the requested relief,**

**or you wish to have your views considered, you must file a written response or objection to the requested relief with the Clerk of the United States Bankruptcy Court for the Northern District of Oklahoma, 224 South Boulder, Tulsa, Oklahoma 74103 no later than ten (10) days from the date of filing of this request for relief. You should also serve a file-stamped copy of your response or objection to the undersigned movant/movant's attorney [and others who are required to be served] and file a certificate of service with the Court. If no response or objection is timely filed, the Court may grant the requested relief without a hearing or further notice. The 10-day period includes the three (3) days allowed for mailing provided for in Fed. R. Bankr. P. 9006(f).**

Respectfully Submitted By:    s/ Patrick J. Malloy III
Patrick J. Malloy III, OBA #5647
MALLOY LAW FIRM, P.C.
401 S. Boston Ave. Suite 500
Tulsa, Oklahoma  74103
Telephone:    918-699-0345
Fax:          918-699-0325
*ATTORNEYS FOR TRUSTEE*