**EXHIBIT D**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| In Re: ) | |
| ) | |
| **GREEN COPPER HOLDINGS, LLC** ) | Case No. 25-10088-T |
| ) | Chapter 7 |
| ) | |
| **Debtor.** ) | |

## DECLARATION OF DAVID PAYNE

David Payne, states the following in support of the Notice and Motion filed by the chapter 7 trustee ("Trustee") for Green Copper Holdings, LLC, (the "Estate" or "GCH") for Trustee's Motion For An Order (A) Authorizing Bidding Procedures In Connection with the Sale of Substantially All of the Estate's Assets (B) Authorizing And Approving A Termination Fee In Connection With A Stalking Horse Real Estate Purchase Agreement ("APA").

Subsequent to the commencement of these proceedings I was retained, pursuant to an order of the Bankruptcy Court, as the Trustee's Bankruptcy Financial Advisor ("FA"). My duties as FA included evaluating and advising the Trustee regarding a sale process and related procedures to maximize the recovery of the estate. As part of my evaluation, I evaluated the benefit, cost and terms associated with selecting a stalking horse buyer.

During the course of my professional career, I have worked as a principal, officer and advisor to a substantial number of real property companies ("Companies"). Beginning in 1982 I served as a chief accounting officer of Amarex, Inc., a publicly traded Company, debtor-in-possession (Case No. BK-82-02335(A)). I have experience with hotels and real property companies, cash management, budgeting, real estate and working capital financing, sale process procedures and reorganization economic tests including feasibility, ability to pay and absolute priority. I have been a fiduciary officer, court appointed trustee, court appointed receiver, chief executive officer and/or financial advisor of real property companies. I have participated in over

1

five hundred (500) chapter 11 and chapter 7 proceedings and am familiar with the business aspects of undertaking a sale process and negotiating business terms in asset purchase agreements. . I have been involved in stalking horse auction sales in a number of chapter 11 and chapter 7 proceedings and as a court appointed receiver of real estate companies, based upon principles set forth in § 363 of the Bankruptcy Code.

I have reviewed the Trustee's negotiations and believe the Trustee and proposed Stalking Horse Buyer, McFarlin Building LLC ("McFarlin") have negotiated and agreed in good faith to the terms and conditions of the Stalking Horse APA, a copy of which is attached as **Ex A** to the Motion. Pursuant to the APA the Trustee proposes to sell to McFarlin the Assets described in the APA, which constitute substantially all of the Debtor's assets in exchange for a cash offer in the amount of $1,400,000.00. Such Sale will be free and clear of all liens, claims, and encumbrances to the fullest extent permitted by section 363(f) of the Bankruptcy Code.

Under the terms of the APA, McFarlin is obligated to deliver to the Trustee an earnest money deposit of $140,000 within two (2) days of the entry of the order approving the Motion. Thereafter the Trustee shall file a motion and separate notice to sell pursuant to the APA and the related bidding procedures which are attached as an exhibit to the Motion

The Motion includes a request for an order approving the payment of a Termination Fee to McFarlin in the event he is not the successful bidder. The proposed termination fee includes a breakup fee of 3% of McFarlin's initial bid of $1.4 million or $42,000 and expense reimbursement in the amount of $30,286 (which is substantially less than the actual, out-of-pocket expenses that McFarlin represents it has already incurred and paid) The total proposed Termination Fee is $70,286.00. I have reviewed the proposed bidding procedures including the proposed Termination Fee and the APA and am fully aware of the terms and conditions

proposed. The purpose of the Termination Fee is: (a) to reimburse McFarlin for a portion of the expenses it has already incurred and will continue to incur in connection with the proposed Sale, (b) to compensate McFarlin for the substantial time, effort and cost it has and will continue to expend as a prequalified purchaser, and (c) to establish a floor and safety net against which competing bids can be measured at the Auction. Based upon my experience the Trustee's request for approval of the Termination Fee is an appropriate exercise of the Trustee's business judgment. Considering the value to the Debtor's Estate of the proposed sale transaction, which consists of a minimum purchase price of $1,400.000.00, the Termination Fee represents approximately 5.0% of the total value of the transaction to Debtor's estate and its creditors, and Trustee submits is well within the range of reasonable fees that have been approved by courts in connection with similar transactions throughout the country. Moreover, the Termination Fee payment will be more than offset by the increased purchase price for the Purchased Assets if the Purchased Assets are not sold to McFarlin. Finally, the Price Tower Property is fairly unique based upon its design, restrictions and contents which generally requires greater due diligence, time and expenditures in order to submit an APA and/or a bid.

    With my assistance, the Trustee has negotiated the terms of the APA and the proposed bidding procedures. The proposed Termination Fee is intended, in part, to induce McFarlin to make a firm agreement to purchase the Real Property and to maximize the possibility of other potential bidders making competing bids. Accordingly, in my opinion it is reasonable for the Court to enter an order approving the proposed bidding procedures set forth in **Ex B** attached to the Motion and to authorize and approve the proposed Termination Fee specified in the Bidding Procedures.

In my opinion, it is in the best interests of the bankruptcy estate and all necessary and interested parties for the Trustee to pursue the sale of the described assets pursuant to the terms and conditions of the proposed APA and related Bidding Procedures. creditors to pursue a sale of the Purchased Assets under sections 105, 363 and 365 of the Bankruptcy Code. In my opinion, marketing for higher and better offers and conducting the Auction will enable the Trustee to maximize value for all creditors.

In my opinion the process for the proposed sale of assets described in the APA and the Bidding Procedures is fair and reasonable in this case and is consistent with similar auctions in other cases in which I have participated.

FURTHER DECLARANT SAIETH NOT.

*David R. Payne*
David R. Payne

STATE OF OKLAHOMA    )
                     )
COUNTY OF OKLAHOMA )

        Subscribed and sworn before me, the undersigned Notary Public, this 12th day of March, 2025.

My commission expires:

7/12/26
(Seal)

Notary Public

ROZETTA A. BISHOP
NOTARY
# 06006709
EXP. 07/12/26
PUBLIC
STATE OF OKLAHOMA