1

IN THE UNITED STATES BANKRUPTCY COURT FOR
THE NORTHERN DISTRICT OF OKLAHOMA

| RE: GREEN COPPER HOLDINGS, LLC (EIN # xx-xxx9708 ) CASE NO. 25-10088-T Chapter 7 | Case No.: 25-10088-T |
|---|---|

**MOTION FOR JUDICIAL NOTICE OF PUBLIC STATEMENTS ATTRIBUTED TO ATTORNEY CRAIG ALAN BRAND BY US PUBLIC MEDIA COMPANY GANNETT (GCI) AND RELATED MATTERS DEMONSTRATING PRIMA FACIE EVIDENCE OF FRAUDULENT MISAPPROPRIATION VIA PREMEDITATED INTENT**

---

**COMES NOW,** the undersigned interested party, who has previously filed NOTICE of Appearance sent on 17March2025, via USPS Certified Mail: 9214 8901 4298 0415 3438 78; in the above-referenced bankruptcy matter, and hereby respectfully petitions this Honorable Court to take judicial notice, pursuant to Federal Rule of Evidence 201, of certain public declarations ascribed to Attorney Craig Alan Brand, as disseminated by Gannett Media Corporation ("Gannett"), a publicly traded entity under the ticker symbol GCI. Furthermore, the undersigned implores the Court to meticulously evaluate the ramifications of these declarations within the purview of the extant bankruptcy proceedings. Notably, these public pronouncements, emanating from an Officer of the Court bound by the ethical imperative of veracity in all communications, ostensibly implicate Cynthia Diane Blanchard (née French), the control person of the purported debtor entity, Green Copper Holdings LLC, in a deliberate and premeditated stratagem to denude a museum and National Historic Landmark of its equity and assets. Such actions are purportedly in direct contravention of Internal Revenue Service Code regulations, as well as

state and federal statutes, particularly given reports of the institution's receipt of federal funding. In substantiation, the movant articulates as follows:

## I. INTRODUCTION

1. **BACKGROUND:** This motion emanates from profound apprehensions concerning the conveyance and administration of assets pertaining to Price Tower Arts Center Inc., a public non-profit organization that has ostensibly received considerable public funding. The transaction in question involves the anomalous transfer of a National Historic Landmark, inclusive of a museum and multiple operational enterprises, for the nominal consideration of $10.00 (ten U.S. dollars). Recent journalistic investigations have illuminated potential irregularities in the ownership transfer and the underlying intentions of the involved parties. These irregularities encompass the illicit sale and interstate transportation of protected museum artifacts, each valued in excess of $100,000, collectively amounting to substantially higher sums. Such actions implicate multiple violations of 18 U.S.C. § 668, specifically addressing the theft of major artwork. Notably, 18 U.S.C. § 668(a)(2)(B) defines an "object of cultural heritage" as an item "worth at least $100,000." The implications of an Officer of the Court's pronouncement regarding Cynthia Diane Blanchard's premeditated scheme against Price Tower Arts Center Inc. suggest an intent to deceive and manipulate items of public historical significance, thereby contravening federal statutes designed to protect cultural heritage.

## II. FACTS SUBJECT TO JUDICIAL NOTICE

2. **Public Statements by Attorney Craig Alan Brand:**

    a. **Gannett Media Reports:** Gannett, a reputable media company publicly traded under GCI, has published articles containing direct quotes attributed to Attorney Craig Alan Brand. These articles have undergone rigorous legal review by Gannett's internal counsel prior to publication.

b. **Specific Quotation:** In one such article, Attorney Brand is quoted as stating:

**"I was brought in by [Cynthia] and <u>informed by her that this was going to be a quick flip.</u> The assets were going to be added up, that the art was going to be added up, that the building was going to be appraised, and <u>then it was going to be flipped, and everybody would get their money back and a whole lot more.</u>"** *SEE EXHIBIT "A"*

   i. CYNTHIA - references CYNTHIA DIANE BLANCHARD **(née French)** directly referenced to the control person of the debtor entity Green Copper Holdings LLC of the US State of New Mexico

