1

## IN THE UNITED STATES BANKRUPTCY COURT FOR

## THE NORTHERN DISTRICT OF OKLAHOMA

| RE:  GREEN COPPER HOLDINGS, LLC EIN # xx-xxx9708 ) CASE NO. 25-10088-T Chapter 7 | Case No.:  25-10088-T |
|---|---|

**EMERGENCY INSTANTER MOTION TO STAY IMMINENT DISPOSITION OF NATIONAL HISTORIC LANDMARK AND CULTURAL ASSETS PENDING APPEAL TO THE TENTH CIRCUIT AND EMERGENCY APPLICATION UNDER U.S. SUPREME COURT RULE 22 DUE TO FRAUDULENT MISREPRESENTATIONS BY TRUSTEE AND ONGOING RISK TO NATIONAL HISTORIC HERITAGE OF THE AMERICAN PEOPLE**

COMES NOW, the undersigned, a party in interest, and hereby urgently petitions this Honorable Court for an immediate stay of any and all actions pertaining to the disposition of real estate and associated real property assets, including furniture, museum exhibits, art collections, National Historic Heritage artifacts of the bankruptcy estate, inclusive of the National Historic Landmark. This petition is predicated upon the necessity for a thorough and meticulous accounting of all museum artifacts, exhibits, artwork, and culturally significant, historical items encompassed within the estate, to ensure the Court is apprised with complete and accurate information, thereby rectifying any inaccuracies or omissions in the Trustee's prior submissions, which are too numerous to list in entirety yet, are summarized herein below.

In support of this motion, the Movant avers as follows:

1. **Trustee's Obligations and Alleged Misconduct**: The appointed Bankruptcy Trustee, **Patrick J. Malloy**, is legally obligated to administer the estate with utmost fidelity, transparency, and adherence to statutory mandates. However, it is alleged that Mr. Malloy has engaged in conduct that includes, but is not limited to, fraudulent concealment, perjury, unauthorized removal of estate property, and systematic asset dissipation through illicit financial structuring, commonly referred to as "smurfing."  Providing deference to Mr. Malloy, he may be an unknowing participant in the above allegations, relying incorrectly on the sworn statements under perjury

2

by the control person of the debtor, Cynthia D. Blanchard.  Notwithstanding Mr.
Malloys improper reliance on Blanchard's sworn statements there can be no doubt
the Court has been denied truthful information as a result of the alleged perjury
within the filings and the subsequent in accurate attestations of Mr. Malloy as a
result thereof, regardless of Malloy's conflicts.

2. **Control Person's Alleged Malfeasance**: The corporate control person, **Cynthia
   Diane Blanchard**, is purportedly implicated in escalating and egregious
   mismanagement, fraudulent misappropriation, and conversion of assets. Notably,
   public statements attributed to Attorney **Craig Alan Brand**, who represents or has
   represented Ms. Blanchard and related entities, indicate potential equity interest
   transfers from "HERA," an entity prominently referenced in the federal fraud case
   prosecuted by the United States Government against Ms. Blanchard's spouse,
   **Anthem Hayek Blanchard**, and a company Anthem Holdings that control person of
   debtor, Cynthia Blanchard at all times material to the governments federal fraud
   case served as that companies, President, Co-Founnder, Board Member and
   majority shareholder.  Previous request for Judicial Notice of the quoted statements
   of Craig Alan Brand has been tendered to the Court, although the Court has refused
   delivery of said USPS Requests for Judicial Notice as recently as 22 March 2025,
   the same day the US President DONALD JOHN TRUMP issued a memorandum
   concerning attorneys actions in Federal Courts an emergency memorandum that
   has bearing here upon.

3. **Associated Parties' Regulatory Infractions**: **Chad M. Koehn**, an alleged
   co-conspirator,associated with the Blanchards in multiple business ventures, has
   received remedial sanctions by a US Federal regulator, FINRA, these sanctions
   were due to his participation in private securities transactions, believed involving the
   governments current Federal Fraud case. The Court is respectfully requested to
   take judicial notice of these disciplinary actions as reported in FINRA's December
   2022 Disciplinary Actions.
   https://www.finra.org/sites/default/files/2022-12/Disciplinary_Actions_December_2022.pdf

4. **Necessity for Accurate Accounting**: Given the complexities and potential malfeasance outlined above and below, it is imperative that a comprehensive and accurate accounting of all museum artifacts, exhibits, artwork, and culturally significant historical items be conducted prior to any disposition of real property. This will ensure that the Court's decisions are informed by precise and complete information, safeguarding the interests of creditors and preserving the integrity of the bankruptcy process, and <u>bearing in mind the rights and interests of interested parties including the American People at Large</u> who have certain unalienable rights when items of National Historical Significance and National Heritage are involved as they are here.  **Federal jurisprudence has long upheld the public's interest in preserving historic sites, see *United States v. Gettysburg Electric Ry. Co.* (1896)**, the Supreme Court affirmed Congress could intervene in protections regarding private land; The UNITED STATES SUPREME COURT declared this preservation a **"public use" closely connected to the welfare of the nation**, taken "in the name and for the benefit of all the citizens".   Similarly, in *Penn Central Transportation Co. v. New York City* (1978), the Supreme Court upheld New York City's <u>Landmark Preservation Law</u>, The Court recognized a **"widely shared belief" that places of historic and cultural significance "enhance the quality of life for all"**, representing "the lessons of the past" and "precious features of our heritage". The "Price Tower" & artifacts contained therein have been declared a National Historic Landmark by Secretary of the Interior of the **UNITED STATES OF AMERICA.**

5. Items of National Historic significance and thus part of the public trust and National Historic Heritage are worthy of specialized protection, especially when considering multiple known items of National Historic Heritage have been illegally sold and transported across state lines, these items individually have values in excess of $100,000 and as items of artwork integral to the National Historic Landmark, even in one case referenced regularly by docents when giving tours of the National Historic Landmark deem the item a directory board, which is one-of-a-kind the only known price art designed and created by famed American Architect FRANK LLOYD WRIGHT.  In this case the item was illegally sold and transported in interstate

commerce, the item historical art significance is currently illegally placed for sale with a price tag of $348,000; thereby availing itself of the distinction of protection under Federal Law.  Immediate referral to Federal Law Enforcement and prosecutors for immediate prosecution is warranted.  significantly When culturally significant assets are entangled in financial distress or bankruptcy, courts have emphasized **fiduciary duties and public trust obligations** to protect those assets. A prominent example arose in Detroit's municipal bankruptcy (2013–2014), which put at risk the priceless art collection of the city-owned Detroit Institute of Arts (DIA). The bankruptcy court made clear that **creditors had no right to seize or liquidate the city's art**. In confirming Detroit's reorganization plan, Judge Rhodes underscored that **"[n]o provision of law allows the creditors to access the DIA art to satisfy their claims, whether in bankruptcy or outside of bankruptcy"**, making the art's market value legally irrelevant.   Especially wherein here we know of multiple items illegally sold and as an example the directory board a one-of-a-kind piece which is priceless yet is being resold for $348,000 thereby violating the Federal Major Art Theft provisions of Federal Law under 18 U.S. Code § 668 – Theft of Major Artwork; in addition to a multitude of other Federal Laws inclusive without limitation:  18 U.S. Code § 2314; 18 U.S. Code § 2315; **National Stolen Property Act (NSPA)** (Which includes both §2314 and §2315); Cultural Property Implementation Act (CPIA) – 19 U.S. Code §§ 2601–2613; **18 U.S.C. § 2314** – Transporting stolen property; **18 U.S.C. § 2315** – Receiving or selling stolen property; **CPIA (19 U.S.C. § 2601 et seq.)** – Unlawful import/export of cultural property; **Potentially**: **Conspiracy (§ 371)**, **Wire Fraud (§ 1343)**, and **Money Laundering (18 U.S.C. § 1956)** if financial transactions are involved, as they were here and admitted under sworn statements by the individual known as the control person, Cynthia Blanchard.   The court in the case accepted that the museum's collection was held *in public trust* for the people. Judge Rhodes further noted the overwhelming public value of the DIA's collection – *"an invaluable beacon of culture, education… and economic development"* for the community – such that selling it would "forfeit Detroit's future";  Detroit's municipal bankruptcy (2013–2014), which put at risk the priceless art collection of the city-owned Detroit Institute of Arts (DIA); **This case affirmed a de facto public trust doctrine for important cultural**

**property:** even in insolvency, stewards must protect heritage assets for the public and future generations, and maintain transparency about their status, no transparency exists in this public record!

