FILED

## IN THE UNITED STATES BANKRUPTCY COURT FOR

## THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **RE:  GREEN COPPER HOLDINGS, LLC EIN # xx-xxx9708 ) CASE NO. 25-10088-T ;   Chapter 7** | **Case No.:  25-10088-T** |

## MOTION TO COMPEL DISCLOSURE OF CORPORATE DOCUMENTS AND INFORMATION PERTAINING TO THE FRANK LLOYD WRIGHT BUILDING CONSERVANCY in response to Docket Number 60

TO THE HONORABLE JUDGE OF SAID COURT:

**COMES NOW, undersigned interested party** in interest in the above-captioned bankruptcy proceeding, respectfully submits this Motion to Compel Disclosure of Corporate Documents and Information Pertaining to the Frank Lloyd Wright Building Conservancy ("Conservancy"), and in support thereof, states as follows:

**I. INTRODUCTION**

1.  The Conservancy has entered a notice of appearance in this matter, which involves issues of **national and international public concern** regarding the disposition of a National Historic Landmark, museum & artifacts that have reportedly received federal funding. This landmark houses protected museum artifacts, furniture, exhibits, artwork, and collections, many of

which have allegedly been illicitly sold across state lines in violation of established conservation and preservation easements.  Some of those items are believed to have been resold and have since been exported outside of the United States of America, placing them beyond the reach of authorities.

2. In light of the Conservancy's purported custodial role and in view of the extraordinary gravity of the allegations implicating the potential mismanagement, alienation, or unlawful conversion of irreplaceable cultural patrimony, it is incumbent upon this Court and all relevant authorities to demand full and unfettered disclosure of the internal governance structures, control persons, fiduciary agents, and de facto decision-makers within said Conservancy. Such disclosures are not merely procedural formalities—they are essential prerequisites to ensuring accountability, transparency, and lawful stewardship over assets of profound national consequence.

3. The American People—by virtue of their sovereign status and the collective authority vested in them under the Preamble to the Constitution of the United States—possess an incontrovertible and unalienable entitlement to the preservation, protection, and continued public benefit of

historic artwork, museum collections, architectural heritage, and other manifestations of national cultural significance. These objects are not fungible private commodities, but rather constitute a sacred trust, held in perpetuity for the benefit of "We the People," as articulated in the foundational doctrines of this Republic. Their destruction, dissipation, or clandestine transfer constitutes not merely a breach of fiduciary duty, but an existential assault on the national identity, historical memory, and intergenerational equity of the United States citizenry.

4. That such historically and artistically consequential items—recognized and designated by the Secretary of the Interior as comprising a NATIONAL HISTORIC LANDMARK under the auspices of the United States Department of the Interior and governed by the National Park Service—would be subjected to misappropriation, concealment, or privatization under the guise of non-profit management is a matter of national urgency and constitutional gravity. The very structure encompassing these artifacts, along with its affiliated substructures and collections, has been federally codified as possessing "exceptional value to the nation," thereby placing it within the highest echelon of historic preservation under federal law.

5. Any action, omission, or scheme—whether by concealment, neglect, or willful mismanagement—that compromises the public's dominion over this national inheritance must be treated as a matter of constitutional, cultural, and moral emergency. The American People are not merely stakeholders—they are the rightful beneficiaries of a heritage held in common, and their rights demand immediate judicial protection and full investigatory scrutiny.

## II. REQUEST FOR DISCLOSURE

Pursuant to Federal Rule of Civil Procedure 37(a)(3)(B), made applicable to these proceedings by Federal Rules of Bankruptcy Procedure 7037 and 9014, Movant requests that this Court compel the Conservancy to produce the following documents and information forthwith and within the public Federal Record of these Article I, Courts proceedings for the edification of the public at large and to their continuing benefit as the beneficiaries of items of National Heritage and Public Importance as demonstrated by numerous articles in the New York Times, Seattle Times, Architectural Digest and more than 3 dozen other publications world wide:

1. **Articles of Incorporation and Bylaws:** To understand the foundational governance structure and operational directives of the Conservancy.

2. **Current List of Board of Directors:** To identify individuals responsible for overseeing the Conservancy's activities and decision-making processes.
   a. https://projects.propublica.org/nonprofits/organizations/363703598

3. **List of Corporate Donors:** To discern potential influences or interests that may affect the Conservancy's actions and policies.
   a. https://www.achp.gov/preservation-legislation

4. **Membership Roster:** To comprehend the broader constituency and stakeholders involved in or supporting the Conservancy's mission.

