### IN THE UNITED STATES BANKRUPTCY COURT FOR

### THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **RE:  GREEN COPPER HOLDINGS, LLC** <br><br> **EIN # xx-xxx9708 ) CASE NO.** <br><br> **25-10088-T** <br><br> **Chapter 7** | Case No.:  **25-10088-T** |

## MOTION FOR JUDICIAL NOTICE PURSUANT TO FED. R. EVID. 201 AND REQUEST FOR RELIEF REGARDING THE "SHIN'EN KAN GATE" AND ARTIFACTS ATTRIBUTED TO BRUCE GOFF & SHIN'EN KAN; FOR PROTECTION OF HISTORICALLY SIGNIFICANT PROPERTY HELD IN PUBLIC TRUST AND REPORTEDLY FUNDED IN PART THROUGH FEDERAL PROGRAMS - Request for Federal Investigation & Prosecution

[This title complies with standard Bankruptcy Court filing and docketing norms, making clear both the legal authority invoked (*Fed. R. Evid. 201*) and the relief sought. ]

TO THE HONORABLE UNITED STATES FEDERAL BANKRUPTCY COURT:

COMES NOW the undersigned interested juridical actor, and with all due solemnity, reverence, and deference to this Article I Tribunal of the United States Government, hereby proffers, tenders, and submits this Formal Notice and Motion for *Sua Sponte* Judicial Cognizance, pursuant to the inherent powers of this Court and in harmony with the doctrines enshrined within both procedural and substantive constitutional jurisprudence, regarding matters of transcendent historical significance involving the real property historically denominated as Shin'en Kan GATE, and the irreplaceable chattel artifacts and architectural fragments associated therewith, created by the late Bruce Goff, a preeminent architectural luminary and direct intellectual descendant of Frank Lloyd Wright, being both his protégé and mentee.

Said structure and its associated elements, comprising a constellation of architectural, aesthetic, and cultural innovations, were maliciously and feloniously

reduced to ruination via the criminal instrumentality of aggravated arson, a manifest act of cultural vandalism and an egregious affront to the public trust and collective memory of the citizenry of these, the UNITED STATES OF AMERICA.  Without a doubt all remnants of **SHIN'EN KAN** were granted in perpetuity to the non-profit public trust of the Friends of **SHIN'EN KAN**, said architectural remnants were placed in de facto perpetual trust with the museum(s) located at the NATIONAL HISTORIC LANDMARK, Price Tower located in Bartlesville, Oklahoma.   These artifacts from the arsoned property of **SHIN'EN KAN** were never to be subjected to sale or arbitrary removal, the removal via conversion and sale perpetrated by CYNTHIA D. BLANCHARD was an illegal act in detriment to the collective rights of the American People for which this Court has responsibility of reversing and referring such acts to Federal prosecutors for investigation and prosecution for the protection of the rights of the American Citizenry as a whole.

It is posited and averred that the remaining vestiges and corporeal remnants of the aforementioned historically seminal edifice retain intrinsic and transcendent herpetological value, the significance of which inheres not only in the architectural domain, but also within the broader juridical doctrine of patrimonial sovereignty — that is, the collectively owned, non-alienable historical legacy of the American polity.

Accordingly, this Honorable Court is urged to adjudicate, deliberate, and render findings consonant with jurisprudential symmetry established by coequal Article III Courts, though this Court sits in deliberation as an established Article I Federal Court, particularly as such courts have articulated and safeguarded the doctrine of national historic preservation, in accordance with the operative mandates of 43 **U.S.C. § 1451 et seq., 54 U.S.C. § 100101 et seq.,** and other compendious statutory instruments.

This matter bears further exigency in light of recent Executive Mandates issued by the President of the UNITED STATES OF AMERICA, wherein through Presidential Memoranda and other constitutionally permissible mechanisms of executive fiat, it has

been categorically asserted and reaffirmed that the unalienable rights of the American citizenry extend to the protection, perpetuation, and custodianship of historical patrimony, inclusive of architectural artifacts, artworks, and physical loci of national memory.   See generally, RESTORING TRUTH AND SANITY TO AMERICAN HISTORY; Executive Order signed by the President of United States President Donald John Trump on March 27, 2025

Said memoranda underscore the constitutional imperative to defend against the weaponization of judicial fora, both federal and local, by non-state actors and self-designated "sovereign citizens," including, but not limited to, individuals asserting extraterritorial or pseudo-diplomatic status under the auspices of non-recognized polities, such as the purported "nation" of Liberland, whose adherents — specifically Cynthia Blanchard and her self-identified consort ANTHEM HAYEK BLANCHARD — are reputed to profess libertarian anarcho-sovereign ideologies in direct contravention of the Supremacy Clause of the Constitution and the Federalist construct upon which this Nation is established.

