FILED

## IN THE UNITED STATES BANKRUPTCY COURT FOR

## THE NORTHERN DISTRICT OF OKLAHOMA

**RE:  GREEN COPPER HOLDINGS, LLC**

**EIN # xx-xxx9708 ) CASE NO.**

**25-10088-T Chapter 7**

Case No.:  **25-10088**

**MOTION FOR DECLARATORY JUDGMENT AFFIRMING WHISTLEBLOWER PROTECTIONS AND SAFEGUARDING NATIONAL HISTORIC PATRIMONY WITHIN BANKRUPTCY PROCEEDINGS - Protecting the Rights of the American People to be secure in their national cultural heritage**

COMES NOW, the undersigned interested party (hereinafter "Movant"), and respectfully submits this Motion for Declaratory Judgment, seeking judicial affirmation of the applicability and comprehensive scope of federal whistleblower protections as enshrined in statutes including, but not limited to, the Sarbanes-Oxley Act (SOX), the Dodd-Frank Wall Street Reform and Consumer Protection Act, and the False Claims Act (FCA). This motion pertains specifically to the reporting of malfeasances such as conflicts of interest, asset concealment, fraudulent misrepresentations, illicit transfers, insider dealings, control person liabilities, and excess benefit transactions within the milieu of bankruptcy proceedings, particularly those implicating entities of public, quasi-public, nonprofit, and not-for-profit character. Furthermore, Movant implores this Honorable Court to recognize and address the imperative to protect the United States' national historic heritage and architectural patrimony from schemes designed to misappropriate cultural artifacts of profound national significance. In support of this Motion, Movant states as follows:

## I. JURISDICTION AND VENUE

1. This Court exercises jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.

2. This matter constitutes a core proceeding under 28 U.S.C. § 157(b)(2).

3. Venue is appropriately vested in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

## II. BACKGROUND

1. Movant holds the status of a party in interest in the bankruptcy proceedings concerning Green Copper Holdings LLC and Copper Tree Inc. a dual bankruptcy proceedings under two different case numbers, seemingly assigned the same Article I Judge and the exact same appointed trustee and US Trustee, yet the two cases are directly related as one entity owns 100% of the other entity and therefore the creditors including the US FEDERAL GOVERNMENT, the US TREASURY and various US FEDERAL Agencies, Bureaus, Commissions, Directorates, and Services are directly impacted to the detriment of the American citizenry.

2. It has come to Movant's attention that Copper Tree Inc. has been erroneously docketed as a zero-asset bankruptcy. Contrary to this designation, Copper Tree Inc. maintains full ownership (100%) of a New Mexico Limited Liability Company (LLC), namely GREEN COPPER HOLDINGS LLC, both of which are under the direct influence and control of Cynthia D. Blanchard the CONTROL PERSON and her purported consort Anthem Hayek Blanchard (who faces Federal Fraud charges in the US District of Kansas Federal Article

III Court for actions that are directly related hereto these proceedings, those actions are prosecuted by the SEC out of the 10th Circuits DENVER Colorado offices), which itself possesses substantial assets. Consequently, these assets should be rightfully attributed to Copper Tree Inc., thereby impacting the bankruptcy estate's valuation and the equitable distribution to creditors and stakeholders.

3. Upon meticulous examination of the Debtors' filings and reports from active participants and witnesses to the 11 U.S.C. § 341 meeting of creditors—during which Ms. Cynthia Diane Blanchard (née French), a control person for the Debtor(s), provided testimony under oath—Movant along with others have identified a constellation of potential irregularities and malfeasances, including but not limited to:

a. **Conflicts of interest among legal representatives and fiduciaries**; whether those be between the bankruptcy trustee and the Oklahoma Historical Society that had no interest in the museum or the Price Tower until the appointment of Patrick Malloy who is ostensibly married in union to Karen Keith vice president of said organisation or public nonprofit entity, PRICE TOWER ARTS CENTER INC. These individuals, whose designations encompass titles such as "Executive Director," "Chairman," **"Treasurer,"** various "Board Members," "Advisory Members," and other affiliates and/or members are implicated in orchestrating or acquiescing to excess benefit transactions as delineated under Section 4958 of the Internal Revenue Code.

