1

<u>IN THE UNITED STATES BANKRUPTCY COURT FOR</u>

<u>THE NORTHERN DISTRICT OF OKLAHOMA</u>

<u>RE:  GREEN COPPER HOLDINGS, LLC</u>

<u>EIN # xx-xxx9708 ) CASE NO. 25-10088-T</u>

<u>Chapter 7</u>

Case No.:  **25-10088-T**

## INSTANTER MOTION FOR JUDICIAL NOTICE FRAUD, REFERRAL FOR CRIMINAL PROSECUTION, OF CYNTHIA BLANCHARD AND ENFORCEMENT OF FEDERAL AND CONSTITUTIONAL PROTECTIONS OVER NATIONAL HISTORIC PROPERTY

COMES NOW the undersigned, a natural-born citizen of the United States and an interested party acting pro se, who respectfully lodges this formal whistleblower complaint & MOTION upon the Federal Record, pursuant to and expressly invoking the **First Amendment to the Constitution of the United States**, which guarantees the fundamental right *"to petition the Government for a redress of grievances."* As a member of the sovereign body politic referred to in the Constitution's Preamble as "**We the People**," the undersigned asserts standing under both **constitutional and statutory authority** <u>to seek protection of the public trust, the integrity of judicial proceedings, and the inviolable rights of the citizenry.</u>  In the exercise of this constitutionally protected civic duty—and under the shield of federal whistleblower protections—the undersigned submits this Motion with the utmost regard for the ethical obligations of truth, transparency, and the faithful administration of justice. The undersigned further beseeches this Honorable Court to take all necessary and appropriate action to cure and prevent the **appearance of partiality, prejudicial conduct, or impropriety** <u>that may arise from actions and omissions currently evident in the record</u>. Including the ongoing obfuscation of the proper role of federal regulatory & enforcement agencies by the assigned trustee—have resulted in the **constructive denial of due process** and the **abridgment of constitutionally guaranteed protections**, not only to the undersigned, but to the American public at large. <u>The Court is hereby placed on notice</u> that the conduct herein, whether by act or omission, <u>risks materially undermining **public confidence in the neutrality and integrity of the judiciary**</u>, and may constitute a **systemic violation of the Constitution's structural guarantees**, including but not limited to the **First and Fifth Amendments**, by denying equal access to federal remedies, shielding bad actors from regulatory scrutiny, & displacing lawful oversight mechanisms. Such governmental inaction and judicial silence, if allowed to persist, may

2

amount to a **functional deprivation of rights under color of law**, thereby further <u>eroding the foundational principles upon which this Republic is established</u>.  Accordingly, the undersigned respectfully moves this Court to act **decisively and transparently in defense of constitutional order**, to **preserve the sanctity of the public trust**, and to <u>ensure that the protections enumerated in the Constitution</u> **remain neither illusory nor selectively applied:**

1. Take **judicial notice** of publicly filed documents and statements in this case <u>evidencing</u> **severe, systemic, and intentional acts of perjury and bankruptcy fraud** by the control person of the debtor, **Cynthia D. Blanchard**.

2. Immediately **refer this matter to federal criminal authorities** including but not limited to the **Department of Justice, Acting (interim) U.S. Trustee in Washington DC, Internal Revenue Service Criminal Investigation Division, the Office of the Comptroller of the Currency**,  **and** the US Attorney General Pam Bondi for full investigation and prosecution under federal criminal law and IRS Code Enforcement.

3. <u>Petitioner respectfully demands the immediate enforcement of all statutory, regulatory, and equitable mechanisms available under federal law</u> to **preserve and safeguard the integrity of public trust assets**, including, but not limited to, the invocation of protections afforded under the **National Historic Preservation Act (54 U.S.C. § 300101 et seq.)**, the **Antiquities Act**, and applicable provisions of the **Internal Revenue Code** and **Bankruptcy Code**, to enjoin the continued dissipation, illicit alienation, and destruction of federally recognized National Historic Landmark property, museum artifacts, and archival collections. Said assets are presently imperiled due to the trustee's ongoing and egregious failure to conduct a full and transparent inventory, nor initiate any forensic investigation into the improper and unlawful conveyance of historically protected materials across state lines via interstate commerce in violation of **18 U.S.C. §§ 2314 and 2315**, involving documented use of wire transmissions and, perhaps, cryptocurrency instruments intended to obscure and launder the proceeds of such transactions. Beneficiaries of these transactions include the debtor's control person, **Cynthia Blanchard**, & her spouse, **Anthem H. Blanchard**, the latter of whom is a named defendant in active federal fraud litigation wherein the entity **HERA Software Development, Inc.** ("HERA") is central. During all times relevant to the federal allegations, Cynthia Blanchard acted in multiple fiduciary and control capacities: as majority shareholder, president, of both HERA and affiliate **Anthem Holdings, Inc.**

4. Multiple creditors asserting claims in this bankruptcy proceeding, Craig Alan Brand, Michael Moran, Dale Takio; appear to have acquired their alleged debt through the transfer of liabilities from **HERA** and **Anthem Holdings** to **Green Copper Holdings, LLC** and **Copper Tree**, thereby entwining this bankruptcy estate—including Price Tower, its museum contents, and public collections—with the factual nexus of the federal fraud case pending in the **District of Kansas** and overseen by the **Securities and Exchange Commission's Tenth Circuit regional office in Denver, Colorado**. Notwithstanding the centrality of this connection, the assigned trustee has inexplicably continued to transmit notices and disclosures exclusively to an SEC office located in **Chicago, Illinois**, which, to the best of the undersigned's knowledge and belief, is not the designated prosecuting authority for said federal matter nor is it even located within the 10th Circuit for which this Court is located.  Such actions repeatedly by the Trustee now implicate jurisdiction of this matter by the Seventh Circuit Federal Courts.  Absent a formal written request for jurisdictional oversight, from the Seventh Circuit, and from the Chicago office entered into the public record, this selective disclosure pattern constitutes a **prima facie appearance of impropriety** and may reflect intentional misdirection. Such conduct, if not remedied, **effectively obfuscates the role of the proper federal enforcement agency**, deprives the American people—including the undersigned—of the protections to which **we are entitled under the law,** and materially undermines the public trust, consequently violating the undersigned and American People's constitutional rights as embodied in the US CONSTITUTION.

