IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| **GREEN COPPER HOLDINGS, LLC** | ) | **CASE NO. 25-10088-T** |
| **EIN # xx-xxx9708** | ) | **Chapter 7** |
| | ) | |
| | ) | |
| **Debtor.** | ) | |

### TRUSTEE'S MOTION TO PAY PROFESSIONAL FEES AND NOTICE OF OPPORTUNITY FOR HEARING

Comes now the Trustee and states:

1. Pursuant to this Court's order prior (Doc. No. 14), the Trustee employed Michelle Johnson ("Johnson") for purposes of assisting the Trustee in securing and inventorying the assets of this estate.

2. This Motion covers the time period 2/3/2025 through 05/21/2025. Johnson has received no compensation to date.

3. Attached as **Ex A** is Johnson's itemized statement of services provided and time expended for the benefit of the estate. As noted, Johnson seeks compensation totaling **$18,591.72** for the specified time period.

4. **Narrative In Support of Motion**—The services provided can be summarized as follows:

    a. **Removal of Water from the Basement:** The principal assets of this estate were a structure known as the Price Tower and certain personalty, including art, located on the real estate or in the structure. As of the date of bankruptcy none of these assets were insured and all utilities had been shut off. To make matters worse, underground water had leaked into the basement. Johnson assisted in the effort to remove the water by using mobile sump pumps. It was hoped that the removal of water might allow the estate to secure power at a minimum. It was ultimately determined that the estate simply

did not have sufficient resources to obtain power to the building and, as a result, the process of constantly removing water was abandoned.

b. **Inspection of All 19 Floors:** Johnson fully inspected all 19 floors of the structure to determine damage to the property and condition of the personalty and art.

c. **Changing Locks:** Johnson secured a change in the locks and obtained a set of keys to the entrances of the 19 floors.

d. **Securing Japanese Art**: One of the owners of the Debtor, Cynthia Blanchard ("Blanchard"), removed certain Japanese art from the structure based on concern that the art's exposure to the elements could damage the art. Johnson originally met with Blanchard at Johnson's place of business for the purpose of taking possession of 15 boxes of the specified art. Thereafter, Johnson became concerned that the art should be moved to both a more secure location and one more appropriate for storing art. Johnson arranged for the transfer of the art to certain bank vaults in the City. Finally, an agreement was reached with Philbrook Museum of Art to store the art in a temperature controlled environment pending a conclusion of the sale of the art.

e. **Inventory of Japanese Art:** It should be noted at the outset that inventories of personalty including art were minimal as of the date of bankruptcy. The Trustee was provided an inventory of art and personalty that was allegedly the subject of a preservation easement. The Trustee was additionally provided copies of additional inventories, the accuracy of which could not be verified. Finally, there were no inventories of the Japanese art. There were approximately 1,500 pieces of Japanese art. Johnson took steps to secure an inventory including 1,500 photographs. This inventory was provided to the stalking horse bidder, other potential bidders, and the realtor who subsequently provided it to various interested parties.

f. **Facilitating Frank Lloyd Wright Conservancy's ("Conservancy") Inspection of the Personalty:** Based on rights arising from their conservation easement, the Conservancy requested the chance to enter the Price Tower to inspect the premises and the assets allegedly subject to its easement. The Trustee insisted that Johnson, as the estate's representative, facilitate and be present during the inspection. Johnson did, in fact, facilitate that inspection over a period of several days.

g. **Removal of Personalty from the Price Tower:** The Trustee determined that certain third parties had leased space in the Price Tower and had stored certain personalty at the location. The Trustee conducted due diligence to determine who these third parties were; what the basis of their ownership of certain assets was; advised such third parties of the estate's rejection of their leases and the need for the third parties to remove their assets. Again, the Trustee insisted that Johnson facilitate and be present while this process of removal was carried out.

    h. **Inspection of the Premises by Potential Bidders and Realtors:** Inspection of the premises was conducted by the stalking horse bidder, McFarlin Building; the realtor; and potential bidders. The Trustee insisted that Johnson facilitate and be present during all inspections.

    i. **Mobile Security:** At the request of the Trustee, Johnson provided night time security utilizing an off-duty policeman and her son who manned a security vehicle parked on the premises. Johnson likewise coordinated the security with the local chief of police.

    j. **Property of the Bankruptcy Estate Signage:** At the request of the Trustee, Johnson secured a large sign that was placed on the premises advising all parties that the property was property of a bankruptcy estate and that any damage or theft of such property was a federal crime.

    k. **Secured Mail and Delivered to the Trustee:** Johnson recovered mail sent to the premises and delivered it to the Trustee.

5. The Trustee notes that the services provided by Johnson preserved assets of this estate and facilitated inspections of reviews of the property under incredibly difficult circumstances. The time expended and services provided were necessary and in the best interests of this estate.

**NOTICE OF OPPORTUNITY FOR HEARING - Your rights may be affected. You should read this document carefully and consult your attorney about your rights and the effect of this document. If you do not want the Court to grant the requested relief, or you wish to have your views considered, you must file a written response or objection to the requested relief with the Clerk of the United States Bankruptcy Court for the Northern District of Oklahoma, 224 South Boulder, Tulsa, Oklahoma 74103 no later than 24 days from the date of filing of this request for relief. You should also serve a file-stamped copy of your response or objection to the undersigned movant/movant's attorney [and others who are required to be served] and file a certificate of service with the Court. If no response or objection is timely**

**filed, the Court may grant the requested relief without a hearing or further notice. The 24-day period includes the three (3) days allowed for mailing provided for in Fed. R. Bankr. P. 9006(f).**

Respectfully Submitted by:  /s/ Patrick J. Malloy III
Patrick J. Malloy III, OBA #5647
MALLOY LAW FIRM, P.C.
401 S. Boston Ave. Suite 500
Tulsa, Oklahoma 74103
Telephone: 918-699-0345
Fax: 918-699-0325
*ATTORNEYS FOR TRUSTEE*