## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| **GREEN COPPER HOLDINGS, LLC** | ) | **CASE NO. 25-10088-T** |
| **EIN # xx-xxx9708** | ) | **Chapter 7** |
| | ) | |
| | ) | |
| Debtor. | ) | |

## TRUSTEE'S MOTION FOR ORDER AUTHORIZING PAYMENT OF ATTORNEY FEES AND NOTICE OF OPPORTUNITY FOR HEARING

Comes now the Trustee and states:

1. This Court previously authorized the employment of Malloy Law Firm P.C. ("Malloy") as counsel for the Trustee (Doc. No. 18).

2. The time period covered by this motion is the 27th day of January 2025 through May 21, 2025.  To date, Malloy has received no compensation.

3. Attached as **Ex A** is an itemized statement of the time expended and services provided. As noted, Malloy seeks approval of attorney fees totaling **$56,735.00** plus expenses totaling **$997.43**.

4. The time expended and services provided as specified in **Ex A** can be summarized as follows:

    a. **Review of All Pre-Petition Litigation**: Malloy reviewed all of the pleadings filed in pre-petition litigation commenced by the McFarlin Building LLC against the Debtor seeking a judgment for specific performance with respect to a contract to purchase all of the Debtor's assets for the sum of $1.4 million. The review included

a review of pleadings; relevant documents including a pre-petition contract; a transcript of a state court hearing; and a post-petition memorandum filed by the state court. In addition, the movant reviewed pleadings filed by the Debtor seeking a declaratory judgment that a certain conservation easement asserted by the Frank Lloyd Wright Conservancy ("Conservancy") with respect to the Debtor's assets had expired or was no longer enforceable. This review included reviewing the easement documents and researching the effect of conservation easements. The movant additionally conferred with counsel for the Conservancy and other interested parties. Malloy's conclusion from this investigation was that there were substantial issues as of the date of bankruptcy relative to whether or not the McFarlin contract was executory, and, therefore, could be rejected. In addition, Malloy concluded the lawsuit against the Conservancy should not be pursued.

b. **Negotiating The Stalking Horse Contract:** Given the complex issues related to the pre-petition litigation, the movant concluded that it was in the best interest of all parties to negotiate a stalking horse contract with McFarlin. Such a contract would avoid months of litigation relative to assets that were depreciating in value and uninsured. It would additionally recognize the time and costs expended by McFarlin prior to bankruptcy by providing a termination fee in the event McFarlin was not the successful bidder. It would create a bidding limit which Malloy believed was in the best interests of the estate. Finally, it would allow the estate to seek alternative and competitive bids that could enhance the value of the assets. As a result of these conclusions, the movant negotiated such a contract with counsel for McFarlin. The contract additionally included certain bidding procedures.

c.  **Sale Pleadings:** Malloy prepared and filed pleadings seeking approval of bidding procedures; the motion to sell pursuant to the agreement with McFarlin subject to bidding procedures; the notice of sale; the request for order and the related order approving sale. As of the deadline to submit competitive bids, McFarlin's offer was the only one received and as a result the Court entered an order prepared and submitted by Malloy approving the sale to McFarlin for the sum of $1.4 million.

d.  **Employment Of Professionals:** Malloy secured an order of this Court authorizing the employment of David Payne ("Payne") as an expert to, among other matters, provide a list of prospective bidders. Payne did, in fact, provide such a list and mailed copies of the motion and notice of sale to over 900 prospective bidders. Malloy likewise secured an order authorizing the employment of Michelle Johnson for purposes of securing the property; coordinating the removal of water from the building; coordinating a review of the property and its contents by prospective bidders, representatives of the Conservancy, and third parties who had stored personal property on the premises. Malloy secured the employment of a commercial realtor, Cushman & Wakefield, to provide additional exposure to possible bidders. Finally, Malloy secured an order authorizing the employment of special counsel who assisted in all of the matters specified herein.

e.  **Review of Pre-Petition Transfers**—Malloy and special counsel reviewed documents related to the pre-petition transfer of certain assets allegedly for less than equivalent value and/or in violation of the terms of the easement. That matter is still being investigated.

f. **Inter-Company Matters—**Malloy has reviewed the schedules of assets and liabilities and statement of financial affairs filed in both these proceedings and the related matter of *In Re Copper Tree, Inc.* Case No. 25-10084-T. Malloy is in the process of reviewing the relationship between these entities and their creditors for the purpose of possible substantive consolidation. In this regard, Malloy has additionally reviewed certain records provided by the Debtor including bank statements. No decision regarding consolidation had been made at this time.

g. **Review of Claims Filed—**Malloy has reviewed the claims filed in these proceedings and will continue to review such pleadings as they are filed.

5. The estate recovered net proceeds from the sale of the assets of $1,295,894.06.

6. Malloy seeks an order in these proceedings authorizing payment of attorney fees in the amount of **$56,735.00** and expenses of **$997.43**. The fees and expenses prayed for are reasonable and necessary, and payment of such fees and expenses is in the best interests of the estate.

**NOTICE OF OPPORTUNITY FOR HEARING - Your rights may be affected. You should read this document carefully and consult your attorney about your rights and the effect of this document. If you do not want the Court to grant the requested relief, or you wish to have your views considered, you must file a written response or objection to the requested relief with the Clerk of the United States Bankruptcy Court for the Northern District of Oklahoma, 224 South Boulder, Tulsa, Oklahoma 74103 no later than 24 days from the date of filing of this request for relief. You should also serve a file-stamped copy of your response or objection to the undersigned movant/movant's attorney [and others who are required to be**

**served] and file a certificate of service with the Court. If no response or objection is timely filed, the Court may grant the requested relief without a hearing or further notice. The 24-day period includes the three (3) days allowed for mailing provided for in Fed. R. Bankr. P. 9006(f).**

       Respectfully Submitted by:       /s/ Patrick J. Malloy III
                                                  Patrick J. Malloy III, OBA #5647
                                                  MALLOY LAW FIRM, P.C.
                                                  401 S. Boston Ave. Suite 500
                                                  Tulsa, Oklahoma  74103
                                                  Telephone:   918-699-0345
                                                  Fax:          918-699-0325
                                                  *ATTORNEYS FOR TRUSTEE*