## S SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release (the *Settlement Agreement*") is made and entered into this ____ day of July, 2025, by and between **Frank Lloyd Wright Building Conservancy,** an Illinois not-for-profit corporation, (the "Conservancy") and **Patrick J. Malloy** (the "Trustee" and collectively with the Conservancy, the "Parties"), as the duly appointed Chapter 7 Trustee in the substantively consolidated bankruptcy cases: Green Copper Holdings, LLC  and  Copper Tree, Inc.  (the "Chapter 7 Debtors") under  Case No. 25-10088-T (the "Bankruptcy Case") pending in the United States Bankruptcy Court for the Northern District of Oklahoma (the "Bankruptcy Court"). The Parties agree as follows:

### RECITALS

A.    On January 22, 2025, the Chapter 7 Debtors filed separate petitions for relief under Chapter 7 of the Bankruptcy Code thereby commencing the Bankruptcy Cases. Prior to the bankruptcy filing, the Chapter 7 Debtors owned the Price Tower, built in 1956 in Bartlesville, Oklahoma, designed by Frank Lloyd Wright.

B.    On June 11, 2025, an Order was entered by the Bankruptcy Court granting the Trustee's motion to substantively consolidate the separate cases filed by Green Copper Holdings, LLC and Copper Tree, Inc.

C.    On June 27, 2025, the Trustee filed Trustee's Motion to Substantively Consolidate the Bankruptcy Case with a non-debtor entity known as The Inn at Price Tower Inc.. Upon entry of an order granting this Motion, then The Inn at Price Tower Inc. shall be included in the definition of the term "Chapter 7 Debtors."

D.    The Conservancy is a not-for-profit corporation whose mission is to facilitate the preservation and stewardship of the remaining built works designed by Frank Lloyd

Wright through advocacy, education and technical services.  The Conservancy is the holder of a Preservation and Conservation Easement (the "Easement") covering the Price Tower which was recorded on April 18, 2011. Among other things, the Easement specifies that the owner of the building may not remove any material portion of the facades or the exterior of the building or subdivide, sell, or develop parts of the premises separately.

E.   On June 6, 2025, the Conservancy filed its Proof of Claim No. 16 as a general unsecured claim in the amount of $170,000 (the "POC") relating to legal fees incurred by the Conservancy administering the terms of the Easement.

F.   The Trustee disputes the POC.

G.   Prepetition, the Chapter 7 Debtors. along with Cynthia Blanchard in her individual capacity ("Cynthia") filed suit against the Conservancy and others in Case No. CJ-2024-237 (the "State Court Case") in the District Court for Washington County. Oklahoma (the "State Court").

H.   Pursuant to section 541(a)(1) of the Bankruptcy Code, the estate of the Chapter 7 Debtors is comprised of, inter alia, all legal and equitable interests of the Chapter 7 Debtors in property held as of the commencement of the case, including the purported claims against the Conservancy asserted by Green Copper Holdings, LLC and Copper Tree, Inc. in the State Court Case (the "Conservancy Claims"). The Conservancy Claims seek, among other matters, a declaratory judgment that the Easement does not apply to certain assets of Green Copper Holdings LLC

I.   The Conservancy disputes the Conservancy Claims.

2

J.    The Trustee has identified potential fraudulent transfer claims in the Bankruptcy Case against 20C Design LLC ("20C") relating to the prepetition purchase from the Chapter Seven Debtors by 20C of certain items previously located at the Price Tower (the "20C Claims," and together with the Conservancy Claims, the "Claims"). The Conservancy wishes to purchase the items from 20C that are the subject of potential 20C claims to ensure that such items are preserved and returned to the Price Tower building in accordance with the Conservancy's mission and the terms of the Easement. In order to facilitate such purchase, and in exchange for the consideration set forth in this Settlement Agreement, the Conservancy seeks a release of the 20C Claims.

K.    The Trustee and the Conservancy have agreed to settle all of the Claims in exchange for the Conservancy withdrawing the POC.

H.    The Parties desire to enter into this Settlement Agreement in order to facilitate the full settlement and discharge of (i) all Claims which are, or might have been, asserted by the Trustee against the Conservancy in the Bankruptcy Case and the State Court Case upon the terms and conditions set forth below; (ii) all Claims against 20C with respect to purported prepetition fraudulent transfers; and (iii) the POC.

## AGREEMENT

The Parties agree as follows:

**1.    Mutual Release, Discharge and Exceptions**

1.1.   Upon the effectiveness of this Settlement Agreement as set forth in Section 8 (the "*Effective Date*") and in consideration of the Conservancy's withdrawal of the POC along with the waiver of their claims against the Trustee and/or the Chapter 7 Debtors, the Trustee releases and discharges each of the Conservancy and 20C, separately and collectively along with their officers,

3

directors, stockholders, members, attorneys, agents, servants, representatives, employees, parent companies, subsidiaries, affiliates, partners, trustees, predecessors, successors in interest and assigns (collectively, the "*Released Parties*") from any and all claims, demands, obligations, actions, causes of action, rights, damages, costs, expenses and compensation or monetary relief of any nature whatsoever, known or unknown, whether based on a tort, contract, statute, equity, agency, control, instrumentality, alter ego, domination, sham, single business enterprise, piercing the veil, unfairness, undercapitalization or any other theory of recovery, which the Debtors or Trustee had, has or may have against the Released Parties, including, but not limited to, the Claims.

