EXHIBIT A

FILED
U.S. Bankruptcy Court
Northern District of Oklahoma
5/23/2025
Jole A. Awtrey, Clerk

| Fill in this information to identify the case: |
|---|
| Debtor 1   Green Copper Holdings, LLC |
| Debtor 2 (Spouse, if filing) |
| United States Bankruptcy Court   Northern District of Oklahoma |
| Case number:   25−10088 |

Official Form 410
## Proof of Claim

04/25

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed.** That date is on the notice of bankruptcy (Form 309) **that you received.**

### Part 1: Identify the Claim

**1. Who is the current creditor?**
Craig Brand and Adriana Soto JTRWOS
Name of the current creditor (the person or entity to be paid for this claim)
Other names the creditor used with the debtor: Mystic Law P.A.

**2. Has this claim been acquired from someone else?**
☑ No
☐ Yes. From whom?

**3. Where should notices and payments to the creditor be sent?**
Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

Where should notices to the creditor be sent?
Craig Brand and Adriana Soto JTRWOS
Name
11222 Oak Shore Ln
Clermont, FL 34711

Contact phone  3058781477
Contact email  Craig@thebrandlawfirm.com

Uniform claim identifier (if you use one):

Where should payments to the creditor be sent? (if different)
Name
Contact phone
Contact email

**4. Does this claim amend one already filed?**
☑ No
☐ Yes. Claim number on court claims registry (if known) ____  Filed on ____ MM / DD / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**
☑ No
☐ Yes. Who made the earlier filing?

Official Form 410                                Proof of Claim                                page 1

**Part 2: Give Information About the Claim as of the Date the Case Was Filed**

| | |
|---|---|
| 6. **Do you have any number you use to identify the debtor?** | ☑ No<br>☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: _____ |
| 7. **How much is the claim?** | $ 0.00    **Does this amount include interest or other charges?**<br>☑ No<br>☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A). |
| 8. **What is the basis of the claim?** | Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card. Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).<br>Limit disclosing information that is entitled to privacy, such as healthcare information.<br>preferred non dilatable shares |
| 9. **Is all or part of the claim secured?** | ☑ No<br>☐ Yes. The claim is secured by a lien on property.<br>**Nature of property:**<br>☐ Real estate.   If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410−A) with this *Proof of Claim*.<br>☐ Motor vehicle<br>☐ Other. Describe: _____<br><br>**Basis for perfection:** _____<br>Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)<br><br>**Value of property:** $ _____<br>**Amount of the claim that is secured:** $ _____<br>**Amount of the claim that is unsecured:** $ _____ (The sum of the secured and unsecured amounts should match the amount in line 7.)<br><br>**Amount necessary to cure any default as of the date of the petition:** $ _____<br><br>**Annual Interest Rate** (when case was filed) \_\_\_\_\_ %<br>☐ Fixed<br>☐ Variable |
| 10. **Is this claim based on a lease?** | ☑ No<br>☐ Yes. **Amount necessary to cure any default as of the date of the petition.** $ _____ |
| 11. **Is this claim subject to a right of setoff?** | ☑ No<br>☐ Yes. Identify the property: _____ |

Official Form 410                                    Proof of Claim                                    page 2

| 12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)? | ☑ No<br>☐ Yes. *Check all that apply*: | Amount entitled to priority |
|---|---|---|
| A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $ |
| | ☐ Up to $3,800* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $ |
| | ☐ Wages, salaries, or commissions (up to $17,150*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $ |
| | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $ |
| | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $ |
| | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(__) that applies | $ |
| | * Amounts are subject to adjustment on 4/01/28 and every 3 years after that for cases begun on or after the date of adjustment. | |

## Part 3: Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(3) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157 and 3571.**

Check the appropriate box:

☑ I am the creditor.
☐ I am the creditor's attorney or authorized agent.
☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.
☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this Proof of Claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this Proof of Claim and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date  5/23/2025
MM / DD / YYYY

/s/ Craig Brand
Signature

Print the name of the person who is completing and signing this claim:

Name: Craig Brand
       First name    Middle name    Last name

Title:

Company:
Identify the corporate servicer as the company if the authorized agent is a servicer

Address: 11222 Oak Shore Ln
Number  Street
Clermont, FL 34711
City  State  ZIP Code

Contact phone: 3058781477     Email: craig@thebrandlawfirm.com

## OFFICER'S CERTIFICATE
## COPPER TREE, INC.

This certificate is given by the undersigned officer of Copper Tree, Inc. (the "Company").

