# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF OKLAHOMA

**IN RE:**
COPPER TREE, INC.,
EIN # xx-xxx6608

CASE NO. 25-10088-T Chapter 7

Substantively Consolidated

GREEN COPPER HOLDINGS, LLC,
EIN # xx-xxx9708;
Debtors.
Case No.: 24-10021-M
Chapter: 7

**DALE TAKIO AND TAKITIK ENTERPRISES, INC., ("CLAIMANT" NO. 4)-AMENDED[1], OBJECTION TO TRUSTEE'S NOTICE AND MOTION TO SETTLE DISPUTED MATTER AND NOTICE OF OPPORTUNITY FOR HEARING [ECF 156]**

COMES NOW, **Dale Takio a/k/a Dale Douglas Takio, and, Takitik Enterprises, Inc.,** ("Claimant" No. 4), and files this Amended Objection (complying with ECF 190), To Trustee's Notice And Motion To Settle Disputed Matter And Notice Of Opportunity For Hearing [ECF 156], and states as follows:

1.  On July 15, 2025, the Trustee filed ECF 156 and ECF 156-1. Claimant hereby Objects to these filings and the proposed relief sought and desires an evidentiary hearing as to Trustee's Motion and Proposed Settlement as it is not within the best interests of the Debtor nor creditor classes.

2.  Relevant Portions Of The Trustee's Motion [ECF 156] Are As Follows:

    a.  Par. 1: The debtor herein filed a civil action against the **Frank Lloyd Wright Building Conservancy,** an Illinois not-for- profit corporation ("Conservancy"), Case No. CJ-

---

[1] Amended as per ECF 190

2024-237, in the District Court for Washington County, Oklahoma. "The claims asserted by the consolidated Debtors constitute property of the estate."

  b.  Par. 2: "Subsequent to the commencement of these proceedings, the Conservancy filed a Proof of Claim No. 16 for the sum of $170,000 relative to legal fees incurred in enforcing the terms of the Easement."

  c.  Par. 3: The Debtor transferred personal property belonging to the estate to a Third Party, i.e., 20C, for $150,000. The Trustee motion represents to the Court that this transfer possibly is against applicable Bankruptcy and/or Oklahoma State law. The paragraph further goes on to read that the Conservancy is in the process of reacquiring these (improperly transferred items) and returning them to the Price Tower and its new owners, i.e., the McFarlin and Mayo Group. As per Case No. CJ-2024-237, in the District Court for Washington County, Oklahoma, the Debtor did not believe so.

  d.  Par. 4: "The Trustee and the Conservancy have entered into a Settlement Agreement regarding the referenced claims and any potential avoidance claims." Paragraph 4, continues by stating that the Trustee will further:

  a. The Trustee will release any and all claims against the Conservancy arising out of or related to the above referenced state court proceeding and shall cause to be filed in the state court matter a dismissal of all claims.

  b. The Conservancy shall withdraw its Proof of Claim and shall release any and all claims against this estate.

  c. The Trustee shall release any and all avoidance claims with respect to the pre-petition transfers of property to 20C.

**ARGUMENT**.

3. Case No. CJ-2024-237, in the District Court for Washington County, Oklahoma:

A. Per the Trustee's own Motion, Case No. CJ-2024-237, in the District Court for Washington County, Oklahoma, it is the Debtor who filed suit against the Conservancy stating that the items were property belonging to the estate NOT the Conservancy.

B. The undersigned has firsthand, personal knowledge of material facts concerning the above District Court Case. Dale Takio and Mike Moran were involved in many of the underlying discussions and negotiations with the Conservancy and its president Ms. Gordon. The pre-text to the easement had been broken prior to the debtor filing the District Court case as Ms. Gordon failed or refused to sponsor the Price Tower as a World Heritage site for which the easement was created. Ms. Gordon probably also failed to inform the Trustee that she has NO certified list of the items that were allegedly tied to the easement in the first place. Ms. Gordon also probably failed to inform the Trustee that was already an acknowledged pattern of conduct where the Debtor's predecessor could sell off art work in order to pay off debts. Therefore, the Conversancy appears to now be taking advantage of the Trustee's lack of knowledge.

