### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| **GREEN COPPER HOLDINGS, LLC** | ) | **CASE NO. 25-10088-T** |
| EIN # xx-xxx9708 | ) | **Chapter 7** |
| | ) | |
| **COPPER TREE, INC.** | ) | **Substantively Consolidated** |
| EIN # xx-xxx6608 | ) | |
| | ) | |
| Debtors. | ) | |

**RESPONSE TO TRUSTEE'S OBJECTION TO (i) CLAIM NO. 3-1 FILED IN COPPER TREE, INC., AND (ii) CLAIM NO. 2-1 FILED IN GREEN COPPER HOLDINGS, LLC BY PAUL AUBERT ("AUBERT"), EACH IN THE AMOUNT OF $212,500.00**

Comes now the respondent, Aubert, and states:

1.  Trustee filed the above-captioned objection (the "Trustee Objection") to Claim Nos. 3-1 and 2-1 on July 1, 2025. Respondent, Aubert, objects as set forth in this response below.

2.  To preface this response, Aubert initially made the claim captioned No. 3-1 in the Copper Tree, Inc. proceeding and also made the same claim captioned 2-1 in the Green Copper Holdings, LLC proceeding. As a pro se respondent with a limited understanding of the consolidation process, Aubert was attempting to preserve his claim in both proceedings prior to their consolidation in the event one of the proceedings rejected his claim as being an obligation of the other entity. Now that the proceedings have been consolidated, Aubert has no objection to eliminating one of the claims as his intent was not to be duplicative but to preserve the one claim.

3.  It should also be noted that the services Aubert provided pursuant to his claim were provided to Copper Tree, Inc. and all of its subsidiaries, including Green Copper

Holdings, LLC and Inn at Price Tower, Inc., another entity that has been consolidated for purposes of this proceeding.

## BACKGROUND

4. Aubert has practiced law since 1996, with the first sixteen years of his practice (from 1996 to 2012) primarily in the practices of corporate & securities and mergers & acquisitions at several large regional, national and international law firms. He was elected shareholder at Winstead PC, a large Texas-based law firm, in 2007 and remained there until becoming General Counsel of a public company in 2012.

5. He left that company in 2014 as a result of internal restructuring there which resulted in the physical relocation of its offices. Since then, he has practiced as, among other things, an in-house and outside counsel for primarily smaller companies and start ups. Aubert's resume with personal contact information redacted is attached hereto as Exhibit A.

6. He has since become engaged of counsel with his present employer. His current billable rate with his present employer is $545.00 per hour, a below-market rate for the Houston area for any attorney of like experience in his area of expertise.

7. As part of his private practice described above, he represented both the predecessors to Anthem Holdings Company ("AHC") and AHC itself after its formation, eventually becoming its full-time General Counsel in 2018, and worked there full time until 2023.

8. While Aubert obviously worked with Cynthia Blanchard from his time at, and representation of, AHC and its affiliates and predecessors-in-interest, his relationship with the Debtors, Copper Tree and Green Copper Holdings, is otherwise unrelated to his employment with AHC. There is nothing in the record that indicates that Aubert was engaged by Copper Tree because of any debt owed by AHC to Aubert, but only because

2

of his prior relationship with Cynthia Blanchard, and her appreciation of his superior
work product and legal advice.

## COPPER TREE, INC. AND GREEN COPPER HOLDINGS, LLC

9.  As demonstrated by the time and work log attached hereto as <u>Exhibit B</u>, Aubert began
    his work with Copper Tree, Inc. in late August 2022 and prior to its formation on
    September 30, 2022 and continued to work for Copper Tree and its subsidiaries, including
    Green Copper Holdings, LLC, with no break in services from that time until Copper Tree,
    Inc. and Green Copper Holdings, LLC filed for bankruptcy protection in January 2025.

10. During that extended period of time, Aubert was never paid for his immense efforts,
    including his efforts in doing all of the legal work necessary in bringing the assets into
    Green Copper Holdings, LLC on February 24, 2023 that were eventually auctioned and
    sold in these bankruptcy proceedings.  These assets included the property known as Price
    Tower and all of the furnishings and artwork associated therewith.

11. Toward the end of his representation, during 2024, Aubert was instrumental in working
    with all of the creditors of Copper Tree and its affiliates to ensure the continued viability
    of Copper Tree for as long as possible. This permitted Copper Tree to conduct its
    publicized auction last year, which allowed Copper Tree to locate potential buyers of its
    assets from all over the globe.  Ultimately, these efforts were unsuccessful, but they
    permitted the Trustee to communicate with potential buyers that would not have been
    available had Copper Tree been unable to deal with its creditors in 2024.

12. Aubert, through his efforts alone, was able to prevent a temporary restraining order from
    being filed against Copper Tree in August 2024 which would have required Copper Tree
    to cease its operations immediately.

