## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| **GREEN COPPER HOLDINGS, LLC** | ) | **CASE NO. 25-10088-T** |
| EIN # xx-xxx9708 | ) | Chapter 7 |
| | ) | |
| **COPPER TREE, INC.** | ) | **Substantively Consolidated** |
| EIN # xx-xxx6608 | ) | |
| | ) | |
| **THE INN AT PRICE TOWER INC.** | ) | |
| | ) | |
| Debtors. | ) | |

### TRUSTEE'S RESPONSE TO OBJECTIONS TO *TRUSTEE'S NOTICE AND MOTION TO SETTLE DISPUTED MATTER AND NOTICE OF OPPORTUNITY FOR HEARING* (DOC. NO. 156) ("Motion to Settle") AND BRIEF IN SUPPORT OF MOTION TO SETTLE

## I. PRELIMINARY STATEMENT

1. The Trustee filed the Motion to Settle seeking this Court's approval of a proposed settlement by and between this estate and **Frank Lloyd Wright Building Conservancy (the "Conservancy")**. The proposed settlement addresses the following:

a. Issues pending as of the date of bankruptcy in a state court proceeding CJ-2024-237 in the District Court for Washington County, Oklahoma. That matter (the "State Court Matter") involved claims commenced by the Debtor against the Conservancy seeking a determination that certain alleged conservation easements did not apply to personal property of the Debtor. The Conservancy disputed and continues to dispute those claims.

b. A Proof of Claim filed in this bankruptcy case by the Conservancy seeking attorney fees incurred in the State Court Matter totaling $170,000.

      c.     The Trustee's release of any avoidance claims relative to the Debtor's transfer of certain personal property to an entity called 20C. This transfer occurred sometime in the Spring of 2024 in consideration for a payment from 20c of $150,000. The significance of this release in the context of a proposed settlement with the Conservancy is that the Conservancy has repurchased the assets from 20C for the sum of $185,000 with the intent of placing the assets back in the Price Tower.

2.     Objections to the Motion were filed by Craig Brand and Adriana Soto JTWROS [Doc. No. 206], Dale Takio a/k/a Dale Douglas Takio and Takitik Enterprises Inc. [Doc. 207], and Pictoria Studios USA, Inc. [Doc. 208].

3.     The Trustee asserts that the proposed settlement is fair and equitable and in the best interests of the estate.

## II. ARGUMENT

### 1. Merits of the Settlement and Benefit to the Estate

This Court has broad discretion to determine whether or not to approve a proposed settlement. *See Reiss v. Hagmann*, 881 F2d 890, 891-92 (10th Cir. 1989). The Court need not resolve all issues but only identify them so that the reasonableness of the settlement may be evaluated. *See In re W. Pac. Airlines Inc.*, 219 B.R. at 579, *citing Hermitage Inn. Inc.* 66 B.R. 71, 72 (Bankr. D. Col. 1986). The Court must evaluate: "(1) the chance of success in the litigation on the merits; (2) possible problems in collecting the judgment; (3) the expense and complexity of the litigation; and (4) the interests of the creditors." *Korngold v. Loyd (In re Southern Med. Arts Cos.)*, 34 B.R. 250, 256 (B.A.P. 10th Cir. 2006), *citing Kopp v. All Am. Life Ins. Co. (In re Kopexa Realty Venture Co.)*, 213 B.R. 1020, 1022 (BAP 10th Cir. 1997).

Courts will lend deference to a trustee's judgment regarding the beneficial nature of a proposed settlement. Courts will not substitute their judgment for that of the trustee. In order to do their jobs, bankruptcy trustees must be allowed to exercise their judgment in a reasonable manner. *See In re WT Grant*, 699 F2d 599, 608 (2d Cir. 1983); *In re Dennett*, 449 B.R. 139, 145 (Bankr. Utah 2011).

With respect to the relevant factors the Trustee would state:

**a. Chance of Success in the Litigation on the Merits—**

There are three claims that are at issue with respect to this factor. First are the claims asserted by the estate in the State Court Matter prior to the commencement of this bankruptcy case. As noted above, those claims seek a determination that the Conservancy Easement does not apply to certain personal property. As part of the settlement, the Trustee has agreed to dismiss those claims.

In large part the Trustee's decision is based on the fundamental fact that these issues have been rendered moot. Pursuant to an order of this Court upon Notice and Opportunity the Trustee sold all or substantially all of the assets of the estate including the subject personal property. This estate no longer has any economic interest in whether or not the subject Easement applies to the Debtor's personal property.

