**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF OKLAHOMA**

IN RE:

| | | |
|---|---|---|
| **GREEN COPPER HOLDINGS, LLC** | ) | **CASE NO. 25-10088-T** |
| **EIN # xx-xxx9708** | ) | **Chapter 7** |
| | ) | |
| **COPPER TREE, INC.** | ) | **Substantively Consolidated** |
| **EIN # xx-xxx6608** | ) | |
| | ) | |
| **THE INN AT PRICE TOWER INC.** | ) | |
| **Debtors.** | ) | |
| _____ / | | |

**CLAIMANT PICTORIA STUDIOS USA, INC., (Claim No. 14),  AND CLAIMANT TAKTIK ENTERPRISES, INC. (Claim No. 4) MOTION TO COMPEL TRUSTEE FOR PROPER ACCOUNTING OF DEBTOR'S ASSETS, COMPEL TRUSTEE TO FOLLOW THROUGH AND ADD ASSETS TO THE ESTATE, AND NOTICE OF OPPORTUNITY TO BE HEARD**

COMES NOW **PICTORIA STUDIOS USA, INC., (CLAIM NO. 14)**, and, Claimant **TAKTIK ENTERPRISES, INC. (Claim No. 4)** by and through their undersigned counsel and hereby files this Motion To Compel Trustee for Proper Accounting of Debtor's Estate, Compel Trustee to Follow Through and Add Assets to the Estate, and Notice of Opportunity to be heard, and as grounds thereof states as follows:

1. On July 15, 2025, the US Trustee filed ECF 156 and 156-1, a Motion for Proposed Settlement with the Claimant Conservancy and a proposed Settlement Agreement. Claimants[1] (Nos. 4, 8, & 14) strenuously Objected to the Trustee's proposed settlement motion as well as take issue with the representations made therein as being factual. However, the alleged representations and alleged facts set forth within the Trustee's ECF 156 (Motion) shed light on what is contended as an ill stated accounting or the Estate's assets, value and assets left unaccounted for and not moved on by the Trustee to the benefit of the Creditors and Interested Parties, lack of challenges to certain alleged Creditor's and their claims, as well as what appears to be lack of investigation and clawing back of assets that should be part of the Debtor's estate by way of this bankruptcy.

2. At least three claimants, (Nos. 4, 8, & 14), have filed Objections to the Trustee's Motion (ECF 156), pointing out the smoke and mirrors and the reasons why such a settlement vis-a-vis ECF 156 is not within the best interests of the Price Tower nor the debtor's estate and creditors.  The undersigned believes that the US Trustee might have been misled into filing for this proposed settlement, however it is thought that this intended settlement is solely a means of transferring ill gains that should not be within possession of third parties and rewarding the FLWC with value for a claim that should not have been filed (as pointed out within this Motion). This Motion adds further light as to why the Trustee's Motion (ECF 156) should be withdrawn in good-faith or summarily Denied.

3. Claimant believes that Debtor has secreted or wrongfully removed assets from the Estate and that other Estate assets exist that the Trustee has not sought, has undervalued, has been mis-led by the Debtor and possibly other claimants about, and has not added these assets

---

[1] Claimant No. 8 (Brand/Soto) have withdrawn their claim and left as interested parties. Claimant's 4 & 14 are now appearing in their corporate capacities not personal.

and others to be found assets, including insurance policies, artwork and artifacts that rightfully belong to the Debtor's Estate and not to the FLWC nor anyone else.

4. Upon information and belief, 1st Dibbs and 20C Designs are two, independent companies alleged to be wrongfully within possession of Estate assets, alleged upon information and belief to be involved by conspiracy with Cynthia Blanchard, including but not limited to those assets discussed within  (ECF 156) that the Trustee would like to gift away as well as reward the FLWC for filing its believed or opinioned false claim.

