UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| IN RE: | | |
| GREEN COPPER HOLDINGS, LLC | ) | CASE NO. 25-10088-T |
| EIN # xx-xxx9708 | ) | Chapter 7 |
| | ) | |
| COPPER TREE, INC. | ) | Substantively Consolidated |
| EIN # xx-xxx6608 | ) | |
| | ) | |
| THE INN AT PRICE TOWER INC. | ) | |
|     Debtors. | ) | |
| | / | |

**CLAIMANT PICTORIA STUDIOS USA, INC., (Claim No. 14), AND CLAIMANT TAKTIK ENTERPRISES, INC. (Claim No. 4) OBJECTION TO CLAIMANT DONNA KEFFER'S (NO. 20), (3029049), AND NOTICE OF OPPORTUNITY TO BE HEARD**

COMES NOW **PICTORIA STUDIOS USA, INC., (CLAIM NO. 14)**, and, Claimant **TAKTIK ENTERPRISES, INC. (Claim No. 4), ("Pictoria and Takio" collectively shall be referred to as Movants),** by and through their undersigned counsel and hereby files this **Objection to Claimant No. 20, Donna Keffer (3029049)**, first filed on June 6, 2025 and then Amended on July 29, 2025 and Notice of Opportunity to be heard, and as grounds thereof states as follows:

1. On June 6, 2025 and then amended on July 29, 2025, Claimant Donna Keffer filed Claim No. 20 alleging back wages owed as well as penalties under Oklahoma Law (40 O.S. § 165.3).  Movants contest this claim and its legitimacy.

2. In order to obtain penalties under Oklahoma Law (40 O.S. § 165.3), the Claimant would have first had to be an actual and true "employee", as opposed to an independent contractor of the actual Debtor. 40 O.S. § 165.3 (Oklahoma wage law, <u>for employees only</u>).

3. Upon information and belief, Claimant was never an employee of the Debtors and if so, the amounts alleged to be owed would not align with the claim.  Furthermore, movants would represent that Claimant is an in-sider as to PTAC as well as within the Debtors and her claim should be barred as such as well as for neglect of duties, breach of fiduciary obligations, tortuous interference with contracts of the Debtor Copper Tree, as well as violation of self-dealing and improper commingling of finances or value by and between PTAC and Debtor's accounts.

4. Claim 14-1, filed on June 6, 2025 alleges that the Claimant was an employee for Copper Tree Inc. and that back wages and penalties were owed amounting to $111,180.40, for the time period September 1, 2023 to January 22, 2024.  However, Movants representatives are also shareholders of Copper Tree Inc., and have no personal knowledge that Copper Tree, Inc., had ever hired Donna Keffer as an employee, no knowledge of Federal withholdings for Claimant, no knowledge of worker's compensation paid on behalf of Claimant, no knowledge of an employee agreement for the Claimant, no knowledge of health care being paid on behalf of Claimant and no knowledge of Claimant holding herself out as an actual employee defined by the IRS.  Movants represent that within their capacity and scope with the Debtors had the Claimant been an actual employee, she should have made them aware of this status.   Inside the company, Mrs. Keffer (#20) identified herself as an "independent contractor" and/or "consultant", as well as from time to time a company "officer" for which she would not have to be an actual employee of. It has not escaped the Movants that Claimant did not attach her tax returns, W2, nor pay stubs as actual supporting evidence.

5. On July 29, 2025, ECF 20-2, states that Claimant was an employee of Green Copper Holdings, LLC., and that back wages and penalties were owed amounting to $111,180.40, for the time period September 1, 2023 to January 22, 2024..  This is identical to the amount alleged to be owed by a separate entity as stated in paragraph #4, above.  Movants make the same allegations as made

in paragraph #4, *supra* as to Green Copper Holdings, LLC, and deny her claim. Movants would also argue that the request for identical monies as employee wages from two separate entities, during the same time frame, appears to be a fraudulent claim.

6. Claimant further filed ECF 20-2, on July 29, 2025. This exhibit is a text message between Cynthia Blanchard and Donna Keffer. While this text does not state which company is being referred to, it does state that Mrs. Keffer would only be referred to as a "Consultant" and paid $2,000 per month. No where within this exhibit does it ever state that the Claimant was an employee. The Movants are familiar with Claimant interchanging titles and employee status as being referred to from time to time as either an independent contractor or consultant. Additionally, Movants are familiar with Claimants inside position and authority with PTAC, the seller of the Price Tower, to the Debtor and the roles she played and gained in helping both PTAC, including Claimant Mark Haskell, with the Price Tower sale, and, Debtor with the early closing. Wherefore, the Claimant's own exhibits contradicts her very claim as to employment status and wage.

