UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| IN RE: | ) | |
| GREEN COPPER HOLDINGS, LLC | ) | CASE NO. 25-10088-T |
| EIN # xx-xxx9708 | ) | Chapter 7 |
| | ) | |
| COPPER TREE, INC. | ) | Substantively Consolidated |
| EIN # xx-xxx6608 | ) | |
| | ) | |
| THE INN AT PRICE TOWER INC. | ) | |
|     Debtors. | ) | |

**CLAIMANT PICTORIA STUDIOS USA, INC., (Claim No. 14), AND CLAIMANT TAKTIK ENTERPRISES, INC. (Claim No. 4) OBJECTION TO CLAIM NO. 17, CLAIMANT PRICE TOWER ARTS CENTER, INC., AND NOTICE OF OPPORTUNITY TO BE HEARD**

COMES NOW **PICTORIA STUDIOS USA, INC., (CLAIM NO. 14)**, and, Claimant **TAKTIK ENTERPRISES, INC. (Claim No. 4)** by and through their undersigned counsel and hereby files this Objection to Claim No. 17, filed on June 6, 2025, and Notice of Opportunity to be heard, and as grounds thereof states as follows:

1. On June 6, 2025, Claimant Price Tower Arts Center, Inc., ("PTAC") filed Claim No. 17 in the amount of $183,000. (*See*, Case 25-10088-T Claim 17-1 Filed 06/06/25 Main Document).

2. Claim No. 17, attaches only one document as support for its claim. (*See*, Case 25-10088-T Claim 17-1 Filed 06/06/25 Part 2, Attachment 1).

3. The single attachment as supporting proof to PTAC's Claim 17, is: Case 25-10088-T Claim 17-1 Part 2 Filed 06/06/25 Attachment 1 Pg 1 of 1. This Exhibit is a two-sentence note written by PTAC's attorney stating: "A portion of the proof of claim filed in this case on behalf of Price Tower Arts Center, Inc. contains the same $163,000.00 that is being sought by Mark Haskell for

repayment of a lien. This is being done to ensure the $163,000.00 COVID-19 Economic Injury Disaster Loan ("EIDL") claim is preserved in the event the trustee finds that the claim belongs to Price Tower Arts Center, Inc. The parties are only seeking to be paid a total of $163,000.00".

4. Reading the above attorney note offered as supporting proof of claim, the amount be asked for is $163,000 but the PTAC's claim 17 Main Document states the amount owed is $183,000.

5. No specific contract, no specific promissory note, no specific Debtor's board of director's entry, no lien… nada, nothing other than this attorney's note is offered to support PTAC's claim for $183,000 or $163,000 whichever it is?

6. However, for sake of argument, this attorney's note Part 2, Attachment 1, refers to a claim filed by Mark Haskell, Claim No. 21, as justification. As such, lets explore claim 21 by Mark Haskell.

7. Haskell's filed claim: Case 25-10088-T Claim 21-1 Filed 06/06/. This claim on page 2 of 3, No. 7, states that the amount due is $163,000 not the $183,000 claimed by PTAC (Claim 17).

8. Claim 21, Attachment 1, merely states: "The Proof of Claim form filed in this case on behalf of Mark Haskell is the same claim filed by Price Tower Arts Center, Inc. It is being done to ensure the $163,000.00 COVID-19 Economic Injury Disaster Loan claim is preserved. The parties are only seeking to be paid a total of $163,000.00".

9. The above two sentences, typed by Mr. Haskell's attorney, is all that is presented to support a claim by Mr. Haskell that the Debtors somehow owe him $163,000. No specific contract, no specific promissory note, no specific Debtor's board of director's entry, no lien… nada, nothing.

10. Continuing to give Mr. Haskell and his attorney some benefit, we look to Mr. Haskell's Claim 23, which does provide some additional documentation.

11. Claimant Haskell attached several documents allegedly supportive of this claim 23. (See, Claim 23 "Case 25-10088-T   Claim 23   Filed 08/11/25   Attachment 1   Pg 1 of 4"; and, "Case 25-10088-T   Claim 23   Filed 08/11/25   Attachment 2   Pg 1 of 43".

12. Movants on August 16, 2025 filed their Objection to Claim 23 and its amendment. There is no reason to regurgitate Movant's arguments and points made within this Objection. Regardless, however, relevant is that nowhere within the Exhibits filed in Claim No. 23, is the paperwork, documents, payments, concerning the $163,000.00 COVID-19 Economic Injury Disaster Loan ("EIDL") being claimed by PTAC in Claim 17, nor any nexus with the Debtors.

13. Thus, if Claim 21 is relying upon Claim 17 and Claim 17 is relying on Claim 21, they both should be Denied and in fact further investigated.

14. PTAC's claim and supporting documents fail or refuse to show any the $163,000.00 or $183,000, (we simply don't know what amount the Claimant is obligated towards this alleged COVID-19 Economic Injury Disaster Loan ("EIDL") in question. They fail to show how this EIDL legally connects to the Debtors. They fail to explain any legal consideration and legal obligation that the Debtor's would have to this EIDL which was a pre-existing debt. As such the claim fails and should be Dismissed.

