NO FLAT CANCELLATION

Underwritten by: National Casualty Company
Home Office: One Nationwide Plaza • Columbus, Ohio 43215
Administrative Office: 8877 North Gainey Center Drive • Scottsdale, Arizona 85258
1-800-423-7675 • A Stock Company

**BUSINESS AND MANAGEMENT INDEMNITY POLICY
NON-PROFIT ORGANIZATIONS DECLARATIONS**

**THE LIABILITY COVERAGE SECTIONS OF THIS POLICY, OTHER THAN GENERAL LIABILITY, WHICHEVER ARE APPLICABLE, COVER ONLY CLAIMS FIRST MADE AGAINST THE INSURED DURING THE POLICY PERIOD OR, IF ELECTED, THE DISCOVERY PERIOD AND REPORTED TO THE INSURER PURSUANT TO THE TERMS OF THE RELEVANT COVERAGE SECTION. THE AMOUNTS INCURRED TO DEFEND A CLAIM REDUCE THE APPLICABLE LIMIT OF LIABILITY AND ARE SUBJECT TO THE APPLICABLE RETENTION OR DEDUCTIBLE. PLEASE READ THIS POLICY CAREFULLY.**

**TERMS THAT APPEAR IN BOLDFACE TYPE HAVE SPECIAL MEANING. PLEASE REFER TO THE APPROPRIATE DEFINITIONS SECTIONS OF THIS POLICY.**

| Item 1. **Parent Organization** & Mailing Address | Price Tower Arts Center Inc<br>510 S. Dewey Avenue<br>Bartlesville, OK 74003 | **Policy** No.: | EKO3437316 |
|---|---|---|---|
| | | Agent No.: | 29406 |
| | | Renewal No.: | EKO3390998 |
| | | Agent Name & Mailing Address: | E-Risk Services, LLC<br>Northwest Professional Center<br>227 US Hwy 206<br>Suite 302<br>Flanders, NJ 07836-9174 |

Principal Address, if different from mailing address:

Item 2. **Policy Period:** From 07/31/2022 to 07/31/2023
12:01 A.M. local time at Principal Address shown above.

Item 3. Coverage Section(s) and Limit of Liability

Employment Practices Coverage Section
1. Limit of Liability $1,000,000 maximum aggregate for this Coverage Section
2. Retention:
   a. $1,000 each **Employment Practices Claim**
   b. $1,000 each **Third-Party Claim**
3. **Continuity Date:** 07/31/2018
4. **Third-Party** Coverage:Yes **_X_**    No ___

Insured Person and Organization Coverage Section
1. Limit of Liability $1,000,000 maximum aggregate for this Coverage Section
2. Retention:
   a. $0 each **Claim** as respects **Insured Persons**
   b. $0 each **Claim** as respects the **Organization**
3. **Continuity Date:** 1/1/2019

Item 4. Premium:  $1,699

Item 5. **Discovery Period** options:
1. One (1) year =          30%_____ of the premium
2. Two (2) years =         75%_____ of the premium
3. Three (3) years =       100%_____ of the premium

As provided in Section H. of the General Terms and Conditions, only one of the above **Discovery Period** options may be elected and purchased.

Item 6. **Run-Off Period:**
1. One (1) year =          150%_____ of the premium
2. Two (2) years =         200%_____ of the premium
3. Three (3) years =       215%_____ of the premium
4. Four (4) years =        217%_____ of the premium
5. Five (5) years =        220%_____ of the premium

6.   Six (6) years      25% of the premium

As provided in Section I. of the General Terms and Conditions, only one of the above **Run-Off Period** options may be elected and purchased.

| | |
|---|---|
| Item 7. Forms and Endorsements Effective at Inception of **Policy**: | |

EK-D-8-OK (2-18), HLPEPL (1-18), HLPIPO (1-18), EK-326 (04/08), EK-P-7 (04/08), EK-P-8 (04/08), EK-99 (04/08), EK-804 (01/09), EK-1588 (2-15), EK-1638 (1-16), EK-888 (12/09), EK-1651 (10-16), EK-803(01/09), EK-255 (08/09), EK-1142 (11/12), EK-1143 (11/12), EK-266 (04/08), EK-267 (04/08), EK-1018 (1-12), EK-1109 (6-12), EK-805 (01/09), EK-261 (04/09), EK-2130 (1-19), EK-814 (05/09), EK-930 (02/11), EK-806 (01/09), EK-351 (1-15), EK-807 (04/09), EK-269 (5-18), EK-1539 (02/14), EK-1128 (09/12), EK-104 (04/08), EK-869 (08/09), EK-355 (06/08), EK-238 (04/08), EK-121 (04/08), EK-124 (04/08), EK-848 (05/09), EK-802 (01/09), EK-1607 (5-15), EK-318-OK (04/08), NOTN0603CW (12/20)

Item 8. Notices to Company:

Notice of Claims to:

Nationwide Managament Liability & Specialty

Attention: Claims Manager

7 World Trade Center, 37th Floor

250 Greenwich Street

New York, NY 10007-0033

mlsreportaloss@nationwide.com

Other Notices:

Nationwide Managament Liability & Specialty

Attention: Claims Manager

7 World Trade Center, 37th Floor

250 Greenwich Street

New York, NY 10007-0033

mlsreportaloss@nationwide.com

These Declarations, together with the **Application**, **Coverage Sections**, General Terms and Conditions, and any written endorsement(s) attached thereto, shall constitute the contract between the **Insured** and the **Insurer**.



Underwritten by: National Casualty Company
Home Office: 8877 North Gainey Center Drive • Scottsdale, Arizona 85258
Administrative Office: 8877 North Gainey Center Drive • Scottsdale, Arizona 85258
1-800-423-7675 • A Stock Company

In Witness Whereof, the Company has caused this policy to be executed and attested.

Secretary                          President

The information contained herein replaces any similar information contained elsewhere in the policy.

**E-RISK MANAGEMENT TOOLS CENTER**

**E-RISK SERVICES MANAGEMENT RESOURCES**






**NOT-FOR-PROFIT EMPLOYERS FACE CONTINUOUSLY CHANGING EMPLOYMENT LAWS AND ONGOING EMPLOYEE ISSUES.** The E-Risk Services Management Resources program is here to help with these challenges and deliver thousands of dollars of risk management value to your organization. These services have helped thousands of not-for-profit employers protect themselves from risk, and we encourage you to take full advantage.



Unlimited, specific, documented, and confidential advice from employment law attorneys

**+**

Online training courses, including sexual harassment prevention, available for both supervisors and employees

**+**

Online tools: a state-specific employee handbook builder, forms, posters, news, and more

**═ THOUSANDS OF DOLLARS**

IN ANNUAL EMPLOYER VALUE

## HOW DOES THE E-RISK SERVICES MANAGEMENT RESOURCES PROGRAM WORK?

*Employers are provided valuable services:*

**+** Direct access to employment law attorneys to receive confidential, documented responses to your organization's specific questions

**+** A state-specific employee handbook and policy building tool and online training courses

**+** Live and recorded topical webinars, many with CE credits for HR personnel

**+** Proactive regulatory updates based on each user's selected preferences

Not-for-profit Insureds can experience this complimentary EPL value by registering a valid policy number and billing ZIP code. Get started today.

eriskmgmtresources.com | 877.568.6655          © Copyright 2019 Enquiron

E-RISK MANAGEMENT TOOLS CENTER

**E-RISK SERVICES MANAGEMENT RESOURCES**  



**NOT-FOR-PROFIT EMPLOYERS FACE CONTINUOUSLY CHANGING D&O-RELATED LAWS AND ONGOING CHALLENGING ISSUES.** The E-Risk Services Management Resources program is here to help with these challenges and deliver thousands of dollars of risk management value to your organization. These services have helped thousands of not-for-profit employers protect themselves from risk, and we encourage you to take full advantage.



Unlimited, specific, documented, and confidential advice from experienced D&O attorneys

**+**

Online training courses focused on information directors and officers need to know

**+**

Online tools include best practice guidelines, checklists, news and more

**═ THOUSANDS OF DOLLARS**

**IN ANNUAL EMPLOYER VALUE**

## HOW DOES THE E-RISK SERVICES MANAGEMENT RESOURCES PROGRAM WORK?

*Employers are provided valuable services:*

**+** Direct access to D&O attorneys to receive confidential, document responses to specific questions

**+** Online risk management tools including D&O-focused training modules

**+** Proactive regulatory updates based on each user's selected preferences

**+** Dedicated relationship managers that can help you take full advantage of these benefits

Not-for-profit Insureds can experience this complimentary D&O value by registering a valid policy number and billing ZIP code. Get started today.

eriskmgmtresources.com | 877.568.6655      © Copyright 2019 Enquiron

# Underwritten by National Casualty Company

A Stock Insurance Company, herein called the **Insurer**

## BUSINESS AND MANAGEMENT INDEMNITY POLICY - NON-PROFIT ORGANIZATIONS

## GENERAL TERMS AND CONDITIONS

In consideration of the payment of premium, in reliance on the **Application** and subject to the Declarations, and terms and conditions of this **Policy**, the **Insurer** and the **Insureds** agree as follows.

A. **SEVERABILITY OF GENERAL TERMS AND CONDITIONS**

These General Terms and Conditions apply to each and every Coverage Section of this **Policy**. The terms and conditions of each Coverage Section apply only to that Coverage Section and shall not be construed to apply to any other Coverage Section.

B. **DEFINITIONS**

Whenever used in this **Policy**, the terms that appear below in **boldface** type shall have the meanings set forth in this Definitions subsection of the General Terms and Conditions. However, if a term also appears in **boldface** type in a particular Coverage Section and is defined in that Coverage Section, that definition shall apply for purposes of that particular Coverage Section. Terms that appear in **boldface** in the General Terms and Conditions but are not defined in this Definitions subsection and are defined in other Coverage Sections of the **Policy** shall have the meanings ascribed to them in those Coverage Sections.

1. **Additional Insured Person Discovery Period** means any time after the effective date the **Parent Organization** cancels or elects to not renew the **Policy** which may be applicable pursuant to Section J. below.

2. **Application** means all applications, including any attachments thereto, and all other information and materials submitted by or on behalf of the **Insureds** to the **Insurer** in connection with the **Insurer** underwriting this **Policy** or any policy of which this **Policy** is a renewal or replacement. All such applications, attachments, information, materials and documents are deemed attached to and incorporated into this **Policy**.

3. **Discovery Period** means one of the periods described in Item 5. of the Declarations which is elected and purchased pursuant to Section H. below.

4. **Domestic Partner** means any natural person qualifying as a domestic partner under the provisions of any applicable federal, state or local law or under the provisions of any formal program established by the **Organization**.

5. **Extended Period** means the **Discovery Period**, **Run-Off Period**, or **Additional Insured Person Discovery Period**, if such provision is applicable pursuant to Section J. or is elected and purchased pursuant to Sections H. or I., respectively, below.

6. **Insurer** means the insurance company providing this insurance.

7. **Organization** means:

    a. the **Parent Organization**; and

    b. any **Subsidiary,**

    and includes any such organization as a debtor-in-possession or the bankruptcy estate of such entity under United States bankruptcy law or an equivalent status under the law of any other jurisdiction.

8. **Parent Organization** means the entity first named in Item 1. of the Declarations.

9. **Policy** means, collectively, the Declarations, the **Application**, this policy form and any endorsements.

10. **Policy Period** means the period from the effective date and hour of the inception of this **Policy** to the **Policy** expiration date and hour as set forth in Item 2. of the Declarations, or its earlier cancellation date and hour, if any.

11. **Run-Off Period** means the one of the periods described in Item 6 of the Declarations, which is elected and purchased pursuant to Section I. below.

12. **Subsidiary** means any entity of which more than fifty percent (50%) of the outstanding securities or voting rights representing the present right to vote for the election of such entity's directors or managers are owned or controlled by the **Parent Organization**, directly or indirectly, if such entity:

    a. was so owned on or prior to the inception date of this **Policy**; or

    b. becomes so owned after the inception date of this **Policy**.

13. **Takeover** means:

    a. the acquisition by any person or entity of more than fifty percent (50%) of the voting rights of the **Parent Organization** representing the present right to vote for the election of directors or trustees; or

    b. the merger or consolidation of the **Parent Organization** into another entity such that the **Parent Organization** is not the surviving entity;

All definitions shall apply equally to the singular and plural forms of the respective words.

## C. LIMITS OF LIABILITY AND RETENTIONS

1. The Limits of Liability and Retentions for each Coverage Section are separate Limits of Liability and Retentions pertaining only to the Coverage Section for which they are shown. The application of a Retention to **Loss** under one Coverage Section shall not reduce the Retention under any other Coverage Section, and no reduction in the Limit of Liability applicable to one Coverage Section shall reduce the Limit of Liability under any other Coverage Section.

2. In the event that any **Claim** is covered, in whole or in part, under more than one Coverage Section, the total applicable Retention shall not exceed the single largest applicable Retention. The largest applicable Retention shall apply only once to such **Claim**.

## D. WARRANTY

It is warranted that the particulars and statements contained in the **Application** are the basis of this **Policy** and are to be considered as incorporated into and constituting a part of this **Policy** and each Coverage Section.

By acceptance of this **Policy**, the **Insureds** agree that:

1. the statements in the **Application** are their representations, that such representations shall be deemed material to the acceptance of the risk or the hazard assumed by **Insurer** under this **Policy**, and that this **Policy** and each Coverage Section are issued in reliance upon the truth of such representations; and

2. in the event the **Application**, including materials submitted or required to be submitted therewith, contains any misrepresentation or omission made with the intent to deceive, or contains any misrepresentation or omission which materially affects either the acceptance of the risk or the hazard assumed by **Insurer** under this **Policy**, this **Policy**, including each and all Coverage Sections, shall be void ab initio with respect to any **Insureds** who had knowledge of such misrepresentation or omission.

## E. CANCELLATION

1. By acceptance of this **Policy**, the **Insureds** hereby confer to the **Parent Organization** the exclusive power and authority to cancel this **Policy** on their behalf. The **Parent Organization** may cancel this **Policy** in its entirety or any of the applicable Coverage Sections individually by surrender thereof to the **Insurer**, or by mailing written notice to the **Insurer** stating when thereafter such cancellation shall be effective. The mailing of such notice shall be sufficient notice and the effective date of cancellation shall be the date the **Insurer** received such notice or any later date specified in the notice, and such effective date shall become the end of the **Policy** or applicable Coverage Section. Delivery of such written notice shall be equivalent to mailing.

2. This **Policy** may be cancelled by the **Insurer** only for nonpayment of premium, by mailing written notice to the **Parent Organization** stating when such cancellation shall be effective, such date to be not less than ten (10) days from the date of the written notice. The mailing of such notice shall be sufficient notice and the effective date of cancellation stated in the notice shall become the end of the

**Policy Period**. Delivery of such written notice by the **Insurer** shall be equivalent to mailing. If the foregoing notice period is in conflict with any governing law or regulation, then the notice period shall be deemed to be the minimum notice period permitted under the governing law or regulation.

3. If this **Policy** or any Coverage Section is cancelled, the **Insurer** shall retain the pro rata proportion of the premium therefore. Payment or tender of any unearned premium by **Insurer** shall not be a condition precedent to the effectiveness of cancellation.

## F. ESTATES, LEGAL REPRESENTATIVES, AND SPOUSES

The estates, heirs, legal representatives, assigns, spouses and **Domestic Partners** of natural persons who are **Insureds** shall be considered **Insureds** under this **Policy**; provided, however, coverage is afforded to such estates, heirs, legal representatives, assigns, spouses and **Domestic Partners** only for a **Claim** arising solely out of their status as such and, in the case of a spouse or **Domestic Partner**, where the **Claim** seeks damages from marital community property, jointly held property or property transferred from the natural person who is an **Insured** to the spouse or **Domestic Partner**. No coverage is provided for any **Wrongful Act** of an estate, heir, legal representative, assign, spouse or **Domestic Partner**. All of the terms and conditions of this **Policy** including, without limitation, the Retentions applicable to **Loss** incurred by natural persons who are **Insureds** shall also apply to **Loss** incurred by such estates, heirs, legal representatives, assigns, spouses and **Domestic Partners**.

