**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| IN RE: | | |
| GREEN COPPER HOLDINGS, LLC | ) | CASE NO. 25-10088-T |
| EIN # xx-xxx9708 | ) | Chapter 7 |
| | ) | |
| COPPER TREE, INC. | ) | Substantively Consolidated |
| EIN # xx-xxx6608 | ) | |
| | ) | |
| THE INN AT PRICE TOWER INC. | ) | |
|      Debtors. | ) | |
| _____ | / | |

**CLAIMANT PICTORIA STUDIOS USA, INC., (Claim No. 14),  AND CLAIMANT
TAKTIK ENTERPRISES, INC. (Claim No. 4) OBJECTION TO CLAIM NO. 22,
CLAIMANT MARK HASKELL, AND NOTICE OF OPPORTUNITY TO BE HEARD**

COMES NOW **PICTORIA STUDIOS USA, INC., (CLAIM NO. 14)**, and, Claimant

**TAKTIK ENTERPRISES, INC. (Claim No. 4)** by and through their undersigned counsel and

hereby files this Objection to Claim No. 22, filed on August 8, 2025, and Notice of Opportunity to

be heard, and as grounds thereof states as follows:

1.      On August 8, 2025, Claimant Mark Haskell filed Claim No. 2 in the amount of

$176,107.55. (*See*, Main Document).

2.      This Claim is a mouthful and demonstrates the amount of alleged insider influence,

self-gain, breaches of contract and fiduciary, self-interest and possible collusion; any and all of

which should warrant a dismissal of claim.

3.      To begin with, the Debtor's holding company is Copper Tree Inc.  The shareholders

of Copper Tree Inc., are of the opinion that Cynthia Blanchard and Paul Aubert's opening and use

of Green Copper Holdings, LLC, a New Mexico entity, is improper and in violation of the

Shareholder Agreements effecting Copper Tree Inc.. If Green Copper Holdings was established

against shareholder considerations the formation of Copper Green Holdings LLC would be invalid, then subsequent agreements it signs upon are also corrupted and void such as the one's here.

4.      Claimant, Mark Haskell, identifies the following Exhibits to support his claim 22:

    a.  Attachment No. 1, appears to be a rundown of unknown and not identified Master Card charges beginning July 10, 2023.

    b.  Claim 22, Attachment 2, is a collage of 6 checks written from Haskell to the Inn at Price Tower beginning September 2023.  At all times material hereto, Mr. Haskell was a board member or Trustee of the Inn at Price Tower and an insider of Copper Tree Inc.  Checks written to the Inn at Price Tower were for the benefit (partial or otherwise) of Mr. Haskell.  (See, example of Board Meeting Minutes, attached hereto as Exhibit "1").

    c.  Claim 22, Attachment 3, appears to be Mr. Haskell's Citibank card statements since February 2023.

    d.  Claim 22, Attachment 4, is an April 16, 2024 Settlement and Release Agreement entered into by and between Cynthia Blanchard for Copper Tree and Mark Haskell for PTAC.

5.  **Important Dates to know**:

    a.  Purchase and Sale Agreement between PTAC and Green Copper Holdings, LLC was entered into on an undated date, however, its Exhibit A (Loan Service Agreement) has the date March 7, 2023 which incredulously was entered into by and between Mark Haskell and Green Copper Holdings, LLC.

    b.  The Bill of Sale for the Price Tower was conveyed March 7, 2023 from PTAC to Green Copper Holdings, LLC.

    c.   Attachment 4, Settlement and Release Agreement between Mark Haskell representing PTAC, and Cynthia Blanchard allegedly representing Copper Tree, Inc., effective April 16, 2024.

    d.   Case 25-10088-T Claim 23 Filed 08/11/25 Attachment 2 Pg 29 of 43, Administrative Service Agreement between PTAC and the Inn at Price Tower, dated March 7, 2023.

    e.   Loan Servicing Agreement, dated March 7, 2023, between Mark Haskell and Green Copper Holdings, LLC.

    f.   Stock Transfer from PTAC to CT Operations, LLC, an Oklahoma LLC, dated May 3, 2023.

