UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OKLAHOMA

IN RE:
GREEN COPPER HOLDINGS, LLC )   CASE NO. 25-10088-T
EIN # xx-xxx9708                            )   Chapter 7
                                                      )
COPPER TREE, INC.                      )   Substantively Consolidated
EIN # xx-xxx6608                            )
                                                      )
THE INN AT PRICE TOWER INC. )
         Debtors.                               )
_____/

## DECLARATION OF PATRICK CASTAGNA

COMES NOW, PATRICK CASTAGNA and on this 8th day of August, 2025, hereby make the following legal Declaration from known, firsthand knowledge, and state:

1. My name is Patrick Castagna and I am over the age of 18 and make this Declaration from first-hand knowledge.

2. I am aware that this Declaration shall be used in a legal proceeding, as styled above, and might be used in other legal proceedings.

3. I am the managing member of Oklahoma Ventures, LLC, a Florida LLC, located at 2050 N DIXIE HWY, Ste. 313, WILTON MANORS, FL 33305.

4. I have been professionally involved in the art appraisal and re-sale industry for more than 20 years; having vast professional experience in evaluating, appraising, selling art work, jewelry, and estates.

5. Approximately late April or early May 2023, I began working with Cynthia Blanchard who I was introduced, by Dale Takio and Mike Moran, as the CEO of Copper Tree, Inc. ("Debtor"). Mrs. Blanchard instructed me to work with Takio and Moran, but that ultimately she would be making final decisions. My job was to explore and investigate the Price Tower's artwork and collectables, conduct a valuation and look for buyers. I worked on this project until early 2024.

6. Shortly after beginning work on the project, Mrs. Blanchard called me to inform me that any conclusions I learn of or come up with, I am to report those directly to her and not to Takio or Moran, nor to another third party working on raising capital for the company whose name was Ken Greenberg. I found this instruction highly suspect especially as myself and my staff were working regularly with Takio and Moran and had to rely upon them to provide me with much of the information, photographs, videos, live feeds and employee relations in order for me to do my work.

7. I had to learn the depth and scope of the artwork and collectables held by the Price Tower. I had multiple, very personable conversations, which were done by video, audio and

Document Ref: CEPTY-KXOES-NCQJZ-3OFRS

through an app called Telegram with Cynthia Blanchard. Mrs. Blanchard began requiring me to use Telegram in late 2023 early 2024 for most of our communications as the messages would disappear.

8. I learned directly from Cynthia Blanchard that she had furnished much of her home in Bartlesville, Ok., from selected pieces of artwork and furnishings taken from the Price Tower. I had several video calls with Mrs. Blanchard where she showed me the works while she walked through her home. One of the cabinet pieces I would have purchased on the spot, but she was not ready to part with it.

9. Mrs. Cynthia Blanchard told me that she had 5 climate-controlled warehouses with art pieces and furniture that she and her husband had removed from the Price Tower; pieces were being sold so that she could pay what she needed. She said that if I could help raise capital she would have more pieces of art that could be bundled for me to sell and thus earn my commission.

10. During one of the video calls, Mrs. Blanchard told me that she had sold one of Frank Lloyd Wright's desks to Oprah Winfrey for $185,000. I cannot confirm or deny.

11. In addition to working with Dale Takio and Mike Moran, I was also in touch with Deshane Atkins the curator of the artwork. Ms. Atkins told me that she was an employee of PTAC but reported to Mrs. Blanchard now that the artwork belonged to her.

12. Through Deshane Atkins, I spoke to Mr. Mark Haskell and Donna Keffer who informed me that they worked for the Price Tower Art Center (PTAC), who sold to Mrs. Blanchard the Price Tower and all of the artwork and collectables. I asked and they confirmed that the artwork and collectables was free and clear and that there was no encumbrances. I asked them both, separately, what was taking so long for me to just be able to bundle all the art work and begin making a sales catalog. Mrs. Keffer told me that Cynthia was very attached to the artwork and really didn't want to sell them or put these pieces into the open market; that a sale was a last resort and the reason for the delay.

13. Mrs. Blanchard also informed me that among the items stored in the warehouses were four additional Robert Indiana pieces similar to the "66" sculpture currently displayed at Unity Park across from the Price Tower. At least one of these works was of exceptional value, having been numbered "1" by the artist. I conducted my own research and confirmed the provenance of these pieces, including the exact dates they were donated to the Price Tower Art Center and the family who made the donation. I informed Mrs. Blanchard that I had a buyer interested in acquiring the entire Robert Indiana collection. She responded that she would consider the offer but would need to discuss the matter with others before proceeding. She also noted that the four smaller works required restoration. A collection of this nature could potentially be worth millions of dollars.

