## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| IN RE: | | |
| GREEN COPPER HOLDINGS, LLC ) | CASE NO. 25-10088-T | |
| EIN # xx-xxx9708 ) | Chapter 7 | |
| ) | | |
| COPPER TREE, INC. ) | Substantively Consolidated | |
| EIN # xx-xxx6608 ) | | |
| ) | | |
| THE INN AT PRICE TOWER INC. ) | | |
| Debtors. ) | | |
| _____ / | | |

## MOVANT'S EXPEDITED OR EMERGENCY MOTION FOR CONTINUANCE OF THE OCTOBER 10, 2025 HEARING REGARDING ECF 156 & 156-1

COMES NOW the Movants' Pictoria Studios USA, Inc. ("Pictoria") and Taktik Enterprises, Inc. ("Taktik") by and through the F.R.C.P. 16, and their attorney, move this Court for an Expedited Ruling on Movant's Motion to Continue the October 10, 2025 Evidentiary Hearing and states:

I. **Background and Fact Summary Warranting The Need For A Continuance**:

1.  On September 2, 2025, a host of matters were set before the Honorable Court at 10:30 a.m. One of those matters was the Trustee's Motion to Settle Claim with the Frank Lloyd Write Conservancy ECF 156 & 156-1 for which the Movants' have objected.

2. The other matters involved objections to various claims and the permitting of discovery to flush these claims out as to their appropriateness and legitimacy.

3. The Court issued on September 4, 2025 ECF 276, which states in part:

*IT IS THEREFORE ORDERED that Limited Discovery shall be completed by September 30, 2025.*

*IT IS FURTHER ORDERED that an Evidentiary Hearing regarding the Trustee's Notice and Motion to Settle Disputed Matter and Notice of Opportunity for Hearing will be set for October 10, 2025, at 10:00 AM at 224 S. Boulder, Courtroom #2, Tulsa, OK 74103.*

4. The hearing date was chosen due to an opening amongst all however, in retrospect the Movants believe the deadlines are simply to short and unrealistic. The problem encountered during the hearing was the undersigned is on a business trip the second half of October and hence with so many involved, and the undersigned calendar filled in order to take this business trip, a date was finally found fitting for all. Hasty decision as the interests of justice, fair dealing, transparency and the proper judgement requires a further reaching date so that true and proper discovery can be engaged as opposed to a rushed and ill-prepared hearing.

5. The undersigned is a sole practitioner who not only has a lot of cases pending and client causes to champion, but is preparing for a very important, out of country business trip that has tremendous implications and utmost importance. While the undersigned's calendar is not the problem of the Court, it is a reality that equity and fair principles must take into account. The allowance of additional time to complete discovery with shortened time periods to answer written discovery or subpoenas is warranted and would not hinder or prejudice anyone. I'm sure the other side would like to try for a win based upon ambush, surprise or ineffectiveness of counsel, but that is what the legal system has been designed to protect against.

6. <u>Diligence In Working This Case</u>. Despite everything, it cannot be argued that the undersigned has not been diligent in working this case. <u>Just since the date of the last hearing</u>, not including the telephone calls and the emails to and with other third parties, potential or actual witnesses, claimants, claimant's counsel, or the trustee, the undersigned has been directly tied to reviewing and/or responding to: <u>see</u>, ECF #s": 282, 283, 284, 285, 286, 287, 289, 292, 293, 294, 295, 296, 297, 298, 299, 300, 301, 303 & 304, as well as having to Answer the Trustees Interrogatories to both clients, the Trustees Requests for Production to both parties.

7. <u>11 U.S.C. § 704(a)(7) Violations</u>. The undersigned and his clients believe that they are fighting an uphill battle and instead of getting the cooperation needed, from those who hold the obligation to provide it, difficulties continue to exist which have only added to the delay, the suspicions, and the mounting frustrations. If in fact the Trustee has good cause and a good faith basis to settle with the Conservancy he has refused through his counsel[1] to show this information to the undersigned despite repeated requests which could, if he is correct, narrow or terminate the undersigned's position in this dispute. Hence, formal discovery is now realized as needed and necessary as to the Trustee too. This position and happenstance have come as a new surprise to the undersigned.

