# EXHIBIT B

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OKLAHOMA

IN RE:

GREEN COPPER HOLDINGS, LLC    )       CASE NO. 25-10088-T

EIN # xx-xxx9708                  )       Chapter 7

                                      )

COPPER TREE, INC.            )       Substantively Consolidated

EIN # xx-xxx6608                  )

                                      )

THE INN AT PRICE TOWER INC.    )

          Debtors.                )

_____/

## NOTICE OF SERVICE OF
## CLAIMANT PICTORIA STUDIOS USA, INC. (Claim No. 14) INTERROGATORIES
## TO CYNTHIA BLANCHARD (Claim 1, et.al.)

COMES NOW Claimant PICTORIA STUDIOS USA, INC. (herein after from time to time referred to as "Pictoria"),  (Claim No. 14), Pursuant to Rule 33, Fed. R. Civ. P.,  by and through their undersigned counsel and hereby serves this Notice of Service of First Set of Interrogatories, dated September 16, 2025, onto **CYNTHIA BLANCHARD (Claim 1, et.al.)** and states:

## DEFINITIONS

1.      "Claimant " or "Pictoria Studios USA Inc." or more readily stated, "Pictoria", is Claimant No. 14, herein this action.

2.      "Trustee" is Patrick J. Malloy III, Chapter 7 Trustee, in this styled cause of action.

3.      "Debtor" or Debtors" are: Copper Tree, Inc., Green Copper Holdings, LLC., and the Inn at Price Tower, as set forth within this cause of action for which the Mr. Malloy is the presiding Trustee of.

4.      Cynthia French Blanchard or Cynthia Diane Blanchard is the Claimant or "Blanchard".

5.      You filed in Case 25-10088-T Claim 1-1 Part 2 Filed 02/28/25.  This document appears to be a QuickBooks online transaction log.  This shall be referred to from time to time as either, "log", "QuickBooks", "QuickBooks entry log or QuickBooks entry journal", or " journal".

6.      The term "person" means any person or entity, and includes individuals, corporations, limited liability companies, partnerships, associations, joint ventures, and other business enterprises, or legal entities and includes both the singular and plural.

7.      "Third Party" includes any person not a party to this action and/or counsel for a party to this action.

8.      The term "representative" refers to any employee, agent, attorney or accountant.

9.      "Business Entity" means a sole proprietorship, corporation, limited liability company, limited partnership, general partnership, association, joint venture, and any other business name through which business is conducted.

10.     The term "identify" means to state:

        (a)     in the case of a natural person, the person's name, business address, residence address, and residential telephone number, employer or identify the entity for whom the person serves as an independent contractor, and title or position;

        (b)     in the case of a person other than a natural person, its name, address, and telephone number and identify the natural person acting on its behalf;

        (c)     in the case of a communication or meeting, its date, type (e.g., telephone conversation, discussion, or meeting), the place where it occurred, the identity of the participants, and the subject matter; and

(d)      in the case of a document, the title of the document, the author, the title or position of the author, the addressee(s), each recipient and copy recipient or blind-copy recipient, the type of document, the subject matter, the date of preparation, and Bates stamp numbers.

(e)      In the case of an electronic mail address ("email address"), the complete email address,  the name and business and residence address of each person authorized to access, send and/or receive information utilizing the email address, the Universal Resource Locater ("URL") and Domain Name to which the email is attached, and the name of the registrar of the Domain Name.

(f)      In the case of a text messaging device, the country code, area code, city code and telephone number assigned to the text messaging device, the name and business and residence address of the person in whose name the telephone number is billed by the carrier, the carrier name, the manufacturer's name of the text messaging device, the name and business and residence address of the person who had custody of the text messaging device.