The aforementioned declaration by Officer of the Court, Attorney, CRAIG ALAN BRAND intimates a meticulously orchestrated stratagem by Cynthia Diane Blanchard (née French) to expeditiously divest the Price Tower and its concomitant assets <u>for pecuniary gain</u>, **predicated upon ostensibly fraudulent misrepresentations concerning a purported $10 million investment into the National Historic Landmark.** Such premeditated machinations are emblematic of "asset stripping," a practice wherein an acquirer systematically liquidates a company's valuable assets—such as real estate, equipment, or intellectual property—to realize substantial profits, often to the detriment of the entity's long-term viability and its stakeholders' interests. This modus operandi not only undermines the foundational integrity of the institution but also potentially contravenes fiduciary duties and statutory mandates designed to safeguard cultural patrimony and public trust. https://traffickingculture.org

In the context of federal statutes, such conduct may transgress several legal provisions, including:

1. **18 U.S.C. § 1341 (Mail Fraud) and § 1343 (Wire Fraud):** Engaging in schemes to defraud through false representations transmitted via mail or electronic communications.

2. **18 U.S.C. § 641 (Public Money, Property, or Records):** Embezzlement or theft of property or funds belonging to the United States, particularly pertinent if federal funding was implicated in the assets' procurement or maintenance.

3. **18 U.S.C. § 666 (Theft or Bribery Concerning Programs Receiving Federal Funds):** Misappropriation of assets valued at $5,000 or more from organizations receiving significant federal assistance.

4. **18 U.S.C. § 668 (Theft of Major Artwork):** The illicit appropriation of objects of cultural heritage valued at $100,000 or more, encompassing museum artifacts and protected items of significant cultural and historic value.

Under Oklahoma state law, the following statutes may be implicated:

1. **21 O.S. § 1451 (Larceny):** The unlawful taking of personal property with intent to deprive the rightful owner thereof.

2. **21 O.S. § 1541.1 et seq. (False Pretenses and Cheats):** Prohibitions against obtaining property or money through false representations or deceitful means.

3. **21 O.S. § 1533 (Embezzlement):** The fraudulent appropriation of property by a person to whom it has been entrusted.

4. **21 O.S. § 358 (Conspiracy):** An agreement between two or more persons to commit a crime, coupled with an overt act in furtherance of the conspiracy.

The egregiousness of these actions is further exacerbated by the involvement of assets of profound cultural and historical significance, the misappropriation of which not only inflicts financial harm but also erodes the collective heritage and identity preserved within such institutions. The deliberate deception and bad faith negotiations surrounding a National Historic Landmark, compounded by the potential misallocation of federal, state, and local taxpayer funds, constitute a flagrant violation of both legal and ethical standards, warranting rigorous judicial scrutiny and remedial action.

**Asset stripping** refers to the practice of acquiring a company—often one that is undervalued or financially distressed—with the primary intent of selling off its individual assets to generate profit, rather than operating the business as a going concern. This strategy involves dismantling the company by liquidating valuable components such as real estate, equipment, intellectual property, or other significant holdings. https://www.investopedia.com/terms/a/assetstripping.asp

**In the context of bankruptcy, asset stripping can have particularly detrimental effects.** When a company is on the verge of or undergoing bankruptcy proceedings, unscrupulous investors or corporate raiders may engage in asset stripping to extract maximum value before creditors can stake their claims. This often leaves the company with diminished resources, undermining its ability to restructure or repay debts, and can result in significant losses for creditors, employees, and other stakeholders. https://www.investopedia.com/terms/a/assetstripping.aspFasterCapital

It's important to note that while asset stripping is not inherently illegal, it is often viewed negatively due to its potential to harm the long-term viability of companies and adversely affect employees and communities. Legal issues arise when asset stripping involves fraudulent activities, such as deliberately undervaluing assets or transferring them to related parties to evade creditor claims, which can lead to allegations of fraudulent conveyance or breach of fiduciary duty.
https://fastercapital.com/content/Asset-Stripping--Unmasking-the-Dark-Side-of-Bankruptcy-Proceedings.html

Within bankruptcy proceedings, asset stripping involves the strategic sale of a company's assets to maximize returns for certain investors, often at the expense of creditors and other stakeholders, potentially leading to the company's further financial decline or liquidation.

    c. **Specific Quotation:** In one such article, Attorney Brand is quoted as stating:

**"We all were suckered into transferring debt that was owed from Anthem's company [HeraSoft] into taking equity, " said Brand**, one of the equity owners of Price Tower." *See generally* **Exhibit "A"** *story by GANNETT*