6. Federal courts have shown similar vigilance in private contexts. In the *R.M.S. Titanic* litigation, concerning artifacts recovered from the wreck of the **Titanic**, the courts prioritized preservation over profit. The Fourth Circuit ruled in 2006 that the law of salvage (which keeps the court's supervisory eye on the artifacts) — rather than the law of finds (which would give finders full ownership — should govern Titanic's treasures. The court noted that awarding outright title to salvors would undermine the **"public interest in long-lost historic wrecks,"** leaving no safeguards for how artifacts are handled; *R.M.S. Titanic v. the Wrecked and Abandoned*, 435 F.3d 521 (4th Cir. 2006)

7. A **"trust relationship"** is created between the salvors and the court **"on behalf of the public interest"** *See, e.g., Int'l Aircraft Recovery LLC v. Unidentified, Wrecked Abandoned Aircraft,* 218 F.3d 1255, 1263 (11th Cir. 2000); *Columbus-America,* 974 F.2d at 450; *Bemis v. R.M.S. Lusitania,* 884 F.Supp. 1042 (E.D.Va. 1995); *MDM Salvage, Inc. v. Unidentified, Wrecked Abandoned Sailing Vessel,* 631 F.Supp. 308 (S.D.Fla. 1986). *R.M.S. Titanic v. the Wrecked and Abandoned*, 435 F.3d 521 (4th Cir. 2006)

8. **Article III of the U.S. Constitution will not tolerate courts asserting in rem jurisdiction without "exclusive custody and control" of the res because such courts cannot "adjudicate rights ... binding against the world,"** see Titanic I, 171 F.3d at 964, but are instead limited to rendering advisory opinions **"subject to revision" by other governments,** see Nashville, C. & St. L. Ry v. Wallace, 288 U.S. 249, 261–62, 53 S.Ct. 345, 77 L.Ed. 730 (1933).

9. The current proposed disposition of items of National Historic Heritage runs afoul the rights of the American people, as envisioned by the founding documents of these the UNITED STATES OF AMERICA, the American people have unalienable rights to items of National Historic value, the shortening of time for the sale of a National Historic Landmark without the financial, fiscal and national heritage oversight of numerous artifacts, artwork and items of National Historic Heritage and relevance runs a direct foul of the substantial rights of the American People.

Federal case law also recognizes the **public's right to an accurate historical record** and holds custodians of heritage accountable. In *Nixon v. Administrator of General Services* (1977), the Supreme Court upheld a federal law requiring that President Nixon's White House papers and tapes be taken into government custody (rather than left solely to Nixon) so they could be reviewed, preserved, and eventually made public. The Court cited Congress's *"important public interest in preservation of the materials"* relating to Nixon's presidency and in creating **"an accurate and complete historical record."**

10. Nixon had argued his privacy and property rights were violated, but the Court found the intrusion minimal compared to the **overriding public interest in safeguarding these documents of national heritage, quotations omitted; Nixon v. Administrator of General Services, 433 U.S. 425 (1977)**

11. This decision in **Nixon v. Administrator of General Services, 433 U.S. 425 (1977)** affirms that when historically significant records or artifacts are at stake, the law imposes duties of *transparency, accountability, and preservation* on those in charge. A former President, like any steward of national heritage, may be viewed as holding such items **"in trust for the American people,"** a concept later echoed by lower courts. The public's unalienable right to its national heritage justified measures to ensure proper archiving, **prevent destruction**, and enable eventual public access.

12. In sum, federal courts have consistently supported the American people's rights and interests in the protection of historic and cultural assets. Whether through the public trust doctrine, enforcing fiduciary standards in bankruptcy, or mandating transparency in recordkeeping, the judiciary has upheld the principle that our collective heritage – historic sites, artwork, artifacts, and archives – **must be preserved and accounted for as part of the public patrimony.**

13. On Saturday, March 22, 2025, the **President of the United States, Donald John Trump,** promulgated an PRESIDENTIAL Memorandum  [Executive Order] directed to the Attorney General and the Secretary of Homeland Security, entitled **"Preventing Abuses of the Legal System and the Federal Court."** This Presidential Memorandum, annexed hereto and incorporated herein by reference as Exhibit "A," underscores the imperative to uphold the integrity of the legal system by holding attorneys and law firms accountable for unethical conduct, particularly when

such misconduct threatens national security, public safety, or election integrity.
When issues involve the public interest.

https://www.whitehouse.gov/fact-sheets/2025/03/fact-sheet-president-donald-j-trump-prevents-abuses-of-the-leg
al-system-and-the-federal-courts/

14. It is unequivocal that there appears to be a deliberate evasion of proper notice to all
    concerned parties, manifesting in the misdirection of notifications to the U.S.
    Federal Commission offices lacking jurisdiction over the matters *sub judice.*
    Specifically, there has been a conspicuous failure to notify the appropriate
    prosecuting offices of the Securities and Exchange Commission (SEC) currently
    litigating a federal fraud case directly pertinent to the issues before this Court. This
    is evidenced by prior requests for judicial notice submitted to this Honorable Court
    and dispatched via USPS Certified Mail to the U.S. Bankruptcy Court for the
    Northern District of Oklahoma, bearing tracking number
    9214890142980415591712, on March 18, 2025. Identical documentation was
    concurrently sent to Bankruptcy Trustee Patrick J. Malloy via USPS Certified Mail,
    tracking number 9214890142980415591781. These submissions have also been
    disseminated to various U.S. Attorneys within the Department of Justice in
    Washington, D.C., and other pertinent offices necessitating such notice, given the
    multitude of inconsistencies, inaccuracies, and potential deliberate
    misrepresentations being presented to this Honorable Court by officers thereof, in
    direct contravention of federal law, **denies justice to the American People.**

15. Beyond the ethical canons governing attorney conduct before the Courts, it is
    imperative to recognize that attorneys are equally subject to the laws applicable to
    laypersons. Indeed, attorneys should be held to an elevated standard, as **they have
    sworn an oath as officers of the Court.** In this particularly egregious instance, it
    appears that certain attorneys, including the Bankruptcy Trustee, have willfully and
    maliciously proffered false averments and statements before the Court.
    Concurrently, they have deliberately withheld critical information from U.S. federal
    agencies, commissions, bureaus, and services concerning the disposition of assets
    valued in the tens of millions of dollars and of National Public heritage from this
    bankruptcy estate.

    a. **WHEREFORE**, it is asserted that Bankruptcy Trustee **Patrick Malloy** may be
       encumbered by significant conflicts of interest concerning the administration

of the estate's assets, notably the disposition of a **National Historic Landmark & items of National Historic Heritage**. Specifically, Mr. Malloy is espoused to **Karen Keith** , who, despite not adopting his surname, holds the position of **Vice-President of the Oklahoma Historical Society** and serves as an elected official within the state. This matrimonial affiliation has precipitated public consternation regarding the impartiality and equity of the estate's administration, particularly given Ms. Keith's previous associations within **Tulsa County, Oklahoma**, which ostensibly intersect with the designated "stalking horse bidder."  Worse yet the Oklahoma Historical Society has taken no interest in the preservation of the National Historic Landmark at issue before the appearance of Karen Keith's husband as trustee, despite numerous National & International media investigative reports on the issues involved, Oklahoma Historical Society made no appearance in any National or International media and does so now only because of Patrick Malloy's employment as the trustee.