## III. LEGAL BASIS

1. **Relevance and Necessity:** The disclosures herein demanded are not only germane but essential to a comprehensive evaluation of the Conservancy's institutional fidelity, operational legitimacy, and efficacy in executing its fiduciary mandate to preserve and protect the designated National Historic Landmark and its attendant artifacts, collections, and federally recognized heritage assets. Full transparency concerning the

Conservancy's internal governance architecture, affiliated agents, control persons, and any latent entanglements is rendered imperative—particularly in light of credible allegations implicating unauthorized alienation, conveyance, or sale of protected cultural property in direct contravention of statutory preservation frameworks and the public trust doctrine.

2. Of paramount concern is the demonstrated pattern of dereliction and administrative opacity by the Conservancy, coupled with the deeply troubling insinuations of ex parte communications with the Chapter 7 Bankruptcy Trustee—whose own spouse, KAREN KEITH, is credibly alleged to maintain a personal and/or professional relationship with the so-called "stalking horse bidder," thereby casting a pall of disqualifying conflict over the Trustee's neutral duties and stewardship responsibilities.

3. The People of the United States—as the ultimate beneficiaries and sovereign custodians of their collective historic patrimony, embodied within the constitutional framework as "WE THE PEOPLE"—possess not merely a right, but a democratic and moral obligation to demand absolute transparency and judicial scrutiny in all dealings pertaining to cultural assets of such nationally consecrated significance. Where, as here, the

Conservancy's conduct appears misaligned with its stated public purpose, potentially adverse to its chartered obligations, and suggestive of private interest superseding public trust, it becomes not only appropriate but necessary to question the bona fides of the Conservancy's claimed status as a tax-exempt nonprofit organization under the Internal Revenue Code.

4.  Absent full public access to foundational documentation—including but not limited to its Articles of Incorporation, Bylaws, membership rolls, and identification of all control persons—**the public is placed at a constitutionally intolerable disadvantage**. Such opacity erodes public confidence, impairs regulatory oversight, and jeopardizes the enduring protection of heritage assets that were entrusted—by grant, charter, or historical obligation—to the custody of the Conservancy, which now appears to be functioning in a manner wholly incongruent with the mission of cultural preservation and the requirements of federal law. The concealment of governance structures and affiliations amidst allegations of impropriety renders continued public silence untenable and demands immediate intervention by this Court to forestall further injury to the American public's historic, legal, and cultural inheritance.

5. **Public Interest:** The National Historic Preservation Act (NHPA) underscores the significance of preserving historical and cultural foundations as a living part of community life and development in the United States. The alleged misappropriation of artifacts from a National Historic Landmark contravenes the principles enshrined in the NHPA and related federal regulations, such as 36 CFR § 800.10, which mandates special considerations for protecting National Historic Landmarks.

   a. https://www.law.cornell.edu/cfr/text/36/800.10

6. **Judicial Oversight:** This Court possesses the authority to compel disclosures that are essential for the fair and just resolution of matters before it, particularly when such disclosures pertain to entities involved in proceedings of substantial public interest and concern.

In support of the motion to compel the Frank Lloyd Wright Building Conservancy ("Conservancy") to disclose specific corporate documents and information, the following legal precedents and statutory provisions underscore the necessity and appropriateness of such disclosures:

**1. Fiduciary Duties and Governance Transparency:**

- **Board of Directors' Responsibilities:** Nonprofit organizations are governed by a board of directors entrusted with fiduciary duties of care,

loyalty, and obedience. These duties necessitate that directors act in the best interests of the organization and its charitable mission. Ensuring transparency in governance structures is fundamental to upholding these fiduciary responsibilities.

- **In re Parkview Hospital**: The court held that assets donated with specific restrictions are protected from creditors in bankruptcy proceedings, emphasizing the importance of adhering to donor-imposed restrictions and the necessity for transparent governance to ensure compliance.

  https://ncbj.org/wp-content/uploads/2024/09/Convergence-of-Nonprofit-Law-and-Bankruptcy-Law-materials-2024.pdf

## 2. Public Interest in Nonprofit Operations:

- **Sarbanes-Oxley Act Implications:** While originally targeting publicly traded companies, certain provisions of the Sarbanes-Oxley Act have been recognized as best practices for nonprofits, emphasizing the importance of transparency and accountability in organizational governance.