These aforementioned individuals have, by action or omission, obstructed, usurped, and trampled upon the sacred and sovereign right of the American People to remain secure in their collective cultural inheritance, as embodied in museums, artifacts, and historic landmarks, and have acted ultra vires with regard to the legal custodianship of properties imbued with national historic significance.

Moreover, Presidential Executive Action, as recently promulgated by PRESIDENT DONALD JOHN TRUMP, demands the full mobilization of all lawful instrumentalities of the United States Government, including the judiciary both Article I and III, to "take action to reinstate the pre-existing monuments, memorials, statues, markers, or similar properties, as appropriate and consistent with 43 U.S.C. § 1451 et seq., 54 U.S.C. § 100101 et seq., and other applicable law." (Source: WhiteHouse.gov Presidential Action, March 2025)

In view of the foregoing, it is the axiomatic position of the undersigned that this Honorable Tribunal possesses both the juridical authority and constitutional obligation to take judicial notice of the above-referenced Executive Directives, the totality of American Jurisprudence, US Code, the laws of the land, and supreme law under the US Constitution and to issue all such remedial, injunctive, and declaratory relief as may be necessary and proper to safeguard the historical continuity, cultural sovereignty, and national patrimony of the American People — for posterity demands such stewardship, and justice, both temporal and eternal, requires no less.

This motion addresses existing conflicts of interest arising from insider transactions and relationships among creditors involved in the aforementioned proceedings. Despite assertions by Cynthia Blanchard, the control person for the purported debtor, broadcasted via interstate radio, that the gate was dispatched for repairs (presumably because no welder exists in Bartlesville, OK, or throughout the state of Oklahoma necessitating the **SHIN'EN KAN** Gate removal from the State of Oklahoma, transported illegally across state lines, creating Federal jurisdiction) with assurances of its return to the Price Tower in Bartlesville, subsequent statements reveal she received a $50,000 deposit from the individual tasked with the purported repairs. This pecuniary transaction remains conspicuously absent from the public records of the current bankruptcy proceedings, yet this $50,000 would be mandated a part of the bankruptcy estate if the estate should even proceed at all in the current form, given the underlying financial malfeasances purported present.

GANNETT Media has reported that the gate was sold, which aligns with Ms. Blanchard's claim of a first right of refusal to repurchase the gate after its initial sale. This claim is particularly concerning given her prior receipt of the gate and tens of millions of dollars' worth of museum exhibits, artifacts, and art collections.  In light of the foregoing, the undersigned respectfully requests that this Honorable Court take judicial notice of the aforementioned matters and conduct a thorough examination into the potential conflicts of interest and the disposition of assets related to the Shin'en Kan property.

Shin'en Kan, translating to "House of the Faraway Heart," was an architectural masterpiece located in Bartlesville, Oklahoma. Designed by the visionary architect Bruce Goff for art collector Joe D. Price, the residence was constructed in 1956, with subsequent additions in 1966 and 1974. This collaboration resulted in a dwelling that epitomized organic architecture, seamlessly integrating unconventional materials and innovative design elements.

https://www.philipsteadman.com/blog/the-house-of-the-faraway-heart/

https://www.narrowlarry.com/nlgoff-shinenkan.html

## **Architectural Significance of Shin'en KAN to the American Patrimony of these the United States of America:**

Bruce Goff's design for Shin'en Kan was a testament to his commitment to organic architecture, a philosophy emphasizing harmony between human habitation and the natural world. The structure featured a triangular framework adorned with gold-anodized aluminum and was supported by piers constructed from blue-green glass cullet and anthracite coal. Notably, the ceilings were lined with goose feathers, and the windows incorporated starburst patterns made from glass tubes originally intended for industrial use. The interior boasted a sunken "conversation pit" lined with plush carpeting, fostering an intimate gathering space. A hexagonal gallery was designed to house Price's extensive collection of Japanese art, complete with a glass-bottomed pool that served as both a skylight and an aesthetic centerpiece.

https://www.theguardian.com/artanddesign/2020/jan/10/michelangelo-kitsch-outsider-architect-bruce-goff



## Cultural and Historical Impact

Shin'en Kan held profound cultural significance, primarily through its role in housing Joe Price's esteemed collection of Edo-period Japanese art. The residence became a sanctuary for these artworks, many of which were undervalued in their native Japan at the time. By showcasing these pieces, Shin'en Kan played a pivotal role in revitalizing interest and appreciation for Japanese art in the United States. Furthermore, the home's innovative design challenged conventional architectural norms, contributing to broader discussions about the possibilities of residential architecture in America.