b. **Deliberate concealment and misrepresentation of assets**;The litany of

alleged malfeasances is so extensive that a comprehensive enumeration would be an exercise in futility. Suffice it to say, the purported transgressions encompass the unauthorized disposition of invaluable artifacts, not solely through the facilitation of interstate wire transfers—whereby these irreplaceable constituents of our nation's cultural and historical patrimony were illicitly transported across state lines—but also through the clandestine relocation of myriad artifacts from the esteemed Price Tower to the private domicile of one Cynthia Blanchard. This latter allegation finds substantiation in the assertions proffered by the Frank Lloyd Wright Building Conservancy <u>within their responsive pleadings to a lawsuit initiated by Ms. Blanchard herself—a classic case of the best defense being a vigorous offense</u>. In this audacious legal maneuver, Ms. Blanchard endeavors to invalidate the conservation and preservation easement, a protective covenant she now contends is nonexistent.

https://www.nps.gov/subjects/historicpreservation/laws.htm

Adding a layer of public spectacle to this legal imbroglio, Ms. Blanchard, accompanied by her personal counsel, Paul Aubert—who, in a remarkable display of professional multitasking, simultaneously claims representation of the Price Tower entities and is identified as the architect behind the initial Securities and Exchange Commission's federal fraud charges levied against Ms. Blanchard's consort, Anthem Hayek Blanchard—took to the national airwaves. This media foray appears to be a calculated attempt to sway public

opinion and obfuscate the gravity of the alleged misappropriations.   The egregious and nefarious actions perpetrated by Paul Douglas Aubert, an attorney ostensibly licensed solely within the jurisdictions of Texas and Louisiana, alongside his co-conspirator, Cynthia Diane Blanchard, constitute a flagrant and contemptuous affront to the foundational principles of legal ethics and fiduciary duty. Aubert's audacious and unauthorized encroachment into the legal domains of Kansas and Oklahoma, wherein he lacks licensure and the requisite authority to practice law, exemplifies a blatant disregard for the sacrosanct boundaries established to uphold the integrity of the legal profession.  The duplicitous stratagem orchestrated by Aubert and Blanchard was meticulously designed to obfuscate and conceal their malevolent intent: a calculated endeavor to deceive the membership, officers, directors, and fiduciaries of the Price Tower Arts Center Inc. into relinquishing dominion over a nationally treasured edifice. This architectural marvel, conceived and actualized by the illustrious Frank Lloyd Wright, encompasses a museum, convention center, residential apartments, offices, multiple bars and restaurants, a gift shop, and a boutique hotel. **The surreptitious objective was to expropriate this invaluable asset, which has been the beneficiary of substantial federal funding, thereby defrauding the American public of its rightful heritage and cultural patrimony.**   Central to this elaborate artifice was the clandestine bribery and inducement of select insiders, whom Blanchard allegedly enticed with promises of illicit wealth and privileges, conditional upon their complicity in this premeditated scheme. The veracity of

these allegations is corroborated by the forthright disclosures of Craig Alan

Brand, an attorney and shareholder, who, in an act of commendable integrity,

repudiated the devious overtures extended by Blanchard and Aubert. Brand's

candid revelations to national and international media outlets, including the

Bartlesville Examiner-Enterprise, have illuminated the sordid truth of the lies,

coercion, trickery, extortion, and obstruction of justice orchestrated by

Blanchard. His testimony delineates a concerted effort to deceive the public

and engage in excess benefit transactions with various fiduciaries, officers,

directors, and members of the Price Tower Arts Center Inc., all under the

guise of a get-rich-quick scheme. The ultimate victims of this chicanery are

the American people, collectively divested of their national historic heritage

and the cultural artifacts entrusted to public stewardship for the enrichment of

present and future generations.

https://eu.examiner-enterprise.com/story/news/local/2024/11/25/price-tower-o
wner-claims-fraud-pressure-tactics-over-failed-sale/76298660007/

The gravity of these transgressions cannot be overstated. The deliberate

misrepresentation and unauthorized practice of law by Aubert, coupled with

Blanchard's calculated deceit and bribery, not only constitute severe violations

of legal and ethical standards but also represent a profound betrayal of public

trust. These actions have precipitated the unlawful alienation of assets of

incalculable historical and cultural significance, warranting rigorous judicial

scrutiny and the imposition of appropriate sanctions to redress the egregious

harm inflicted upon the collective heritage of the nation.