---

# I. GROUNDS FOR JUDICIAL NOTICE AND CRIMINAL REFERRAL

## A. Multiple Willful False Statements in Official Form 201 (Voluntary Petition)

1. **Debtor's failure to list known aliases and associated business entities** in Item 2 was a deliberate concealment of relevant information from the Court, debtor and debtor affiliates operated businesses under a variety of names, including multiple purported restaurants.

2. At **Item 4** of the petition, the address designated for the purported Registered Agent is demonstrably fictitious and materially misleading, amounting to an intentional misrepresentation before this Honorable Court. Further scrutiny reveals that the attorney identified therein, **Hugh Robert, Esq.**, maintains ongoing legal representation

of multiple entities directly affiliated with the debtor control person **Cynthia D. Blanchard**, including but not limited to **Anthem Vault, Inc.** and **HERA Software Development, Inc.**, thereby raising significant indicia of **coordinated deception, conflicted representation**, and potential collusion.

    a. Based upon information and belief, Mr. Robert neither maintains an office nor exercises any professional functions at the address proffered in the petition for purposes of service of process, nor is he physically present or reasonably available at said location to fulfill statutory duties as a Registered Agent. While it is plausible that Mr. Robert was unaware that his name and credentials were being exploited to perpetrate a fraud upon this Court and the American public, should it be established through further inquiry or evidentiary hearing that he had actual or constructive knowledge of the misrepresentation—specifically, that his name and address were falsely employed in a federal filing for the purpose of facilitating judicial deception—then immediate referral to the **Oklahoma Bar Association** and any other jurisdictional licensing authorities would be both appropriate and necessary.

    b. Such conduct, whether by direct participation or willful blindness, would constitute grounds for **disciplinary sanctions, professional misconduct proceedings**, and possible disbarment under prevailing ethical rules, including the **Oklahoma Rules of Professional Conduct**. Additionally, the deliberate use of a known false address and misappropriation of a licensed attorney's identity as a Registered Agent for purposes of federal court filings constitutes a violation of **Oklahoma Statutes §§ 18 O.S. § 1022 and § 2010**, and evidences **intentional perjury** and **fraud upon the court** within the meaning of **federal bankruptcy jurisprudence**. These acts are not only ethically reprehensible, but may also rise to the level of **criminal misconduct** undertaken in furtherance of a broader scheme to mislead the judiciary and obstruct lawful process.

3. At Item 5, the Debtor falsely states no website exists at the time of filing despite multiple active domains being documented in global web archives, at the time of filing for bankruptcy.

4. **Item 6 lacks any disclosure of the type of legal entity or structure of the Debtor.** The deliberate act of failing to provide the legal entity type is an obvious direct omission

made deliberately to deceive the court, stakeholders, creditors, interested parties and the US public.

5. At **Item 12** of the Voluntary Petition, the Debtor categorically responded in the negative to the inquiry concerning whether the Debtor, or any party under the Debtor's control, possessed property that requires **immediate attention or intervention**, notwithstanding the irrefutable fact that the Debtor and/or the Debtor's control person, **Cynthia D. Blanchard**, exercises de facto and/or de jure control over the **Price Tower**, a federally designated **National Historic Landmark**, which houses an assemblage of **irreplaceable museum-grade exhibits**, **archival materials**, and **artifactual relics** of immense cultural, architectural, and national historic significance.

6. These assets include, inter alia, architectural collections attributed to **Bruce Goff** and **Frank Lloyd Wright**, as well as rare and salvaged materials originating from the historically recognized property known as **ShinenKan**, the subject of a documented criminal arson. Despite the custodial and preservation obligations inherently associated with such federally protected assets, the Debtor—under oath—declined to acknowledge their possession or need for urgent preservation efforts, which evidences a **willful misstatement of material fact**, tantamount to **perjury** under **18 U.S.C. § 1621**, and a **fraud upon the Court**.

It is further reported and publicly documented that the Honorable **Judge Russell Coleman Vaclaw**, sitting in the **Washington County District Court**, previously issued an order compelling Ms. Blanchard, as the control person of the Debtor entity, to **restore electrical power to Price Tower**, citing the exigency of protecting the historic structure and its contents from irreparable harm caused by prolonged exposure to freezing conditions. Notwithstanding this judicial directive, the Debtor continued to deny, in its federal bankruptcy filings, that the property under its control necessitated immediate action—thereby demonstrating not only **reckless disregard for judicial authority**, but also an intent to **deceive this Honorable Court** by concealing the true nature of the assets and liabilities under its dominion.

Moreover, it is of particular relevance that **Cynthia D. Blanchard**, in public representations to the board of directors of the nonprofit **Price Tower Arts Center, Inc. (PTAC)**, affirmatively declared her intention to invest in excess of **Ten Million U.S. Dollars ($10,000,000)** into the preservation and revitalization of Price Tower. This

representation is the ostensible justification relied upon by PTAC's board to **transfer ownership of Price Tower for the nominal sum of Ten Dollars ($10.00)** via Quit **Claim Deed** executed by PTAC Chairman **Brad Doenges**, as evidenced in **Document 55, Exhibit B**.

Taken in totality, the facts of record, judicial orders, and contemporaneous reporting—including publications authored by GANNETT-affiliated journalist **Andy Dossett**—demonstrate clear and convincing evidence that **Ms. Blanchard made knowingly false statements** on the Bankruptcy Petition under penalty of perjury, and that her misrepresentation concerning the absence of property requiring immediate attention was part of a larger pattern of concealment, misdirection, and potential fraudulent intent in contravention of **11 U.S.C. § 521**, **Rule 1008 of the Federal Rules of Bankruptcy Procedure**, and applicable federal criminal statutes.