1.2.    The Parties expressly waive and assume the risk of any and all claims for damages which exist as of this date, but of which the Parties do not know or suspect to exist, whether through ignorance, oversight, error, negligence, or otherwise, and which, if known, would materially affect the Parties' decision to enter into this Settlement Agreement.  The Parties assume the risk that the facts or law may be other than the Parties believe.  It is understood and agreed to by the Parties that this settlement is a compromise of doubtful and disputed claims, and the agreements set forth herein are not to be construed as an admission of liability, as all Parties expressly deny liability.

**2.      Implementation**

2.1.    The Trustee shall promptly file the necessary pleadings in the Bankruptcy Court to obtain the Approval Order as provided in Section 8 below.

2.2.    On the Effective Date and in consideration of the release set forth above by the Trustee, the Conservancy shall withdraw the POC.

2.3.    Promptly following the Effective Date, the Parties shall cooperate with respect to the filing of an appropriate pleading in the State Court Case dismissing with prejudice any and all Claims of the Chapter 7 Debtors against the Conservancy.

**3.    Representation Regarding Advice of Counsel**

In entering into this Settlement Agreement, the Parties represent that they have relied upon the advice of their attorneys, who are the attorneys of their choice, concerning the legal consequences of this Settlement Agreement; that the terms of this Settlement Agreement have been completely read and explained to the Parties by their attorneys; and that the terms of this Settlement Agreement are fully understood and voluntarily accepted by the Parties.

**4.    Warranty of Authority to Execute Agreement**

The Parties represent and warrant that, subject to Section 8 of this Settlement Agreement, no other person or entity has, or has had, any interest in the claims, demands, obligations, or causes of action referred to in this Settlement Agreement, except as otherwise set forth herein; that the Parties have the sole right and exclusive authority to execute this Settlement Agreement; and that the Parties have not sold, assigned, transferred, conveyed or otherwise disposed of any of the claims, demands, obligations, or causes of action referred to in this Settlement Agreement.

**5.    Governing Law**

This Settlement Agreement shall be construed and interpreted in accordance with the laws of the State of Oklahoma.

5

6.      **Additional Documents**

The Parties agree to cooperate fully and execute any and all supplementary documents and to take all additional actions which may be necessary or appropriate to give full force and effect to the basic terms and intent of this Settlement Agreement.

7.      **Entire Agreement and Successors in Interest**

This Settlement Agreement contains the full and complete agreement of the Parties, and all other prior negotiations and agreements pertaining to the subject matter hereof are merged into this Settlement Agreement. Each of the Parties hereby expressly disclaims reliance upon any facts, promises, undertakings, representations, or omissions made by any other party or person, or such Party's or person's agents, representatives, or attorneys, prior to the date of the execution of this Settlement Agreement. Each of the Parties to this Settlement Agreement has had the benefit of its own counsel of choice, has carefully reviewed this Settlement Agreement with their chosen counsel, and executes this Settlement Agreement of its own free will and accord, for the purposes and considerations expressed herein.

8.      **Effectiveness and Court Approval**

8.1.    This Settlement Agreement is subject to approval by the Bankruptcy Court in the Chapter 7 Debtors' Bankruptcy Case. The Effective Date for purposes of Section 1.1 of this Settlement Agreement shall be the date of the entry of an order by the Bankruptcy Court approving this Settlement Agreement (the "*Approval Order*"). The filing of an appeal of any Approval Order shall not delay the effectiveness or implementation of this Settlement Agreement unless a duly entered stay order with an appropriate appeal bond of not less than $170,000 is entered by the Bankruptcy Court.

6

8.2.    The Parties shall reasonably cooperate and support the entry of the Approval Order by the Bankruptcy Court.

## 9.    Attorneys' Fees

None of the Parties shall be entitled to recover from and against another Party, any attorneys' fees and costs incurred in connection with the exercise of any rights or remedies under this Settlement Agreement resulting from any material default under this Settlement Agreement by the other party, including by litigation.

## 10.    Construction

All Parties, together with their respective attorneys, participated in the drafting and preparation of this Settlement Agreement.  Therefore, this Settlement Agreement shall not be construed in favor of or against any Party on the basis that any such Party did or did not draft this Settlement Agreement or any attachment to it.  If any covenant, term, or condition of this Settlement Agreement is illegal, invalid, or unenforceable for any reason, the illegality, invalidity, or unenforceability shall not affect the legality, validity, or enforceability of the remaining terms, covenants, conditions, or provisions of this Settlement Agreement.

## 11.    Terms are Contractual

The provisions of this Settlement Agreement are contractual and are not mere recitals.

## 12.    Multiple Counterparts

This Settlement Agreement may be executed in one or more counterparts, all of which together shall constitute one agreement.  Also, the Parties may exchange facsimile or scanned copies of signatures, and such signature pages shall be treated as original signatures for all purposes.

7

13.     **Headings**

The headings of the sections and subsections of this Settlement Agreement are inserted for convenience only and shall not control or affect the meaning, construction, or effect of this Settlement Agreement, or any provisions hereof.

14.     **Venue**

The venue of any legal proceeding under this Settlement Agreement or breach of or default hereunder, shall be brought and heard in the Bankruptcy Court.

*[Signature page follows.]*

8

**IN WITNESS WHEREOF**, the Parties have caused this Settlement Agreement to be duly executed and delivered in multiple counterparts effective for all purposes as of the day and year first above written.

**Frank Lloyd Wright Building Conservancy, an Illinois not-for-profit corporation**

By: _____

Print Name: Barbara Gordon

Print Title: Executive Director

_____

**PATRICK J. MALLOY**, Court-Appointed Chapter 7 Trustee

9