The undersigned officer hereby certifies that following is the current capitalization structure of the Company:

| Name of Owner* | Percentage of Outstanding Ownership Interests |
|---|---|
| Anthem and Cynthia Blanchard (held personally or by designees) | 89.075% |
| Dale Douglas Takio and Katalin Nagy-Takio JTWROS | 3.175% (1% contigent reserve at 1 year mark when applicable) |
| Michael J. Morin and Erinne Moran JTWROS | 1.75%. (1% contigent reserve at 1 year mark when applicable) |
| Craig Brand and Adriana Soto JTRWOS | 2.5% |
| Helm Ventures (or its designees) | 2.0% |
| Paul Aubert | 0.5% |
| Renee Nichols | 0.5% |
| Josh Gunter | 0.5% |
| TOTAL | 100.0% |

*An additional 20% is hereby reserved for issuance for a potential convertible note holder.

IN WITNESS WHEREOF, the undersigned President has executed and delivered this certificate this __9__ day of March, 2023.

By: *Cynthia Blanchard*
Name: Cynthia Blanchard
Title: CEO

Document Ref: FAWTJ-VWRJS-9WI7U-WSKLE

Page 2 of 3

Document Ref: FAWTJ-VWRJS-9WI7U-WSKLE

# Signature Certificate

Reference number: FAWTJ-VWRJS-9WI7U-WSKLE

| Signer | Timestamp | Signature |
|---|---|---|
| **Cynthia Blanchard**<br>Email: cynthia@thepricetower.com | | *Cynthia Blanchard* |
| Sent: | 09 Mar 2023 21:58:16 UTC | |
| Viewed: | 09 Mar 2023 21:58:49 UTC | |
| Signed: | 09 Mar 2023 22:00:35 UTC | |
| **Recipient Verification:** | | IP address: 152.37.150.151 |
| ✓ Email verified | 09 Mar 2023 21:58:49 UTC | Location: Bartlesville, United States |

Document completed by all parties on:
09 Mar 2023 22:00:35 UTC

Page 1 of 1



**Signed with PandaDoc**

PandaDoc is a document workflow and certified eSignature solution trusted by 40,000+ companies worldwide.



# CONSULTING AGREEMENT
# AGREEMENT

THIS CONSULTING AGREEMENT ("Agreement") is made effective as of this 1st day of March, 2021, by and between **Mystic Law, P.A.**, located at 4650 Indian Creek Road, Loveland, Colorado 80538, and/or Mystic's or its shareholder's assigns, affiliates, related entities, and/or related third parties (herein after from time to time referred to as "Mystic" and/or "Consultant"); and **Anthem Holdings Company**, a Delaware corporation ("AHC"), **Hera Software Development, Inc**., a Delaware corporation ("HeraSoft" and together with "AHC"), located at 550 Club Drive, Suite 445, Montgomery, TX 77316, (herein after referred to from time to time as "HeraSoft" and/or "Client"). Together, Mystic and HeraSoft agrees to the terms and conditions set forth herein, on the date stated above, for good and valuable legal consideration, the receipt and sufficiency of which shall go uncontested. Client and Mystic collectively shall be known as "Parties" or individually as a "Party", who further state:

## RECITALS

**WHEREAS**: Mystic is a law-firm, headquartered and maintaining a State bar license in the State of Florida with offices in the State of Colorado. (See resume, attached hereto). Mystic has a wide variety of expertise, knowledge, venture and roll-out business experience, with special skills in the areas of litigation, white collar, business law, State and Federal. Mystic and its team have been successful in corporate development, business development, capital raises, international arenas of law, advertising and marketing, and intellectual property. Mystic works with industry leaders and top tier CPA's, venture capitalists, business developers and social media experts, helping identify areas of concern or question on behalf of its clients. Mystic intends on utilizing its experiences and contacts for and on behalf of HeraSoft.