C. Based upon the testimony of at least two claimants, as well as the Debtor, the Conservancy was engaged in the following misbehavior alongside the Debtor, thus vitiating the creditability of the Conservancy's efforts to preserve an easement over items not depicted within any Agreement between itself and the Debtor. As an insider to the Debtor, especially as the claimant Donna Keffer [Claim No. 20], was a former officer and employee of the Snyder Family which is the group that purchased the Price Tower and thus an in-sider. It is alleged that Mrs. Keffer personally took actions along with the Debtor's other officers or agents, in violation of Bankruptcy and Oklahoma law, such as:

    a. was a full time officer and employee of PTAC (Price Tower Art Center). She was close friends with Cynthia Blanchard and helped Mrs. Blanchard obtain the Price Tower using methods that should be discussed under cross examination. She became president of Copper Tree (the Debtor) while still an officer of PTAC. As it is understood that Mrs. Keffer was actually a covered and paid employee of PTAC, any claim for fees and Oklahoma labor law violations should be stricken and further investigation into these claims under oath should be made.

    b. Mrs. Keffer also used her position and friendship with Mrs. Blanchard to violation Pictoria Studio's agreements as well as impermissibly using Debtor's funds to hire her husbands graphic design firm in violation of the executed Pictoria Studio's Contract.

D. As such, the Conservancy was within an in-side position along with the Debtor and the Blanchard's to:

    1. Manage **chaotic and misleading financials**.

    2. Allowed **commingling of funds** between nonprofit and for-profit arms.

    3. Involved in or aware of **data leaks**; benefited from misdirected funds and now seeks more from the estate.

4. The Trustee does not allege that the Conservancy had any counterclaim against the Debtor for damages, nor that attorney fees in the amount of $150,000 is fair, provable and reasonable. As per the Trustee's admission in paragraph 5(a), the District Court case was not

further litigated, and the Trustee cites no evidence that would demonstrate the Debtor's case was not sound on its merits or would have a substantial chance of losing before a jury. It is probably due to the high chances of the Debtor's success that the Conservancy did not file a damage case and did not report to the authorities the alleged theft or improper movement of the estate's items taken within the planned and plotted enterprise with Cynthia Blanchard of the Debtor's officers.

5. It is extremely difficult to believe that attorney fees in the amount of $150,000 could be incurred in such a short amount of time, that these fees would be reasonable and permissible, and that they were even warranted to begin with. Such an extreme amount of money in such a short time, involving such a simple District Court case where all the exhibits would be in the real estate closing file already, would appear on its face as an opportunistic billing exercise.

6. Furthermore, the Trustee does not allege that the Conservancy would be legally entitled to an award of reasonable attorney fees. This is just a pure give away at the expense of the claimants and interested parties.

7. The property in issue, that the Debtor improperly, if not illegally, disbursed, without the consent and knowledge of the shareholders, and in direct defiance of numerous preceding cease and desist letters, Letters of Preservation and Forthcoming Litigation by Claimants' Brand, Takio, Moran and their entities, Notices Of Forthcoming Litigation And Interest In Property/Evidence Of And Concerning The Price Tower from both Claimants and their lawyers to the Debtor and/or those such as 20C (who also was placed on Notice before their taking), was nothing more than a planned, calculated, secretive enterprise to sell off one of a kind items without disclosing to the Shareholders of the Debtor, their absence and the money obtained. (See Composite Exhibit "A" attached hereto and incorporated herein demonstrating such Notices).

8. Despite the Trustee's allegation in paragraph 5(d), upon information and belief the items improperly, if not illegally, disbursed by Debtor to 20C are worth a street value of approximately several Hundreds of Thousands of Dollars (One of a kind pieces), if not more, and therefore the Trustees settlement materially deprives the estate.

9. In reality what the Trustee is attempting to do is ask this Honorable Court to:

   a. Ignore the District Court lawsuit filed by the Debtor against the Conservancy as to issues involving an easement, not limited to the alleged stolen items. A crime is alleged by the shareholders of the debtor, claimants and interested parties hereto, to have been committed and the Trustee should Claw-back the items at issue, not reward the Conservancy with a $150,000 parting gift as well as the Snyder Family with extremely expensive items that do not belong to them but to the estate with which to be divided amongst the claimants and interested parties.

   b. If the Trustee is not able or wanting to prove that the Conservancy is not entitled to the items alleged to have been stolen by the Debtor's officers and their co-conspirator 20C, as well as not wanting to show that the alleged legal fees belonging to yet another third party, i.e., the Conservancy, is not reasonable or entitled, the undersigned is willing to devote his time, upon the Court granting the undersigned's Motion to Appear Pro Hac Vice, to this case and the Claimants' causes. The undersigned Claimant and others intend on filing an Objection to the Conservancy's Proof of Claim regardless.

   c. The District Court lawsuit was against the Conservancy not 20C. As such, the Trustee is asking the Court to allow the Conservancy to take possession of the alleged stolen items belonging to the debtor's estate without any adjudication of the State case or demonstrable proof that they would prevail.