13. Aubert permitted Copper Tree to defer his payments until it received funding not as a contingency fee, but as a way to allow the Company a chance to raise money before it had to expend capital by paying for legal expenses. This was clearly not a contingency fee arrangement, as a contingency fee would have provided additional compensation rewards above the legal time provided by Aubert as compensation for taking that risk. This was clearly simply a deferral mechanism in order to assist the Company in its early stages.

14. In addition, Aubert agreed to the flat fee payment structure included in the engagement letter to ease the burden on the Company as demonstrated by the much greater amounts that would have been billed to Copper Tree in <u>Exhibit B</u>, and in no way was this an effort to enrich himself at the expense of the Company, nor was this an effort to be repaid by Copper Tree for debts owed to Aubert by AHC as evidenced by the actual work performed by Aubert for Copper Tree and its subsidiaries over the course of thirty months.

15. When Aubert was appointed to the Board of Directors of Copper Tree, Inc. in September 2023, his flat rate under the engagement letter was increased to $10,000 per month from the $5,000 set forth in the engagement letter by oral agreement between Aubert and Cynthia Blanchard, the Copper Tree President, director and largest shareholder, who was well within her rights and authority to increase this compensation, in order to more adequately compensate him for the increased amount of work that was being asked of him as a result of both being appointed to the Board of Directors and as a result of the incredible amount of increased legal work for which he was solely responsible. Again, this is clearly demonstrated in <u>Exhibit B</u>.

4

16. It should further inform the Court that Aubert has continued to provide services to Copper Tree after the filing of the bankruptcy, including providing support to Copper Tree's bankruptcy attorney, and also providing information and documentation to the Trustee when requested. Aubert has not once asked for any remuneration for any of this time. These charges are also reflected in Exhibit B.

17. From August 2022 to January 2025, Aubert performed legal services and provided general business advice as a member of the Board of Directors of Copper Tree beginning in September 2023 at the highest level with no compensation other than the de minimis equity component of his compensation of a total of one percent (1%) of the outstanding shares of Copper Tree common stock. The equity granted had no impact on the amount of work performed by Aubert; it was simply a method, as is usually the case with equity compensation, to ensure that Aubert's interests were aligned with the Company.

## ARGUMENTS IN OPPOSITION TO TRUSTEE OBJECTION

References to paragraphs below are to the numbered paragraphs in the Trustee Objection:

18. *Paragraph 4* – The Trustee Objection states that the Claim does not provide a calculation or accounting of its total amount. However, the Claim does provide a calculation with respect to the amount due under the flat monthly rate set forth in the engagement letter, as orally increased by the parties. Moreover, Exhibit B sets forth an accounting of the actual work performed and its market value over the course of the thirty months of representation.

19. *Paragraph 5* – The Trustee Objection states that the engagement letter is for "general corporate and securities matters." Aubert asserts that almost all of the work performed for the Company during his representation as indicated by Exhibit B was in the area of

general corporate respresentation.  In addition, if any work extends beyond that broad description, by virtue of the fact that the parties continued to operate under the terms of the engagement letter for years after its agreement, this indicates both parties' agreement to the broadening of the representation.

20. *Paragraph 6* – The Trustee Objection indicates that the Court was not provided with an executed engagement letter.  Copper Tree would be in possession of the executed letter, and even if it was not signed contemporaneously with its agreement, both parties actions indicate their agreement by virtue of the fact that both parties operated under its terms for thirty months, and Aubert relied on this in his continued representation of Copper Tree.

21. *Paragraph 7* – The Trustee Objection claims that Aubert is not the proper person to make the Claim.  Aubert provided the services to Copper Tree and its affiliates as a solo practitioner.  He utilizes a professional corporation, Paul Aubert PLLC, a Texas professional limited liability company ("Firm"), for liability purposes, but he is paid completely as a pass-through.  Any income he derives from this company is paid directly to him, and he pays federal income tax on that income.  To the extent necessary for purposes of enforcing this obligation, Aubert is perfectly willing to have the Firm join as a joint creditor with him as he is its sole member and manager.

22. *Paragraph 9* – The Trustee Objection sites the following language in the engagement letter: "The Company and the Firm may come to an agreement for alternative methods of payment, such as equity in lieu of cash."  This is clearly and simply providing a path to alternative payments.  Aubert never agreed to any alternative methods of payment, and there is no evidence to the contrary.

23. *Paragraph 11* – The Trustee Objection argues that because Aubert provided Copper Tree with a deferral for its initial payments to him, that Copper Tree has no obligation to pay him at all.  First, this would be unjust on both quantum meruit and detrimental reliance principles.   It is obvious that this language was not meant as a contingency fee arrangement, but simply as a method to defer payment until such time as Copper Tree had an ability to pay.  There was no increased compensation to Aubert for taking the risk as you would almost always see in a contingency fee arrangement.   Reading this provision in this manner is especially unjust when one realizes that this provision was meant to assist Copper Tree by allowing it to have access to high quality legal representation at a time it needed it but not having to pay contemporaneously in order to allow it to continue operating until such time as it could pay.