In addition, there was no guarantee of success on the merits in the State Court Matter. The Easement at issue was dated April 6, 2011. It should be noted that the Easement was originally entered into by and between the Conservancy on the one hand and *The Price Tower Arts Center* on the other hand. However, the Easement provided that it would be –

"effective in perpetuity and shall be deemed to run as a binding servitude with the Premises except as provided in Paragraph 20.  This Easement shall

be binding upon Grantor and Grantee, their successors in interest and all persons hereafter claiming under or through Grantor and Grantee…"

The Conservancy has argued with substantial merit that the Debtor acquired the assets with knowledge of and subject to the terms of the Easement. With respect to personal property in particular, the Conservancy has argued section 2g of the Easement makes it clear the Easement applies to an incorporated list of personal property or "Museum Collection Items." The Conservancy has additionally argued that the Easement prevents the owner of the building from altering or changing the interior artworks and architectural features of the building without the prior consent of the Conservancy. Finally, it is clear from the Recitals that the intent of the Easement was that it apply to the "total environments, including architecture, furniture and decorative glass, windows and arts, so that the removal or sale of these elements diminishes the artistic and historic value of such environment." *See* relevant portion of Easement attached hereto as Ex A.

The second potential litigation matter concerns the Proof of Claim filed by the Conservancy based on attorney fees incurred in enforcing the Easement. This claim is founded on the Easement's Indemnification clause. Attached as Ex B is a copy of the relevant page of the Easement which includes section 14 entitled *Indemnification.* As noted, the Grantor agreed to indemnify and hold harmless the Conservancy with respect to any costs incurred in the "administration performed in good faith, of this Easement…"

As noted above, the Debtor transferred certain personal property from the Price Tower without the consent of the Conservancy allegedly in violation of the terms of the Easement. The Conservancy expended substantial time addressing what it considered a serious violation of the Easement. Thereafter, the Conservancy was required to defend

claims asserted by the Debtor in the Washington County matter including asserting its own counterclaims based on violations of the Easement.

The sums prayed for in the Proof of Claim totaled $170,000. The Conservancy was represented in these matters by the Oklahoma law firm of Crowe and Dunlevy ("Crowe"). The Trustee has reviewed itemized statements from Crowe which support the Proof of Claim amount. In essence, there is substantial merit to the Conservancy's argument that it has claims against this estate based on the Indemnification clause in the subject Easement and that the allowable amount of that claim is $170,000.

Moreover, the value to this estate of the Conservancy's waiver of its Proof of Claim may well be at or near $170,000, as there is a reasonable possibility that this bankruptcy estate is solvent. It is somewhat incredulous that any creditor would complain about a settlement that involves the estate's dismissal of pending state court claims which have questionable merit, and no present economic value (as having been rendered moot), in consideration for the release of a claim against the estate that the Trustee reasonably asserts has substantial merit, and a likely economic value at or near $170,000.

The third "litigation" matter involves the Trustee's release of a possible avoidance action relative to the above-referenced transfer of personal property to 20C. The Trustee's diligence involves a threshold analysis of the estate's rights to pursue such an avoidance action. In that respect the Trustee observes that the Debtor's transfer of the subject assets conceivably violated the terms of the Conservancy's Easement. As a result, there is a question regarding the real party in interest in any avoidance/recovery effort. It can be argued that the real party in interest relative to any claim to avoid the subject transfer is the Conservancy and not this estate.

Next, the Trustee must weigh the merits of the potential avoidance action. Any possible avoidance action -- under either Section 548 of the Bankruptcy Code or the Oklahoma Uniform Fraudulent Transfer Act -- will necessarily involve an analysis of insolvency at the time of the transfer and/or equivalent consideration for the transfer.

It is not certain the Trustee can, in good faith, allege date of transfer insolvency at this time. It is not entirely certain the Debtor was either (i) insolvent at the time of the subject transfer, or (ii) rendered insolvent by such transfer.  In this analysis, the Trustee would look first to the $1.3 million Court-approved public sale of the Price Tower assets to establish the value of the assets at the time of the subject transfer. With respect to the liabilities, it is a matter of record that the Trustee has objected to over one million dollars in claims filed herein.