5. Claimant has first-hand knowledge, knowledge through witnesses, or has believed to have located Estate assets that the Debtor has secreted, bartered, wrongfully transacted away from the Estate as part of self-dealing or other terms of art along those lines.  <u>An example of such assets includes but may not be limited to the following</u>:

   a. The Frank Lloyd Wright Nation group's social media platform, shows 20cDesign being in possession of an expensive Estate asset since at least June 2024, after properly receiving Exhibit "A". (See, https://www.facebook.com/photo/?fbid=823068866362154 1&set=pcb.12703941776782 31), placing them on notice not to evidence tamper.

   b. 1st Dibbs' social media platform shows that it has sold, but is supposedly holding a sale or sum of money arising from the sale of artwork belonging to the Debtor's estate of **$348,000**.  <u>This single piece is twice what the Trustee is asking for a settlement amount</u> within ECF 156 and like the rest of these examples not listed in the Trustee's Form 1, Disclosure of Assets. This item, outside of the possession of the Debtor at the time of the purchase and sale with the Snyder Family and thus belongs to the Estate. (See, https://www.1stdibs.com/furniture/mirrors/floor-mirrors-full-

length-mirrors/important-frank-lloyd-wright-copper-directory-marquee-full-length-mirror/id
f_42426812/?fbclid=IwQ0xDSwLoJJVleHRuA2FlbQIxMQABHqjSq7Edd7hr6Q7oPfAmpl6bxN
olkgjEuHf6Fim4XiUtcRzYNjN5uRUvMx8y_aem_S0FAq5rUKmCMJvvVlyb8Fw)



c.  The Trustee is in possession and this Creditor has filed an Exhibit setting forth all
known artwork having belonged to the estate while owned by the debtor. A simple
contrast and comparison of what exists today would demonstrate what art pieces
are now missing, and if so, it is asked of the Trustee what he is doing to retrieve
them.



D.

e.   Prominently displayed (See, Ltr. "D", above), on 1st Dibbs social media, is the art

"Directory Board" that Barbara Gordon, Exec Director of Frank Lyod Write Conservancy

(FLWC) noted in public articles as being a "one of a kind" held art-piece  belonging to the

Debtor's Estate, which FLWC took no actions when it was being sold; thus undermining

the premise of ECF 156 and the creditability of the FLWC.  This single piece is on hold at



almost 40,000 EU.

f.   As evidenced by the Frank Lloyd Wright Nation group's social media, a Copper Panel held

by 20C Design since at least June, 2024 is being sold for approximately $70,000. (See,

https://www.facebook.com/groups/wrightnation/permalink/1270394177678231/           and   see

https://www.facebook.com/photo/?fbid=8230688530288221&set=pcb.1270394177678231).       20C

Design was properly on Notice by Exhibit "A" and the items were never returned to the

Estate nor moved for by the Trustee.



This Copper Panel according to social media posts is being sold for approximately $70,000 and it seems the artwork is being transitioned back and forth between 1st Dibs and 20CDesign. Again, it is contended that this Copper Panel is part of the Debtor's estate and was not part of the sale to the Synder Family.

https://www.facebook.com/photo/?fbid=8230688530288221&set=pcb.1270394177678231



g.  The "art sconce".  (See picture below). This art sconce is believed to have been wrongfully removed from the Price Tower Premises on or before April 25, 2024 by Barry Greame from 20C Design as reported and photographed by Andy Dossett with the Bartlesville Examiner (see, https://eu.examiner-enterprise.com/story/news/local/2024/04/25/price-towers-financial-crisis-leads-to-sale-of-shinenkan-artifacts/73452969007/).  Mr. Barry Greame, of 20C Designs, was properly noticed on April 27, 2024 that these pieces were part of litigation and to be held. See Exhibit "A". Published in the Bartlesville  Examiner, Barry Gream, owner of 20cDesigns, was believed to be involved in the removal of the Sconce and photographed with the caption: A large light was pulled out of the Price Tower storage and loaded onto a truck Wednesday evening.   Andy   Dossett   /   Examiner-Enterprise   (See,   https://eu.examiner-enterprise.com/story/news/local/2024/04/25/price-towers-financial-crisis-leads-to-sale-of-shinenkan-artifacts/73452969007/ ).



A large light was pulled out of the Price Tower storage and loaded onto a truck Wednesday evening.
ANDY DOSSETT / EXAMINER-ENTERPRISE

h.  (See https://www.facebook.com/photo?fbid=8230688700288204&set=pcb.1270394177678231).