7. Claimant further filed ECF 20-2, part 4, on July 29, 2025. This is an interesting Composite Exhibit, allegedly showing bank statements from the Bank of Oklahoma, and representing as follows:

   a. Page 1, is for the period of March 20- April 19, 2023. Much of the document is redacted but the unredacted information shows that deposits were being made from an entity Price Tower Arts Center (PTAC). PTAC is not the Debtor herein, but it is an entity that the Claimant was an insider, an employee with great authority, and improperly interacted with the Debtors herein. The Payments this Claimant made from PTAC monies towards debts and obligations taken out by Claimant Mark Haskell, debts Mr. Haskell is now attempting to transfer to the Debtors herein,

places Mr. Haskell and Mrs. Keffer at odds and in material conflict with each other; a potential problem as both are being represented by the same legal counsel. This exhibit is problematic for the Claimant as:

    i. First, the time period is not the time period the Claimant is claiming damages for; and,

    ii. The entity Price Tower Arts Center is not the Debtor herein. Although, the Price Tower Arts Center a/k/a PTAC is material to this objection and the Claims filed by the Claimant.

b. Page 2, is as the prior page, only for the period April 20 – May 19, 2025. In fact, through Page 6, the documents <u>do not get to the claimed time period of September 1, 2024</u>. All payments allegedly from the PTAC whose employee responsibilities are not that of the Debtors herein.

c. None of these bank statements are demonstrative that Mrs. Keffer was an actual employee of the Debtor. In fact, these statements infer that Mrs. Keffer was more probably an employee of PTAC, a third party, non-debtor which coincides with the paperwork, text messages, emails in possession of the Movants.

d. Interestingly beginning on page 6 - 10 of Claim 20-2, part 4, the Bank of Oklahoma statements begin to show that Claimant began getting paid by an entity known as Inn at Price Tower.

e. We know from the following filing, by the same attorney as this Claimant is using, i.e., Case 25-10088-T   Claim 23   Filed 08/11/25   Attachment 2   Pg 41 of 43, that the Inn at Price Tower was purchased by an entity known as CT Operations, LLC. We know that according to this filing, CT Operations purchased shares of

    the Inn at Price Tower. CT Operations is not a Debtor in this case. Wherefore, again, the Claimant's Exhibits appear to be irrelevant to support for their Claim and Amended Claim. There is no agreement by and between CT Operations and PTAC or the Inn at Price Tower creating a legal duty upon CT Operations for past employee debts or debts to independent contractors.

    f. Beginning on page 10, of the Plaintiff's Exhibit: Claim 20-2, part 4, the Bank of Oklahoma statements, that another third party, non-debtor entity begins to show up known as MOBILE. MOBILE and at times, the Inn at Price Tower continues to show up for the remainder of this Exhibit, 20-2, part 4. None of which is relevant except to show that there were deposits from non-party Debtors and the status of the Claimant's employment is not identified in a bank statement.

8. Case 25-10088-T Claim 20-2 Part 5 Filed 07/29/25 Attachment 4, is the last of Claimant's Exhibits. This composite consists of:

    a. Purchase and Sale Agreement of the Price Tower to Green Copper Holdings, LLC.

    b. Administrative Service Agreement, beginning on page 7. This Agreement is between PTAC and Copper Tree Inc, dated March 7, 2023. The purpose of this Agreement was to allow Copper Tree to purchase the Price Tower months before the already established purchase date was to happen as PTAC, for which Claimant Mark Haskell was intricately wrapped and entangled with as an owner, operator and officer, was upon information and belief becoming fiscally desperate for this sale of the Price Tower to happen, sooner rather than at the later previously agreed closing date. This Agreement was to allow Copper Tree Inc to make the purchase however, PTAC was to remain fully liable for the employees of PTAC, including

    moving forward, as Copper Tree, Inc was not at that time in a position to on-board these people should they agree to close early. Page 12, of Claimant's very Agreement/Exhibit, clearly lists Donna Keefer, Executive Director, as one of these people that would remain employed by PTAC as an employee thereof.

9. Therefore, the exhibits filed by this Claimant as support of her position fail to do so. These exhibits neither show the claimant as an employee, as per the IRS, of the Debtors, nor do they demonstrate that the Debtors owe them any money or the monies claimed.

10. Pursuant to a conversation between Cynthia Blanchard and Dale Takio, just prior to the bankruptcy filing, Mrs. Blanchard informed Mr. Takio that she was afraid people were going to be submitting claims to the State of Oklahoma for unemployment. Given the Claims that Mrs. Keffer has filed herein and purporting to represent, it is not unreasonable to ask the question whether Mrs. Keffer filed for state unemployment and whether she was paid any monies accordingly. It is also not unreasonable to ask whether the Claimants tax returns demonstrate her employment status and with whom, or whether any claimed debts were written off against gains.