15. In fact, Movants argue that Mr. Haskell paying off this EIDL for PTAC was:

    a. Self-serving and within his own insider best interest.

    b. PTAC was the recipient of these EIDL loan proceeds which pre-dated the Debtor's purchasing the Price Tower.

c. Mark Haskell upon information and belief is one of the owners and officers of PTAC and was making personal loans to PTAC in order to keep it solvent until the Price Tower real property could be sold.

d. Upon purchasing the Price Tower real property, the purchasing company from PTAC was Green Copper Holdings, LLC. As part of the real estate closing, title insurance was taken out. (See, exhibit "A").

e. In performance of the due diligence on the real property at issue, the title insurance missed this EIDL. The Debtor only learned of it when applying, post closing, for an operational loan which picked up on the loan. This operational loan was for the amount of $1,000,000 and the Debtor did not secure it. The title insurance policy would have been responsible for any damages and Mr. Haskell's self motivation to pay off this EIDL was his own doing and in fact hurt the Debtor fiscally with a title insurance claim.

f. Mark Haskell, on his own and his own accord, ran to pay off this EIDL, taken out by PTAC, because the closing documents stated that PTAC was selling to Green Copper Holdings LLC the Price Tower premises free and clear of any and all loans, encumbrances, etc…. (See, purchase and sale documents filed in Claim 23 of Mark Haskell: *Case 25-10088-T Claim 23 Filed 08/11/25 Attachment 2 Pg 2 of 43*).

g. Thus, Mark Haskell, believed to be an owner, operator and officer of PTAC was an insider who was protecting his and his company PTAC's interests by paying off a pre-existing loan otherwise be in breach of the closing contracts. The building was to transfer hands free and clear and PTAC's EIDL was an encumbrance that Haskell, Claim 21, had a vested self interest in paying off.

h. Wherefore, Mr. Haskell was at all times material hereto acting in his and PTAC's own and best interest by paying off a pre-existing loan that brought no benefit to purchaser,

Green Copper Holdings LLC, handled a breach of contract issue, and smoothed the sale of the Price Tower which benefited Mr. Haskell as an insider with PTAC.

WHEREFORE, the Movants hereby pray that this Court grant the relief sought herein, including but not limited to:

a. A denial of claim 17 in full or in part;

b. Limiting any recovery to only those instances allowed pursuant to the Federal Bankruptcy Code and Federal Statute.

c. Values limited to value pursuant to 11 U.S.C. § 502(b)(4).

d. Any and all other relief the Court finds prudent, including in light of the above, the preemptive denial of Claim 17.

RESPECTFULLY SUBMITTED ON THIS 18TH DAY OF AUGUST, 2025.

/s/ *Craig A. Brand, Esq.*
By: _____
Craig Alan Brand, Esq.
FBN: 896111
Tel. (305) 878-1477
6462 S. Jamaica Circle
Englewood, Colorado 80111

**On behalf of and for:**
PICTORIA STUDIOS USA, INC. (Claim No. 14), and
TAKTIK ENTERPRISES, INC. (Claim No. 4).

**NOTICE OF OPPORTUNITY FOR HEARING**

Your rights may be affected. You should read this document carefully and consult your attorney about your rights and the effect of this document. If you do not want the Court to grant the requested relief, or you wish to have your views considered, you must file a written response

objection to the requested relief with the Clerk of the United States Bankruptcy Court for the Northern District of Oklahoma, 224 South Boulder, Tulsa, Oklahoma 74103 no later than 33 days from the date of filing of this request for relief. You should also serve a file-stamped copy of your response or objection to the undersigned movant/movant's attorney [and others who are required to be served] and file a certificate of service with the Court. If no response or objection is timely filed, the Court may grant the requested relief without a hearing or further notice. The 33 day period includes the three (3) days allowed for mailing provided for in Fed. R. Bankr. P. 9006(f). *The moving party shall calculate the appropriate response time. If a response time is prescribed by applicable statute, rule, or order, the moving party shall add to the prescribed response time unless service is accomplished by hand delivery, the three (3) days required for mailing under Bankruptcy Rule 9006(f). If a response time is not prescribed by applicable statute, rule, or order, the response time shall be fourteen (33) days, which includes the three (3) days required for mailing under Bankruptcy Rule 9006(f).

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of this foregoing Objection to Claim 17 was ECF filed with the Clerk of Court on this 18th day of August, 2025.

By: /s/ *Craig A. Brand, Esq.*
Craig Alan Brand, Esq.
FBN: 896111
Tel. (305) 878-1477
6462 S. Jamaica Circle
Englewood, Colorado 80111

**On behalf of and for:**
PICTORIA STUDIOS USA, INC. (Claim No. 14), and
TAKTIK ENTERPRISES, INC. (Claim No. 4).