## G. AUTHORIZATION CLAUSE

By acceptance of this **Policy**, the **Parent Organization** agrees to act on behalf of all **Insureds**, and the **Insureds** agree that the **Parent Organization** will act on their behalf, with respect to the giving of all notices to **Insurer**, the receiving of notices from **Insurer**, the agreement to and acceptance of endorsements, the payment of the premium and the receipt of any return premium.

## H. DISCOVERY PERIOD

1. If this **Policy** or any Coverage Section is cancelled or is not renewed by the **Insurer**, for reasons other than non-payment of premium or if the **Parent Organization** elects to cancel or not to renew this **Policy** or a Coverage Section, then the **Parent Organization** shall have the right, upon payment of an additional premium calculated at that percentage shown in Item 5. of the Declarations of the total premium for this **Policy**, or the total premium for the cancelled or not renewed Coverage Section, whichever is applicable, to purchase an extension of the coverage granted by this **Policy** or the applicable cancelled or not renewed Coverage Section with respect to any **Claim** first made during the period of time set forth in Item 5. of the Declarations after the effective date of such cancellation or, in the event of a refusal to renew, after the **Policy** expiration date, but only with respect to any **Wrongful Act** committed before such date. The **Parent Organization** shall have the right to elect only one of the **Discovery Periods** set forth in Item 5. of the Declarations.

2. As a condition precedent to the right to purchase the **Discovery Period** set forth in subsection H.1. above, the total premium for the **Policy** must have been paid. Such right to purchase the **Discovery Period** shall terminate unless written notice, together with full payment of the premium for the **Discovery Period**, is received by **Insurer** within thirty (30) days after the effective date of cancellation, or, in the event of a refusal to renew, within thirty (30) days after the **Policy** expiration date. If such notice and premium payment is not so given to **Insurer**, there shall be no right to purchase the **Discovery Period**.

3. In the event of the purchase of the **Discovery Period**, the entire premium therefore shall be deemed earned at the commencement of the **Discovery Period**.

4. The exercise of the **Discovery Period** shall not in any way increase or reinstate the limit of **Insurer's** liability under any Coverage Section.

## I. RUN-OFF COVERAGE

In the event of a **Takeover**:

1. The **Parent Organization** shall have the right, upon payment of an additional premium calculated at the percentage of the total premium for this **Policy** set forth in Item 6. of the Declarations, to an extension of the coverage granted by this **Policy** with respect to any **Claim** first made during the **Run-Off Period**, as set forth in Item 6. of the Declarations, but only with respect to any **Wrongful Act** committed before the effective date of the **Takeover** (herein defined as "Run-Off Coverage"); provided, however, such additional premium shall be reduced by the amount of the unearned premium from the date of the **Takeover** or the date of notice of the election of the Run-Off Coverage, whichever is later, through the expiration date set forth in Item 2. of the Declarations.

2. The **Parent Organization** shall have the right to elect only one of the periods designated in Item 6. of the Declarations. The election must be made prior to the expiration of the **Policy Period**. The right

to purchase a **Run-Off Period** shall terminate on the expiration of the **Policy Period**.

    3. If a **Run-Off Period** is elected and purchased:

        a. Section E. above, is deleted in its entirety and neither the **Insureds** nor the **Insurer** may cancel this **Policy** or any Coverage Section thereof;

        b. Section H. above, is deleted in its entirety; and

        c. The exercise of the **Run-Off Period** shall not in any way increase or reinstate the limit of the **Insurer's** liability under any Coverage Section.

## J. ADDITIONAL INSURED PERSON DISCOVERY PERIOD

If the **Parent Organization** cancels or elects not to renew this **Policy**, including all of the applicable Coverage Sections, then any **Insured Person** who was not actively serving in their capacity as an **Insured Person** shall be entitled to an extension of the coverage granted by this **Policy** with respect to any **Claim** first made during the **Additional Insured Person Discovery Period**, but only with respect to any **Wrongful Act** committed before such **Policy** cancellation or non-renewal.

The extension of coverage during the **Additional Insured Person Discovery Period** shall not apply to the **Organization** in any respect. The extension of coverage during the **Additional Insured Person Discovery Period** shall not apply to any **Insured Person** if the **Parent Organization** has elected for the **Discovery Period** or **Run-off Period** under Section H. or I. above.

## K. ALTERNATIVE DISPUTE RESOLUTION

The **Insureds** and the **Insurer** shall submit any dispute or controversy arising out of or relating to this **Policy** or the breach, termination or invalidity thereof to the alternative dispute resolution ("ADR") process described in this subsection.

Either an **Insured** or the **Insurer** may elect the type of ADR process discussed below; provided, however, that the **Insured** shall have the right to reject the choice by the **Insurer** of the type of ADR process at any time prior to its commencement, in which case the choice by the **Insured** of ADR process shall control.

There shall be two choices of ADR process: (1) non-binding mediation administered by any mediation facility to which the **Insurer** and the **Insured** mutually agree, in which the **Insured** and the **Insurer** shall try in good faith to settle the dispute by mediation in accordance with the then-prevailing com-mercial mediation rules of the mediation facility; or (2) arbitration submitted to any arbitration facility to which the **Insured** and the **Insurer** mutually agree, in which the arbitration panel shall consist of three disinterested individuals. In either mediation or arbitration, the mediator or arbitrators shall have knowledge of the legal, corporate management, and insurance issues relevant to the matters in dispute. In the event of arbitration, the decision of the arbitrators shall be final and binding and provided to both parties, and the award of the arbitrators shall not include attorneys' fees or other costs. In the event of mediation, either party shall have the right to commence arbitration in accordance with this section; provided, however, that no such arbitration shall be commenced until at least sixty (60) days after the date the mediation shall be deemed concluded or terminated. In all events, each party shall share equally the expenses of the ADR process. Either ADR process may be commenced in New York, New York or in the state indicated in Item 1. of the Declarations as the principal address of the **Parent Organization**. The **Parent Organization** shall act on behalf of each and every **Insured** in connection with any ADR process under this section.

## L. TERRITORY

Coverage under this **Policy** shall extend to **Wrongful Acts** taking place or **Claims** made anywhere in the world.

## M. ASSISTANCE, COOPERATION AND SUBROGATION

The **Insureds** agree to provide **Insurer** with such information, assistance and cooperation as **Insurer** reasonably may request, and they further agree that they shall not take any action which in any way increases **Insurer's** exposure under this **Policy**. In the event of any payments under this **Policy**, **Insurer** shall be subrogated to the extent of such payment to all of the **Insureds'** rights of recovery against any person or entity. The **Insureds** shall execute all papers required and shall do everything that may be necessary to secure and preserve such rights, including the execution of such documents as are necessary to enable **Insurer** effectively to bring suit or otherwise pursue subrogation in the name of the **Insureds**, and shall provide all other assistance and cooperation which **Insurer** may reasonably require.

## N. ACTION AGAINST INSURER, ALTERATION AND ASSIGNMENT

Except as provided in Section J. above, Alternative Dispute Resolution, no action shall lie against **Insurer** unless, as a condition precedent thereto, there shall have been compliance with all of the terms of this **Policy**. No person or organization shall have any right under this **Policy** to join **Insurer** as a party to any

action against the **Insureds** to determine their liability, nor shall **Insurer** be impleaded by the **Insureds** or their legal representative. No change in, modification of, or assignment of interest under this **Policy** shall be effective except when made by a written endorsement to this **Policy** which is signed by an authorized representative of the **Insurer**.

O. **ENTIRE AGREEMENT**

By acceptance of this **Policy**, the **Insureds** agree that this **Policy** embodies all agreements existing between them and **Insurer** or any of their agents relating to this insurance. Notice to any agent or knowledge possessed by any agent or other person acting on behalf of Insurer shall not effect a waiver or a change in any part of this **Policy** or estop **Insurer** from asserting any right under the terms of this **Policy** or otherwise, nor shall the terms be deemed waived or changed except by written endorsement or rider issued by **Insurer** to form part of this **Policy**.

## Underwritten by National Casualty Company

A Stock Insurance Company, herein called the **Insurer**

# BUSINESS AND MANAGEMENT INDEMNITY POLICY - NON-PROFIT ORGANIZATIONS

## EMPLOYMENT PRACTICES COVERAGE SECTION

In consideration of the payment of premium, in reliance on the **Application** and subject to the Declarations, and terms and conditions of this **Policy**, the **Insurer** and the **Insureds** agree as follows:

A. **INSURING CLAUSES**

1. **Employee** Insuring Clause

   **Insurer** shall pay the **Loss** of the **Insureds** which the **Insureds** have become legally obligated to pay by reason of an **Employment Practices Claim** first made against the **Insureds** during the **Policy Period** or, if elected, the **Extended Period**, and reported to the **Insurer** pursuant to subsection E.1. herein, for an **Employment Practices Wrongful Act** taking place prior to the end of the **Policy Period**.

2. **Third-Party** Insuring Clause

   In the event **Third-Party** Coverage is affirmatively designated in Item 3. of the Declarations relating to this Coverage Section, the **Insurer** shall pay the **Loss** of the **Insureds** which the **Insureds** have become legally obligated to pay by reason of a **Third-Party Claim** first made against the **Insureds** during the **Policy Period** or, if elected, the **Extended Period**, and reported to the **Insurer** pursuant to subsection E.1. herein, for a **Third-Party Wrongful Act** taking place prior to the end of the **Policy Period**.

B. **DEFINITIONS**

1. **Claim** means any:

   a. **Employment Practices Claim**; or

   b. **Third-Party Claim**.

2. **Continuity Date** means the Continuity Date set forth in Item 3. of the Declarations relating to this Coverage Section.

3. **Costs, Charges and Expenses** means reasonable and necessary legal costs, charges, fees and expenses incurred by any of the **Insureds** in defending **Claims** and the premium for appeal, attachment or similar bonds arising out of covered judgments, but with no obligation to furnish such bonds and only for the amount of such judgment that is up to the applicable Limit of Liability. **Costs, Charges and Expenses** do not include salaries, wages, fees, overhead or benefit ex-penses of or associated with officers or employees of the **Organization**.

4. **Employee** means any person who was, now is or shall become:

   a. a full-time or part-time employee of the **Organization**, including voluntary, seasonal, and temporary employees;

   b. any individual who applies for employment with the **Organization**; and

   c. any natural person who is a leased employee or is contracted to perform work for the **Organization**, or is an independent contractor for the **Organization**, but only to the extent such individual performs work or services for or on behalf of the **Organization**.

5. **Employment Practices Claim** means:

   a. a written demand against an **Insured** for damages or other relief;

   b. a civil, judicial, administrative, regulatory or arbitration proceeding or a formal governmental investigation against an **Insured** seeking damages or other relief, commenced by the service of

complaint or similar pleading including any appeal therefrom;

    c. a civil proceeding against an **Insured** before the Equal Employment Opportunity Commission or any similar federal, state or local governmental body, commenced by the filing of a notice of charges, investigative order or similar document; or

    d. a criminal proceeding brought for an **Employment Practices Wrongful Act** in a court outside of the United States against any **Insured**, commenced by a return of an indictment or similar document, or receipt or filing of a notice of charges,

brought by or on behalf of an **Employee** in their capacity as such. **Employment Practices Claim** does not include a labor or grievance proceeding, which is pursuant to a collective bargaining agreement.

6. **Employment Practices Wrongful Act** means any actual or alleged:

    a. violation of any common or statutory federal, state, or local law prohibiting any kind of em-ployment-related discrimination;

    b. harassment, including any type of sexual or gender harassment as well as racial, religious, sexual orientation, pregnancy, disability, age, or national origin-based harassment, or unlaw-ful workplace harassment, including workplace harassment by any non-employee;

    c. abusive or hostile work environment;

    d. wrongful discharge or termination of employment, whether actual or constructive;

    e. breach of an actual or implied employment contract;

    f. wrongful deprivation of a career opportunity, wrongful failure or refusal to employ or promote, or wrongful demotion;

    g. employment-related defamation, libel, slander, disparagement, false imprisonment, misrepresentation, malicious prosecution, or invasion of privacy;

    h. wrongful failure or refusal to adopt or enforce workplace or employment practices, policies or procedures, solely as respects employment-related discrimination or harassment;

    i. wrongful discipline;

    j. employment-related wrongful infliction of emotional distress, mental anguish, or humiliation;

    k. **Retaliation**;

    l. negligent evaluation; or

    m. negligent hiring or negligent supervision of others in connection with a. through l. above, but only if employment-related and claimed by or on behalf of any **Employee** and only if committed or allegedly committed by any of the **Insureds** in their capacity as such.

7. **Insured Persons** means all persons who were, now are or shall become:

    a. a director, officer, trustee, volunteer or committee member of the **Organization**;

    b. any **Employee**; and

    c. the functional equivalent of a director, officer, trustee, volunteer or committee member or **Employee** in the event the **Organization** incorporated or domiciled outside the United States.

8. **Insureds** means the **Organization** and any **Insured Persons**.

9. **Interrelated Wrongful Acts** means all **Wrongful Acts** that have as a common nexus any fact, circumstance, situation, event, transaction, cause or series of facts, circumstances, situations, events, transactions or causes.

10. **Loss** means the damages, judgments, settlements, pre-judgment or post-judgment interest awarded by a court, front pay and back pay, and **Costs, Charges and Expenses** incurred by any of the **Insureds**.

**Loss** does not include:

    a. taxes, fines or penalties;

    b. matters uninsurable under the laws pursuant to which this **Policy** is construed;

    c. punitive or exemplary damages, liquidated damages awarded by a court pursuant to a viola-tion of the Equal Pay Act, the Age Discrimination in Employment Act or the Family Medical Leave Act, all as amended, or any rules or regulations promulgated thereunder, or similar provisions of any common or statutory federal, state or local law, or the multiple portion of any multiplied damage award, except to the extent that such punitive, exemplary, or liquidated damages or the multiple portion of any multiplied damage award are insurable under the internal laws of any jurisdiction which most favors coverage for such damages and which has a substantial relationship to the **Insureds**, **Insurer**, this **Policy** or the **Claim** giving rise to such damages;

    d. the cost of any remedial, preventative or other non-monetary relief, including without limitation any costs associated with compliance with any such relief of any kind or nature imposed by any judgment, settlement or governmental authority;

    e. amounts owed under any employment contract, partnership, stock or other ownership agreement, or any other type of contract;

    f. disability, social security, workers compensation, medical insurance, retirement or pension benefit payments, or settlement amounts representing benefit payments;

    g. the costs to modify or adapt any building or property to be accessible or accommodating, or to be more accessible or accommodating, to any disabled person;

    h. the cost of creating or reinstating employment;

    i. any amount owed as wages to any **Employee**, other than front pay or back pay; or

    j. any amount for which the **Insured** is not financially liable or legally obligated to pay.

11. **Retaliation** means any actual or alleged response of any of the **Insureds** to:

    a. the disclosure or threat of disclosure by an **Employee** to a superior or to any governmental agency of any act by any of the **Insureds** where such act is alleged to be a violation of any federal, state local or foreign law, whether common or statutory, or any rule or regulation promulgated thereunder;

    b. the actual or attempted exercise by an **Employee** of any right that such **Employee** has under law, including rights under any worker's compensation law, the Family and Medical Leave Act, the Americans with Disabilities Act or any other law relating to employee rights;

    c. the filing of any claim under the Federal False Claims Act or any similar federal, state, local or foreign "whistleblower" law or "whistleblower" provision of any law; or

    d. any legally-protected **Employee** work stoppage or slowdown.

12. **Third-Party** means any natural person who is a customer, vendor, service provider, client, or other business invitee of the **Organization**; provided, however, **Third-Party** shall not include any **Employee**.

13. **Third-Party Claim** means:

    a. any written demand for damages or other relief against an **Insured**;

    b. a civil judicial, administrative or arbitration proceeding against an **Insured** seeking damages or other relief, including any appeal therefrom; or

    c. a criminal proceeding brought for an **Employment Practices Wrongful Act** in a court outside of the United States against any **Insured**, commenced by a return of an indictment or similar document, or receipt or filing of a notice of charges;

brought by or on behalf of a **Third-Party** in their capacity as such.

14. **Third-Party Wrongful Act** means any actual or alleged:

harassment of a **Third-Party**, including but not limited to any type of sexual or gender harassment as well as racial, religious, sexual orientation, pregnancy, disability, age, or national origin-based harassment; or

b. discrimination against a **Third-Party**, including but not limited to any such discrimination on account of race, color, religion, age, disability or national origin.