6.  **<u>Attachment 4</u>**: April 16, 2024 Settlement and Release Agreement

    a.   Working backwards we start with Attachment 4, "Settlement and Release Agreement". This Agreement is entered into by none other than Mark Haskell as a claimed representative of Price Tower Arts Center (PTAC), and, Copper Tree Inc. <u>It shows an effective date of April 16, 2024, a year after PTAC sold the Price Tower to Green Copper Holdings, LLC. Green Copper Holdings, LLC would have and did already take possession of the subject property and therefore there would be no legal basis to enter into this Agreement absent collusion or breach of fiduciary responsibilities on both ends, as well as insider dealings</u>.

    b.   Claim 22, filed by Mark Haskell is against Green Copper Holdings, LLC **not** Copper Tree, Inc. Wherefore, Attachment No. 4 has no baring or relevancy against a completely separate and distinct legal entity and this Claim should be dismissed. Reliance upon a contract whose parties are not against the Debtor is misplaced, as unless it is a third person contract, which it is not, the obligations do not transfer.

c.      The second WHEREAS clause states that Mark Haskell as representative was contractually bound to "deliver any donations received by PTAC after the Acquisition Date". The fifth WHEREAS clause is an admission of guilt or breach stating that "… certain donations received by PTAC after the Acquisition Date were not properly allocated to the Company, and were instead utilized to pay certain of PTAC's alleged obligations to the PTAC Representative…." Without continuing, these two paragraphs admit a material breach of contract, in fact, first breach, which would terminate this agreement, with the only one who gained was the insider Mark Haskell. The admission of guilt or breach clearly states that donations to PTAC were used not for the purposes by which the donations were taken in, but to pay Mark Haskell or his bills. It is unknown whether the donors know this, but the amount Mark Haskell received is omitted from these WHEREAS clauses, as well as the purpose of the donations.

D.      The third and fourth WHEREAS clauses directly state that no consideration or insufficient consideration was tendered to Copper Tree as they refer entirely to derived insider personal benefits to Mark Haskell derived from a Service Agreement with Green Copper Holdings, LLC. It appears that Mr. Haskell has his alleged debtors confused and attempting to blur the distinctions between separate legal entities and infer consideration or obligations owed from one to another. This is improper and against corporate law. The fourth WHEREAS clause identifies a further breach by Mr. Haskell as PTAC representative again warranting the termination of the contract.

e.      It would appear that Attachment 4 should be stricken as it wrongfully attempts to merge distinct entities, separated responsibilities, lack of consideration, and improperly entered into agreements by and between insiders, engaged in self-help and possible collusion. Movants would also argue that Mrs. Blanchard did not have the legal authority to enter into these documents

and her general counsel Paul Aubert not only knew this, but refused to hold shareholder meetings, board elections, transparency, and voting so as to protect his own personal financial interests.

        f.        **No. 1**, **of Attachment 4**, is the **Waiver of Payments Due from the Company** section.  This section states:

> *As of the Effective Date, and subject to the rights and obligations set forth in this Release Agreement, the PTAC Representative hereby releases and discharges the Company, and all of its affiliates and representatives, from any and all obligations and responsibilities, whether known or unknown, pursuant to its relationship with the Company, and waives any claims based thereon. For clarity, the PTAC Representative agrees that the Company shall have no surviving obligation to pay any amounts due from it for any services provided to the Company, whether or not under the Services Agreement, with the exception of the remaining debt due to Representative after this settlement adjustment. For current employees, the Company will continue to pay wages as long as the Representative is still employed after this settlement, with the exception of the agreed settlement amount. The PTAC Representative understands that any outstanding debt owed to him/her will be paid upon the closing date and funding of any merger, sale, or acquisition of the* Company. [*Emphasis Added*]

        g.       The above clause is a full and complete release of any and all financial obligations and responsibilities.  All of Mr. Haskell's and PTAC's claims should end here and be summarily dismissed.  Mr. Haskell attempts to create an illusory exception by writing in, "*with the exception of the remaining debt due to Representative after this settlement adjustment.*" However, this "remaining debt" is a vague and ambiguous reference not a clear meeting of the minds and is illusory at best.  It is so ambiguous that there cannot even be an argument about interpretation as the alleged debt, its purpose, its

amount, the reason for this debt, is Mr. Haskell trying to pin it on PTAC or Copper Tree, Inc., or Green Copper Holdings, LLC, or maybe better yet, Cynthia Blanchard. Given the lack of transparency, this clause does not form an understanding nor a contractual term that isn't illusory.