14. I told Mrs. Blanchard that, based on the value of the artwork and collectibles, I could bring in a business associate, JDS Ventures, Ltd. Its president, Dominick Arcamone, was willing to provide a hard money loan of up to one million dollars. The arrangement required that Mrs. Blanchard transfer physical possession of the artwork and collectibles as collateral. In the event of default, Mr. Arcamone would have the right to liquidate the pieces directly, in the same manner as a pawn arrangement.

15. Cynthia was also using JDS Ventures and Mr. Arcamone to find hard money lenders. On one call, she included Mr. Arcamone and her attorney Paul Aubert who told us that he would draft an agreement providing Mr. Arcamone 4%gross of any monies raised and that the same would go for me.

Document Ref: CEPTY-KXOES-NCQJZ-3OFRS

16. Cynthia also showed me, by video, from one of the warehouses, multiple Japanese wood cuts who she represented were created by Hokusai as part of the Shin'en Kan Foundation as well as from and Kiyoshi Saito. Deshane Atkins, told me that among these works were as many as sixteen from Hokusai's Thirty-Six Views of Mount Fuji, including The Great Wave. Mr. Takio further confirmed that many of these woodcuts appeared on the collection inventory but were missing from the Price Tower collection room on site. These pieces could date to the late 1700s and, even in poor condition, would still command significant value.

17. Mr. Arcamone was able to get a potential loan for $5,000,000, from a Mr. Jack Trifero, however, this went sideways when Mr. Trifero told me that he had became highly uncomfortable given all of Mrs. Blanchard's demands and needs for secrecy and asked me how well I knew her, her background, what was going on with the business, partners, etc. I told him that I really didn't know but was just there to do a job. He backed out after Kimberly Luis from Apex Closings put all the paperwork together. However, as I understand things, this loan was ready to close.

18. I also was able to introduce Mrs. Cynthia Blanchard to Ali Sandro, who was an auctioneer at Christie's Global in the United Kingdom. Soon after that introduction, Mrs. Blanchard circumvented me and began dealing directly with Mr. Sandro. I don't know if anything resulted.

19. Mrs. Blanchard also told me that, in prior years, PTAC had used certain artworks as gifts to family offices that made large donations or charitable contributions. She explained that these gifts were typically Frank Lloyd Wright–designed copper tiles taken from the exterior of the Price Tower. She told me she would provide a list of these family offices so that I could make contact, but I never received it. In addition, both Mrs. Blanchard and Ms. Donna Keffer told me that PTAC had received Bruce Goff-inspired artifacts that were originally lent to the Price Tower museum after the 1996 fire at the Shin'en Kan Foundation. According to them, many of these highly valuable pieces were subsequently distributed to family offices.

20. Drawing on my professional network and prior work with this collection, I am uniquely positioned to assist the Debtors' estate in realizing the maximum value from these assets. I am prepared to purchase selected works myself where appropriate, and I am also prepared to act as the exclusive broker for the remaining artwork and collectibles, ensuring their orderly liquidation and providing immediate cash value to the estate.

DONE, SIGNED UNDER PENALTIES OF PURGERY. I SWEAR THAT THE INFORMATION CONTAINED HEREIN IS TRUE AND BASED ON FIRSTHAND KNOWLEDGE.

*Patrick Castauga*
Patrick Castagna

Patrick Castagna
Managing Member
Oklahoma Ventures, LLC

Document Ref: CEPTY-KXOES-NCQJZ-3OFRS

# CERTIFICATE *of* SIGNATURE

**REF. NUMBER**
CEPTY-KXOES-NCQJZ-3OFRS

DOCUMENT COMPLETED BY ALL PARTIES ON
09 SEP 2025 03:02:19 UTC

| SIGNER | TIMESTAMP | SIGNATURE |
|---|---|---|
| **PATRICK CASTANGA** <br> EMAIL <br> PC.21@ICLOUD.COM | SENT <br> 09 SEP 2025 03:01:34 UTC <br> VIEWED <br> 09 SEP 2025 03:02:02 UTC <br> SIGNED <br> 09 SEP 2025 03:02:19 UTC | *Patrick Castauga* <br> IP ADDRESS <br> 140.248.0.42 <br> LOCATION <br> HIALEAH, UNITED STATES |

**RECIPIENT VERIFICATION**

EMAIL VERIFIED
09 SEP 2025 03:02:02 UTC

Signed with PandaDoc

PAGE 1 OF 1