8. <u>Lack of Clean Hands</u>. This bankruptcy case is inundated with so many twists and turns, overlapping but needed to be further developed with evidence of what the Movant's believe to be a large and improper cash grab, and from the undersigned's filings, I'm sure the Court can see that the Movant's do not believe many of the cast of characters are playing with clean hands.

9. <u>Need For Additional Time</u>. The Movant's are not in the position of the Trustee, meaning that the Trustee is certainly armed with much more information, documentation, data

---

[1] See, Exhibit "A"

(digital and otherwise), then the Movants and it is the Trustee's motion. However, when asked by a Claimant to explain and show why such a motion is worthy, transparency and explanation should be provided not forcing a claimant into the position of expensive discovery and depositions. The Trustee has present access to all of the Debtors data, documents, electronics, cloud based information, on the date of the filing, while the Movants do not. The Movants have enough information for a good-faith beginning but are needing more in order to properly prove up the validity and authenticity of many of these claims and settlement offers, including the Motion to Settle with the Conservancy. Without delving into all of the issues in contention, the Movants do not believe that at this time, the settlement really is within the best interests of the estate and claimants. Discovery would materially resolve some of these contentions and hopefully enough to create a settlement atmosphere.

10. <u>Effective & Proper Discovery is Necessary to Effectuate Truth and Justice</u>. ECF 276, has given the Movants just over a month to conduct discovery and be ready for the evidentiary trial. Since the September 2, 2025 Hearing, Movants have been responding to discovery and working through this entire bankruptcy as the docket demonstrates. Getting ready for this hearing, has been a more difficult task then expected as Movants are attempting to obtain relevant data not just for purposes of deposing witnesses, but for the hearing itself. Cross examination information comes before the taking of a deposition as well as whatever relevant data can be obtained to properly formulate questions and issues. Movant's subsequent to the hearing believed that they could provide the undersigned with such information, however, their optimism did not encompass the difficulties in retrieval. As the Movant's never thought of being in the position they are in now, they never knew to save their emails and communications in such a way as to quickly later

find them. Thus, this side has been drudging through the process of finding the best evidence to use for purposes of depositions and more time is needed.

11. <u>Data is Slow To Come By</u>. While a lot of data is within different cloud space held by the Movants, the data was never inventoried, cataloged, placed into labeled files and therefore finding this information is tedious yet with reasonable time attainable. The Movants are asking this court for sufficient time for quick discovery and by shortening response time the delay would not be prejudicial to the Parties involved.

12. <u>Movant's present learning and internal investigation supports a Continuance, as follows</u>:

    a. <u>First</u>, Movants do not believe that the Claimant even has a claim. Movants have filed an Objection to the Conservancy's claim as well as an Objection to the Motion to Settle. The Conservancy is asking that its attorney fees be paid from a District Court Case, i.e., Case No. CJ-2024-237, in the District Court for Washington County, Oklahoma, where the Debtor was the Plaintiff and the Conservancy the Defendant. Debtor filed a Sworn Petition in the District Court Case of CJ-2024-237. The Plaintiffs were Mrs. Blanchard, Copper Tree and Green Copper Holdings. The Defendant was the Conservancy who filed an Answer and counter-claim. The Plaintiff then filed a Motion to Dismiss the Counter-Claim for which the Defendant responded and the case was stayed shortly thereafter. The case appears to have been stayed due to the bankruptcy filing and no adjudication whatsoever was made. <u>If the claim has no basis neither does the attempt at settlement</u>. From the docket and court records, nothing supports attorney fees of $170,000 and that is assuming the Conservancy is even entitled to such a award.

b. Interestingly enough, within this District Court Case, the Conservancy pled that Mrs. Blanchard sold property belonging to the easement, improperly, and Mrs. Gordon, on behalf of the Conservancy, as the Executive Director filed an affidavit to this effect. (See, affidavit as Exhibit "B"). Claim 16-1, filed by the Conservancy also states:

*… Debtor violated the Easement by selling items custom-designed by Wright for Price Tower, including pieces specifically included in the 2022 Inventory List. While Creditor is not sure about the total value or number of the items sold by Debtor due to its unwillingness to provide an accounting to Creditor, Creditor knew that Debtor received at least $150,000 for one of the tranches of items it sold to a third-party.*

*4. Because of this improper sale of items on the Inventory List and Debtor's blatant violations of the Easement, Creditor engaged Oklahoma counsel to assist with the matter.*