11.    The word "document" or "documents" includes, without limitation, the following items, whether printed, recorded, photographed filmed or reproduced by any other mechanical process, or written or produced by hand, and whether an original master, or copy, namely: Electronically Stored Information ("ESI")(described below); work sheets; agreements; books; records; opinions or report of consultant; bank statements; financial statements; check books; checks; cancelled checks; deposit slips; charge slips; stubs or registers; diaries; communications, including intra-company communications; correspondence; cablegrams; radiograms; telexes; e-mails; instant messages; short messaging service (SMS); Blackberry Messenger Messages (BBM); voicemails; statements posted on or the internet, memoranda, including intra-company memoranda; summaries; notes and records of telephone conversations, meetings and conferences; notes and records of personal conversations and interviews; ledgers; invoices; contracts; notices; drafts of any documents; marginal or other comments or notes appearing on any documents; business records; charts; plans; specifications; schedules; computer printouts; computer tapes; microfilms; microfiches; photographs; slides; negatives; motion pictures; video recordings; tape or other voice recordings and transcription thereof; and data compilations (including meta-data) from which information can be obtained, translated, if necessary, by you through detection devices into reasonably usable form; and any other information containing paper, writing or physical thing including all underlying, supporting or preparatory material now in your possession, custody or control, or available to you, your counsel, accountants, agents, representatives or associates. "Document" or "documents" specifically includes documents kept by individuals in their desks, at home or elsewhere.

12.    The word "document" or "documents" also includes, without limitation, the original and all file copies and other copies that are not identical to the original no matter how or by whom prepared, and all drafts prepared in connection with any documents, whether used or not.  If the original of any document is not in your possession, custody or control, a copy of that document should be produced.

13.    "Copy" when used in reference to a document means any color, or black or white facsimile reproduction of a document, regardless of whether the facsimile reproduction is made by means of carbon papers, pressure sensitive paper, xerography or other means or process.

14.    The term "communication," "communications," or "communicate" means any writing, or oral conversation, including, but not limited to, telephone conversations and meetings, letters, e-mails, text messages, voice mails, telegraphic and telex communications, instant messages, and includes all information relating to all oral communications and "documents" (as hereinabove defined), whether or not any such document, or the information contained therein, was transmitted by its author to any other person.

15.    The term "including" means "including without limitation."

16.    The term "exchanged" and the term 'transfer" each mean delivering in any form whatsoever by the person or persons initiating the delivery to the person or persons receiving the delivery

17.    If not expressly stated, "control" means in your possession, custody, or control or under your direction, and includes in the possession, custody or control of those under the direction of you or your employees, subordinates, counsel, accountant, consultant, expert, parent or affiliated corporation, and any person purporting to act on your behalf.

18.    "Pertaining to," "pertains to" and "pertain to" means directly or indirectly, refer to, reflect, describe, pertain to, arise out of or in connection with, or in any way legally, logically, or factually be connected with the matter discussed.

19.    "Relating to," "relates to" and "related to" means, without limitation, comprising, concerning, containing, embodying, referring to, alluding to, responding to, about, regarding, explaining, discussing, showing, describing, studying, reflecting, analyzing or constituting. A communication or document "relating to" any given subject means any communication or document that constitutes, contains, embodies, reflects, identifies, states, refers to, deals with, or is in any way pertinent to that subject, including, without limitation, documents concerning the preparation of other documents.

20.    "Applicable Time Period" means any time on and after February 2023.

## INSTRUCTIONS

1.    Any word written in the singular herein shall be construed as plural or *vice versa* when necessary to facilitate the response to any request.

2.      The use of the present tense includes the past tense, and the use of the past tense includes the present tense, so as to be inclusive of any information that otherwise may be excluded from disclosure.