"The three were offered a deal: take the money owed to them by HeraSoft in the form of equity in a new business opportunity — Copper Tree Inc., the company that took over ownership of the Frank Lloyd Wright-designed skyscraper last spring." *See generally* **Exhibit "A"** *story by GANNETT*

It must be noted for the record and request for the Federal Court to make notice of Judicial Notice that the person known as ANTHEM HAYEK BLANCHARD is reported as the husband of the debtor CONTROL PERSON, Cynthia Diane Blanchard. Furthermore that the United States Federal Government by and through 10 (ten) different US Attorneys and the United States Securities and Exchange Commission has issued a LITIGATION RELEASE **No. 26121**: "**Anthem Hayek Blanchard and Anthem Holdings Company**" SEE EXHIBIT C and D

    **U.S. SECURITIES AND EXCHANGE COMMISSION**

    **Litigation Release No. 26121 / September 23, 2024**
    *Securities and Exchange Commission v. Anthem Hayek Blanchard and Anthem Holdings Company*, Civil Action No. 2:24-cv-02437 (D. Kan. filed Sept. 23, 2024)
        "SEC Charges Oklahoma Resident and Company in $5 Million Securities Fraud"

**See Generally Exhibit "C" also found at URL link:**
https://www.sec.gov/enforcement-litigation/litigation-releases/lr-26121

The Federal Fraud case proceeding in the US District of Kansas Federal Court, is found at: https://www.sec.gov/files/litigation/complaints/2024/comp26121.pdf

**SEE EXHIBIT D the full Federal Fraud Complaint Against Blanchard**

If it Pleases the Court and US Federal Law Enforcement and Foreign Authorities that the Courts, Investigators, Regulatory Authorities and Law Enforcement, will note that HERASOFT (Hera Software Development) known through the Federal Fraud filings as "HERA", is referenced 19 times in the Federal Fraud complaint.

On page four (4) under "Factual Allegations" the US Federal Govt. states: **"In May 2019, Blanchard formed Anthem Holdings to serve as a holding company. In January 2020, he incorporated Hera Software Development, Inc. ("Hera"), a wholly owned subsidiary of Anthem Holdings…" SEE Exhibit D**

**"At the time, Blanchard intended that Hera would be Anthem Holdings' primary revenue source."** *page 4 bottom of referenced FRAUD complaint* **EX. D**

3. **Questionable Transfer Details:**
   a. **Quit Claim Deed:** The transfer of Price Tower, including its city block, museum (reported as federally funded), artifacts, exhibits, furniture, and multiple operating entities, was executed via a Quit Claim Deed for the sum of ten U.S. dollars. The deed was signed by "Brad Doenges," later identified as William Bradley ("Brad") Doenges, President of Price Tower Arts Center Inc. SEE ATTACHED HEREWITH: Exhibit "B" the Quit Claim Deed signed by the purported President of Price Tower Arts Center Inc. above herein identified as "Brad Doenges".
   b. **Conflicts of Interest:** Reports indicate potential conflicts of interest among individuals approving the transfer, including:
   i. An executive director of the public non-profit now appearing as a creditor.

  ii. The treasurer of the non-profit also now appears as a creditor of the for-profit entity.

  iii. Numerous alleged board members, officers, and/or directors with overlapping interests.

NOTE: Cynthia D. Blanchard, is by definition the control person of the purported legal entity Green Copper Holdings LLC:  A **control person** in a corporation refers to an individual or entity possessing the authority to influence or direct the company's management and policies. This control can be established through various means, including ownership of a significant percentage of voting stock, holding key executive positions, or having contractual rights that confer such influence.  NYIF:  https://www.nyif.com/dictionary/c/term/controlperson

**Key Indicators of a Control Person:**

1. **Significant Ownership:** An individual or entity owning a substantial portion of the company's voting securities is often considered a control person. For instance, under U.S. securities laws, owning more than 25% of a company's voting securities creates a presumption of control, though this can be rebutted with evidence to the contrary.
   https://www.law.cornell.edu/definitions/uscode.php?def_id=15-USC-1678770883-1107394464&height=800&iframe=true&term_occur=5&term_src=title%3A15%3Achapter%3A2D%3Asubchapter%3AI%3Asection%3A80a%E2%80%932&width=840

2. **Executive Positions:** Individuals holding key positions such as director, general partner, or executive officer are typically deemed control persons due to their roles in decision-making processes.
   https://seclaw.com/glossary/control-person/