<sub>[https://www.okhistory.org/about/kkeith]</sub>
<sub>i.       https://www.dacdb.com/rotarv/accounts/6110/Bulletins/2496/The%20Southsider%203.6.24%20Karen%20Keith.pdf</sub>

b.  The abridgment of the standard bankruptcy procedural timelines to a mere **ten-day** period—including **three days** allocated for mailing, with issuance occurring late on a **Friday**, thereby encompassing religious observances and two weekends during which U.S. Courts customarily do not process mail—raises substantial concerns. Such **temporal constriction appears strategically orchestrated to preclude alternative bidders from participating**, thereby undermining competitive bidding process, in obtaining fair market value, as required by prevailing Federal law.

c.  Moreover, material omission persists failing to execute a full and accurate accounting of both protected and unprotected museum artifacts and exhibits, including those purportedly on loan to a federally subsidized institution. Prima facie indicia support the contention that Cynthia Diane Blanchard, the debtor's control person, and her spouse, Anthem Hayek Blanchard, have engaged in the unlawful conferral of substantial pecuniary inducements upon public nonprofit officials with vested financial interests in the accelerated divestiture of the National Historic Landmark, its affiliated museum, and associated corporate entities. Forthcoming pleadings shall delineate the nexus between the purported creditors and their prior fiduciary roles at Price Tower Arts Center, a former public nonprofit entity, revealing the appearance of excess benefit transactions and conduct potentially violative of federal anti-bribery statutes.

d.  Pursuant to **Internal Revenue Service (IRS) regulations**, it is unequivocally stipulated that insiders are prohibited from deriving excess benefits through transactions involving public or other non-profit organizations, which are mandated to file specific IRS returns concerning the disposition of items of national heritage and real property. Ms. Blanchard has submitted detailed

sworn statements to this Court under penalty of perjury and in accordance with the criminal fraud provisions governing bankruptcy proceedings. Notably, she has repeatedly amended the list of creditors, incrementally augmenting the claims associated with certain debts, while deliberately designating specific obligations as disputed. Concurrently, she has ensured that debts owed to herself, her family members, personal acquaintances, and employees—who are concurrently affiliated with a myriad of other entities and shell corporations where Ms. Blanchard holds positions such as president, co-founder, board member, or majority shareholder—remain undisputed.

e. These circumstances collectively engender a plausible inference of conflicts of interest and necessitate meticulous judicial scrutiny to uphold the integrity of the bankruptcy process and safeguard the equitable treatment of all stakeholders involved, including the American People who have significant legal claim to the protection of items of National Historic Heritage and Significance within a structure and museum collection deemed a National Historic Landmark.

16. **United States v. White Mountain Apache Tribe (2003)**; the **Court:** U.S. Supreme Court; **Citation:** 537 U.S. 465  **Relevance:** The Court held that when the federal government holds land in trust for a tribe and utilizes it, it has a fiduciary duty to maintain and preserve the property. This decision underscores the government's obligation to protect historic properties under its stewardship, ensuring they are not neglected or mismanaged; ***United States v. White Mountain Apache Tribe***, 537 U.S. 465 (2003), was a case in which the Supreme Court of the United States held in a 5–4 decision when the federal government used land or property held in trust, it had the duty to maintain that land or property and was liable for any damages for a breach of that duty

17. National Trust for Historic Preservation v. Blanck, 938 F. Supp. 908 (D.D.C. 1996) U.S. District Court for the District of Columbia  Citation: 938 F. Supp. 908;  This case addressed the federal government's responsibility under the National Historic Preservation Act (NHPA) to preserve historic buildings. The court emphasized that **federal agencies must consider the impact of their actions on historic properties and take necessary measures to protect them.**

18. **Behrmann, et al. v. Nat'l Heritage Foundation, et al., No. 10-2015 (4th Cir. 2011).** In this bankruptcy case, the court examined the circumstances under which a bankruptcy court could approve non-debtor release provisions. The case

highlights the careful scrutiny required when <u>determining the disposition of assets held in public trust during bankruptcy proceedings</u>.

19. ***Scenic Hudson Preservation Conference v. Federal Power Commission***, 354 F.2d 608 (2d Cir. 1965) is a United States Second Circuit Court of Appeals case in which a public group of citizens, the Scenic Hudson Preservation Conference; The court granted standing to an environmental group challenging a project that would impact a site of historic and aesthetic significance. This decision established the precedent that preservation groups have the legal standing to advocate for the protection of historic sites.

20. The appointed Bankruptcy Trustee, **Patrick J. Malloy**, has submitted **Document 52** in **Case No. 25-10088-T**, filed in the **United States Bankruptcy Court for the Northern District of Oklahoma** on **March 17, 2025**. This three-page document enumerates various addresses, individuals, and governmental entities designated to receive copies of the proposed terms for the disposition of real property, including a **National Historic Landmark**, museum, and associated business units.

   a. Within this filing, Mr. Malloy, an attorney bound by the **Canons of Professional Ethics** to maintain truthfulness in representations to others and before the Courts, has ostensibly engaged in conduct that raises significant ethical concerns. Specifically, the filing appears to:

      i. **Omit Specific Creditors**: Certain creditors are conspicuously absent from the distribution list, potentially depriving them of critical information regarding the disposition of significant assets.

      ii. **Conflate Various Addresses**: The document lists addresses in a manner that could lead to confusion or misdirection, thereby hindering proper notification and due process.

      iii. **Misallocate Correspondence to Federal Agencies**: Notably, Mr. Malloy directed correspondence to an incorrect office of the **Securities and Exchange Commission (SEC)**. Given that **Anthem Hayek Blanchard**, the spouse of debtor control person **Cynthia Diane Blanchard**, is currently facing federal fraud charges, including securities fraud, in the **U.S. District Court for the District of Kansas**, the appropriate SEC regional office is located in **Denver, Colorado**, which oversees the Tenth Circuit jurisdiction. However, Mr. Malloy's Certificate of Service indicates that the correspondence was sent to a different SEC office, thereby potentially obstructing the prosecuting attorneys from receiving essential information concerning the disposition of the National Historic Landmark.

Absent <u>Mr. Malloy providing, forthwith, to this Honorable Court, documentation such as a letter or other notice from the SEC's Midwest Regional Office</u>—which ostensibly lacks jurisdiction over the current federal fraud proceedings in the District of Kansas—**it appears that Mr. Malloy has <u>deliberately deprived the federal government of critical information</u>** regarding the debtor and control person, **Cynthia Diane Blanchard**. This includes the alleged structuring ("smurfing") of assets and property, encompassing items of national heritage and specific artifacts protected and/or on loan to a museum reportedly receiving federal funding and various grants from public non-profit organizations. <u>DENVER Colorado SEC office is prosecuting, not Chicago!</u>  Such actions, if substantiated, could constitute violations of ethical obligations and federal statutes, warranting immediate judicial scrutiny and appropriate remedial measures to uphold the <u>integrity of the bankruptcy process and protect public interests</u>.