  - https://sps.columbia.edu/sites/default/files/2020-11/SarbanesOxley.BoardSource.pdf

  - **In re Verity Health System of California, Inc.**: The court examined the intersection of federal bankruptcy provisions and state laws

governing nonprofit asset transfers, highlighting the necessity for

nonprofit organizations to comply with applicable nonbankruptcy

laws, including those related to governance and asset disposition.

- https://ncbj.org/wp-content/uploads/2024/09/Convergence-of-

  Nonprofit-Law-and-Bankruptcy-Law-materials-2024.pdf

## 3. Legal Authority to Compel Disclosure:

- **Judicial Oversight:** Courts possess the authority to compel disclosures

  from entities involved in legal proceedings, especially when such

  disclosures are pertinent to the fair and just resolution of matters before the

  court. This authority extends to nonprofit organizations when questions

  arise regarding their adherence to fiduciary duties and compliance with

  applicable laws.

  - **In re 301 W North Avenue, LLC**: The court dismissed a Chapter 11

    case due to the debtor's failure to adhere to its own corporate

    governance requirements, underscoring the enforceability of such

    provisions and the critical nature of compliance with internal

    governance documents.

    - https://www.reuters.com/legal/litigation/restrictions-bankruptcy-

      filings-can-be-effective-under-appropriate-facts-2025-03-04/

      - 301 W North Avenue, LLC, No. 24-B-2741, 2025 WL 37897,

        __ B.R. __ (Bankr. N.D. Ill. Jan. 6, 2025)

These legal principles collectively support the motion to compel the Conservancy to produce the requested documents and information, ensuring transparency, accountability, and the protection of assets of national historical significance.

## IV. PRAYER

WHEREFORE, Movant respectfully requests that this Court enter an order compelling the Frank Lloyd Wright Building Conservancy to produce the aforementioned documents and information within a specified timeframe deemed appropriate by the Court, and grant such other and further relief as may be just and proper, in the interests of the public "we the people" so demand.

A document filed pro se is "to be liberally construed," Estelle, 429 U.S. "pro se … however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers," ibid. Cf. Fed. Rule Civ. Proc. 8(f) ("All pleadings shall be so construed as to do substantial justice"). "filings generously and with the leniency due pro se litigants", see Erickson v. Pardus, U.S. 127 S.Ct. L.Ed.2d (2007); Andrews v. Heaton, 483 F.3d (10th Cir.2007).

**Respectfully submitted,**

Michael Eric Nelson
Care of the United States Secretary of State for foreign location re-routing.
702.932.3434

Email only to be used after pre-notification as to email address sending documents from in order
to have the address authorized to receive said notices:  michaelericnelson @ilcoud.com "

## CERTIFICATE OF SERVICE:

## CERTIFICATE OF SERVICE & DECLARATION OF RESTRICTED DISCLOSURE

**IN THE MATTER OF JUDICIAL NOTICE AND PROCEDURAL ASSERTION OF RESTRICTIVE NON-DISSEMINATION MANDATES**

WHEREAS, in strict adherence to the prevailing corpus of procedural jurisprudence, statutory imperatives, and doctrinal maxims enshrining the sacrosanct principles of procedural due process and equitable notice, the undersigned, acting in an abundance of caution and in full cognizance of binding jurisdictional predicates, hereby certifies that effectuate service of the foregoing instrument has been executed in conformity with the prevailing mandates of statutory law, codified procedural governance, and applicable adjudicatory directives.

NOTWITHSTANDING, in recognition of extrajudicial anomalies, convoluted procedural exigencies, and the demonstrable tactical exploitation of statutory architecture heretofore executed with artifice and calculated intent, it is hereby formally, unequivocally, and incontrovertibly noticed that the subject filing—individually, severally, and in the aggregate—shall not, under any conceivable construction, legal fiction, interpretative lens, or attenuated inference, be conveyed, transmitted, promulgated, or otherwise disseminated in any form, manner, or medium—whether directly, derivatively, incidentally, or by operation of constructive notice—to the individual personage of **Chad Mitchell Koehn**, aka Chad Koehn, C. Mitch Koehn, Chad M. Koehn, Chad Mitchell K., Chad Mitch K, Chad Koehn Mitchell, Chad Mitchel Koehn or any other derivative he may use nor to any juridical entity, corporate enterprise, organizational consortium, trust arrangement, professional association, individual, attorney, consort, person, associate, employee or extrinsic affiliate with whom Chad M. Koehn maintains, has maintained, or is reasonably deduced to have maintained any contractual nexus, fiduciary entanglement, agency affiliation, governance role, or informal economic coalescence.