https://www.philipsteadman.com/blog/the-house-of-the-faraway-heart/

## Destruction and Legacy

Tragically, on December 26, 1996, Shin'en Kan was destroyed by a fire **determined to be an act of arson**. The blaze consumed the structure, leaving behind only charred remnants of the once-celebrated residence. Despite investigations, the perpetrator was never identified, and the case remains unsolved.

https://eu.examiner-enterprise.com/story/entertainment/arts/2019/09/01/remembering-layout-shin-8217-enkan/4225548007/

In the aftermath, **efforts were made to preserve and honor the legacy of Shin'en Kan. Artifacts from the residence, including its distinctive gate, were displayed at the Price Tower Arts Center in Bartlesville.** However, in April 2024, it was reported that these remaining artifacts were sold and removed from public display, sparking controversy and concern among preservationists and the local community.

 

Shin'en Kan stood as a beacon of architectural innovation and cultural appreciation, embodying Bruce Goff's avant-garde vision and Joe Price's dedication to the arts. Its creation marked a significant moment in American architecture, challenging traditional design paradigms and fostering a deeper appreciation for Japanese art. Though the physical structure no longer exists, its influence endures, inspiring continued dialogue on the intersections of art, architecture, and cultural preservation.

**Synopsis: The Arson of Shin'en Kan and Its Devastating Impact on America's National Historical Heritage**

Shin'en Kan, meaning "House of the Faraway Heart," was a revolutionary work of organic architecture located in Bartlesville, Oklahoma. Designed by Bruce Goff—a celebrated protégé of Frank Lloyd Wright—for art patron Joe D. Price, the structure stood as one of the most radical expressions of American mid-century design. Constructed in phases from 1956 to 1974, Shin'en Kan housed one of the most important private collections of Edo-period Japanese art in the Western Hemisphere. It was a national treasure—privately commissioned, but of profound public and historical significance.

On December 26, 1996, this cultural monument was deliberately burned to the ground in an act of arson. The blaze not only reduced a historic architectural achievement to ashes, but also obliterated irreplaceable artistic and cultural artifacts. To this day, the crime remains unsolved. The willful destruction of Shin'en Kan was not merely an attack on private property—it was an assault on the collective cultural memory and heritage of the American people.

**Impact on National Historical Heritage – American Citizenry are impacted**

The loss of Shin'en Kan represented a catastrophic rupture in America's architectural lineage. As one of the few built works by Bruce Goff to survive into the modern era, its destruction robbed current and future generations of the opportunity to study, visit, and appreciate a singular expression of American creativity and ingenuity. Its intricate structural forms, unorthodox use of industrial materials, and integration of Eastern and Western aesthetics made it an irreplaceable contribution to American design history.

The house was not protected by any enforceable federal historic preservation status, which highlights a glaring vulnerability in the legal protections afforded to privately owned but publicly significant cultural properties. Its obliteration serves as a chilling reminder of the precarious state of many architectural and artistic landmarks that fall outside conventional preservation frameworks.

## Violation of Rights of the American People to be protected in National Heritage

The destruction of Shin'en Kan is emblematic of a larger failure: the federal government's inability or unwillingness to proactively safeguard the nation's historic and cultural patrimony. The American people possess an intrinsic right to access, experience, and preserve their shared cultural heritage. When heritage sites of such magnitude are left vulnerable to arson, negligence, or unlawful sale, those rights are effectively trampled.

Moreover, in the aftermath of the fire, allegations of missing artifacts, misappropriated museum pieces, and the secretive sale of historic elements (such as the Shin'en Kan Gate) have only compounded public distrust. The perceived lack of accountability by those who assumed custodianship of the remnants of Shin'en Kan raises serious questions about fiduciary duty, ethical stewardship, and the erosion of public trust.

The arson of Shin'en Kan was not just the destruction of a building—it was the **desecration of a national icon**. Its loss underscores the urgent need for stronger legal frameworks to protect culturally significant structures, regardless of private ownership, and to affirm the American public's right to access, safeguard, and preserve its shared historical heritage. **Failing to act ensures the continued erasure of the physical embodiments of our national identity.**

## Preservation of the Shin'en Kan Artifacts as a Matter of Public Interest and National Historic Duty

The architectural and cultural artifacts originating from *Shin'en Kan*—a singular creation of Bruce Goff, protégé of Frank Lloyd Wright—constitute more than mere personal property or assets within a bankruptcy estate; they are historically significant cultural artifacts that belong, in spirit and legacy, to the American people. The destruction of *Shin'en Kan* by confirmed arson in 1996 already inflicted a

grievous cultural wound upon the national architectural heritage. The remaining artifacts are, therefore, all the more sacred and vital to preserve.