 c. **Accounting discrepancies and financial statement irregularities;**

especially wherein the accountant listed as a creditor is the accountant for

numerous other alleged shell companies of Cynthia D. Blanchard and her

consort Anthem Hayek Blanchard including multiple entities involved in the

Federal Fraud Charges brought by the **US Federal Govt. <u>out of the</u>**

**<u>DENVER Colorado Offices</u> of the Securities and Exchange Commission;**

*…pursuant to which the current trustee—namely, GREEN COPPER*

*HOLDINGS LLC, a New Mexico limited liability company, and COPPER TREE*

*INC., a Delaware corporation, both of which are under the contemporaneous*

*and unilateral control of the same individual designated as a "control person,"*

*to wit, CYNTHIA D. BLANCHARD—has intentionally and with apparent*

*strategic purpose caused documents and communications to be submitted to*

*the regional office of the United States Securities and Exchange Commission*

*(SEC) located in Chicago, Illinois, despite Trustee PATRICK J. MALLOY III*

*possessing actual and constructive knowledge that said office is neither within*

*the territorial jurisdiction of the United States Court of Appeals for the Tenth*

*Circuit, nor the office responsible for investigating or bringing civil*

*enforcement actions related to the federal securities fraud allegations*

*currently asserted by the SEC against ANTHEM HAYEK BLANCHARD and*

*ANTHEM HOLDINGS COMPANY. Said allegations, civil in nature and within*

*the statutory authority of the SEC, do not constitute criminal proceedings, as*

*the SEC lacks prosecutorial power to bring criminal indictments, which remain*

*solely within the jurisdiction of the United States Attorneys operating under the Department of Justice. At all relevant times material to the SEC's civil allegations, CYNTHIA D. BLANCHARD served in executive and fiduciary capacities—including but not limited to President, co-founder, majority shareholder, and board member—of ANTHEM HOLDINGS COMPANY, and is further identified through photographic and testimonial evidence as having been personally present at meetings during which the SEC contends material misrepresentations, erroneous calculations, and omissions were allegedly conveyed to prospective investors. Notwithstanding the aforementioned, Trustee MALLOY has nonetheless certified to the Court that materials concerning the disposal or potential alienation of a federally recognized National Historic Landmark—along with numerous unregistered museum artifacts, cultural relics, and original artworks, some of which are reported to have received federal grant funding and nonprofit support earmarked for preservation—were directed to the SEC's Chicago office, thereby raising substantial jurisdictional and procedural concerns regarding the propriety of forum selection and the potential obfuscation of oversight by the SEC's Denver regional office, which is, by statute and geography, the competent civil enforcement authority in this matter.*

**D. INSIDER TRANSACTIONS** - The engagement in self-dealing transactions by fiduciaries and insiders, to the detriment of creditors, and the American public at-large, is exemplified by the involvement of numerous individuals holding, or having held, positions of authority within the public nonprofit entity,

PRICE TOWER ARTS CENTER INC. These individuals, whose designations encompass titles such as "Executive Director," "Chairman," **"Treasurer,"** various "Board Members," "Advisory Members," and other affiliates and/or members are implicated in orchestrating or acquiescing to excess benefit transactions as delineated under <u>Section 4958 of the Internal Revenue Code</u>. The documentary evidence submitted for judicial notice, specifically Document 55, Exhibit B, in the matter of GREEN Copper Holdings LLC of New Mexico, substantiates these assertions. The failure of these fiduciaries to initiate corrective measures, <u>including the rescission of transactions involving Cynthia D. Blanchard, Anthem Hayek Blanchard, and the entities Copper Tree or Green Copper Holdings,</u> exacerbates the severity of the infractions. Pursuant to the provisions of Section 4958, such inaction escalates the excise tax liability from an initial tier of 25% and only civil proceedings to an augmented rate of 200% of the excess benefit amount and MANDATORY referral and consultant for immediate CRIMINAL PROSECUTION. Furthermore, this dereliction necessitates mandatory referral for criminal investigation and potential prosecution. <u>Accordingly, it is incumbent upon this Honorable Court to direct the appointed Trustee, the United States Trustee, and the Department of Justice</u> to effectuate a referral to the **Internal Revenue Service Criminal Investigation Division (IRS-CI)**. Given the transnational dimensions of the alleged malfeasance, coordination with the **<u>Joint Chiefs of Global Tax Enforcement (J5)</u>** is also warranted to facilitate comprehensive investigation and enforcement actions.