7. At **Item 13** of the Voluntary Petition and accompanying Schedules, the Debtor affirmatively avers—under penalty of perjury pursuant to **28 U.S.C. § 1746**—that **no funds will be available for distribution to unsecured creditors**, a declaration which constitutes a **willful and materially false statement** made in a federal judicial proceeding. Said representation is demonstrably inconsistent with credible, independent appraisals and valuation reports, including those attested to by parties in interest and at least one **officer of the court**, **Craig Alan Brand, Esq.**, which collectively estimate the fair market value of the real property known as the **Price Tower National Historic Landmark** to be in excess of **Forty Million U.S. Dollars ($40,000,000)**. Investigative journalists have attributed additional value to the accompanying **art collections, archives, and museum exhibits**, appraising said assets in the range of **Twenty Million to Thirty Million Dollars ($20,000,000–$30,000,000+)**, none of which are adequately disclosed, inventoried, or accounted for in the Debtor's filings. The Debtor's categorical denial of distributable value for unsecured creditors—despite overwhelming evidence to the contrary—constitutes not only a **fraudulent concealment of estate assets** under **11 U.S.C. §§ 521(a)(1), 541, and 727(a)(4)**, but also supports prima facie allegations of **bankruptcy fraud** under **18 U.S.C. § 152(1)** and **knowingly false declarations** under **18 U.S.C. § 1623**.  Such conduct, if proven, would represent a **criminal offense punishable by fines and imprisonment**, and may warrant immediate **referral to the United States Trustee**, the **Department of Justice**, and

**appropriate disciplinary bodies**, as it materially undermines the integrity of these proceedings and constitutes an egregious abuse of the bankruptcy process.

8. At **Item 15** of the Petition, the Debtor further compounds the pattern of material misrepresentation by **grossly understating the aggregate value of the estate's assets**, falsely certifying the estimated total to fall within the range of **One Million to Ten Million Dollars ($1,000,000–$10,000,000)**. This sworn valuation is not only inconsistent with, but directly contradicted by, publicly available records, independent investigative findings, and third-party appraisals as attested to by creditors.

The Debtor's misstatements, by & through Cynthia D. Blanchard at **Items 13 and 15**, taken together, evince a **deliberate and coordinated scheme to conceal material facts**, obstruct creditor recovery, and manipulate the judicial process. Such false declarations, made knowingly and under oath, reflect **scienter and specific intent to deceive** this Honorable Court, in violation of **18 U.S.C. § 152(1)–(3) and § 157**, as well as constituting **perjury under 18 U.S.C. § 1621** and a violation of the Debtor's statutory disclosure obligations under **11 U.S.C. § 521**.

The pattern of conduct reflected in these filings demonstrates more than mere negligence or oversight; it constitutes a **willful orchestration of fraudulent misstatements** designed to deprive unsecured creditors of lawful recovery, to suppress public and governmental scrutiny, and to corrupt the integrity of these bankruptcy proceedings. Such conduct merits immediate judicial scrutiny, possible **denial of discharge under 11 U.S.C. § 727**, and urgent **referral to federal enforcement authorities** for investigation and prosecution.

9. At **Item 45** of the Debtor's Schedules and Statement of Financial Affairs, the Debtor, by and through Control Person Cynthia D. Blanchard, affirmatively denies the existence of any recent professional appraisal of assets, a statement made under penalty of perjury pursuant to **28 U.S.C. § 1746** and relevant provisions of the **Federal Rules of Bankruptcy Procedure**, including **Rule 1008**. This declaration is patently false and demonstrably contradicted by the sworn representations of multiple creditors, including **Craig Alan Brand, Esq.**, a licensed attorney and officer of the Court, who attests to the existence of a **2023 professional appraisal** of the real property commonly known as **Price Tower**.

8

Said appraisal—known to the Debtor and, more specifically, to the Debtor's control person **Cynthia D. Blanchard**—places the fair market value of Price Tower at or around **Forty Million Dollars ($40,000,000)**. This valuation was obtained mere weeks following the transfer of the property for a **grossly inadequate and fictitious consideration of Ten Dollars ($10.00)**, as documented in the Quit Claim Deed executed by the nonprofit transferor **Price Tower Arts Center, Inc. (PTAC)**.

The Debtor's affirmative misrepresentation at Item 45 constitutes an additional act in a continuing **pattern of concealment, perjury, and fraud upon the Court**, in violation of **18 U.S.C. § 152(3)** (false declarations in bankruptcy) and **11 U.S.C. § 727(a)(4)(A)** (knowingly making a false oath or account in connection with the case). The suppression of a contemporaneous and credible professional appraisal—particularly one known to the Debtor's control person and relevant fiduciaries—amounts to a **willful omission of material fact**, and is further evidence of a **scheme to mislead the Court and defraud creditors** through **excess benefit transactions**, in violation of **26 U.S.C. § 4958**.

Moreover, this manipulated undervaluation appears to have been orchestrated with the complicity of **officers and directors of PTAC**, including its **Executive Director, Chairman, Treasurer**, and other insiders, who, by executing the transfer for nominal consideration while possessing knowledge of a significantly higher appraised value, have exposed themselves to potential liability for **breach of fiduciary duty**, **self-dealing**, and **conspiracy to commit bankruptcy fraud** under **18 U.S.C. § 371**.

Such actions further support a referral to the **Office of the United States Trustee**, the **Internal Revenue Service – Exempt Organizations Division**, the Internal Revenue Service CRIMINAL INVESTIGATIONS Division and the **Department of Justice** for immediate investigation into violations of federal bankruptcy law, <u>nonprofit governance statutes</u>, and <u>criminal statutes governing concealment, perjury, and fraudulent asset transfers in connection with a pending bankruptcy proceeding</u>.

10. At **Item 59** of the Debtor's Schedules, the Debtor affirmatively asserts—under penalty of perjury pursuant to **28 U.S.C. § 1746** and in accordance with **Federal Rule of Bankruptcy Procedure 1008**—that she holds **no legal or equitable interest in any intangible assets or intellectual property**, an assertion which, when weighed against

the public record and documentary evidence, constitutes a **knowing and material misrepresentation** amounting to **fraudulent concealment of estate assets** in violation of **11 U.S.C. §§ 521(a)(1), 541, and 727(a)(4)**, and federal criminal statutes including **18 U.S.C. §§ 152, 157, and 1343**.

Contrary to the sworn statement, the Debtor—**Cynthia D. Blanchard**—is a **co-founder**, **majority shareholder**, and **President** of the blockchain and digital assets venture known as **HERA Software Development, Inc.** ("**HERA**" or "**HeraSoft**"), a self-described crypto and decentralized technology enterprise which, according to publicly available disclosures and marketing collateral, actively promoted the issuance, sale, and distribution of **non-fungible tokens (NFTs)** and other blockchain-based digital securities. These representations and activities, undertaken contemporaneously with the period under judicial review and during which the **Securities and Exchange Commission** initiated a federal enforcement action alleging **Securities Fraud**, further confirm that the Debtor's assertion of non-ownership or non-interest in such intangible assets is demonstrably false.