**WHEREAS**: AHC and HeraSoft are Delaware "C" corporations, with offices in the States of Texas and Oklahoma. HeraSoft has been created with the express purpose of developing, operating, raising funds in support of, and rolling-out a Ransomware and fraudulence-proof distributed, decentralized cloud software platform. This platform is designed to negate, minimize, hedge against cyber-attacks against its clientele. HeraSoft created, owns and utilizes a software program called "Hercules". Hercules distributed cloud software is represented by Client as being: (1) incorruptible, (2) Unchangeable, (3) Trackable, (4) Un-hackable, and (5) Ransomware Proof.

**WHEREAS:** Hercules, by design, holds itself out as offering its clients solutions- rolled up into one single, decentralized cloud platform, i.e., (1) Security within the network, and (2) Security from cyber-attacks adversely affecting the network, (3) a fraudulent-proofing feature — Incorruptible Track and Trace, and (4) Built on the blockchain, the chain of all actions occurring on the Hercules cloud which can be trusted (no backdating, no editing), thus ensuring accountability, transparency, and non-corruptibility within the client's system, the client's data, the client's internal system including inventory, property records, internal records, employee records, log in times, instances of HR recognition(s), digital finger-printing, corporate and business documents and digitized data, legal, fiscal, accounting, protocol assurances, auditing, vertical line authentication, and shareholder confidence. Hercules system goes beyond just protecting the corporations or governments it seeks to represent but software enabled systems to protect those certain individuals within these corporations or governments with personal "track n search" capabilities.

**WHEREAS:** Hercules lays claim to intricate programing, allowing it to maintain the following structured features:

*Served by multiple servers at once = Zero failure (impossible to take down);
*No central place for data storage = Ransomware proof data;
*No central place for data served = Ransomware proof applications;
*Zero downtime = No system lock out/failure;
*Affordable storage = Best cloud pricing available;
*Blockchain technology = Incorruptible/unchangeable/trackable/un-hackable.

 

**WHEREAS:** Client desires and Mystic accepts the effort to work collectively in order to better promote and bring to market Client's development. (See, Scope Of Work, as defined herein below). The intent is to allow HeraSoft to focus on the subject product(s) while Mystic identifies and helps engage those to better market, advertise, roll-out, present, identify compliance issues, correct compliance issues, correct perceived mis-statements or public acknowledgments which can be taken wrong, identify points within legal agreements, engage in speaking forums, engage in business and client development and where needed, travel.

**THEREFORE**, in consideration of the recitals and mutual promises contained herein from which the Parties have no objection and agree to the legal sufficiency and consideration set forth herein, the parties further agree as follows:

1. WHEREAS Clauses. All WHEREAS clauses, are incorporated herein and made part of this Agreement.

2. <u>Scope Of Services</u>. Client has developed an exceptional software product, as promoted by its officers, directors and shareholders. Client would like the ability to concentrate on its product and the further development of its product(s), while leaving the areas of: (1) marketing, (2) advertising, (3) social media promotion, (4) talking points, (5) legalities of what cannot be said or represented, (6) legalities of funding, (7) issues or questions regarding international conduct, (7) proper expensing and fiscal distribution, (8) business development and promotion, (9) risk/revenue models – to the concern of Mystic. Mystic shall begin its services by providing a comprehensive analysis of Client and Clients business while discussing possible, real time solutions or implementation of solution driven methods for any areas of concern. Mystic's services are to identify and provide within its normal course of work. Should additional expertise, over-sight, outside or third party services need to be obtained and retained, these expenses shall be timely borne and owed by Client. This Agreement is not meant to shift costs and expenses from Client to Mystic. Mystic is amenable to locating and retaining any and all third parties and expertise, on behalf of and for Client, however, the costs are that of Client. Should Client expect or identify issues beyond Mystic's Team, Mystic shall identify this shortage and work with Client as to any agreement to bring new or additional talent on-board, in some manner or another, so that Client's expectations are fulfilled. The scope of work for the Mystic Team Services to be provided to Client is specifically set forth in the proposal, quote, or acknowledgment submitted to Client. If Client requests a change in the scope of the Services to be provided, Mystic reserves the right to revise delivery schedules and make an equitable adjustment to the price. Client acknowledges and agrees that Mystic is providing the Services only and is not providing or participating in the provision of any HeraSoft product(s). Mystic will not be obligated to provide any services which are (a) outside of the scope defined in the applicable documentation; (b) outside its area of expertise; or (c) in violation of any applicable laws, codes or regulations.