d. The Trustee is asking the Court to allow the Conservancy to take possession of the alleged stolen items taken against the benefit of the shareholders including the Claimant(s) who are shareholders and victims of alleged theft, and give the Conservancy expensive and material one of a kind items that they have never before directly demanded, nor when having the chance at filing a District Court case or a counter-claim for damages, within the District Court case the Debtor sued them under, move for. More disturbing is that when the Conservancy learned that the third party 20C was within possession of items alleged to have been stolen as assets of the Debtor, the Conservancy did not file a report with law enforcement alleging they are the true and correct property owners. The Conservancy was on knowledge, via a phone call by and between Dale Takio and Mike Moran, that Preservation Letters went out concerning the missing items and Mr. Takio and Mr. Moran offered, as shareholders, to assist the conservancy is retrieving the items and preventing greater theft of additional items, but Ms. Gordon refused the help and had no further follow up. There is no justice, no equity is allowing the Conservancy or 20C to profit off of an alleged crime committed by others but made aware of.

e. Furthermore, as the Trustee was informed, and in which this Claimant has emails, texts and/or testimony as support, the undersigned had potential buyers for the artwork for which the Debtors stated in writing that they would not be selling, transferring, bartering, or moving these items as they were not even inventoried or all located. Yet, we have come to learn that these representations were all a ruse and that Cynthia Blanchard, et.al., were in fact secretly selling off assets of the Debtor so as to abscond with monies behind the backs of the shareholders which includes this claimant and interested party.

f. The Trustee should be working for the benefit of the Creditors and Interested Parties, NOT for the benefit of alleged thieves, fraudsters, the non-entitled and the un-

proven. The alleged stolen property should be returned to the estate, or, the claimants should have the opportunity to cross examine the Conservancy's alleged Proof of Claim.

        g. Within paragraph 3, of the Trustee's Motion, the Trustee represents to this Court, "[t]he Trustee has reviewed the facts and circumstances of the transfers and has considered possible claims to avoid the transfers pursuant to applicable Bankruptcy and/or Oklahoma State law." The Trustee then continues in the same paragraph stating that the Conservancy would then give back the assets to the Snyder Family. <u>Noticeably</u>, the Trustee fails to state whether the Snyder Family, <u>who was also on notice by the Claimants and interested parties of the Notices of Preservation before the items were alleged to have been illegally removed</u> from the Price Tower, is entitled to them and if so, at what price. Certainly not a walk away. This would make the shareholders including but not limited to the undersigned claimant and interested party a double victim of alleged theft and/or fraud perpetrated twice.

        h. Paragraph J of the Proposed Settlement Agreement is a representation that the items in issue <u>were improperly removed and were not on the property at the time of the sale</u>. This paragraph further states that the Conservancy wishes to release 20C when they should be bringing, along with the Shareholders of the Debtor, criminal charges against the Debtor and its co-conspirators for crimes and having the criminal court claw-back the stolen items and returned to their rightful owners. Paragraph J is important as the Trustee's admission that the items were off property at the time of the sale supports the Debtors and this Claimant's and interested Parties argument that no matter what, the Snyder Family or any new owner of the Price Tower is NOT entitled to these art pieces. The Trustee is failing to inform the Court, that within the Purchase and Sale Agreement, by and between the debtor and McFarlin Group, states that the purchase and sale was for assets <u>on the premises at time of the sale</u>. The assets in question, as the Trustee is aware,

were clearly NOT on the premise at the time of the sale and therefore the entire basis of the Trustee's Motion and Proposed Settlement is destroyed with no legal consideration and no right of entitlement for which to not return to the creditors and interested parties assets of the Debtor.

        i. Upon the alleged stolen property being returned to the estate, an appraisal of the estate's art work should be done and charged to the co-conspirator Conservancy, as part of the Claimant's parting gift, so that fair market value can be ascertained on the collection and sold off for the highest bid, or, bartered with the Claimants and interested parties towards the debts the debtor owes to them. The US Trustee is asking this Honorable Court to allow 20C to be able to profit from what has been alleged as a known conspiracy to commit fraud and theft.

WHEREFORE, the Claimant respectfully asks this Honorable Court to DENY the Trustee's Motion to Settle [ECF 156 and 156-A], schedule an evidentiary hearing, or any and all other relief deemed just and proper.

Respectfully Submitted by:

/s/ Craig Alan Brand, Esq.
_____
Craig Alan Brand, Esq.
The Brand Law Firm, P.A.
Florida Bar No. (FBN): 896111
6462 S. Jamaica Circle
Englewood, CO 80111
Tel. (305) 878-1477
Craig@thebrandlawfirm.com

Attorney for: Dale Takio a/k/a Dale Douglas Takio,
and, Takitik Enterprises, Inc.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on July 24, 2025, a true and correct copy of the foregoing pleading was served electronically on participants in the CM/ECF system according to local procedures.

/s/ Craig Alan Brand, Esq.
_____
Craig Alan Brand, Esq.
Florida Bar No. (FBN): 896111
Attorney For: Dale Takio a/k/a Dale Douglas Takio, and, Takitik Enterprises, Inc.