24. *Paragraph 13* – The Trustee Objection cites language in the engagement letter that states it is only allowed to be amended in writing.  The increased fee was both for increased legal representation and for the business advice provided to Copper Tree.  Copper Tree had lost one of its directors, and it was imperative that it have another director with experience in business to discuss the increasingly daily issues arising.  Therefore, while Aubert's legal representation increased significantly over the course of the next sixteen months (as demonstrated by Exhibit B), his business expertise was also utilized in a substantial way.  The additional $5,000.00 per month, if not otherwise included in the engagement letter, would have been outside of it as additional services.  Also, in the event the Court concludes that the engagement letter was not signed, it becomes an oral agreement between the parties which would be permitted to be amended orally as well.

25. *Paragraph 15* – The Trustee Objection attempts to conflate Aubert's past relationship with AHC with his representation of Copper Tree and its affiliates. As stated earlier, there is no evidence anywhere indicating that Aubert's efforts on behalf of Copper Tree and its affiliates were "compensation" for any amounts owed to him by AHC or any other Blanchard entities. This is absurd on its face. The argument is that Aubert performed thirty months of additional uncompensated legal services to pay **him** back for any amounts owed to him by another entity.

26. *Paragraph 16* – The Trustee Objection argues that Aubert was an insider and that his Claim should be disallowed to the extent it exceeds its value. First, Aubert was not an insider until he became a director in September 2023. He had already been performing services for Copper Tree for over a year. Second, Exhibit B clearly demonstrates that the value of the services he provided clearly greatly exceeds the Claim.

27. *Paragraph 17* – The Trustee Objection states that Aubert is only entitled to make one Claim. As stated earlier, Aubert only intended to make one Claim and is ready to disavow one of the Claims.

28. *Paragraph 18* – The Trustee Objection states the Trustee's intention to object to the entirety of the Claim or by allowing it only under quantum meruit principles. There has been no evidence provided by Trustee to disallow Aubert's claim in its entirety, and Aubert has clearly demonstrated the immense amount of work performed on behalf of Copper Tree to buttress his argument for payment under quantum meruit principles.

### PRAYER FOR RELIEF

29. The Claim should be allowed in its entirety, or in the alternative, if the engagement letter is found to be defective or otherwise unenforceable, Aubert should be granted the full

value of his services provided over the course of the thirty months of representation and service in the amount of $347,982.50 based on either quantum meruit or detrimental reliance principles and as demonstrated in <u>Exhibit B</u>.

30. At this time, Aubert does not request a hearing but reserves his right to do so.

Respectfully submitted by:

Paul Aubert
24 Waterway, Suite 830
The Woodlands, Texas 77380
Telephone: (281) 719-5208
Fax: (832) 218-1171
*FILED PRO SE*



Home Address:

Mobile phone:
Email:                    .com

# Paul Douglas Aubert

**Experience**

**Mussalli Law Firm,** The Woodlands, Texas
April 12, 2023 to present                                          Of Counsel
I provide high-level transactional services and assist in commercial litigation on an as-needed basis with a focus on the energy distribution industry.

**Paul Aubert PLLC,** Magnolia, Texas
June 1, 2014 to present                                          Sole Shareholder
I continue to represent several legacy clients in my solo legal practice doing corporate and transactional work in a variety of industries, including medical and dental devices and cancer immunotherapies. Since February 2018, I have served on the Board of Directors and Audit Committee of Bio-Path Holdings, Inc. a Nasdaq-traded oncology biotech company, and also serve as Chairman of the Compensation Committee.

**Anthem Holdings Company,** Bartlesville, Oklahoma
November 30, 2017 to April 2023                    Senior Vice President & General Counsel
I served as Senior Vice President & General Counsel of Anthem Holdings Company, a blockchain software company for supply chain solutions.  As SVP & GC, I served as sole in-house legal representative for the Company and all of its subsidiaries.  I negotiated all Company contracts and closed several private equity financings, among other things.

**Pernix Therapeutics Holdings, Inc.,** Magnolia, Texas
March 1, 2012 – May 31, 2014                                      General Counsel
I was sole in-house legal representative for Pernix (Nasdaq: PTX), a public specialty pharma company.  I was lead counsel on all transactional work, negotiated all company contracts, managed all SEC filings, communicated with and managed all outside law firms in various complex litigation, transactional and IP matters, and made strategic decisions in all litigation matters.  I reported directly to the CEO and board of directors and served the entire senior management team.

While there, I managed the negotiation and completion of several major transactions, including:

- $100 million acquisition of a private pharmaceutical company;
- $25 million acquisition of a publicly traded pharmaceutical company; and
- $42 million secured credit facility and $30 million refinancing of same facility.