Even if insolvency is established, the Trustee would need to grapple with "reasonably equivalent value".  That term is not defined in the Bankruptcy Code, and courts have developed a two-part test to determine whether it exists on a case-by-case basis. The first step is to determine whether the debtor received any value for the transfer. *See 5 Collier on Bankruptcy § 548.05 at 548-67*. If the court determines that value was received in exchange for the asset transferred, then the next step is to determine whether the value was "reasonably equivalent to the value of the asset transferred." *See Sender v. Buchanan (In re Hedged -Investments Assocs Inc.)* 84 F.3d 1286, 1289 (10th Cir. 1996). The concept of reasonably equivalent value is not wholly synonymous with market value even though market value is an extremely important factor in any court's analysis. *See, e.g., In re Kenner*, 265 B.R. 224, 232 (Bankr. Cal. 2001). Market value has been defined as what a willing buyer will pay a willing seller. *See United States v. Davenport*, 412 F. Supp.2d

1201 (W.D. Okla 2005). There have been two separate sales of these assets. First the debtor sold the assets to 20C for $150,000. Thereafter 20C sold the assets to the Conservancy for $185,000. It should also be noted that 20C failed to sell the assets at any time prior to or subsequent to bankruptcy until the subject sale to the Conservancy. Under these circumstances the two sales for sums of approximately the same dollar amount establish what a willing buyer would pay, and willing seller would accept, for the subject property. Under these circumstances it cannot be said that the debtor did not receive reasonably equivalent value at the time of the transfer.

**b.  Problems in Collecting any Judgment –**

The Trustee has no knowledge regarding the ability to collect any monetary judgment against 20C.  The pending State Court Matter represents more of a liability for the bankruptcy estate than the opportunity to obtain a judgment against anyone.

**c.  The Complexity and Cost of Litigation—**

This factor has already been addressed to an extent. However, and for purposes of addressing costs in particular, the estate would incur legal costs related to pursuing an objection to the claim of the Conservancy. In addition, the estate might well be required to incur the costs of an expert witness to weigh in on issues related to the Easement. The estate would additionally incur legal fees related to the pursuit of the potential avoidance action—assuming the Court were to determine the estate even had standing to pursue that action. The estate would certainly incur the cost of an expert to opine re solvency and reasonably equivalent value. In addition to these costs, the estate would experience substantial delay in administering the estate and timely paying allowed claims of this estate.

2. **Objections to the Settlement**

The Trustee has objected to the proofs of claim filed by all three objecting parties. The principal basis for the Trustee's objections is that the parties are essentially equity holders and their claims are in the nature of equity interests—not monetary claims against the estate. Interestingly, the objecting parties all complain that they, as "shareholders", were defrauded and harmed by the transfer of assets or the conduct of the Conservancy. Therein lies the rub. The principal concern with respect to this settlement or any settlement is the interests of creditors—not shareholders.

Secondly, they offer very little in the way of substance to support their objections. They argue, in part, that the attorneys representing the Conservancy had agreed to work on a pro bono basis--thus no fees have actually been incurred. There may indeed be attorneys who have and are performing services on a pro bono basis for the Conservancy, but it is not Crowe. They also complain about the amount of the attorney fee claim. The Trustee has been provided, and has reviewed, itemized statements to support the claim. Moreover, the Trustee has been advised of the substantial time and effort expended by Crowe on behalf of the Conservancy, including contacting the Debtor upon discovery of what they believed was an unauthorized transfer of assets; negotiating a possible settlement with the Debtor; reviewing pleadings commenced in state court by the Debtor against the Conservancy; preparing the answer and counterclaims against the Debtor; appearances in court related to the matter; contacting the transferee and advising the transferee of their claims.

III. **CONCLUSION**

In summary, (i) the Trustee's proposed dismissal of the State Court Matter is without economic impact on the estate, as that Action is moot; (ii) the economic value of the Conservancy's offered withdrawal of its proof of claim has an economic value to the estate of approximately $170,000; and (iii)  the Trustee, in his informed exercise of discretion and judgment, has determined that the legal hurdles related to pursuit of avoidance actions, coupled with the attendant costs, and potential recoveries, do not warrant pursuit of those actions—particularly given the certainty of the $170,000 in value of the release of the Conservancy's claim.

For these reasons the proposed settlement, as a whole, is clearly in the best interests of this estate and will result in a substantial benefit to the estate.

WHEREFORE the Trustee prays for an order authorizing the settlement as stated herein.

Respectfully Submitted by:

/s/ Patrick J. Malloy III
Patrick J. Malloy III, OBA #5647
MALLOY LAW FIRM, P.C.
401 S. Boston Ave. Suite 500
Tulsa, Oklahoma  74103
Telephone:    918-699-0345
Fax:          918-699-0325
Email:        pjmiiim@sbcglobal.net
*ATTORNEYS FOR TRUSTEE*