https://www.1stdibs.com/furniture/lighting/sconces-wall-lights/custom-stained-glass-sconce-frank-lloyd-wright-1954/id-f_42430312/?fbclid=IwQ0xDSwLoKS9leHRuA2FlbQIxMQABHthrOeU2DKkf0QPp-PFZmvAmmioPYRtibAB38J-zpDDz8PdFnCCXYyjgNuO8_aem_V1Lwg920d-zz0pZPvkwEWw

i.   Prior to March 7, 2023, Barbara Gordon and the Frank Lloyd Wright Building Conservancy (FLWC) repeatedly was aware of, supported, and approved of the sale of various artifacts by PTAC.  Yet, if you were to believe ECF 156 and the FLWBC (Conservancy), these items were protected by the Preservation Easement. FLWBC cannot demonstrate any adversity taken  against PTAC for selling off Price Tower artwork, contrary to ECF 156, nor cab the Conservancy  demonstrate  how  such  a  sale  by  the  Debtor  violated  the  terms  of  the Preservation Easement.

j.   According to a UCC Statement filed by the Frank Lloyd Wright Building Conservancy filed on August 7, 2024, none of the items cited above were listed as protected or claimed assets and their last claimed onsite inventory performed was in May 2022, prior to the March 7, 2023 acquisition of the Premises and its assets by the Debtor.  (see, chrome-extension://efaidnbmnnnibpcajpcglclefindmkaj/https://savewright.org/wp-content/uploads/2024/08/FLW-Building-Conservancy-UCC-Copper-Tree-Inc.-FILED5632097.1.pdf?fbclid=IwY2xjawLsgFlleHRuA2FlbQIxMABicmlkETFyNERhM2tDWW5iM0syV

HdsAR6WGVJK_cgC6if3Y849Viwfgm42CnOHUNlBW355IqoKfWeLjZFJZDfTkwUI5w_aem_iDUTu9

wXFecMJvADqkYMag .  This fact would support the DENIAL of the Trustee's ECF 156 and

the representations made therein as it would be impossible for the FLWBC to prove that

they have any entitlement to the possessions that are within third party hands. Thus, the

Trustee should bring into the Estate the very assets it is attempting through ECF 156 to gift

to the Conservancy and allow the conspiracy to go unpunished.

k.  In fact, in the UCC Statement filed by the Frank Lloyd Wright Building Conservancy filed

on August 7, 2024, there is no mention of any items claimed to have been missing or not

otherwise previously identified during their May 2022 on-site inventory which according

to their Preservation Easement was required to have been done annually and with any

removed, discarded or sold items to be updated, but still otherwise subject to this annual

inventory list.  Accordingly, the Frank Lloyd Wright Building Conservancy has failed to

provide any supporting documentation that the items they are making claims to, were ever

covered under any aspects of the contested Preservation Easement.  There is no disclosed

affirmative actions on the part of the Trustee to recover for the estate these items.  There is

no insurance claims being made by either the Trustee or the FLWBC, when it is believed

that such insurance policies exist.

l.  The Shin'enKan Gate with a value upwards of several hundred thousand dollars was known

to have been removed from the Price Tower Premises on or before April 25, 2024 by Barry

Gream from 20C Design as reported by reporter and photographer Andy Dossett with the

Bartlesville Examiner (see, https://eu.examiner-enterprise.com/story/news/local/2024/04/25/price-

towers-financial-crisis-leads-to-sale-of-shinenkan-artifacts/73452969007/ ).  This removal, at this time,

would make this gate an Estate asset belonging to the debtor, not one allowed to be

possessed and sold by 20C Design.

m. As evidenced by reporter and photographer Andy Dossett and published in the Bartlesville Examiner Barry Gream, owner of 20cDesigns is photographed and captioned: *Barry Gream, the new owner of the Shin'enKan gate from the Dallas area, highlights the rust repairs required on the structure.*") as he describes repairs to the Shin'enKan Gate prior to removing it from the premises. (See, https://eu.examiner-enterprise.com/story/news/local/2024/04/25/price-towers-financial-crisis-leads-to-sale-of-shinenkan-artifacts/73452969007/)





n. In a text message to Reporter Andy Dossett from the Bartlesville Examiner from Cynthia Blanchard, she stated: "In truth, the community should be thanking us for saving the gate," Blanchard replied in a text when asked if the gate had been sold. "Yes, someone has offered to help." (see, https://eu.examiner-enterprise.com/story/news/local/2024/04/25/price-towers-financial-

crisis-leads-to-sale-of-shinenkan-artifacts/73452969007/)