11. Claimant attaches no Employment Agreement, no texts or emails that would confirm an employment status, no tax return filings, no W2, no paystub validation, no writing from either Debtor hiring or firing or modifying the Claimant's employment status or remarking it as an "employee". Nothing produced by any of the Debtors herein demonstrate this Claimant as an actual employee or shareholder thereof. Nothing in this bankruptcy action show that the Debtor entities took any employment actions with the Federal or State Governmental authorities supporting Claimant's position that she was an employee of Copper Tree, Inc, and Green Copper Holdings, LLC.

12. It would appear that Claimant was an independent contractor for someone and might have been an employee of PTAC. However, filing a claim for $111,180.40, for the time period September 1, 2023 to January 22, 2024, stating that this amount <u>is owed by both</u> Copper Tree, Inc., and Green Copper Holdings, LLC, separately, is simply unsupported and Movants contend as problematic.

13. Interestingly, Exhibit "A", hereto, shows that as of September 1, 2023, the very date the Claimant is representing within her Bankruptcy filings, that she was an actual employee of the Debtors, she is sending emails and signing them as Executive Director of PTAC. Complete contradiction as well as evidence of improper insider influence, self-help measures and questions regarding the movement of Debtor's monies.

14. Exhibit "B" hereto, is a check that Donna Keffer issued on behalf of PTAC contradicting her bank statement exhibits as to timing (scope of date ranges), that Mr. Keffer filed, allegedly in support of her Claims. This check also appears to contradict claims by Claimant Mark Haskell placing him in potentially a material conflict position with Mrs. Keefer, as again these Claimants are being represented by the same counsel. It appears that Mrs. Keffer was making payments for loans that Mr. Haskell claims in his Claim (Claim Nos. 21, 22 & 23), that the Debtors were somehow responsible for.

15. Additionally, pursuant to 11 U.S.C. § 502(b)(1), § 502(b)(1): PTAC insider, and § 507(a)(4) warrants the dismissal of this Claim and its amendment as well as denial as to any representation that these claim(s) have priority status.

WHEREFORE, the Claimant hereby prays that this Court grant the relief sought herein, including but not limited to:

    a.   A denial of claim 20, belonging to Claimant Donna Keffer, in full or in part;

b. Limiting any recovery to only those instances allowed pursuant to the Federal Bankruptcy Code and Federal Statute.

c. Financial Values limited to value pursuant to 11 U.S.C. § 502(b)(4).

d. Any and all other relief the Court finds prudent, including but not limited to in light of the above, the preemptive denial of ECF 20, the denial of ECF 20, findings of wrongful insider use and utilization, claim fraud, overstated amounts allegedly due, mis-use of inside positions and breaches of fiduciary duties.

RESPECTFULLY SUBMITTED ON THIS 18TH DAY OF AUGUST, 2025.

/s/ *Craig A. Brand, Esq.*

By: _____
Craig Alan Brand, Esq.
FBN: 896111
Tel. (305) 878-1477
6462 S. Jamaica Circle
Englewood, Colorado 80111

**On behalf of and for:**
PICTORIA STUDIOS USA, INC. (Claim No. 14), and
TAKTIK ENTERPRISES, INC. (Claim No. 4).

**NOTICE OF OPPORTUNITY FOR HEARING**

Your rights may be affected. You should read this document carefully and consult your attorney about your rights and the effect of this document. If you do not want the Court to grant the requested relief, or you wish to have your views considered, you must file a written response objection to the requested relief with the Clerk of the United States Bankruptcy Court for the Northern District of Oklahoma, 224 South Boulder, Tulsa, Oklahoma 74103 no later than 33 days from the date of filing of this request for relief. You should also serve a file-stamped copy of your response or objection to the undersigned movant/movant's attorney [and others who are required to be served] and file a certificate of service with the Court. If no response or objection is timely

filed, the Court may grant the requested relief without a hearing or further notice. The 33 day period includes the three (3) days allowed for mailing provided for in Fed. R. Bankr. P. 9006(f). *The moving party shall calculate the appropriate response time. If a response time is prescribed by applicable statute, rule, or order, the moving party shall add to the prescribed response time unless service is accomplished by hand delivery, the three (3) days required for mailing under Bankruptcy Rule 9006(f). If a response time is not prescribed by applicable statute, rule, or order, the response time shall be fourteen (33) days, which includes the three (3) days required for mailing under Bankruptcy Rule 9006(f).

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of this foregoing Motion to Compel Trustee for a Proper Accounting was ECF filed with the Clerk of Court on this 18th day of August, 2025.

/s/ *Craig A. Brand, Esq.*

By: _____
Craig Alan Brand, Esq.
FBN: 896111
Tel. (305) 878-1477
6462 S. Jamaica Circle
Englewood, Colorado 80111

**On behalf of and for:**
PICTORIA STUDIOS USA, INC. (Claim No. 14), and
TAKTIK ENTERPRISES, INC. (Claim No. 4).