15. **Wrongful Act** means:

    a. **Employment Practices Wrongful Act**; or

    b. **Third-Party Wrongful Act**.

## C. EXCLUSIONS

**Insurer** shall not be liable for **Loss** under this Coverage Section on account of any **Claim**:

1. for actual or alleged bodily injury, sickness, disease or death of any person, or damage to or destruction of any tangible or intangible property including loss of use thereof, whether or not such property is physically injured; provided, however, this exclusion shall not apply to mental anguish, emotional distress or humiliation;

2. alleging, based upon, arising out of, attributable to, directly or indirectly resulting from, in consequence of, or in any way involving:

    a. any **Wrongful Act**, fact, circumstance or situation which has been the subject of any written notice given under any other policy of which this **Policy** is a renewal or replacement or which it succeeds in time; or

    b. any other **Wrongful Act** whenever occurring which, together with a **Wrongful Act**, which has been the subject of such notice, would constitute **Interrelated Wrongful Acts**;

3. alleging, based upon, arising out of, attributable to, directly or indirectly resulting from, in consequence of, or in any way involving:

    a. the actual, alleged or threatened discharge, dispersal, release, escape, seepage, migration or disposal of **Pollutants**; or

    b. any direction or request that any **Insured** test for, monitor, clean up, remove, contain, treat, detoxify or neutralize **Pollutants**, or any voluntary decision to do so;

including without limitation any such **Claim** by or on behalf of the **Organization**, its securities holders or creditors based upon, arising out of, or attributable to the matters described in this exclusion. Provided, however, this exclusion shall not apply to that part of any **Claim** under this Coverage Section where such **Claim** is for **Retaliation**.

For purposes of this exclusion, **Pollutants** means any substance exhibiting any hazardous characteristics as defined by, or identified on, a list of hazardous substances issued by the United States Environmental Protection Agency or any federal, state, county, municipal or local counterpart thereof or any foreign equivalent. Such substances shall include, without limitation, solids, liquids, gaseous, biological, bacterial or thermal irritants, contaminants or smoke, vapor, soot, fumes, acids, alkalis, chemicals or waste materials (including materials to be reconditioned, recycled or reclaimed). **Pollutants** shall also mean any other air emission or particulate, odor, waste water, oil or oil products, infectious or medical waste, asbestos or asbestos products, noise, fungus (including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi, but does not include any fungi intended by the **Insured** for consumption) and electric or magnetic or electromagnetic field;

4. for any actual or alleged violation of the responsibilities, obligations or duties imposed by the Employee Retirement Income Security Act of 1974, the National Labor Relations Act, the Worker Adjustment and Retraining Notification Act, the Consolidated Omnibus Budget Reconciliation Act of 1985, the Occupational Safety and Health Act, all as amended, or any rules or regulations promulgated thereunder, or similar provisions of any common or statutory federal, state or local law; provided, however, this exclusion does not apply to any such **Claim** alleging violations of the Equal Pay Act or **Retaliation**;

5. alleging, based upon, arising out of, attributable to, directly or indirectly resulting from, in consequence of, or in any way involving any **Wrongful Act** actually or allegedly committed subsequent to a **Takeover**;

alleging, based upon, arising out of, attributable to, directly or indirectly resulting from, in consequence of, or in any way involving:

    a. any prior or pending litigation or administrative or regulatory proceeding, demand letter or formal or informal governmental investigation or inquiry, including without limitation any investigation by the United States Department of Labor or the United States Equal Employment Opportunity Commission, filed or pending on or before the **Continuity Date**;

    b. any fact, circumstance, situation, transaction or event underlying or alleged in such litigation or administrative proceeding, demand letter or formal or informal governmental investigation or inquiry, including any investigation by the United States Department of Labor or the United States Equal Employment Opportunity Commission; or

7. alleging, based upon, arising out of, attributable to, directly or indirectly resulting from, in consequence of, or in any way involving any **Wrongful Act**, fact, circumstance, or situation which any of the **Insured Persons** who were, now are, or shall be directors, officers, trustees, managers or supervisory employees, had knowledge of prior to the **Continuity Date** where such **Insured Persons** had reason to believe at the time that such known **Wrongful Act** could reasonably be expected to give rise to such **Claim**;

8. alleging, based upon, arising out of, attributable to, directly or indirectly resulting from, in consequence of, or in any way involving, any actual or alleged responsibility, obligation or duty of any **Insured** pursuant to any workers compensation, unemployment insurance, social security, disability benefits or pension benefits or similar law; provided, however, this exclusion shall not apply to any such **Claim** alleging **Retaliation**; or

9. for that portion of **Loss** which is covered under any other Coverage Section of this **Policy**.

No **Wrongful Act** of one or more **Insureds** shall be imputed to any other **Insureds** for the purpose of determining the applicability of any of the above exclusions.

## D. LIMIT OF LIABILITY AND RETENTIONS

1. The liability of the **Insurer** shall apply only to that part of **Loss** which is excess of the Retention amount applicable to this Coverage Section, as shown in Item 3. of the Declarations. Such Retention shall be borne uninsured by the **Insureds** and at their own risk. If different parts of a single **Claim** are subject to different applicable Retentions under this Coverage Section, the applicable Retentions will be applied separately to each part of such **Loss**, but the sum of such Retentions shall not exceed the largest applicable Retention.

2. The amount shown in Item 3.1. of the Declarations relating to this Coverage Section shall be the maximum aggregate Limit of Liability of the **Insurer** under this Coverage Section.

3. All **Claims** arising out of the same **Wrongful Act** and all **Interrelated Wrongful Acts** shall be deemed to be a single **Claim**, and such **Claim** shall be deemed to have been made at the earliest of the following times, regardless of whether such date is before or during the **Policy Period**:

    a. the time at which the earliest **Claim** involving the same **Wrongful Act** or **Interrelated Wrongful Acts** is first made; or

    b. the time at which the **Claim** involving the same **Wrongful Act** or **Interrelated Wrongful Acts** shall be deemed to have been made pursuant to subsection E.2. below.

4. Payments of **Loss**, other than **Costs, Charges and Expenses**, by **Insurer** shall reduce the Limit of Liability under this Coverage Section. **Costs, Charges and Expenses** are not part of and are in addition to the Limit of Liability. Payment of **Costs, Charges and Expenses** by the **Insurer** shall not reduce the Limit of Liability. If such Limit of Liability is exhausted, the obligations of the **Insurer** under this Coverage Section shall be completely fulfilled and extinguished.

## E. NOTIFICATION

1. The **Insureds** shall, as a condition precedent to their rights to payment under this Coverage Section only, give to **Insurer** written notice of any **Claim** made against the **Insureds** as soon as practicable, but in no event later than sixty (60) days after such **Claim** is first made against the **Insureds**, or the expiration of the **Policy Period**, whichever is later. If any **Claim** is first made against the **Insureds** during the **Extended Period**, if purchased, written notice to **Insurer** must be given as soon as practicable, but in no event later than sixty (60) days after such **Claim** is first made against the **Insureds**, or the end of the **Extended Period**, whichever is later.

1. during the **Policy Period** or the **Discovery Period**, any of the **Insureds** first becomes aware of a specific **Wrongful Act** which may reasonably give rise to a future **Claim** covered under this **Policy**, and if the **Insureds**, during the **Policy Period** or the **Discovery Period**, if purchased, given written notice to **Insurer** as soon as practicable of:

      a. a description of the **Wrongful Act** allegations anticipated;

      b. the identity of the potential claimants;

      c. the circumstances by which the **Insureds** first became aware of the **Wrongful Act**;

      d. the identity of the **Insureds** allegedly involved;

      e. the consequences which have resulted or may result; and

      f. the nature of the potential monetary damages and non-monetary relief;

then any **Claim** made subsequently arising out of such **Wrongful Act** shall be deemed for the purposes of this Coverage Section to have been made at the time such written notice was received by the **Insurer**. No coverage is provided for fees, expenses and other costs incurred prior to the time such **Wrongful Act** results in a **Claim**.

3. Notice to **Insurer** shall be given to the address specified in Item 8. of the Declarations for this **Policy**.

## F. SETTLEMENT AND DEFENSE

1. It shall be the duty of the **Insurer** and not the duty of the **Insureds** to defend any **Claim**. Such duty shall exist even if any of the allegations are groundless, false or fraudulent. The **Insurer's** duty to defend any **Claim** shall cease when the Limits of Liability have been exhausted.

2. The **Insurer** may make any investigation it deems necessary and shall have the right to settle any **Claim**; provided, however, no settlement shall be made without the consent of the **Parent Company**, such consent not to be unreasonably withheld.

3. Notwithstanding subsection 1. above, in the event that any **Claim** is brought as a class action, and all or any part of such **Claim** involves any actual or alleged violation of the Fair Labor Standards Act of 1938, as amended, or any similar state law, regulation or code, then it shall be the duty of the **Insureds** and not the duty of the **Insurer** to defend any such **Claim**.

4. The **Insureds** agree not to settle or offer to settle any **Claim**, incur any **Costs, Charges and Expenses** or otherwise assume any contractual obligation or admit any liability with respect to any **Claim** without the prior written consent of the **Insurer**, such consent not to be unreasonably withheld. The **Insurer** shall not be liable for any settlement, **Costs, Charges and Expenses**, assumed obligation or admission to which it has not consented. The **Insureds** shall promptly send to the **Insurer** all settlement demands or offers received by any **Insured** from the claimant(s).

5. If the **Insurer** does not have the duty to defend a **Claim**, then the **Insurer** shall have the right and shall be given the opportunity to effectively associate with, and shall be consulted in advance by, the **Insureds** regarding the defense and negotiation of any settlement of any **Claim**.

6. The **Insureds** agree to provide the **Insurer** with all information, assistance and cooperation which the **Insurer** reasonably requests and agree that, in the event of a **Claim**, the **Insureds** will do nothing that shall prejudice the position of the **Insurer** or its potential or actual rights of recovery.

7. If the **Insurer** does not have the duty to defend a **Claim**, the **Insurer** shall, on a quarterly basis, advance on behalf of the **Insureds** covered **Costs, Charges and Expenses**, which the **Insureds** have incurred in connection with **Claims** made against them, prior to disposition of such **Claims**. Any advancement of **Costs, Charges and Expenses** shall be subject to the condition that such advanced amounts shall be repaid to the **Insurer** by the **Insureds** severally according to their respective interests if and to the extent the **Insureds** shall not be entitled to coverage for such **Costs, Charges and Expenses** under the terms and conditions of this **Policy**.

## G. OTHER INSURANCE

1. For any **Employment Practices Claim**, if any **Loss** covered under this Coverage Section is covered under any other valid and collectable insurance, then this **Policy** shall be primary insurance; provided that with respect to that portion of an **Employment Practice Claim** made against any leased, temporary or independently contracted **Employee**, **Loss**, including **Costs, Charges and Expenses**, payable on behalf of such **Employee** under this Coverage Section will be specifically excess of and will not contribute with such other insurance, including but not limited to any such other insurance under

which there is a duty to defend, unless such insurance is specifically stated to be excess over the Limit of Liability of this Coverage Section.

2. For any **Third-Party Claim**, if any **Loss** covered under this Coverage Section is covered under any other valid and collectible insurance, then this **Policy** shall be specifically excess of and will not contribute with such other insurance, including but not limited to any such other insurance under which there is a duty to defend, unless such other insurance is specifically stated to be excess over the Limit of Liability of this Coverage Section.

H. **ALLOCATION**

If the **Insurer** does not have the duty to defend a **Claim**, then the following subsections shall apply to such **Claim**.

1. If, in any **Claim** covered in whole or in part under this Coverage Section, the **Insureds** who are afforded coverage for such **Claim** incur **Loss** jointly with others, or incur an amount consisting of both **Loss** covered by this **Policy** and loss not covered by this **Policy** because such **Claim** includes both covered and uncovered matters, then the **Insureds** and the **Insurer** shall allocate such amount between covered **Loss** and uncovered loss based upon the relative legal and financial exposures and the relative benefits obtained by the parties to covered and uncovered matters.

2. If there can be an agreement between **Insureds** and the **Insurer** on an allocation of **Costs, Charges and Expenses**, the **Insurer** shall advance on a current basis covered **Costs, Charges and Expenses**. If there can be no agreement on allocation of **Costs, Charges and Expenses**, the **Insurer** shall advance on a current basis **Costs, Charges and Expenses** which the **Insurer** believes to be covered under this **Policy** until a different allocation is negotiated or arbitrated. Any advancement of **Costs, Charges and Expenses** shall be subject to, and conditioned upon receipt by the **Insurer** of, a written undertaking by the **Insureds** that such advanced amounts shall be repaid to the **Insurer** by the **Insureds** severally according to their respective interests if and to the extent that **Insureds** shall not be entitled under the terms and conditions of the **Policy** to coverage for such **Costs, Charges and Expenses**.

3. Any negotiated or arbitrated allocation of **Costs, Charges and Expenses** on account of a **Claim** shall be applied retroactively to all **Costs, Charges and Expenses** on account of such **Claim**, notwithstanding any prior advancement to the contrary. Any allocation or advancement of **Costs, Charges and Expenses** on account of a **Claim** shall not apply to or create any presumption with respect to the allocation of other **Loss** on account of such **Claim** or any other **Claim**.

# Underwritten by National Casualty Company

A Stock Insurance Company, herein called the **Insurer**

# BUSINESS AND MANAGEMENT INDEMNITY POLICY - NON-PROFIT ORGANIZATIONS

## INSURED PERSON AND ORGANIZATION COVERAGE SECTION

In consideration of the payment of premium, in reliance on the **Application** and subject to the Declarations, and terms and conditions of this **Policy**, the **Insurer** and the **Insureds** agree as follows:

A. **INSURING CLAUSE**

**Insurer** shall pay the **Loss** of the **Insureds** which the **Insureds** have become legally obligated to pay by reason of a **Claim** first made against the **Insureds** during the **Policy Period** or, if elected, the **Extended Period**, and reported to the **Insurer** pursuant to Section E.1. herein, for any **Wrongful Act** taking place prior to the end of the **Policy Period**.

B. **DEFINITIONS**

1. **Claim** means:

   a. a written demand against any **Insured** for monetary damages or non-monetary or injunctive relief;

   b. a civil proceeding against any **Insured** seeking monetary damages or non-monetary or injunctive relief, commenced by the service of a complaint or similar pleading;

   c. a criminal proceeding against any **Insured**, commenced by a return of an indictment or similar document, or receipt or filing of a notice of charges;

   d. an arbitration proceeding against any **Insured** seeking monetary damages or non-monetary or injunctive relief; or

   e. a civil, administrative or regulatory proceeding or a formal governmental investigation against any **Insured** commenced by the filing of a notice of charges, investigative order or similar document.

2. **Continuity Date** means the date set forth in Item 3. of the Declarations relating to this Coverage Section.

3. **Costs, Charges and Expenses** means reasonable and necessary legal costs, charges, fees and expenses incurred by any of the **Insureds** in defending **Claims** and the premium for appeal, attachment or similar bonds arising out of covered judgments, but with no obligation to furnish such bonds and only for the amount of such judgment that is up to the applicable Limit of Liability. **Costs, Charges and Expenses** do not include salaries, wages, fees, overhead or benefit expenses of or associated with officers or employees of the **Organization**.

4. **Insured Persons** means all persons who were, now are or shall become:

   a. a director, officer, trustee, volunteer, committee member or employee of the **Organization**; and

   b. the functional equivalent of a director, officer, trustee, volunteer, committee member or employee in the event the **Organization** is incorporated or domiciled outside the United States.

5. **Insureds** mean the **Organization** and the **Insured Persons**.

6. **Interrelated Wrongful Acts** means all **Wrongful Acts** that have as a common nexus any fact, circumstance, situation, event, transaction, cause or series of facts, circumstances, situations, events, transactions or causes.

7. **Loss** means damages, judgments, settlements, pre-judgment or post-judgment interest awarded by a court, and **Costs, Charges and Expenses** incurred by any of the **Insureds**.