      h.      Wherefore this attempt at carving out an exception should fail and be stricken from the Waiver of Payments Due Company clause.

      i.      Paragraph NO. 2, **Releases**. This paragraph is a full release from PTAC and the representative, i.e., Mark Haskell.  Pursuant to Paragraph No. 1 and No. 2, ALL of PTAC's (Claim 17) and Mark Haskell's claims (21, 22, 23) should be dismissed with prejudice.  Paragraph No. 2, attempts to create an exception by stating, "Except as to the obligations set forth in this Release Agreement….", but the only obligations are those identified within the WHEREAS clauses for which Mark Haskell, PTAC Representative, admits to breaching and receiving from PTAC donors and undisclosed amount of money that most likely was donated not to pay Mr. Haskell's credit card bills but for some higher charitable purpose.

      j.      Paragraph 5 (a): *Binding Effect*. This provision prohibits any transference of obligations to any third parties; applying to Copper Tree, Inc.  Green Copper Holdings, LLC would be a third party as it did not enter this Contract.  Claim 22 is against Green Copper Holdings, LLC.  Claim 22, should be summarily dismissed with prejudice or at a minimum this Attachment stricken.

7. **Attachment 3**: Mr. Haskell's Citibank card statements

    a.  These Citibank charges:

      i.      Go back to February 2023, before having anything to do with Green Copper's closing;

      ii.     Do not give descriptions as to what the charges are for, for whom, applied to what, nor the benefit derived by PTAC and/or Mark Haskell and having nothing to do with the Debtors;

      iii.    Nor is it possible from the statements to demonstrate and determine credits, off-sets, and adjustments. Where are the actual invoices;

      iv.    No legal consideration is shown to exist for Debtor to assume these charges.  Regardless, the Service Agreement with Green Copper Holdings, LLC referred to within Attachment 4 as being the basis (See third WHEREAS clause), clearly states that no debts can be assumed.  Mr. Haskell in this claim is asking just that; that somehow Copper Tree assumes the debt of Green Copper Holdings, LLC. This despite the release language contained within Attachment 4.

      v.     WHEREFORE, Movants move to strike Attachment 3.

8. **Attachment 2**: collage of 6 checks written from Haskell to the Inn at Price Tower

    a. Mark Haskell appears to have been writing checks to an entity that he was an insider with, i.e., the Inn at Price Tower.  ((See, example of Board Meeting Minutes, attached hereto as Exhibit "1").

  b. On or about May 3, 2023, PTAC allegedly sold 500 shares of the Inn to a third-party company CT Operations, LLC.  Corporate entities are legally distinct and can't generally be held responsible for each other's actions. *See, e.g., Agency for Int'l Dev. V. All for Open Soc'y Int'l, Inc.*, 591 U.S. 430, 435 (2020) ("[I]t is long settled as a matter of American corporate law that separately incorporated organizations are separate legal units with distinct legal rights and obligations.").

  c. Attachment 2 has no bearing on this claim against Copper Tree, Inc.  CT Operations, LLC is a legally distinct entity and cannot be held accountable.

 k. Furthermore, these checks prove nothing and describe nothing and say nothing.  Loans to CT Operations are an issue that Mr. Haskell has to take up with that third party.  Payments to Truity Bank are Objected to already by the Movants on August 16, 2025, Mr. Haskell's Claim 23.  Payroll issues might be part of the Service Agreement between Green Copper Holdings, LLC and PTAC.  For all of these reasons, Attachment 2 should be stricken and this claim denied.