13. Since The September 2, 2025 Hearing, The Movants Have Learned Of New Evidence. On April 24, 2025 Examiner Enterprise Report by Andy Dossest: https://www.examiner-enterprise.com/story/news/2025/04/24/price-tower-frank-lloyd-wright-artifacts-where-what-happened-missing-bartlesville/83156289007/?fbclid=IwY2xjawM5i85leHRuA2FlbQIxMQABHj6sdejD7ej4YIci-z82knv3LaomnBHRLdFUiFn5AgHLrfAC4gU9a1n7bNi-_aem_W06gTJIQ7xrOKj4PJRA7xw
    a. Key Points:
        i. Conservancy confirms Frank Lloyd Wright artifacts are missing from Price Tower.
        ii. Court records show protected items were sold despite preservation easement.
        iii. Gallery in Dallas listed Price Tower artifacts for nearly $1 million.
        iv. Some artifacts not covered by legal protections were also sold.
    b. Executive Director Barbra Gordon said the Conservancy verified the loss during a recent easement visit to the building, which has stood vacant since August 2024.

      i. "We took our easement list, the collections list, and we just went through the entire building and the annex," Gordon said.

      ii. "We noted items that we already knew were missing — there were no surprises."

      iii. The Examiner-Enterprise reported in April 2024 that historic artifacts were being loaded into a box truck outside Price Tower. Through the EE's investigation, it was revealed that the Price Tower's owners sold a number of significant items — including pieces designed by Frank Lloyd Wright and Bruce Goff — despite earlier promises to preserve the building's legacy.

      iv. [Court documents revealed accusations](#), which were confirmed by the Conservancy's audit, that Blanchard sold three copper relief panels, two copper stools, two copper tables and a rolling display — items considered protected under the preservation easement.

c. The *Examiner-Enterprise* [reported in April 2024](#) that historic artifacts were being loaded into a box truck outside Price Tower. Through the *EE's* investigation, it was revealed that the Price Tower's owners sold a number of significant items — including pieces designed by Frank Lloyd Wright and Bruce Goff — [despite earlier promises to preserve the building's legacy.](#)

      i. Among the most significant losses was the Shin'enKan gate, a prominent feature displayed outside the tower since 2002. Originally from Joe Price's Bruce Goff-designed home that burned down in 1996, the gate was dismantled, loaded onto a truck, and shipped to Dallas, where it and other items resurfaced at [20cdesign, a high-end design gallery.](#)

    d. Listings on 20cdesign and the online marketplace 1stDibs.com show several Frank Lloyd Wright-designed items from Price Tower with a combined asking price of approximately $1 million. Not all artifacts sold by Blanchard have been publicly accounted for, and the full extent of what items not protected under the Conservancy's easement removed from the Tower remains unclear.

    e. The following was posted on April 26, 2025 in the Private FB group **The Price Tower Conversation** https://www.facebook.com/groups/823961269872643/search/?q=20c%20design

14. **The Importance Of Showing This Theft Of Assets Is**. The above information is relevant for the following purposes.

    a. The Conservancy does not have an ownership right to the assets just because they have an easement, the owner at the relevant time was Copper Tree, Inc and Green Copper Holdings LLC. The Conservancy has a protective easement as to certain aspects of the Price Tower building and the rest is argument as set forth within the District Court Case. ==In order for the Trustee to demonstrate that his contention of this Settlement being in the best interest of the estate is correct, he must prove that (1) the Conservancy even has a claim; (2) that the easement agreement applies to the Debtors, (3) that the easement agreement gives the Conservancy the right to an award of attorney fees, (4) that the items the Trustee is seeking the Conservancy to turn over to the new purchasers of the Price Tower, i.e., McFarlin Group, are not (a) stolen or ill gotten products belonging to the estate, and (2) who would be the owner==

    **of these items for if the easement agreement is inapplicable then the items would have be be returned to either the Estate of the McFarlin Group. To do this, much of the District Court case needs to be argued herein and discovery is warranted and necessary.** From what the evidence provided and obtained so far, the Movants believe that these items are coming back to the Estate and that there is no legitimacy to the easement's applicability nor the claim for attorney fees. However, limited discovery in these areas is required just to be certain.