3.      With respect to each answer, document, or electronically stored information that you presently intend to refuse to identify or answer such Interrogatory under a claim of privilege or other exemption from discovery, state the title and nature of the document, and furnish a list signed by the attorney of record giving the following information with respect to each answer, document, and electronically stored information withheld:

   a. The nature of the privilege claimed (including work product);
   b. If the privilege is being asserted in connection with a claim or defense governed by state law, the privilege rule being invoked;
   c. The date of the document, ESI, or oral communication, or if no date appears, the date on which the document was prepared;
   d. The type of document (*e.g.*, letter or memorandum);
   e. If electronically store information, the software application used to create it (*e.g.*, MS Word or MS Excel Spreadsheet);
   f. If a communication (*e.g.*, e-mail), the sender, recipient, subject matter, and date of the communication was made; and
   g. The general subject matter of the document, ESI, or communication.

4.      If a document identified in an answer to an interrogatory once existed and has subsequently been lost, destroyed, or is otherwise unavailable for production, please state with respect to such document:

   a. The last known location of the document;
   b. The last date or time period the document was known to be in existence;
   c. The person who last had control or custody of the document;
   d. The circumstances under which the document was destroyed or otherwise rendered unavailable for production;
   e. Whether the document was stored under conditions of controlled access, and, if so, the names of all persons having access to the document;
   f. The person who requested or directed the destruction of the document; and
   g. The reasons for the request or direction resulting in the document becoming unavailable for production.
   5. Please also identify all persons capable of offering testimony on the subject matter or contents of the document destroyed or otherwise rendered unavailable for production.

## INTERROGATORIES

1. You filed in Case 25-10088-T Claim 1-1 Part 2 Filed 02/28/25. This document appears to be a QuickBooks online transaction log or QuickBooks. As to this Claim 1-1, Part 2, please answer the following:

    a. As to this 6 page QuickBooks entry log, name all people, including their phone numbers, addresses, emails and whether they were W2 employees or Sub-Contractors, who participated in the data entry and the dates of such entry. (The dates should be noted and referenced within the program).

    b. Please provide copies of the back up support for all such data entries such as the transaction statements that the data entries came from, receipts, bank statements, credit card statements, deposit slips, wire confirmations, credit card receipts, invoices, copies of checks, copies of wire transfers and/or any evidence of actual payment that you contend you made and in which the Debtors owe to you.

    c. For each of your QuickBooks entries there is no explanation as to why you allegedly lent these monies. Please provide a detailed explanation for each of your journal entries including but not limited to: to which Debtor entity did this money go to for each data entry, for what purpose was each deposit used for, under whose authority did the Debtor request each of these loans, what was done with the lent money, whether the transaction was "emergency" and if so, the reason for the stated emergency.

    d. Please specify how it was that the you believed the Debtor would repay the loans you were lending.

    e. Please state whether or not the Debtor at any time in which you were lending as per the QuickBooks entries had sufficient liquidity to repay the debts as they became due. If so, please state when, which Debtor's account had that money, how much money was in the account at the time, what was the bank and account number, and whether or not you provided notice to the Debtor to repay the loan(s) given your contention that there was sufficient money in the bank account to repay you, include dates of when the account had sufficient monies and the date you provided notice to repay.

    f. Whether the Debtor was able to bargain, negotiate or have open terms with a third party, other than yourself, including whether the Debtor sought out other suitable loans from other parties and if so, please provide details as to how and who the

Debtor sought other loans from including the last contact information you had with these others whom the Debtor sought loans from.

g. Who is Forked Pine Consulting and why were they paid $10,000 on 3/7,2023 and what did they for that sum of money.

h. Who instructed you to describe your account entries as "28000 Long term loans" and what does 28100 Loans mean as you utilize these terms throughout your 6 page of your journal.

i. In your Quickbooks spread sheet you have a column for "split". What does that mean?

i. Throughout your spread sheet you, at times, use the memo/Description column to state monthly expenses. For each of these entries, please list out what the monthly expenses are and how much money is attributable to each such expense.