3. **Contractual Rights:** Control can also arise from contractual agreements that grant an individual or entity the power to direct management decisions or company policies, even without significant ownership or an official executive role. https://www.skadden.com/-/media/files/publications/2022/11/control_person_liability.pdf

**Regulatory Considerations:**

Identifying control persons is crucial for regulatory compliance, particularly concerning securities laws and corporate governance. <u>Control persons may be subject to specific reporting requirements and liabilities, especially if the corporation engages in activities that violate securities regulations.</u>

In summary, a control person is someone who, through ownership, position, or contractual rights, has the power to influence or direct a corporation's management and policies. Recognizing such individuals is essential for ensuring adherence to legal and regulatory standards.

A comprehensive and meticulous analysis of the convoluted and interwoven relationships among the conflicting personalities and the positions of authority they and their affiliated entities held within the public non-profit organization, Price Tower Arts Center Inc., shall be forthcoming to each of the various courts presiding over these historic bankruptcy proceedings. This analysis is particularly pertinent in light of compelling evidence assembled by concerned members of the public, which demonstrates prima facie violations of the Internal Revenue Code, as well as state and federal statutes. The evidence indicates potential acts of bribery, as delineated under Oklahoma Statute Title 21, Section 380, concerning bribery of fiduciaries, and the realization of excess benefit transactions by insiders, contravening IRS regulations under Section 4958. These violations are purportedly linked to the grossly undervalued transfer of Price Tower—a National Historic Landmark—along with its museum, collections, artwork, and associated assets, to a for-profit entity for the nominal sum of ten dollars. Such actions are ostensibly in direct contravention of established IRS regulations, as well as state and federal laws. Further documented evidence and formal requests for judicial notice shall be forthcoming once individuals, currently operating under a well-founded fear of retaliation, have been able to implement measures to mitigate the potential life-threatening risks that prevail within Bartlesville, Oklahoma. As it is even noted in GANNETT MEDIA reports that <u>**"many" persons "fear retaliation"**</u>; the numerous members of the public who "fear retaliation"; see generally Exhibit "A" that

even states: **"according to multiple sources, many of whom requested anonymity out of fear of retaliation for speaking out."** Numerous persons have expressed fear of the Court and local law enforcement, in Bartlesville, Oklahoma, citing among other things personal and financial relationships that prevent investigation by law enforcement. This is further compounded by the fact attorneys have filed criminal complaints with Oklahoma's Attorney General, who has in turn caused **"Complaint surfaces after open records battle", according to GANNETT MEDIA Reports.** See generally GANNETT Media, report

The article confirms fears of the public wherein even a bar licensed attorney has stated to the Oklahoma Attorney General two (2) years ago the 23rd of March 2023,

"The complaint further alleges that people in authority are protecting the Blanchards."

> "I'm sending the attached complaint to the Attorney General's office because I believe that personal and financial relationships in Washington County are **preventing local law enforcement from investigating past and ongoing criminal activity,**" Admas wrote.

https://eu.examiner-enterprise.com/story/news/2024/12/24/ag-office-silent-on-year-old-complaints-made-about-price-tower-owners/76821770007/

### III. LEGAL FRAMEWORK

4. **Judicial Notice:** Under Federal Rule of Evidence 201 and Oklahoma Statutes §12-2202, courts may take judicial notice of facts that are not subject to reasonable dispute because they are either:
   https://law.justia.com/codes/oklahoma/title-12/section-12-2202/

    a. **Generally known within the trial court's territorial jurisdiction**; or

    https://law.justia.com/codes/oklahoma/title-12/section-12-2202/

    b. **Capable of accurate and ready determination by resorting to sources whose accuracy cannot reasonably be questioned.**

    https://law.justia.com/codes/oklahoma/title-12/section-12-2202/

5. **Attorney's Duty of Truthfulness:** According to **Rule 4.1** of the American Bar Association's Model Rules of Professional Conduct:

    https://www.americanbar.org/groups/professional_responsibility/publications/model_rules_of_professional_conduct/rule_4_1_truthfulness_in_statements_to_others/

    "In the course of representing a client a lawyer shall not knowingly: (a) **make a false statement of material fact or law to a third person**; or (b) fail to disclose a material fact to a third person when disclosure is necessary to avoid assisting a criminal or fraudulent act by a client."

This rule underscores the obligation of attorneys to maintain honesty in all communications, including those with third parties and the public.