Trustee's Motion to Shorten Notice of the proposed sale of the Price Tower—a property of significant historical and cultural value—it is <u>imperative to present a comprehensive legal argument that addresses the following critical concerns, additional memorandum of law is therefore so herein requested leave for filing</u> in order for the Court to be fully apprised of the multiple inconsistencies and averments of the Trustee who has inexplicably forced perjury upon the record perhaps has his legal defense relying upon the underpinning perjury of the control person, CYNTHIA BLANCHARD of the purported debtor, where Blanchard has made certain statements under penalties of perjury with regards to the existence of the first position SECURED mortgage existing, as previously noticed to the Court for Judicial Notice thereof its existence.

1. **Undisclosed Secured Mortgage**: The existence of a substantial first-position mortgage in the amount of QUARTER OF MILLION DOLLARS, payable to an attorney and law firm, <u>has not been disclosed to the Court</u>. This omission violates the transparency required in bankruptcy proceedings and may suggest potential conflicts of interest. The Bankruptcy Code mandates full disclosure of all encumbrances on estate property to ensure equitable treatment of creditors and stakeholders & the American People.  <u>Prior Request for JUDICIAL NOTICE of the existence of this SUBSTANTIAL and SIGNIFICANT SECURED Mortgage upon the property in a first position exists</u> within the public record and now also existing

before the Court in Request for Judicial Notice, **such existence of the mortgage demonstrates clearly where the Trustee has now been less than honest or candid with the Court**, bringing into question much of the proceedings now before the Court involving museum artifacts, exhibits, art collections and other items of National Historic Heritage and value that were within the <u>public trust for the benefit of the American people at large.</u>

2. **Unaccounted Museum Artifacts and Preservation Easement Violations**: The failure to account for museum artifacts, coupled with their unauthorized sale across state lines, constitutes a breach of fiduciary duty and may violate preservation and conservation easements. Such actions not only diminish the estate's value but also <u>contravene legal obligations to preserve cultural heritage</u>.

3. **Allegations of Asset Stripping and Fraudulent Transfers**: Evidence suggests a premeditated scheme by the debtor's control person, Cynthia Diane Blanchard, to misappropriate assets. This includes inducing a public non-profit to transfer ownership of the museum and Price Tower under false pretenses, with no intention of fulfilling promised investments. <u>Such conduct may constitute fraudulent transfer under 11 U.S.C. § 548 and warrants thorough investigation.</u>

4. **Inadequate Notice Period and Potential Collusion**: The Trustee's request to shorten the notice period to ten days, especially when issued late on a Friday and encompassing weekends and <u>religious holidays</u>, undermines the procedural fairness of the sale process. This expedited timeline, combined with the selection of a "stalking horse bidder" with ties to parties potentially involved in prior misconduct, raises concerns about collusion and the integrity of the bidding process, see the spouse of the Bankruptcy Trustee professional endeavors.

<u>**Legal Grounds STAY & OPPOSITION TO SHORTENING OF TIME AS ORDERED**</u>:

- **Conflict of Interest and Lack of Disinterestedness**: The <u>undisclosed mortgage held by an attorney and law firm</u>, potentially connected to parties involved in the bankruptcy proceedings, raises issues under 11 U.S.C. § 327(a), which requires

that professionals employed by the estate be disinterested and not hold or
represent an interest adverse to the estate.   THE fact Patrick Malloy has hidden the
existence of this "large" "secured" mortgage and its existence from the Court brings
severe issues before the Court that the Trustee is either derilict in fiduciary duties or
has relied upon the erroneous and false swearing of the debtor control person,
Cynthia Diane Blanchard, demonstrating clear perjury within the filings.

https://www.kslaw.com/attachments/000/011/111/original/Determining_and_Managing_Conflicts_of_Interest_in_
Bankruptcy_Cases_%28The_Review_of_Banking___Financial_Services%29.pdf?1694639293

- **Violation of Fiduciary Duties**: The Trustee's failure to disclose encumbrances and
  account for valuable assets may constitute a breach of fiduciary duty, undermining
  the equitable administration of the estate.

  **Procedural Due Process Concerns**: The proposed shortened notice period may
  violate rights to adequate notice under Federal Rules of Bankruptcy Procedure
  2002(a)(2), which generally requires a 21-day notice period for the sale of estate
  property, other statements state a 24 day period that the Court has erroneously
  shortened to 10 days inclusive of the three days for mailing when in fact it only
  provides 6 US mail days in total, on top of this the Court is not picking up their
  USPS mail, as is noted herein above/below. While the court may shorten this period
  for cause, doing so in this context may prejudice creditors and other interested
  parties, including the American People, where the Court is not even retrieving
  USPS certified mail as noted by the USPS tracking numbers.

- Due process of law is being violated by the refusal to pick up mail and inability to
  receive notice and file objections and therefore stay of this action and disposal the
  substantial estate assets, including items of National Heritage without inventory and
  investigation of the amount and precise artifacts, artwork, furniture and other items
  have been illegally converted, and/or brought to control person Cynthia Blanchard's
  private residence, as alleged by the Frank Lloyd Wright Building Conservancy and
  taken via conversion, an unknown number of museum artifacts, artwork, furniture,
  furnishings, museum exhibits that has been sold off, many illegally against
  conservation and preservation easements.

Given these substantial concerns, it is essential to oppose the Trustee's Motion to Shorten
Notice. The Court should require full disclosure of all encumbrances, a comprehensive

accounting of all assets, and adherence to standard notice periods to ensure a fair, transparent process that protects the interests of all stakeholders involved.  Trustee's Motion to Shorten the Notice Period for the proposed sale of the Price Tower, several legal precedents and procedural rules underscore the necessity for adequate notice to creditors and interested parties including the American People in proceedings:

1. **Federal Rule of Bankruptcy Procedure 2002(a)(2)**: This rule mandates that all creditors receive at least 21 days' notice by mail plus an additional 3 days, of a proposed sale of estate property outside the ordinary course of business. The rule allows for a shortened notice period only if the court finds cause. However, courts typically require compelling justification to deviate from the standard notice period to ensure that creditors have sufficient time to protect their interests.
   https://www.law.cornell.edu/rules/frbp/rule_2002

2. **In re McRaine**: In this case, the court denied the debtor's motion to shorten the notice period for the sale of property, emphasizing that the debtor had not provided sufficient reason for the reduced notice. The court highlighted that motions to sell property typically require a 20-day notice period and that a desire for swift resolution does not, by itself, justify shortening this period.
   https://casetext.com/case/in-re-mcraine

3. **Due Process Considerations**: Adequate notice is a fundamental component of due process in bankruptcy proceedings. Insufficient notice can prejudice creditors and other interested parties, depriving them of the opportunity to assert their rights. Courts have held that notice to creditors must be reasonably calculated to apprise them of the action and afford them an opportunity to present objections.

Given these precedents and procedural requirements, the Trustee's motion to shorten the notice period should be carefully scrutinized to ensure compliance with due process and the equitable treatment of all parties involved.