Said prophylactic restriction is predicated upon the putative existence of an adjudicatory directive, the precise linguistic contours and jurisdictional breadth of

which remain presently indeterminate, but which is purported to have been issued **sub silentio.**

WHEREFORE, the undersigned, in full cognizance of the gravity and jurisdictional implications of the foregoing assertions, **reserves all procedural, statutory, and constitutional prerogatives** available under prevailing federal jurisprudence, including but not limited to the absolute right to seek adjudicatory redress for any and all infractions, violations, or legally cognizable transgressions arising from the conduct herein delineated.  To include without limitation emergency appeal to the Bankruptcy Appealette Board, the emergency notification to the 10th Circuit Court of Appeals and emergency service of UNITED STATES SUPREME COURT RULE 22 Application upon Justice Neil Gorsuch, of the same UNITED STATES SUPREME COURT.

<u>**Formal Entry of Appearance and Notice to All Parties**</u>

Let it be hereby formally noticed, advised, and acknowledged by all recipients of this legal notification that the **undersigned** makes this **entry of appearance** as an **interested party** pursuant to the applicable **rules, regulations, statutory provisions, and procedural mandates** governing these proceedings. Said appearance is made without **divulging, conceding, or directly affirming** any prior, existing, or underlying **relationship, connection, or affiliation** with **CHAD M. KOEHN** in any legal, financial, contractual, or extrajudicial capacity.

It is further acknowledged and asserted that **CHAD M. KOEHN** and **UNITED CAPITAL MANAGEMENT OF KANSAS INC.**—the latter having been previously recognized by the **State of Kansas** under the stylized corporate designation **"UNITEDCAPITALMANAGEMENTOFKANSASINC."**—have entered into a **contractual agreement** with the undersigned. Said agreement **explicitly prohibits** the undersigned from engaging in **communications, disclosures, or reporting** with the **Securities and Exchange Commission (SEC)** regarding any matters pertaining to **potential securities fraud, regulatory violations, financial malfeasance, corporate misconduct, or other violations of federal securities laws** allegedly perpetrated by **CHAD M. KOEHN** and/or **UNITED CAPITAL MANAGEMENT OF KANSAS INC.**

The aforementioned prohibition stands in **direct contravention** of **Securities and Exchange Commission Rule 21F-17(a)**, which **expressly forbids** any contractual or extrajudicial restriction that impairs, obstructs, or precludes an individual's right to **directly communicate** with the **SEC** regarding potential violations of the **Securities Exchange Act of 1934**, the **Dodd-Frank Wall Street**

**Reform and Consumer Protection Act**, or any other applicable securities regulations.

Accordingly, the **undersigned** places this formal notice on the record to underscore the existence of a **legally questionable** and **potentially unenforceable restriction** imposed by **CHAD M. KOEHN** and **UNITED CAPITAL MANAGEMENT OF KANSAS INC.**, which **stands in conflict with federal law, public policy, and SEC-mandated whistleblower protections**.

<u>**Formal Legal Notice and Comprehensive Disclaimer of Communication with Any Affiliated Party of Chad M. Koehn, including towit Mike Moran, Dale Takio and/or Craig Alan Brand and/or Cynthia D. Blanchard**</u>

In recognition of and with a heightened awareness of the **extraordinary and egregiously unlawful deprivation of liberty** previously suffered by the undersigned—wherein the undersigned endured an **unjustified, protracted, and perilously hazardous period of incarceration** within a **high-risk correctional facility** situated in **Newark, New Jersey**—the undersigned, exercising an **abundance of caution, heightened diligence, and unequivocal legal prudence, hereby submits and formally asserts the following legal declaration, disclaimer, and notice to all entities, individuals, and persons in receipt of this filing or otherwise privy to its content:**