These surviving objects, including the *Shin'en Kan Gate* and museum-caliber pieces formerly housed in the structure, carry immense historical, architectural, and educational value. Their preservation is not merely a private concern but a public imperative—particularly where such artifacts were intended for or previously placed in public trust or public display, such as at the Price Tower Arts Center.

Allegations of their misappropriation, concealment, or improper sale—particularly in the absence of notice, court supervision, or public disclosure—raise significant concerns not only under bankruptcy law but under broader principles of fiduciary obligation, public trust, and the moral imperative to protect nationally significant heritage. The acts in the illegal sale of these items of public trust, warrants not only further judicial investigation, but direct referral for prosecution, of the criminal act(s) in the conversion and sale of these artifacts of National Historic importance. Whether the profits derived were received via BITCOIN or as stated during the meeting of the creditors Rule 341 hearing by Cynthia Blanchard sworn testimony that "wire transfers" were made, then WIRE FRAUD must be prosecuted.

Any act to dispose of these artifacts without proper judicial oversight, without compliance with applicable preservation statutes, or in contravention of public trust obligations, constitutes not only a potential dissipation of estate value but an irreparable loss to the nation's historical record.

Accordingly, the undersigned **respectfully urges this Honorable Court to treat all matters involving the disposition, transfer, or control of artifacts from _Shin'en Kan_ with the utmost scrutiny and solemnity**. Such actions must be governed not solely by the interests of creditors, but by the greater legal and moral obligation to preserve what little remains of this nationally significant architectural treasure.

It is herein averred, and respectfully placed into the evidentiary and jurisprudential record of this Honorable Court, that **Cynthia D. Blanchard**, a self-designated "control person" of the nominal debtor entity at bar, did acquire—whether through de jure assignment, constructive trust, or other fiduciary vehicle—a form of **beneficial stewardship** over an assemblage of **historically irreplaceable cultural artifacts and architectural patrimony**, the provenance of which is inextricably tied to the **National Historic Landmark** denominated as **Price Tower**, along with its ancillary museum holdings, documentary archives, and architecturally embedded cultural assets.

Said custodial entrustment was allegedly predicated upon Blanchard's own **public avowals and fiduciary assurances**, made not in obscurity but as reported and promulgated by national media conglomerate **GANNETT**, wherein she purportedly committed to the investment, dedication, and allocation of **a pecuniary quantum exceeding Ten Million United States Dollars (>$10,000,000.00)** for the **preservation, structural upkeep, and perpetual safeguarding** of said landmark and its historical appurtenances—an obligation articulated as a condition precedent for her assumption of possessory interest therein.

In consideration for this ostensible commitment, the said Blanchard was conveyed legal title to the Price Tower structure, together with all its tangible and intangible

historic accretions, for the **nominal and de minimis consideration** of **Ten United States Dollars ($10.00)**—a transaction which was memorialized via **Quit Claim Deed**, the authenticity and evidentiary weight of which are now **subject to Judicial Notice** pursuant to its prior filing in this matter, as per **Docket Entry No. 55, Exhibit B**.

Said Quit Claim instrument, executed by one **Brad Doenges** and filed within the applicable state land records registry, **expressly denotes** that the total consideration received was **less than One Hundred One United States Dollars (<$101.00)**, thereby circumventing any requirement of transfer tax remittance under the controlling state statutes governing real property conveyances.

Accordingly, this conveyance, which effectively transferred **an irreplaceable corpus of federally and culturally protected assets**—including but not limited to **museum pieces, archival materials, and architecturally integrated heritage objects**—into the exclusive dominion of a single private actor for a **nominal pecuniary sum**, raises **extraordinary questions of fiduciary integrity, constructive trust, and the adequacy of consideration**, particularly when such assets have been preserved for the **express benefit of future generations of the American citizenry**, consistent with the guiding mandates of both **federal historic preservation statutes** and the **Executive Directives** of the sitting President of these UNITED STATES OF AMERICA.