e. Potentially fraudulent statements and omissions within bankruptcy filings; as previously so noted in formal requests for JUDICIAL NOTICE pursuant with FRE, FRCP and Bankruptcy rules which mandate the following of the aforementioned therefore necessitating the knowledge of the Court to the malfeasances existing in the record and the matter now before the bar;

f. **Schemes orchestrated to misappropriate cultural artifacts and assets of national historic significance**, thereby undermining the United States' architectural heritage and patrimony; as previously referenced in tremendous detail and within those requests for Judicial Notice of the same;

4. Movant respectfully petitions this Honorable Court for declaratory relief to affirm the applicability of federal whistleblower protections within the ambit of bankruptcy proceedings. This request is precipitated by the imperative to report to pertinent authorities—including the Office of the United States Trustee and designated state and federal investigative and prosecutorial bodies—concerning observed malfeasance, while ensuring safeguarding against potential retaliatory measures.   Historically, individuals who have illuminated fraudulent activities have been subjected to egregious retaliatory actions, encompassing physical assaults, unlawful detainment, spurious criminal allegations, and threats to personal safety, including instances culminating in fatality. Notably, in a separate criminal racketeering case involving parties pertinent to these proceedings, a whistleblower's demise underscores the peril inherent in such disclosures. Moreover, threats have

extended to minor children, elderly parents, extended family members, and associates of those who engage with judicial entities, law enforcement, regulatory agencies, or the media.   Documented instances include deliberate attempts to inflict harm through allergen-laced garments intended to poison the undersigned, as well as widespread intimidation tactics aimed at silencing potential informants. These actions have engendered a climate of profound fear, as extensively chronicled by reputable media conglomerates. Such reports detail individuals speaking under conditions of anonymity due to legitimate apprehensions of reprisal for exposing illicit activities, including unauthorized sales, misappropriation, theft, financial misconduct, coercion, extortion, and systematic obstruction of justice.  The gravity of the situation is further amplified by the involvement of Cynthia Blanchard, who, during the material times pertinent to the federal fraud case prosecuted in Kansas against her spouse and Anthem Holdings Company—a company where she has asserted roles including majority shareholder, president, co-founder, and board member—was actively serving in these capacities concurrent with the alleged fraudulent activities delineated by the federal government.   In light of these circumstances, Movant seeks a judicial declaration affirming that federal whistleblower statutes provide unequivocal protection within bankruptcy contexts, thereby ensuring that individuals can fulfill their ethical and legal obligations to report misconduct without fear of retribution.

The undersigned Movant hereby expressly, unequivocally, and with all due legal force and effect, disclaims, rebukes, and categorically refuses any obligation, duty, or expectation—whether express, implied, contractual, statutory, fiduciary, moral, or otherwise construed—to report, disclose, or otherwise transmit any information, allegation, suspicion, concern, or assertion, whether factual or theoretical, to the United States Securities and Exchange Commission ("SEC") or any of its subdivisions, bureaus, officers, agents, delegates, or authorized representatives. Such refusal is predicated not merely upon the undersigned's non-registration and non-affiliation with the SEC as a regulated entity or statutory filer, but is also in strict deference to, and in avoidance of potential violations of, Rule 21F-17(a) of the SEC's Rules promulgated under the Securities Exchange Act of 1934, as amended—codified at 17 C.F.R. § 240.21F-17(a)—which prohibits any action, agreement, or condition that impedes or dissuades individuals from communicating directly with the Commission regarding possible securities law violations, while simultaneously creating significant ambiguity and legal risk for those who may find themselves compelled to disclose but are simultaneously bound by confidentiality provisions or subject to retaliatory threats, as herein wherein the undersigned is under constant and persistent direct lethal threats, scorched earth litigation, threats to elderly family members, minor children, relatives, sibling(s), and others directly connected to the undersigned if the undersigned were to voluntarily or be forced to otherwise divulge, provide or speak with any regulatory authority or new media organisation regarding the

person or regulated entities controlled by Chad M. Koehn.  Though Koehn is alleged to have a direct fiduciary and financial role within Anthem Holdings company sitting upon its board of directors with both Blanchards and any and all other interactions of Koehn with the Blanchard's and their purported enterprises or shell entities.