Notably, while the **SEC's current action** is directed against the Debtor's spouse and business partner, **Anthem Hayek Blanchard**, credible evidence indicates that the control person of the Debtor has remained integrally involved in the design, promotion, and financial management of the underlying enterprise and its operations, including the solicitation of investment based on fraudulent representations of non-existent **federal, state, and local government contracts**, as well as false revenue projections in excess of **$400 million**. Numerous investor-facing materials—some prepared or distributed directly by the Debtor—contain written and video statements purporting that HeraSoft held or was actively executing U.S. Government contracts, when in fact no such contracts existed, and no personnel affiliated with the company were performing or anticipating performance on any such engagements.

Further exacerbating the fraud upon this Court, it has been independently verified that debts attributable to HERA and its related entities were **improperly transferred** to the Price Tower estate through at least three known equity holders in HERA: **Craig Alan Brand, Esq.** (a licensed attorney and officer of the court), **Mike Moran**, and **Dale Takio**. These transfers suggest a coordinated effort to collapse liabilities from a **fraudulently**

**promoted crypto venture** into a separate bankruptcy estate comprised of **public trust assets**, including the **National Historic Landmark Price Tower**, in order to obfuscate accountability and shield insiders from enforcement and restitution.

The confluence of these acts suggests that **HERA Software Development, Inc.** is not merely tangential, but **integrally intertwined** with the unfolding scheme involving the fraudulent transfer and concealment of assets related to Price Tower. The historical property—allegedly granted in perpetuity for the public benefit—was transferred to the Debtor and her spouse for a **nominal and grossly inadequate consideration of Ten Dollars ($10.00)**, notwithstanding contemporaneous appraisals valuing the asset in excess of **Forty Million Dollars ($40,000,000)**.

That such a transfer was authorized by a nonprofit board of directors—under the pretense of future investment by Blanchard and/or her affiliates—raises significant questions regarding **fiduciary malfeasance**, **self-dealing**, and the potential for **quid pro quo arrangements** that, on their face, **bear the hallmarks of commercial bribery** and **excess benefit transactions** as defined under **26 U.S.C. § 4958**. The documented presence of large anticipated distributions or "claims" payable to certain PTAC insiders within the bankruptcy estate, juxtaposed against the nominal consideration for the Price Tower transfer, further supports the inference that **improper financial inducements** may have been offered or received in connection with the disposition of charitable assets, in violation of both **federal nonprofit tax law**, **state fiduciary law**, and **criminal anti-corruption statutes**.

Taken as a whole, the false certification at Item 59 is not an isolated inaccuracy, but one part of a larger, highly coordinated enterprise designed to **mislead creditors, defraud the judiciary, conceal federally regulated assets**, and **exploit the bankruptcy process** as a **conduit for laundering liabilities and shielding insider enrichment**—to the detriment of creditors, regulators, and the American public at large. Such conduct warrants immediate referral to the **United States Trustee**, the **Department of Justice**, the **Internal Revenue Service**, and the **Securities and Exchange Commission**, and further supports denial of discharge under **11 U.S.C. § 727**, and the initiation of civil and criminal enforcement proceedings pursuant to applicable federal statutes.

## B. Public Admission of Knowledge and Intent

The Petition was signed on **January 22, 2025**, under the penalty of perjury, immediately following this declaration:

**"WARNING -- Bankruptcy fraud is a serious crime. Making a false statement in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571."**

Cynthia Blanchard read & signed knowing full well of the above falsehoods and purposeful omissions. This constitutes **prima facie evidence of intentional bankruptcy fraud.**

<u>C. Looting and Pillaging of National Historic Museum Artifacts</u>

According to multiple independent media sources, corroborated by eyewitness testimony and photographic evidence, **Cynthia D. Blanchard**, acting in her capacity as the de facto control person of the bankruptcy estate and as the self-proclaimed transferee of the **Price Tower National Historic Landmark**, has engaged in the unauthorized removal, appropriation, and dissipation of **museum property and federally protected cultural artifacts**, in flagrant violation of applicable federal statutes governing the preservation of historic landmarks, including but not limited to the **National Historic Preservation Act (54 U.S.C. § 306101 et seq.)**, the **Archaeological Resources Protection Act (16 U.S.C. § 470aa et seq.)**, and the general prohibitions against conversion and theft of government and public trust property under **18 U.S.C. §§ 641 and 1361**.

Reputable journalistic investigations—including reporting published by **Gannett-affiliated journalist Andy Dossett**, as well as national coverage disseminated via **AOL News** and other syndicates—have characterized Ms. Blanchard's conduct using such descriptors as "**looting**," "**pillaging**," and "**plundering**," reflecting both the gravity and breadth of her actions. These accounts collectively allege that **priceless, one-of-a-kind historic artifacts**, including **museum-grade art collections**, archival architectural elements, and nationally significant cultural exhibits, have been wrongfully removed from the premises of Price Tower without authorization, inventory, or compliance with any known deaccessioning protocol, conservation standard, or public notice procedure.

Said actions, if substantiated, would constitute a **willful and egregious breach of fiduciary duty**, and may rise to the level of **criminal misconduct**, including **theft or embezzlement of federally protected property**, **interstate transportation of stolen cultural heritage under**

18 U.S.C. § 2314, and potential violations of **IRS regulations governing charitable asset protection under 26 U.S.C. § 4941 and § 4958**, particularly insofar as the artifacts were previously held in trust by the nonprofit **Price Tower Arts Center, Inc.**, for the perpetual benefit of the American public.

The pattern of conduct alleged—removal under cover of bankruptcy, absence of judicial disclosure, and lack of regulatory oversight—suggests a deliberate and orchestrated effort to **strip the landmark of its protected heritage assets**, thereby destroying not only the physical artifacts themselves but also the cultural, historical, and educational value entrusted to them. If left unremedied, such actions will constitute a permanent and irreversible desecration of the public trust, warranting immediate injunctive relief, civil **and criminal referral**, and comprehensive forensic audit of all transfers and removals undertaken under the auspices of the debtor control person Cynthia D. Blanchard or her agents.

https://www.aol.com/historic-shinenkan-artifacts-sold-price-164734356.html).