All proposals, quotations or acknowledgments issued by Mystic are an offer to sell its Services pursuant to these terms and conditions. No waiver or modification of these terms and conditions shall be binding on Mystic unless authorized in writing by both parties.

3. CUSTOMER OBLIGATIONS. Client shall make available in a timely manner at no charge to Mystic any and all business information, including product information and data, financial, subject matter, competition, pitfalls and pluses, industry matters and issues, internal documents, presentations, negative facts or negative possibilities, always the truth. This information shall be deemed Proprietary and Confidential, unless publicly known. It is acknowledged and understood that Mystic can only be as good as the tools by which Client provides.

4. LIMITATION OF LIABILITY. Mystic's liability for a claim of any kind arising out of the Services provided or undertaken by the Mystic Team, pursuant to this Agreement shall in no case exceed the price already paid by Client. In no event shall Mystic be liable for any special, indirect, incidental or consequential damages, including loss of profits or business interruption or loss of use of Client's product or business, however caused, arising from the Services provided pursuant to this Agreement.

Mystic accepts such services under the terms and conditions discussed herein above and below.

5. <u>Term & Termination</u>. This Agreement shall commence on the Effective Date and shall continue in full force and effect for no less than twelve (12) consecutive months unless terminated earlier due to material default of obligations agreed upon by the Parties, or as described in the Default section specifically addressed below.

Page | 2

DocuSign Envelope ID: 95584526-4E89-4573-B09B-3E85DAF3C926
Case 2:25-cv-00886-JDC-TPL Document 184-1 Filed 07/24/25 Page 10 of 14

CONFIDENTIAL MYSTIC FINANCIAL CONSULTING & COMPENSATION
AGREEMENT

This Agreement shall automatically renew unless either Party gives the other Party at least 90 days of formal, written and received Notice of this Agreements termination. The burden of receipt is placed upon the Notice Server/Provider. Mystic shall agree to termination without cause providing that Client provides Notice of Termination along with cleared funds amounting to three month's worth of compensation, plus any owed expenses. CLIENT UNDERSTANDS AND MUST TAKE INTO ACCOUNT THAT IN THE EVENT MYSTIC IS TERMINATED, CLIENT LOSES ANY THIRD-PARTY CONTRACTS OR BENEFITS ENURED WHICH ARE CONTRACTED UNDERNEATH MYSTIC FOR PURPOSES OF CLIENT. Mystic agrees to work with Client in transferring any such contracts or making other arrangements amicable to the Parties. Any company equity provided prior to said Notice of Termination remains with Mystic. If terminated, Mystic's only legal obligations to Client shall be limited to that of an arm's length, equity holder.