**Winstead PC,** The Woodlands, Texas
April 2004 – February 2012                    Shareholder – Corporate & Securities
During my tenure at Winstead, I represented numerous public and private companies providing general corporate advice and representation in numerous securities and M&A transactions. Certain significant transactions for which I was first chair follow:

- *June 2011* – $280 million private placement of senior secured notes for Forbes Energy, an oilfield services company, with Jefferies & Co. as the initial purchaser.
- *December 2009* – $31 million acquisition of PowerComm Inc., a TSX-traded electrical company, for Powell Industries, Inc., a Nasdaq-traded electrical distribution company.
- *February 2009* – $295 million private placement of senior secured notes for Landry's Restaurants.
- *October 2008* – $15.6 million direct registered offering of common stock for Repros Therapeutics Inc., a Nasdaq-traded biotech company.
- *July 2008* – $205 million registered exchange offer of senior secured notes, including a Form S-4 registration statement, for Forbes Energy.
- *May 2008* – $170 million initial public offering on the Toronto Stock Exchange and Bermuda reorganization for Forbes Energy.
- *February 2008* – $205 million private placement of senior secured notes for Forbes Energy.
- *February 2007* – $36 million underwritten public offering for Repros Therapeutics.

- *August 2006* – $32 million acquisition of a product line for Powell Industries from General Electric and a related 15-year supply agreement between Powell and GE.
- *February 2005* – $20 million underwritten public offering for Repros Therapeutics.

**Andrews Kurth LLP,** The Woodlands, Texas

April 1999 – April 2004                                                        Associate – Corporate & Securities

*Experience*:  I assisted in the negotiation and completion of numerous mergers and acquisitions and securities transactions for various public and private companies and venture capitalists. I assisted in the preparation and completion of 1933 Act registration statements and 1934 Act public reports for several public companies, many of which were in the life science and biotech industries.

**Weil, Gotshal & Manges LLP,** Houston, TX

February 1998–April 1999                                                      Associate – Corporate & Securities

*Experience*:  Among other things, I assisted in the completion of a Chapter 11 reorganization of Samuels Jewelers, a public retail company, and a gas compression JV worth approximately $300 million between GECC and Weatherford.

**Jones Walker LLP,** New Orleans, LA

April 1996–January 1998                                                       Associate - Corporate & Securities

*Experience*:  I officed at the firm's largest client, Freeport-McMoRan Copper & Gold, Inc., and four related public companies, and had daily personal contact with its executive officers and assisted with SEC filings, press releases and proxy statements.

**Professional**   **Admitted to bar:**  Louisiana, 1996; Texas, 1998.

**Education**   **J.D. (May 1996), Tulane University School of Law, New Orleans, LA**
- Graduated with a GPA of 3.6 and was sixth out of a class of 340 students.
- Graduated with the honors of Magna Cum Laude and Order of the Coif.
- Received highest grade in "Federal Income Taxation" & "LA Security Rights."

**M.B.A. (May 1996), Tulane A.B. Freeman School of Business, NOLA**
- GPA of 3.7; Attended the business school on the Morton A. Aldrich Fellowship.

**B.A. (December 1990), Louisiana State University, Baton Rouge, LA**
- Graduated Phi Beta Kappa.

2

**EXHIBIT**

**B**

**EXHIBIT B**
**AUBERT TIME RECORDS**

| Date | Activity [1] | Billable Hours | Charges [2] |
|---|---|---|---|
| Aug-22 | Draft MNDA with Brad Doenges, Mark Haskell, Farook Karim and Charlie Daniels (PTAC Board) to exchange information about the Price Tower (1.5); numerous telephone conferences with Cynthia Blanchard, Anthem Blanchard and Renee Nichols regarding potential new entity and potential acquisition of Price Tower (3.5) | 5.0 | $ 2,725.00 |
| Sep-22 | Numerous telephone conferences with Cynthia Blanchard, Renee Nichols and Anthem Blanchard regarding potential for acquisition of Price Tower and for potential structuring of same (5.0); created Copper Tree, Inc. in Delaware for potential acquisition vehicle for acquisition of Price Tower (2.0) | 7.0 | $ 3,815.00 |
| Oct-22 | Numerous telephone conferences and correspondence with Cynthia Blanchard, Renee Nichols, Anthem Blanchard, Dale Takio and Delaware Secretary of State regarding Price Tower, new Delaware entity and consulting arrangements with TakTik and Pictoria (6.5); reviewed, revised and discussed comments to original TakTik (2.5) and Pictoria (2.0) consulting agreements (4.5 total) | 11.0 | $ 5,995.00 |
| Nov-22 | Numerous telephone conferences with Cynthia Blanchard, Anthem Blanchard and Renee Nichols regarding Price Tower, consulting agreements and potential capital raises necessary. | 5.0 | $ 2,725.00 |
| Dec-22 | Numerous telephone conferences with Cynthia Blanchard, Renee Nichols and Anthem Blanchard regarding structure of acquisition and potential for operations (5.0); drafted Copper Tree operating agreement and initial consent for corporate governance and structure (4.0). | 9.0 | $ 4,905.00 |
| Jan-23 | Numerous (daily towards the end of the month) telephone conferences and correspondence with Cynthia Blanchard regarding imminent transfer of Price Tower as the then-current owners of Price Tower were urgently in need of transferring the Price Tower and its assets (5.5); reviewed and revised amendments to TakTik and Pictoria consulting agreements (3.0). | 8.5 | $ 4,632.50 |