> At the time, Blanchard initially reported that the gate was being sent off
> to be restored and wasn't being sold, but confirmed that other pieces
> from storage and the museum were sold to keep the Price Tower afloat.
>
> The EE observed multiple items, such as furniture and pieces of art,
> loaded into the box truck on Wednesday. At the time, Blanchard didn't
> confirm which items were sold.
>
> "These people offered to help, and they are restoring it for us,"
> Blanchard said. "It's long overdue."
>
> When pressed for further information Thursday, she confirmed that the
> gate had been sold to save it.
>
> "In truth, the community should be thanking us for saving the gate,"
> Blanchard replied in a text when asked if the gate had been sold. "Yes,
> someone has offered to help."

o.   However, in an entirely about-face, Cynthia Blanchard contradicts her entire story in yet

another interview: https://go-transcribe.com/transcript/9KpaN8eDPqn9eXaNZiiDKqRSJW5CQZ

*3:29 Cynthia Blanchard:*
*No, there was a private agreement that was made between between the art gallery*
*and the Price Tower copper tree. That is a win win win. Okay. And it there, there wa*
*s a deposit that I insisted on and they were happy to do it. And they're keeping in c*
*ontact. I've talked to him 3 or 4 times this week. They've given me more updates ho*
*w long it's going to take. It's a little more complicated even than I thought it was go*
*ing to be, and they thought it was going to be, but it's doable. And the community*
*didn't get a chance to know about this, because I didn't get a chance to tell them, b*
*ecause from the very first second that this was happening, we were getting we were*
*under attack."*

p.   As evidenced in a September 1, 2019 article by Rosanne McKee with the Bartlesville

Examiner, a documented photograph of the Diamond Shaped Ashtray from the Shin'enKan

collection is believed to be the same diamond shaped ashtray reported as being in the

possession of Barry Gream from 20C Designs and specifically wrapped and located inside

a truck believed to be owned or controlled by him on or before the  April 25, 2024 sale of the Price Tower. This would be an Estate Asset.



q.  As evidenced by reporter and photographer Andy Dossett and published in the Bartlesville Examiner, Barry Gream, owner of 20cDesigns is photographed and captioned: In the cab of the truck, a diamond shaped object that appears to be the ashtray from Shin'enKan designed by Bruce Goff. Andy Dossett / Examiner-Enterprise (See, https://eu.examiner-enterprise.com/story/news/local/2024/04/25/price-towers-financial-crisis-leads-to-sale-of-shinenkan-artifacts/73452969007/ and see, https://www.aol.com/historic-shinenkan-artifacts-sold-price-164734356.html)



In the cab of the truck, a diamond shaped object that appears to be the ashtray from Shin'enKan designed by Bruce Goff.
ANDY DOSSETT / EXAMINER-ENTERPRISE



Artifacts from the Bruce Goff Shin'enKan museum display were sold to 20cdesign based on Dallas Texas.
ANDY DOSSETT / EXAMINER-ENTERPRISE

r.  To date, the Shin'enKan Diamond Shaped Ashtray has not been listed as an asset of the Debtor's estate, nor has the Creditor Class been made aware of any attempts by the Trustee

to recover or liquidate this known asset on behalf of Claimants, interested parties, creditors and even the Debtor itself.

s.   Wright artifacts sold from Price Tower, have been identified as being once property of the Debtor's estate, by Andy Dossett, including but not limited to a Frank Lloyd Wright Usonian Lounge Chair listed for sale for $34,800 with specific excerpts as follows:

"....The Frank Lloyd Wright-designed artifacts, including a copper relief panel designed for the exterior of the tower, an iconic sloped casual armchair designed exclusively for the tower, a lighting sconce designed for the Hillside residence and other pieces, can be found on display on 20cdeisgns' Facebook page. **One particular item from the collection, the Frank Lloyd Wright Usonian Lounge Chair, is on sale for $38,400. Some of the Price Tower-specific artifacts are listed on another website by 20cdesign for a combined total of more than $550,000....**" [**emphasis added**].   "....Blanchard didn't respond to comment on how much the items were sold for or whether there are plans to sell additional museum pieces. An expert familiar with these types of transactions estimated the items were sold for half to a fourth of their listed price, approximately $125,000 to $250,000....." (see,   https://eu.examiner-enterprise.com/story/news/2024/07/03/historic-frank-lloyd-wright-artifacts-from-price-tower-up-for-sale/74290979007/ ).

6.   Upon information and belief all of these assets belong to the Debtor's Estate. Upon information and belief the loss of these precious assets, taken and dissipated was not approved by nor known to the Debtor's list of shareholders and not in the usual or normal course of business. The shareholders also are unaware that any of these sales resulted in monies that benefited the Debtor company.  It is contended that the dissipation of these assets was wrongful, shameful, and without legal basis.