Loss does not include:

  a. taxes, fines or penalties;

  b. matters uninsurable under the laws pursuant to which this **Policy** is construed;

  c. punitive or exemplary damages, or the multiple portion of any multiplied damage award, except to the extent that such punitive or exemplary damages, or the multiple portion of any multiplied damage award are insurable under the internal laws of any jurisdiction which most favors coverage for such damages and which has a substantial relationship to the **Insureds**, **Insurer**, this **Policy** or the **Claim** giving rise to such damages;

  d. the cost of any remedial, preventative or other non-monetary relief, including without limitation any costs associated with compliance with any such relief of any kind or nature imposed by any judgment, settlement or governmental authority;

  e. any amount for which the **Insured** is not financially liable or legally obligated to pay;

  f. the costs to modify or adapt any building or property to be accessible or accommodating or more accessible or accommodating, to any disabled person; or

  g. any amounts owed or paid under any written or express contract or agreement.

8. **Personal Injury Act** means false arrest, wrongful detention or imprisonment, malicious prosecution, invasion of privacy, or wrongful entry or eviction.

9. **Publisher Liability Act** means defamation, infringement of copyright or trademark, unauthorized use of title, plagiarism or misappropriation of ideas.

10. **Wrongful Act** means any actual or alleged error, omission, misleading statement, misstatement, neglect, breach of duty or act, **Publisher Liability Act** or **Personal Injury Act** allegedly committed or attempted by any **Insured**, while acting in their capacity as such, or any matter claimed against any **Insured Persons** solely by reason of his or her serving in such capacity.

## C. **EXCLUSIONS**

**Insurer** shall not be liable for **Loss** under this Coverage Section on account of any **Claim**:

1. for actual or alleged bodily injury, sickness, disease, death, assault, battery, mental anguish, emotional distress, or damage to or destruction of any tangible or intangible property including loss of use thereof, whether or not such property is physically injured;

2. alleging, based upon, arising out of, attributable to, directly or indirectly resulting from, in consequence of, or in any way involving:

   a. any **Wrongful Act**, fact, circumstance or situation which has been the subject of any written notice given under any other policy of which this **Policy** is a renewal or replacement or which it succeeds in time; or

   b. any other **Wrongful Act**, whenever occurring, which together with a **Wrongful Act** which has been the subject of such prior notice, would constitute **Interrelated Wrongful Acts**;

3. alleging, based upon, arising out of, attributable to, directly or indirectly resulting from, in consequence of, or in any way involving:

   a. the actual, alleged or threatened discharge, dispersal, release, escape, seepage, migration or disposal of **Pollutants**; or

   b. any direction or request that any **Insured** test for, monitor, clean up, remove, contain, treat, detoxify or neutralize **Pollutants**, or any voluntary decision to do so;

For purposes of this exclusion, **Pollutants** means any substance exhibiting any hazardous characteristics as defined by, or identified on, a list of hazardous substances issued by the United States Environmental Protection Agency or any federal, state, county, municipal or local counterpart thereof or any foreign equivalent. Such substances shall include, without limitation, solids, liquids, gaseous, biological, bacterial or thermal irritants, contaminants or smoke, vapor, soot, fumes, acids, alkalis, chemicals or waste materials (including materials to be reconditioned, recycled or reclaimed). **Pollutants** shall also mean any other air emission or particulate, odor, waste water, oil or oil products, infectious or medical waste, asbestos or asbestos products, noise, fungus (including mold or mildew

and any phytotoxins, spores, scents or byproducts produced or released by fungi, but does not include any fungi intended by the **Insured** for consumption) and electric or magnetic or electromagnetic field;

4. for any actual or alleged violation of the responsibilities, obligations or duties imposed by Employee Retirement Income Security Act of 1974, as amended, or any rules or regulations promulgated thereunder, or similar provisions of any federal, state or local statutory or common law;

5. brought or maintained by, on behalf of, in the right of, or at the direction of any **Insured** in any capacity, unless such **Claim**:

   a. is brought derivatively on behalf of the **Organization** and is instigated and continued totally independent of, and totally without the solicitation, assistance, active participation of, or intervention of, any **Insured**;

   b. is brought or maintained by any **Insured** in the form of a cross-claim, third-party claim or other proceeding for contribution or indemnity which is part of, and directly results from a **Claim** that is covered by this Coverage Section; or

   c. is brought or maintained by any bankruptcy trustee or bankruptcy appointed representative of the **Organization**;

6. alleging, based upon, arising out of, attributable to, directly or indirectly resulting from, in consequence of, or in any way involving:

   a. any dishonest, deliberately fraudulent or criminal act of any **Insured**; provided, however this exclusion 6.a. shall not apply unless and until there is a final judgment against such **Insured** as to such conduct; or

   b. the gaining of any profit, remuneration or financial advantage to which any **Insured Person** was not legally entitled; provided, however, that this exclusion 6.b. shall not apply unless and until there is a final judgment against such **Insured Person** as to such conduct;

   when this exclusion applies, the **Insured** shall reimburse the **Insurer** for any **Costs, Charges or Expenses** advanced;

7. for the return by any of the **Insured Person** of any remuneration paid to them without the previous approval of the appropriate governing body of the **Organization**, which payment without such previous approval shall be held to be in violation of law;

8. against any of the **Insured Person** of any **Subsidiary** or against any **Subsidiary** alleging, based upon, arising out of, attributable to, directly or indirectly resulting from, in consequence of, or in any way involving any **Wrongful Act** actually or allegedly committed or attempted by a **Subsidiary** or **Insured Person** thereof:

   a. before the date such entity became a **Subsidiary** or after the date such entity ceased to be a **Subsidiary**; or

   b. occurring while such entity was a **Subsidiary** which, together with a **Wrongful Act** occurring before the date such entity became a **Subsidiary**, would constitute **Interrelated Wrongful Acts**;

9. alleging, based upon, arising out of, attributable to, directly or indirectly resulting from, in consequence of, or in any way involving any **Wrongful Act** actually or allegedly committed subsequent to a **Takeover**;

10. for a **Wrongful Act** actually or allegedly committed or attempted by any of the **Insured Person** in his or her capacity as a director, officer, trustee, manager, member of the board of managers or equivalent executive of a limited liability Organization or employee of, or independent contractor for or in any other capacity or position with any entity other than the **Organization**;

11. alleging, based upon, arising out of, attributable to, directly or indirectly resulting from, in consequence of, or in any way involving:

   a. any prior or pending litigation or administrative or regulatory proceeding, demand letter or formal or informal governmental investigation or inquiry filed or pending on or before the **Continuity Date**; or

   b. any fact, circumstance, situation, transaction or event underlying or alleged in such litigation or administrative or regulatory proceeding, demand letter or formal or informal governmental

12. alleging, based upon, arising out of, attributable to, directly or indirectly resulting from, in consequence of, or in any way involving, any **Wrongful Act**, fact, circumstance or situation which any of the **Insureds** had knowledge of prior to the **Continuity Date** where such **Insureds** had reason to believe at the time that such known **Wrongful Act** could reasonably be expected to give rise to such **Claim**;

13. alleging, based upon, arising out of, attributable to, directly or indirectly resulting from, in consequence of, or in any way involving any employment or employment–related matters brought by or on behalf of or on the right of an applicant for employment with the **Organization** or any **Insured Person**;

14. alleging, based upon, arising out of, attributable to, directly or indirectly resulting from, in consequence of, or in any way involving the actual or alleged breach of any contract or agreement; provided, however, this exclusion shall not apply to **Costs, Charges and Expenses**; or

15. for that portion of **Loss** which is covered under any other Coverage Section of this **Policy**.

No **Wrongful Act** of one or more **Insureds** shall be imputed to any other **Insureds** for the purpose of determining the applicability of any of the above exclusions.

## D. LIMIT OF LIABILITY AND RETENTIONS

1. The liability of the **Insurer** shall apply only to that part of **Loss**, which is excess of the Retention amounts applicable to this Coverage Section, as shown in Item 3. of the Declarations. Such Retentions shall be borne uninsured by the **Insureds** and at their own risk. If different parts of a single **Claim** are subject to different applicable Retentions under this Coverage Section, the applicable Retentions will be applied separately to each part of such **Loss**, but the sum of such Retentions shall not exceed the largest applicable Retention.

2. The amount shown in Item 3. of the Declarations relating to this Coverage Section shall be the maximum aggregate Limit of Liability of **Insurer** under this Coverage Section.

3. All **Claims** arising out of the same **Wrongful Act** and all **Interrelated Wrongful Acts** shall be deemed to constitute a single **Claim** and shall be deemed to have been made at the earliest of the following times, regardless of whether such date is before or during the **Policy Period**:

   a. the time at which the earliest **Claim** involving the same **Wrongful Act** or **Interrelated Wrongful Act** is first made; or

   b. the time at which the **Claim** involving the same **Wrongful Act** or **Interrelated Wrongful Acts** shall be deemed to have been made pursuant to Section E.2., below.

4. Payments of **Loss**, other than **Costs, Charges and Expenses** by **Insurer** shall reduce the Limit of Liability under this Coverage Section. **Costs, Charges and Expenses** are not part of and are in addition to the Limit of Liability. Payment of **Costs, Charges and Expenses** by the **Insurer** does not reduce the Limit of Liability. If such Limit of Liability is exhausted, the obligations of the **Insurer** under this Coverage Section are completely fulfilled and extinguished.

## E. NOTIFICATION

1. The **Insureds** shall, as a condition precedent to their rights to payment under this Coverage Section only, give **Insurer** written notice of any **Claim** as soon as practicable, but in no event later than sixty (60) days after the end of the **Policy Period**. If any **Claim** is first made against the **Insureds** during the **Extended Period**, if purchased, written notice to **Insurer** must be given as soon as practicable, but in no event later than sixty (60) days after the end of the **Extended Period**.

2. If, during the **Policy Period** or the **Discovery Period**, if purchased, any of the **Insureds** first becomes aware of a specific **Wrongful Act** which may reasonably give rise to a future **Claim** covered under this **Policy**, and if the **Insureds**, during the **Policy Period** or the **Discovery Period**, if purchased, give written notice to **Insurer** as soon as practicable of:

   a. a description of the **Wrongful Act** allegations anticipated;

   b. the identity of the potential claimants;

   c. the circumstances by which the **Insureds** first became aware of the **Wrongful Act**;

the identity of the **Insureds** allegedly involved;

    e. the consequences which have resulted or may result; and

    f. the nature of the potential monetary damages and non-monetary relief;

then any **Claim** made subsequently arising out of such **Wrongful Act** shall be deemed for the purposes of this Coverage Section to have been made at the time such notice was received by the **Insurer**. No coverage is provided for fees, expenses and other costs incurred prior to the time such **Wrongful Act** results in a **Claim**.

3. Notice to **Insurer** shall be given to the address shown under Item 8. of the Declarations for this **Policy**.

## F. SETTLEMENT AND DEFENSE

1. It shall be the duty of the **Insurer** and not the duty of the **Insureds** to defend any **Claim**. Such duty shall exist even if any of the allegations are groundless, false or fraudulent. The **Insurer's** duty to defend any **Claim** shall cease when the Limit of Liability has been exhausted.

2. The **Insurer** may make any investigation it deems necessary, and shall have the right to settle any **Claim**; provided, however, no settlement shall be made without the consent of the **Parent Company**, such consent not to be unreasonably withheld.

3. The **Insureds** agree not to settle or offer to settle any **Claim**, incur any **Costs, Charges and Expenses** or otherwise assume any contractual obligation or admit any liability with respect to any **Claim** without the prior written consent of the **Insurer**, such consent not to be unreasonably withheld. The **Insurer** shall not be liable for any settlement, **Costs, Charges and Expenses**, assumed obligation or admission to which it has not consented. The **Insureds** shall promptly send to the **Insurer** all settlement demands or offers received by any **Insured** from the claimant(s).

4. The **Insureds** agree to provide the **Insurer** with all information, assistance and cooperation which the **Insurer** reasonably requests and agree that, in the event of a **Claim**, the **Insureds** will do nothing that shall prejudice the position of the **Insurer** or its potential or actual rights of recovery.

## G. OTHER INSURANCE

If any **Loss** covered under this Coverage Section is covered under any other valid and collectible insurance, then this **Policy** shall cover the **Loss**, subject to its terms and conditions, only to the extent that the amount of the **Loss** is in excess of the amount of such other insurance whether such other insurance is stated to be primary, contributory, excess, contingent or otherwise, unless such other insurance is written only as specific excess insurance over the Limit of Liability for this Coverage Section.

| National Casualty Company | | | | Endorsement No.<br>1 |
|---|---|---|---|---|
| **Attached To And Forming Part of Policy Number** | **Endorsement Effective Date (12:01 A.M. Standard Time)** | **Named Insured** | | **Agent No.** |
| EKO3437316 | 07/31/2022 | Price Tower Arts Center Inc | | 29406 |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**ADVISORY BOARD EXTENSION**

This endorsement modifies insurance provided under the following:

**INSURED PERSON AND ORGANIZATION COVERAGE SECTION**

The following is added to Section **B. DEFINITIONS**, subsection **4.**:

    **Insured Persons** means all persons who were, now are or shall become:

        members of the Advisory Board of the Organization.

**All other terms and conditions of this Policy remain unchanged.**

| **National Casualty Company** | | | Endorsement No. 2 | |
|---|---|---|---|---|
| **Attached To And Forming Part of Policy Number** | **Endorsement Effective Date (12:01 A.M. Standard Time)** | **Named Insured** | | **Agent No.** |
| EKO3437316 | 07/31/2022 | Price Tower Arts Center Inc | | 29406 |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**ALLOCATION PROVISION**

This endorsement modifies insurance provided under the following:

**GENERAL TERMS AND CONDITIONS COVERAGE SECTION**

The following Section P., **ALLOCATION**, is added to the General Terms and Conditions Section.

P. **ALLOCATION**

1. In the event the **Insurer** has the duty to defend a **Claim** under any Coverage Section in which both **Loss** that is covered by the applicable Coverage Section and loss which is not covered by the applicable Coverage Section is incurred, either because such **Claim** includes both covered and uncovered matters or because such **Claim** is made against both covered and uncovered parties, then:

    a. this **Policy** shall pay one hundred percent (100%) of **Costs, Charges and Expenses** incurred by such **Insured** on account of such **Claim**; and

    b. there shall be a fair and equitable allocation of any remaining loss incurred by such **Insured** on account of such **Claim** between covered **Loss** and uncovered loss based upon the relative legal and financial exposures and the relative benefits obtained.

2. In the event the **Insured** has the duty to defend a **Claim** under any Coverage Section in which both **Loss** that is covered by the applicable Coverage Section and loss which is not covered by the applicable Coverage Section is incurred, either because such **Claim** includes both covered and uncovered matters or because such **Claim** is made against both covered and uncovered parties, then the **Insured** and the **Insurer** shall use their best efforts to determine a fair and proper allocation as between such insured and uninsured loss, taking into account the relative legal and financial exposures and the relative benefits obtained.

All other terms and conditions of this **Policy** remain unchanged.

| National Casualty Company | | | | Endorsement No. 3 |
|---|---|---|---|---|
| Attached To And Forming Part of Policy Number | Endorsement Effective Date (12:01 A.M. Standard Time) | Named Insured | | Agent No. |
| EKO3437316 | 07/31/2022 | Price Tower Arts Center Inc | | 29406 |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**AMEND CONDUCT EXCLUSION**

This endorsement modifies insurance provided under the following:

**INSURED PERSON AND ORGANIZATION COVERAGE SECTION**

In consideration of the premium paid, it is agreed that section C., **EXCLUSIONS**, subsection 6. is deleted in its entirety and replaced by the following:

6. alleging, based upon, arising out of, attributable to, directly or indirectly resulting from, in consequence of, or in any way involving:

   a. any dishonest, deliberately criminal or fraudulent act committed by an **Insured**, if established by a final non-appealable adjudication in the underlying action or proceeding; or

   b. any personal profit, remuneration or other financial advantage gained by an **Insured Person** to which such **Insured Person** is not legally entitled, if established by a final non-appealable adjudication in the underlying action or proceeding.

   When 6.a. or 6.b. applies, the **Insured** shall reimburse the **Insurer** for any **Costs, Charges or Expenses**.

All other terms and conditions of this **Policy** remain unchanged.