9. **Attachment 1**:   An alleged run-down of unknown and not identified Master Card charges.

  a. Interestingly enough within the July 10, 2023 payment history, is a line that states: "*Excess funds donated to PTAC by Haskell for EIDL/SAMB - used by IPT 4,539.00*".  This document, Attachment 1, was unknown to the Movants at the time they responded/objected to Mark Haskell's Claim 22, however, Movants would incorporate this exhibit into their Objection to Claim No. 22, as it clearly states Mr. Haskell **donated** funds to the EIDL loan in 2020 for the benefit of his own

company.  This EIDL was a <u>prior debt for the sole benefit of PTAC</u> and arguably its principle and officer, Mark Haskell.  PTAC was the beneficiary of the EIDL loan and who gained from it, yet, Mr. Haskell is wrongfully attempting, without consideration, to have a different corporate entity assume the PTAC debt in full.  For what, to what end and what benefit to the Debtor.  Mr. Haskell is the insider who benefits from this move. This 2020 loan was used and utilized by PTAC and did not serve or benefit the Debtor, however, it did keep Mr. Haskell's company afloat so that he might gain from it.  Movants would opinion this to be a non-permitted, unauthorized, breach of fiduciary obligations or collusion by and between Mark Haskell, Cynthia Blanchard and Cynthia's General Counsel Paul Aubert.

    b.  These statements prove nothing and describe nothing and say nothing.

    c.  Wherefore, Movants move to strike Attachment No. 1 as well as object to this claim.

10. Pictoria Studios USA and Taktik Enterprises intend to seek an order denying Amended Claim No. 22 in its entirety or allowing such Claim in a limited equitable sum under quantum meruit principles.

WHEREFORE, the Movants hereby pray that this Court grant the relief sought herein, including but not limited to:

    a.  A denial of claim 22 in full or in part;

    b.  Limiting any recovery to only those instances allowed pursuant to the Federal Bankruptcy Code and Federal Statute.

    c.  Values limited to value pursuant to 11 U.S.C. § 502(b)(4).

    d.   Any and all other relief the Court finds prudent, including in light of the above, the

preemptive denial of claim 22.

RESPECTFULLY SUBMITTED ON THIS 19TH DAY OF AUGUST, 2025.


/s/ *Craig A. Brand, Esq.*

By: _____
    Craig Alan Brand, Esq.
    FBN: 896111
    Tel. (305) 878-1477
    6462 S. Jamaica Circle
    Englewood, Colorado 80111

    **On behalf of and for:**
    PICTORIA STUDIOS USA, INC. (Claim No. 14), and
    TAKTIK ENTERPRISES, INC. (Claim No. 4).


## NOTICE OF OPPORTUNITY FOR HEARING

Your rights may be affected. You should read this document carefully and consult your attorney about your rights and the effect of this document. If you do not want the Court to grant the requested relief, or you wish to have your views considered, you must file a written response objection to the requested relief with the Clerk of the United States Bankruptcy Court for the Northern District of Oklahoma, 224 South Boulder, Tulsa, Oklahoma 74103 no later than 33 days from the date of filing of this request for relief. You should also serve a file-stamped copy of your response or objection to the undersigned movant/movant's attorney [and others who are required to be served] and file a certificate of service with the Court. If no response or objection is timely filed, the Court may grant the requested relief without a hearing or further notice. The 33 day period includes the three (3) days allowed for mailing provided for in Fed. R. Bankr. P. 9006(f). *The moving party shall calculate the appropriate response time. If a response time is prescribed by applicable statute, rule, or order, the moving party shall add to the prescribed response time unless service is accomplished by hand delivery, the three (3) days required for mailing under Bankruptcy Rule 9006(f). If a response time is not prescribed by applicable statute, rule, or order, the response time shall be fourteen (33) days, which includes the three (3) days required for mailing under Bankruptcy Rule 9006(f).

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of this foregoing Objection to Claim 22 of

Mark Haskell was ECF filed with the Clerk of Court on this 18th  day of August, 2025.


/s/ *Craig A. Brand, Esq.*

By: _____

    Craig Alan Brand, Esq.
    FBN: 896111
    Tel. (305) 878-1477
    6462 S. Jamaica Circle
    Englewood, Colorado 80111

    **On behalf of and for:**
    PICTORIA STUDIOS USA, INC. (Claim No. 14), and
    TAKTIK ENTERPRISES, INC. (Claim No. 4).