b. Ownership is important to this bankruptcy and given the Court's Order as to the sale of the Price Tower and all within as of the date of the bankruptcy, sorting ownership between the Debtors and the new owners is at issue. ONLY discovery will sort through who owns what.

c. The Movants have also just obtained two invoices signed off by Cynthia Blanchard to 20cDesign in the amount of $150,000. As the Court might recall, the Movants had placed Mrs. Blanchard, 20cDesign and the Conservancy on notice of the Evidence Preservation Demands which set forth items taken from the Price Tower are believed to be ill gotten without proper approvals. (See, the invoices attached hereto as Exhibit "C"). To confirm this, discovery is absolutely necessary which would include deposing Mrs. Blanchard. Presently Mrs. Blanchard has moved the Court for a Protective Order against being deposed.

d. The Conservancy had knowledge of the Evidence Preservation letters and as stated within their defense/offense of the District Court Case knew of the alleged absconding of artwork more than a year prior to their purchase from 20cDesign which was only recent. **Wherefore if discovery proves that the items in question**

**were not permitted to be sold, then the items could be retrieved back and the Conservancy would not be able to claim any ownership interest**. These assets are worth potential multiples of what is being claimed in the Proposed Settlement Agreement.

e. <u>Certain Claims Within The District Court Case Needs To Be Tried Inside This Bankruptcy Proceeding.</u>  <u>Secondly</u>, the issues in District Court Case, i.e., Case No. CJ-2024-237, in the District Court for Washington County, Oklahoma, involve the alleged easement which is the second basis for the Trustee's ECF 156 Motion to Settle.  <u>**Upon reflection, the Trustee's Motion is now requiring certain claims of this district court case to be tried during an evidentiary hearing**</u>.  No discovery was taken in the District Court case, but discovery certainly is needed and necessary and without this ability the Movants, who are also shareholders of the Debtor, would be forever and irrevocable prejudiced and the remaining claimants might lose out should these items be worth multiples of what they were sold for by Mrs. Blanchard and paid for by the Conservancy.

f. This alleged easement not only is relevant to the Conservancy's claim and the Trustee's Motion as they are attempting to create an adverse settlement to the Debtors shareholders and the other claimants in this case which gives the Conservancy a supposed $170,000 credit towards its alleged attorney fees, which is completely denied and in dispute as detailed in the Claimants' objections, but also centers around whether or not the artworks in the possession of a third party 20C Designs can be handed over to the McFarlin Group.  As stated in the Movants'

Responses/Objection to the Settlement, the Movants do not believe that this third party was entitled to be in possession of these artworks, that these artworks belong to the shareholders of the Debtor and are not covered under any easement theory, and that there is the alleged probability of improper actions having taken place as to these art pieces. Real and concerted discovery is needed and necessary to sift through these issues and allow justice to properly land. If discovery demonstrates wrongful behavior, this evidence should resolve a lot of claims as many of these claims filed herein are connected, but also the Movants will have identified many valuable art pieces that should provide great value to the estate and claimants. The Trustee is seeking to avoid these pre-petition transfers? The Movants are saying "hold on here" as it is believed those transfers were improper and that this artwork belongs to its rightful owners which is the Debtor and its shareholders or contrary to the Trustee and Conservancy's representations, to the McFarlin Group. <u>The witnesses and third parties that are believed to be in possession of these artworks are located in the State of Texas</u>.

g. <u>Thirdly</u>, As the Court can see, through the Movants objections to Cynthia Blanchards claim, multiple third party witness affidavits have been attached to support Movants cause while the trustee has produced anything to the contrary. The Conservancy has been most cooperative in providing documentation and counsel for the Conservancy and the undersigned are doing their best to reach an accord on the issues. It is with great hope that the Trustee joins with the undersigned and Mark Craige, Esq., for the Conservancy and help create a reshaped settlement

agreement or at least work through the issues with the undersigned during discovery in an effort where everyone is comfortable to create a result.

h. Discovery is materially important as it supports the proposition that the artwork belongs to the Debtor and that the easement is not in play here. Given Mrs. Blanchards Motions for Protective Order and Replys, the Court can see that Mrs. Blanchard stands firmly against the Movants and their attorney and it is now believed that Mrs. Blanchard will not be forthcoming as it relates to the facts and issues involving the District Court case that she, herself, caused to be filed and averred to. <u>This new surprise</u>, <u>taking place AFTER the September 2, 2025 Hearing</u> and Scheduling, in Mrs. Blanchard's Reply to her Motion For Protective Order has caused an unforeseeable "monkey wrench" which complicates the discovery process.