(j) Throughout the QuickBooks Entry Log you show allegedly having made payments for the IPT. Please confirm that IPT stands for "The Inn at Price Tower". Please state in detail what each of these payments were for.

k. On page 3 of 6 of Claim 1-1 Part 2, your Quick Books Entry Log shows in yellow highlight two transfers from the Debtor to yourself. The dates are: 03/28/2024 and 04/22/2024. Please detail which Debtors account these alleged highlighted payments came from, which financial account of yours did they go into, who authorized these payments to yourself, what the purpose was for these transfers, what documents do you have which permitted you to transfer Debtor monies to yourself.

l. Throughout your QuickBooks Entry Log it shows in the "split" column the following: 10023 Cash: Truity x….-40 (Hotel). What is your understanding of what "10023 Cash means". What does "Truity x….-40 (Hotel)" mean as you understand the column. Include what was the specific purpose for each of these payments.

m. On page 6 of 6 of Claim 1-1 Part 2, your QuickBooks Entry Log shows on 12/13/2024 an interest payment of $9,922.19. Please state what this interest payment was for, to whom did it go to, for whose benefit, and who authorized this transfer.

n. On page 6 of 6 of Claim 1-1 Part 2, your Quick Books Entry Log shows on 1/21/2025 a transfer from the Ron Brown Law. Please detail why this transfer was made and who authorized it and what was the repayment Agreement supposed to have been. Please state whether there are board and/or shareholder approvals for this loan. Please state whether this loan is included within the value of the Claim you made against the Debtor.

o. In each of these your QuickBooks Entry Log data entries, you left out which Debtor was the beneficiary of the alleged loans you made. Please list for each data entry the correct Debtor who received such funds.

p. Who informed you that you were permitted to make alleged loans to the Debtor, what actions were necessary to effectuate the lending of monies effectively to yourself despite having shareholders to account to, and additionally who told you what to do in order to take monies from the Debtor.

q. For each alleged loan made, please detail your source of funds used and how these sourced funds were derived at.

r. In your filing: Case 25-10088-T Document 202 Filed in USBC ND/OK on 07/24/25 Page 16 of 27, pages 16-21 look a certain way, while pages 22-27 are completely different in form, scope, entries and appearance. Please describe the differences between these two documents, who performed the data entries and the dates performed, and what back up support for each entry exists. Please provide for each such entry the backup supporting document(s) along with an explanation to support or justify such an alleged loan.

2. You filed Case 25-10088-T Claim 1-2 Part 2 Filed 05/20/25 Attachment 1. This document is an alleged Loan Agreement by and between yourself and Copper Tree Inc. As to this agreement, please answer the following:

a. Who prepared this document or gave you the template to use, include their name and contact information;

b. When did you present this agreement to the Board of Directors, list who the Board members were, and describe what the meeting minutes would represent and the dates of these meeting(s).

c. When did you present this agreement to the shareholders of Copper Tree Inc, list who the shareholders were and the dates of these meeting(s) where this agreement was presented. If not by meeting then state and tell how the presentment was.

    d.      Please describe how you believed you were in compliance with:

*1.1 Loan Amount. This Agreement establishes an open-ended loan facility under which Borrower may borrow and repay funds from time to time. The total outstanding principal shall not exceed an aggregate amount determined and recorded in the Parties' bookkeeping software, reconciled with the Parties' bank account records.*

    e.      Please describe how you personally believe, as you are aware, that a conflict of interest does not exist for the following term:

*1.2 Disbursement. Loan disbursements shall be made by Lender to Borrower upon mutual agreement of the Parties and recorded in the Parties' bookkeeping software.*

    f.      In paragraph 1.3, who set the interest rate.

    g.      In paragraph 2(b), as you understand it, how do you believe that no "conflict of interest" exists between Copper Tree Inc as the Borrower and yourself as the lender.

    h.      Please confirm that you are aware that under Delaware law, you have breached your fiduciary duties as to Conflict of Interest.

    i.      Please confirm that you are the signatory for both lender and borrower.

3.     In your filing: Case 25-10088-T Document 297 Filed in USBC ND/OK on 09/15/25, you accuse Attorney Brand of "relying on false, defamatory and malicious personal character attacks rather than addressing the merits of the Motion".  Please state:

    a.      What "false, defamatory and malicious personal character attacks" you are referring to.

    b.      What you believe are the "merits of the Motion".