## IV. ARGUMENT(s)

6. **Reliability of Media Reports:** The statements attributed to Attorney Craig Alan Brand have been published by Gannett, a billion dollar public company & reputable media organization, & have undergone legal scrutiny by GANNETT lawyers in New York City prior to publication. **Therefore, these statements are reliable and suitable for judicial notice.**

7. **Implications of Attorney Brand's Statements:** Attorney Brand's acknowledgment of a premeditated "quick flip", raises substantial apprehensions regarding the underlying intentions behind the acquisition of Price Tower, suggesting misrepresentation to

stakeholders, including creditors and the general public. These statements implicate that <u>the control person</u>, Cynthia D. Blanchard, may have deliberately orchestrated a scheme to mislead and possibly defraud the public non-profit entity, Price Tower Arts Center Inc., thereby divesting it of substantial assets through a real estate transaction. The property in question **possesses a tax-assessed valuation exceeding six million dollars**. Investigative journalists have reported that the museum, purportedly a recipient of federal funding & various third-party non-profit grants, housed artifacts, exhibits, and artwork **valued between "***$20 to $30 million worth of art and historic artifacts"*.* This scenario suggests potentially ulterior motives behind the nominal ten-dollar transaction, juxtaposed against the property's estimated value range = $26 - $36 MILLION.

   a. <u>Investigative reports by V1SUT LLC:</u>
       i. *"**OK Town Becomes Sanctuary City for Blockchain Scammers: Bartlesville Loses Landmarks, Money & Historical Art in Process**"
       ii. https://v1sut.substack.com/p/ok-town-becomes-sanctuary-city-for
       iii. *Price Tower was estimated to be worth more than $6 million. The tower contains a hotel furnished with Wright pieces and was the longtime home of the Price Tower Arts Center (PTAC) which reportedly contained $20 to $30 million worth of art and historic artifacts. Somehow, yet not publicly mentioned at the time, the $10 deal included all art and other contents within Price Tower."

8. **Public Concern and Fear of Retaliation:** Gannett's reports indicate that multiple sources have requested anonymity <u>**due to fear of retaliation for**</u>

> **speaking out**, suggesting a climate of intimidation surrounding this matter. This climate of ongoing fear and intimidation against anyone who speaks out about the broken commitments of Cynthia D. Blanchard extends further than garden variety fear of simple retaliation as multiple parties report overt threats and insinuation of whistleblowers being killed (homicide or murder)!

In support of the Motion for Judicial Notice concerning public statements attributed to Attorney Craig Alan Brand and related matters, the following Tenth Circuit case law precedents are pertinent:

(a) **Tal v. Hogan**, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006): This case establishes that courts may take judicial notice of facts that are matters of public record. The court stated, "facts subject to judicial notice may be considered in a Rule 12(b)(6) motion without converting the motion to dismiss into a motion for summary judgment." This precedent supports the request to acknowledge public statements made by Attorney Brand as reported in reputable media sources.
ca10.uscourts.govhttps://www.ca10.uscourts.gov/sites/ca10/files/opinions/010110806698.pdf

(b) **In re Taylor**, 899 F.3d 1126 (10th Cir. 2018): plain language of statutes in bankruptcy proceedings. It underscores the necessity for courts to adhere to statutory provisions when evaluating the legitimacy of asset transfers, which is relevant to concerns about potential asset stripping in the current matter.

(c) **In re Schupbach Investments, LLC**, No. 14-3277 (10th Cir. 2015): Highlights the appellate review of bankruptcy court decisions. It emphasizes the necessity for transparency and adherence to procedural requirements in bankruptcy proceedings, which aligns with the need to scrutinize the actions of individuals involved in the asset transfer under consideration.
https://law.justia.com/cases/federal/appellate-courts/ca10/14-3277/14-3277-2015-11-03.html

These precedents collectively support the motion's requests by affirming the court's authority to take judicial notice of public records, emphasizing adherence to statutory language in bankruptcy contexts, and underscoring the importance of procedural transparency.