The Trustee's recent motion to expedite the sale of estate assets, notably the iconic Frank Lloyd Wright-designed Price Tower—a National Historic Landmark—raises profound

concerns. The proposed acceleration of proceedings, coupled with the Trustee's alleged misrepresentations, threatens to deprive the Court of critical information and undermines the due process rights of the American public.

## II. ARGUMENT  A. Due Process Violations and Inadequate Notice

The Trustee's motion to shorten the notice period to ten days, inclusive of weekends and religious holidays, effectively truncates the statutory timeframes established under the Bankruptcy Code. This abridgment impairs the ability of interested parties to respond appropriately, thereby violating their due process rights as enshrined in the Fifth Amendment. The Supreme Court has consistently held that adequate notice and the opportunity to be heard are fundamental components of due process in bankruptcy proceedings. *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

## B. Fiduciary Breach and Non-Disclosure of Secured Interests

It has come to light that a substantial secured mortgage, amounting to $250,000, exists on the property in question, payable to an attorney and law firm undisclosed to this Court. This mortgage, executed by Cynthia Diane Blanchard, the control person of the debtor entities, was recorded approximately one week prior to the bankruptcy filing. The Trustee's failure to disclose this encumbrance constitutes a breach of fiduciary duty, as transparency regarding the estate's liabilities is paramount. Fifth Circuit has emphasized that a trustee's obligations include the preservation of estate assets and the protection of interests. *Matter of Esco Mfg. Co.*, 33 F.3d 509, 514 (5th Cir. 1994).

## C. Unauthorized Sale of Protected Cultural Artifacts

Allegations have surfaced that museum artifacts, exhibits, and artwork—some individually valued in excess of $100,000—have been illicitly sold across state lines, in direct contravention of existing preservation and conservation easements. Such actions may constitute violations of federal statutes concerning the theft and trafficking of major artwork. The Eleventh Circuit has underscored the inviolability of conservation easements, recognizing their perpetual nature and the necessity of adherence to their terms. *Hewitt v. Commissioner*, 20-13700 (11th Cir. 2021).

**D. Public Interest and National Heritage Preservation**

The Price Tower, as a National Historic Landmark, embodies significant cultural and historical value. Alleged misappropriation and potential loss of its associated artifacts not only diminish the bankruptcy estate but also **inflict irreparable harm upon the nation's heritage**. Public interest demands vigilant protection of assets, any disposition must be conducted with utmost transparency & adherence to legal safeguards.

**WHEREFORE**, the undersigned respectfully requests that this Court grant the relief sought herein and any other relief deemed just and proper in the **interests of justice and the preservation of national heritage.**

Due to the abridgment of temporal allowances precipitated by the Trustee's submission of erroneous and imprecise averments before this Honorable Court, the Court is consequently deprived of essential information and is precluded from taking judicial notice of publicly accessible records. Numerous whistleblowers and interested parties are reticent to enter appearances, apprehensive of potential retaliatory litigation tactics—colloquially termed "scorched earth" strategies—employed by the debtor's control person, Cynthia Diane Blanchard, who exhibits a proclivity for prevarication in written statements, communications with law enforcement, engagements with news media, televised interviews, and broadcasts transmitted across state lines. Gannett Media, a publicly traded corporation, has disseminated reports indicating that "many" individuals are willing to provide information solely under conditions of anonymity, fearing reprisal should they disclose the deceptive practices orchestrated by the debtor's control person, Cynthia Diane Blanchard. Owing to the substantial public outcry and the resultant inhibition of the public, interested parties, and other creditors—stemming in part from the mendacious representations promulgated by the debtor's control person(s)—the Court is bereft of critical information pertaining to the estate, including but not limited to corporate malfeasance, fraudulent misappropriation, and the conversion of items constituting National Historic Heritage. These items, of significant national importance, have been illicitly misappropriated and alienated by the debtor's control person, Cynthia Diane Blanchard.

In light of the abridged temporal parameters imposed, which contravene the statutory timeframes delineated within the Bankruptcy Code, and compounded by the impediments to effectuating service via the United States Postal Service to this Honorable Court—further exacerbated by the inclusion of multiple weekends within the truncated ten-day period—the Court's declination to accept delivery of Certified USPS Mail constitutes a flagrant infringement upon the constitutional due process rights guaranteed to interested parties, creditors, victims of financial fraud, and other stakeholders, including, without limitation, the collective citizenry referenced in the preamble to the United States Constitution as "We the People."

Notably, the President of the United States has promulgated an Emergency Memorandum addressing the manipulation of federal court proceedings by legal practitioners. This memorandum, issued by President Donald John Trump on Saturday, March 22, 2025, coincides with the refusal by the United States Federal Court for the Northern District of Oklahoma to accept Certified Mail delivery of critical information pertinent to judicial notice in the instant matter. Said information encompasses documentation evidencing a substantial secured interest, specifically a mortgage encumbering the property in question—a fact erroneously misrepresented by the Trustee before this Court. Public records unequivocally substantiate the existence of this mortgage, executed by the debtor's control person, Cynthia Diane Blanchard, approximately one week antecedent to the initiation of bankruptcy proceedings.

As demonstrative evidence of the Court's refusal to accept USPS Certified Mail, the following is hereby incorporated by reference and submitted as documentary evidence to the United States Court of Appeals for the Tenth Circuit and, if necessitated, to the Supreme Court of the United States pursuant to Rule 22, governing applications addressed to individual Justices. Communications have been initiated with Cheryl Corley of the Northern District of Oklahoma Federal Bankruptcy Court and with Robert Meek, the Emergency Applications Clerk for the Supreme Court, regarding the exigent circumstances surrounding the illicit interstate transfer of items of national historic significance. Such actions potentially constitute violations under federal statutes pertaining to the theft of major artwork. Mr. Meek has provided comprehensive guidance concerning the procedures for emergency applications in accordance with the specialized rules of the

Supreme Court, including directives for submission to 1 First Street Northeast, Washington, D.C. 02453.



Given that this Honorable Court, the United States Bankruptcy Court for the Northern District of Oklahoma, is being deprived of critical information, and considering the plausible existence of significant conflicts of interest among court officers and trustees assigned to this matter—compounded by the abridged timeframe during which the Court has declined to accept notifications and has refused delivery of United States Postal Service Certified Mail, as evidenced herein and incorporated by reference—it is imperative, in the interest of substantial justice, that the Court issue a stay on the divestiture of real property and assets. These assets, absent from the federal record, include items of national historic importance and value, many of which exceed the statutory threshold of $100,000, thereby satisfying the criteria delineated in 18 U.S.C. § 668 concerning the theft of major artwork.

https://compliancecosmos.org/theft-major-artwork-0

III. **CONCLUSION** In light of the foregoing, it is imperative that this Court:

1. **Stay any and all actions related to the sale or disposition of the Price Tower and associated assets pending a thorough and independent accounting of all museum artifacts, exhibits, archives, items on loan and artwork & art collections, given a substantial secured mortgagor to provide insurance.**

2. <u>**Direct the Trustee to disclose all encumbrances,**</u> **including the aforementioned QUARTER MILLION DOLLAR ($250,000) mortgage, held by a presumed bar licensed attorney and his D/B/A that of a LAW FIRM, to ensure full transparency and compliance with fiduciary obligations. Instruct the**

**Trustee to investigate the major and substantial secured mortgage position implementing demands upon that bar licensed attorney who has operated via an inside position to secure said mortgage and therefore should be mandated to pay for any and all insurance upon the premises secured by his first position secured mortgage upon the premises which the Bankruptcy Trustee's report and motion is devoid notice to the court.**

3. **Refer the matter to appropriate federal authorities for investigation into potential violations of laws governing the protection and sale of historical and cultural artifacts, specifically those in value greater than $100,000 that have been illegally and unlawfully sold and transported across state lines and the enforcement of preservation and conservation easements.**

FURTHERMORE … An immediate and exigent referral to the Federal Bureau of Investigation's Art Crime Team and the Major Artwork Theft Division of the United States Government is hereby sought to preserve and vindicate the collective interests of the citizenry of the United States. This Honorable Court, vested with constitutional authority under Article III, bears a solemn duty to uphold the structural integrity of the federal judiciary and protect assets of profound national historic significance. The public relies upon, and demands, urgent judicial intervention to prevent the irreparable loss of cultural patrimony.