1. The **undersigned explicitly and categorically repudiates, disclaims, and negates** any suggestion, implication, or inference that the undersigned has engaged in, is engaging in, or shall in any future capacity engage in **direct, indirect, incidental, or implied communication, transmission, discourse, correspondence, interaction, or any form of contact**—whether \*\*oral, written, electronic, digital, personal, constructive, substantive, ancillary, or otherwise—**with any individual, corporation, entity, association, governmental subdivision, limited liability company, trust, partnership, fiduciary, agent, officer, employee, contractor, affiliate, subsidiary, parent entity, or legal representative that is, was, or may in any capacity be affiliated, connected, associated, or otherwise related to Chad M. Koehn**, either personally, professionally, financially, legally, or extrajudicially.

2. The **electronic submission and filing of the instant legal notice, document, or other court-related material** has been **conducted exclusively via the PACER (Public Access to Court Electronic Records) system**, an official **United States Federal Judiciary platform** designated for the lawful and regulated submission of filings before the **United States Federal Bankruptcy Court**.

3. Any and all notifications, advisories, procedural transmissions, or legal correspondences that are the result of, incidental to, or arising from the **electronic submission of the instant filing within the PACER system** shall be deemed to constitute **notifications effectuated solely and exclusively by the United States Federal Bankruptcy Court itself**, pursuant to the **Federal Rules of Bankruptcy Procedure, the Local Rules of the United States Bankruptcy Court, and any relevant federal statutory provisions**

governing electronic service of process, notifications to creditors, and legal notice procedures in bankruptcy matters.

4. The **undersigned disavows, disclaims, and negates any and all assertion, implication, or supposition** that the undersigned has initiated, solicited, facilitated, attempted, or otherwise engaged in **any form of direct or indirect interaction, discussion, or communication**—whether voluntary, involuntary, constructive, or otherwise—with any entity or individual **falling within the orbit of Chad M. Koehn's personal, professional, corporate, financial, fiduciary, or legal sphere of influence, involvement, or association.  The undersigned is prohibited under coercion and threat of legal armageddon against the undersigned's elderly mother if the SEC or any other Federal regulatory authority or law enforcement entity is provided information regarding the large scale alleged ponzi scheme and/or money laundering activities involving CHAD M. KOEHN and his alleged co-conspirators and therefore this statement of interested party status pursuant with the rights under the Bankruptcy Code is explicitly filed without authorization to be given in any way to a member of the Federal Law Enforcement Community, the SEC, CFTC, IRS, FTC, FinCEN or other regulatory authority having obligations of regulatory oversight over Chad M. Koehn and/or his co-conspirators.**

5. Insofar as any individual, legal entity, judicial officer, administrative body, creditor, claimant, or party in interest **receives notice of the instant filing, its contents, or any procedural advisement emanating from its submission**, such notice shall be deemed to have been made **by and through the formal ministerial functions of the United States Federal Bankruptcy Court itself**, not by the undersigned personally, **indirectly, incidentally, or by any other construct or legal fiction that would purport to impute communication to the undersigned.**

6. The **undersigned reserves all rights, privileges, defenses, and immunities** afforded under the **United States Constitution, federal statutory law, common law doctrines, bankruptcy code provisions, judicial precedents, procedural safeguards, and equitable principles** to **preclude, reject, negate, and oppose** any and all mischaracterizations, erroneous inferences, wrongful interpretations, malicious distortions, or unfounded presumptions that would **suggest, insinuate, or falsely ascribe** any communicative act, participatory engagement, or intentional interaction by the undersigned with **Chad M. Koehn or any affiliated entity, organization, or person.**

Accordingly, all **creditors, claimants, parties in interest, government agencies, regulatory bodies, and legal representatives** are hereby formally placed on notice of the aforementioned assertions, reservations, disclaimers, and protections governing the legal position and conduct of the **undersigned** with respect to the instant matter and any peripheral proceedings related thereto.

**When filed to the US Federal Court this filing will be automatically sent to the parties of record pursuant with the Federal Court's automatic notification systems, therefore service so rendered pursuant with applicable law notwithstanding the aforementioned foregoing disclaimer.**



Michael Eric Nelson
Care of the United States Secretary of State for foreign location re-routing.
702.932.3434

Email only to be used after pre-notification as to email address sending documents from in order
to have the address authorized to receive said notices:  michaelericnelson @ilcoud.com *