> In April, the <u>Bartlesville Examiner-Enterprise reported</u> that the Blanchards had started stripping the building of some of its artifacts, hocking them on 1stDibs through Dallas dealer <u>20c Design</u>. Someone tipped off the Frank Lloyd Wright Building Conservancy about the listed items from the Price Tower collection, which, in addition to FLW-designed furniture and fixtures, included the Shin'enKan gate by Bruce Goff, Wright's <u>mentee</u>. The organization sprang into action, reminding the couple of an existing easement they had on the property protecting items within the building from sale without the Conservancy's approval, granted during a period in 2011 when the building was seeking

> *recognition as a UNESCO World Heritage Site. After the Conservancy took legal*
> *action, making the matters public, the Blanchards <u>pushed back</u>, saying they*
> *weren't pillaging the tower but instead trying to save it and insisting that the*
> *easement expired with transfer of ownership. (In <u>a New York Times story</u> about*
> *the plight over Price Tower,* **Liz Waytkus, executive director of modern**
> **architecture preservation organization <u>Docomomo US</u>, said that the**
> **sold FLW items were akin to "trafficked goods," likening them to**
> **"pottery of vases from Egypt or Mesopotamia that were obtained**
> **through illegal ways.")**
> <u>*https://www.dwell.com/article/frank-lloyd-wright-price-tower-auct*</u>
> <u>*ion-controversy-wheres-the-uproar-e6752e07*</u>

Protecting the artifacts associated with Shin'en Kan is essential to preserving America's cultural heritage. Several federal statutes and case law support the safeguarding of such artifacts:

**1. National Historic Preservation Act (NHPA):**

The NHPA establishes a comprehensive program for the preservation of historic properties significant to the nation's heritage. It emphasizes the importance of protecting, rehabilitating, and maintaining historic sites and artifacts. While primarily focused on properties listed in the National Register of Historic Places, the principles of the NHPA underscore the federal commitment to preserving cultural artifacts of historical significance.

**2. National Stolen Property Act (NSPA):**

The NSPA **criminalizes the transportation of stolen property across state lines, including cultural artifacts. In *United States v. Schultz*, 333 F.3d 393 (2d Cir. 2003)**, the Second Circuit upheld the conviction of an art dealer involved in smuggling Egyptian artifacts, affirming that the NSPA applies to cultural property stolen in violation of foreign patrimony laws. <u>This case demonstrates the federal</u>

government's authority to prosecute individuals involved in the illicit trade of cultural artifacts.

https://www.theregreview.org/2021/04/17/saturday-seminar-regulation-stolen-cultural-artifacts/

**3. Convention on Cultural Property Implementation Act (CCPIA):**

The CCPIA implements the 1970 UNESCO Convention, enabling the U.S. to impose import restrictions on cultural property. In *United States v. An Original Manuscript Dated November 19, 1778*, the Southern District of New York ruled in favor of forfeiting a manuscript that had been part of the Mexican National Archives and was imported into the U.S. without authorization, highlighting the application of the CCPIA in protecting cultural heritage.

https://en.wikipedia.org/wiki/Convention_on_Cultural_Property_Implementation_Act

**4. Archaeological Resources Protection Act (ARPA):**

ARPA prohibits the unauthorized excavation, removal, or damage of archaeological resources on public and Indian lands. Although primarily applicable to federal and tribal lands, ARPA reflects the national policy against the illicit handling of cultural artifacts and underscores the importance of preserving archaeological resources.

https://www.theregreview.org/2021/04/17/saturday-seminar-regulation-stolen-cultural-artifacts/

**5. United States v. McClain, 545 F.2d 988 (5th Cir. 1977):**

This landmark case established that cultural property taken in violation of foreign patrimony laws could be considered stolen under U.S. law. The Fifth Circuit's decision in *McClain* has been influential in subsequent cultural property cases, reinforcing the legal framework for protecting cultural artifacts.

https://itsartlaw.org/2022/10/31/heritage-of-law-mcclain-at-forty-five/

These statutes and cases collectively affirm the federal government's commitment to protecting cultural artifacts and provide a legal foundation for the preservation of items associated with Shin'en Kan.

The fact that large preservationist experts have likened the illegal and illicit transfer across state lines and in some instances perhaps internationally the historical artifacts of ShinenKan and Frank Lloyd Wright contained within the National Historic Landmark are '*__akin to "trafficked goods,"__ likening them to "pottery of vases from Egypt or Mesopotamia that were obtained through illegal ways."*'

*https://www.dwell.com/article/frank-lloyd-wright-price-tower-auction-controversy-wheres-the-uproar-c6752e07*

---

## STATEMENT OF PUBLIC INTEREST

The undersigned respectfully submits this Statement of Public Interest to underscore the profound and compelling equities implicated by the continued possession, disposition, or potential alienation of the subject chattels, which are not to be conceived as mere fungible assets within a bankruptcy estate or the commercial marketplace. Rather, the artifacts in question constitute sui generis manifestations of national patrimony, each possessing inestimable historical, educational, cultural, and aesthetic gravitas. These artifacts—many of which originate from federally designated and publicly endowed institutions—embody the collective memory, identity, and sovereign heritage of the American People and, as such, occupy a privileged and constitutionally cognizable status within the broader matrix of public trust doctrine and heritological jurisprudence.