Moreover, the Movant is bound, whether directly or derivatively, by contractual instruments and restrictive covenants—**entered into under duress, coercion, or other undue influence**—by or at the behest of one CHAD M. KOEHN, a person alleged to be a material participant, instigator, or co-conspirator in acts of market manipulation and securities-related misconduct in connection with, among others, CYNTHIA D. BLANCHARD and ANTHEM HAYEK BLANCHARD, involving both domestic and transnational financial instruments, public offerings, and corporate disclosures that fall under the purview of federal and international securities regimes.

The undersigned further asserts that not only has he, personally and directly, but that dozens of other known individuals, and potentially hundreds of unknown or unnamed persons, have been subject to a systemic, pervasive, and ongoing pattern of intimidation, coercion, extortion, psychological manipulation, harassment, gaslighting and threats of adverse legal, financial, reputational, or physical consequence, all aimed at deterring or wholly preventing any communication, cooperation, or disclosure to the SEC or any equivalent or adjacent regulatory authority, whether federal, state, or foreign. These threats have been made with the intent and effect of obstructing lawful reporting and chilling lawful whistleblower activity, in violation of not only SEC

Rule 21F-17(a) but also potential federal statutes including, inter alia, the Dodd-Frank Wall Street Reform and Consumer Protection Act and 18 U.S.C. § 1513(e) (relating to retaliation against informants). Said threats have allegedly originated from or been traceable to CHAD M. KOEHN in his directed role as coconspirator in a number of alleged shell companies formed and operated at the direction of Cynthia D. Blanchard the control person of the purported entity herein filing for Chapter 7 liquidation as part of what has been globally reported by news media by a bar licensed attorney as a premeditated plan for quick flip of the National Historic Landmark and associated museums, artifacts, museum exhibits, art collections and other significant national historic cultural patrimony of the people of the United States—Koehn a formerly a licensed securities broker, who is documented to have been subjected to disciplinary proceedings, monetary sanctions, and professional suspension—and any business entity, trust, limited liability company, partnership, corporation, or other enterprise with which said individual is or may in the future become associated in any legal, beneficial, managerial, or representative capacity, the undersigned strictly prohibits the disclosure hereof this filing and any other filings made to the Federal bankruptcy court which are filed under exigent circumstances given the past reported and ongoing threats to national historical cultural artifacts and the national historic patrimony of the american people, who at all times have a right to the protection of their collective national historic cultural artifacts.

## III. LEGAL BASIS FOR DECLARATORY RELIEF

1. The Declaratory Judgment Act, codified at 28 U.S.C. § 2201, empowers federal courts to "declare the rights and other legal relations of any interested party seeking such declaration," thereby providing a mechanism for resolving uncertainties and affirming legal protections.

2. Federal statutes, notably the Sarbanes-Oxley Act (18 U.S.C. § 1514A), the Dodd-Frank Act (15 U.S.C. § 78u-6), and the False Claims Act (31 U.S.C. §

3730(h)), enshrine robust protections for whistleblowers against retaliation, particularly for those reporting fraudulent activities and violations of federal law.

3. The Sarbanes-Oxley Act's whistleblower provisions have been judicially interpreted to extend protections to employees of publicly traded companies who report various forms of fraud, including bankruptcy fraud. In *Murray v. UBS Securities, LLC*, the Supreme Court elucidated that under SOX, a whistleblower need only demonstrate that their protected activity was a contributing factor in the unfavorable personnel action, without necessitating proof of retaliatory intent.

4. The Dodd-Frank Act established the Securities and Exchange Commission (SEC) Whistleblower Program, incentivizing individuals to report securities violations, which encompass fraudulent activities that may arise during bankruptcy proceedings.