## D. Falsified Mortgage and Financial Claims

The Voluntary Petition contains a material misrepresentation at Schedule D and related declarations, wherein the Debtor by and through Cynthia D. Blanchard reports the amount of secured indebtedness as "unknown," notwithstanding the existence of a fully executed mortgage instrument in the amount of Two Hundred Fifty Thousand Dollars ($250,000), dated January 15, 2025, just seven (7) days prior to the commencement of this bankruptcy proceeding. **Said mortgage was executed personally by Cynthia D. Blanchard, the Debtor's control person**, in favor of her personal attorney who represents her personally and the debtor itself.  The attorney and law firm holding the mortgage are insiders, an entity represented by her personal attorney, who, upon information and belief, also represented both the Debtor entity & Blanchard individually in prepetition litigation and transactional matters, thereby rendering said attorney and his affiliated law firm statutory insiders within the meaning of 11 U.S.C. § 101(31).  The temporal proximity of the mortgage transaction to the petition date, combined with the insider status of the secured creditor and counsel, creates a **strong presumption of a collusive and fraudulent transaction** designed to elevate the insider creditor's priority position immediately prior to bankruptcy. This conduct appears to satisfy the requisite elements of a **fraudulent conveyance under 11 U.S.C. §§ 548(a)(1)(A) and 544(b)** and may further constitute **actual fraud** under applicable **state fraudulent transfer statutes**.

Further compounding the deception, **Trustee Patrick Malloy**, in **Document 45, Item 6**, falsely represented to the presiding judicial officer that *"There is no large secured creditor that might be a source of funding for insurance."* This statement is demonstrably false based on the public record and suggests either **gross negligence or willful misrepresentation** by the Trustee, who either failed to review the Petition and Schedules in their entirety or deliberately omitted reference to the sole secured creditor—an insider—who acquired a $250,000 lien against the **National Historic Landmark Price Tower** immediately before the bankruptcy filing.  This structured lien/mortgage transaction appears to be part of a broader, **premeditated scheme to strip the estate of assets**, funnel ownership through less-than-arm's-length transactions, and execute a "flip" of the property, utilizing the <u>bankruptcy estate as a laundering mechanism for the benefit</u> of **insiders and conflicted fiduciaries**. The evidentiary record and the **Request for Judicial Notice (Document 55)** provide **prima facie support for the conclusion that the mortgage was not executed in the ordinary course of business**, but rather formed a **fraudulent device to assert dominion over the property, circumvent unsecured creditor recovery** & facilitate unlawful enrichment, to the detriment of the public.

Moreover, if the insider attorney and/or the purported secured creditor are <u>unwilling</u> to finance mandatory insurance coverage for the landmark property, then <u>it is proper for the Court to</u> **<u>compel performance</u>** or <u>**nullify the mortgage**</u> *ab initio*, particularly in light of Blanchard's prior public representations to **Price Tower Arts Center, Inc. (PTAC)** that she possessed **more than Ten Million Dollars ($10,000,000)** earmarked for investment into Price Tower—representations that were instrumental in inducing PTAC's Board of Directors to execute a **Quit Claim Deed for nominal consideration of Ten Dollars ($10.00)**, unless of course as the record also dictates PTAC fiduciaries entered into the premeditated plan to be compensated for the constructive excess benefit gain transactions as discussed herein below.

If, as the record strongly suggests, there were no actual funds and the $10M claim was a **fraudulent inducement**, then the underlying transfer constitutes **constructive fraud**, and PTAC's fiduciaries—including **Donna Keffer (Executive Director), Mark Haskell (Treasurer), and Brad Doenges (Chairman)**—may have violated both federal and state law by facilitating the conveyance of a **National Historic Landmark** and associated **museum-grade cultural & historic property** without fair market consideration.  Bankruptcy schedules conspicuously omit any reference to the **Bruce Goff estate holdings**, the **ShinenKan Gate**, or **artifacts recovered from the arson destruction of the ShinenKan property**, despite widespread

reporting that such items were housed within the museum and subsequently liquidated under questionable circumstances. Aallegations that **massive sums of cryptocurrency**, including **Bitcoin**, were transferred to **Cynthia and Anthem Blanchard** in connection with these removals—potentially implicating violations of **18 U.S.C. §§ 2314 (interstate transportation of stolen property)**, **1956 (money laundering)**, and **371 (conspiracy to defraud the United States)**, Blanchard did testify to receiving WIRE TRANSFERS!

This is no mere matter of local interest: **Price Tower and its contents were held in public trust for the benefit of the American people**, and their misappropriation under color of bankruptcy constitutes a **federal interest of the highest order**.

No director or officer of PTAC, as a tax-exempt charitable organization with 501(c)(3) status, including Keffer, Haskell, Doenges, or any other involved fiduciary, possessed the legal authority to convey **a nationally significant historic structure, its collections, or its archive of American architectural heritage <u>for de minimis consideration</u>**, or to engage in post-petition **insider compensation schemes disguised as creditor claims**, with line items seeking **tens or hundreds of thousands of dollars** in compensation for their role in orchestrating this cultural and financial betrayal of the american people.

### E. Excess Benefit Transactions, Bribery, and IRS Implications

The subject real property and its irreplaceable contents—including federally protected cultural artifacts, museum collections, and architectural archives—were conveyed from **Price Tower Arts Center Inc.** (PTAC), a purportedly federally funded **Section 501(c)(3)** nonprofit organization, to the Debtor, **Cynthia D. Blanchard**, for the **grossly inadequate and fictitious consideration of Ten Dollars ($10.00)**. This transaction, when considered in light of the facts of record, raises substantial and well-founded concerns implicating violations of **18 U.S.C. § 201 (bribery of officials and witnesses)**, **26 U.S.C. § 4958 (excess benefit transactions)**, **self-dealing prohibitions under federal nonprofit governance law**, and related fiduciary misconduct provisions enforceable under both **federal tax law and criminal law**.  Further exacerbating the appearance of collusion and private inurement, multiple individuals occupying fiduciary roles within PTAC—including **Executive Director Donna Keffer**, **Treasurer Mark Haskell**, and **Chairman Brad Doenges**—now stand to receive substantial distributions, some reportedly in excess of **hundreds of thousands of dollars**, through claims submitted in the bankruptcy proceeding. These individuals, having directly facilitated the suspect conveyance of

a **National Historic Landmark**, are now seeking to **extract financial gain from the liquidation of that same public trust asset**, through a proceeding they helped initiate and structurally designed to benefit themselves. Such conduct squarely implicates criminal violations under **18 U.S.C. §§ 1341 (mail fraud)**, **1343 (wire fraud)**, **371 (conspiracy to defraud the United States)**, and civil enforcement provisions of **26 U.S.C. § 4941**.