6. <u>Compensation</u>. Mystic shall be compensated for its services as follows:
    a. $40,000 per consecutive month, deemed fees due and owing, which compensates Mystic and its team. This amount does not cover costs, expenses, those outside of the Mystic "Team", or third party(s) and their expenses, nor contracted expenses on behalf and for Client. Mystic is responsible for payments to its Team members;
    b. A Cost Retainer of $10,000 per month which shall be immediately replenished in the event exhausted. This cost retainer shall be applicable to the Mystic Team's expenses and not applied to third party or Client's costs, expenses or fees. Mystic shall report to Client, its expenses at the end of each month by way of spread sheet. Any expenses outside of the normal course of business must be first agreed to by Client.
    c. Equity As Part of Compensation to Mystic:
        i. Upon signing hereto, Mystic shall receive a bonus of 100,000 Common Voting Shares or if existing, Series A Preferred, Voting Shares, either of which shall be non-dilutable and fully earned with no provision for any sale hold, as earned shares. These shares shall be issued at a cost basis of $0.71 per share, the last price at which the shares of common stock were sold, and shall be considered for tax purposes as a distribution not fee to the extent permitted by applicable law.
        ii. After 90 days, from the signing hereof, Client shall immediately provide and assign, [noted with the company's transfer agent or acting Secretary should said Secretary be responsible for the Company's books and records], an additional 120,000 shares of Common Stock at a cost basis of the last price at which the shares were sold or if existing, Series A Preferred, Voting Shares, either of which shall be non-dilutable and fully earned with no provision for any sale hold, as earned shares.
        iii. After 180 days, from the signing hereof, Client shall immediately provide and assign, [noted with the company's transfer agent or acting Secretary should said Secretary be responsible for the Company's books and records], an additional 120,000 shares of Common Stock or, if existing, Series A Preferred, Voting Shares, at a cost basis of the last price at which the shares were sold, either of which shall be non-dilutable and fully earned with no provision for any sale hold, as earned shares.
        iv. After 270 days, from the signing hereof, Client shall immediately provide and assign, [noted with the company's transfer agent or acting Secretary should said Secretary be responsible for the Company's books and records], an additional 120,000 shares of Common Stock or, if existing, Series A Preferred, Voting Shares, at a cost basis of the last price at which the shares were sold,, either of which shall be non-dilutable and fully earned with no provision for any sale hold, as earned shares.
        v. After 360 days, from the signing hereof, Client shall immediately provide and assign, [noted with the company's transfer agent or acting Secretary should said Secretary be responsible for the Company's books and records], an additional 140,000 shares of Common Stock or, if existing, Series A Preferred, Voting Shares, at a cost basis of the last price at which the shares were sold,, either of which shall be non-dilutable and fully earned with no provision for any sale hold, as earned shares.
        vi. Client agrees that in the event Mystic wishes to accelerate all above stated shares, [6(c)(i-v), supra, Mystic may do so at the agreed rate of $0.71 par value, the last price at which the shares of common stock were sold, and shall be considered for tax purposes as a distribution not fee to the extent permitted by applicable law.

 

Page | 3

CONFIDENTIAL MYSTIC HERITAGE CONSULTING & COMPENSATION
AGREEMENT

Performance-based Vesting: Mystic shall receive an option to purchase 2,500,000 shares of AHC's common stock with an exercise price of $0.71 per share, with the shares to vest in 500,000 share increments for each $5,000,000 increment in total revenue or $2,500,000 increment in total investment income, each directly sourced by Mystic and actually received by the Client; provided that, such revenue or investment income, as the case may be, must be received by the Client by the first anniversary of the date of this Agreement. To the extent that any shares under this provision remain unvested by such first anniversary, they will terminate upon such date. In the alternative, Mystic may elect to receive shares with the same vesting schedule, with the understanding that Mystic will be responsible for its own taxes.

7. <u>Royalties As Part of Compensation</u>. The Parties do hereby agree that Mystic shall receive an on-going and perpetual 2.5% gross fee for any and all business introduced to Client and which Client collects upon. This provision shall survive any termination of this Agreement or renewal. Client shall pay, in clear funds, Mystic within 5 business days of collecting any and all fees paid to Client from the introduced third party.

8. <u>Audit</u>. Client hereby agrees that at least once per year, Mystic is entitled to and shall be provided with an audited accounting of any and all monies due and/or paid to Mystic, at Client's expense, as part of its annual audit obligations. Should Mystic desire more than one audit per year, Client shall make all materials needed and necessary to Mystic's auditor, however, the cost of Mystic's auditor shall be borne by Mystic. All audit reporting shall remain Confidential under the terms set forth governing Confidentiality herein below.

9. <u>Future Successful Fundraising.</u>

A. In the event that Client issues a new series raise, while Mystic is providing the Consulting services, Mystic shall be entitled to a buy in up to $500,000 worth of Client's newly issued shares at the originally agreed valuation of $0.71 per share of Client's Common Voting Shares or if existing, Series A Preferred, Voting Shares, either of which shall be non-dilutable and fully earned with no provision for any sale hold, as earned shares. Mystic and/or assigns shall be responsible for their own tax payments and said distribution of shares shall be deemed a distribution not fees to the extent permitted by applicable law.

10. <u>Facilities.</u> The place of work shall be at Mystic's discretion, except as otherwise required by the nature of the work. Client shall be responsible for costs and expenses Mystic's Team incurs associated with travel and travel related items.