| | | | |
|---|---|---|---|
| Feb-23 | Numerous telephone conferences, conference calls and correspondence with Cynthia Blanchard, Dale Takio, Price Tower board members, Renee Nichols, and Secretaries of State of New Mexico and Delaware regarding documents and transfer, state filings, effectuating transfer of buildings and assets and other day to day matters after acquisition of Price Tower on February 24 (12.0); drafted, reviewed, revised and negotiated all documents related to transfer of Price Tower and assets including but not limited to, Purchase Agreement, loan servicing agreement, bill of sale, assignment, assumptions, deed of trust and resolutions (24.0); created Green Copper Holdings, and drafted GCH Company Agreement for purposes of being the company to hold the Price Tower assets and initial consents (6.0); prepared all documents for closing of Price Tower acquisition (4.5); completed Price Tower acquisition on February 24, 2023 (4.5); reviewed and revised Helm Agreement (2.0). | 51.0 | $ 27,795.00 |
| Mar-23 | Drafted Copper Tree bylaws, consents of both CT and GCH for bank accounts (4.0); correspondence with Helms for potential raise (2.0); numerous telephone conferences and correspondence with Cynthia Blanchard, Dale Takio, USDA loan consultant, Anthem Blanchard, Renee Nichols, Donna Keffer and Delaware Secretary of State regarding day to day operations, consulting agreements, potential capital raises and USDA loan, potential structure of proposed new restaurant and bar and other matters (8.0); drafted financing term sheet for various potential lenders (2.0); drafted form of convertible promissory note for potential lenders (3.0) | 19.0 | $ 10,355.00 |
| Apr-23 | Began work on joint venture for restaurant and bar (Sinatra's)(2.0); research for numerous joint venture precedents to draft agreement (5.0); numerous telephone conferences and correspondence with Cynthia Blanchard, Renee Nichols, Dale Takio USDA loan service provider and other parties to discuss new restaurant and bar, potential USDA loan, drafts of various documents and day to day operational issues such as the liquor license, leases and lessees, and secretary of state filings (10.0); draft, review, revise and negotiate convertible loan agreement with Roundtable (4.0); created the entity GCH Holdings, LLC (2.0) | 23.0 | $ 12,535.00 |

| | | | |
|---|---|---|---|
| May-23 | Drafted, reviewed, revised and negotiated joint venture agreement for restaurant and bar (16.0); drafted, reviewed and revised consulting agreement for potential outside CFO (4.0); numerous telephone conferences and correspondence with Cynthia Blanchard, Renee Nichols and others regarding documents drafted, additional lease issues, USDA loan items, property insurance issues, additional potential consulting arrangement and other day to day operation issues (8.0); drafted lease extension letter (1.0); reviewed lease with BAA (1.0). | 30.0 | $ 16,350.00 |
| Jun-23 | Numerous telephone conferences and correspondence with Cynthia Blanchard, Anthem Blanchard and potential investment group regarding potential investment and day to day operations (5.0); reviewed and revised letter for tenant (1.0); drafted form of promissory note to use for potential investors (3.0). | 9.0 | $ 4,905.00 |
| Jul-23 | Numerous telephone conferences and correspondence with Jay Dyer, Anthem Blanchard, Cynthia Blanchard, Jorge Franco, Ken Greenberg, Mike Moran and Renee Nichols regarding several different potential investments in Copper Tree and various day to day operational issues (8.0); reviewed EIDL loan information, FLW Conservancy Easement, SBA loan information and PTAC UCC terminations (4.0); drafted, reviewed and revised investment documents for potential investments from two different potential lenders, including a convertible promissory note (5.0). | 17.0 | $ 9,265.00 |
| Aug-23 | Numerous telephone conferences and correspondence with Darah Harris, Cynthia Blanchard, Josh Gunter, Ken Greenberg, Dale Takio, Mike Moran, trademark company, Renee Nichols, Donna Keffer, Anthony Fischler and Jared Nelson regarding banking issues, joint venture for restaurant and bar, consulting agreements with TakTik and Pictoria, loan, payroll, restaurant management issues and other day to day operational issues (7.0); drafted investor documents for potential investment (3.0). | 10.0 | $ 5,450.00 |
| Sep-23 | Numerous telephone conferences, conference calls and correspondence with Cynthia Blanchard, Ken Greenberg, Craig Brand, and Patrick Castagna regarding potential investments, termination of consulting agreements, potential settlements, and day to day operational issues, including issues with restaurant and bar (8.0); drafted termination letter for TakTik and letters in response to shareholder request for documents (3.0); reviewed termination of joint venture (1.0); drafted legal opinion for use in potential investment into Copper Tree and reviewed title commitment and all other relevant documents in preparation for delivering legal opinion (10.0). | 22.0 | $ 11,990.00 |