7.   Prior to the Debtor's ownership, the previous owners of the Price Tower, Price Tower Art Center (PTAC), commissioned Robert Indiana to design and fabricate a sculpture known as the Robert Indian 66 sculpture.  This sign is part of the Debtor's Estate located at at Unity Park, 300 SE Adams Blvd, Bartlesville, OK 74006.

8.   As evidenced by an email from Donna Keffer to Trevor D. Dorsey from Equity Bank regarding what appears to be an attempt to encumber various assets owned by the Debtor, specific reference is made to an appraisal for the "Robert Indiana 66".

From: Donna Keffer <dkeffer@thepricetower.com>
Sent: Monday, August 7, 2023 3:58 PM
To: Trevor D. Dorsey <tdorsey@equitybank.com>
Cc: cynthia@thepricetower.com
Subject: Inn at Price Tower

**External email from dkeffer@thepricetower.com please be cautious of attachments and links.**

Trevor,

Attached are the tax documents for 2020 and 2021 we are waiting the 2022 returns. I am waiting for the signed financials for 2020 and 2021 from Stotts, Archambo, Mueggenborg and Barclay. I have attached the 2022 signed financials as well as appraisals for the PT Building, annex and Robert Indiana 66 and the 5 year proforma. You should be receiving the personal income statement from the Blanchards this evening.

Please let me know if there is additional information that you need to move forward with the line of credit.

Thank you for your assistance,
Donna

Donna Keffer /// Executive Director

PRICE TOWER ARTS CENTER
FRANK LLOYD WRIGHT ARCHITECT

510 South Dewey Ave /// Bartlesville, OK 74003
O > 918.336.1000  C > 918.409.7006 /// pricetower.org

9.   On April 11, 2023, at the direction of Cynthia Blanchard for the purposes of establishing a fair market value for the Robert Indian 66 Sculpture to be either sold or encumbered as collateral, Nathan Aldinger of Chare Management, a consultant for the Debtor, facilitated an expert appraisal of the artifact by and through Fiona Lamb from Gurr John appraisers and she retuned a certified Fair Market Value appraisal as of April 22, 2023 **in the amount of $350,000**.  This needs to be added and included within the Debtor's estate as company property.

10. At all times material hereto, the Debtor has been put on notice not to transfer, dispose of or sell any of the company's assets as litigation was anticipated and demands were being made. See, Exhibit "B" herein and attached hereto.

11. See,                                                    https://www.unitysquarebville.com/public-art

  

12. Upon information and belief all of these pieces are outside of the Conversancy's easement but are property belonging to the Debtor's estate.  These would then be material assets of the estate; assets that the shareholders did not provide permission or consent to Cynthia Blanchard or others to dispose of nor to be allowed by company documents.  See, email from Cynthia Blanchard to Donna Keffer, dated August 4, 2023.

13. The Trustee has failed to account for the Japanese Wood-Cuts and other artifacts associated with the Bruce Goff Collection, acquired by the Debtor on March 7, 2023.  These "wood cuts" were also disclosed by Cynthia Blanchard and believed to have been auctioned by Christee's in N.Y. or negotiated with Cynthia Blanchard.   Upon information and belief these Japanese Wood-Cuts alone would bring into the estate approximately $600,000. See, a screen shot of one of the pieces believed to have been from the Estate.



14. The claimants are entitled to a complete inventory list along with photographs and/or video of the items that the Trustee had placed into a bonded warehouse prior to the sale to the Snyder Family of the Price Tower and would not be "on the premises" so as to be included within the purchase and sale.

15. Furthermore, Claimant is requesting a proper accounting of the true assets to be associated with the Debtor, as well as full disclosure from the Trustee as to what he is doing, to fully and completely obtain, uncover, investigate and bring back into the purview of the estate all assets that should be within the Trustees possession or control and are not.

16. Claimants have seen insurance policies taken out by the Debtor which have been explained to the Claimants that they inure to the benefit of the estate in these circumstances, including theft of assets.  The Conservancy might have similar insurance policies and it would be interesting to learn if they have made any such claims.  Claimants are requesting that the Trustee make full disclosure and production of any and all such insurance policies which might benefit the creditors, claimants, interested parties and that these insurance policies be added as estate assets and demand for payment be made upon them.