# National Casualty Company

| | | | Endorsement No. 4 |
|---|---|---|---|
| **Attached To And Forming Part of Policy Number** | **Endorsement Effective Date (12:01 A.M. Standard Time)** | **Named Insured** | **Agent No.** |
| EKO3437316 | 07/31/2022 | Price Tower Arts Center Inc | 29406 |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**AMEND CONDUCT EXCLUSION-FOREIGN JURISDICTION**

In consideration of the premium paid, it is agreed that this endorsement modifies insurance provided under the following:

**INSURED PERSON AND ORGANIZATION COVERAGE SECTION**

Section C., **EXCLUSIONS**, subsection 6. is deleted in its entirety and replaced by the following:

- alleging, based upon, arising out of, attributable to, directly or indirectly resulting from, in consequence of, or in any way involving:

    a. any dishonest, deliberately fraudulent or criminal act of an **Insured**; or

    b. the gaining of any profit, remuneration or financial advantage to which any **Insured Persons** were not legally entitled;

    if established by a final, non-appealable adjudication in such **Claim** or a guilty plea or other written admission under oath by such **Insured**;

    provided, however, exclusion a. shall not apply to any such **Claim** for a criminal act made in a jurisdiction outside the United States, unless and to the extent, such criminal act under such foreign jurisdiction would be considered a criminal act under any federal, state or local law or act within any jurisdiction in the United States;

    When a. or b. apply, the **Insured** shall reimburse the **Insurer** for any **Costs, Charges or Expenses**;

All other terms and conditions of this **Policy** remain unchanged.

# National Casualty Company

| | | | Endorsement No. 5 |
|---|---|---|---|
| **Attached To And Forming Part of Policy Number** | **Endorsement Effective Date (12:01 A.M. Standard Time)** | **Named Insured** | **Agent No.** |
| EKO3437316 | 07/31/2022 | Price Tower Arts Center Inc | 29406 |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**AMEND DEFINITION OF INSURED PERSON-LEASED/CONTRACTED EMPLOYEES**

This endorsement modifies insurance provided under the following:

**INSURED PERSON AND ORGANIZATION COVERAGE SECTION**

The following is added to Section B., **DEFINITIONS**, subsection 4.:

**Insured Person** means any person who was, now is, or shall become:

any natural person who is a leased employee or is contracted to perform work for the **Organization**, or is an independent contractor for the **Organization**, but only to the extent such individual performs work or services for or on behalf of the **Organization**.

All other terms and conditions of this **Policy** remain unchanged.

| **National Casualty Company** | | | | Endorsement No. 6 |
|---|---|---|---|---|
| **Attached To And Forming Part of Policy Number** | **Endorsement Effective Date (12:01 A.M. Standard Time)** | **Named Insured** | | **Agent No.** |
| EKO3437316 | 07/31/2022 | Price Tower Arts Center Inc | | 29406 |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**AMEND DEFINITION OF THIRD PARTY ENDORSEMENT**

In consideration of the premium paid, it is agreed that this endorsement modifies insurance provided under the following:

**EMPLOYMENT PRACTICES COVERAGE SECTION**

Section B., **DEFINITIONS**, subsection 12. is deleted and replaced by the following:

12. **Third-Party** means any customer, client, or other natural person other than an **Employee** or applicant for employment with the **Organization**.

All other terms and conditions of this **Policy** remain unchanged.

| **National Casualty Company** | | | | Endorsement No. 7 |
|---|---|---|---|---|
| **Attached To And Forming Part of Policy Number** | **Endorsement Effective Date (12:01 A.M. Standard Time)** | **Named Insured** | | **Agent No.** |
| EKO3437316 | 07/31/2022 | Price Tower Arts Center Inc | | 29406 |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**AMEND DISCOVERY ELECTION - 90 DAYS**

This endorsement modifies insurance provided under the following:

**GENERAL TERMS AND CONDITIONS**

Section H., **DISCOVERY PERIOD**, subsection 2., is replaced by:

2. As a condition precedent to the right to purchase the **Discovery Period** set forth in subsection H.1. above, the total premium for the **Policy** must have been paid. Such right to purchase the **Discovery Period** shall terminate unless written notice, together with full payment of the premium for the **Discovery Period**, is received by **Insurer** within ninety (90) days after the effective date of cancellation, or, in the event of a refusal to renew, within ninety (90) days after the **Policy** expiration date. If such notice and premium payment is not so given to **Insurer**, there shall be no right to purchase the **Discovery Period**.

All other terms and conditions of this **Policy** remain unchanged.

# National Casualty Company

**Endorsement No. 8**

| Attached To And Forming Part of Policy Number | Endorsement Effective Date (12:01 A.M. Standard Time) | Named Insured | Agent No. |
|---|---|---|---|
| EKO3437316 | 07/31/2022 | Price Tower Arts Center Inc | 29406 |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**AMEND INSURED VERSUS INSURED EXCLUSION**

This endorsement modifies insurance provided under the following:

**INSURED PERSON AND ORGANIZATION COVERAGE SECTION**

Section C., **EXCLUSIONS**, subsection 5., is amended by adding the following:

is brought or maintained by any former director or officer of the **Organization** and where such **Claim** is solely based upon and arising out of **Wrongful Acts** committed subsequent to the date such director or officer ceased to be a director or officer of the **Organization** and where such **Claim** is first made two (2) years subsequent to the date such director or officer ceased to be a director or officer of the **Organization**.

All other terms and conditions of this **Policy** remain unchanged.

| National Casualty Company | | | | Endorsement No. 9 |
|---|---|---|---|---|
| Attached To And Forming Part of Policy Number | Endorsement Effective Date (12:01 A.M. Standard Time) | Named Insured | | Agent No. |
| EKO3437316 | 07/31/2022 | Price Tower Arts Center Inc | | 29406 |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**AMEND NOTICE OF CIRCUMSTANCES**

This endorsement modifies insurance provided under the following:

**EMPLOYMENT PRACTICES COVERAGE SECTION**

Section E., **NOTIFICATION**, subsection 2. is replaced by:

2. If during the **Policy Period** or the **Discovery Period**, if purchased, any of the **Insureds** first become aware of specific facts or circumstances which may reasonably give rise to a future **Claim** covered under this **Policy**, and if the **Insureds**, during the **Policy Period** or the **Discovery Period**, if purchased, give written notice to **Insurer** as soon as practicable of:

   a. a description of the facts, circumstances, or allegations anticipated;

   b. the identity of potential claimants;

   c. the circumstances by which the **Insureds** first became aware of the facts or circumstances;

   d. the identity of the **Insureds** allegedly involved;

   e. the consequences which have resulted or may result; and

   f. the nature of the potential monetary damages and non-monetary relief;

then any **Claim** made subsequently arising out of such facts or circumstances shall be deemed for the purposes of this Coverage Section to have been made at the time such notices was received by the **Insurer**. No coverage is provided for fees, expenses and other costs incurred prior to the time such facts or circumstances results in a **Claim**.

All other terms and conditions of this **Policy** remain unchanged.

| National Casualty Company | | | Endorsement No. 10 | |
|---|---|---|---|---|
| **Attached To And Forming Part of Policy Number** | **Endorsement Effective Date (12:01 A.M. Standard Time)** | **Named Insured** | | **Agent No.** |
| EKO3437316 | 07/31/2022 | Price Tower Arts Center Inc | | 29406 |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**AMEND NOTICE OF CIRCUMSTANCES**

This endorsement modifies insurance provided under the following:

**INSURED PERSON AND ORGANIZATION COVERAGE SECTION**

Section E., **NOTIFICATION**, subsection 2. is replaced by:

2. If during the **Policy Period** or the **Discovery Period**, if purchased, any of the **Insureds** first become aware of specific facts or circumstances which may reasonably give rise to a future **Claim** covered under this **Policy**, and if the **Insureds**, during the **Policy Period** or the **Discovery Period**, if purchased, give written notice to **Insurer** as soon as practicable of:

   a. a description of the facts, circumstances, or allegations anticipated;

   b. the identity of potential claimants;

   c. the circumstances by which the **Insureds** first became aware of the facts or circumstances;

   d. the identity of the **Insureds** allegedly involved;

   e. the consequences which have resulted or may result; and

   f. the nature of the potential monetary damages and non-monetary relief;

then any **Claim** made subsequently arising out of such facts or circumstances shall be deemed for the purposes of this Coverage Section to have been made at the time such notices was received by the **Insurer**. No coverage is provided for fees, expenses and other costs incurred prior to the time such facts or circumstances results in a **Claim**.

All other terms and conditions of this **Policy** remain unchanged.

# National Casualty Company

| | | | Endorsement No. 11 |
|---|---|---|---|
| **Attached To And Forming Part of Policy Number** | **Endorsement Effective Date (12:01 A.M. Standard Time)** | **Named Insured** | **Agent No.** |
| EKO3437316 | 07/31/2022 | Price Tower Arts Center Inc | 29406 |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**AMEND NOTICE PROVISION - EPL**

This endorsement modifies insurance provided under the following:

**EMPLOYMENT PRACTICES COVERAGE SECTION**

The following is added to Section **E. NOTIFICATION**:

A **Claim** shall be deemed to have been first made against the **Insureds** on the date an **Insured** who is an executive officer, or a director, trustee, general counsel or human resources director (or equivalent positions) of any **Organization** becomes aware of such **Claim**.

**All other terms and conditions of this Policy remain unchanged.**

| National Casualty Company | | | | Endorsement No. 12 |
|---|---|---|---|---|
| **Attached To And Forming Part of Policy Number** | **Endorsement Effective Date (12:01 A.M. Standard Time)** | | **Named Insured** | **Agent No.** |
| EKO3437316 | 07/31/2022 | | Price Tower Arts Center Inc | 29406 |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**AMEND NOTICE PROVISION - INSURED PERSON AND ORGANIZATION**

This endorsement modifies insurance provided under the following:

**INSURED PERSON AND ORGANIZATION COVERAGE SECTION**

The following is added to Section **E. NOTIFICATION**:

A **Claim** shall be deemed to have been first made against the **Insureds** on the date an **Insured** who is an executive officer, or a director, trustee, or general counsel (or equivalent position) of any **Organization** becomes aware of such **Claim**.

**All other terms and conditions of this Policy remain unchanged.**

| **National Casualty Company** | | | | Endorsement No.<br>13 |
|---|---|---|---|---|
| **Attached To And Forming Part of Policy Number** | **Endorsement Effective Date (12:01 A.M. Standard Time)** | **Named Insured** | | **Agent No.** |
| EKO3437316 | 07/31/2022 | Price Tower Arts Center Inc | | 29406 |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**AMEND NOTICE PROVISION 60 DAYS – EPL**

This endorsement modifies insurance provided under the following:

**EMPLOYMENT PRACTICES COVERAGE SECTION**

Section E., **NOTIFICATION**, subsection 1. is replaced by:

The **Insureds** shall, as a condition precedent to their rights to payment under this Coverage Section only, give **Insurer** written notice of any **Claim** as soon as practicable, but in no event later than sixty (60) days after the end of the **Policy Period**. If any **Claim** is first made against the **Insureds** during the **Extended Period**, if purchased, written notice to **Insurer** must be given as soon as practicable, but in no event later than sixty (60) days after the end of the **Extended Period**.

All other terms and conditions of this **Policy** remain unchanged.

| National Casualty Company | | | | Endorsement No. 14 |
|---|---|---|---|---|
| Attached To And Forming Part of Policy Number | Endorsement Effective Date (12:01 A.M. Standard Time) | Named Insured | | Agent No. |
| EKO3437316 | 07/31/2022 | Price Tower Arts Center Inc | | 29406 |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**AMEND OTHER INSURANCE TO BE PRIMARY**

This endorsement modifies insurance provided under the following:

**INSURED PERSON AND ORGANIZATION COVERAGE SECTION**

Section G., **OTHER INSURANCE**, is replaced by:

G. **OTHER INSURANCE**

For any **Claim**, if any **Loss** covered under this Coverage Section is covered under any other valid and collectable insurance, then this **Policy** shall be primary insurance, unless expressly written to be excess over other applicable insurance.

All other terms and conditions of this **Policy** remain unchanged.

| National Casualty Company | | | | Endorsement No. 15 |
|---|---|---|---|---|
| **Attached To And Forming Part of Policy Number** | **Endorsement Effective Date (12:01 A.M. Standard Time)** | **Named Insured** | | **Agent No.** |
| EKO3437316 | 07/31/2022 | Price Tower Arts Center Inc | | 29406 |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**AMEND SUBROGATION PROVISION - FINAL JUDGMENT**

This endorsement modifies insurance provided under the following:

**GENERAL TERMS AND CONDITIONS SECTION**

Section M., **ASSISTANCE, COOPERATION AND SUBROGATION**, is deleted in its entirety and replaced by the following:

M. **ASSISTANCE, COOPERATION AND SUBROGATION**

The **Insureds** agree to provide **Insurer** with such information, assistance and cooperation as **Insurer** reasonably may request, and they further agree that they shall not take any action which in any way increases **Insurer's** exposure under this **Policy**. In the event of any payments under this **Policy, Insurer** shall be subrogated to the extent of such payment to all of the **Insureds'** rights of recovery against any person or entity. The **Insureds** shall execute all papers required and shall do everything that may be necessary to secure and preserve such rights, including the execution of such documents as are necessary to enable **Insurer** effectively to bring suit or otherwise pursue subrogation in the name of the **Insureds**, and shall provide all other assistance and cooperation which **Insurer** may reasonably require. In no event, however, shall the **Insurer** exercise its right of subrogation against an **Insured** under this **Policy** unless such **Insured** has been convicted of a deliberate criminal act; or has committed a deliberate fraudulent act, if a final judgment establishes that such deliberate fraudulent act was committed; or has obtained any profit or advantage to which a final judgment establishes the **Insured** was not legally entitled.

All other terms and conditions of this **Policy** remain unchanged.

| National Casualty Company | | | | Endorsement No. 16 |
|---|---|---|---|---|
| **Attached To And Forming Part of Policy Number** | **Endorsement Effective Date (12:01 A.M. Standard Time)** | **Named Insured** | | **Agent No.** |
| EKO3437316 | 07/31/2022 | Price Tower Arts Center Inc | | 29406 |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**AMEND WARRANTY PROVISION - NON-RESCINDABLE COVERAGE**

This endorsement modifies insurance provided under the following:

**GENERAL TERMS AND CONDITIONS**

Under Section **D. WARRANTY**, paragraph **2.** is replaced by:

2. In the event the **Application**, including materials submitted or required to be submitted therewith, contains any misrepresentation or omission made with the intent to deceive, or contains any misrepresentation or omission which materially affects either the acceptance of the risk or the hazard assumed by the **Insurer** under this **Policy**, this **Policy**, including each and all Coverage Sections, shall not afford coverage to the following **Insureds** for any **Claim** alleging, based upon, arising out of, attributable to, directly or indirectly resulting from, in consequence of, or in any way involving, any untruthful or inaccurate statements, representations or information:

   a. any **Insured** who is a natural person and who knew the facts misrepresented or the omissions, whether or not such individual knew of the **Application**, such materials, or this **Policy**;

   b. any **Organization** or **Sponsor Organization** to the extent it indemnifies any **Insured** referred to in subsection a. above; and

   c. any **Organization**, **Sponsor Organization**, **Plan**, or any other entity that is an **Insured**, if any past or present chief executive officer, chief financial officer, general counsel, risk manager or human resources director (or equivalent positions) of the **Parent Organization** knew the facts misrepresented or the omissions, whether or not such individual knew of the **Application**, such materials, or this **Policy**.

With respect to any statement, representation or information contained in the **Application**, or in the materials submitted or required to be submitted therewith, and solely with respect to the above exclusion, no knowledge possessed by any **Insured** who is a natural person shall be imputed to any other **Insured** who is a natural person.

The following condition is added:

**NON-RESCINDABLE**

The **Insurer** shall not be entitled under any circumstances to rescind any Coverage Section of this **Policy** with respect to any **Insured**. Nothing contained in this section shall limit or waive any other rights or remedies available to the **Insurer**.

The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.