Given Mrs. Blanchards Reply Brief, the need for her deposition is paramount and material. Mrs. Blanchard was the individual on behalf of the Debtor that filed the lawsuit against the Conservancy concerning the easement and might be the person with the most knowledge or would know who would be. However, the Conservancy has evidence that Mrs. Blanchard sold off artwork that she should not have. As lawsuits must be filed in good faith and not fraudulent, there might have been a way to handle this process without the taking of Mrs. Blanchards deposition. However, given her recent outbursts of hostility and aggression, the need to put her under oath is apparent. Due to the pending motion for protective order the undersigned cannot depose her until the Court rules and with holidays and a fast approaching hearing date there does not appear to be the time.

    i. <u>Fourthly</u>, If the above is not enough, the Movants as stated in their Objection/Response have uncovered the possibility of adverse issues concerning charitable contributions that the Conservancy has sought and possibly obtained which circle back around to the District Court case and the matter of the alleged attorney fees. All of this information is within the possession and control of the Conservancy and probably the attorney's who billed the $170,000. $170,000 for the status of a District Court contract case is certainly up for debate and worthy of a discovery inquiry. Furthermore, the Movants have uncovered evidence that legal fees might have been paid by charitable donations or by donated time. See, Movant's filed Objection to Claim 16.

j. <u>Fifth</u>, the Trustee's Proposed Settlement ECF 156-1 states:

    i. Paragraph J of the Proposed Settlement Agreement is a representation that the items in issue <u>were improperly removed and were not on the property at the time of the sale</u>. This paragraph further states that the Conservancy wishes to release 20C.

    ii. If the above paragraph (J) is true, then the Trustee just made a representation that the items at issue were off property and thus would not fall under the Court's sale order. This is important as it would go to the matter of whose property these items ultimately go back to.

k. <u>Sixth</u>, we have the Conservancy in their own filed claim at Case 25-10088-T Claim 16-1 Filed 06/06/25 Main Document Pg 4 of 6, representing the following:

*3. On March 7, 2023, Debtor acquired Price Tower. Despite its full awareness of the Easement even before it acquired Price Tower, Debtor*

> *violated the Easement by selling items custom-designed by Wright for Price Tower, including pieces specifically included in the 2022 Inventory List. While Creditor is not sure about the total value or number of the items sold by Debtor due to its unwillingness to provide an accounting to Creditor, Creditor knew that Debtor received at least $150,000 for one of the tranches of items it sold to a third-party.*
>
> *4. Because of this improper sale of items on the Inventory List and Debtor's blatant violations of the Easement, Creditor engaged Oklahoma counsel to assist with the matter. Creditor's counsel tried to communicate with Debtor multiple times, but Debtor was unresponsive.*

**15. Legitimacy. Wherefore, in these Bankruptcy proceedings we have the Movants, the Trustee and the Conservancy all saying the same thing; that there are items which were improperly taken from the Price Tower.  . Thus, it comes back to who is the rightful owner, whether the easement applies, is the Conservancy entitled to attorney fees pursuant to an easement agreement that may or may not even apply to the Debtors and if wrongfully obtained items are in the public arena are they retrievable for the benefit of the Estate and thus creating a possibility of the claimants obtaining full recovery along with the interested parties such as the shareholders less the ones that might have taken by being in the wrong. As such, independent discovery is necessary and warranted to sort this out for the benefit of truth, justice, the equities involved in this Estate, and the best interest and legitimacy of these proceedings**

19. <u>Learning Of An Inventory And Follow Up Inspection</u>. *Between May and June 2022, Creditor surveyed the building and supplemented the Easement with an inventory list of building accessories (the "2022 Inventory List") covered by the Easement.*

    a. Since the September 2, 2025 hearing, the Movants have come to learn that the Conservancy has a follow up inspection done by an employee of the Claimant PTAC! This inspection was to further the Conservancy's 2022 Inventory List, *supra*.