4.     On the first page, it appears the second paragraph of Case 25-10088-T Document 297 Filed in USBC ND/OK on 09/15/25, you claim and represent to the Court that "The Trustee already has documentation in his possession that directly contradicts the affidavits previously filed in Mr. Brand's objection to my proof of claim… and in his reply to the Trustee's objection (docket file 287), underscoring his ongoing effort to inject false, irrelevant material intended only to harass". Please address with specificity:

    a.      What documentation the Trustee already has "in his possession that directly contradicts the affidavits….".  Set forth in detail what such documentation is that the Trustee has to contradict Mr. Brand's filings as you represent to the Court in ECF 297.

    b.      ECF 287 is your reply not the Trustees Objection, so what document are you actually referring to.

    c.      What "false, irrelevant material intended only to harass" is Mr. Brand specifically attempting to interject as you represent to the Court in ECF 297.

5.     Please state whether or not you agree that the Debtor  owes Pictoria Studios and Taktik Enterprises as per their submitted invoices and that had the Debtor been profitable or profitable from a sale, the Debtor would have paid Pictoria and Taktik for their services.

6.      List and state every reason that you contend is adverse to Pictoria's claim for monies owed, including but not limited to detailing your reasons why you believe Pictoria shouldn't be paid for their services in whole and/or in part, and if in part, state the value you believe is owed to Pictoria from Debtor.

7.      List every reason that you are aware of as to why Pictoria was not paid when the Debtor was invoiced by Pictoria month after month. For any of those months in which Pictoria submitted an invoice, state the month and year, that you are aware of, in which the Debtor(s) had sufficient monies in the bank accounts to cover the Pictoria invoice submitted.

8.      What is your correct full name and what alias's or names do you use or have used within the past 10 years.

<u>**CERTIFICATE OF SERVICE**</u>

      I hereby certify that a true and correct copy of this foregoing Interrogatories to Cynthia

Blanchard was ECF filed with the Clerk of Court on this 16th day of September, 2025, emailed to

Mrs. Blanchard at her email address used during these proceedings with the undersigned counsel:

cdfblanchard@gmail.com , as well as mailed by US first class mail to:

      Cynthia Diane Blanchard, pro se
      414 SE Washington Blvd. Ste. 205
      Bartlesville, OK 74006
      310-435-5707


      /s/ **Craig A. Brand, Esq.**

By: _____

      Craig Alan Brand, Esq.
      FBN: 896111
      Tel. (305) 878-1477
      6462 S. Jamaica Circle
      Englewood, Colorado 80111

      **On behalf of and for:**
      PICTORIA STUDIOS USA, INC. (Claim No. 14), and
      TAKTIK ENTERPRISES, INC. (Claim No. 4).

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OKLAHOMA

IN RE:

| | | |
|---|---|---|
| **GREEN COPPER HOLDINGS, LLC** | ) | **CASE NO. 25-10088-T** |
| EIN # xx-xxx9708 | ) | **Chapter 7** |
| | ) | |
| **COPPER TREE, INC.** | ) | **Substantively Consolidated** |
| EIN # xx-xxx6608 | ) | |
| | ) | |
| **THE INN AT PRICE TOWER INC.** | ) | |
| Debtors. | ) | |
| _____ | / | |

## NOTICE OF SERVICE OF
## CLAIMANT PICTORIA STUDIOS USA, INC. (Claim No. 14)
## REQUESTS FOR PRODUCTION
## TO CYNTHIA BLANCHARD (Claim 1, et.al.)

Pursuant to Rule 34, Fed. R. Civ. P., Claimant **PICTORIA STUDIOS USA, INC. (Claim No. 4), (Herein after from time to time referred to as "Pictoria"),** by and through its undersigned counsel, herewith requests **CYNTHIA BLANCHARD** (Claimant No. 1), to produce the following documents to the undersigned counsel on or before thirty (30) days from the date set forth in the Certificate of Service below.