**V. REQUEST FOR RELIEF, PRAY HEREIN for RELIEF as follows:**

9. **Judicial Notice:** The movant respectfully requests that this Court take judicial notice of the following:

    a. The public statements attributed to Attorney Craig Alan Brand, as reported by Gannett., throughout Exhibit A.

    b. The details of the asset transfer involving Price Tower, including the potential conflicts of interest, and the transfer of Price Tower for just $10.00 (ten dollars) as noted in Exhibit B.

    c. The reported fact that "many" persons are operating with extreme FEAR of RETALIATION if they were to speak out concerning the issues involving this National Historic Landmark, museum EXHIBIT A.

    d. Numerous articles and press releases in the form of litigation release by the United States Securities & Exchange Commission & US attorneys as provided with hyperlinks and Exhibit C annexed hereto.

    e. Formal Federal Fraud Complaint against ANTHEM HAYEK BLANCHARD and ANTHEM HOLDINGS filed by the US Federal Government with allegations of SECURITIES FRAUD among other allegations as noted in Exhibit D, the formal Federal Fraud Case filed to the US District of Kansas Federal Court.

    f. The Mortgage filed and SIGNED by CONTROL PERSON, CYNTHIA D. BLANCHARD signing on behalf of BOTH Green Copper Holdings LLC of New Mexico and Copper Tree Inc. of Delaware for a $250,000 mortgage wherein the attorney of record representing Cynthia Blanchard PERSONALLY is the holder of said Mortgage, despite sworn under

penalties of perjury statements by CYNTHIA BLANCHARD not to know the amount of any mortgage against the property or existence thereof, warranting investigation as to alleged PERJURY and BANKRUPTCY Fraud among other charges given the multiple sworn statements, see EXHIBIT E annexed hereto and incorporated herein by reference.

10. **Further Investigation:** In light of the information presented, the movant requests that the Court consider initiating further investigation into the circumstances surrounding the transfer of Price Tower and the conduct of the parties involved. Especially wherein a public non-profit that has received governmental funding and perhaps utilized federal funds in various manners and means prior to the transfer of the assets to the alterego of Miss Cynthia D. Blanchard <u>the control person of the debtor.</u>

## VI. CONCLUSION

WHEREFORE, the movant respectfully requests that this Court grant the relief sought herein and any other relief deemed just and proper.

A document filed pro se is "to be liberally construed," Estelle, 429 U.S. "pro se … however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers," ibid. Cf. Fed. Rule Civ. Proc. 8(f) ("All pleadings shall be so construed as to do substantial justice"). "filings generously and with the leniency due pro se litigants", *see Erickson v. Pardus, U.S. 127 S.Ct. L.Ed.2d (2007); Andrews v. Heaton, 483 F.3d (10th Cir.2007).*

<u>FURTHERMORE let it be known:</u>
**Key Precedents Illustrating Liberal Construction of Pro Se Filings:**

1. **Robertson v. Intratek Computer, Inc. (10th Cir. 2019):**
    - *Robertson v. Intratek Computer, Inc.*, 976 F.3d 575, 580 (10th - 2019).
2. **Jackson v. Lightsey (4th Cir. 2014):**
    - **Summary:** Pro se pleadings are entitled to a liberal construction to facilitate a fair assessment of the claims presented.
    - *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014).

3. **Yang v. Archuleta (10th Cir. 2008):**
   - **Summary:** Tenth Circuit emphasized pro se filings should be liberally construed..
   - *Yang v. Archuleta*, 525 F.3d 925, 927 n.1 (10th Cir. 2008).
4. **Dewsnup v. Timm**, 502 U.S. 410 (1992): This Supreme Court case addressed the issue of lien stripping in bankruptcy proceedings, holding that a Chapter 7 debtor could not strip down lien.
   https://law.justia.com/cases/federal/appellate-courts/F3/39/1126/511935/
5. **In re Schupbach Investments, LLC**, *No. 14-3277 (10th Cir. 2015)*: Appellate review of bankruptcy court decisions concerning the approval of employment and fee applications. The Tenth Circuit emphasized the necessity for transparency and adherence to procedural requirements in bankruptcy proceedings, aligning with the **need to scrutinize the actions of individuals involved in asset transfers under consideration.**

**ASSERTION OF LEGAL POSITION BY PRO SE INTERESTED PARTY**

The undersigned, appearing in this matter as an **interested party**, does not seek nor request that the **United States Federal Bankruptcy Court** act as an advocate, champion, or proponent of the undersigned's legal position, nor is the undersigned making any demand that the Court engage in any preferential adjudication on behalf of any self-represented litigant. Instead, the undersigned invokes the fundamental principles of justice, equity, and procedural fairness, requesting only that the Court, in the interests of substantial justice, ensure full transparency, comprehensive disclosure, and absolute procedural integrity within the **public docket** of this bankruptcy action.