The undersigned, appearing pro se and invoking rights as a constituent of "We the People" as articulated in the Preamble to the United States Constitution, respectfully moves this Court for an immediate stay of all acts of divestiture or disposition concerning a federally designated National Historic Landmark, as recognized by the United States Secretary of the Interior. Said property, inclusive of numerous artifacts, museum exhibits, and works of major art—many of which are legally classified as irreplaceable items of national public historical heritage—have allegedly been subject to illicit sale, unlawful transport across state lines, and fraudulent conversion. These acts constitute violations of federal statutes concerning theft, misappropriation, and fraud, and have deprived the American public of their rightful cultural inheritance. In the absence of this emergency *instanter* stay, movant further requests a stay pending appeal to the United States Court of Appeals for the Tenth Circuit, with concurrent emergency application pursuant to Rule 22 of the Rules of the Supreme Court of the United States, to safeguard the continued preservation of the National Historic Landmark and associated cultural assets.  It is a bedrock principle of federal jurisprudence, reiterated across multiple circuits, that pro se pleadings—however inartfully composed—must be construed with liberality so as to effectuate substantial justice and to preserve equitable access to the courts, particularly within the context of the United States Bankruptcy Court, a forum rooted in equity and remedial purpose. The UNITED STATES SUPREME COURT has long held that submissions by self-represented litigants are to be "liberally construed" and held "to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Estelle v.*

***Gamble*, 429 U.S. 97, 106 (1976). This doctrinal standard persists in modern precedent.** See *Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam); Andrews v. Heaton, 483 F.3d 1070, 1076 (10th Cir. 2007)* (liberal construction owed to pro se pleadings); cf. Fed. R. Civ. P. 8(f) ("All pleadings shall be so construed as to do substantial justice"). **The Tenth Circuit in *Robertson v. Intratek Computer, Inc.*, 976 F.3d 575, 580 (10th Cir. 2019),** reaffirmed that courts must construe pro se complaints "liberally to afford fair opportunity for substantive adjudication." Similarly, in ***Jackson v. Lightsey, 775 F.3d 170, 178 (4th Cir. 2014),*** the Fourth Circuit underscored that liberal construction is essential to ensure that meritorious claims are not summarily foreclosed by technical pleading deficiencies. However, courts are not obliged to become de facto advocates for pro se litigants, a limitation articulated in <u>*Yang v. Archuleta, 525 F.3d 925, 927 n.1 (10th Cir. 2008).*</u> Within bankruptcy proceedings, the principle assumes particular salience. As courts of equity, Bankruptcy Courts are inherently obligated to interpret pro se submissions with broad indulgence to safeguard procedural and substantive fairness. See *In re Sanders*, 243 B.R. 326, 330 (Bankr. N.D. Ohio 2000). This obligation is further reinforced by <u>11 U.S.C. § 105(a) and the Federal Rules of Bankruptcy Procedure,</u> which empower courts to issue orders necessary to prevent injustice and ensure compliance with the Code's equitable objectives. <u>**Accordingly, this Honorable Court, bound by Article III**</u> and its fiduciary responsibility to uphold the integrity of the federal judiciary, must afford the undersigned pro se litigant the full measure of judicial leniency and liberal construction warranted by precedent, so as to advance substantial justice, particularly where public interests, constitutional implications, or matters of national historic significance are implicated. It is therefore respectfully submitted and requested for review.

Respectfully Submitted this the 24th day of March the Year of our Lord 2025,

Michael Nelson - Pro Se (Pro Per)

Interested Party - *part of "WE THE PEOPLE"*

Michael Eric Nelson
Care of the United States Secretary of State for foreign location <u>re-routing</u>.
702.932.3434

Email only to be used after pre-notification as to email address sending documents from in order
to have the address authorized to receive said notices: <u>michaelericnelson</u> @ilcoud.com *

## CERTIFICATE OF SERVICE & DECLARATION OF RESTRICTED DISCLOSURE

**IN THE MATTER OF JUDICIAL NOTICE AND PROCEDURAL ASSERTION OF RESTRICTIVE NON-DISSEMINATION MANDATES**

WHEREAS, in strict adherence to the prevailing corpus of procedural jurisprudence, statutory imperatives, and doctrinal maxims enshrining the sacrosanct principles of procedural due process and equitable notice, the undersigned, acting in an abundance of caution and in full cognizance of binding jurisdictional predicates, hereby certifies that effectuate service of the foregoing instrument has been executed in conformity with the prevailing mandates of statutory law, codified procedural governance, and applicable adjudicatory directives.

NOTWITHSTANDING, in recognition of extrajudicial anomalies, convoluted procedural exigencies, and the demonstrable tactical exploitation of statutory architecture heretofore executed with artifice and calculated intent, it is hereby formally, unequivocally, and incontrovertibly noticed that the subject filing—individually, severally, and in the aggregate—shall not, under any conceivable construction, legal fiction, interpretative lens, or attenuated inference, be conveyed, transmitted, promulgated, or otherwise disseminated in any form, manner, or medium—whether directly, derivatively, incidentally, or by operation of constructive notice—to the individual personage of **Chad Mitchell Koehn**, aka Chad Koehn, C. Mitch Koehn, Chad M. Koehn, Chad Mitchell K., Chad Mitch K, Chad Koehn Mitchell, Chad Mitchel Koehn or any other derivative he may use nor to any juridical entity, corporate enterprise, organizational consortium, trust arrangement, professional association, individual, attorney, consort, person, associate, employee or extrinsic affiliate with whom Chad M. Koehn maintains, has maintained, or is reasonably deduced to have maintained any contractual nexus, fiduciary entanglement, agency affiliation, governance role, or informal economic coalescence.

Said prophylactic restriction is predicated upon the putative existence of an adjudicatory directive, the precise linguistic contours and jurisdictional breadth of which remain presently indeterminate, but which is purported to have been issued **sub silentio.**

WHEREFORE, the undersigned, in full cognizance of the gravity and jurisdictional implications of the foregoing assertions, **reserves all procedural, statutory, and constitutional prerogatives** available under prevailing federal jurisprudence, including but not limited to the absolute right to seek adjudicatory redress for any and all infractions,

violations, or legally cognizable transgressions arising from the conduct herein delineated. To include without limitation emergency appeal to the Bankruptcy Appealette Board, the emergency notification to the 10th Circuit Court of Appeals and emergency service of UNITED STATES SUPREME COURT RULE 22 Application upon Justice Neil Gorsuch, of the same UNITED STATES SUPREME COURT.