The improper removal, clandestine conveyance, or attempted commodification of these cultural assets—especially where such acts are undertaken without transparent legal authority or in derogation of established stewardship obligations—would constitute not merely a breach of fiduciary duty but an irreparable injury to the national corpus of cultural heritage, and potentially a

violation of both federal preservation statutes and international norms concerning the protection of cultural property in times of institutional dissolution or transition.

Moreover, where such artifacts were originally entrusted to institutions of public education, federally recognized cultural repositories, or National Historic Landmarks, the legal framework governing their custody and care must be interpreted in accordance with both statutory intent and constitutional principles favoring preservation, access, and public benefit. Such principles are enshrined within the National Historic Preservation Act (54 U.S.C. § 300101 et seq.), the **Museum and Library Services Act,** and reinforced by recent Presidential Executive Directives, which collectively affirm the governmental and civic responsibility to safeguard such patrimonial objects from the ravages of misappropriation, neglect, or unlawful export.

Accordingly, the undersigned asserts that there exists a paramount and exigent public interest in ensuring that the artifacts in question be meticulously preserved, properly inventoried, and—where circumstances warrant—returned to appropriate custodial institutions or otherwise reinstated under legitimate public stewardship. The undersigned further avers that permitting such items to be subjected to private alienation, commercial liquidation, or extra-legal transfer mechanisms would materially undermine the structural integrity of the public trust and irreversibly erode the cultural continuity owed to both current and future generations of American citizens.

In light of the foregoing, and pursuant to this Court's inherent powers to issue equitable relief consonant with the Constitution, applicable statutes, and the enduring doctrines of *parens patriae and cy pres*, it is respectfully urged that this Honorable Tribunal give full and deliberate consideration to the broader jurisprudential and civilizational implications at issue in the disposition of these items.

## REQUEST FOR JUDICIAL NOTICE PURSUANT TO FED. R. EVID. 201

**1. Legal Standard for Judicial Notice**

Federal Rule of Evidence 201(b) permits a court to take judicial notice of a fact that is not subject to reasonable dispute because it:

https://casetext.com/statute/united-states-code/title-28-appendix/federal-rules-of-evidence/articl e-ii-judicial-notice/rule-201-judicial-notice-of-adjudicative-facts/analysis?citingPage=1&sort=rele vance&sortCiting=date-descending

Is generally known within the trial court's territorial jurisdiction; or

1. Can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.
   a. https://www.law.cornell.edu/rules/fre/rule_201
2. Judicial notice is mandatory when requested by a party and supplied with the necessary information. **See Generally HKlaw.com**
   · https://www.hklaw.com/-/media/files/insights/publications/2009/10/better-living-through-ju dicial-notice/kiernan.pdf

**2. Facts Subject to Judicial Notice**

Movant respectfully requests that this Honorable Court take judicial notice of the following facts, which are not subject to reasonable dispute and are capable of accurate and ready determination by sources whose accuracy cannot reasonably be questioned:

- **Historical Significance of Shin'en Kan and Bruce Goff**: The Shin'en Kan residence, designed by the renowned American architect **Bruce Goff**, was a nationally significant example of mid-century organic architecture. Its destruction by arson in December 1996 resulted in the loss of a cultural landmark.
- **Entrustment of Artifacts to Price Tower Arts Center**: Following the destruction of Shin'en Kan, remaining artifacts, including the *"Shin'en Kan Gate"*, were entrusted to the **Price Tower Arts Center**, a museum located in Bartlesville, Oklahoma.
- **National Historic Landmark Status of Price Tower**: The **Price Tower** has been formally recognized as a **National Historic Landmark**, underscoring its architectural and cultural significance.
- **Federal Funding of Price Tower Arts Center**: The museum has reportedly received **federal funding**, potentially subjecting its holdings to federal preservation laws and public trust obligations.
- **Reports of Unauthorized Disposition of Artifacts**: There have been reports indicating the unauthorized sale or transfer of artifacts originally associated with Shin'en Kan, including the Gate, potentially in violation of fiduciary obligations and applicable federal statutes.

- ***The Lawsuit filed by the FRIENDS of SHINEKAN against Dr. Charles Holland Jr.
  etAl.*** Wherein the Friends of SHINEKAN won all cases and the legal opinion therein
  included is to the benefit of the Friends of ShinenKan; it should be noted the law firm
  wherein is operated in part by Jess Kane, City Attorney of Bartlesville Oklahoma.