5. The False Claims Act authorizes private individuals to initiate qui tam actions on behalf of the government against entities defrauding federal programs, a provision that can encompass fraudulent conduct within bankruptcy contexts.

6. The National Historic Preservation Act (NHPA), codified at 54 U.S.C. § 300101 et seq., articulates a national policy for the preservation of historical and cultural foundations of the United States. Section 106 of the NHPA mandates that federal agencies consider the effects of their undertakings on historic properties and afford the Advisory Council on Historic Preservation a reasonable opportunity to comment. This statutory framework underscores the imperative to protect properties of historic significance from adverse effects, including those that may arise in bankruptcy proceedings.  https://www.law.cornell.edu/cfr/text/7/3100.41

7. Regulatory provisions at 36 C.F.R. § 800.10 imposes special requirements for protecting National Historic Landmarks, mandating that agency officials notify the Secretary of the Interior of any consultations involving such landmarks and invite the Secretary to participate, thereby ensuring heightened scrutiny and preservation of these irreplaceable assets. https://www.law.cornell.edu/cfr/text/36/800.10

8. Judicial precedents further illuminate the legal landscape concerning the misappropriation of cultural property. In *City of Gotha and Federal Republic of Germany v. Sotheby's and Cobert Finance S.A.*, the High Court of England and Wales addressed the restitution of a misappropriated painting, emphasizing that the passage of time does not legitimize the possession of stolen cultural artifacts. The court recognized Germany's legitimate title to the painting and rejected the defense

of limitation, <u>underscoring the principle that theft negates the acquisition of good title by subsequent possessors.</u>

https://www.casemine.com/judgement/uk/6394d13d9a341c7fcf9c93e3

9.   Similarly, in *Menzel v. List*, the New York Court of Appeals dealt with the restitution of a painting by Marc Chagall that had been **seized by the Nazis during World War II. The court ruled in favor of the original owner's widow, affirming that a thief cannot pass good title,** and ordered the return of the painting. This case set a significant precedent in U.S. law regarding the recovery of art looted during wartime.
https://en.wikipedia.org/wiki/Menzel_v._List

10.  In the Australian case *Milpurrurru v. Indofurn Pty Ltd*, the Federal Court addressed the unauthorized reproduction of Indigenous artworks on carpets. The court awarded damages to the artists, **recognizing the cultural harm caused by the misappropriation of their work and setting a precedent for the protection of [Indigenous] cultural expressions under copyright law**.

https://en.wikipedia.org/wiki/Milpurrurru_v_Indofurn_Pty_Ltd

11.  These cases collectively underscore the judiciary's commitment to protecting cultural heritage and ensuring that misappropriated cultural properties are restored to their rightful owners. They highlight the courts' recognition of the unique value of cultural artifacts and the necessity of safeguarding them against unlawful appropriation and exploitation.

12.  In the context of U.S. jurisprudence, whistleblowers have traditionally utilized qui tam provisions under the False Claims Act (FCA) to report fraudulent activities against the government. Under these provisions, private individuals, known as realtors, can initiate lawsuits on behalf of the government and share in any financial recovery. However, the specific mechanism of filing as an interpleader to inform the government of fraud is not a recognized or standard practice within this legal framework.  <u>Yet now we stand at a precipice that whistleblowers no long are afforded any protection under law,</u> and those alleged to have done wrong **can weaponize the Courts through "lawfare" in order to obtain extreme value from the American populous** including the **disenfranchisement of the National Historic Patrimony**

**of the american people by simply weaponizing the judicial system** with their ill gotten gains against any would be whistleblower standing in their way to **fleece the American people of their rightful national historical patrimony;**

https://www.dlapiper.com/en/insights/publications/2024/10/zafirov-v-florida-medical-associates-llc

13. **Qui Tam Actions and Whistleblower Standing:**   The FCA's qui tam provisions empower whistleblowers to act as private attorneys general, bringing suits in the name of the government against entities alleged to have committed fraud. This approach has been upheld in various courts, affirming the standing of whistleblowers to initiate such actions.

https://en.wikipedia.org/wiki/United_States_ex_rel._Polansky_v._Executive_Health_Resources%2C_Inc.