Compounding these concerns is the evidentiary record obtained from **IRS Form 990 filings**, retrieved from ProPublica's Nonprofit Explorer, in which PTAC, under the signature of **Brad Doenges**, certified on **Schedule D, Part VI** that it continues to carry the Price Tower real property as a **depreciating real estate asset** through at least the end of the **2023 tax year**. This documentation directly contradicts the Debtor's sworn claim of ownership and raises a credible inference that PTAC never lawfully divested the property or, if it did, such divestment was not properly reflected on the organization's federal tax returns—a violation of **26 U.S.C. § 7206 (false statements on returns, documents, or other matters)**.  Equally alarming is the testimony provided under oath by **Cynthia Blanchard** at the **341 Meeting of Creditors**, during which she admitted that neither she nor any affiliated entity had filed tax returns with the Internal Revenue Service for any relevant period. The intentional omission of tax filings while engaged in the management, receipt, or transfer of public assets—including a federally recognized National Historic Landmark—further supports a pattern of **intentional concealment**, **willful failure to file**, and **attempted obstruction of administration of internal revenue laws**, 26 U.S.C. §§ 7201, 7203, and 7212. The totality of this conduct suggests that **Chapter 7 liquidation proceeding itself is being weaponized** as a **legal mechanism to launder a fraudulent conveyance**, with the Court and Trustee potentially being used—whether knowingly or negligently—as passive instruments in furthering a **criminal scheme to misappropriate cultural heritage assets held in public trust**. The Trustee's fiduciary obligations under **11 U.S.C. § 704(a)(1), (4), and (7)**, in conjunction with his limited qualified immunity as outlined in **Case v. Los Angeles Lumber Prods. Co., 308 U.S. 106 (1939)** and **Miller v. United States, 530 F. Supp. 611 (E.D. Pa. 1982)**, do not insulate him from liability in the face of **constructive knowledge** of fraudulent conduct or **willful blindness** to crimes committed in connection with estate administration.

**PTAC fiduciaries** should immediately seek rescission of the transaction to mitigate exposure under **26 U.S.C. § 4958(c)(2)**, which imposes an excise tax of **25% on any excess benefit**

received, and avoid triggering the **mandatory 200% second-tier penalty** for failure to correct, as outlined under **§ 4958(b)** and <u>mandatory criminal prosecution.</u>

Should the fraudulent transaction remain uncorrected and liquidation proceed as presently structured, the **bankruptcy estate and its fiduciaries,** including the Trustee, may be liable not only for the fair market value of the diverted property but for **double the final sale price** pursuant to **IRS excess benefit penalty provisions** and federal restitution standards. Importantly, the calculation of such penalties must be based on the **gross asset value**, not net after deductions, administrative expenses, or fiduciary fees—any attempt to reduce liability through procedural artifice would constitute further fraud upon the estate and the United States government.  This matter is not confined to **Washington County, Oklahoma**, nor is it merely an issue of private debt resolution. Rather, it implicates the **unlawful misappropriation of nationally significant cultural property**, once held in **public charitable trust**, and the systemic exploitation of the **bankruptcy system** to carry out what may ultimately be deemed a **federally prosecutable criminal conspiracy**. Accordingly, the facts of record necessitate:

> (1) **Mandatory referral** to the **United States Department of Justice**, the **Internal Revenue Service – Exempt Organizations Division**, and the **Federal Bureau of Investigation**,
> (2) Immediate **referral to the Executive Office of the United States Trustee in Washington, D.C.**, for urgent oversight of the case,
> (3) Court-ordered **Rule 2004 examinations** of all fiduciaries, insiders, and legal counsel involved in the transfer and sale of Price Tower, and
> (4) Imposition of a **constructive trust** over all proceeds derived from the sale or liquidation of cultural heritage assets until such time as federal authorities can determine criminal and civil liabilities under *18 U.S.C. §§ 201, 371, 641, 1341, 1343, 1956, 2314, and 26 U.S.C. §§ 4941, 4958, 7201, 7206, 7212.*

To do otherwise would constitute an abdication of this Court's obligation to **preserve the rule of law**, to **safeguard the constitutional rights of the American People**, and to ensure that their **cultural patrimony is not bartered away through schemes of commercial fraud, fiduciary betrayal, and legal manipulation**. The **United States Constitution**, including the principles embedded within the **First and Fifth Amendments**, demands no less.

## II. LEGAL AUTHORITY FOR CRIMINAL REFERRAL

This Honorable Court possesses not only the **inherent equitable authority** under the Bankruptcy Code but also the express **legal and statutory mandate** pursuant to **18 U.S.C. § 3057(a)** to <u>refer any matter involving suspected bankruptcy fraud or related offenses to the</u>

United States Attorney for investigation and prosecution. The **evidentiary record now before the Court**, consisting of filings, public financial disclosures, sworn testimony, and verifiable third-party documentation, presents <u>clear and convincing evidence</u>—far exceeding the standard and approaching the threshold of **beyond a reasonable doubt**—that multiple serious violations of **federal criminal law**, **tax code provisions**, and **regulatory safeguards governing nonprofit & public trust assets** have occurred or are continuing to occur.