11. <u>Reporting and Reimbursement</u>. In order for Mystic to apply the Cost Retainer set forth in Section 6b hereof, Mystic shall obtain prior written approval for all expenses, except for those expenses incurred within the normal course and scope of the relations. At the end of each month, Mystic shall account to Client for its prior month use of the Cost Retainer. The monthly invoice shall itemize all expenses according to their respective expense report procedures and be paid to the other through the cost retainer. In the event that said cost retainer is insufficient, Client shall pay the balance within 7 business days from the date of invoice and replenish the Cost Retainer Account.

12. <u>Due Diligence Upon The Other</u>. Each Party hereto agrees that they have already conducted sufficient due diligence upon the other, have verified the other, have met and liked the other to the point where they each feel comfortable entering into this Agreement. Each Party represents that they have conducted their independent due diligence free from the influences of the other and have not relied upon anything but their own respective investigation and diligence whereby going into this relationship with their eyes wide open.

13. <u>Confidentiality/Non-Disclosure</u>. In the course and performance of this Agreement, the Parties may be exposed to, and will be required to, use certain "Confidential Information" (as hereinafter defined) belonging to each of the parties to this Agreement. The Parties mutually agree that neither will use such Confidential Information other than for purposes addressed in this agreement. In no event shall either party use the confidential information of the other party to circumvent or cause harm to the other party.

(a) <u>Definition</u>. "Confidential Information" means any proprietary information, technical data, trade secrets or know-how, including, but not limited to, customers, customer lists, contact lists, software, developments,

Page | 4       

marketing, marketing strategies, advertising strategies, video production or any digital media, proprietary methods, business plans, data reports, methods of doing business, finances or other business information disclosed by one Party to the other, or developed by the Mystic Team for the benefit of HeraSoft, either directly or indirectly, in writing, orally or otherwise.

(b) <u>Confidential Information</u>. The Parties each hereby agree not to disclose any Confidential Information and further agree to review and in good-faith execute a more formal description of the Confidential Information as it becomes known as a result of the performance hereunder or mark any information, data or document as Confidential as they come to light during the performance of this relationship. The confidential information shall be treated as confidential and proprietary for five years from the effective date of this Agreement. Notwithstanding the above, either Party may present this information to their respective attorneys, accountants, Team, associates, partners, officers and/or board members. In the event third parties are in need of information deemed or reasonably believed to be of Confidential value, before any third party may come into possession or "know", both Parties hereto must first agree to the dissemination and if agreed upon, the third party must first be bound to a Confidentiality and Non-Circumvent Agreement. In the event of litigation hereunder, all Confidential information must be filed Confidentially without public dissemination. In the event any party gets served, through the legal process, for information which is or should be reasonable construed as Confidential, the Party served shall first alert the other Party of the service, provide a copy of the service, and allow the other Party to contest the service and request through the legal process prior to any dissemination.

(c) <u>Return of Materials</u>. Upon the termination of this Agreement, each Party will deliver to the other all of the Confidential Information of the other Party that it may have in its possession or control, together with all copies and abstracts thereof.

14. <u>Venue.</u> Notwithstanding the foregoing The Parties may apply to any state court in either Orange County or Miami-Dade County, Florida or in Montgomery County, Texas for a temporary restraining order, preliminary injunction, or other interim or conservatory relief, as necessary, without breach of this arbitration agreement and without abridgment of the powers of the arbitrator. Such "interim relief" must be in furtherance of this mandatory Arbitration dispute resolution.

15. <u>INDEMNIFICATION</u>. Client agrees to indemnify and hold Mystic harmless from any damage, liability or cost (including reasonable attorney's fees and costs of defense) to the extent caused by Client's negligent acts, errors or omissions in the performance of services or from its software programs and protocols. Indemnity is conditioned upon the indemnified party (i) providing prompt notice to the indemnifying party of any potential claim, (ii) tendering control of the defense and/or settlement of such claim to the indemnifying party, and (iii) reasonably cooperating with the indemnifying party in the defense and/or settlement of such claim.

16. <u>WARRANTY</u>. Mystic warrants that the Services will be performed in a good and workmanlike manner in accordance with prevailing standards and practices applicable to the law firm and consulting operations. Mystic expressly disclaims any and all other warranties, express or implied, including the implied warranties of merchantability and fitness for a particular purpose.