| | | | |
|---|---|---|---|
| Oct-23 | Numerous telephone conferences, conference calls and correspondence with Ken Greenberg, Craig Brand, Cynthia Blanchard, Kimberly Lewis, trademark firm, Anthem Blanchard and Pat Castagna regarding closing of potential loan transaction, negotiations for settlement with TakTik and Pictoria, trademark issues, title issues, consulting agreement with new consultant, and other day to day operational issues (9.0); drafted, reviewed, revised and negotiated consulting agreement for Oklahoma Ventures (5.0); drafted settlement agreement for TakTik and Pictoria (3.0); drafted resolutions for potential financing transaction (1.0). | 18.0 | $ 9,810.00 |
| Nov-23 | Numerous telephone conferences, conference calls and correspondence with Cynthia Blanchard, Joe Hassan, Donna Keffer, Josh Gunter and Renee Nichols regarding potential investment for Copper Tree, settlement with TakTik and Pictoria, termination of Pictoria, potential large investment and consulting agreement and day to day operational issues (7.0); drafted, reviewed, revised and negotiated stock purchase agreement with Joe Hassan to execution (8.0); drafted GCH Holdings organizaitonal consent (1.0); drafted secretary's certificate for Copper Tree (1.0); drafted security agreement for Hassan promissory note (3.0); drafted investor questionnaire (1.0); revised consulting agreement for Oklahoma Ventures to execution (3.0); drafted termination letter for Pictoria and delivered letter (1.0). | 25.0 | $ 13,625.00 |
| Dec-23 | Numerous telephone conferences and correspondence with Cynthia Blanchard, Juan Ayala, Kimberly Lewis, Joe Hassan, Delaware Secretary of State and Ken Greenberg regarding several potential financing transactions and title commitment related thereto, settlement negotiations, intellectual property and franchise taxes (7.0); drafted promissory note for Joe Hassan for December 2023 (2.0). | 9.0 | $ 4,905.00 |
| Jan-24 | Numerous telephone conferences, conference calls and correspondence with Cynthia Blanchard, Pat Castagna, Anthem Blanchard, and Dallas Hindman and his group regarding new potential financing and/or acquisition of the Price Tower assets and termination of Oklahoma Ventures agreement and other day to day operational issues (7.0); drafted termination letter of Oklahoma Ventures consulting agreement (1.0) | 8.0 | $ 4,360.00 |

| | | | |
|---|---|---|---|
| Feb-24 | Numerous telephone conferences, conference calls and correspondence with Cynthia Blanchard, Delaware Secretary of State, Dallas Hindman and his company, Archway, and Renee Nichols regarding potential new acquisition/financing, franchise taxes, debt schedule and day to day operations of the Price Tower (8.0); drafted, negotiated, reviewed and revised term sheet for financing transaction for Archway (3.0); drafted agreement and plan of merger for Archway (5.0); drafted, negotiated, reviewed and revised stock purchase agreement for Archway (8.0). | 24.0 | $ 13,080.00 |
| Mar-24 | Numerous telephone conferences, conference calls and correspondence with Cynthia Blanchard, Renee Nichols and Archway/Dallas Hindman regarding potential Archway transaction and related due diligence for the transaction and day to day operations questions (7.0); drafted, reviewed, revised and negotiated amended and restated stock purchase agreement for Archway (5.0). | 12.0 | $ 6,540.00 |
| Apr-24 | Numerous telephone conferences, conference calls and correspondence with Cynthia Blanchard, Renee Nichols, Donna Keffer, Mark Haskell, Dallas Hindman, potential attorney for defamation case and Anthem Blanchard regarding PTAC donation issues, Bartlesville Examiner news articles, potential litigation and settlement agreements with prior employees and various day to day operational issues (8.0); drafted, reviewed, revised and negotiated settlement agreements with Donna Keffer, Linda Jones and Mark Haskell regarding donation issues (8.0); drafted banking resolutions for bank account (1.0). | 17.0 | $ 9,265.00 |