17. ECF156 claims that the Conservancy has a valid claim of $170,000 in attorney fees.  This was disputed in this Claimant's Objection to ECF 156, in ECF 173-174.  However, to add to this objection and as part of this Claimant's demand upon the Trustee, the on-line searches revealed the following information which seem to cast material doubt on the Trustee's representations contained within ECF156.  Again, the Trustee might have been provided with wrong information from the parties standing to benefit from ECF 156.  These on-line findings revealed the following:

　　　　a. the FLWC claim of $170,000 in legal fees, according to their own published statement, "Addition to our legal team, The Conservancy also announces the

addition of Willkie Farr & Gallagher LLP to the legal team defending the preservation easement on a pro bono basis…. **The firm's Tulsa office will provide pro bono local representation in this effort going forward**. https://savewright.org/conservancy-responds-in-court-to-lawsuit-by-owners-of-price-tower/.

**[Emphasis added].**

b.   Assuming the Conservancy's own statement is true, the Frank Llyod Write Building Conservancy's legal fees were charity or pro-bono.  As such, how is their claim for these fees not being challenged by the Trustee as opposed to rewarding the possible false claim.

c.   Additionally, if the Conservancy was getting pro-bono legal work, then how is it that they take affirmative actions to raise monies from the public for legal fees by way of donations.   The movant herein is now questioning everything stated, represented, filed by the Conservancy as to truth, motive and veracity and is at a loss why the Trustee is not doing the same. The FLWBC's claim should be dismissed in its entirety.



Posted December 12, 2024

WHEREFORE, the Claimant hereby prays that this Court grant the relief sought herein, including but not limited to:

d.  An updated inventory list of all debtor's assets, an accounting or investigation into assets which should belong to the estate or might belong to the estate that are within the possession or control of third parties such as 20C Design, the Blanchard's, and 1st Dibbs.

e.  An accounting as to what artwork was transferred to the Snyder family upon their Court Approved purchase of the Price Tower.

f.  An accounting of monies certain officers or directors of the Debtor, including Cynthia Blanchard and/or Anthem Blanchard might have received from sources such as 20C Design and 1st Dibbs.

g.  Full disclosure from the Trustee as to what the Trustee has done in order to obtain, uncover, investigate and bring back into the purview of the estate all assets that should be within the Trustee's possession or control and are not.

h.  A full accounting and reading of any and all insurance policies which might inure to the benefit of the Debtor's estate and an inclusion of these policies as assets of the Estate.

i.  An accounting of what assets are within the Trustee's possession and control. And/or,

j.  Any and all other relief the Court finds prudent, including in light of the above, the preemptive denial of ECF 156 and ECF 156-1.

## NOTICE OF OPPORTUNITY FOR HEARING

Your rights may be affected. You should read this document carefully and consult your attorney about your rights and the effect of this document. If you do not want the Court to grant the requested relief, or you wish to have your views considered, you must file a written response objection to the requested relief with the Clerk of the United States Bankruptcy Court for the Northern District of Oklahoma, 224 South Boulder, Tulsa, Oklahoma 74103 no later than 14 days from the date of filing of this request for relief. You should also serve a file-stamped copy of your response or objection to the undersigned movant/movant's attorney [and others who are required to be served] and file a certificate of service with the Court. If no response or objection is timely filed, the Court may grant the requested relief without a hearing or further notice. The 14 day period includes the three (3) days allowed for mailing provided for in Fed. R. Bankr. P. 9006(f). *The moving party shall calculate the appropriate response time. If a response time is prescribed by applicable statute, rule, or order, the moving party shall add to the prescribed response time unless service is accomplished by hand delivery, the three (3) days required for mailing under Bankruptcy Rule 9006(f). If a response time is not prescribed by applicable statute, rule, or order, the response time shall be fourteen (14) days, which includes the three (3) days required for mailing under Bankruptcy Rule 9006(f).

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of this foregoing Motion to Compel Trustee for

a Proper Accounting was ECF filed with the Clerk of Court on this 14th day of August, 2025.


/s/ *Craig A. Brand, Esq.*

By: _____

    Craig Alan Brand, Esq.
    FBN: 896111
    Tel. (305) 878-1477
    6462 S. Jamaica Circle
    Englewood, Colorado 80111

    **On behalf of and for:**
    PICTORIA STUDIOS USA, INC. (Claim No. 14), and
    TAKTIK ENTERPRISES, INC. (Claim No. 4).