**All other terms and conditions of this Policy remain unchanged.**

# National Casualty Company

| | | | Endorsement No. 17 |
|---|---|---|---|
| **Attached To And Forming Part of Policy Number** | **Endorsement Effective Date (12:01 A.M. Standard Time)** | **Named Insured** | **Agent No.** |
| EKO3437316 | 07/31/2022 | Price Tower Arts Center Inc | 29406 |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**AMENDED INSURED PERSONS VERSUS ORGANIZATION**

In consideration of the premium paid, it is agreed that this endorsement modifies insurance provided under the following:

**INSURED PERSON AND ORGANIZATION COVERAGE SECTION**

Section C., **EXCLUSIONS**, subsection 5. is deleted in its entirety and replaced with the following:

5. brought or maintained by, on behalf of, in the right of, or at the direction of the **Organization** in any capacity, unless such **Claim**:

   a. is brought derivatively on behalf of such **Organization** and is instigated and continued totally independent of, and totally without the solicitation, assistance, active participation of, or intervention of, any **Insured**; or

   b. is brought or maintained by any **Insured** in the form of a cross-claim, third-party claim or other proceeding for contribution or indemnity which is part of, and directly results from a **Claim** that is covered by this Coverage Section;

All other terms and conditions of this **Policy** remain unchanged.

| National Casualty Company | | | | Endorsement No. 18 |
|---|---|---|---|---|
| Attached To And Forming Part of Policy Number | Endorsement Effective Date (12:01 A.M. Standard Time) | Named Insured | | Agent No. |
| EKO3437316 | 07/31/2022 | Price Tower Arts Center Inc | | 29406 |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**AMENDED INSURED VERSUS INSURED EXCLUSION – FOREIGN JURISDICTION**

This endorsement modifies insurance provided under the following:

**INSURED PERSON AND ORGANIZATION COVERAGE SECTION**

Section C., **EXCLUSIONS**, is amended by adding the following to subsection 5.:

is brought or maintained in a jurisdiction outside the United States of America, Canada or Australia by any **Insured Persons** of the **Organization** solely where such **Organization** is domiciled or chartered in such foreign jurisdiction;

All other terms and conditions of this **Policy** remain unchanged.

EK-814 (05/09)

Page 1 of 1

| National Casualty Company | | | | Endorsement No. 19 |
|---|---|---|---|---|
| Attached To And Forming Part of Policy Number | Endorsement Effective Date (12:01 A.M. Standard Time) | Named Insured | | Agent No. |
| EKO3437316 | 07/31/2022 | Price Tower Arts Center Inc | | 29406 |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**AMENDED INSURED VERSUS INSURED EXCLUSION WHISTLEBLOWER CARVEBACK**

This endorsement modifies insurance provided under the following:

**INSURED PERSON AND ORGANIZATION COVERAGE SECTION**

The following is added to Section C., **EXCLUSIONS**, subsection 5.:

- is brought or maintained by an employee of the **Organization** who is not or was not a director or officer of the **Organization**, including any such **Claim** brought or maintained under the Federal False Claims Act or any similar federal, state, local or foreign "whistleblower" law or "whistleblower" provision of any law.

All other terms and conditions of this **Policy** remain unchanged.

| National Casualty Company | | | Endorsement No. 20 | |
|---|---|---|---|---|
| **Attached To And Forming Part of Policy Number** | **Endorsement Effective Date (12:01 A.M. Standard Time)** | **Named Insured** | | **Agent No.** |
| EKO3437316 | 07/31/2022 | Price Tower Arts Center Inc | | 29406 |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**AMENDED INSURED VERSUS INSURED EXCLUSION WITH CREDITOR COMMITTEE CARVEBACK**

This endorsement modifies insurance provided under the following:

**INSURED PERSON AND ORGANIZATION COVERAGE SECTION**

Section C.,**EXCLUSIONS**, subsection 5., is amended by adding the following:

• is brought or maintained by any bankruptcy trustee or bankruptcy appointed representative of the **Organization**, or creditors committee of the **Organization**, or any assignee thereof;

All other terms and conditions of this **Policy** remain unchanged.

| National Casualty Company | | | Endorsement No. 21 |
|---|---|---|---|
| **Attached To And Forming Part of Policy Number** | **Endorsement Effective Date (12:01 A.M. Standard Time)** | **Named Insured** | **Agent No.** |
| EKO3437316 | 07/31/2022 | Price Tower Arts Center Inc | 29406 |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM**

It is agreed that the Limit(s) of Liability section is amended by adding the following: Notwithstanding anything in this policy to the contrary, if aggregate Insured losses attributable to terrorist acts certified under the federal Terrorism Risk Insurance Act exceed $100 billion in a calendar year and the Insurer has met its deductible under the Terrorism Risk Insurance Act, the Insurer shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case Insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury. Certified Act of Terrorism means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a Certified Act of Terrorism include the following: The act resulted in Insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion. All other terms and conditions of this policy remain unchanged

| National Casualty Company | | | | Endorsement No. 22 |
|---|---|---|---|---|
| Attached To And Forming Part of Policy Number | Endorsement Effective Date (12:01 A.M. Standard Time) | Named Insured | | Agent No. |
| EKO3437316 | 07/31/2022 | Price Tower Arts Center Inc | | 29406 |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**COST OF INVESTIGATIONS COVERAGE**

This endorsement modifies insurance provided under the following:

**INSURED PERSON AND ORGANIZATION COVERAGE SECTION**

It is agreed that:

The following is added to Section B., **DEFINITIONS**:

**Cost of Investigation** means reasonable and necessary legal costs, charges, fees and expenses incurred by any of the **Insureds** in investigating a written demand, by one or more of the securities holders of the **Organization** upon the board of directors, the management board of the **Organization** or the **Organization**, to bring a civil proceeding, including any derivative action, against any of the directors and officers on behalf of the **Organization**.

The following is added to Section B., **DEFINITIONS**, subsection 1.:

a written demand, by one or more of the securities holders of the **Organization** upon the board of directors, the management board of the **Organization** or the **Organization**, to bring a civil proceeding, including any derivative action, against any of the directors and officers on behalf of the **Organization**.

Section B., **DEFINITIONS**, subsection 3. is deleted in its entirety and is replaced by:

3. **Costs, Charges and Expenses** means:

a. reasonable and necessary legal costs, charges, fees and expenses incurred by any of the **Insureds** in defending **Claims** and the premium for appeal, attachment or similar bonds arising out of covered judgments, but with no obligation to furnish such bonds and only for the amount of such judgment that is up to the applicable Limit of Liability and;

b. cost of investigation.

**Costs, Charges and Expenses** do not include salaries, wages, fees, overhead or benefit expenses of or associated with officers or employees of the **Organization**.

All other terms and conditions of this **Policy** remain unchanged.

| National Casualty Company | | | Endorsement No. 23 | |
|---|---|---|---|---|
| **Attached To And Forming Part of Policy Number** | **Endorsement Effective Date (12:01 A.M. Standard Time)** | **Named Insured** | | **Agent No.** |
| EKO3437316 | 07/31/2022 | Price Tower Arts Center Inc | | 29406 |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**CRISIS FUND FOR NON-PROFITS - CRISIS COMMUNICATIONS MANAGEMENT INSURANCE**

In consideration of the additional premium paid of $899, it is agreed that this endorsement modifies insurance provided under the following.

**INSURED PERSON AND ORGANIZATION COVERAGE SECTION**

I. Section A., **INSURING CLAUSE,** is amended by adding the following Insuring Clause:

- **CRISIS MANAGEMENT COVERAGE**

  This **Policy** shall pay the **Crisis Management Loss** of the **Organization** arising from a **Crisis Management Event** first commencing during the **Policy Period**.

II. Solely with respect to the coverage provided by this endorsement, Section B., **DEFINITIONS**, is amended to include the following:

- **Material Effect** shall mean the publication of unfavorable information regarding the **Organization** which can reasonably be considered to lessen public confidence in the competence of the **Organization**. Such publication must occur in either:

  1. A daily newspaper of general circulation; or

  2. A radio, television or internet news report on an **Organization**.

- **Crisis Management Event** shall mean one of the following events which, in the good faith opinion of the **Organization**, did cause or is reasonably likely to cause, a **Material Effect**:

  1. Management Crisis:

     The death, incapacity or criminal indictment of any director, trustee or officer, including, but not limited to, the executive director, of the **Organization**, or any employee of the **Organization** on whom the **Organization** maintains key person life insurance.

  2. Member Abuse:

     The public announcement or accusation that an individual under the management control of the **Organization** has intentionally caused bodily injury to, or death of, a member or proposed member of the **Organization**, or has sexually abused a member of the **Organization**.

  3. Debt default:

     The public announcement that the **Organization** has defaulted or intends to default on its debt.

EK-269 (5-18)

The public announcement that the **Organization** intends to file for bankruptcy protection or that a third-party is seeking to file for involuntary bankruptcy on behalf of the **Organization**, or the imminence of bankruptcy proceedings, whether voluntary or involuntary.

5. Contribution Revocation:

The withdrawal or return of any non-governmental grant, contribution or bequest in excess of $500,000.

For the purpose of this endorsement, a **Crisis Management Event** shall first commence when the **Organization** or any of its directors or executive officers shall first become aware of the event during the **Policy Period** and shall conclude at the earliest of the time when the **Crisis Management Firm** advises the **Organization** that the crisis no longer exists or when the **Crisis Management Fund Sub-limit** has been exhausted.

- **Crisis Management Firm** shall mean any public relations firm, crisis management firm or law firm hired by the **Organization** or its directors, officers or employees to perform **Crisis Management Services** in connection with a **Crisis Management Event**, the selection of which has been consented to by the **Insurer**, which consent shall not be unreasonably withheld.

- **Crisis Management Loss** shall mean the following amounts incurred during the pendency of or within ninety (90) days prior to and in anticipation of, the **Crisis Management Event**, regardless of whether a **Claim** is ever made against an **Insured** arising from the **Crisis Management Event** and, in the case where a **Claim** is made, regardless of whether the amount is incurred prior to or subsequent to the making of the **Claim**:

  1. Amounts for which the **Organization** is legally liable for the reasonable and necessary fees and expenses incurred by a **Crisis Management Firm** in the performance of **Crisis Management Services** for the **Organization** arising from a **Crisis Management Event**; and

  2. Amounts for which the **Organization** is legally liable for the reasonable and necessary printing, advertising, mailing of materials, or travel by directors, officers, employees or agent of the **Organization** or the **Crisis Management Firm**, in connection with the **Crisis Management Event**.

- **Crisis Management Services** means those services performed by a **Crisis Management Firm** in advising the **Organization** or any of its directors, officers or employees on minimizing the potential harm to the **Organization** arising from the **Crisis Management Event**, including, but not limited to, maintaining and restoring public confidence in the **Organization**.

III. Solely with respect to the coverage provided by this endorsement, Section B., **DEFINITIONS**, 7. **Loss** is amended as follows:

- **Loss** shall include **Crisis Management Loss**.

IV. Solely with respect to the coverage provided by this endorsement, Section C., **EXCLUSIONS**, is amended by adding the following:

- alleging, based upon, arising out of, attributable to, directly or indirectly resulting from, in consequence of, or in any way involving:

  - any **Claim** which has been reported, or any circumstances of which notice has been given, under any policy of which this **Policy** is a renewal or replacement or which it may succeed in time;

  - any pending or prior litigation or administrative or regulatory proceeding, demand letter or formal or informal governmental investigation or inquiry, including any investigation by the U.S.

Department of Labor or the U.S. Equal Employment Opportunity Commission, filed or pending as of <u>1/1/2019</u>;

- any fact, circumstance, situation, transaction or event underlying or alleged in such litigation or administrative or regulatory proceeding, demand letter or formal or informal governmental investigation or inquiry, including any investigation by the U.S. Department of Labor or the U.S. Equal Employment Opportunity Commission; or

- the hazardous properties of nuclear materials.

V. Solely with respect to this endorsement, the following is added to Section D., **LIMIT OF LIABILITY AND RETENTIONS**:

  ○ **Crisis Management Fund Sublimit**: <u>$10,000</u>

  ○ The limit of the **Insurer's** liability for **Crisis Management Loss** arising from all **Crisis Management Events** occurring during the **Policy Period**, in the aggregate, shall be the amount set forth in this endorsement as the **Crisis Management Fund Sublimit**. This sublimit shall be the maximum liability of the **Insurer** under this endorsement, regardless of the number of **Crisis Management Events** occurring during the **Policy Period**, provided however, that this single **Crisis Management Fund Sublimit** shall be part of and not in addition to the Limit of Liability maximum aggregate for this Coverage Section stated in Item 3.1. of the Declarations, which shall in all events be the maximum liability of the **Insurer** for all **Loss** under this **Policy**.

  ○ There shall be no retention amount applicable to **Crisis Management Loss**.

VI. Solely with respect to this endorsement, the following is added to Section E., **NOTIFICATION:**

  ○ An actual or anticipated **Crisis Management Event** shall be reported to the **Insurer** as soon as practicable, but in no event later than thirty (30) days after the **Organization** first incurs **Crisis Management Loss** for which the coverage will be requested under this endorsement.

VII. Solely with respect to this endorsement, Section F., **SETTLEMENT AND DEFENSE**, is amended as follows:

  ○ There shall be no requirement for the **Organization** to obtain prior written approval of the **Insurer** before incurring any **Crisis Management Loss**, provided that the **Crisis Management Firm** selected by the **Organization** to perform the **Crisis Management Services** has been approved by the **Insurer**.

All other terms and conditions of this **Policy** remain unchanged.

| National Casualty Company | | | | Endorsement No. 24 |
|---|---|---|---|---|
| **Attached To And Forming Part of Policy Number** | **Endorsement Effective Date (12:01 A.M. Standard Time)** | **Named Insured** | | **Agent No.** |
| EKO3437316 | 07/31/2022 | Price Tower Arts Center Inc | | 29406 |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**EMPLOYED LAWYERS EXTENSION**

This endorsement modifies insurance provided under the following:

**INSURED PERSON AND ORGANIZATION COVERAGE SECTION**

The following is added to Section B.4.:

**Employed Lawyers** of the **Organization**

The following definition is added to Section B.:

**Employed Lawyers** means:

employees of the **Organization** who:

1. are admitted to practice law in one or more jurisdictions in the United States of America; and

2. are employed within the **Organization's** office of the general counsel or its functional equivalent; and

3. acting solely in the capacity of providing professional legal services to the **Organization**.

An individual shall not be deemed to be an **Employed Lawyer** to the extent such individual renders or rendered professional legal services to persons or entities other than the **Insureds**.

| **National Casualty Company** | | | **Endorsement No.** 25 |
|---|---|---|---|
| **Attached To And Forming Part of Policy Number** | **Endorsement Effective Date (12:01 A.M. Standard Time)** | **Named Insured** | **Agent No.** |
| EKO3437316 | 07/31/2022 | Price Tower Arts Center Inc | 29406 |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**EMPLOYEE PRIVACY COVERAGE WITH SUB-LIMIT**

This endorsement modifies insurance provided under the following:

**EMPLOYMENT PRACTICES COVERAGE SECTION**

It is agreed that the Employment Practices Coverage Section is amended as follows:

1. Section A., **INSURING CLAUSES**, is amended by adding the following:

    **Employee Privacy** Insuring Clause

    **Insurer** shall pay the **Loss** of the **Insureds** which the **Insureds** have become legally obligated to pay by reason of an **Employee Privacy Claim** first made against the **Insureds** during the **Policy Period** and reported to the **Insurer** pursuant to subsection E.1. herein, for a **Privacy Wrongful Act** taking place prior to the end of the **Policy Period**.

    **Cost of Employee Notification** Insuring Clause

    **Insurer** shall pay the **Cost of Employee Notification** of the **Insureds** resulting from an **Employee Personal Information Breach** first discovered during the **Policy Period** and reported to the **Insurer** pursuant to subsection E.4. added below.