    b. **The Movants have just learned of the individuals thought to be involved. Discovery is necessary to obtain a copy of this allegedly finalized inventory list. What this list will expectantly show is that the items in the possession of 20C Design, in whole or part, were not on property at the time and therefore not subject to the Court's Order of sale of the Price Tower and might also show that they are not part of the easement and therefore free to sell. This discovery will show who then is the rightful owner of the items located outside of the Price Tower at the commencement of the Bankruptcy proceedings. Again, the Conservancy is not the owner of these items but the only claim, which is contested, is a preservation easement over certain assets owned by either the Debtor or the new owners of the Price Tower.**

20. **<u>Deposition of the Conservancy</u>**. The date for the taking of the Conservancy's 30(B)(6) deposition which is now scheduled for October 6, 2025 just 4 days before the set hearing.

21. This Motion is made in the best interest of justice and fair dealing.

22. No prejudice would befall the Conservancy and the Trustee certainly will not experience any prejudice by the granting of a short continuance. Oppose, the denial of this Motion

would cause irrevocable and material harm to the Movants, to all shareholders of the debtor, to all claimants as if the Movants stand correct there shall be more potential assets and money in the estate for division which would include the Conservancy's claim should their claim stand.

23. The undersigned has shown good faith and diligence in the prosecution of its Objections, however, more time is required. Just simply too many moving parts and most of the connecting pieces are in the hands of others for which the Movants have to hunt for. Movants simply cannot perform the above stated within the month window provided to try this matter via evidentiary hearing.

WHEREFORE, Movants humbly and respectfully pray that this Court Order expedited Discovery Responses and a Continuance of this Matter for purposes of conducting reasonable discovery as well as any and all relief deemed just and proper.

## CERTICATE OF CLIENT KNOWLEDGE AND ACCEPTANCE

I hereby swear as Movant's attorney that the attorney's client has knowledge of and has approved the continuance.

/s/ *Craig A. Brand, Esq.*

By: _____

Craig Alan Brand, Esq.
FBN: 896111
Tel. (305) 878-1477
6462 S. Jamaica Circle
Englewood, Colorado 80111

**On behalf of and for:**
PICTORIA STUDIOS USA, INC. (Claim No. 14), and
TAKTIK ENTERPRISES, INC. (Claim No. 4).

## CERTIFICATE OF GOOD FAITH CONFERRAL

The undersigned certifies that on September 18, 2025, he communicated by email the subject Motion to Continue with the Trustee who opposes this motion, and on September 19, 2025 had a telephone discussion with counsel for the Conservancy who cannot agree to this Motion.

### NOTICE OF OPPORTUNITY FOR HEARING

Your rights may be affected. You should read this document carefully and consult your attorney about your rights and the effect of this document. If you do not want the Court to grant the requested relief, or you wish to have your views considered, you must file a written response objection to the requested relief with the Clerk of the United States Bankruptcy Court for the Northern District of Oklahoma, 224 South Boulder, Tulsa, Oklahoma 74103 no later than 7 days from the date of filing of this request for relief. You should also serve a file-stamped copy of your response or objection to the undersigned movant/movant's attorney [and others who are required to be served] and file a certificate of service with the Court. If no response or objection is timely filed, the Court may grant the requested relief without a hearing or further notice. The 7 day period includes the three (3) days allowed for mailing provided for in Fed. R. Bankr. P. 9006(f). *The moving party shall calculate the appropriate response time. If a response time is prescribed by applicable statute, rule, or order, the moving party shall add to the prescribed response time unless service is accomplished by hand delivery, the three (3) days required for mailing under Bankruptcy Rule 9006(f). If a response time is not prescribed by applicable statute, rule, or order, the response time shall be fourteen (7) days, which includes the three (3) days required for mailing under Bankruptcy Rule 9006(f).

### CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of this foregoing Emergency Motion for Continuance of Hearing, were served upon all those listed in the ECF system by electronic notice and those that were not by First Class U.S. Mail, pre-paid postage, on September 19, 2025.

/s/ *Craig A. Brand, Esq.*

By: _____

Craig Alan Brand, Esq.
FBN: 896111
Tel. (305) 878-1477

6462 S. Jamaica Circle
Englewood, Colorado 80111

**On behalf of and for:**
PICTORIA STUDIOS USA, INC. (Claim No. 14), and
TAKTIK ENTERPRISES, INC. (Claim No. 4).