## DEFINITIONS

1.      "Debtor" or Debtors" are: Copper Tree, Inc., Green Copper Holdings, LLC., and the Inn at Price Tower, as set forth within this cause of action for which the Mr. Malloy is the presiding Trustee of.

2.      Cynthia French Blanchard or Cynthia Diane Blanchard is the Claimant or "Blanchard".

3.      The term "person" means any person or entity, and includes individuals, corporations, limited liability companies, partnerships, associations, joint ventures, and other business enterprises, or legal entities and includes both the singular and plural.

4.      "Third Party" includes any person not a party to this action and/or counsel for a party to this action.

5.      The term "representative" refers to any employee, agent, attorney or accountant.

6.      "Business Entity" means a sole proprietorship, corporation, limited liability company, limited partnership, general partnership, association, joint venture, and any other business name through which business is conducted.

7.      The term "identify" means to state:

        (a)      in the case of a natural person, the person's name, business address, residence address, and residential telephone number, employer or identify the entity for whom the person serves as an independent contractor, and title or position;

        (b)      in the case of a person other than a natural person, its name, address, and telephone number and identify the natural person acting on its behalf;

        (c)      in the case of a communication or meeting, its date, type (e.g., telephone conversation, discussion, or meeting), the place where it occurred, the identity of the participants, and the subject matter; and

        (d)      in the case of a document, the title of the document, the author, the title or position of the author, the addressee(s), each recipient and copy recipient or blind-copy recipient, the type of document, the subject matter, the date of preparation, and Bates stamp numbers.

(e)      In the case of an electronic mail address ("email address"), the complete email address, the name and business and residence address of each person authorized to access, send and/or receive information utilizing the email address, the Universal Resource Locater ("URL") and Domain Name to which the email is attached, and the name of the registrar of the Domain Name.

(f)      In the case of a text messaging device, the country code, area code, city code and telephone number assigned to the text messaging device, the name and business and residence address of the person in whose name the telephone number is billed by the carrier, the carrier name, the manufacturer's name of the text messaging device, the name and business and residence address of the person who had custody of the text messaging device.

8.      The word "document" or "documents" includes, without limitation, the following items, whether printed, recorded, photographed filmed or reproduced by any other mechanical process, or written or produced by hand, and whether an original master, or copy, namely: Electronically Stored Information ("ESI")(described below); work sheets; agreements; books; records; opinions or report of consultant; bank statements; financial statements; check books; checks; cancelled checks; deposit slips; charge slips; stubs or registers; diaries; communications, including intra-company communications; correspondence; cablegrams; radiograms; telexes; e-mails; instant messages; short messaging service (SMS); Blackberry Messenger Messages (BBM); voicemails; statements posted on or the internet, memoranda, including intra-company memoranda; summaries; notes and records of telephone conversations, meetings and conferences; notes and records of personal conversations and interviews; ledgers, invoices; contracts; notices; drafts of any documents; marginal or other comments or notes appearing on any documents; business records; charts; plans; specifications; schedules; computer printouts; computer tapes; microfilms; microfiches; photographs; slides; negatives; motion pictures; video recordings; tape or other voice recordings and transcription thereof; and data compilations (including meta-data) from which information can be obtained, translated, if necessary, by you through detection devices into reasonably usable form; and any other information containing paper, writing or physical thing including all underlying, supporting or preparatory material now in your possession, custody or control, or available to you, your counsel, accountants, agents, representatives or associates. "Document" or "documents" specifically includes documents kept by individuals in their desks, at home or elsewhere.

9.      The word "document" or "documents" also includes, without limitation, the original and all file copies and other copies that are not identical to the original no matter how or by whom prepared, and all drafts prepared in connection with any documents, whether used or not. If the original of any document is not in your possession, custody or control, a copy of that document should be produced.