The undersigned further asserts that the necessity of such judicial cognizance is **imperative and nontrivial**, given the **substantial, direct, and incontrovertible prima facie evidentiary submissions** now contained within the filings, which establish irrefutable **jurisdictional ties and material connections** between this proceeding and the **State of Rhode Island**. More critically, these filings **implicate entities and individuals who are, upon information and belief, operating in extreme geographic proximity** to immediate family, wherein the undersigned has been illegally and unfairly targeted, egregiously and unlawfully compromised through intentional, unauthorized, and malevolent acts of doxxing.

Undersigned avers, with utmost gravity, that an exigency of unparalleled magnitude exists within the corpus of filed pleadings and the precipitous liquidation of assets bearing incalculable cultural, historical, and communal significance. This extends to

artifacts of irreplaceable provenance, museum exhibits of profound national import, and other vestiges of historical patrimony, which must be safeguarded against wanton dissipation. Further underscores that this exigency is compounded by an atmosphere of palpable trepidation—an apprehension so pervasive that it has been explicitly chronicled in Gannett media publications, wherein individuals, paralyzed by the specter of retaliation, have articulated a profound and justifiable fear of speaking out against the obliteration of national heritage.

**Respectfully Submitted, 18 March 2025**



Michael Nelson  - Pro Se / Pro Per

**Interested Party [having previously entered notice of appearance]**

**Sent USPS CERTIFIED MAIL:   9214 8901 4298 0415 3438 78**

Michael Eric Nelson
Care of the United States Secretary of State for foreign location re-routing.
702.932.3434

Email only to be used after pre-notification as to email address sending documents from in order to have the address authorized to receive said notices:  michaelericnelson @ilcoud.com *

**CERTIFICATE OF SERVICE**

**CERTIFICATE OF SERVICE AND RESTRICTED DISCLOSURE**

WHEREAS, in strict adherence to the prevailing corpus of procedural jurisprudence, statutory imperatives, and doctrinal maxims enshrining the sacrosanct principles of procedural due process and equitable notice, the undersigned, acting in an abundance of caution and in full cognizance of binding jurisdictional predicates, hereby certifies that effectuate service of the foregoing instrument has been executed in conformity with the prevailing mandates of

statutory law, codified procedural governance, and applicable adjudicatory directives, without notice to those prohibited by Saline County Kansas.

**Formal Legal Notice and Comprehensive Disclaimer of Communication with Any Affiliated Party of Chad M. Koehn, including towit Mike Moran, Dale Takio and/or Craig Alan Brand and/or Cynthia D. Blanchard and/or any other CHAD KOEHN affiliate**

In recognition of and with a heightened awareness of the **extraordinary and egregiously unlawful deprivation of liberty** previously suffered by the undersigned—wherein the undersigned endured an **unjustified, protracted, and perilously hazardous period of incarceration** within a **high-risk correctional facility** situated in **Newark, New Jersey**—the undersigned, exercising an **abundance of caution, heightened diligence, and unequivocal legal prudence, hereby submits and formally asserts the following legal declaration, disclaimer, and notice to all entities, individuals, and persons in receipt of this filing or otherwise privy to its content:**

1. The **undersigned explicitly and categorically repudiates, disclaims, and negates** any suggestion, implication, or inference that the undersigned has engaged in, is engaging in, or shall in any future capacity engage in **direct, indirect, incidental, or implied communication, transmission, discourse, correspondence, interaction, or any form of contact**—whether **oral, written, electronic, digital, personal, constructive, substantive, ancillary, or otherwise—with any individual, corporation, entity, association, governmental subdivision, limited liability company, trust, partnership, fiduciary, agent, officer, employee, contractor, affiliate, subsidiary, parent entity, or legal representative that is, was, or may in any capacity be affiliated, connected, associated, or otherwise related to Chad M. Koehn**, either personally, professionally, financially, legally, or extrajudicially.
2. The **electronic submission and filing of the instant legal notice, document, or other court-related material** has been **conducted exclusively via the PACER (Public Access to Court Electronic Records) system**, an official **United States Federal Judiciary platform** designated for the lawful and regulated submission of filings before the **United States Federal Bankruptcy Court**.
3. Any and all notifications, advisories, procedural transmissions, or legal correspondences that are the result of, incidental to, or arising from the **electronic submission of the instant filing within the PACER system** shall be deemed to constitute **notifications effectuated solely and exclusively by the United States Federal Bankruptcy Court itself**, pursuant to the **Federal Rules of Bankruptcy Procedure, the Local Rules of the United States Bankruptcy Court, and any relevant federal statutory provisions governing electronic service of process, notifications to creditors, and legal notice procedures in bankruptcy matters.**
4. The **undersigned disavows, disclaims, and negates any and all assertion, implication, or supposition** that the undersigned has initiated, solicited, facilitated, attempted, or otherwise engaged in **any form of direct or indirect interaction, discussion, or communication**—whether voluntary, involuntary, constructive, or