**Grounds for a Rule 22 Application in This Scenario:**

1. **Violation of Federal Bankruptcy Laws (11 U.S.C. §§ 363, 1129, etc.)**
   o If the bankruptcy court is **circumventing statutory timeframes** under the **Bankruptcy Code** (e.g., rushing the sale process under 11 U.S.C. § 363 without allowing for adequate notice and objections), an applicant could argue that the court is acting **ultra vires** (beyond its legal authority).
   o The Bankruptcy Code provides specific protections for **notice periods, bidding procedures, and fair market valuation**, which must not be **manipulated to favor a particular buyer** at the expense of creditors or interested parties.
2. **Denial of Due Process (5th and 14th Amendments)**
   o If the court is **truncating statutory notice periods** or denying parties the opportunity to be heard, it may violate **procedural due process rights**.
   o A party could argue that **the rushed sale process is engineered to exclude competing bidders or suppress objections**, thereby denying an affected party their legal right to contest the sale.
3. **Judicial Misconduct or Collusion**
   o If evidence suggests that **the bankruptcy judge is engaging in preferential treatment or colluding with specific buyers**, a Rule 22 application could be justified.
   o This could include actions such as:
      ▪ **Waiving or reducing standard creditor objection periods**
      ▪ **Approving sale terms that disproportionately favor an insider or a politically connected entity**
      ▪ **Rejecting higher or competitive bids without justification**
4. **Conflicts with Federal Oversight or SEC Regulations (If Publicly Traded Assets Are Involved)**
   o If the bankruptcy case involves a **publicly traded company or assets subject to SEC oversight**, the applicant could argue that the **manipulated sale process interferes with federal regulatory interests**.
   o SEC Rule **21F-17(a)** may also apply if whistleblower communications regarding fraud or misconduct in the sale are being suppressed.
5. **Strategic Lawsuit Against Public Participation (SLAPP) to Obstruct Legal Remedies**
   o If a **SLAPP-style litigation strategy** is being used to silence objections (e.g., through **frivolous restraining orders or retaliatory lawsuits against objectors**), a Supreme Court justice may be petitioned to intervene.

**Potential Emergency Relief Sought Under Rule 22:**

- **Stay of the Bankruptcy Sale** until full statutory notice periods are observed.
- **Injunction Against Procedural Manipulation**, preventing the bankruptcy court from unlawfully shortening timeframes.
- **Order Directing Compliance with Federal Law**, ensuring adherence to established **Bankruptcy Code provisions** governing asset sales.

## Jurisdictional and Procedural Considerations:

- **Exhaustion Requirement:** The applicant would typically need to **seek relief in lower federal courts first**, including the **U.S. District Court (bankruptcy appeals) and the U.S. Court of Appeals**.
- **Extraordinary Circumstances:** A Rule 22 application is an **extraordinary remedy** and would require showing **irreparable harm**, such as:
  - <u>Imminent and irreversible sale of real estate below market value</u>
  - <u>Deprivation of property rights without due process</u>
  - <u>Intentional judicial misconduct or conflicts of interest</u>

---

With respect to **KOEHN (CHAD KOEHN)**, it is upon **information and belief** that he presents in a manner consistent with that of a **large, more than six-foot-tall individual** commonly described as a "rhinestone cowboy," outwardly appearing as **male-gendered**. However, the **undersigned is unable to confirm the legal sex of Chad Koehn**, as no certified birth records or other official documentation explicitly establishing said sex have been identified within publicly available records or within the docketed proceedings of the **United States Federal Courts**. While various pronouns and legal averments have suggested that Chad Koehn is **male**, no definitive legal evidence, such as a **birth certificate or government-issued documentation**, has been located within the public domain to verify this assertion. The undersigned makes public note, thus requesting JUDICIAL NOTICE of the **Executive Order of the PRESIDENT OF THE UNITED STATES OF AMERICA:**

**DONALD JOHN TRUMP in Executive Order 14168;** titled: "DEFENDING WOMEN FROM GENDER IDEOLOGY EXTREMISM AND RESTORING BIOLOGICAL TRUTH TO THE FEDERAL GOVERNMENT" <u>https://public-inspection.federalregister.gov/2025-02090.pdf</u>  <u>SEE GENERALLY pages 2 and 3:</u>  Sec. 2.

> Policy and Definitions. It is the policy of the United States to recognize two sexes, male and female. These sexes are not changeable and are grounded in fundamental and incontrovertible reality. Under my direction, the Executive Branch will enforce all sex-protective laws to promote this reality, and the following definitions shall govern all Executive interpretation of and application of Federal law and administration policy: (a) "Sex" shall refer to an individual's immutable biological classification as either male or female. "Sex" is not a synonym for and does not include the concept of "gender identity." (b) "Women" or "woman" and "girls" or "girl" shall mean adult and juvenile human females, respectively. (c) "Men" or "man" and "boys" or "boy" shall mean adult and juvenile human males, respectively. (d) "Female" means a person belonging, at conception, to the sex that produces the large reproductive cell. (e) "Male" means a person belonging, at conception,

to the sex that produces the small reproductive cell. (f) "Gender ideology" replaces the biological category of sex with an ever-shifting concept of self-assessed gender identity, permitting the false claim that males can identify as and thus become women and vice versa, and requiring all institutions of society to regard this false claim as true. Gender ideology includes the idea that there is a vast spectrum of genders that are disconnected from one's sex. Gender ideology is internally inconsistent, in that it diminishes sex as an identifiable or useful category but nevertheless maintains that it is possible for a person to be born in the wrong sexed body. (g) "Gender identity" reflects a fully internal and subjective sense of self, disconnected from biological reality and sex and existing on an infinite continuum, that does not provide a meaningful basis for identification and cannot be recognized as a replacement for sex.

**Legal Declaration Regarding the Relationship Between the Undersigned and Chad Koehn**

Irrespective of any legal or factual determination regarding the **recognized sex or gender identity** of **Chad Koehn**, whether it is adjudicated, established, or otherwise asserted that **Koehn is male, female, or any other legally recognized classification**, the undersigned **unequivocally affirms** and attests as follows: The undersigned has **never engaged in any sexual, romantic, or intimate relationship** with Chad Koehn at any point in time. Furthermore, the undersigned has **never shared parentage, legal guardianship, or any biological relation** with any child in common with **Chad Koehn**, nor has the undersigned ever cohabitated, maintained a domestic relationship, or shared any legally cognizable **"thing of value"** with **Chad Koehn**. The undersigned expressly repudiates, denies, and refutes **any and all allegations, claims, or representations**—whether made by **Chad Koehn** in any **county, state, or federal court**—that suggest or purport the existence of any **child, joint residence, romantic entanglement, or other legally significant relationship** between the undersigned and **Chad Koehn**. Any such assertions, whether **misconstrued, fabricated, delusional, or otherwise falsely averred**, are categorically **false, misleading, and without factual or legal basis**. FURTHER See Page 3 of the Referenced Executive Order; made by PRESIDENT of these THE UNITED STATES OF AMERICA:  **DONALD JOHN TRUMP in Executive Order 14168;** titled:  "DEFENDING WOMEN FROM GENDER IDEOLOGY EXTREMISM AND RESTORING BIOLOGICAL TRUTH TO THE FEDERAL GOVERNMENT" https://public-inspection.federalregister.gov/2025-02090.pdf  **Sec. 3.**

> "Recognizing Women Are Biologically Distinct From Men. (a) Within 30 days of the date of this order, the Secretary of Health and Human Services shall provide to the U.S. Government, external partners, and the public clear guidance expanding on the sex-based definitions set forth in this order. (b) Each agency and all Federal employees shall enforce laws governing sex-based rights, protections, opportunities, and accommodations to protect men and women as biologically distinct sexes. Each agency should therefore give the terms "sex", "male", "female", "men", "women", "boys" and "girls" the meanings set forth in section 2 of this order when interpreting or applying statutes, regulations, or guidance and in all other official agency business, documents, and communications. (c) When administering or enforcing sex-based distinctions, every agency and all Federal employees acting in an official capacity on behalf of their agency shall use the term "sex" and not "gender" in all applicable Federal policies and documents."