---

## REQUEST FOR RELIEF - PRAYER FOR RELIEF

**WHEREFORE**, in view of the foregoing factual predicates, legal authorities, and
doctrines of public trust jurisprudence, and in light of the manifest and transcendent
public interest in safeguarding the cultural patrimony of the American People, the
undersigned respectfully and with utmost deference petitions this Honorable Court to
enter the following relief, and prays that the same be granted in a manner consonant
with the Court's inherent equitable powers, statutory authority, and constitutional
obligation to protect the interests of present and future generations of American
Citizens:

1. **That this Honorable Tribunal take Formal Judicial Notice**, pursuant to
   Federal Rule of Evidence 201(c), of the aforementioned facts, allegations,
   exhibits, statutory references, and associated public interest declarations as set
   forth herein and subsequently, and to incorporate such judicially noticed
   materials into the record **nunc pro tunc** for all purposes consistent with the
   preservation of public rights and interests;

2. **That this Court issue a Compulsory Judicial Order**, in the nature of a
   Mandamus or other appropriate injunctive writ, compelling the Debtor and/or any
   known or unknown Custodian(s), Assignee(s), Transferee(s), or Bailee(s) of the
   Bankruptcy Estate—including but not limited to the entity formerly denominated
   as the Price Tower Arts Center, Cynthia D. Blanchard, ANTHEM HAYEK
   BLANCHARD, and any agents, assigns, fiduciaries, family members, or affiliated
   persons acting in concert therewith—to produce a **full, sworn, and
   comprehensive accounting** and forensic inventory of all **movable and
   immovable artifacts, chattels, artwork, archival materials, and other
   tangible or intangible manifestations of cultural patrimony** directly or
   indirectly associated with the late **Bruce Goff**, the architectural site known as
   **Shin'en Kan**, and/or **Frank Lloyd Wright**, including items alleged to have been
   wrongfully removed, alienated, privatized, or otherwise subjected to unauthorized
   conversion or personal use, as detailed in existing pleadings, exhibits, and filings
   of the **Frank Lloyd Wright Building Conservancy** in collateral litigation
   presently pending before the Eleventh Judicial District of Oklahoma;

3. **That Judicial Notice be further taken of the adjudicated matter known as** *Friends of Shin'en Kan v. Charles Holland Jr. etAl,* **the dispositive ruling of which was upheld and memorialized by the Oklahoma Supreme Court**, and which affirms, either explicitly or by necessary implication, the enduring legal principle that **cultural artifacts originating from nationally significant sites and institutions destroyed through criminal arson** must be held perpetually in **constructive trust** for the benefit of the **sovereign People of the United States of America**, and that said artifacts form part of the **non-fungible corpus of National Historic Heritage** safeguarded by law for current and future generations;

4. **That this Court issue an immediate Provisional Stay and Temporary Injunctive Order**, enjoining and restraining any and all acts of sale, transfer, alienation, removal, encumbrance, deaccession, or any other form of dispositional interference with respect to the above-referenced historic artifacts, until such time as a full evidentiary review and adjudicative hearing can be held by this Court to determine the lawful custodianship, status, and provenance of said artifacts;

5. **That this matter be formally referred to the Office of the United States Trustee**, and further to any appropriate federal regulatory bodies, including but not limited to the **National Park Service (Historic Preservation Division), the Advisory Council on Historic Preservation, the Institute of Museum and Library Services, and the U.S. Department of Justice**, for **immediate inquiry into potential statutory violations**, fiduciary breaches, and misappropriations implicating federal preservation law, public trust doctrine, nonprofit compliance standards, and the unlawful commercialization of federally subsidized patrimonial property;

6. **That this Honorable Court effectuate a formal referral of this matter to the United States Department of Justice, Federal Bureau of Investigation (Art Crime Team), and all other applicable federal investigative and prosecutorial authorities**, to ensure immediate initiation of **criminal and civil enforcement proceedings** arising from any violations of federal law protecting cultural and historical property, including but not limited to 18 U.S.C. § 668 (Theft of Major Artifacts), 16 U.S.C. § 470aa et seq. (Archaeological Resources Protection Act), and related statutory and regulatory frameworks, so as to vindicate the **inalienable rights of the People of these United States** to their own historic patrimony when entrusted to non-profit or federally funded entities

acting under the guise of public benefit;

7. **That this Court grant such other, further, and ancillary relief as may be deemed just, equitable, necessary, or appropriate** under the totality of circumstances and consistent with the preservation of the **National Cultural Estate** of the American People, as well as the **prophylactic doctrines** safeguarding the public's enduring and irrevocable interest in the **eternal stewardship of national historic property** held in trust by public or semi-public entities, whose fiduciary responsibilities are not extinguished by bankruptcy or private financial interests.