14. While the FCA provides a structured avenue for whistleblowers to report fraud through qui tam actions, the use of interpleader for such purposes is not supported by legal precedent. Whistleblowers aiming to inform the government of fraud should pursue established channels, such as filing a qui tam lawsuit under the FCA or reporting to relevant government agencies. Given the evolving legal landscape and recent constitutional challenges.  **The American people must have the right of self determination** and the freedom to protect themselves from the grifters, scammers and thieves those who through the acts of force and deception take and steal the American taxpayers money, resource and in this case National Historic identity and national historic cultural patrimony.

15. **Sarbanes-Oxley Act (SOX) Whistleblower Protections:**   The Sarbanes-Oxley Act provides robust protections for whistleblowers reporting corporate fraud, **which can extend into bankruptcy contexts**. Section 806 of SOX prohibits. In *Murray v. UBS Securities, LLC*, the U.S. Supreme Court ruled that whistleblowers need only demonstrate that their protected activity was a contributing factor in an unfavorable action, without proving retaliatory intent.

16. Automatic Stay and Whistleblower Claims:   In bankruptcy cases, the automatic stay provision under 11 U.S.C. § 362(a) halts most judicial this stay to whistleblower claims. For instance, in *Carter v. Commissioner*.

17. **Whistleblower Standing in Bankruptcy Context:** In *United States ex rel. Gebert v. Transport Administrative Services*.

18. **SEC Whistleblower Awards and Bankruptcy:** The Fifth Circuit's decision in *Barr v. SEC* addressed the eligibility of whistleblowers for awards when the related enforcement action involves a bankruptcy case. Ergo this means that <u>whistleblowers have less likelihood of stepping forward with information as in this matter many 100's of would be whistleblowers possess substantial knowledge of crypto currency frauds and the possible illegal sale of cultural historical artifacts for crypto currencies such as BITCOIN instead of just the few wire transfers Cynthia D. Blanchard already admitted to receiving after shipping cultural historical artifacts across state lines.</u>

**United States v. Resnick  Overview:** Adam B. Resnick, after serving a prison sentence for bank fraud, became a whistleblower by filing a lawsuit under the FCA against Omnicare, alleging Medicare and Medicaid fraud. His actions led to significant settlements, highlighting the role of whistleblowers in exposing fraudulent activities.

**Murray v. UBS Securities, LLC   Overview:** Trevor Murray, a research strategist, alleged that UBS pressured him to skew his reports and terminated his employment when he refused. The Supreme Court ruled that under SOX, a whistleblower does not need to prove that their employer acted with retaliatory intent, only that their protected activity was a contributing factor in the unfavorable personnel action.

**Dirks v. Securities and Exchange Commission  Overview:** Raymond L. Dirks, a securities analyst, uncovered massive accounting fraud at Equity Funding Corporation of America through information provided by a whistleblower. Although initially charged with insider trading, the Supreme Court ruled in Dirks's favor, emphasizing the importance of whistleblowers in exposing corporate fraud.

**Ex parte James  Overview:** This early 19th-century case established the principle that individuals in positions of trust, such as trustees in bankruptcy, must avoid conflicts of interest, laying the groundwork for modern standards of fiduciary duty and ethical conduct in bankruptcy proceedings

These cases underscore the legal framework that protects and encourages individuals to report fraudulent activities and conflicts of interest within bankruptcy proceedings, thereby promoting transparency and accountability.

However, the applicability of these protections within bankruptcy proceedings, particularly concerning the reporting of conflicts of interest, asset concealment, and fraudulent statements, is not explicitly defined.

While there is no specific case law directly addressing the obligation of a bankruptcy trustee to report excess benefit transactions involving a nonprofit organization during a Chapter 7 proceeding, trustees are generally mandated to act in the best interests of the estate and its

creditors, which includes investigating and addressing any potential misconduct. For instance, in **Bednash v. Hearsey** [2001] EWCA Civ 787, <u>the court held that a director's excessive remuneration could be recovered after the company went insolvent, highlighting the trustee's role in scrutinizing transactions that may harm creditors.</u>

## IV. RELIEF REQUESTED

**Movant respectfully requests that this Court issue a declaratory judgment confirming that federal whistleblower protections apply to individuals reporting:**