<u>These include, but are not limited to, the following statutory and regulatory violations:</u>

- **Perjury**, under **18 U.S.C. § 1621**, knowingly false declarations in sworn federal filings;

- **Bankruptcy Fraud**, under **18 U.S.C. § 152**, for concealment of estate assets, false claims, and false oaths;

- **Bribery of public officials or private fiduciaries**, under **18 U.S.C. § 201**, where financial benefits appear to have been promised or exchanged for favorable action in the disposition of protected property;

- **Concealment of Assets and False Declarations**, under **11 U.S.C. §§ 521(a)(1), 541, and 727(a)(4)** and **18 U.S.C. §§ 152(1), (2), and (3)**;

- **Wire and Mail Fraud**, under **18 U.S.C. §§ 1341 and 1343**, for the use of interstate communication to advance materially false representations related to the value, ownership, and disposition of federally protected historical property;

- **Obstruction of Justice**, under **18 U.S.C. § 1519**, for destruction, alteration, or concealment of records and assets connected with the bankruptcy estate;

- **Theft of Major Artwork**, under **18 U.S.C. § 668**, given the reported removal and sale of culturally and historically significant artistic works from a federally designated museum;

- **Interstate Transportation of Stolen Property**, under **18 U.S.C. § 2314**, involving the unauthorized shipment/sale of museum artifacts & historical objects across state lines;

- **Money Laundering**, under **18 U.S.C. § 1956**, where cryptocurrency, including Bitcoin, has allegedly been used to conceal the proceeds of unlawful asset transfers;

- **Conspiracy to Defraud the United States**, under **18 U.S.C. § 371**, through coordinated efforts to subvert tax laws and charitable trust obligations;

- **Willful Failure to File Required Tax Returns**, under **26 U.S.C. §§ 7201, 7203**, including by Debtor and associated entities during material periods of financial activity;

- **Constructive Fraud**, where transfers of property were made without adequate consideration and with the intent to hinder, delay, or defraud creditors in violation of **11 U.S.C. § 548** and corresponding state fraudulent conveyance statutes;

- **Excess Benefit Transactions**, under **26 U.S.C. § 4958**, where insiders and fiduciaries of **Price Tower Arts Center Inc.**, a 501(c)(3) public charity, appear to have received personal financial benefits vastly disproportionate to fair market value, in violation of IRS regulations governing nonprofit governance and public trust preservation;

- **Self-Dealing and Improper Asset Diversion**, under **26 U.S.C. § 4941**;

- **Violation of IRS Form 990 Reporting Requirements and Schedules**, including misrepresentations on **Schedule D (Supplemental Financial Statements)** concerning real property and depreciation schedules for publicly held heritage assets, potentially in violation of **26 U.S.C. § 7206**.

The structured conveyance of a **National Historic Landmark and its federally protected contents for nominal consideration**—while the nonprofit transferor continues to report ownership on IRS filings—amounts to a **fraudulent conveyance of restricted-use historical property** in violation of both federal preservation law and tax-exempt use restrictions. This is particularly egregious where the transferee subsequently seeks to liquidate the asset via Chapter 7 and divert proceeds to insiders who orchestrated the transfer, constituting a textbook case of **structural fraud**, **public trust betrayal**, and **bankruptcy process abuse**.

Accordingly, this matter warrants immediate and comprehensive investigation by federal authorities. The Court is respectfully urged to refer the entire record to the following agencies:

- The **United States Attorney's Office** under **18 U.S.C. § 3057(a)**;

- The **Internal Revenue Service – Exempt Organizations Division**, for regulatory review and enforcement under **26 U.S.C. §§ 4941, 4958, and 7201 et seq.**;

- The **United States Department of Justice, Criminal Division**, including its **Public Integrity Section and Money Laundering and Asset Recovery Section (MLARS)**;

- The **Federal Bureau of Investigation**, for investigation into cultural property theft and organized fraud involving nonprofit institutions;

- **Executive Office for United States Trustees, Washington D.C.**, for systematic review of fiduciary misconduct, estate abuses, and improper insider compensation claims.

Failure to act decisively in the face of such overwhelming statutory violations would not only undermine the integrity of the bankruptcy system but may render the Court complicit—albeit unintentionally—in the ongoing misuse of the judicial process to execute a **complex, multi-layered fraud against the American people, the Internal Revenue Service, <u>and the cultural heritage of the United States.</u>**

## III. PRAYER FOR RELIEF & PRAYER FOR JUSTICE ON BEHALF OF THE AMERICAN PEOPLE

WHEREFORE, in light of the overwhelming evidence of fraud, concealment, statutory violations, systemic abuse of the bankruptcy process—each of which implicates substantial public interests and the unlawful divestiture of a federally protected National Historic Landmark—the undersigned respectfully and solemnly prays that this Honorable Court:

1. **TAKE JUDICIAL NOTICE**, pursuant to **Federal Rule of Evidence 201**, of the material falsehoods, omissions, and fraudulent misrepresentations contained within the Debtor's Petition, Schedules, and Statements of Financial Affairs, as well as public records, IRS filings, and media reports already entered into the record or incorporated by reference;

2. **REFER this matter for immediate criminal investigation and prosecution** to the **United States Attorney pursuant to 18 U.S.C. § 3057(a)**, and further direct transmission of the full evidentiary record to the **Department of Justice, Internal Revenue Service – Exempt Organizations Division & Criminal Investigation Division, Federal Bureau of Investigation**, and the **Executive Office for United States Trustees** in **Washington, D.C.**, for mandatory comprehensive federal oversight;

3. **APPOINT**, forensic accountant, or independent examiner pursuant to the Court's inherent and statutory authority under **11 U.S.C. §§ 105 and 1104**, to locate, identify, inventory, secure, & preserve all endangered museum artifacts, including those illegal and illicit sold and transferred in interstate commerce across state lines; archival material, and architecturally significant items constituting part of the national historic patrimony that have been unlawfully concealed, misappropriated, transferred in violation of federal law;

4. **ORDER an expedited investigatory hearing pursuant to Bankruptcy Rule 2004**, to compel the examination under oath of **Cynthia D. Blanchard**, her legal counsel,

fiduciaries & any and all persons or entities who participated in or benefited from or are set to benefit from the fraudulent conveyance or dissipation of estate and trust property;

5. **ORDER that Cynthia D. Blanchard**, control person of the Debtor, be compelled to <u>**immediately surrender to appropriate authorities**</u> and be subjected to **mandatory secured bonding** and **continuous electronic monitoring**, in an amount not less than the aggregate of all known liabilities and the **estimated fair market value of misappropriated or endangered cultural property**, pursuant to this Court's authority under **11 U.S.C. §§ 105(a), 362(d), and Bankruptcy Rule 7032**, to prevent further irreparable harm to estate assets & public trust property. In the alternative, **remand Ms. Blanchard to federal custody** pending further proceedings, based on her **documented failure to file federal tax returns**, substantial & ongoing risk of concealment or dissipation of estate property, & a demonstrable **risk of flight**. Particularly in light of reports that Ms. Blanchard & her spouse, **Anthem H. Blanchard**, possess **multiple passports**, including "diplomatic" passports issued by microstate known as "Liberland.", thus give rise to a compelling inference Blanchards pose an <u>imminent risk of absconding with the proceeds of what has been publicly characterized</u> <u>as the "looting," "pillaging," and "plundering" of a federally funded museum and National</u> <u>Historic Landmark</u>—thus warranting immediate judicial intervention in public interests.