17. <u>RELIANCE</u>. Client understands that Services governed by this agreement are for their sole use and benefit and agrees not to authorize any third party to rely on the Services without the prior written consent of Mystic. Mystic acknowledges that Client may wish to allow others to rely on the services performed and agrees to extend reliance to others subject to execution of an appropriate agreement and collection of additional fees. Client acknowledges that the terms and conditions offered to others in connection with such reliance may differ from those agreed herein.

18. <u>ARBITRATION</u>. Any controversy or claim arising out of, or related to, the interpretation, validity, construction, performance, breach or termination of this Agreement, such dispute or controversy shall be settled by arbitration in accordance with the proceedings under the American Arbitration Association ("AAA") rules and such arbitration will be the exclusive dispute resolution method. The decision and award determined by such arbitrator shall be final, conclusive and binding upon both parties.

(a) <u>Arbitration Rules of Engagment</u>. The arbitration shall be conducted by a single arbitrator acting under the then current "Commercial Rules of AAA. The arbitration shall be held in either Orange County or

Page | 5

Miami-Dade County, Florida, or in Montgomery County, Texas (to be based on the selection of the party initiating such arbitration) unless otherwise agreed by both parties. Each party to this Agreement will be responsible for the payment of one half (1/2) of the fees plus costs for the arbitration. In the event a dispute is submitted to arbitration, the parties will be responsible for their own legal fees unless otherwise agreed in writing by the parties. Judgement on this binding AAA arbitration shall be entered by any branch of the Miami-Dade Circuit Court with Jurisdiction on the amount at issue. The Parties further agree that any arbitrator must be one with at least 7 years of judicial experience and at least 6 years of private practice experience.

(b) <u>Consent to Personal and Subject Matter Jurisdiction</u>. The arbitrator(s) shall apply either Florida or Texas law (based on the selection of the party initiating such arbitration). **The Parties each and respectively hereby consent to the personal and/or subject matter jurisdiction of the state or Federal courts located in either Orange County or Miami-Dade County, Florida** or in Montgomery County, Texas **for any action or proceeding arising from or relating to this Agreement or relating to any arbitration in which the parties are participants**.

(c) <u>Acknowledgment.</u> BOTH PARTIES HAVE READ AND UNDERSTAND SECTION 18, <u>Arbitration</u>, WHICH BINDS EACH PARTY HERETO TO ARBITRATION. BOTH PARTIES UNDERSTAND AND ACKNOWLEDGE THAT BY SIGNING THIS AGREEMENT, THEY BOTH AGREE TO SUBMIT ANY CLAIMS ARISING OUT OF, RELATING TO, OR IN CONNECTION WITH THIS AGREEMENT, OR THE INTERPRETATION, VALIDITY, CONSTRUCTION, PERFORMANCE, BREACH OR TERMINATION THEREOF, TO BINDING ARBITRATION, EXCEPT AS PROVIDED IN SECTION 18, AND THAT THIS ARBITRATION CLAUSE CONSTITUTES A WAIVER OF ALL RIGHTS OF BOTH PARTIES TO A JURY TRIAL AND RELATES TO THE RESOLUTION OF ALL DISPUTES RELATING TO ALL ASPECTS OF THE RELATIONSHIP BETWEEN THE PARTIES.

19. <u>Modification</u>. No modification, termination, or attempted waiver of this Agreement, or any provision thereof, shall be valid unless executed by both Parties to this Agreement.

20. <u>Assignment</u>. Neither this Agreement nor any right hereunder, nor any interest herein, may be assigned or transferred by either Party, unless to a related entity, a subsidiary entity, or a purchasing or controlling entity, without the express written consent of the other Party.

21. <u>Governing Law</u>. This Agreement shall be governed by and construed in accordance with the internal laws (and not the laws of conflicts) of the State of Florida or the State of Texas, based on the selection of the party initiating a dispute.

22. <u>Entire Agreement</u>. This Agreement is the entire agreement of the Parties and supersedes any prior agreements between them, whether written or oral, with respect to the subject matter hereof.

23. <u>Attorney's Fees</u>. In any arbitration or court action court action which is brought by one of the Parties to enforce or interpret the provisions of this Agreement, the Prevailing Party shall be entitled to a reasonable award of Attorney fees and costs.