| | | | |
|---|---|---|---|
| May-24 | Numerous telephone conferences, conference calls and correspondence with Cynthia Blanchard, potential defamation attorney, Dallas Hindman, FLW Building Conservancy (Barbara Gordon and associates), 20c design, Macy Amatucci, Renee Nichols, Lee Levinson and John Snyder regarding potential defamation lawsuit, 20c design's issues with the conservancy, the effectiveness of the FLWBC easement, potential acquisition of the Price Tower by the McFarlin group and additional potential transactions and day to day operational issues and the lack of funding and viability of the continued operation of the building (15.0); drafted original draft of the purchase agreement for the McFarlin group (4.0); reviewed, revised and negotiated McFarlin version of the purchase contract for the Price Tower and drafted resolutions approving same (8.0); drafted MNDAs for potential transactions/acquirors (2.0); prepared for closing for sale to McFarlin group (6.0); reviewed FLWBC easement along with state easement law and UCC law to determine viability of easement (4.0); assisted McFarlin group in due diligence requests (2.0). | 41.0 | $ 22,345.00 |
| Jun-24 | Numerous telephone conferences, conference calls and correspondence with Dallas Hindman, Cynthia Blanchard, Barbara Gordon, John Snyder, Renee Nichols, Anthem Blanchard and Joe Hassan regarding closing of McFarlin group acquisition, termination of McFarlin agreement, potential loan to the company, company's continued viability given its financial condition and other day to day operational issues (13.0); drafted first amendment to McFarlin purchase contract to address ambiguities in the original agreement (2.5); drafted promissory note for Joe Hassan for June 2024 (3.0); worked with Joe Hassan on due diligence requests (2.5). | 21.0 | $ 11,445.00 |
| Jul-24 | Numerous telephone conferences, conference calls and correspondence with Joe Hassan, Cynthia Blanchard, Jane Yang, Tom Ortinau and Renee Nichols regarding potential acquisition of the Price Tower, which included several due diligence Zoom meetings to assist the potential buyer with its offer to purchase (16.0); assisted in providing due diligence responses to Cooper Square in order to facilitate the acquisition of the Price Tower (4.0); drafted memo regarding the viability of the FLWBC easement, including as it related to personal property (3.0); reviewed and revised public statements in response to newspaper articles (2.0); reviewed newspaper articles for defamation claims (1.0). | 26.0 | $ 14,170.00 |

| | | | |
|---|---|---|---|
| Aug-24 | Numerous telephone conferences, conference calls and correspondence with Cynthia Blanchard, Scott Schlotfelt, Ten-X (Paul Casella), Jane Yang, Tom Ortinau, Renee Nichols, Deric McClellan and Mac Rosser (Crowe Dunlevy), 20c design and Victoria Quade regarding termination of discussions with Cooper Square, listing of the Price Tower with Ten-X and Commercial Oklahoma, defamation issues and newspaper and magazine articles, easement issues, due diligence requests, and related matters for listing of building (15.0); reviewed, revised and negotiated agreements with Ten-X and Commercial Oklahoma (6.0); reviewed newspaper articles and magazine articles (New York Times, Bartlesville Examiner, Architectural Digest) for potential defamation claims (3.0); reviewed and revised press release relating to auction (1.0); reviewed and anaylzed TRO filed in Oklahoma regarding the FLWBC claims (4.0); drafted, reviewed and revised settlement agreement with the FLWBC in order to avoid filing of TRO (10.0); reviewed NDA with McFarlin for potential breaches (1.0). | 40.0 | $ 21,800.00 |
| Sep-24 | Numerous telephone conferences, conference calls and correspondence with Scott Schlotfelt, Cynthia Blanchard, Michael Eisner (and other members of his law firm), Renee Nichols, Darren Robertson, Paul Cassella, Deric McClellan, Jaime Chavez (title company), Renee Nichols, Anthem Blanchard, Scott Helton of Helton Law Firm (and John Farley) and Hugh Robert to discuss auction of Price Tower, lis pendens filing and lawsuit filed by McFarlin group, potential bid by Eisner client prior to auction and due diligence calls related thereto, creditor issues, title issues around UCC filings and other matters, potential counterclaims against McFarlin group and day to day creditor matters (20.0); provided numerous due diligence respones to Eisner group (5.0); drafted language for potential response and counterclaims to McFarlin group lawsuit and lis pendens (3.0); drafted and sent cease and desist letter to McFarlin group attorneys (6.0); drafted and sent correspondence with creditors to avoid litigation (2.0); drafted resolutions for approval of auction and sale (1.0); reviewed and revised offering memorandum for Ten-X auction (2.0). | 39.0 | $ 21,255.00 |