2. Section B., **DEFINITIONS**, subsection 1. is amended by adding the following:

    **Employee Privacy Claim**

3. Section B., **DEFINITIONS**, subsection 10. is amended by adding the following:

    ○ **Loss** also includes **Cost of Employee Notification**

4. Section B., **DEFINITIONS**, subsection 15. is amended by adding the following:

    **Privacy Wrongful Act**.

5. Section B., **DEFINITIONS**, is amended by adding the following:

    **Cost of Employee Notification** means:

    a. any reasonable and necessary cost or expense of the **Organization** to notify any **Employee** of any **Employee Personal Information Breach** as required under any **Privacy Act**; and

    b. the cost to notify and monitor the credit reports of any **Employee** who has been the subject of an **Employee Personal Information Breach** for the length of time as set forth under any

**Employee Personal Information** means any personal information not available to the general public of any **Employee** where such non-public personal information can be used to identify such natural person and where such non-public information is solely in the custody, care or control of the **Organization** or another entity at the direction and consent of the **Organization**. Such **Personal Information** shall include, but not be limited to a natural person's name, address, telephone number, date of birth, social security number, account number, history of account transactions, account balance, account relationships, credit card number, medical records, medical history and any other non-public personal information as set forth in any **Privacy Act**.

**Employee Personal Information Breach** means:

   a. the unauthorized acquisition, access, use, physical taking, identity theft, mysterious disappearance, release, distribution or disclosure of **Employee Personal Information** which compromises the security or privacy of such **Employee Personal Information**, including, but not limited to:

      i. the unauthorized and fraudulent taking of **Employee Personal Information** by reason of a breach or failure of any hardware, software, or firmware the **Organization** owns, leases or controls on premises or elsewhere or the similar technology of another entity that controls, maintains or stores **Employee Personal Information** at the direction and consent of the **Organization**; or

      ii. the actual unauthorized taking of physical **Employee Personal Information** by any person, employee or entity.

**Employee Privacy Claim** means:

   a. a written demand against any **Insured** for monetary damages or non-monetary or injunctive relief;

   b. a civil proceeding against any **Insured** seeking monetary damages or non-monetary or injunctive relief, commenced by the service of a complaint or similar pleading;

   c. an arbitration proceeding against any **Insured** seeking monetary damages or non-monetary or injunctive relief;

   d. a civil, administrative or regulatory proceeding, or a formal governmental investigation against any **Insured** commenced by the filing of a notice of charges, investigative order or similar document; or

   e. a written request to toll or waive any statute of limitations

   brought by or on behalf of an **Employee** in their capacity as such and solely alleging a **Privacy Wrongful Act**.

**Privacy Act** means any federal, state or local statutory or common law relating solely to **Employee Personal Information** or any rules or regulations promulgated thereunder, including, but not limited to The Financial Modernization Act of 1999 ("Gramm-Leach-Bliley Act"), the Health Insurance Portability and Accountability Act of 1996 (HIPAA) and Section 1798 of the California Civil Code.

**Privacy Policy** means the internal or publicly accessible written documents that set forth the policies, standards and procedures of the **Organization** for collection, use, disclosure, sharing, dissemination and correction or supplementation of, and access to, **Employee Personal Information**.

Privacy Wrongful Act means

    a. the failure of the **Organization** to timely disclose an incident or event triggering a violation of a **Privacy Act**; or

    b. failure by the **Insureds** to comply with that part of a **Privacy Policy** that specifically:

        i. prohibits or restricts the disclosure, sharing or selling of an **Employee's Personal Information**;

        ii. requires the **Organization** to provide access to **Employee Personal Information** or to correct incomplete or inaccurate **Employee Personal Information** after a request is made by an **Employee**; or

        iii. mandates procedures and requirements to prevent the loss of **Employee Personal Information**.

6. Section E., **NOTIFICATION**, is amended by adding the following subsection:

    ○ The **Insureds** shall, as a condition precedent to their rights to payment for the **Cost of Employee Notification** under this endorsement, give the **Insurer** written notice of any **Employee Personal Information Breach** as soon as practicable after the **Insured** discovers such **Employee Personal Information Breach**, but in no event later than sixty (60) days after such discovery. The **Insurer** will pay for the **Cost of Employee Notification** sustained by the **Insured** resulting from an **Employee Personal Information Breach** occurring at any time and discovered by the **Insured** during the **Policy Period**. Discovery of the **Employee Personal Information Breach** occurs when an officer, director, Insurance Manager or Risk Manager first becomes aware of facts which would cause a reasonable person to assume that an **Employee Personal Information Breach** covered by this Coverage Section has occurred, even though the exact amount or details of any **Cost of Employee Notification** may not then be known. Discovery also occurs when the **Insured** receives notice of an actual or a potential **Claim** against it alleging facts that, if true, would constitute a covered **Employee Privacy Claim** for a **Privacy Wrongful Act**.

7. The following Section is added to the Employment Practices Coverage Section:

    I. **DUTIES IN THE EVENT OF AN EMPLOYEE PERSONAL INFORMATION BREACH**

    After the **Insured** discovers an **Employee Personal Information Breach** or a situation that may result in an **Employee Personal Information Breach** that may be covered under this Endorsement, the **Insured** must:

    1. submit to an examination under oath at the **Insurers** request and give the **Insurer** a sworn statement of the answers of the **Insured**;

    2. provide the **Insurer** with a sworn proof of loss within forty-five (45) days after discovery which shall provide, at a minimum:

        a. the date and circumstances surrounding discovery, including the name(s) of the person(s) making the discovery;

        b. details of how the **Employee Personal Information Breach** occurred or will occur;

        c. the amount of actual loss known and an estimate of the total loss expected to result; and

of a description of all known sources of recovery to reduce the **Cost of Employee Notification**;

   3. provide the **Insurer** with all information, assistance and cooperation as the **Insurer** may reasonably request in the investigation of the **Employee Personal Information Breach** and corresponding **Cost of Employee Notification**;

   4. not incur any **Cost of Employee Notification** without the written consent of the **Insurer**; and

   5. notify the police or other appropriate law enforcement authority(ies) if the **Insured** has reason to believe that the **Employee Personal Information Breach** involves a violation of law.

8. Notwithstanding, Section G., **OTHER INSURANCE**, If any coverage under this endorsement is also covered under any other valid and collectable insurance, then the coverage provided by this endorsement shall be specifically excess of, and will not contribute with, such other insurance, including but not limited to any such other insurance under which there is a duty to defend.

9. The maximum aggregate Limit of Liability as a result of coverage provided by this endorsement for all **Loss** as a result of all **Employee Privacy Claims** and **Cost of Employee Notification** shall be $10,000, which sum shall be part of and not in addition to the Limit of Liability identified in Item 3.1.a. of the Declarations relating to the Employment Practices Coverage Section, and Item 3.1.b., additional aggregate for **Costs, Charges and Expenses**, shall not be applicable to, nor available for, the coverage provided by this endorsement.

10. The Retention listed in Item 3.2.a. of the Declarations relating to the Employment Practices Coverage Section for **Employment Practices Claims** applies to each **Employee Privacy Claim** under this **Employee Privacy** Insuring Clause. The Retention amount applicable to the **Cost of Employee Notification** is an amount equal to twenty percent (20%) of the Retention listed in Item 3.2.a. of the Declarations relating to the Employment Practices Coverage Section for **Employment Practices Claims**. The Retention for the **Cost of Employee Notification** shall be applied only once for each discovery of an **Employee Personal Information Breach**.

All other terms and conditions of this **Policy** remain unchanged.

# National Casualty Company

| | | | Endorsement No. 26 |

| Attached To And Forming Part of Policy Number | Endorsement Effective Date (12:01 A.M. Standard Time) | Named Insured | Agent No. |
|---|---|---|---|
| EKO3437316 | 07/31/2022 | Price Tower Arts Center Inc | 29406 |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**EXCESS BENEFIT TRANSACTION EXCISE TAX COVERAGE ENDORSEMENT**

This endorsement modifies insurance provided under the following:

**INSURED PERSON AND ORGANIZATION COVERAGE SECTION**

The following is added to Section B. DEFINITIONS:

**Excess Benefit Transaction Excise Tax** means any excise tax imposed by the Internal Revenue Service on an **Insured Person** who is an **Organization Manager** as a result of such **Insured Person's** participation in an **Excess Benefit Transaction**;

**Organization Manager** means "organization manager" as that term is defined in Section 4958 of the Internal Revenue Code of 1986, as amended;

**Excess Benefit Transaction** means an "excess benefit transaction" as that term is defined in Section 4958; and

**Disqualified Person** means a "disqualified person" as that term is defined in Section 4958.

Section **B. DEFINITIONS**, Section **7.**, paragraph **a.** is replaced by the following:

a. taxes, fines or penalties other than **Excess Benefit Transaction Excise Tax;** provided, however, coverage for such **Excess Benefit Transaction Excise Tax** shall not include:

    i. any Excess Benefit Transaction Excise Tax exceeding $10,000;

    ii. any Excess Benefit Transaction Excise Tax expressly prohibited in the bylaws, certificate of incorporation or other organizational documents of the **Insured Organization;**

    iii. any excise tax imposed by the Internal Revenue Service on any **Disqualified Person** for any **Excess Benefit Transaction**.

**All other terms and conditions of this Policy remain unchanged.**

| National Casualty Company | | | Endorsement No. 27 |
|---|---|---|---|
| **Attached To And Forming Part of Policy Number** | **Endorsement Effective Date (12:01 A.M. Standard Time)** | **Named Insured** | **Agent No.** |
| EKO3437316 | 07/31/2022 | Price Tower Arts Center Inc | 29406 |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**IMMIGRATION CLAIM ENDORSEMENT**

This endorsement modifies insurance provided under the following:

**EMPLOYMENT PRACTICES COVERAGE SECTION**

I. It is agreed that the Employment Practices Coverage Section is amended as follows:

The following is added to Section A., **INSURING CLAUSES**:

**Immigration Claim** Insuring Clause

**Insurer** shall pay the **Costs, Charges and Expenses** of the **Insureds** which the **Insureds** have become legally obligated to pay by reason of an **Immigration Claim** first made against the **Insureds** during the **Policy Period** or, if elected, the **Extended Period**, and reported to the **Insurer** pursuant to subsection E.1. herein, for an **Immigration Wrongful Act** taking place prior to the end of the **Policy Period**.

The following is added to Section B., **DEFINITIONS**, subsection 1.:

**Immigration Claim**.

The following is added to Section B., **DEFINITIONS**, subsection 15.:

**Immigration Wrongful Act**.

The following is added to Section B., **DEFINITIONS**:

**Immigration Wrongful Act** means any actual or alleged violation(s) of the Immigration Control Act of 1986 or any other similar federal or state laws or regulations.

**Immigration Claim** means any criminal investigation of any of the **Insureds** by any governmental agency for actually or allegedly hiring or harboring illegal aliens.

Solely as respects coverage provided by this endorsement, Section D., **LIMIT OF LIABILITY AND RETENTIONS**, subsection 4. is deleted in its entirety and replaced with the following:

4. Payments of **Costs, Charges and Expenses** by **Insurer** shall reduce the Limit(s) of Liability under this Coverage Section. **Costs, Charges and Expenses** are part of, and not in addition to, the Limit(s) of Liability. If such Limit(s) of Liability are exhausted by payment of **Costs, Charges and Expenses**, the obligations of the **Insurer** under this Coverage Section are completely fulfilled and extinguished.

The following is added to Section G., **OTHER INSURANCE**:

For any **Immigration Claim**, if any **Costs, Charges and Expenses** covered under this Coverage Section are covered under any other valid and collectable insurance, then this **Policy** shall be primary insurance.

II. It is agreed that the DECLARATIONS is amended as follows:

The maximum aggregate Limit of Liability for all **Costs, Charges and Expenses** as a result of all **Immigration Claims** shall be $100,000, which sum shall be part of and not in addition to the Limit of Liability identified in Item 3.1. of the Declarations relating to the Employment Practices Coverage Section.

The following is added to Item 3., Employment Practices Coverage Section, Section 2., Retention, of the Declarations:

All other terms and conditions of this **Policy** remain unchanged.

| **National Casualty Company** | | | | Endorsement No. 28 |
|---|---|---|---|---|
| **Attached To And Forming Part of Policy Number** | **Endorsement Effective Date (12:01 A.M. Standard Time)** | **Named Insured** | | **Agent No.** |
| EKO3437316 | 07/31/2022 | Price Tower Arts Center Inc | | 29406 |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**OUTSIDE ENTITY COVERAGE FOR NON-PROFIT COMPANIES**

This endorsement modifies insurance provided under the following:

**INSURED PERSON AND ORGANIZATION COVERAGE SECTION**

Section **B. DEFINITIONS,** subsection **10.,** is replaced by the following:

10. **Wrongful Act** means:

any actual or alleged error, omission, misleading statement, misstatement, neglect, breach of duty or act, **Publisher Liability Act or Personal Injury Act** allegedly committed or attempted by any **Insured**, while acting in their capacity as such, or any matter claimed against an **Insured Person** solely by reason of his or her serving in such capacity; or

any actual or alleged error, omission, misleading statement, misstatement, neglect, breach of duty or act of any of the **Insured Persons**, while acting in their capacity as a director, officer, trustee, governor, executive director or similar position of any **Outside Entity** where such service is with the knowledge and consent of the **Organization.** In the event of a dispute between the **Organization** and **Insured Person** over whether the **Organization** had knowledge and consented to such service, the **Insurer** shall act in accordance with the decision of the **Organization.**

The following is added to **Section B. DEFINITIONS:**

**Outside Entity** means any non-profit company which is exempt from taxation under the Internal Revenue Code, as amended, in which any of the **Insured Persons** is, with the knowledge and consent of the **Organization,** serving as a director, officer, trustee, governor, executive director or similar position of such non-profit company.

Section **C. EXCLUSIONS,** subsection **7.,** is replaced by:

7. for the return by any of the **Insured Persons** of any remuneration paid to them without the previous approval of the appropriate governing body of the **Organization** or **Outside Entity,** which payment without such previous approval shall be held to be in violation of law;

Section **C. EXCLUSIONS,** subsection **10.,** is replaced by:

10. for a **Wrongful Act** actually or allegedly committed or attempted by any of the **Insured Persons** in his or her capacity as a director, officer, trustee, manager, member of the board of managers or equivalent executive of a limited liability company or employee of, or independent contractor for or in any other capacity or position with any entity other than the **Organization;** provided, however, that this exclusion shall not apply to **Loss** resulting from any such **Claim** solely to the extent that:

a. such **Claim** is based on the service of any of the **Insured Persons** as a director, officer, trustee, governor, executive director or similar position of any **Outside Entity** where such service is with the knowledge and consent of the **Organization;** and

b. such **Outside Entity** is not permitted or required by law to provide indemnification to such **Insured Person;** and

c. such **Loss** is not covered by insurance provided by any of the **Outside Entity's Insurer(s);**

Section **C. EXCLUSIONS,** subsection **13.,** is replaced by:

13. alleging, based upon, arising out of, attributable to, directly or indirectly resulting from, in consequence of, or in any way involving any employment or employment-related matters brought by or on behalf of or in the right of an applicant for employment with the **Organization** or any **Insured Person,** or an applicant for

employment with an **Outside Entity** or any director, officer, trustee, governor, executive director, management committee member, member of the board of managers, or employee of an **Outside Entity;**

The following is added to Section **C. EXCLUSIONS:**

**Insurer** shall not be liable for **Loss** under this Coverage Section on account of any **Claim:**

brought or maintained by, on behalf of, in the right, or at the direction of any **Outside Entity,** or any past, present or future duly elected or appointed director, officer, trustee, governor, manager, general counsel, risk manager, management committee member, member of the board of managers, or equivalent executives of any **Outside Entity;**

All other terms and conditions of this **Policy** remain unchanged.

| National Casualty Company | | | Endorsement No. 29 | |
|---|---|---|---|---|
| **Attached To And Forming Part of Policy Number** | **Endorsement Effective Date (12:01 A.M. Standard Time)** | **Named Insured** | | **Agent No.** |
| EKO3437316 | 07/31/2022 | Price Tower Arts Center Inc | | 29406 |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**PRIORITY OF PAYMENTS PROVISION**

This endorsement modifies insurance provided under the following:

**INSURED PERSON AND ORGANIZATION COVERAGE SECTION**

The following condition is added:

**PAYMENT PRIORITY**

If the amount of any **Loss** which is otherwise due and owing by the **Insurer** exceeds the then-remaining Limit of Liability applicable to the **Loss**, the **Insurer** shall pay the **Loss,** subject to such Limit of Liability, in the following priority:

a. first, the **Insurer** shall pay any non-indemnifiable **Loss** covered under this Coverage Section in excess of any applicable Retention shown in Item 3. of the Declarations; and

b. second, only if and to the extent the payment under a. above does not exhaust the applicable Limit of Liability, the **Insurer** shall pay any remaining **Loss** under this Coverage Section in excess of the Retention shown in Item 3. of the Declarations.

c. subject to the foregoing, the **Insurer** shall, upon receipt of a written request from the Chief Executive Officer of the **Parent Organization**, delay any payment of **Loss** otherwise due and owing to or on behalf of the **Organization** until such time as the Chief Executive Officer of the **Parent Organization** designates, provided the liability of the **Insurer** with respect to any such delayed **Loss** payment shall not be increased, and shall not include any interest, on account of such delay.