10.     "Copy" when used in reference to a document means any color, or black or white facsimile reproduction of a document, regardless of whether the facsimile reproduction is made by means of carbon papers, pressure sensitive paper, xerography or other means or process.

11.     The term "communication," "communications," or "communicate" means any writing, or oral conversation, including, but not limited to, telephone conversations and meetings, letters, e-mails, text messages, voice mails, telegraphic and telex communications, instant messages, and includes all information relating to all oral communications and "documents" (as hereinabove defined), whether or not any such document, or the information contained therein, was transmitted by its author to any other person.                                                    .

12.     The term "including" means "including without limitation."

13.     The term "exchanged" and the term 'transfer" each mean delivering in any form whatsoever by the person or persons initiating the delivery to the person or persons receiving the delivery

14.     If not expressly stated, "control" means in your possession, custody, or control or under your direction, and includes in the possession, custody or control of those under the direction of you or your employees, subordinates, counsel, accountant, consultant, expert, parent or affiliated corporation, and any person purporting to act on your behalf.

15.     "Pertaining to," "pertains to" and "pertain to" means directly or indirectly, refer to, reflect, describe, pertain to, arise out of or in connection with, or in any way legally, logically, or factually be connected with the matter discussed.

16.     "Relating to," "relates to" and "related to" means, without limitation, comprising, concerning, containing, embodying, referring to, alluding to, responding to, about, regarding, explaining, discussing, showing, describing, studying, reflecting, analyzing or constituting. A communication or document "relating to" any given subject means any communication or document that constitutes, contains, embodies, reflects, identifies, states, refers to, deals with, or is in any way pertinent to that subject, including, without limitation, documents concerning the preparation of other documents.

## INSTRUCTIONS

1.     Any word written in the singular herein shall be construed as plural or *vice versa* when necessary to facilitate the response to any request.

2.     The use of the present tense includes the past tense, and the use of the past tense includes the present tense, so as to be inclusive of any information that otherwise may be excluded from disclosure.

3.     With respect to each answer, document, or electronically stored information that you presently intend to refuse to identify or produce under a claim of privilege or other exemption from discovery, state the title and nature of the document, and furnish a list signed by the attorney of record giving the following information with respect to each answer, document, and electronically stored information withheld:

   a.  The nature of the privilege claimed (including work product);
   b.  If the privilege is being asserted in connection with a claim or defense governed by state law, the privilege rule being invoked;
   c.  The date of the document, ESI, or oral communication, or if no date appears, the date on which the document was prepared;
   d.  The type of document (*e.g.*, letter or memorandum);
   e.  If electronically store information, the software application used to create it (*e.g.*, MS Word or MS Excel Spreadsheet);
   f.  If a communication (*e.g.*, e-mail), the sender, recipient, subject matter, and date of the communication was made; and
   g.  The general subject matter of the document, ESI, or communication.

4.     If a document identified in a response to a Request for Production once existed and has subsequently been lost, destroyed, or is otherwise unavailable for production, please state with respect to such document:

   a.  The last known location of the document;
   b.  The last date or time period the document was known to be in existence;
   c.  The person who last had control or custody of the document;
   d.  The circumstances under which the document was destroyed or otherwise rendered unavailable for production;
   e.  Whether the document was stored under conditions of controlled access, and, if so, the names of all persons having access to the document;
   f.  The person who requested or directed the destruction of the document; and
   g.  The reasons for the request or direction resulting in the document becoming unavailable for production.
   5.  Please also identify all persons capable of offering testimony on the subject matter or contents of the document destroyed or otherwise rendered unavailable for production.

## REQUESTS FOR PRODUCTION

1. In Case 25-10088-T Claim 1-1 Filed 02/28/25, you filed a claim for $15,553.19. Please provide all supporting documentation which would substantiate this claim and value.