    otherwise—with any entity or individual **falling within the orbit of Chad M. Koehn's** personal, professional, corporate, financial, fiduciary, or legal sphere of influence, involvement, or association. The undersigned is prohibited under coercion and threat of legal armageddon against the undersigned's elderly mother if the SEC or any other Federal regulatory authority or law enforcement entity is provided information regarding the large scale alleged ponzi scheme and/or money laundering activities involving CHAD M. KOEHN and his alleged co-conspirators and therefore this statement of interested party status pursuant with the rights under the Bankruptcy Code is explicitly filed without authorization to be given in any way to a member of the Federal Law Enforcement Community, the SEC, CFTC, IRS, FTC, FinCEN or other regulatory authority having obligations of regulatory oversight over Chad M. Koehn and/or his co-conspirators.

5. Insofar as any individual, legal entity, judicial officer, administrative body, creditor, claimant, or party in interest **receives notice of the instant filing, its contents, or any procedural advisement emanating from its submission**, such notice shall be deemed to have been made **by and through the formal ministerial functions of the United States Federal Bankruptcy Court itself, not by the undersigned personally, indirectly, incidentally, or by any other construct or legal fiction that would purport to impute communication to the undersigned.**

6. The **undersigned reserves all rights, privileges, defenses, and immunities** afforded under the **United States Constitution, federal statutory law, common law doctrines, bankruptcy code provisions, judicial precedents, procedural safeguards, and equitable principles** to **preclude, reject, negate, and oppose** any and all mischaracterizations, erroneous inferences, wrongful interpretations, malicious distortions, or unfounded presumptions that would **suggest, insinuate, or falsely ascribe** any communicative act, participatory engagement, or intentional interaction by the undersigned with **Chad M. Koehn or any affiliated entity, organization, or person.**

The undersigned, as identified hereinabove, is presently under an **imminent and substantiated, threat of lethal harm** from multiple individuals, necessitating immediate and continuous concealment alongside multiple family members. Consequently, the undersigned **lacks a fixed, verifiable residential address** and is actively employing **military-grade Onion Routing technology** to obscure locational data and prevent assassination, grievous bodily harm, or other malicious acts. These threats are credibly linked to individuals associated with **ANTHEM HAYEK BLANCHARD** and **CYNTHIA DIANE FRENCH**, also known as **CYNTHIA DIANE BLANCHARD**, whose direct or indirect involvement has rendered traditional security measures insufficient. Accordingly, the undersigned is currently located at an **undisclosed overseas foreign-domiciled location** to further mitigate the risk of imminent harm.

Accordingly, all **creditors, claimants, parties in interest, government agencies, regulatory bodies, and legal representatives** are hereby formally placed on notice of the aforementioned assertions, reservations, disclaimers, and protections governing the legal position and conduct

of the **undersigned** with respect to the instant matter and any peripheral proceedings related thereto. When filed to the US Federal Court this filing will be automatically sent to the parties of record pursuant with the Federal Court's automatic notification systems, by the Court itself.

Submitted,



Michael Eric Nelson
Care of the United States Secretary of State for foreign location re-routing.
702.932.3434

Email only to be used after pre-notification as to email address sending documents from in order to have the address authorized to receive said notices: michaelericnelson @ilcoud.com *

Formal Appearance previously made via USPS certified mail: 9214 8901 4298 0415 3438 78

---

## *CC:  By formal request.*

**Addressee REDACTED per 18 U.S.C. § 1905; 28 C.F.R. Part 22; 26 U.S.C. § 6103**

Robert F. Kennedy Department of Justice Building

**950 Pennsylvania Avenue NW**

Washington, D.C., United States