## Formal Entry of Appearance and Notice to All Parties

Let it be hereby formally noticed, advised, and acknowledged by all recipients of this legal notification that the **undersigned** makes this **entry of appearance** as an **interested party** pursuant to the applicable **rules, regulations, statutory provisions, and procedural mandates** governing these proceedings. Said appearance is made without **divulging, conceding, or directly affirming** any prior, existing, or underlying **relationship, connection, or affiliation** with **CHAD M. KOEHN** in any legal, financial, contractual, or extrajudicial capacity.

It is further acknowledged and asserted that **CHAD M. KOEHN** and **UNITED CAPITAL MANAGEMENT OF KANSAS INC.**—the latter having been previously recognized by the **State of Kansas** under the stylized corporate designation **"UNITEDCAPITALMANAGEMENTOFKANSASINC."**—have entered into a **contractual agreement** with the undersigned. Said agreement **explicitly prohibits** the undersigned from engaging in **communications, disclosures, or reporting** with the **Securities and Exchange Commission (SEC)** regarding any matters pertaining to **potential securities fraud, regulatory violations, financial malfeasance, corporate misconduct, or other violations of federal securities laws** allegedly perpetrated by **CHAD M. KOEHN** and/or **UNITED CAPITAL MANAGEMENT OF KANSAS INC.**

The aforementioned prohibition stands in **direct contravention** of **Securities and Exchange Commission Rule 21F-17(a)**, which **expressly forbids** any contractual or extrajudicial restriction that impairs, obstructs, or precludes an individual's right to **directly communicate** with the **SEC** regarding potential violations of the **Securities Exchange Act of 1934**, the **Dodd-Frank Wall Street Reform and Consumer Protection Act**, or any other applicable securities regulations.

Accordingly, the **undersigned** places this formal notice on the record to underscore the existence of a **legally questionable** and **potentially unenforceable restriction** imposed by CHAD M. KOEHN and UNITED CAPITAL MANAGEMENT OF KANSAS INC., which **stands in conflict with federal law, public policy, and SEC-mandated whistleblower protections**.

## Formal Legal Notice and Comprehensive Disclaimer of Communication with Any Affiliated Party of Chad M. Koehn, including towit Mike Moran, Dale Takio and/or Craig Alan Brand and/or Cynthia D. Blanchard

In recognition of and with a heightened awareness of the **extraordinary and egregiously unlawful deprivation of liberty** previously suffered by the undersigned—wherein the undersigned endured an **unjustified, protracted, and perilously hazardous period of incarceration** within a

**high-risk correctional facility** situated in **Newark, New Jersey**—the undersigned, exercising an **abundance of caution, heightened diligence, and unequivocal legal prudence, hereby submits and formally asserts the following legal declaration, disclaimer, and notice to all entities, individuals, and persons in receipt of this filing or otherwise privy to its content:**

1.  The **undersigned explicitly and categorically repudiates, disclaims, and negates** any suggestion, implication, or inference that the undersigned has engaged in, is engaging in, or shall in any future capacity engage in **direct, indirect, incidental, or implied communication, transmission, discourse, correspondence, interaction, or any form of contact**—whether **oral, written, electronic, digital, personal, constructive, substantive, ancillary, or otherwise—**with any individual, corporation, entity, association, governmental subdivision, limited liability company, trust, partnership, fiduciary, agent, officer, employee, contractor, affiliate, subsidiary, parent entity, or legal representative that is, was, or may in any capacity be affiliated, connected, associated, or otherwise related to** **Chad M. Koehn**, either personally, professionally, financially, legally, or extrajudicially.

2.  The **electronic submission and filing of the instant legal notice, document, or other court-related material** has been **conducted exclusively via the PACER (Public Access to Court Electronic Records) system,** an official **United States Federal Judiciary platform** designated for the lawful and regulated submission of filings before the **United States Federal Bankruptcy Court**.

3.  Any and all notifications, advisories, procedural transmissions, or legal correspondences that are the result of, incidental to, or arising from the **electronic submission of the instant filing within the PACER system** shall be deemed to constitute **notifications effectuated solely and exclusively by the United States Federal Bankruptcy Court itself,** pursuant to the **Federal Rules of Bankruptcy Procedure, the Local Rules of the United States Bankruptcy Court, and any relevant federal statutory provisions governing electronic service of process, notifications to creditors, and legal notice procedures in bankruptcy matters.**

4.  The **undersigned disavows, disclaims, and negates any and all assertion, implication, or supposition** that the undersigned has initiated, solicited, facilitated, attempted, or otherwise engaged in **any form of direct or indirect interaction, discussion, or communication**—whether voluntary, involuntary, constructive, or otherwise—with any entity or individual **falling within the orbit of** **Chad M. Koehn's** personal, **professional, corporate, financial, fiduciary, or legal sphere of influence, involvement, or association. The undersigned is prohibited under coercion and threat of legal armageddon against the undersigned's elderly mother if the SEC or any other Federal regulatory authority or law enforcement entity is provided information regarding the large scale alleged ponzi scheme and/or money laundering activities involving CHAD M. KOEHN and his alleged co-conspirators and therefore this statement of interested party status pursuant with the rights under the Bankruptcy Code is explicitly filed without authorization to be given in any way to a member of the Federal Law Enforcement Community, the SEC, CFTC, IRS, FTC, FinCEN or other regulatory authority having obligations of regulatory oversight over Chad M. Koehn and/or his co-conspirators.**

5. Insofar as any individual, legal entity, judicial officer, administrative body, creditor, claimant, or party in interest **receives notice of the instant filing, its contents, or any procedural advisement emanating from its submission**, such notice shall be deemed to have been made **by and through the formal ministerial functions of the United States Federal Bankruptcy Court itself**, not by the undersigned personally, **indirectly, incidentally, or by any other construct or legal fiction that would purport to impute communication to the undersigned.**

6. The **undersigned reserves all rights, privileges, defenses, and immunities** afforded under the **United States Constitution, federal statutory law, common law doctrines, bankruptcy code provisions, judicial precedents, procedural safeguards, and equitable principles** to **preclude, reject, negate, and oppose** any and all mischaracterizations, erroneous inferences, wrongful interpretations, malicious distortions, or unfounded presumptions that would **suggest, insinuate, or falsely ascribe** any communicative act, participatory engagement, or intentional interaction by the undersigned with **Chad M. Koehn or any affiliated entity, organization, or person.**

Accordingly, all **creditors, claimants, parties in interest, government agencies, regulatory bodies, and legal representatives** are hereby formally placed on notice of the aforementioned assertions, reservations, disclaimers, and protections governing the legal position and conduct of the **undersigned** with respect to the instant matter and any peripheral proceedings related thereto.

When filed to the US Federal Court this filing will be automatically sent to the parties of record pursuant with the Federal Court's automatic notification systems, therefore service so rendered pursuant with applicable law notwithstanding the aforementioned foregoing disclaimer.



Michael Eric Nelson
Care of the United States Secretary of State for foreign location re-routing.
702.932.3434

Email only to be used after pre-notification as to email address sending documents from in order
to have the address authorized to receive said notices:  michaelericnelson @ilcoud.com *