8. Take such other and further remedial or prophylactic measures as this Honorable Court deems just, proper, equitable, and necessary to ensure the sanctity of the record, the dignity of the judicial process, and the rights of the American People—**who are, and shall remain in perpetuity, the ultimate beneficiaries and rightful stewards of their own national historical heritage.**

Given the national significance of Bruce Goff's work and the unique nature of the Shin'en Kan artifacts, it is imperative that these items be recognized as having national historic importance and be afforded the protections commensurate with such a designation.

A document filed pro se is **"to be liberally construed,"** Estelle, 429 U.S. "pro se … however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers," ibid. Cf. Fed. Rule Civ. Proc. 8(f) ("All pleadings shall be so construed as to do substantial justice"). "filings generously and with the ***leniency due pro se litigants***", see *Erickson v. Pardus, U.S. 127 S.Ct. L.Ed.2d (2007); Andrews v. Heaton, 483 F.3d (10th Cir.2007).*

**Respectfully submitted;** 30 March 2025

Michael Eric Nelson
Care of the United States Secretary of State for foreign location re-routing.
702.932.3434

Email only to be used after pre-notification as to email address sending documents from in order to have the address authorized to receive said notices:  michaelericnelson @ilcoud.com *

## CERTIFICATE OF SERVICE & DECLARATION OF RESTRICTED DISCLOSURE

**IN THE MATTER OF JUDICIAL NOTICE AND PROCEDURAL ASSERTION OF RESTRICTIVE NON-DISSEMINATION MANDATES**

WHEREAS, in strict adherence to the prevailing corpus of procedural jurisprudence, statutory imperatives, and doctrinal maxims enshrining the sacrosanct principles of procedural due process and equitable notice, the undersigned, acting in an abundance of caution and in full cognizance of binding jurisdictional predicates, hereby certifies that effectuate service of the foregoing instrument has been executed in conformity with the prevailing mandates of statutory law, codified procedural governance, and applicable adjudicatory directives.

NOTWITHSTANDING, in recognition of extrajudicial anomalies, convoluted procedural exigencies, and the demonstrable tactical exploitation of statutory architecture heretofore executed with artifice and calculated intent, it is hereby formally, unequivocally, and incontrovertibly noticed that the subject filing—individually, severally, and in the aggregate—shall not, under any conceivable construction, legal fiction, interpretative lens, or attenuated inference, be conveyed, transmitted, promulgated, or otherwise disseminated in any form, manner, or medium—whether directly, derivatively, incidentally, or by operation of constructive notice—to the individual alleged coconspirator of the debtor control person CYNTHIA D. BLANCHARD and her consort ANTHEM HAYEK BLANCHARD by personage of **Chad Mitchell Koehn**, aka Chad Koehn, C. Mitch Koehn, Chad M. Koehn, Chad Mitchell K., Chad Mitch K, Chad Koehn Mitchell, Chad Mitchel Koehn or any other derivative he may use nor to any juridical entity, corporate enterprise, organizational consortium, trust arrangement, professional association, individual, attorney, consort, person, associate, employee or extrinsic affiliate with whom Chad M. Koehn maintains, has maintained, or is reasonably deduced to have maintained any contractual nexus, fiduciary entanglement, agency affiliation, governance role, or informal economic coalescence.

Said prophylactic restriction is predicated upon the putative existence of an adjudicatory directive, the precise linguistic contours and jurisdictional breadth of which remain presently indeterminate, but which is purported to have been issued **sub silentio.**

Accordingly, all **creditors, claimants, parties in interest, government agencies, regulatory bodies, and legal representatives** are hereby formally placed on notice of the aforementioned assertions, reservations, disclaimers, and protections governing the legal position and conduct of the **undersigned** with respect to the instant matter and any peripheral proceedings related thereto.

When filed to the US Federal Court this filing will be automatically sent to the parties of record pursuant with the Federal Court's automatic notification systems, therefore service so rendered pursuant with applicable law notwithstanding the aforementioned foregoing disclaimer.

30 March 2025



Michael Eric Nelson
Care of the United States Secretary of State for foreign location re-routing.
702.932.3434

Email only to be used after pre-notification as to email address sending documents from in order
to have the address authorized to receive said notices:  michaelericnelson @ilcoud.com *