**a. Conflicts of interest involving parties in bankruptcy proceedings;**

**b. Concealment of assets by the Debtor or related entities;**

**c. Fraudulent statements or omissions in bankruptcy filings.**

d.Any other unlawful or illegal scheme that is discovered or inwhich prima facie evidence appears for which the Bankruptcy Court must be notified.

e.That the Bankruptcy Court is considered a Court of Equity And therefore has a legal obligation to allow for protections under Whistleblower Acts and regulatory laws in relation to **fraudulent transfers (11 U.S.C. § 548)** or **preferential payments (11 U.S.C. § 547)**

**A document filed pro se is "to be liberally construed," Estelle, 429 U.S. "pro se … however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers," ibid. Cf. Fed. Rule Civ. Proc. 8(f) ("All pleadings shall be so construed as to do substantial justice"). "filings generously and with the leniency due pro se litigants", see Erickson v. Pardus, U.S. 127 S.Ct. L.Ed.2d (2007); Andrews v. Heaton, 483 F.3d (10th Cir.2007).**

Dated: 31 March 2025

Respectfully submitted,

Michael Eric Nelson
Care of the United States Secretary of State for foreign location re-routing.
702.932.3434

Email only to be used after pre-notification as to email address sending documents from in order to have the address authorized to receive said notices:  michaelericnelson @ilcoud.com *

## CERTIFICATE OF SERVICE & DECLARATION OF RESTRICTED DISCLOSURE

**IN THE MATTER OF JUDICIAL NOTICE AND PROCEDURAL ASSERTION OF RESTRICTIVE NON-DISSEMINATION MANDATES**

WHEREAS, in strict adherence to the prevailing corpus of procedural jurisprudence, statutory imperatives, and doctrinal maxims enshrining the sacrosanct principles of procedural due process and equitable notice, the undersigned, acting in an abundance of caution and in full cognizance of binding jurisdictional predicates, hereby certifies that effectuate service of the foregoing instrument has been executed in conformity with the prevailing mandates of statutory law, codified procedural governance, and applicable adjudicatory directives.

NOTWITHSTANDING, in recognition of extrajudicial anomalies, convoluted procedural exigencies, and the demonstrable tactical exploitation of statutory architecture heretofore executed with artifice and calculated intent, it is hereby formally, unequivocally, and incontrovertibly noticed that the subject filing—individually, severally, and in the aggregate—shall not, under any conceivable construction, legal fiction, interpretative lens, or attenuated inference, be conveyed, transmitted, promulgated, or otherwise disseminated in any form, manner, or medium—whether directly, derivatively, incidentally, or by operation of constructive notice—to the individual personage of **Chad Mitchell Koehn**, aka Chad Koehn, C. Mitch Koehn, Chad M. Koehn, Chad Mitchell K., Chad Mitch K, Chad Koehn Mitchell, Chad Mitchel Koehn or any other derivative he may use nor to any juridical entity, corporate enterprise, organizational consortium, trust arrangement, professional association, individual, attorney, consort, person, associate, employee or extrinsic affiliate with whom Chad M. Koehn maintains, has maintained, or is reasonably deduced to have maintained any contractual nexus, fiduciary entanglement, agency affiliation, governance role, or informal economic coalescence.

Said prophylactic restriction is predicated upon the putative existence of an adjudicatory directive, the precise linguistic contours and jurisdictional breadth of which remain presently indeterminate, but which is purported to have been issued **sub silentio.**

Accordingly, all **creditors, claimants, parties in interest, government agencies, regulatory bodies, and legal representatives** are hereby formally placed on notice of the aforementioned assertions, reservations, disclaimers, and protections governing the legal position and conduct of the **undersigned** with respect to the instant matter and any peripheral proceedings related thereto.

When filed to the US Federal Court this filing will be automatically sent to the parties of record pursuant with the Federal Court's automatic notification systems, therefore service so rendered pursuant with applicable law notwithstanding the aforementioned foregoing disclaimer.



31 March 2025

Michael Eric Nelson
Care of the United States Secretary of State for foreign location re-routing.
702.932.3434

Email only to be used after pre-notification as to email address sending documents from in order to have the address authorized to receive said notices:  michaelericnelson @ilcoud.com *