6. **ORDER an immediate and indefinite STAY of any distribution of estate assets**, including proceeds from the sale of Price Tower or any related trust property, until such time as a **full federal criminal review and forensic investigation can be completed**, and any unlawfully enriched insiders or fiduciaries are held to account under **26 U.S.C. §§ 4941, 4958, & 18 U.S.C.** and related enforcement provisions;

7. **GRANT such other and further relief as this Court deems just, equitable, and necessary** to preserve the integrity of the judicial process, protect the rights of creditors, safeguard the public trust, and ensure the cultural, constitutional, and financial interests of the **American People**—for whom these assets were held in perpetuity.

Respectfully submitted, Michael Eric Nelson, Pro-Se

Phone 702.932.3434 michaelericnelson @icloud.com MUST Call to authorize email receipt due to Oklahoma state laws on email transmissions to & from Oklahoma

A document filed pro se is **"to be liberally construed,"** Estelle, 429 U.S. "pro se …
however inartfully pleaded, <u>must be held to less stringent standards than formal pleadings
drafted by lawyers,"</u> ibid. Cf. Fed. Rule Civ. Proc. 8(f) ("All pleadings shall be so construed
as to do substantial justice"). "filings generously and with the ***leniency due pro se
litigants***", see *Erickson v. Pardus, U.S. 127 S.Ct. L.Ed.2d (2007); Andrews v. Heaton, 483
F.3d (10th Cir.2007).*

## <u>CERTIFICATE OF SERVICE - DECLARATION OF RESTRICTED DISCLOSURE</u>

## IN THE MATTER OF JUDICIAL NOTICE AND PROCEDURAL ASSERTION OF RESTRICTIVE NON-DISSEMINATION MANDATES

WHEREAS, in strict adherence to the prevailing corpus of procedural jurisprudence, statutory imperatives, and doctrinal maxims enshrining the sacrosanct principles of procedural due process and equitable notice, the undersigned, acting in an abundance of caution and in full cognizance of binding jurisdictional predicates, hereby certifies that effectuate service of the foregoing instrument has been executed in conformity with the prevailing mandates of statutory law, codified procedural governance, and applicable adjudicatory directives. NOTWITHSTANDING, in recognition of extrajudicial anomalies, convoluted procedural exigencies, and the demonstrable tactical exploitation of statutory architecture heretofore executed with artifice and calculated intent, it is hereby formally, unequivocally, and incontrovertibly noticed that the subject filing—individually, severally, and in the aggregate—shall not, under any conceivable construction, legal fiction, interpretative lens, or attenuated inference, be conveyed, transmitted, promulgated, or otherwise disseminated in any form, manner, or medium—whether directly, derivatively, incidentally, or by operation of constructive notice—to the individual alleged co conspirator of the debtor control person CYNTHIA D. BLANCHARD and her consort ANTHEM HAYEK BLANCHARD by personage of **Chad Mitchell Koehn**, aka Chad Koehn, C. Mitch Koehn, Chad M. Koehn, Chad Mitchell K., Chad Mitch K, Chad Koehn Mitchell, Chad Mitchel Koehn or any other derivative he may use nor to any juridical entity, corporate enterprise, organizational consortium, trust arrangement, professional association, individual, attorney, consort, person, associate, employee or extrinsic affiliate with whom Chad M. Koehn maintains, has maintained, or is reasonably deduced to have maintained any contractual nexus, fiduciary entanglement, agency affiliation, governance role, or informal economic coalescence. Said prophylactic restriction is predicated upon the putative existence of an adjudicatory directive, the precise linguistic contours and jurisdictional breadth of which remain presently indeterminate, but which is purported to have been issued **sub silentio.** Accordingly, all **creditors, claimants, parties in interest, government agencies, regulatory bodies, and legal representatives** are hereby formally placed on notice of the aforementioned assertions, reservations, disclaimers, and protections governing the legal position and conduct of the **undersigned** with respect to the instant matter and any peripheral proceedings related thereto.

When filed to the US Federal Court this filing will be automatically sent to the
parties of record pursuant with the Federal Court's automatic notification
systems, therefore service so rendered pursuant with applicable law
notwithstanding the aforementioned foregoing disclaimer.

**Respectfully submitted;**  2 April 2025

Respectfully submitted, Michael Eric Nelson, Pro-Se



Phone 702.932.3434 michaelericnelson @icloud.com MUST Call to authorize email receipt due to Oklahoma state laws on email transmissions to & from Oklahoma|

Please send correspondence in addition to the following offices where the above herein signed shall attempt contact and eventual in person communication due to the severity of the situations occurring:

RAMONA D. ELLIOTT, DEPUTY DIRECTOR/GENERAL COUNSEL

441 G STREET, NW, SUITE 6150

WASHINGTON, DC 20530       USPS CERTIFIED: 9214890142980416423890

—-------------------------------------

Federal Bureau of Investigation

Major Theft Unit, room 5096 (**Art Crime Team**)

935 Pennsylvania Avenue, NW, Washington, D.C. 20535
USPS Certified: 9214890142980416424590

——----------------------------------

US Treasury - Financial Crimes Enforcement Network

1500 Pennsylvania Avenue, NW

Washington, D.C. 20220   USPS Certified Mail: 9214890142980416424606

——----------------------------------

U.S. Department of Justice (AG Pam Bondi)

950 Pennsylvania Avenue, NW

Washington, DC 20530-0001

USPS Certified: 9214890142980416424613