24. <u>Relationships</u>. No joint venture, partnership, agency, or other relationship, which would impose liability upon one party for the act or failure to act of the other, shall be created or implied hereby or here from. Except as is expressly set forth herein, each party shall bear full and sole responsibility for its own expenses, liabilities, costs of operation, and the like. Neither party has or shall have the power to bind the other party or to assume or to create any obligation or responsibility, express or implied, on behalf or in the name of the other party. No Party may act as the agent of the other and no Party hereto shall be deemed an employee of the other.

25. <u>Severability/Waiver</u>. If the application of any provision or provisions of this Agreement to any particular facts or circumstances shall be held to be invalid or unenforceable by any court of competent jurisdiction, then the validity and enforceability of such provision or provisions as applied to any other particular facts or circumstances and the validity of other provisions of this Agreement shall not in any way be affected or impaired thereby. The waiver of any one default shall not waive subsequent defaults. Any and all ambiguity shall not be construed against the drafting party as each party agrees they have had amble ability to participate in this

Agreements drafting. In the event of any legal changing due to ambiguity, confusion, scrivener's error, or statute, the "Blue Pencil" laws shall apply.

26. <u>Notices</u>. Any notice to be given pursuant to this Agreement shall be in writing and shall be deemed to have been given three business days after delivered in person to a Party, if an individual, or to an officer, general partner, or an agent for the service of process for the entity; or by email with proof of email delivery, and effective one business day after said email is served.

27. <u>Safe Harbor Notice</u>

Mystic's services may provide "forward-looking statements" within the meaning of the Private Securities Litigation Reform Act of 1995, such as statements relating to financial results and plans for future development activities and are thus prospective. Forward-looking statements include all statements that are not statements of historical fact regarding intent, belief or current expectations of the company, its directors or its officers. Client and Client's investors are cautioned that any such forward-looking statements are not guarantees of future performance and involve risks and uncertainties, many of which are beyond Mystic's and/or the client's ability to control. Actual results may differ materially from those projected in the forward-looking statements. Among the factors that could cause actual results to differ materially from those indicated in the forward-looking statements are risks and uncertainties associated with the client's business and finances in general, including the ability to continue and manage its growth, competition, global economic conditions and other factors discussed in detail in the Company's periodic filings or public statements. Among the important factors that could cause the Client's actual results, performance or achievements to materially differ from those in the forward-looking statements are, among others, the competitive nature of the markets, technological developments, government regulations, changes in economical conditions or political events. In preparing its services, Mystic has relied upon and assumed, and Client understands and acknowledges Mystic's reliance, without independent verification, the accuracy and completeness of all information available from public and Client's internal sources or which was provided to it or otherwise reviewed by it. The information contained in Mystic's services has been taken from sources deemed to be reliable. Mystic does not represent that such information is accurate or complete and it should not be relied on as such. **Mystic undertakes no obligation to update any forward-looking statements**.

28. <u>Miscellaneous</u>. The section headings in this Agreement are solely for convenience and shall not be considered in its interpretation. This Agreement may be executed in any number of counterparts, each of which shall be an original, but all of which together shall constitute one instrument. The exhibits referred to herein and annexed hereto are hereby incorporated into and made a part of this Agreement.

29. <u>Parol Evidence</u>. The Parties agree that NO PAROL evidence shall be admissible and that the only representations made are stated in writing herein. Further understandings must be in writing.

<u>Authorized Signatures</u>

**THIS AGREEMENT**, its terms and conditions are understood and agreed to between the parties on date first written above. Client has read this agreement and accepted its terms. Client further understands that prior to the signing of this agreement, Client may ask any questions, have any concerns satisfied, and even go to or take this agreement to another lawyer for review and explanation. Mystic has allowed Client`s to partake in the creation or change of this agreement`s terms and conditions or edit any prepared items "at will".



FOR: ("MYSTIC")  
BY: Craig Brand  
Name & Title: Craig Brand, President

FOR: ANTHEM HOLDINGS COMPANY and HERASOFT  
BY: Anthem Blanchard  
Name & Title: Anthem Blanchard, CEO

Page | 7