| | | | |
|---|---|---|---|
| Oct-24 | Numerous telephone conferences, conference calls and correspondence with John Farley, Cynthia Blanchard, Eisner Group, Eric Nelson (Insurance adjuster), Scott Schlotfelt, Roy Arnold and Renee Nichols regarding suspension of Ten-X auction, lawsuit filed and potential resposnes, follow up on potential acquisition by Eisner client, potential insurance claims and other creditor and day to day operational matters (16.0); reviewed and revised engagement letter for Helton law firm (1.0); reviewed and revised timeline for response to lawsuit (1.0); reviewed and revised press release regarding McFarlin lawsuit (1.0); reviewed letter from Ten-X regarding auction suspension (0.5); reviewed and revised suit against FLWBC (1.5); reviewed LOI from another potential buyer (1.0); reviewed FLWBC demand letter (1.0); reviewed New York Times article (1.0); reviewed affidavit for PTAC for FLWBC lawsuit (0.5); continued due diligence resposnes to Eisner group (3.5). | 28.0 | $ 15,260.00 |
| Nov-24 | Numerous telephone conferences, conference calls and correspondence with Cynthia Blanchard, Eric Nelson, Roy Arnold, John Farley and Renee Nichols regarding creditor issues, potential acquisition by Roy Arnold or his group, potential coverage by insurance, responses, counterclaims and settlement discussions in lawsuit by McFarlin group and FLWBC and day to day operational issues (16.0); research of debtor/creditor law (2.0); research of corporate transparency act and updates (1.0); discussion of possible lease transaction with Roy Arnold and research of issues regarding that structure (3.0); review and revise LOI for another potential acquisition transaction by Roy Arnold (2.0); reviewed answer filed in FLWBC lawsuit (1.0). | 25.0 | $ 13,625.00 |
| Dec-24 | Numerous telephone conferences, conference calls and correspondence with Cynthia Blanchard, Renee Nichols, John Farley and Eric Nelson regarding two lawsuits and settlement discussions, new newspaper articles, creditor issues and urgent matters relating to Price Tower and other matters related to urgent need to resolve matters or possible need to file in bankruptcy (15.0); reviewed numerous court filings and possible settlement with McFarlin (4.0); reviewed newspaper articles for potential defamation claims (1.0); reviewed loan agreement for potential loan (2.0); reviewed motion to dismiss claims in FLWBC lawsuit (2.0); reviewed insurance matters (1.0). | 25.0 | $ 13,625.00 |

| | | | |
|---|---|---:|---:|
| Jan-25 | Numerous telephone conferences, conference calls and correspondence with Cynthia Blanchard, Anthem Blanchard, John Farley, Ron Brown, Renee Nichols and Dale Takio regarding McFarlin lawsuit, settlement and court order, Chapter 7 filing, creditors and financial condition and other related matters (20.0); worked with Ron Brown in preparing Chapter 7 filing, including comprehensive legal due diligence necessary for preparation of filing and assisted in related financial due diligence (10.0); reviewed and revised cease and desist letter to Gannett (1.0); approved filing of Chapter 7 in US Bankruptcy Court in the Northern District of Oklahoma for Copper Tree, Inc. and Green Copper Holdings, LLC (1.0). | 32.0 | $ 17,440.00 |
| | **BANKRUPTCY FILED** | | $      - |
| Feb-25 | Telephone conferences and correspondence with Cynthia Blanchard, Ron Brown and Renee Nichols to discuss information to provide to US Trustee for Bankruptcy proceeding; submitted documentation for Trustee through Ron Brown as requested (5.0). | 5.0 | $ 2,725.00 |
| Mar-25 | Telephone conferences and correspondence with Cynthia Blanchard, Ron Brown and Renee Nichols to discuss information to provide to US Trustee for Bankruptcy proceeding; submitted documentation for Trustee through Ron Brown as requested (5.0). | 5.0 | $ 2,725.00 |
| Apr-25 | Telephone conferences and correspondence with Cynthia Blanchard and Ron Brown to discuss information to provide to US Trustee for Bankruptcy proceeding; submitted documentation for Trustee through Ron Brown as requested (3.0). | 3.0 | $ 1,635.00 |
| May-25 | Telephone conferences and correspondence with Cynthia Blanchard, Ron Brown and Pat Malloy to discuss information to provide to US Trustee for Bankruptcy proceeding; submitted documentation for Trustee through Ron Brown or directly to Pat Malloy as requested (5.0). | 5.0 | $ 2,725.00 |
| Jun-25 | Telephone conferences and correspondence with Cynthia Blanchard, Ron Brown and Pat Malloy to discuss information to provide to US Trustee for Bankruptcy proceeding; submitted documentation for Trustee through Ron Brown or directly to Pat Malloy as requested (2.0). | 2.0 | $ 1,090.00 |
| Jul-25 | Telephone conferences and correspondence with Cynthia Blanchard, Ron Brown and Pat Malloy to discuss information to provide to US Trustee for Bankruptcy proceeding; submitted documentation for Trustee through Ron Brown or directly to Pat Malloy as requested (2.0). | 2.0 | $ 1,090.00 |
| | **TOTAL** | 638.5 | **$ 347,982.50** |

[1]As Aubert had operated under a flat fee arrangement, he was required to reconstruct these time records from e-mails, correspondence, the metadata included in drafted documents and dates of execution of signed documents. Aubert believes there are many telephone conferences, conference calls and meetings that are not included in this time report as a result of their not being part of the written record, and he has estimated times for his services where necessary very conservatively.

It should also be noted that the total number of hours billed above of 638.5 hours equates to roughly just over 1 hour per working day over the course of his representation (with approximately 21 working days per month, this would equate to 21 hours per month, the average of 638.5/30) . Aubert believes that for much of 2023 and 2024 he was providing at least 25% of his working time to Copper Tree and Green Copper Holdings which would equate to far more than that listed here (40 hours per month for 20 months would itself equal 800 hours).

[2]The amounts set forth below are based on Aubert's current billable rate of $545.00 per hour.