**All other terms and conditions of this Policy remain unchanged.**

EK-238 (04/08)

| National Casualty Company | | | | Endorsement No. 30 |
|---|---|---|---|---|
| **Attached To And Forming Part of Policy Number** | **Endorsement Effective Date (12:01 A.M. Standard Time)** | **Named Insured** | | **Agent No.** |
| EKO3437316 | 07/31/2022 | Price Tower Arts Center Inc | | 29406 |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**PROFESSIONAL SERVICES ERRORS AND OMISSIONS EXCLUSIONS**

This endorsement modifies insurance provided under the following:

**INSURED PERSON AND ORGANIZATION COVERAGE SECTION**

The following is added to Section **C. EXCLUSIONS**:

**Insurer** shall not be liable for **Loss** under this Coverage Section on account of any **Claim**:

alleging, based upon, arising out of, or attributable to, directly or indirectly resulting from, in consequence of, or in any way involving the rendering or failure to render professional services.

**All other terms and conditions of this Policy remain unchanged.**

EK-121 (04/08)

| National Casualty Company | | | | Endorsement No. 31 |
|---|---|---|---|---|
| **Attached To And Forming Part of Policy Number** | **Endorsement Effective Date (12:01 A.M. Standard Time)** | **Named Insured** | | **Agent No.** |
| EKO3437316 | 07/31/2022 | Price Tower Arts Center Inc | | 29406 |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**REMOVAL OF ALTERNATIVE DISPUTE RESOLUTION PROVISION**

This endorsement modifies insurance provided under the following:

**GENERAL TERMS AND CONDITIONS**

Section **K. ALTERNATIVE DISPUTE RESOLUTION**, is deleted in its entirety.

**All other terms and conditions of this Policy remain unchanged.**

# National Casualty Company

| | | | Endorsement No. 32 |
|---|---|---|---|
| **Attached To And Forming Part of Policy Number** | **Endorsement Effective Date (12:01 A.M. Standard Time)** | **Named Insured** | **Agent No.** |
| EKO3437316 | 07/31/2022 | Price Tower Arts Center Inc | 29406 |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**STATE AMENDATORY INCONSISTENT**

This endorsement modifies insurance provided under the following:

**GENERAL TERMS AND CONDITIONS**

It is agreed that in the event there is an inconsistency between a state amendatory endorsement attached to this **Policy** and any term or condition of this **Policy**, then where permitted by law, the **Insurer** shall apply those terms and conditions of either the amendatory endorsement or the **Policy** which are more favorable to the **Insured**.

All other terms and conditions of this **Policy** remain unchanged.

EK-848 (05/09)                                                                                                          Page 1 of 1

| National Casualty Company | | | Endorsement No. 33 |
|---|---|---|---|
| **Attached To And Forming Part of Policy Number** | **Endorsement Effective Date (12:01 A.M. Standard Time)** | **Named Insured** | **Agent No.** |
| EKO3437316 | 07/31/2022 | Price Tower Arts Center Inc | 29406 |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**TOLLING OR WAIVING THE STATUTE OF LIMITATIONS**

This endorsement modifies insurance provided under the following:

**INSURED PERSON AND ORGANIZATION COVERAGE SECTION**

The following is added to Section B., **DEFINITIONS**, subsection 1.

    f.  a written request received by the **Insureds** to toll or waive the statute of limitations regarding a potential **Claim**. Such **Claim** shall be commenced by the receipt of such request.

All other terms and conditions of this **Policy** remain unchanged.

| National Casualty Company | | | Endorsement No. 34 |
|---|---|---|---|
| **Attached To And Forming Part of Policy Number** | **Endorsement Effective Date (12:01 A.M. Standard Time)** | **Named Insured** | **Agent No.** |
| EKO3437316 | 07/31/2022 | Price Tower Arts Center Inc | 29406 |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**WAGE AND HOUR CLAIM COSTS, CHARGES AND EXPENSES ONLY ENDORSEMENT - NON-PROFIT ORGANIZATIONS**

In consideration of the premium paid, it is agreed that this endorsement modifies insurance provided under the following:

**EMPLOYMENT PRACTICES COVERAGE SECTION**

1. Section A., **INSURING CLAUSES**, is amended to include the following:

   o **Wage and Hour Claim** Insuring Clause

   **Insurer** shall pay the **Costs, Charges and Expenses** of the **Insureds** that the **Insureds** have become legally obligated to pay by reason of a **Wage and Hour Claim** first made against the **Insureds** during the **Policy Period** or, if elected, the **Extended Period**, and reported to the **Insurer** pursuant to Section E.1. herein, for a **Wage and Hour Wrongful Act** taking place prior to the end of the **Policy Period**.

2. Section B., **DEFINITIONS**, subsection 1., **Claim**, is amended by adding the following:

   c. **Wage and Hour Claim**.

3. Section B., **DEFINITIONS**, subsection 15., **Wrongful Act**, is amended by adding the following:

   c. **Wage and Hour Wrongful Act**.

4. The following definitions are added to Section B., **DEFINITIONS**:

   o **Wage and Hour Wrongful Act** means any actual or alleged violation(s) of:

   a. the Fair Labor Standards Act of 1938 and amendments thereto, or any similar federal, state or local law governing or relating to:

      i. the classification of **Employees** for the purpose of determining **Employees'** eligibility for compensation; or

      ii. the payment of wages, including but not limited to the payment of overtime, minimum wages, on-call time, the donning and doffing of uniforms, rest and meal periods, reimbursement of expenses, and any other earnings, tips, reimbursement or compensation of **Employees**;

   b. unfair business practices, unfair competition, conversion or public policy concerning, relating or arising out of any actual or alleged violations of those matters referenced in paragraph a.i. or a.ii. above.

provided, however, **Wage and Hour Wrongful Act** shall not include actual or alleged violations of the Equal Pay Act of 1963, and any amendments thereto.

- o **Wage and Hour Claim** means:

   a. a written demand against an **Insured** for damages or other relief; or

   b. a civil, judicial, administrative, regulatory or arbitration proceeding or a formal governmental investigation against an **Insured** seeking damages or other relief, commenced by the service of a complaint or similar pleading, including any appeal therefrom, brought by or on behalf of one or more **Employees** solely alleging any **Wage and Hour Wrongful Act**, including any class action or a collective action under § 216(b) of the Fair Labor Standards Act or any similar federal, state or local law.

5. Section C., **EXCLUSIONS**, subsection 4. is deleted in its entirety and replaced by the following:

   4. for any actual or alleged violation of the responsibilities, obligations or duties imposed by the Employee Retirement Income Security Act of 1974, the National Labor Relations Act, the Worker Adjustment and Retraining Notification Act, the Consolidated Omnibus Budget Reconciliation Act of 1985, the Occupational Safety and Health Act, all as amended, or any rules or regulations promulgated thereunder, or similar provisions of any common or statutory federal, state or local law; provided, however, this exclusion does not apply to any such **Claim**, except a **Wage and Hour Claim**, alleging violations of the Equal Pay Act or **Retaliation**;

6. Solely with respect to coverage provided by this endorsement, Section D., **LIMIT OF LIABILITY AND RETENTIONS**, subsection 4. is deleted in its entirety and replaced with the following:

   4. Payments of **Loss** by **Insurer** shall reduce the Limit(s) of Liability under this Coverage Section. **Costs, Charges and Expenses** are part of, and not in addition to, the Limit(s) of Liability, and payment of **Costs, Charges and Expenses** reduces the Limit(s) of Liability. If such Limit(s) of Liability are exhausted by payment of **Loss**, the obligations of the **Insurer** under this Coverage Section are completely fulfilled and extinguished.

7. Section F., **SETTLEMENT AND DEFENSE**, subsection 3. is deleted in its entirety.

8. Section G., **OTHER INSURANCE**, is amended by adding the following:

   - o For any **Wage and Hour Claim**, if any **Loss** covered under this Coverage Section is covered under any other valid and collectable insurance, then this **Policy** shall be primary insurance.

9. Section H., **ALLOCATION**, is deleted in its entirety.

10. Item 3. of the Declarations relating to the Employment Practices Coverage Section is amended by adding the following:

    - o **Sub-limit of Liability**  $250,000  maximum aggregate Limit of Liability for all **Loss** as a result of all **Wage and Hour Claims**.

      provided, however, this sub-limit of liability shall be part of and not in addition to the Limit of Liability identified in Item 3.1. of the Declarations relating to the Employment Practices Coverage Section.

11. Item 3. of the Declarations relating to the Employment Practices Coverage Section, subsection 2., Retention, is amended by adding the following:

    c.  $1,000  each **Wage and Hour Claim**

All other terms and conditions of this **Policy** remain unchanged.

| National Casualty Company | | | Endorsement No. 35 | |
|---|---|---|---|---|
| **Attached To And Forming Part of Policy Number** | **Endorsement Effective Date (12:01 A.M. Standard Time)** | **Named Insured** | | **Agent No.** |
| EKO3437316 | 07/31/2022 | Price Tower Arts Center Inc | | 29406 |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**AMENDATORY ENDORSEMENT - OKLAHOMA**

This endorsement modifies insurance provided under the following:

**BUSINESS AND MANAGEMENT INDEMNITY POLICY — NON-PROFIT ORGANIZATIONS
GENERAL TERMS AND CONDITIONS
INSURED PERSON AND ORGANIZATION COVERAGE SECTION
EMPLOYMENT PRACTICES COVERAGE SECTION
FIDUCIARY COVERAGE SECTION**

I. The following is applicable to the **General Terms and Conditions** form:

The following is added to Section **E. CANCELLATION**:

If the **Insurer** chooses to non-renew this **Policy** or to condition renewal upon a reduction in limits or coverage, an increase in retention or any premium increase, the **Insurer** will deliver or mail to the **Parent Organization** and to its agent or record written notice stating such at least sixty (60) days before the expiration of the **Policy Period** or the anniversary date of this **Policy**, if it is written for a term longer than one year or with no fixed expiration date. Proof of mailing is sufficient proof of notice. The notice of non-renewal shall state the reason for such non-renewal.

If the **Parent Organization** accepts the renewal, the premium increase or coverage changes will be effective the day following the prior **Policy's** expiration or anniversary date.

If notice is not mailed or delivered at least sixty (60) days before the expiration date or anniversary date of this **Policy**, the premium, retention, limits and coverage in effect prior to the changes will remain in effect until:

1. Forty-five (45) days after notice is given; or

2. The effective date of replacement coverage obtained by the **Parent Organization**;

whichever occurs first.

If the **Parent Organization** then elects not to renew, any earned premium for the resulting extended period of coverage will be calculated pro rata at the lower of the new rates or rates applicable to the expiring **Policy**.

The **Insurer** will not provide notice of the following:

1. Changes in a rate or plan filed pursuant to the **Property and Casualty Competitive Loss Cost Rating Act** applicable to an entire class of business;

2. Changes which are based upon the altered nature or extent of the risk insured; or

3. Changes in policy forms filed with or approved by the Insurance Commissioner and applicable to an entire class of business.

Section **K. ALTERNATIVE DISPUTE RESOLUTION**, is deleted.

II. If the **Insured Person and Organization Coverage Section** is included in this **Policy**, paragraph **7.c.** of Section **B. DEFINITIONS**, is replaced by:

c. punitive or exemplary damages, or the multiple portion of any multiplied damage award, except to the extent that such punitive or exemplary damages are insurable under the law pursuant to which this

**Policy** shall be construed;

III. If the **Employment Practices Coverage Section** is included in this **Policy**, paragraph **10.c.** of Section **B. DEFINITIONS**, is replaced by:

    c. punitive or exemplary damages, or the multiple portion of any multiplied damage award, except to the extent that such punitive or exemplary damages are insurable under the law pursuant to which this **Policy** shall be construed;

IV. If the **Fiduciary Coverage Section** is included in this **Policy**, paragraph **10.c.** of Section **B. DEFINITIONS**, is replaced by:

    c. punitive or exemplary damages, or the multiple portion of any multiplied damage award, except to the extent that such punitive or exemplary damages are insurable under the law pursuant to which this **Policy** shall be construed.

**All other terms and conditions of this Policy remain unchanged.**

Underwritten by National Casualty Company

A Stock Insurance Company

# POLICYHOLDER DISCLOSURE
# NOTICE OF TERRORISM INSURANCE COVERAGE

### PREMIUM CHARGE FOR TERRORISM COVERAGE

**TERRORISM RISK INSURANCE ACT**

You are hereby notified that the Terrorism Risk Insurance Act of 2002, as amended pursuant to the Terrorism Risk Insurance Program Reauthorization Act of 2019, effective January 1, 2021 (collectively referred to as "TRIA" or the "Act"), established a program within the Department of the Treasury under which the federal government shares, with the insurance industry, the risk of loss from future terrorist attacks. Under the Act, you have a right to purchase insurance coverage for losses arising out of acts of terrorism. As defined in Section 102(1) of the Act: The term "certified acts of terrorism" means any act that is certified by the Secretary of the Treasury -- in consultation with the Secretary of Homeland Security, and the Attorney General of the United States -- to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of certain air carriers or vessels or the premises of a United States mission; to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States government by coercion.

**DISCLOSURE OF FEDERAL SHARE OF COMPENSATION**

You should know that where coverage is provided by this policy for losses resulting from "certified acts of terrorism," such losses may be partially reimbursed by the United States government under a formula established by federal law. However, your policy may contain other exclusions which might affect your coverage, such as an exclusion for nuclear events. Under the formula, the United States government agrees to reimburse eighty percent (80%) of covered terrorism losses that exceed the statutorily established deductible paid by the insurance company providing the coverage. The premium charged for terrorism coverage is provided below and does not include any charges for the portion of loss that may be covered by the federal government under the Act.

**CAP ON LOSSES FROM "CERTIFIED ACTS OF TERRORISM"**

You should also know that the Terrorism Risk Insurance Act, as amended, contains a $100 billion cap that limits United States government reimbursement as well as insurers' liability for losses resulting from "certified acts of terrorism" when the amount of such losses in any one calendar year exceeds $100 billion. If the aggregate insured losses for all insurers exceed $100 billion, your coverage may be reduced.

**CONDITIONAL TERRORISM COVERAGE**

The Terrorism Risk Insurance Program Reauthorization Act of 2019 is scheduled to terminate at the end of December 31, 2027 unless renewed, extended or otherwise continued by the federal government. Should the Act terminate on December 31, 2027, or be repealed, any terrorism coverage as defined by the Act provided in the policy will also terminate.

**DISCLOSURE OF PREMIUM**

In accordance with the Act, we are required to offer you coverage for losses resulting from an act of terrorism that is certified under TRIA as an act of terrorism. The policy's other provisions will still apply to such an act. We are further required to provide you with a notice disclosing the portion of your premium, if any, attributable to coverage for terrorist acts certified under the Terrorism Risk Insurance Act.

Your premium for certified terrorism coverage is **$17.00** . This amount does not include any charges for the portion of loss that may be covered by the United States government under the Act.

**If you choose to accept this offer, this form does not have to be returned.**

**You may choose to reject this offer by signing the statement below and returning to us.** Your policy will be changed to exclude the described coverage.

**REJECTION OF COVERAGE FOR "CERTIFIED ACTS OF TERRORISM"**

I hereby reject the purchase of certified terrorism coverage on behalf of the Policyholder/Applicant. I understand

that this policy will provide no coverage for losses resulting from certified acts of terrorism, and an exclusion of certain terrorism losses will be made part of this policy.

_____        _____
Policyholder / Applicant's Signature*                   Named Insured / Business Name

_____        _____
Print Name*                                             Policy Number, if available

_____
Date*

*If rejected, signature required & completed form must be returned to E-Risk Services. Please contact your broker with any questions.