2. In Case 25-10088-T Claim 1-2 Filed 05/20/25 Main Document Pg 1 of 3, you filed a claim for 285107.88. Please provide all supporting documentation which would substantiate this claim and value.

3. Please provide documentation that you notified the existing shareholders of Copper Tree, Inc. that you were making personal loans to the company and provide documentation that the shareholders approved your making of loans.

4. Please provide documentation that you notified the existing shareholders of a loan agreement between yourself and Copper Tree, Inc. (See, Case 25-10088-T Claim 1-2 Part 2 Filed 05/20/25 Attachment 1 Pg 1 of 3). Please include the documentation that the shareholders approved your this loan agreement i.e, Case 25-10088-T Claim 1-2 Part 2 Filed 05/20/25 Attachment 1 Pg 1 of 3.

5. As to Requests No. 2, 3 above, please also provide the relevant board meeting and the board's approval of these personal loans and the loan agreement's approval. Please provide this documentation in native format.

6. On page 3 of 6 of Claim 1-1 Part 2, your Quick Books Entry Log shows in yellow highlight two transfers from the Debtor to yourself. The dates are: 03/28/2024 and 04/22/2024. Please provide in native format what documents you have which permitted you, authorized you, to transfer Debtor monies to yourself.

7. On page 6 of 6 of Claim 1-1 Part 2, your Quick Books Entry Log shows on 1/21/2025 a transfer from the Ron Brown Law. Please provide board and/or shareholder approvals for this loan.

8. In your filing: Case 25-10088-T Document 202 Filed in USBC ND/OK on 07/24/25 Page 16 of 27, pages 16-21 look a certain way, while pages 22-27 are completely different in form, scope, entries and appearance. Please provide for each such entry the backup supporting document(s) along with an explanation to support or justify such an alleged loan.

9. In native format, provide ALL meeting minutes from the Copper Tree Inc Board or Shareholder Meeting Approvals for any and all loans the Debtor engaged in and any and all payments made in response to the loans.

10. In native format, provide ALL Board Member meeting minutes of Copper Tree from inception of the company through the date of dissolution.

11. Provide Notices of all Board Member meetings of Debtor.

12. Provide Notices of ALL Shareholder meetings of Debtor.

13. For each Interrogatory Answer related to Pictoria's first set of Interrogatories dated September 16, 2025, please provide whatever documents, data, digital information, financial information you relied upon or looked at in formulating your answer(s).

14. Please produce a copy of any and all invoices that Pictoria submitted that you believe should have been paid, and if all of them, just write "ALL" in response as opposed to having to produce documents.

15. Please produce every, as in all, documents, data (digital or otherwise), that you believe supports your contention and belief that Pictoria should not be paid for its services. [The term "supports" is meant as any justification, any reason – big or small.]

16. Produce every, as in all, documents, data (digital or otherwise), that you believe supports your contention and belief that Pictoria failed to perform its contractual duties or obligation in any manner, to any degree. [The term "supports" is meant as any justification, any reason – big or small.]

17. Please produce a copy of your current state issued driver's license showing your full name as well as a copy of your current or last used United States of America passport showing your full name. [You are permitted to redact the ID Nos.].

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of this foregoing Requests for Production to Cynthia Blanchard was ECF filed with the Clerk of Court on this 16th day of September, 2025, emailed to Mrs. Blanchard at her email address used during these proceedings with the undersigned counsel: cdfblanchard@gmail.com , as well as mailed by US first class mail to:

    Cynthia Diane Blanchard, pro se
    414 SE Washington Blvd. Ste. 205
    Bartlesville, OK 74006
    310-435-5707

    /s/ **Craig A. Brand, Esq.**

By: _____

    Craig Alan Brand, Esq.
    FBN: 896111
    Tel. (305) 878-1477
    6462 S. Jamaica Circle
    Englewood, Colorado 80111

**On behalf of and for:**

PICTORIA STUDIOS USA, INC. (Claim No. 14), and

TAKTIK ENTERPRISES, INC. (Claim No. 4).