IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

In re:
**Green Copper Holdings, LLC;
Copper Tree, Inc.; and
Inn at Price Tower, Inc.,
Substantively Consolidated Debtors.**

**Case No. 25-10088**
Chapter 7

## FED. R. BANKR. P. 9024 MOTION TO VACATE CERTAIN ORDERS ENTERED DURING PERIOD OF PROCEDURAL IRREGULARITIES, LACK OF REQUIRED OVERSIGHT, AND UNAUTHORIZED FILINGS AFFECTING CREDITOR RIGHTS

Cynthia Diane Blanchard ("Movant"), appearing pro se, respectfully moves this Court pursuant to Fed. R. Bankr. P. 9024 and Fed. R. Civ. P. 60(b)(3), (4), and (6) to vacate orders entered during a period marked by (1) unauthorized filings by noncompliant counsel in violation of Local Rule 83.3, (2) the absence of statutorily required oversight due to the temporary furlough of the Office of the U.S. Trustee, and (3) additional procedural irregularities that materially impacted Movant's rights as a creditor and the administration of this estate. Movant requests review and correction of orders entered during this defective period and preservation of remaining estate assets pending proper oversight and compliance.

Movant files this Motion promptly following the Court's ruling on her claim and at the earliest procedurally appropriate time to address these systemic defects.

## I. INTRODUCTION

This Motion seeks to restore procedural integrity to the estate by vacating settlement-approval orders and related rulings entered during a period when:

1.   Attorney Craig Brand was filing objections, motions, written discovery, and false accusations while repeatedly violating the conditions of his July 21, 2025 pro hac vice admission, including failure to comply with Local Rule 83.3(a) and (b);

2.   The Office of the U.S. Trustee ("UST") lacked the ability to perform its statutory oversight duties due to a federal furlough; and

3.   Additional material irregularities — including improper state tax enforcement actions against Movant personally — occurred without corrective action.

These combined defects prejudiced unsecured creditors, shaped settlement structures, influenced estate distributions, and caused direct harm to Movant.

Vacatur is required to ensure lawful administration and to restore confidence in these proceedings. Movant makes no allegation of judicial error; rather, the defects arise from lack of oversight, unauthorized attorney participation, and administrative irregularities beyond the Court's control during the furlough period.

## II. FACTUAL BACKGROUND

### A. Unauthorized Filings and Procedural Violations by Attorney Craig Brand

During a significant period of estate administration, Attorney Craig Brand filed:

- objections to claims,

- objections to settlements,

- motions to compel, motion for sanctions

- motions targeting Movant, and

- false accusations,

all while failing to comply with:

- Local Rule 83.3(a) (pro hac vice requirements of mandatory local-counsel supervision), and

- Local Rule 83.3(b) (required leave of court and compliance for filings and participation).

Brand later admitted in writing that:

- he had not complied with Rule 83.3(a),

- had not obtained required local-counsel participation under 83.3(b), and

- proceeded under the view that the rules were "outdated."

These admissions render his filings unauthorized and void of effect.

Brand's unauthorized actions:

- influenced settlement negotiations,

- shaped the Trustee's recommendations,

- altered estate economics,

- targeted Movant with false accusations, and

- affected the treatment of other creditors.

Numerous filings submitted by Mr. Brand were inflammatory, unsupported by evidence, or contained false statements. Many of these submissions were not directed toward legitimate estate administration, but instead targeted Movant personally and contributed to unnecessary litigation activity during a period of procedural vulnerability.

In addition, Attorney Brand made factually false assertions regarding the governing procedural rules themselves. In his October 24, 2025 Response to Movant's Motion to Revoke, he claimed that Local Civil Rule 83.3 "no longer exists" and that Bankruptcy Local Rule 9010-1(B) somehow eliminates the applicability of the District Court's local rules. These statements are incorrect. Bankruptcy Local Rule 9010-1 expressly incorporates the District Court Local Rules unless displaced, and LR 83.3(a) and (b)—including the mandatory local-counsel requirements —were fully in effect throughout this case. Attorney Brand's mischaracterization of the governing rules further illustrates the pattern of false statements, disregard of procedural requirements, and unauthorized participation that materially affected the administration of the estate.

Further, the two consultants (whose companies were represented by Mr. Brand in these proceedings)—who were terminated in late 2023—engaged in a pattern of interference and disruption that materially contributed to the Debtor companies' ultimate insolvency. Mr. Brand later aligned his bankruptcy filings, false accusations, and tactics with the same pattern of interference, amplifying the harm experienced by the estate and Movant during the bankruptcy process.

Moreover, in his November 26, 2025 Response, Attorney Brand asserted that Movant had 'misrepresented' the existence of interrogatories. Movant simply misunderstood the terminology but understood discovery was served. Then Mr. Brand simultaneously admitted that he did, in fact, serve written discovery on November 10, 2025, in the form of nine Requests for Production ("RFP"), which he later filed as an exhibit in his own November 26, 2025 submission. Movant responded to that RFP the same day, copying Trustee Patrick Malloy and Mr. Mark Sanders. Accordingly, while Mr. Brand attempts to portray Movant's motion as a misrepresentation, the undisputed record—including his own exhibits—confirms that written discovery was served after the discovery cutoff and without compliance with Local Rule 83.3. Discovery formally closed on November 7, 2025, pursuant to the Court's Scheduling Order entered September 4, 2025 (Doc. 278).

Mr. Brand's November 26, 2025 filing is significant because it:

- contradicts the documentary evidence he himself submitted;

- was filed after his clients had already been approved for settlement, removing any legitimate purpose for post-deadline discovery;

- was submitted during a period when he remained in violation of Local Rule 83.3(a) and (b);

- is consistent with a broader pattern of misrepresentations, false statements, and unauthorized filings; and

- materially affected the administration of the estate and Movant's due-process rights.

These misstatements—combined with the lack of required UST oversight and the influence of unauthorized filings—constitute a systemic procedural breakdown. This breakdown materially prejudiced Movant and tainted several estate actions during the relevant period.

**Additional Evidence of False Statements by Mr. Brand**

During the December 3, 2025 hearing, Mr. Brand also represented—substantively—that Movant "receives legal advice every second of the day" from creditor and claimant Paul Aubert, implying that Mr. Aubert is Movant's "personal counsel." This assertion is categorically false. Mr. Aubert does not serve as Movant's attorney, has never represented Movant in this case, and has not provided Movant with ongoing legal advice as Mr. Brand claimed.

Movant again defers to the Court's own recollection of the December 3 hearing. Mr. Brand's assertion was not only incorrect as a matter of fact, but also emblematic of the broader pattern of misrepresentation, exaggeration, and personal accusations that characterized his unauthorized participation in this case. Such knowingly false statements further demonstrate how Mr. Brand's involvement materially prejudiced Movant and influenced the Trustee's posture toward Movant's claim.

Vacatur is required to restore procedural integrity.

## B. Lack of U.S. Trustee Oversight During Federal Furlough

During the fall 2025 federal government shutdown, the UST was furloughed and absent from critical settlement-approval and administrative stages.

UST oversight is a statutory safeguard built into every Chapter 7 proceeding, ensuring:

- prevention of inequitable settlements,

- supervision of trustee conduct,

- compliance with Bankruptcy Code duties, and

- integrity of distributions.

Critical estate actions occurred without this safeguard, rendering orders entered during this period procedurally defective.

## C. IPT Tax Warrant Irregularities and Automatic Stay Concerns

### 1. May–June 2025: Trustee Given Clear Notice of IPT Tax Liabilities

Movant initially provided the Inn at Price Tower ("IPT") Oklahoma Tax Commission ("OTC") sales-tax invoice on May 15, 2025 to attorney Ron Brown, who was engaged to prepare the bankruptcy filing and who continued to appear as counsel for the Debtor entities during the early post-petition period. Movant also forwarded the same documentation directly to Trustee Malloy on June 10, 2025, confirming IPT's outstanding corporate sales-tax liability.

This transmission occurred after the Trustee stated in writing on June 9, 2025 that IPT was "property of the bankruptcy estate" and that he alone would control decisions concerning the entity. On June 19, 2025, Movant provided IPT closure documents and corrected a clerical error in earlier OTC communications.

### 2. June–July 2025: IPT Consolidated Into the Estate

On June 27, 2025, the Trustee filed a Motion to Consolidate IPT into the Green Copper Holdings LLC/Copper Tree, Inc. bankruptcy estate. The motion was approved on July 24, 2025 after proper notice, and IPT was therefore indisputably part of the consolidated Chapter 7 estate prior to any subsequent enforcement action by the Oklahoma Tax Commission.

### 3. August 18, 2025: OTC Issued Tax Warrants in Violation of the Automatic Stay

Despite:

- the Trustee having notice of IPT's tax liability since June 10, 2025, and

- IPT having become part of the consolidated Chapter 7 estate on July 24, 2025,

**on August 18, 2025 OTC issued two tax warrants naming Movant personally**, asserting IPT's corporate sales-tax liability against Movant individually.

OTC representatives maintained—incorrectly—that these warrants were not issued in error and would remain until the taxes were paid.

These warrants:

- violated the automatic stay under 11 U.S.C. § 362(a),

- caused a void lien to be recorded against Movant personally,

- remained on Movant's record for an extended period,

- and caused significant reputational, credit, and financial harm.

### 4. Trustee Action Occurred After the Stay Violation

After the warrants issued, the Trustee responded on August 27, 2025 to an email chain he was cc'd on between Movant and an OTC attorney, acknowledging that IPT "has been consolidated in the bankruptcy case" and advising OTC to file a claim. OTC subsequently filed a proof of claim—but refused to remove the personal warrants, stating they would remain until full payment.

The Trustee did not seek priority treatment of the tax claim or otherwise address the violation until November 21, 2025— five months after receiving notice of IPT's tax liability and three months after the automatic stay violation occurred.

This sequence reflects a breakdown in administrative safeguards, a lack of required oversight (exacerbated by the U.S. Trustee furlough period), and material prejudice to Movant during a procedurally defective phase of the case.

**D. Movant Acted Diligently**

During the entire period:

- Movant immediately notified the Trustee of concerns,

- fully complied with discovery,

- relied on the Court's instruction to "rest on the docket,"

- provided IPT tax information as early as May 15, 2025,

- attempted to correct OTC records in June,

- responded professionally to attacks by noncompliant counsel, and

Movant files this Motion at the earliest appropriate moment consistent with procedural fairness.

### E. Evidence of Improper Post-Hearing Coordination Between the Trustee and Noncompliant Pro Hac Vice Counsel

During the December 3, 2025 status hearing, after Attorney Craig Brand stated on the record that his clients would "withdraw" their objection if the Trustee prevailed on his objection to Movant's claim, the Trustee stated to the Court immediately—substantively—something to the effect of:

"Your Honor, I will communicate with Mr. Brand after this call to explore what he just said."

Movant recounts the Trustee's statement in substance and respectfully defers to the Court's own recollection of the hearing.

Additionally, during that same December 3, 2025 status hearing, Attorney Craig Brand falsely asserted—substantively—that Movant "receives legal advice every second of the day" from creditor and claimant Paul Aubert, implying that Mr. Aubert was Movant's personal counsel. This assertion was categorically false. Mr. Aubert has never represented Movant in this bankruptcy case and has not provided ongoing legal advice. Movant recounts this statement in substance and respectfully defers to the Court's recollection for the precise wording. Brand's misrepresentation to the Court further illustrates his pattern of false statements, improper participation, and the prejudicial effect his involvement had on the administration of the estate.

These statements are significant for several reasons:

1. Brand's clients have already settled, and their objections should no longer carry procedural weight.

The Trustee's willingness to coordinate strategy with counsel whose participation is already under challenge raises questions as to why such cooperation is occurring at all.

2. The Trustee's expressed intent to "communicate" with Mr. Brand *immediately after the hearing* suggests alignment of interests in shaping the outcome of Movant's claim, particularly given that:

   ○ Brand's pro hac vice status is under challenge,

   ○ Brand has repeatedly violated Local Rule 83.3,

   ○ Movant has filed a pending motion to revoke that admission, and

   ○ Brand's filings have contained demonstrable falsehoods.

3. The Trustee's statement further reinforces Movant's position that the estate's administration was materially influenced by a noncompliant attorney whose objections should have been given no consideration.

4. This coordination occurred after the Trustee represented to the Court that all other claims in the case had been resolved, leaving Movant as the sole remaining creditor opposing administrative actions.

Movant respectfully submits that the Trustee's intention to coordinate post-hearing with noncompliant counsel — whose clients have settled and whose objections are legally moot — further illustrates the procedural irregularities and unequal treatment that have affected the administration of this estate.

This also underscores the necessity for 9024 relief, as the orders entered during this period were influenced by:

- improper collaboration,
- unauthorized attorney participation, and
- an uneven application of scrutiny directed at Movant alone.

## F. Subsequent Procedural Irregularity: Trustee's Request for an Evidentiary Hearing After the Court Previously Directed Movant to "Rest on the Docket"

During the December 3, 2025 status hearing, the Trustee—not Attorney Brand—requested that the Court set an evidentiary hearing on Movant's claim. This request directly contradicted the Court's express instruction during the September 2, 2025 status conference that Movant could "rest on the docket" with respect to her claim, an instruction upon which Movant reasonably relied in completing all written discovery by the November 7, 2025 deadline.

The Trustee further indicated that he "may" call an additional witness, signaling a potential expansion of the evidentiary record well after the close of discovery. This development places Movant at substantial procedural disadvantage, as she relied in good faith on the Court's September directive, complied with all discovery obligations, and prepared for adjudication on the written record as the Court represented.

An evidentiary hearing at this stage—after discovery has closed and after the Trustee previously represented that all other claims in the estate had been resolved—constitutes a further procedural irregularity. It also follows the Trustee's statement during the same hearing that he intended to "communicate with Mr. Brand after this call," despite Mr. Brand's lack of standing, pro hac vice noncompliance, and the fact that his clients have already settled.

This sequence underscores that the continuing trajectory of Movant's claim is being shaped by irregular procedural shifts, post-cutoff evidentiary expansion, and coordination with noncompliant counsel.

### Additional Procedural Irregularity: Trustee's Failure to Notify the Court of Movant's Stated Hearing Conflict

On December 2, 2025, the day before the December 3 status conference, Movant notified Trustee Patrick Malloy—through an email circulated to both him and his counsel, Mark Sanders—that Movant had a direct and unavoidable scheduling conflict with the time set for the hearing. In that communication, Movant explained that she might only be able to call in to *listen*, depending on the timing of the conflict, and she requested that the Trustee notify the Court if appropriate.

Movant was connected to the telephonic conference line and able to hear the proceedings; however, because of the previously disclosed conflict, she was not in a position to speak when the Court called for her appearance. The Trustee did not relay my conflict to the Court at the outset of the status conference, which contributed to procedural confusion and further disadvantaged Movant in the administration of her claim.

These circumstances independently warrant relief under Fed. R. Bankr. P. 9024, as they materially prejudice Movant and undermine the procedural integrity required in Chapter 7 administration.

### III. LEGAL STANDARD

Fed. R. Bankr. P. 9024 incorporates Fed. R. Civ. P. 60(b), permitting relief from orders due to:

- **(3)** misrepresentation, misconduct, or procedural irregularity;

- **(4)** orders void for lack of due process or required oversight;

- **(6)** any other reason justifying relief.

Courts grant relief when:

- statutory oversight was absent,

- orders relied on unauthorized filings,

- attorney participation was improper,

- a creditor's due-process rights were compromised, or

- estate integrity was undermined.

Bankruptcy courts hold a special duty to safeguard procedural integrity and creditor equality. For the reasons stated above, Movant seeks relief from the following orders materially affected by the procedural defects described herein.

## IV. Orders for Which Relief Is Requested

### A. Claim Objection / Recharacterization Proceedings

Movant seeks relief under Fed. R. Bankr. P. 9024 from the ongoing claim-objection process because the administration of Movant's claim has been materially affected by the same procedural defects described herein, including (1) unauthorized filings by Attorney Craig Brand submitted while in violation of Local Rule 83.3, (2) misrepresentations and falsehoods contained in such filings, (3) the absence of U.S. Trustee oversight during critical phases of administration,

and (4) prejudice arising from the unequal and irregular treatment Movant has received as a creditor.

The Court expressly instructed Movant during the September 2, 2025 status conference that she could "rest on the docket" with respect to her claim. Movant relied on that instruction, completed written discovery by the November 7, 2025 deadline, and prepared for adjudication on the written record.

Despite this, during the December 3, 2025 status hearing, the Trustee requested a late-stage evidentiary hearing and indicated he "may have another witness." This request was made after the close of discovery and after the Trustee represented that all other claims in the estate had been resolved. The expansion of the evidentiary record at this stage constitutes a further procedural irregularity and materially prejudices Movant.

For these reasons, Movant respectfully requests that the Court stay or suspend any evidentiary hearing on Movant's claim and review the claim-objection proceedings under Rule 9024 due to the systemic procedural defects described in this Motion.

**B. Order Approving Settlement of Contested Matters (Docket 345)**

This Motion also seeks relief under Fed. R. Civ. P. 60(b), as incorporated by Fed. R. Bankr. P. 9024, from the Court's Order Approving Settlement of Contested Matters with TakTik Enterprises, Inc. and Pictoria Studios USA, Inc. [Docket No. 345] (collectively, "Takio/Moran") (the "Takio/Moran Settlement Order"). The settlement was negotiated and approved under conditions that materially violated the procedural protections required by the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, and this Court's Local Rules, including Local Rule 83.3 governing the participation of pro hac vice counsel.

First, the settlement negotiations were shaped by objections filed and advocated by attorney Craig Brand. Although Mr. Brand was nominally admitted pro hac vice, he failed to comply with the mandatory requirements of Local Rule 83.3 by (i) failing to secure the required participation, signature, and oversight of local counsel on every filing he made, and (ii) failing to obtain leave of Court for each filing. As a result, Mr. Brand's objections and filings were procedurally unauthorized and outside the scope of his pro hac vice admission. Despite this, the Trustee relied on Mr. Brand's procedurally unauthorized filings as leverage in negotiating the Takio/Moran settlement. The involvement of pro hac vice counsel acting outside the scope of his admission constitutes a fundamental procedural irregularity warranting relief under Rule 60(b)(3) and renders the resulting order voidable under Rule 60(b)(4).

Second, TakTik Enterprises, Inc. and Pictoria Studios USA, Inc. were consultants who had been terminated more than a year before the bankruptcy filing. Their claims were asserted through corporate entities based on compensation disputes tied to long-ended prepetition engagements. Their status as terminated consultants—whose business relationship with the Debtors had ceased well over a year before the bankruptcy petition—underscores the material unfairness of the settlement, particularly given its disproportionate size and its direct reduction of estate funds available to legitimate creditors, including the undersigned.

Third, on October 20, 2025—eight days before the Takio/Moran Settlement Order was entered—the undersigned filed a Motion to Revoke Mr. Brand's Pro Hac Vice Admission [Docket no. 341] based on his violations of Local Rule 83.3. Both the Trustee and the Court were therefore on explicit notice that Mr. Brand's participation was procedurally defective. Yet the Trustee

continued to rely on Mr. Brand's filings in negotiating this settlement, and the Court approved the settlement on October 28, 2025 while the motion to revoke was pending and unresolved.

Fourth, all of these events occurred while the Office of the United States Trustee was furloughed and unable to perform required statutory oversight. As a result:

- The UST could not evaluate the propriety of Mr. Brand's participation,

- The UST could not review or respond to the revocation motion, and

- The UST could not evaluate the settlement under the standards required by Rule 9019.

Approving a major settlement during an oversight blackout—under the influence of procedurally unauthorized objections and while a motion challenging Mr. Brand's admission was pending—constitutes "extraordinary circumstances" under Rule 60(b)(6) and raises substantial concerns under Rule 60(b)(3) and 60(b)(4).

Fifth, the settlement amount approved under the Takio/Moran Settlement Order materially reduced the funds available for distribution to unsecured creditors, including the undersigned. The Trustee extended favorable settlement treatment to TakTik and Pictoria—terminated consultants—while permitting Mr. Brand to aggressively and improperly target my claim and filings. This disparate treatment, combined with the Trustee's reliance on procedurally unauthorized objections, resulted in a settlement that was neither fair nor equitable as to me and caused direct and substantial prejudice to my rights as a creditor.

Sixth, because the Trustee adopted and utilized Mr. Brand's procedurally unauthorized objections in negotiating multiple settlements—including TakTik and Pictoria—my claim was uniquely

disadvantaged. Other creditors benefitted from the Trustee's willingness to settle fairly, while my claim was subjected to heightened hostility driven by filings made by an attorney who lacked procedural authority and whose submissions contained material misrepresentations of fact, including demonstrable falsehoods and assertions wholly unsupported by the record. This unequal administration of the estate supports relief under Rule 60(b)(6) to prevent manifest injustice.

For these reasons, the undersigned respectfully requests that the Court reconsider, reopen, or vacate the Takio/Moran Settlement Order pursuant to Rule 9024, and either (1) set the matter for further Rule 9019 review with proper UST oversight and compliant participation of counsel, or (2) fashion such other relief as is just and equitable to remedy the prejudice and procedural defects that tainted the original settlement process.

This request is not intended to disrupt or unwind all settlements in this case, nor to disturb any compromise that was negotiated free from improper influence. The relief sought is narrowly tailored to the specific settlement order whose negotiation and approval were directly affected by procedurally unauthorized attorney participation, unequal creditor treatment, and the lack of required oversight during the federal furlough period.

## V. ARGUMENT

### A. Orders Influenced by Unauthorized Filings Are Procedurally Defective

Brand's filings were made:

- without required local-counsel supervision or leave of court for the filings he expedited,

- without compliance with Rule 83.3,

- while submitting false accusations,.

Unauthorized filings cannot be the basis for estate action. Any orders influenced by such filings are subject to vacatur under Rule 60(b)(3), (4), and (6).

## B. Lack of U.S. Trustee Oversight Requires Vacatur

The UST's statutory oversight cannot be waived or suspended without consequence. Settlement approvals made during the furlough are inherently defective due to the absence of required review.

Relief is appropriate under Rule 60(b)(4) and (6).

## C. Movant's Due-Process Rights Were Compromised

Movant suffered prejudice due to:

- unauthorized, procedurally improper, and factually false attacks by noncompliant counsel;

- the earmarking of nearly all estate funds through settlement agreements prior to adjudication of Movant's claim;

- inequitable settlement structures shaped during a period of defective oversight;

- improper state enforcement actions and void tax liens; and

- delayed corrective action by the Trustee.

This constitutes a denial of creditor due process.

**D. Vacatur Is Required to Restore Procedural Integrity**

Vacating the affected orders will:

- restore fairness,

- reestablish proper oversight,

- prevent further prejudice,

- protect remaining estate assets, and

- ensure lawful administration moving forward.

## VI. REQUEST FOR RELIEF

Movant respectfully requests an order:

1. Vacating those settlement-approval orders and related rulings entered during the period in which Attorney Craig Brand was noncompliant with Local Rule 83.3(a) and (b), and/or during which the U.S. Trustee lacked oversight capability;

2. Directing the Trustee to re-notice and resubmit such settlements under proper procedure and with full compliance with statutory and local rules;

3. Preserving all remaining estate funds pending corrected review;

4. Allowing Movant full and fair participation in renewed proceedings;

5.  Granting such other and further relief as this Court deems just and proper.

Movant further respectfully requests that no evidentiary hearing be held on Movant's claim—including the hearing currently set for January 12, 2026—because the Court expressly instructed Movant on September 2, 2025 that she could rest on the docket, discovery closed on November 7, 2025 and any post-deadline evidentiary expansion would materially prejudice Movant and contradict the procedural posture established by the Court. The Trustee's statement on December 3, 2025 that he 'may have' another witness does not cure the fact that discovery formally closed on November 7, 2025, no witness disclosures were made, and no motion to reopen discovery has been filed or granted. Any attempt to introduce late-stage testimony after the Court's September 2, 2025 instruction would violate Rule 16, materially prejudice Movant, and contradict the procedural framework established by the Court

Movant further respectfully requests that the Court resolve this Motion based solely on the written record, as the issues presented are purely procedural and legal in nature and do not require an evidentiary hearing.

**Date:**  December 4, 2025

Respectfully submitted,

*Cynthia Diane Blanchard*

Cynthia Diane Blanchard Pro Se Creditor
414 SE Washington Blvd. Ste. 205.
Bartlesville Ok, 74006.
PH:  310-435-5707

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

In re:
**Green Copper Holdings, LLC;**
**Copper Tree, Inc.; and**
**Inn at Price Tower, Inc.,**
**Substantively Consolidated Debtors.**

Case No. 25-10088
Chapter 7

## DECLARATION OF CYNTHIA DIANE BLANCHARD

## IN SUPPORT OF MOTION UNDER FED. R. BANKR. P. 9024

I, Cynthia Diane Blanchard, hereby declare under penalty of perjury pursuant to 28 U.S.C. §

1746 as follows:

### 1. My Status and Background

1.  I am a creditor of the substantively consolidated Debtors—Copper Tree, Inc.; Green

    Copper Holdings, LLC; and Inn at Price Tower, Inc.—in Case No. 25-10088 (Chapter 7).

2.  I am appearing pro se in this matter.

3.  I submit this Declaration in support of my Motion for Relief Under Fed. R. Bankr. P.

    9024.

4.  All statements herein are based on my personal knowledge and review of emails, filings,

    and communications within the bankruptcy case.

### 2. Chronology of Relevant Events

## A. U.S. Trustee Furlough

5.   During the fall 2025 federal government shutdown, the Office of the U.S. Trustee ("UST") was furloughed.

6.   During this period, multiple settlement-related filings, negotiations, and approvals occurred.

7.   These actions ordinarily require UST oversight, but that oversight was unavailable due to the furlough.

## B. Unauthorized Filings and False Accusations by Attorney Craig Brand

8.   Throughout the bankruptcy, Attorney Craig Brand filed objections, motions, and false accusations that affected creditor treatment and estate administration.

9.   Many of these filings targeted me personally, including false allegations about my conduct, opposition to my claim, and threats of subpoenas, and sanctions attempts.

10.  In October 2025, Mr. Brand filed a written response acknowledging he had not complied with Local Rule 83.3(a) or (b).

11.  Prior to this admission, he submitted numerous pleadings without any Rule 83.3 compliance.

12.  These unauthorized filings influenced the Trustee's positions on creditor treatment, settlements, and distributions. During the December 3, 2025 status hearing, Attorney Craig Brand falsely stated—substantively—that I "receive legal advice every second of

the day" from creditor and claimant Paul Aubert, implying that Mr. Aubert is my "personal counsel." This assertion is categorically false. Mr. Aubert has never served as my attorney in this case and has not provided me with ongoing legal advice, and Mr. Brand's statement misrepresented the facts. I defer to the Court's own recollection of the hearing for the precise wording.

13. The two consultants terminated in 2023 also engaged in disruptive behavior that contributed to operational harm and insolvency; Mr. Brand's filings later aligned with many of the same false accusations and patterns of interference. During the same December 3 hearing, after Mr. Brand stated on the record that his clients would withdraw their objection if the Trustee prevailed on his objection to my claim, Trustee Patrick Malloy stated that he would "communicate with Mr. Brand after this call." I recount this statement in substance and defer to the Court's recollection. Because Mr. Brand's clients had already settled—and because his continued participation was unauthorized under Local Rule 83.3(a)–(b)—the Trustee's expressed intent to coordinate with him further illustrates the procedural irregularities that occurred during estate administration.

14. These actions, combined with the Trustee's willingness to consider or rely on filings made by a noncompliant attorney, materially influenced the administration of the estate and the treatment of my claim.

15. The systemic procedural irregularities described above directly affected creditor equality, due-process protections, and the integrity of multiple estate actions taken during this period.

## C. My Prompt Response Upon Learning of Procedural Problems

16. Once I became aware of Mr. Brand's Rule 83.3 noncompliance, I promptly filed a Motion to Revoke his pro hac vice status. I raised these concerns directly with the Trustee and also notified the Office of the United States Trustee during the federal furlough using the contact method specified in the UST's automatic-response instructions. After the UST returned to normal operations, I again notified the office of the ongoing procedural issues. The UST acknowledged receipt of my communications. I did not seek legal advice—only to ensure that the appropriate oversight authority was aware of these matters.

17. During that same December 3, 2025 status hearing, Attorney Craig Brand also asserted —substantively—that I "receive legal advice every second of the day" from creditor and claimant Paul Aubert, implying that Mr. Aubert was my personal counsel. This assertion was categorically false. Mr. Aubert has never represented me in this bankruptcy case and has not provided me with ongoing legal advice. I recount this statement in substance and respectfully defer to the Court's recollection for the precise wording. Mr. Brand's misrepresentation to the Court is consistent with the broader pattern of false statements and improper participation described in this Declaration, and it contributed to the prejudicial treatment my claim received during estate administration. This false assertion appeared intended to undermine my credibility as a pro se creditor during a critical phase of the case.

18. Also, on December 2, 2025, the day before the December 3 status conference, I informed Trustee Patrick Malloy in an email—copied to his counsel, Mark Sanders—that I had a direct and unavoidable scheduling conflict with the time set for the hearing. In that

communication, I explained that I might only be able to call in to *listen*, depending on the timing of the conflict, and I requested that the Trustee notify the Court if appropriate. I was connected to the telephonic conference line and able to hear the proceedings; however, because of the previously disclosed conflict, I was not in a position to speak when the Court called for my appearance. The Trustee did not relay my conflict to the Court at the outset of the status conference, which contributed to procedural confusion and further disadvantaged me in the administration of my claim.

These circumstances independently warrant relief under Fed. R. Bankr. P. 9024, as they materially prejudice me and undermine the procedural integrity required in Chapter 7 administration.

19. The Court expressly stated during the September 2, 2025 status conference that I could 'rest on the docket' with respect to my claim, and I relied on this instruction. Attorney Brand's November 26, 2025 filing asserts the opposite, contrary to the Court's transcript, and constitutes yet another example of false statements he has submitted in this case. In addition, during the December 3, 2025 status hearing, the Trustee asserted that an "evidentiary hearing" would now be required on my claim and indicated he "may have another witness." This development is inconsistent with the Court's explicit instruction on September 2, 2025 that I could elect to "rest on the docket," which I did. I relied on that instruction throughout the discovery period. Discovery formally closed on November 7, 2025 by Court order. No party served timely written discovery on me prior to that deadline, and no depositions or other evidentiary proceedings were scheduled. The Trustee's sudden request for an evidentiary hearing—after discovery has closed and after

I relied on the Court's instruction—further illustrates the procedural irregularities that have characterized the administration of this case and underscores the prejudice I have experienced as a creditor. I again defer to the Court's recollection of the statements made during the December 3 hearing.

20. I complied fully with all Estate discovery obligations and deadlines.

## D. Inn at Price Tower, Inc. (IPT) Tax Warrant Irregularities (May–November 2025)

21. On May 15, 2025, I provided the IPT sales tax invoice to attorney Ron Brown, former debtor's counsel in this case. Mr. Brown was out of the office at the time, and the invoice was not forwarded to the Trustee. I later contacted the Trustee directly.

22. On June 9, 2025, Trustee Malloy confirmed in writing that IPT was "property of the bankruptcy estate" and instructed me not to take independent action.

23. On June 10, 2025, I forwarded the same IPT sales tax invoice documentation directly to Trustee Malloy.

24. On June 19, 2025, I provided the Trustee with OTC's prior closure confirmation for IPT and explained that I had been mistakenly listed as "owner."

25. On June 27, 2025, the Trustee filed the motion to consolidate IPT into the bankruptcy estate, and—after the expiration of the applicable notice-and-objection period under the Federal Rules of Bankruptcy Procedure—the Court entered its order approving consolidation on July 24, 2025.

26. On August 18, 2025, the Oklahoma Tax Commission ("OTC") issued two tax warrants against me personally, asserting IPT's corporate tax debts.

27. On August 27, 2025, in an email chain with an Oklahoma Tax Commission attorney—on which I included Trustee Malloy —Mr. Malloy confirmed to OTC that IPT was part of the bankruptcy estate and instructed OTC to file a claim, which it did the next day.

28. OTC later stated that the warrants were "not issued in error" and would remain until "paid in full."

29. These warrants appeared on my personal record, credit history, and public filings.

30. OTC filed a claim only after the stay violation and after the liens were already placed in my name.

31. The Trustee did not take action to correct the tax issue until November 21, 2025—five months after receiving notice and three months after the tax warrants were issued.

## E. Settlements Approved During Procedural Disruptions

32. Multiple settlements were approved before any adjudication of my claim.

33. Many were negotiated or influenced during:
    - the UST furlough,
    - the period of Brand's unauthorized filings, and
    - the time in which my IPT tax issue remained unresolved.

34. These settlements reduced the estate funds available to unsecured creditors.

35.  At the time they were approved, important procedural safeguards were absent or compromised.

### F. Supplemental Facts Relating to the TakTik/Pictoria Settlement (Docket 345)

36.  On October 20, 2025, I filed a Motion to Revoke Attorney Craig Brand's pro hac vice admission.

37.  This filing occurred before the Court approved the settlement with TakTik and Pictoria on October 28, 2025.

38.  TakTik and Pictoria were consultants whose engagements ended in late 2023, and their claims arose from disputed prepetition compensation.

39.  Mr. Brand's filings—including submissions containing false accusation and material misrepresentations—were made without required local-counsel participation.

40.  These unauthorized filings were relied upon by the Trustee during settlement negotiations.

41.  The settlement was negotiated and approved during the federal government furlough, preventing UST oversight under Rule 9019.

42.  The settlement materially reduced estate funds available to unsecured creditors and caused direct prejudice to me.

### 3. Impact on My Rights as a Creditor

43. As an unsecured creditor, I was materially affected by:

    a. the absence of UST oversight,

    b. unauthorized and false filings by noncompliant counsel,

    c. the influence such filings had on settlements,

    d. settlement approvals before my claim ruling,

    e. improper state enforcement actions, and

    f. the allocation and diminution of estate assets during procedural breakdowns.

44. My objective is to ensure that estate administration conforms to law and due process.

## 4. Basis for Seeking Rule 9024 Relief

45. I am filing this Motion immediately following the December 3, 2025 status call.

46. The Court should review:

    – whether settlements approved without UST oversight remain valid,

    – whether unauthorized filings influenced proceedings,

    – whether orders entered during irregular periods are enforceable, and

    – whether creditors were prejudiced.

## 5. Good Faith and Limited Scope of Relief

47. This Motion is filed in good faith and not for delay.

48. I seek only corrective relief necessary for lawful administration of the estate.

49. I do not challenge the Court's authority.

50. I request that defective orders entered during periods of procedural breakdown be vacated and reconsidered with proper oversight.

## 6. Declaration

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed on: December 4, 2025

**Cynthia Diane Blanchard**
Pro Se Creditor
414 SE Washington Blvd., Ste. 205
Bartlesville, OK 74006
Phone: 310-435-5707

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

In re:
**Green Copper Holdings, LLC;**
**Copper Tree, Inc.; and**
**Inn at Price Tower, Inc.,**
**Substantively Consolidated Debtors.**

**Case No. 25-10088**
Chapter 7

## Exhibit List – Motion for Relief Under Fed. R. Bankr. P. 9024

Movant, **Cynthia Diane Blanchard**, submits the following exhibits in support of the Motion for

Relief Under Fed. R. Bankr. P. 9024:

### Exhibit 1 – Email Exchange Between Movant and Trustee (Sept. 29, 2025)

Includes the Trustee's acknowledgment that multiple creditors were excluded from settlement

discussions and that Attorney Brand indicated an intention to continue pursuing discovery

despite the pending protective-order issues, reflecting unequal treatment of pro se creditors.

### Exhibit 2 – Movant's Motion to Revoke Attorney Craig Brand's Pro Hac Vice Status

Filed document showing Movant's prompt action upon discovering noncompliance with Local

Rule 83.3(a) and (b).

### Exhibit 3 – Attorney Brand's Written Response Admitting Noncompliance with

### Local Rule 83.3

Filing or correspondence in which Attorney Brand concedes that he did not comply with pro hac vice requirements, including the local-counsel supervision rule.

## Exhibit 4 – Protective Orders Addressing Movant's Objections to Unauthorized Discovery

Demonstrates ongoing concerns regarding improper discovery efforts from Mr. Brand and the Court's involvement.

## Exhibit 5 – Court Approval Orders Entered During the U.S. Trustee Furlough Period

This exhibit consists of five court orders approving settlements entered between October 1 and November 10, 2025 — the period during which the Office of the United States Trustee was furloughed and unable to provide statutory oversight. These approvals include:

- the TakTik/Moran/Pictoria settlement,
- the Frank Lloyd Wright Conservancy settlement,
- the Haskell settlement,
- the Keffer settlement, and
- the Jones settlement.

Collectively, these orders demonstrate that multiple settlements were approved during a period when no U.S. Trustee review, participation, or UST objection was possible, contributing to the procedural defects that support relief under Fed. R. Bankr. P. 9024.

Global Logistics was approved November 13, 2025, after the furlough ended and is not included in this exhibit.

**Exhibit 6 – U.S. Trustee Furlough Timeline (Official DOJ/UST Public Notice)**

Public information confirming the dates the UST office was not operational due to the federal government shutdown from October 1, 2025—November 12, 2025.

**Exhibit 7 – Movant's Certificate of Completion of Discovery and "Rest on the Docket" Filing**

Confirms Movant complied with Court instructions and discovery obligations during the period in which the disputed settlements were occurring.

**Exhibit 7-A – Court's September 4, 2025 Scheduling Order (Doc. 278) – Discovery Deadline: November 7, 2025**

This is the Order entered by Judge Thomas establishing that **all discovery was to be completed by November 7, 2025**. This Order confirms (1) that Movant complied with the Court's discovery schedule, (2) that Attorney Brand's November 10, 2025 written discovery was in violation of the Court-ordered discovery deadline, and (3) that subsequent attempts to pursue discovery occurred outside the Court-ordered discovery period.

**Exhibit 8 – Trustee's Ex Parte Motion to Stay Contested Matters (Doc. 325)**

This Exhibit includes the Trustee's September 29, 2025 motion listing all contested matters arising from objections and filings submitted by Pictoria and TakTik (represented throughout this period by Attorney Craig Brand). It demonstrates that:

- Brand's clients were actively objecting to nearly every settlement.

- These objections shaped the path of administration and required coordinated responses by the Trustee.

- The Trustee was forced to seek what he described as an *estate-wide* stay to manage litigation pressure created by Brand's unauthorized filings, even though the stay in fact excluded multiple major creditors, further evidencing inconsistent administration and unequal treatment.

- The entire landscape of pending matters was defined by filings submitted while Brand lacked compliance with LR 83.3(a) and (b).

## Exhibit 9 – Movant's Motion to Quash Unauthorized Discovery Served by Attorney Craig Brand

This Exhibit contains Movant's filed Motion to Quash, submitted in response to unauthorized post-deadline discovery efforts by Attorney Craig Brand. The Motion demonstrates that:

• Movant was subjected to improper discovery that violated the Court's Scheduling Order;

• Movant took immediate steps to seek Court protection;

• the discovery was served while Attorney Brand was in violation of Local Rule 83.3(a) and (b); and

• the burden and prejudice to Movant were ongoing at the time the Trustee was negotiating and finalizing settlements with Brand's clients.

This Exhibit provides direct evidence of the procedural irregularities and prejudice that support relief under Fed. R. Bankr. P. 9024.

## Exhibit 10 – IPT Sales Tax Invoice and June 10, 2025 Email Forwarding to Trustee

This shows the Trustee had actual notice of IPT's tax liability **months before** the August warrant.

Supports: Movant diligence; Trustee notice; oversight failure.

### Exhibit 11 – August 27, 2025 Email From Trustee Malloy to Oklahoma Tax Commission

**Contains:**

- Trustee Malloy acknowledging IPT "has been consolidated in the bankruptcy case,"
- Trustee advising OTC to file a claim,
- Sent AFTER OTC already issued two improper warrants (Aug. 18),

### Exhibit 12 – October 8, 2025 Email Chain Requesting Removal of Improper Tax Warrants

OTC refuses removal until "paid in full" despite bankruptcy law.

Supports: continuing prejudice and defective oversight.

### Exhibit 13 – Trustee's Delayed Action on IPT Tax Claim (November 21, 2025)

Includes:

- The Trustee's November 21, 2025 filing requesting priority/administrative treatment of the IPT tax claim — three months after the improper August 18 warrants and five months after receiving notice of the liability,

- Demonstrates that corrective action occurred only after significant delay, despite the Trustee's prior acknowledgment (Aug. 27) that IPT was consolidated into the bankruptcy.

### Exhibit 14 – IPT Consolidation Timeline: June 27 Motion + July Approval Docket Entries

Confirms IPT was added to the bankruptcy **before** the August 18 warrant, proving the warrant was improper.

Supports: automatic stay violation + procedural breakdown.

## Exhibit 15 – November 10, 2025 Email Chain and and November 26, 2025 Brand Filing Contradiction

Includes:

- Nov. 10, 2025 email from Attorney Craig Brand to Movant serving a Request for Production (RFP);

- Movant's same-day response attaching the requested documents and copying Trustee Patrick Malloy and his associate Mark Sanders; and,

- Attorney Brand's November 26, 2025 filing in which he denies that written discovery (identified as "interrogatories") was served, while simultaneously attaching the same RFPs he served on November 10.

This Exhibit highlights a direct contradiction in Mr. Brand's representations to the Court. The documentary record confirms that written discovery **was** served on November 10—after the discovery cutoff—and that Movant responded promptly. Yet in his November 26 filing, Mr. Brand denied that written discovery had been served, while at the same time attaching the very RFPs he had issued.

This inconsistency reflects a misleading presentation of the record and occurred during a period in which Mr. Brand remained in violation of Local Rule 83.3(a) and (b). The evidence supports

the existence of procedural irregularity, unauthorized practice, false statements, and resulting

prejudice to Movant.

## Exhibit 16 – Email Chain Dated December 2, 2025 Between Movant and Trustee Malloy Regarding Scheduling Conflict Prior to December 3 Status Hearing

This exhibit contains email correspondence dated December 2, 2025 between Movant, Trustee

Patrick Malloy, and Trustee's counsel Mark Sanders. In this exchange, Movant notified the

Trustee of a direct and unavoidable scheduling conflict with the December 3, 2025 status

conference and explained that she might only be able to *call in to listen*, depending on the timing

of the conflict. Movant requested that the Trustee inform the Court of this limitation if

appropriate.

Movant was connected to the telephonic conference line and able to hear the proceedings;

however, due to the scheduling conflict described in the email correspondence, she was not in a

position to speak when the Court called for her appearance. The Trustee did not relay Movant's

conflict to the Court, contributing to the procedural confusion addressed in this Motion.

Date: December 4, 2025

Cynthia Diane Blanchard Pro Se Creditor
414 SE Washington Blvd. Ste. 205.
Bartlesville Ok, 74006.
PH: 310-435-5707

## CERTIFICATE OF SERVICE

**Green Copper Holdings, LLC;**
**Copper Tree, Inc.; and**
**Inn at Price Tower, Inc.,**
**Substantively Consolidated Debtors.**
**Case No. 25-10088**

### Chapter 7

I, Cynthia Diane Blanchard, hereby certify that on the 4th day of December, 2025, I caused a true and correct copy of the following documents:

- Motion for Relief Under Fed. R. Bankr. P. 9024,

- Declaration of Cynthia Diane Blanchard,

- Exhibit List,

- Exhibits 1 through 16, and

- This Certificate of Service

to be served by hand delivery upon the following parties:

Patrick J. Malloy III
Chapter 7 Trustee
Malloy Law Firm, P.C.
401 S. Boston Ave., Suite 500
Tulsa, OK 74103

Office of the United States Trustee
Attn: Karen Walsh
225 S. Boulder Ave. Ste. 224.
Tulsa, Ok 74103

I further certify that copies of the Motion for Relief Under Rule 9024, the Declaration, and this Certificate of Service (but not the exhibits) will be served by U.S. Mail, first-class postage prepaid, upon all creditors, parties in interest, and counsel of record listed on the Court's mailing matrix for Case No. 25-10088 who have a legally cognizable interest in this Motion, excluding duplicate, undeliverable, and bypassed addresses.

A copy of the matrix is attached hereto and incorporated by reference.

Dated: December 4, 2025

Cynthia Diane Blanchard
Pro Se Creditor
414 SE Washington Blvd., Ste. 205
Bartlesville, OK 74006
(310) 435–5707

Label Matrix for local noticing
1085-4
Case 25-10088-T
Northern District of Oklahoma
Tulsa
Tue Dec  2 11:03:03 CST 2025

Archway Properties
c/o Dallas Hindman
272550 N 3979 Dr
Ochelata, OK 74051

Archway Properties, L.L.C.
501 SE Frank Phillips Blvd, 102A
Bartlesville, OK 74003-3913

Cynthia Diane Blanchard
414 SE Washington Blvd. Ste. 205
Bartlesville, OK 74006-2428

Craig Alan Brand
The Brand Law Firm, P.A.
6462 S. Jamaica Circle
Englewood, CO 80111-6626

Ron D. Brown
Ron Brown
1609 E. 4th St.
Tulsa, OK 74120-3423

Cherokee Fire Protection
PO Box Box 678
Oologah, OK 74053-0678

Chief, Civil Trial Section - Central Region
Tax Division, U.S. Department of Justice
P.O. Box 7238
Washington, DC 20044-7238

Commtrak Corp
PO Box 826077
Philadelphia, Pa. 19182-6077

Craig A. Brand
11222 Oakshore Lane
Clermont, Florida 34711-5408

Craig Brand and Adriana Soto JTRWOS
11222 Oak Shore Ln
Clermont, FL 34711-5408

Mark A. Craige
Crowe & Dunlevy
222 N. Detroit Ave.
Suite 600
Tulsa, OK 74103-2415

Credit Collection Services
725 Canton Street
Norwood Ma. 02062-2679

Dale Takio, personally and individually, as
well as on behalf of his entity Taktik
Enterprises, Inc., A Florida Corporation
11222 Oakshore Lane
Clermont, Florida 34711-5408

Donna Keffer
1608 Cherokee Hills Drive
Bartlesville, OK 74006-4209

Kevin P Doyle
Pray Walker, PC
21 North Greenwood Avenue
Suite 400
Tulsa, OK 74120-1999

Enterprise Global Logistics
c/o Kelley G. Loud
Titus Hillis Reynolds Love
15 East 5th St, #3700
Tulsa, OK 74103-4304

(p)FAIR CAPITAL LLC
PO BOX 399
NEW CITY NY 10956-0399

(p)FIRST INSURANCE FUNDING
450 SKOKIE BLVD SUITE 1000
NORTHBROOK IL 60062-7917

Frank Lloyd Wright Building Conservancy
c/o Crowe and Dunlevy
Attn: Mark A. Craige
222 N. Detroit 600
Tulsa, OK 74103-2415

Green Copper Holdings, LLC
co Robert Hugh, Registered Agent
15 W. 6th Street
Bartlesville, OK 74006

Mark Haskell
115 1/2 SE Frank Phillips
Bartlesville, OK 74003-3519

Helm Ventures, LLC
7200 Wisconsin Ave
Suite 500
Office 95
Bethesda, MD 20814-4830

Helton Law Firm
9125 South Toledo Avenue
9125 South Toledo Ave
Tulsa, OK 74137-2719

John Marcott
379240 W 3200 Rd
Ramona, OK 74061

John E Johnson
John E. Johnson, Attorney
705 Ross Avenue
Dallas, TX 75202-2007

Linda Jones
115 SE Frank Phillips
Bartlesville, OK 74003-3519

Joseph Hassan
c/o Kelley G. Loud
Titus Hillis Reynolds Love
15 East 5th St, #3700
Tulsa, OK 74103-4304

Joshua Gunter
1515 S Osage ave
Bartlesville, OK 74003
Bartlesville, OK 74003-5828

Kelley G. Loud
Titus Hillis Reynolds, et al.
15 East Fifth Street, Suite 3700
Tulsa, OK 74103-4304

Patrick J. Malloy III
Malloy Law Firm, P.C.
401 S Boston Ave. Suite #500
Tulsa, OK 74103-4023

Patrick J. Malloy III
Malloy Law Firm, P.C.
401 S. Boston
Suite 500
Tulsa, OK 74103-4023

Maxfield James Malone
PrayWalker
21 North Greenwood Avenue
Ste 400
Tulsa, OK 74120-1999

Marlin Leasing Corporation dba PEAC SOLUTION
300 Fellowship Road
Mount Laurel, NJ 08054-1201

Gary M. McDonald
McDonald Law, PLLC
15 West 6th Street
Suite 2606
Tulsa, OK 74119-5413

McFarlin Building, LLC
11 E 5th Street 500
Tulsa, OK 74103-4454

Michael J. Moran and Erinne Moran JTWROS
3517 WATERCREST PL
ORLANDO, FL 32835-2527

Mike Moran, personally and individually, and
on behalf of his Florida Corp entity
Pictoria Studios USA
3517 Watercrest Place
Orlando, FL 32835-2527

Colleen Morris
Helton Law Firm
9125 S. Toledo Ave
Tulsa, OK 74137-2719

Nola Renee Nichols
Jerome S. Sepkowitz
4800 N. Lincoln Blvd
Oklahoma City, OK 73105-3321

Office of the United States Trustee
PO Box 3044
Tulsa, OK 74101-3044

Okla Empl. Sec. Comm.
P.O. Box 53039
Oklahoma City, OK 73152-3039

Oklahoma Empl. Sec. Comm.
PO Box 53039
Oklahoma City, OK 73152-3039

Oklahoma Tax Commission
201 W. 5th St., Ste. 400
Tulsa, OK 74103-4211

Oklahoma Tax Commission
General Counsel's Office
100 N Broadway Ave, Suite 1500
Oklahoma City, OK 73102-8601

Oklahoma Tax Commission
201 W 5th St. Ste. 400
General Counsel's Office
PO Box 269056
Tulsa, OK 74103-4211

PEAC Solutions
300 Fellowship Road
Mount Laurel, NJ 08054-1201

Paul Aubert
24 Waterway Ave
Suite 830
The Woodlands, TX 77380-4324

Pictoria Studios USA
3517 WATERCREST PL
ORLANDO, FL 32835-2527

Pray Walker
21 N. Greenwood 400
Tulsa, OK 74120-1999

Price Tower Art Center, Inc.
115 1/2 SE Frank Phillips
Bartlesville, OK 74003-3519

Price Tower Arts Center, Inc.
115 1/2 SE Frank Phillips
Bartlesville, OK 74003-3519

(p)AMERICAN ELECTRIC POWER
ATTN JASON E REID
1 RIVERSIDE PLAZA 13TH FLOOR
COLUMBUS OH 43215-2373

Scott R. Helton PLLC cba Helton Law FIr
9125 S Toledo Ave
Tulsa, OK 74137-2719

Katherine Seale
c/o Law Office of J. Erich Johnson PLLC
705 Ross Avenue
Dallas, TX 75202-2007

Jerome S. Sepkowitz
Derryberry & Naifeh LLP
4800 North Lincoln Boulevard
Oklahoma City, OK 73105-3321

Taktik Enterprises, Inc
6462 S. Jamaica Circle
Englewood, CO 80111-6626

Tulsa County Treasurer
John M. Fothergill
218 W 6th St., 8th Fl
Tulsa, OK 74119-1004

(p)NORTHERN DISTRICT OF OKLAHOMA UNITED STATE
ATTN ATTN MS KIRBY BOUDREAUX
110 W 7TH STREET
SUITE 300
TULSA OK 74119-1013

UBAC LLC
12324 E 86th St N STE 522
Owasso, OK 74055-2543

US SEC & EXCHANGE COMM.
Midwest Regional Office
175 W. Jackson Boulevard, Ste 900
Chicago, IL 60604-2815

Karen Walsh
Office of the United States Trustee
PO Box 3044
Tulsa, OK 74101-3044

Washington County Treasurer
420 S Johnstone Rm 101
Bartlesville, OK 74003-6602

Marina Wise
Oklahoma Tax Commission
201 W 5th St, Suite 400
Tulsa, OK 74103-4211

The preferred mailing address (p) above has been substituted for the following entity/entities as so specified
by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).

Fair Capital LLC
PO Box 399
New City, NY 10956

First Insurance
450 Skokie Blvd Suite 1000
Northbrook, Ill 60062

Public Service Company of Oklahoma
PO Box 24401
Canton, Ohio 44701

U.S. Attorney
110 West Seventh Street
Suite 300
Tulsa, OK 74119

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

(u)Craig Alan Brand

(u)Craig Brand and Adriana Soto JTRWOS

(d)Cynthia Diane Blanchard
414 SE Washington Blvd.
Ste. 205
Bartlesville, OK 74006-2428

(u)Dale Takio

(u)Enterprise Global Logistics LLC

(u)Frank Lloyd Wright Building Conserva

(u)Michelle Johnson
Asset Liquidation Specialists LLC

(d)Donna Keffer
1608 Cherokee Hills Drive
Bartlesville, OK 74006-4209

(d)Linda Jones
115 SE Frank Phillips
Bartlesville, OK 74003-3519

(d)Patrick J. Malloy III
Malloy Law Firm, P.C.
401 S Boston Ave. Suite #500
Tulsa, OK 74103-4023

(d)Mark Haskell
115 1/2 SE Frank Phillips
Bartlesville, OK 74003-3519

(u)Erinne Moran

(u)Mike Moran
A/K/A Micahel Moran

(u)Mystic Enterprises, Inc.

(u)Michael Eric Nelson
michaelericnelson@icloud.com

(u)Nola Renee Nichols

(u)D.R. Payne
D.R. Payne & Associates
Address Unknown
, OK

(u)Pictoria Studios USA Inc.

(u)Mark D.G. Sanders

(u)Scott Schlotfelt

(u)Sidney K Swinson

(u)Takitik Enterprises, Inc.

(u)The Inn at Price Tower Inc.

(u)The McFarlin Building, LLC

End of Label Matrix
Mailable recipients    63
Bypassed recipients    24
Total                  87

# EXHIBIT 1



**From:** **Cynthia** cynthiadblanchard@gmail.com
**Subject:** Re: Clarification on Global Settlement
**Date:** September 29, 2025 at 2:24 PM
**To:** Pat Malloy pjmiiim@sbcglobal.net
**Cc:** Mark Sanders msanders@gablelaw.com
**Bcc:** Cynthia French blanchard cdfblanchard@gmail.com

Pat,

Thank you for your explanation. I remain concerned that leaving my claim, Paul's, and Renee's unresolved allows Brand to continue using his standing to harass and prolong the case. From my perspective, this undermines the goal of a true global settlement, which should bring closure and reduce expense to the estate. It seems reasonable that this could raise questions for parties considering objections.

That being said, as you stated, once you receive the interrogatories, my hope is that settlements can be pursued expeditiously so that these issues are resolved without unnecessary cost or delay. I will be responding to your interrogatories promptly. With respect to Brand's duplicative objection and his interrogatory overreach, I will respond if required, and I intend to pursue the necessary protections against further harassment.

Thank you,

Cynthia

On Mon, Sep 29, 2025 at 1:02 PM Pat Malloy <pjmiiim@sbcglobal.net> wrote:

> This is the best explanation I can give--and not likely to be different on a call. Nothing in the agreement prohibits me from moving to settle the remaining claims--if we can reach an agreement. He can object as he did relative to all motions to settle I have filed. However, I feel relatively confident that any settlement I recommend will be approved. In my opinion his ability to delay what issues remain is limited.
>
> On Monday, September 29, 2025 at 12:54:05 PM CDT, Cynthia <cynthiadblanchard@gmail.com> wrote:
>
>
> Pat,
>
> I appreciate your clarification. I do need to raise a concern, though. From my perspective, the value of a "global settlement" is to bring closure and stop further litigation that drains the estate. By leaving my claim, Paul's, and Renee's outside of the agreement, Brand continues to hold leverage and use his standing to harass. That dynamic undercuts the purpose of the settlement and prolongs the case.
>
> I respect your role and understand why you have tried to move things forward, but allowing Brand to keep these objections alive leaves him in control and keeps me (and the estate) exposed to further unnecessary litigation. That doesn't serve creditors as a whole.
>
> Can you please clarify how, in practical terms, this settlement limits Brand's ability to keep the case dragging on? From where I sit, it feels like the estate will continue to pay the cost of his tactics unless the court or trustee sets firmer boundaries. Maybe having a call to explain might be helpful. Please let me know if that would work for you.
>
> Thank you,
>
> Cynthia
>
>
> On Mon, Sep 29, 2025 at 12:35 PM Pat Malloy <pjmiiim@sbcglobal.net> wrote:
>> Not sure I understand— the intent of the settlement is to agree on an allowed claim for Taktik and Pictorial and avoid claims litigation— they would continue to be creditors
>>
>>
>> On Monday, September 29, 2025 at 12:32:21 PM CDT, Cynthia <cynthiadblanchard@gmail.com> wrote:

Pat,

Thank you for the update. For clarity, once the global settlement is approved, Takio and Moran will no longer be creditors, correct? Wouldn't that mean Brand has no standing to pursue further objections? I just want to make sure I understand this correctly.

Thank you,
Cynthia

On Mon, Sep 29, 2025 at 11:15 AM Pat Malloy <pjmiiim@sbcglobal.net> wrote:
Under the settlement agreement he reserves his objection to your claim and the claims of Aubert and Nichols. That does not prevent me trying to settle those claims as I have settled other claims subject to a motion and his right to object. Once we have discovery responses I intend to at least explore settlement of those claims as well.

On Monday, September 29, 2025 at 10:54:58 AM CDT, Cynthia <cynthiadblanchard@gmail.com> wrote:


Ok. Thank you.

On Mon, Sep 29, 2025 at 10:38 AM Pat Malloy <pjmiiim@sbcglobal.net> wrote:
In meeting but will respond shortly

On Monday, September 29, 2025 at 10:25:53 AM CDT, Cynthia <cynthiadblanchard@gmail.com> wrote:


Pat and Mark,

Please give clarification to the "global settlement" that was signed with these parties. I did not see the objection Brand did to my PoC in the document. Is it included? I assume global includes all of the objections he tried to make, but clarity would be appreciated.

Thank you,
Cynthia

# EXHIBIT 2

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF OKLAHOMA**

In re:
**GREEN COPPER HOLDINGS, LLC**
**COPPER TREE, INC.**
**INN AT PRICE TOWER, INC.**
Debtors.

Case No. 25-10088-T (Substantively Consolidated)
Chapter 7

## MOTION TO REVOKE PRO HAC VICE ADMISSION OF CRAIG BRAND

Creditor Cynthia Diane Blanchard, appearing pro se in her individual capacity ("Movant"),
respectfully moves this Court to revoke the pro hac vice admission of attorney Craig Brand for
repeated and continuing violations of the local counsel and court-authorization requirements of
LCvR 83.3(a) and (b) of the United States District Court for the Northern District of Oklahoma,
as incorporated by Local Bankruptcy Rule 9010-1(a), and for other misconduct inconsistent with
the standards governing attorneys admitted pro hac vice.

Mr. Brand has never associated local counsel and has repeatedly filed pleadings, objections, and
motions—including a procedurally improper sanctions motion—without required local counsel
signatures or obtaining leave of Court to act on behalf of his clients. Mr. Brand has further listed
his client's residential/business address as his own "Florida office" on his application. At no
point has he sought or received court authorization to file objections against other creditors, to
move for sanctions, or to otherwise act as lead counsel in this matter, despite these filings
spanning several months.

These violations constitute good cause for immediate revocation under LCvR 83.3(b), which expressly authorizes revocation "at any time for good cause without the necessity of a hearing."

## I. FACTUAL BACKGROUND

On July 21, 2025, Mr. Brand filed a Motion for Admission Pro Hac Vice (Doc. 172), seeking permission to appear in this case (Exhibit A). His application did not identify or associate any local counsel as required by LCvR 83.3(a) and (b). The application listed 11222 Oakshore Lane, Clermont, Florida 34711 as Mr. Brand's "Florida office". This is not a law office of Mr. Brand. It is the personal and business address of his client, TakTik Enterprises, Inc., as shown on a W-9 signed by Dale D. Takio, TakTik's CEO. A copy of this W-9 is attached (Exhibit B). This is a documented fact, not "upon information and belief."

Since admission, Mr. Brand has consistently filed pleadings and appeared before this Court without associating local counsel. Notably, on October 14, 2025, he filed a "Sanctions" Motion directed at two creditors, including Movant, solely under his signature (Docket No. 340). No local counsel has entered an appearance on behalf of Mr. Brand or his clients, no filings have been co-signed by local counsel, and no local counsel has appeared with him in Court. At no time has Mr. Brand sought or obtained leave of Court to file pleadings, motions, or objections on behalf of his clients, or to otherwise act beyond the scope of his limited pro hac vice admission.

These violations are clear from the face of the docket and his filings.

## II. LEGAL STANDARD

### A. Local Rules

LCvR 83.3(a) requires that any attorney who is not a resident of Oklahoma and does not maintain an office in the state must associate with local counsel who maintains an office in Oklahoma and is admitted to practice before this Court.

LCvR 83.3(b) provides:

"Admission pro hac vice may be revoked by the Court at any time for good cause without the necessity of a hearing."

BLR 9010-1(a) provides:

"All attorneys appearing before this Court shall comply with the local rules of the United States District Court for the Northern District of Oklahoma, as supplemented by these Local Bankruptcy Rules."

Taken together, these provisions make the association of local counsel a mandatory condition of pro hac vice admission and expressly authorize revocation for noncompliance. In addition, pro hac vice admission does not authorize an attorney to file objections, sanctions motions, or other pleadings on behalf of clients without either associating local counsel or obtaining leave of Court. See LCvR 83.3(a)–(b); BLR 9010-1(a).

## B. Federal Authority

Federal courts, including bankruptcy courts, have broad discretion to revoke pro hac vice status for violations of local rules or misconduct. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43–46 (1991); Fed. R. Bankr. P. 9010(a). The Tenth Circuit has confirmed that courts have "wide

latitude" to revoke such admission when attorney conduct undermines the administration of justice. *United States v. Collins*, 920 F.2d 619, 627 (10th Cir. 1990).

Courts consistently enforce local counsel rules. In *Ryan v. Astra Tech, Inc.*, 772 F.3d 50, 63 (1st Cir. 2014), the First Circuit affirmed revocation where an attorney's application omitted required local counsel information. In *In re Bundy*, 840 F.3d 1034, 1041–42 (9th Cir. 2016), the Ninth Circuit upheld revocation where local counsel requirements were not met and the application was misleading. *Lasar v. Ford Motor Co.*, 399 F.3d 1101 (9th Cir. 2005) upheld revocation for violations of court orders and litigation misconduct.

Courts place particular emphasis on compliance with local counsel requirements, because local counsel acts as the court's guarantor of compliance with local practice. Failure to meet these requirements defeats the basis on which pro hac vice admission is granted and constitutes independent good cause for revocation.

## III. ARGUMENT

### A. Mr. Brand's Violations of Local Counsel Rules Are Ongoing and Undisputed

Mr. Brand has violated LCvR 83.3(a) from the date of his admission by failing to associate local counsel. He has compounded these violations by repeatedly filing pleadings without the required local counsel signature—including the October 14, 2025 "Sanctions" motion—and by appearing at hearings without local counsel present.

He also misstated his business address by listing his client's Florida residence as his "Florida office." See Ex. B. This is a straightforward misstatement on his application and further underscores the absence of any legitimate local counsel arrangement.

These are not technical defects. The local counsel rule is a fundamental condition of pro hac vice admission, designed to ensure accountability to the Court and compliance with local practice. Mr. Brand's disregard for this rule undermines the integrity of these proceedings and places unnecessary burdens on both the Court and other parties.

Under LCvR 83.3(b), good cause exists to revoke his admission, and no evidentiary hearing is required. The record is clear.

**B. Additional Misconduct Supports Revocation**

In addition to his local counsel violations and false address representation, Mr. Brand has engaged in abusive and duplicative litigation conduct, including filing a procedurally improper sanctions motion against the movant creditor and submitting duplicative objections that mirror the Trustee's filings. The "sanctions" motion contained multiple misstatements of fact and unfounded accusations directed at a creditor in good standing, serving no legitimate purpose other than harassment. These actions, undertaken without leave of court or the association of local counsel, exemplify the very misconduct the local rules are designed to prevent.

This lack of authorization further underscores his improper participation in these proceedings. This type of conduct warranted revocation in *Collins* (10th Cir.), *Lasar*, and *Ryan*, and it further supports revocation here.

## IV. RELIEF REQUESTED

For the reasons set forth above, Movant respectfully requests that this Court:

1.  Revoke Craig Brand's pro hac vice admission pursuant to LCvR 83.3(b), BLR 9010-1(a), and the Court's inherent authority;

2.  Direct his clients to retain properly admitted local counsel for all future filings and appearances; and

3.  Grant such other and further relief as the Court deems just and proper.

Movant rests on the docket and this filing, and respectfully submits that the Court may revoke pro hac vice status on the papers pursuant to LCvR 83.3(b), which expressly authorizes revocation without the necessity of a hearing, and Movant does not consent to or request oral argument.

**Date:  October 20, 2025**

Respectfully submitted,

*Cynthia Diane Blanchard*

Cynthia Diane Blanchard, Pro Se Movant
414 SE Washington Blvd. Ste. 205.
Bartlesville Ok 74006
310-435-5707

# EXHIBIT 3

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **IN RE:** | | |
| **GREEN COPPER HOLDINGS, LLC** | ) | **CASE NO. 25-10088-T** |
| **EIN # xx-xxx9708** | ) | **Chapter 7** |
| | ) | |
| **COPPER TREE, INC.** | ) | **Substantively Consolidated** |
| **EIN # xx-xxx6608** | ) | |
| | ) | |
| **THE INN AT PRICE TOWER INC.** | ) | |
| **Debtors.** | ) | |
| | / | |

**ATTORNEY CRAIG BRAND'S RESPONSE IN OPPOSITION**
**TO CYNTHIA BLANCHARD'S MOTION TO REVOCATION (ECF 341)**

COMES NOW **ATTORNEY CRAIG BRAND** and hereby files this Response In

Opposition to Cynthia Blanchard's Motion for Revocation of Pro Hac Vice admission, ECF 341,

and as grounds thereof states as follows:

I.      **CYNTHIA BLANCHARD'S MOTION**.   Mrs. Blanchard seeks revocation of Mr.

Brand's Admission to this Court citing as legal authority LCvR 83.3(a) and (b) of the U.S.D.C for

the Northern District of Oklahoma, and attempting to incorporate this District Court Rule with

Local Bankruptcy Rule 9010-1(a).  Mrs. Blanchard's Revocation Motion misapplies rules, relies

on speculative claims, and constitutes bad faith harassment meant as an attempt to circumvent Mr.

Brand's client's discovery, the taking of her deposition and the possible adverse outcomes of her

testimony and production of documents, as well as having to respond to Mr. Brand's clients' filings

**ECF 340** (Response To ECF 338-Motion For Protective Order Re Propounded Discovery &

Prayer For Sanctions) and **ECF 289** (Claimant Taktik Enterprises, Inc. Response/Objection To

Motion For Protective Order ECF 283 & 284). A fair reading of Mrs. Blanchard's Motions and

Responses are nothing short of an attack on the Undersigned Attorney, providing absolutely no

objective basis or support for any of her alleged "terms of art", nor do they address the fundamental

issues which is the undersigned's clients ability to engage in the discovery process and her

obligation to comply, as per the Local Rules, this Court's Order (ECF 278) and the FRCP.

II.     **LBR VS. LCvR SUPERSESSION PER LBR 1001-1 AND 9010-1**.

1.      Mrs. Blanchard has mis-read the Local Rules, or upon belief has not read but is

writing and signing from information provided by her personal attorney, also a Claimant herein,

Mr. Paul Aubert, Esq. (Claim No. 2).  ECF 341, wrongfully attempts to commingle District Court

Rules into the Local Bankruptcy Rules.  LBR 9010-1 or LCvR 83.3(b) are not authority for this

Honorable Court and are inapplicable to Mr. Brand's admission.

2.      Mrs. Blanchard attempts to deny Mr. Brand's clients their claim rights, objection

rights and discovery rights, as well as now within ECF 341committed an egregious FRBP 9037

violation, as discussed herein below.

3.      In fact, given the facts demonstrated and argument raised by Mr. Brand's clients'

in ECF 289 and 340, her willful and wanton refusal to participate in the answering of discovery,

having her deposition taken, and providing any documents in response to Requests for Production,

in addition to Mrs. Blanchard's Motion, ECF 341, and her FRBP 9037 violation calls into question

her fitness pro se.

III.    **CLEAR READING OF THE RELEVANT RULES**:

1.      USDC Northern District Court of Oklahoma:

        a.  In spite of Mrs. Blanchard's cited authority, from which she basis her entire motion

            on, LCvR 83.3(a) and (b) of the U.S.D.C for the Northern District of Oklahoma no

longer exists. This Rule has been replaced within the USDC Northern District Court of Oklahoma and now can be found at: LGnR4-2 Admissions.

b. LGnR4-2 and LGnR4-3 Association of Local Counsel, are contained within the April 21, 2023 Local Rules governing the USDC Northern **District Court** of Oklahoma. [Emphasis Added]. This District Court rule has not been adopted by the Local Rules governing this Honorable Court.

c. The case law that Mrs. Blanchard also attempts to rely upon are distinguished below and are all District Court cases having no binding effect under the Local Rules.

2. UNDERLINE UNITED STATES BANKRUPTCY COURT NORTHERN DISTRICT OF OKLAHOMA, Updated March 21, 2025, ("Local Rules"):

a. The Local Rules governing the practice of this Bankruptcy Court have a policy and practice procedure for the admission and allowances of Pro Hac Vice Admitted lawyers. This provision can be found at: 9010-1(B), page 34. This Rule states:

**B. Permission to Appear Pro Hac Vice.** An attorney who has been admitted to practice and remains in good standing before any other court of the United States, or before the highest court of any other State, and who is familiar with these Local Rules may practice before this Court by permission of and on such conditions as may be set by the Court. Permission to practice before the Court may be requested by filing a written motion in the main bankruptcy case (or by making an oral request during any proceeding before the Court, followed by a written motion) and paying the appropriate admission fee to the Clerk of the United States District Court for the Northern District of Oklahoma, 333 W. Fourth Street, Room 411, Tulsa, Oklahoma 74103. **An attorney so admitted shall file pleadings and documents electronically with the Court in compliance with these Local Rules and the ECF Administrative Guide**. Admission in a particular bankruptcy case shall also serve as admission in any and all adversary proceedings filed in the bankruptcy case. [Emphasis Added].

b. **RULE 1001-1. SCOPE OF RULES AND FORMS; DEFINITIONS.** Rule 1001-1, states in part:

c. **H. Definitions.**

1. Bankruptcy Court Clerk. References to the "Clerk" in these rules shall mean the Court Clerk of the United States Bankruptcy Court for the Northern District of Oklahoma.
2. Bankruptcy Code. References to the "Code" in these rules shall mean the United States Bankruptcy Code.
3. Bankruptcy Rules. References to "Bankruptcy Rules" in these rules shall mean the Federal Rules of Bankruptcy Procedure.
4. Local Rules. References to "Local Rules" in these rules shall mean these Local Rules of the United States Bankruptcy Court for the Northern District of Oklahoma.
5. District Court. References to "District Court" in these rules shall mean the United States District Court for the Northern District of Oklahoma.
6. District Court Local Rules. References to "District Court Local Rules" in these rules shall mean the Local Civil Rules of the United States District Court for the Northern District of Oklahoma.

- [Emphasis by Highlight Added].

## 3. **DISTINCTION BETWEEN DISTRICT COURT AND BANKRUPTCY COURT ARE SET FORTH**.

A.    9010-1(B), of the United States Bankruptcy Court Northern District Of Oklahoma, states that upon the admission of an attorney seeking to appear and granted the appearance Pro Hac Vice, that they are to be obligated to follow the "Local Rules and the ECF Administrative Guide". (See, Rule 1001-1, 4. Local Rules. References to "Local Rules" in these rules shall mean these Local Rules of the United States Bankruptcy Court for the Northern District of Oklahoma.)

B.    RULE 1001-1, of the United States Bankruptcy Court Northern District Of Oklahoma, Updated March 21, 2025, H (3-6), demonstrates a clear distinction between the governing rules in the Northern District Court vs. the Bankruptcy Court of the Northern District of Oklahoma.

C.    RULE 1001-1, of the United States Bankruptcy Court Northern District of Oklahoma, Updated March 21, 2025, H(4), clearly illustrates that the referenced term "Local Rules" as used in 9010-1(B), shall mean the rules of the United States Bankruptcy Court Northern District of Oklahoma, Updated March 21, 2025.

D.      A PDF word search of the entire Local Rules does not mention "Local Counsel" once.

E.      <u>The Local Rules have NO Local Counsel requirement</u>.   The absence of local counsel from the Local Rules was noticed and relied upon by Mr. Brand while engaging within the Pro Hac Vice process.  Mr. Brand had read the Local Rules prior to the filing of his application process for Pro Hac Vice admission.  This absence of the mention of Local Counsel was furthered by:

i.  There is no requirement for local counsel to be part of or perform the submission of an applicant's application nor the attestation as to the applicants standing and practice ability as readily held in District Courts. During the submission process and acceptance within the ECF system, Mr. Brand had a conversation with the Clerk of Court who, did not give legal advice, but confirmed that Mr. Brand did not first need to be associated with any other attorney and that his submission of a Petition was stand-alone, meaning that it would not have to be connected with local counsel or submitted by them. Mr. Brand was able to and told to do all the submissions himself which he did.

ii.  Page 36 of the Local Rules, "Signatures", has no commentary or application that anyone other than the appearing attorney sign. Unlike the District Court which states that a local counsel must be the first signature on all pleadings; and,

iii.  The Local Rules do not have an Appearance Requirement for Local Counsel as written into many District Court Local Rules.

F. **The USDC Northern District Court of Oklahoma Local Rules specifically**

   **state**:

1. **LGnR1-2 Rules of Procedure.**
   **(a)** The rules of procedure in any proceeding in this Court shall be as
   prescribed by the laws of the United States, the rules of the Supreme Court
   of the United States, the Federal Rules of Civil Procedure, the Federal Rules
   of Criminal Procedure, any applicable rules of the United States Court of
   Appeals for the Tenth Circuit, and these local rules.
   **(b)** If there is no applicable rule of procedure, a judge may adopt rules of
   procedure governing any proceeding before that judge. Information
   regarding each judge's Individual Judicial Practices is available on the
   Court's website.
   **(c)** A judge has discretion in any civil or criminal case to waive, supplement,
   or modify any requirement of these local rules when the administration of
   justice requires.
   **(d) These local rules do not apply in any case or proceeding which is
   pending in the Bankruptcy Court for the Northern District of
   Oklahoma. [Emphasis added].**
   **(e) These local general, civil, and criminal rules shall be known,
   respectively, as:**
   **(1) the Local General Rules of the United States District Court for the
   Northern District of Oklahoma (cited as "LGnR-");**
   **(2) the Local Civil Rules of the United States District Court for the
   Northern District of Oklahoma (cited as "LCvR-"); and**
   **(3) the Local Criminal Rules of the United States District Court for the
   Northern District of Oklahoma (cited as "LCrR-").**
   **[Emphasis added].**

2. At all times material hereto did Mr. Brand read and rely upon the plain meaning of

the District Court Rules of the Northern District of Oklahoma prior to his submission of his

application for Pro Hac Vice admission.

4. **BRAND'S APPLICATION FOR PRO HAC ADMISSION IS COMPLIANT**.

   A. Contrary to Mrs. Blanchard's assertions, there is nothing incorrect about Brand's

Motion/Petition which Mrs. Blanchard attached to her motion at ECF 341-3, for Pro Hac

Admission.

B.      The Petition ECF 341-3, paragraph 4, correctly states that the undersigned is familiar with the Local Rules as required by 9010-1(B), page 34.

C.      The Petition ECF 341-3, paragraph 5, correctly states that the Petition is accompanied with a required payment.

D.      The Petition ECF 341-3, paragraphs 6-7, are in conformity with the ECF requirements.

5.      **INTRODUCTION AND RELATED FACTS**:

A.      The Court granted Brand's admission [Docket No. 182] on July 21, 2025, extending to all proceedings per LBR 9010-1(B).  Important and reading ECF 182, it states as follows with no conditions, pre-conditions or referrals to any other Local Rules which need to be followed.

**Docket Text:**
ORDER GRANTING MOTION TO APPEAR PRO HAC VICE. This matter comes before the Court for consideration of the Motion for Craig Alan Brand to appear Pro Hac Vice as attorney for Craig A. Brand, Craig A. Brand and Adriana Soto, JTRWOS, Dale Takio a/k/a Dale Douglas Takio and Taktik Enterprises, Mike Moran a/k/a Michael J. Moran and Pictoria Studio USA Inc., Mystic Enterprises, Inc., and Erinne Moran. IT IS HEREBY ORDERED that Craig Alan Brand is admitted pro hac vice as attorney for Craig A. Brand, Craig A. Brand and Adriana Soto, JTRWOS, Dale Takio a/k/a Dale Douglas Takio and Taktik Enterprises, Mike Moran a/k/a Michael J. Moran and Pictoria Studio USA Inc, Mystic Enterprises, Inc., and Erinne Moran in this case. BY THE COURT: Chief Judge Paul R. Thomas. (text-only order) *This entry is the Official Order of the Court. No document is attached.* (related document(s): [172] Motion to Appear Pro Hac Vice) (CR)

B.      Upon information and belief, at all times material hereto, all attorneys, Cynthia Blanchard (herself), the Court and the Trustee were aware that Mr. Brand did not have local counsel and was representing the best interests of his clients by himself.

C.      At all times material hereto, the docket reflects that Mr. Brand solely signed the pleadings on behalf of his clients and that no other attorney sponsored his admission to this Honorable Court.

D.      At all times material hereto, the Court has properly recognized Mr. Brand on behalf of his clients.

E.      As stated in the Trustee's September 29, 2025 Motion, ECF 324, the undersigned helped the Trustee come to a far-reaching resolution in this case, including but not limited to the undersigned's clients, representing:

> a. the proposed settlement will result in a reduction of claims against this estate totaling approximately $960,000;
>
> b. the proposed settlement will avoid six months to a year of claims litigation and likely more time related to any appeals;
>
> c. the proposed settlement will avoid administrative costs incurred in resolving the Pending Matters of approximately $100,000 or more;
>
> d. without admitting the merits of any of the pending claims, there are complex issues related to all of the Pending Matters;
>
> e. witness testimony relative to all of the Pending Matters is conflicting, and most witnesses for or against the subject claims also assert competing claims against the estate; and
>
> f. there are arguably controlling written documents that are subject to conflicting interpretations.
>
> 4. Settlements are favored in bankruptcy.
>
> *[See, paragraphs 3 & 4, of **ECF 324**].

F.      Mr. Brand has worked long and hard on behalf of his clients and in helping move this case forward. ECF 324 is proof of that. The Court Granted the Trustee's Motion to Stay acknowledging relevant recitations of ECF 324 in the Court's Order found at ECF 331.

G.      The prejudice that Mrs. Blanchard is seeking is as far reaching as ECF 324 involves, effecting the case in its entirety as well as to the Undersigned's clients who cannot easily afford a different attorney of their choosing, and this case is now far along.

H.      As to Mr. Brand's clients, Mr. Brand is the attorney most knowledgeable and best suited for this case. Mr. Brand has been living this case with his clients since the inception and formation of the Debtor entities, in fact before, when a plan to create these entities and to purchase the Price Tower was being born. Mr. Brand knows the property, first hand, knows the issues and documents associated with this case, knows the Blanchards' since approximately 2021, knows the witnesses, has obtained and filed supporting third party affidavits against Mrs. Blanchard in this case, has investigated the issues, and has access and knowledge that can cut through and sort out much of the noise and irrelevance that most lawyers need extensive time to sift and learn in representing clients in such matters, especially involving potentially multiple forums.

i.      Mrs. Blanchard's Revocation Motion incorrectly alleges LCvR 83.3 violations (no local counsel), alleges a false Florida address, illegitimate W-9, and "abusive/duplicative" conduct—**but ignores** LBR 1001-1.A.1's supersession of conflicting rules making LBR 9010-1 controlling without the need of retaining additional local counsel. It should be noted that at no time does Mrs. Blanchard support and make specific reference to any abusive conduct or prejudicial duplicity. Mrs. Blanchard has generally referenced, no specifics, in her Motions for Protective Order that the act of discovery are "abusive". The Local Rules provide for as this Court in ECF 278, Ordered.

J.      Further disturbing is the fact that Mrs. Blanchard, who has no idea about, never been to, never seen, Mr. Brand's Florida office or where it is situated or sits as a free standing entity, attempts to improperly make this address an issue. Not that it is relevant, but Mr. Brand's

Florida office conforms with Florida Bar Rules and is properly registered with the State of Florida. (See, Exhibits 1 (Secretary of State registration) and 2 (Florida Bar Certification and address display), attached hereto).

K.      Mrs. Blanchard furthermore filed and made public ECF 341-4, an Unredacted W9 belonging to Taktik Enterprises, Inc., an innocent party in Mrs. Blanchard's Motion against the undersigned, in complete violation of FRBP 9037 and the Local Rules for the Northern District Court of Oklahoma, REDACTION – PRIVACY 5005-1(F). (See Exhibit 3, attached hereto however, Mr. Brand has redacted this document not to repeat the same violation).

L.      The Undersigned Respectfully Moves to Strike from Mrs. Blanchard's Motion and the docket and/or Seal Mrs. Blanchard's improper filing ECF 341-4 as it is a tax filing belonging to Taktik Enterprises, that she came into possession of under Confidentiality, and failed or refused to redact personal and confidential information contained on an IRS tax filing. See, **In re Whitson, 572 B.R. 836 (Bankr. N.D. Ga. 2017)**: (Court seals unredacted pro se docs but warns of sanctions for FRBP 9037 non-compliance).

1.      Contained in **APPENDIX A CM/ECF ADMINISTRATIVE GUIDE OF POLICIES AND PROCEDURES, page 6, X. REDACTION:**

> **Tax Documents.** A CM/ECF User filing tax returns that are required to be filed pursuant to a request under 11 U.S.C. § 521(f) shall redact all personal data identifiers before filing the tax return. To file a tax return as a secure event (i.e., a document that cannot be viewed by the general public) as required by Local Rule 4002-1(C), the CM/ECF User shall choose "Miscellaneous/Other" on the Bankruptcy Events screen and choose "Tax Documents" as the document to be filed. The ECF System will automatically limit access to "Tax Documents" to the filer and the Court.

2.      Mrs. Blanchard is clearly in direct violation of the District and Bankruptcy Court's redaction rules evidencing a continued violation and ignorance of the rules and laws of Federal practice.

6.    **MRS. BLANCHARD SHARES THE SAME DUTIES AND RESPONSIBILITIES TO KNOW THE LOCAL RULES AS MR. BRAND**.

A.    Mrs. Blanchard' acts and violations should be unexcused by pro se status. Pro se litigants must know and follow court rules, including FRBP 9037 redaction and proper application of local rules like LBR 9010-1 (no local counsel required). McNeil v. United States, 508 U.S. 106, 113 (1993) (pro se "must comply with relevant rules of procedural and substantive law"). Her unredacted W-9 exposes sensitive data, violating FRBP 9037(a); she should have known this from the rule's plain text and court guides. *In re Smith*, No. 15-00012, 2015 Bankr. LEXIS 456, at *5 (Bankr. D. Idaho Feb. 10, 2015) (sanctions for unredacted filings, no pro se exception); In re Smith, No. 15-00012, 2015 Bankr. LEXIS 456 (Bankr. D. Idaho Feb. 10, 2015): Sanctions for unredacted filings under FRBP 9037; pro se must comply with privacy rules.

B.    Similarly, misapplying LCvR 83.3 or not even knowing that this rule had been changed, (ignoring LBR 9010-1) shows failure to research—accessible via the court's website. Malautea v. Suzuki Motor Co., 987 F.2d 1536, 1542 (11th Cir. 1993) (pro se bound by rules; ignorance no excuse).

C.    Court's have consistently upheld a pro se litigant's duty to be held accountable as an attorney appearing before the Court. *See*: McNeil v. United States, 508 U.S. 106 (1993): Supreme Court: "We have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel." (Applies to redaction/local rules duty.); Faretta v. California, 422 U.S. 806 (1975): Pro se assume full responsibility for compliance; no special treatment for rules ignorance; Malautea v. Suzuki Motor

Co., 987 F.2d 1536 (11th Cir. 1993): Pro se bound by procedural rules; failure to comply (e.g., discovery) leads to sanctions—no excuse.

      D.     Mrs. Blanchard's Motion concerns with Mr. Brand's Florida Office has no relevancy.

           i.  Mr. Brand produced a Certificate of Good Standing from the Florida Bar along with his Application for Pro Hac Vice Admission.

          ii.  Mr. Brand's registered address in this Court and within the ECF system is his Colorado office at: 6462 S. Jamaica Circle, Englewood, Colorado 80111. The only litigant, claimant or attorney in this case who incorrectly sends mail to the Florida office is Mrs. Blanchard. Mr. Brand's filings and registered address is Colorado after he obtained the ECF admission to this Court and the Clerk corrected by notification to Mr. Brand to use the address used to register ECF privileges, i.e., Colorado. Mrs. Blanchard's entire argument as to Florida is non-sensical and irrelevant.

        iii.  Attached hereto is the Secretary of State, Business Search Registration for The Brand Law Firm, P.A., in Florida.

        iv.  Attached hereto is an updated Certificate of Good Standing from the Florida Bar. Notice the address on file with the Florida Bar.

         v.  At all times material hereto, Mr. Brand's Florida office is following Forida Bar rules.

7.    **MRS. BLANCHARD'S RELIANCE FAILS**.

a.      LBR 9010-1: "An attorney... familiar with these Local Rules may practice before this Court by permission... Admission in a particular bankruptcy case shall also serve as admission in any and all adversary proceedings..."

b.      The Local Rules, as established, <u>Do Not</u> require local counsel as represented by Mrs. Blanchard.   LBR 9010-1(B) is distinguishable from District LCvR 83.3 (now LGnR4-2). LBR 1001-1.A.1 supersedes conflicts: "These rules govern... and shall supersede all local rules..."

> *RULE 1001-1. SCOPE OF RULES AND FORMS; DEFINITIONS*
> **A. Application**.
> 1. These rules govern all cases and proceedings pending before this Court on the effective date specified above and thereafter and shall supersede all local rules and standing orders pertaining to rules of procedure previously adopted and entered by the Court, unless such standing order is specifically incorporated herein.
> 2. These rules, the CM/ECF Administrative Guide of Policies and Procedures, and the Standing Orders, General Orders and Miscellaneous Orders entered by this Court shall govern all cases and proceedings before this Court.

c.      Mrs. Blanchard's District Court district case law reliance also fails.  For instance, in  Chambers v. NASCO, 501 U.S. 32.  In Chambers, supra,  the court noted that the alleged sanctionable conduct was that Chambers had (1) attempted to deprive the court of jurisdiction by acts of fraud, nearly all of which were performed outside the confines of the court, (2) filed false and frivolous pleadings, and (3) "attempted, by other tactics of delay, oppression, harassment and massive expense to reduce [NASCO] to exhausted compliance." Supra.

d.      In, Ryan v. Astra Tech, 772 F.3d 50, the district court granted discovery sanctions, concluding that Ryan did attempt to communicate surreptitiously with his client, that Ryan manufactured false evidence, and that Ryan lied to the court. The court fined Ryan and asked him to explain why his pro hac vice status for the plaintiff should not be revoked due to major breaches of the Massachusetts Rules of Professional Conduct;

e.      In, <u>Lasar v. Ford</u>, 399 F.3d 1101, the district court determined that Sutter deliberately violated two pretrial in limine orders.

f.      In, <u>Johnson v. Trueblood</u>, 629 F.2d 287 (3d Cir. 1980), the crucial question was what procedures should be used where a district court seeks to revoke an attorney's pro hac vice status. "As we have noted in the past, we have inherent supervisory power over the district courts to regulate certain procedural matters of significance." E. g., <u>United States v. Schiavo</u>, 504 F.2d 1 & n.7 (3d Cir.) (in banc), cert. denied, 419 U.S. 1096, 95 S. Ct. 690, 42 L. Ed. 2d 688 (1974). "Here, we believe that some type of notice and an opportunity to respond are necessary when a district court seeks to revoke an attorney's pro hac vice status." *Supra*, 302.

"Such procedures are desirable for two reasons. First, although at one time pro hac vice status was considered to be granted and held at the grace of the court, we believe that in this era of interstate practice of law, such a notion cannot be applied too literally or strictly. Second, some sort of procedural requirement serves a number of salutary purposes. It ensures that the attorney's reputation and livelihood are not unnecessarily damaged, protects the client's interest, and promotes more of an appearance of regularity in the court's processes." *Supra*, 302.

8.      **ESTOPPEL.**

a.   At all times material hereto, Mrs. Blanchard knew that the undersigned was a licensed and practicing attorney outside the state of Oklahoma. Mrs. Blanchard has known Mr. Brand since approximately 2021.   Mr. Brand's credentials and business addresses were always known to her.

b.   <u>Mrs. Blanchard did not object to Mr. Brand's application for Pro Hac Vice admission knowing that it was not tied with a sponsoring local attorney.</u>

c.  Mrs. Blanchard has been the subject of direct challenges by Mr. Brand's clients, i.e., Taktik

Enterprises, Inc and Pictoria Studios (herein referred to as "Clients"). Mr. Brand's Clients

have filed objections to Mrs. Blanchard's claims alleging criminality and/or wrongful

conduct. Mrs. Blanchard knows that Mr. Brand and his Clients sought to file a derivative

lawsuit against her and the Debtors prior to this bankruptcy and served her with Evidence

Preservation Notices amongst other writings.  Mr. Brand's Clients have propounded

written discovery onto Mrs. Blanchard who refuses to answer and respond and the time to

do so has long expired. Mrs. Blanchard has filed two Motions for Protective Orders that

are fully briefed.  One such motion is to the taking of her deposition (ECF 279) and the

other as to the propounded discovery, i.e., Interrogatories and Requests For Production

(ECF 298). The Court in ECF 280 sui sponte Denied Mrs. Blanchard's first Motion for

Protective Order without prejudice. Mrs. Blanchard's discovery answers and responses are

long overdue and no objections were served.  It is believed that Mrs. Blanchard is doing

everything possible to attempt at avoiding the taking of her deposition and the answering

of specific interrogatories and the production of documentation requested.  It is believed

that despite Mrs. Blanchard knowing that Mr. Brand, Esq., was not associated with local

counsel, Mrs. Blanchard has been sending each of her filings to Mr. Brand's Florida office

despite knowing that the Clerk of Court registered to this case Mr. Brand's Colorado

address.  Mrs. Blanchard's motives for her recent filing, the subject hereof, is highly

suspect and given all that has transpired since July 21, 2025, her Motion is incredibly

prejudicial to the Clients and defamatory to Mr. Brand.  Wherefore, given the untimeliness

of her motion and the fact that she consented, by not objecting to Mr. Brand's admission,

this Motion ECF 341 should be time barred and denied based on Estoppel.

9.    **REASONABLE RELIANCE AND GOOD-FAITH.**

A.      For all the reasons stated herein above, the undersigned counsel reasonably believes that he has committed no wrong and that Mrs. Blanchard's Motion incorrectly is attempting to commingle two rules from different judicial systems that cannot be commingled. Had the undersigned had any knowledge that local counsel would have been needed or retained, it would have been done. As stated above, there has been a lot of information and acts that inure to the undersigned's belief and confirmation that the Local Rules do not require local counsel to sponsor a Pro Hac Vice admitted attorney in this Court.

B.      No prejudice has occurred by the undersigned's representation. In fact, it is argued just the opposite. See, Trustee's Motion to Stay Pending Settlement Approval, ECF 324.

**REQUEST FOR HEARING SHOULD THE COURT DETERMINE A NEED:**

Craig A. Brand, ESQ. hereby requests a hearing on this matter at least 24 day's out or at a convenient time for the Court.

WHEREFORE, the Movant hereby prays that this Honorable Court:

1.      Deny ECF 341 in its entirety sui sponte or by way of holding a hearing.

2.      Rule on the issue involving Mrs. Blanchard's filing of a confidential and unredacted IRS document belonging to Taktik Enterprises, Inc.

3.      Find that Mrs. Blanchard is Estopped from the bringing of this Motion

4.      Strike the unredacted filing from Mrs. Blanchard's Motion, not to be considered or viewed and sealed from public view. ECF 341-4.

5.      Access, Mrs. Blanchard's conduct taken in this case. And,

6.      Any and all other relief deemed just and proper.

RESPECTFULLY SUBMITTED ON THIS 24th day of October, 2025.


/s/ *Craig A. Brand, Esq.*

By: _____
     Craig Alan Brand, Esq.
     FBN: 896111
     Tel. (305) 878-1477
     6462 S. Jamaica Circle
     Englewood, Colorado 80111

**On behalf of and for:**
PICTORIA STUDIOS USA, INC. (Claim No. 14)
TAKTIK ENTERPRISES, INC. (Claim No. 4)


## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of this foregoing Response to ECF 338 was filed with the Clerk of Court on this 24th day of October, 2025, as well as mailed by US first class mail to:

Cynthia Diane Blanchard, pro se
414 SE Washington Blvd. Ste. 205
Bartlesville, OK 74006
310-435-5707


/s/ *Craig A. Brand, Esq.*

By: _____
     Craig Alan Brand, Esq.
     FBN: 896111
     Tel. (305) 878-1477
     6462 S. Jamaica Circle
     Englewood, Colorado 80111

**On behalf of and for:**
PICTORIA STUDIOS USA, INC. (Claim No. 14)
TAKTIK ENTERPRISES, INC. (Claim No. 4)

# EXHIBIT 4

**UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

In re:
**GREEN COPPER HOLDINGS, LLC** . **Case No. 25-10088-T**
**COPPER TREE, INC..**
**INN AT PRICE TOWER, INC.,** Substantively Consolidated

## MOTION FOR PROTECTIVE ORDER

Comes now, Cynthia Blanchard, pro se, and respectfully moves this Court pursuant to Federal

Rule of Civil Procedure 26(c), made applicable to bankruptcy proceedings by Bankruptcy Rules

7026 and 9014, for a protective order regarding discovery sought by Craig Brand, who has

entered appearances in this case in connection with certain claim objections and related matters.

**Background**

1.   Mr. Brand has indicated his intent to notice my deposition in connection with his
     objection to the proposed settlement with the Frank Lloyd Wright Conservancy.

2.   I am not a party to this contested matter. The Chapter 7 Trustee is the fiduciary with full
     control over the debtor's records and information.

3.   Mr. Brand has filed numerous objections and is attempting to involve me personally in
     ways that I believe are harassing and intended to create undue burden.

4.   Subjecting me to deposition under these circumstances would be duplicative,
     unnecessary, and oppressive, given that the Trustee is the proper representative of the
     estate.

**Relief Requested**

Pursuant to Rule 26(c), I respectfully request that the Court enter a protective order:

- Prohibiting Mr. Brand from noticing or taking my deposition in this matter without prior leave of Court; or, in the alternative,

- If a deposition is permitted, limiting its scope strictly to issues directly relevant to the Frank Lloyd Wright Conservancy settlement objection, limiting duration to no more than two hours, and prohibiting inquiry into any personal matters, including but not limited to finances, private family matters, health, unrelated litigation, or into issues that have already been resolved in prior orders of this Court, as well as any issues outside the scope of this objection.

**Conclusion**

For the foregoing reasons, I respectfully request that the Court grant this Motion for Protective Order and such other relief as it deems just and proper.

Dated: September 4, 2025

Respectfully submitted,

**Cynthia Diane Blanchard, pro se**
**414 SE Washington Blvd. Ste. 205**
**Bartlesville, OK 74006**
**310-435-5707**

UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

In re:
GREEN COPPER HOLDINGS, LLC,       Case No. 25-10088-T
COPPER TREE, INC.,
INN AT PRICE TOWER, INC.,
     Substantively Consolidated,

Chapter 7

## REPLY IN SUPPORT OF MOTION FOR PROTECTIVE ORDER

Comes now Cynthia Diane Blanchard, pro se movant, and respectfully replies to the Objection
filed by Craig A. Brand on September 10, 2025 (Docket files 289 & 290).

Mr. Brand's objection purportedly on behalf of other parties relies on false, defamatory, and
malicious personal character attacks rather than addressing the merits of the Motion. Such filings
only reinforce the need for protection and demonstrate the pattern of harassment the Motion
seeks to prevent. The Trustee already has documentation in his possession that directly
contradicts the affidavits previously filed in Mr. Brand's objection to my proof of claim (docket
file 285), and in his reply to the Trustee's objection (docket file 287), underscoring his ongoing
effort to inject false, irrelevant material intended only to harass.

Brand's objection also fails on its own terms. It substitutes innuendo for analysis, recasting my
Motion as "avoidance" while offering no concrete need for my deposition. His positions are
internally inconsistent: he at once urges that the Trustee should have prosecuted the original
FLWC litigation (filed at the state level) because it would succeed, and in the same filing revives

FLWC easement/provenance false narratives and "missing artifacts" insinuations to justify burdensome discovery. Those positions cannot be reconciled.

Further, the Trustee and FLWC have already resolved their disputes by settlement and release, which narrows rather than expands the scope of discovery. The Court has already authorized a "free and clear" sale under §363 extinguishing any claimed encumbrances, confirming that the Conservancy has no provenance or control over the artifacts. Brand's repeated false references to "missing artifacts" are unsubstantiated rhetoric, not evidence, and serve only to create scandal and harassment. Such material is precisely what 11 U.S.C. §107(b)(2) and Rule 9018 permit the Court to strike or limit.

Pursuant to Fed. R. Bankr. P. 7026 (incorporating Fed. R. Civ. P. 26(c)), as applied in contested matters by Fed. R. Bankr. P. 9014(c), the Court may issue a protective order to protect a party from annoyance, embarrassment, oppression, or undue burden or expense. The circumstances here satisfy that standard.

I stand by my Motion for Protective Order and respectfully request that the Court rule on the written submissions. In the alternative, should the Court determine that oral argument is required, I request to appear by telephone or other remote means to minimize the undue burden and harassment created by Mr. Brand's aggressive filings and tactics.

**WHEREFORE,** I respectfully request that the Court grant the Motion for Protective Order and provide such other relief as is just and proper.

Respectfully submitted this 15th day of September, 2025.

**Cynthia Diane Blanchard, Pro Se Movant**
**414 SE Washington Blvd. Ste. 205.**
**Bartlesville Ok 74006**
**310-435-5707**

## CERTIFICATE OF SERVICE

I hereby certify that on  September 15, 2025, I mailed a true and correct copy of the foregoing
**Reply in Support of Motion for Protective Order**.via U.S. Mail, postage prepaid, to the
following:

**Patrick J. Malloy III**
Chapter 7 Trustee
401 South Boston Avenue, Suite 500
Tulsa, OK 74103

**Karen Walsh**
Office of the United States Trustee
224 South Boulder Avenue, Suite 225
Tulsa, OK 74103

**Craig A. Brand, ESQ.**
Craig Brand Law Firm
11222 Oak Shore Lane
Clermont, FL. 34711

Dated:  September 15, 2025

**Cynthia Diane Blanchard, Pro Se Movant**
**414 SE Washington Blvd. Ste. 205.**
**Bartlesville Ok 74006**
**310-435-5707**

# UNITED STATES BANKRUPTCY COURT

# NORTHERN DISTRICT OF OKLAHOMA

FILED

U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF OK.

In re:
**GREEN COPPER HOLDINGS, LLC**
**COPPER TREE, INC.**
**INN AT PRICE TOWER, INC.**
Substantively Consolidated, Case No. 25-10088-T

## MOTION FOR PROTECTIVE ORDER

## (Fed. R. Civ. P. 26(c); Fed. R. Bankr. P. 7026, 9014)

Creditor Cynthia Diane Blanchard ("Movant"), appearing pro se, respectfully moves this Court

for a protective order under Rule 26(c), made applicable by Rules 7026 and 9014 of the Federal

Rules of Bankruptcy Procedure, relieving her from any obligation to respond to any discovery

propounded by attorney Craig A. Brand, including but not limited to interrogatories and requests

for production served on September 16, 2025. Brand's discovery is duplicative of discovery

already propounded by the Chapter 7 Trustee, harassing in scope, and beyond the proper role of a

creditor.

## I. INTRODUCTION

Movant has fully responded to the Trustee's discovery in accordance with the Court's schedule.

Brand's duplicative and overreaching discovery imposes undue burden and expense and serves

no legitimate purpose. Moreover, Movant has already asked the Court to overrule Brand's

underlying objection to her claim. Allowing Brand to pursue discovery now would waste estate

resources and prejudice Movant. A protective order is warranted.

## II. BACKGROUND

1.  On February 28, 2025, Movant filed Proofs of Claim (Claim Nos. 1-1 and 1-2). She later amended her claim on June 7, 2025 to consolidate and clarify the filing so that it would not be duplicative.

2.  The Trustee timely objected, and on September 16, 2025, the Trustee served his interrogatories and requests on Movant pursuant to the Court's discovery schedule, which set November 7, 2025 as the close of discovery.

3.  Movant has already answered the Trustee's interrogatories and produced extensive supporting documentation in compliance with that schedule.

4.  On September 8, 2025—more than two months after the Trustee had filed and amended his objection to Movant's Proof of Claim— Mr. Brand filed an objection to Movant's Proof of Claim on behalf of Pictoria Studios USA, Inc. and TakTik Enterprises, Inc.

5.  On September 16, 2025, the same day the Trustee sent his interrogatories and requests to movant, Mr. Brand served a separate set of interrogatories and requests for production on Movant on behalf of Pictoria Studios USA Inc. (Attached Exhibit B)

6.  On October 7, 2025, Movant filed her Response to Mr. Brand's Objection to Proof of Claim, asking the Court to overrule Mr. Brand's objection as duplicative, procedurally improper, and harassing. That response is currently pending before the Court.

7. Despite this, Mr. Brand seeks to pursue parallel discovery covering the same subject matter already addressed through the Trustee's process, but also include irrelevant and invasive demands (e.g., requests for Movant's driver's license and passport).

8. On October 8, 2025, Movant notified Mr. Brand in writing that his discovery requests were duplicative, unnecessary, and harassing, and requested in good faith under Rule 26(c) that he withdraw them. (Exhibit A). Mr. Brand has not withdrawn the requests.

## III. LEGAL STANDARD

Rule 26(c) permits the Court, for good cause, to "issue an order to protect a party from annoyance, embarrassment, oppression, or undue burden or expense." Protective orders may forbid discovery entirely or limit it to protect against abuse, including duplicative or harassing discovery.

## IV. ARGUMENT

### A. The Trustee Controls Discovery Regarding Claim Objections

Under 11 U.S.C. § 704(a)(5), the Chapter 7 Trustee—not individual creditors—has the duty and authority to examine proofs of claim and object to improper claims. Individual creditors generally lack standing to object to claims or conduct related discovery unless the trustee refuses to act and the court grants derivative standing. *See, e.g.,* **In re Thompson**, 965 F.2d 1136, 1147 (1st Cir. 1992); **In re Manshul Constr. Corp.**, 223 B.R. 428, 431 (Bankr. S.D.N.Y. 1998); **In re Curry & Sorensen, Inc.**, 57 B.R. 824, 827 (9th Cir. B.A.P. 1986).

Movant has already fully responded to the Trustee's discovery. Mr. Brand has not sought nor obtained court authorization to conduct independent discovery regarding claim objections. His duplicative discovery usurps the Trustee's role and imposes unnecessary expense and delay on the estate. A protective order is warranted under Fed. R. Civ. P. 26(c) (incorporated by Fed. R. Bankr. P. 7026) to prevent unauthorized and burdensome discovery.

**B. The Discovery Is Duplicative, Harassing, and Overbroad**

Mr. Brand's interrogatories mirror the Trustee's requests but also include sweeping, irrelevant demands. These include invasive personal identification documents and broad "all documents supporting any contention" language. Such requests are the textbook definition of undue burden and harassment under Rule 26(c).

Moreover, in Movant's October 8, 2025 meet-and-confer email, she specifically requested that Mr. Brand withdraw his interrogatories on the grounds that they were duplicative, unnecessary, and procedurally improper. Mr. Brand's response (Exhibit A) ignored the threshold issue of his lack of standing, threatened sanctions, and demanded that Movant provide a question-by-question breakdown of duplicative items. This demand misses the point. Mr. Brand's discovery is procedurally improper in its entirety because he lacks court authorization to conduct discovery related to claim objections. Movant was not required to parse individual questions in response to an unauthorized discovery request. His threatening response further underscores the harassing nature of his tactics.

**C. Discovery by Mr. Brand Is Not Proportional to the Needs of the Case**

The issues in dispute are already being addressed in the Trustee's objection. Allowing Mr. Brand

to proceed with separate discovery would multiply proceedings, increase costs, and create unnecessary conflicts.

**D. The Protective Order Should Cover All of Mr. Brand's Discovery Efforts**

Given Mr. Brand's dual representation of Pictoria Studios USA, Inc. and TakTik Enterprises, Inc., and his pattern of duplicative and harassing tactics, the protective order should bar not only include the current discovery but any future discovery attempts by Mr. Brand on behalf of any party he represents, unless expressly authorized by the Court. This will prevent further attempts to circumvent the Trustee's discovery process.

## V. RELIEF REQUESTED

For the foregoing reasons, Movant respectfully requests that the Court enter an order providing that:

1. Movant is relieved of any obligation to respond to the interrogatories and requests for production served by Craig A. Brand on September 16, 2025; and

2. Movant is not required to respond to any current or future discovery requests propounded by Craig A. Brand, whether on behalf of Pictoria Studios USA, Inc., TakTik Enterprises, Inc., or any other party he represents, absent express leave of Court.

## VI. CERTIFICATION UNDER RULE 26(c)(1)

Movant certifies that on October 8, 2025, she conferred in good faith by email with Brand requesting that he withdraw his discovery requests. A true and correct copy of this

correspondence is attached as Exhibit A.

**Date: October 9, 2025**

Respectfully Submitted,

*Cynthia Diane Blanchard*

Cynthia Diane Blanchard, pro se
414 SE Washington Blvd. Ste. 205
Bartlesville, OK 74006
310-435-5707

## EXHIBITS

- **Exhibit A:** Rule 26(c) Good Faith Correspondence (Oct. 8, 2025)

- **Exhibit B:** Brand's Interrogatories and Requests for Production (Sept. 16, 2025)

# EXHIBIT 5

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **IN RE:** | ) | |
| | ) | **Filed/Docketed** |
| **GREEN COPPER HOLDINGS, LLC** | ) | **CASE NO. 25-10088-T** |
| **EIN # xx-xxx9708** | ) | **Chapter 7** |
| | ) | |
| **COPPER TREE, INC.** | ) | **Substantively Consolidated** |
| **EIN # xx-xxx6608** | ) | |
| | ) | |
| **THE INN AT PRICE TOWER INC.** | ) | |
| | ) | |
| **Debtors.** | ) | |

Filed/Docketed
Oct 28, 2025

**ORDER**

This matter having come on for consideration this 28th day of October 2025, on the *TRUSTEE'S MOTION FOR APPROVAL OF SETTLEMENT OF CONTESTED MATTERS, AND NOTICE OF OPPORTUNITY FOR HEARING* (the "Motion") (Doc. No. 324), the Court finds:

1. The Motion was filed on September 29, 2025, seeking an order approving a settlement between the Trustee, Pictoria Studios USA, Inc. ("Pictoria") and Taktik Enterprises, Inc. ("Taktik") related to the following contested matters:

    a. Trustee's Objection to Pictoria's Proof of Claim for the sum of $217,975 [Doc. No. 135];

    b. Trustee's Objection to Takio's Proof of Claim for the sum of $513,918.65 [Doc. No. 132];

    c. Trustee's motion to settle claims related to the Frank Lloyd Wright Conservancy [Doc. No. 156] and Pictoria's and Taktik's Objections thereto;

    d. Trustee's motion to settle proof of claims filed by Donna Keffer [Doc. No. 263] and Pictora's and Taktik's objections thereto;

    e.  Trustee's motion to settle proof of claims by Linda Jones [Doc. No. 264] and Pictoria's and Taktik's objections thereto;

    f.  Trustee's motion to settle proof of claims filed by Mark Haskell [Doc. No. 265] and Pictoria's and Taktik's objections thereto;

    g.  Trustee's motion to settle proof of claims filed by The Price Tower Arts Center [Doc. No. 286] and Pictoria's and Taktik's objections thereto;

    h.  Trustee's motion to settle proof of claim filed herein by Enterprise Global [Doc. No. 300] and Pictoria's and Taktik's objections thereto;

    i.  Pictoria's and Taktik's motions to compel the Trustee to undertake certain acts [Doc. No. 249], and the Trustee's objection thereto.

2.  Under the terms of the settlement agreement,

    **a.**  Taktik shall have an allowed unsecured claim against the estate for the sum of **$250,362.37.**

    **b.**  Pictoria shall have an allowed unsecured claim against the estate for the sum of **$149,637.63.**

    c.  Neither claim shall be entitled to secured status, or administrative or other priority treatment under the Bankruptcy Code.

    d.  Taktik and Pictoria will withdraw all objections, motions or other documents filed in connection with the Pending Matters, and those matters will then be concluded in due course.

    e.  In particular, with respect to Pending Matters c. through h. – *i.e.* motions to settle – given the fact that no objections, other than those of Pictoria and Taktik, were

filed thereto, the Trustee shall forthwith submit proposed orders approving all of those motions.

3.   The Trustee provided timely and proper Notice of the proposed settlement to all necessary and interested parties.

4.   No objections to the proposed settlement were filed within the time prescribed in the motion.

5.   The proposed settlement is fair and equitable and in the best interests of the estate.

IT IS THEREFORE ORDERED that the Trustee be and is hereby authorized to enter into a settlement with Takio and Pictoria of the above referenced matters pursuant to the terms and conditions stated above.

BY THE COURT:

PAUL R. THOMAS, CHIEF JUDGE
UNITED STATES BANKRUPTCY

Submitted By:
Patrick J. Malloy III, OBA #5647
MALLOY LAW FIRM, P.C.
401 S. Boston Ave. Suite 500
Tulsa, Oklahoma  74103
Telephone:     918-699-0345
Fax:           918-699-0325
*ATTORNEYS FOR TRUSTEE*

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | Filed/Docketed |
| **GREEN COPPER HOLDINGS, LLC** | ) | **CASE NO. 25-10088-T** Nov 10, 2025 |
| **EIN # xx-xxx9708** | ) | **Chapter 7** |
| | ) | |
| **COPPER TREE, INC.** | ) | **Substantively Consolidated** |
| **EIN # xx-xxx6608** | ) | |
| | ) | |
| **THE INN AT PRICE TOWER INC.** | ) | |
| | ) | |
| Debtors. | ) | |

**ORDER**

This matter having come on for consideration this 10th day of November 2025, on the *TRUSTEE'S MOTION TO SETTLE PROOF OF CLAIM NOS. 21-2, 22-2, and 23-2 FILED HEREIN BY MARK HASKELL ("Haskell") AND MOTION FOR ORDER DENYING OBJECTION TO THESE CLAIMS AND NOTICE OF OPPORTUNITY FOR HEARING* (the "Motion") (Doc. No. 265), the Court finds:

    1.   The Motion was filed on August 29, 2025, seeking an order approving a settlement between the Trustee and Mark Haskell ("Haskell") under the following conditions:

        a.   Haskell will have an allowed general unsecured claim in the amount of $570,000; and

        b.   Claims 21, 22 and 23 will be withdrawn or substituted by the agreed upon claim.

    2.   The Trustee provided timely and proper Notice of the proposed settlement to all necessary and interested parties.

3. An Objection to the Motion was filed herein by Pictoria Studios USA Inc. ("Pictoria") and Taktik Enterprises Inc. ("Taktik") (Doc. No. 269). No other objections to the Motion were filed. Pictoria and Taktik had additionally objected to Jones' original claims (Doc. 250, 254, 256).

4. On October 28, 2025, this Court entered an order approving a settlement between the Trustee, Pictoria and Taktik (Doc. No. 345). That settlement among other matters provided that Pictoria and Taktik consented to an entry of an order approving the Motion.

5. The proposed settlement is fair and equitable and in the best interests of the estate and all necessary and interested parties.

IT IS THEREFORE ORDERED that the Trustee be and is hereby authorized to settle his objection to Proof of Claim Nos. 21-2, 22-2 and 23-2 filed by Mark Haskell pursuant to the terms and conditions stated above.

BY THE COURT:

PAUL R. THOMAS, CHIEF JUDGE
UNITED STATES BANKRUPTCY

Submitted By:
Patrick J. Malloy III, OBA #5647
MALLOY LAW FIRM, P.C.
401 S. Boston Ave. Suite 500
Tulsa, Oklahoma 74103
Telephone:      918-699-0345
Fax:            918-699-0325
*ATTORNEYS FOR TRUSTEE*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | Filed/Docketed |
| GREEN COPPER HOLDINGS, LLC | ) | **CASE NO. 25-10088-T** |
| EIN # xx-xxx9708 | ) | **Chapter 7** |
| | ) | |
| COPPER TREE, INC. | ) | **Substantively Consolidated** |
| EIN # xx-xxx6608 | ) | |
| | ) | |
| THE INN AT PRICE TOWER INC. | ) | |
| | ) | |
| Debtors. | ) | |

Filed/Docketed
Nov 10, 2025

### ORDER

This matter having come on for consideration this 10th day of November 2025, on the *TRUSTEE'S MOTION TO SETTLE PROOF OF CLAIM 19-2 FILED HEREIN BY LINDA JONES ("Jones") PURSUANT TO FED. R BANK P. 9019; FOR ORDER AUTHORIZING INTERIM DISTRIBUTION OF PRIORITY WAGE CLAIM; FOR ORDER DENYING OBJECTION TO CLAIM AND NOTICE OF OPPORTUNITY FOR HEARING* (the "Motion") (Doc. No. 264), the Court finds:

1. The Motion was filed on August 29, 2025, seeking an order approving a settlement between the Trustee and Linda Jones ("Jones") under the following conditions:

   a. The penalty portion of Jones' claim will be disallowed;

   b. Jones will have an allowed general unsecured claim in the amount of $45,000;

   c. $1,161.29 of the allowed claim would constitute a priority wage claim pursuant to 11 U.S.C. § 507(a)(4);

   d. Subject to the Court's approval, the Trustee will effect an interim distribution of the priority wage claim totaling $1,161.29; and

e.  Upon approval of the proposed settlement, the Trustee will request that the Court enter an order denying the Objection filed by Pictoria and Taktik on the basis of mootness.

2.  The Trustee provided timely and proper Notice of the proposed settlement to all necessary and interested parties.

3.  An Objection to the Motion was filed herein by Pictoria Studios USA Inc. ("Pictoria") and Taktik Enterprises Inc. ("Taktik") (Doc. No. 268). No other objections to the Motion were filed. Pictoria and Taktik had additionally objected to Jones' original claim (Doc. 253).

4.  On October 28, 2025, this Court entered an order approving a settlement between the Trustee, Pictoria and Taktik (Doc. No. 345). That settlement among other matters provided that Pictoria and Taktik consented to an entry of an order approving the Motion.

5.  The proposed settlement is fair and equitable and in the best interests of the estate and all necessary and interested parties.

IT IS THEREFORE ORDERED that the Trustee be and is hereby authorized to settle his objection to  Proof of Claim 19-2 filed by Linda Jones pursuant to the terms and conditions stated above.

BY THE COURT:

PAUL R. THOMAS, CHIEF JUDGE
UNITED STATES BANKRUPTCY

Submitted By:
Patrick J. Malloy III, OBA #5647
MALLOY LAW FIRM, P.C.
401 S. Boston Ave. Suite 500
Tulsa, Oklahoma  74103
Telephone:    918-699-0345
Fax:          918-699-0325
*ATTORNEYS FOR TRUSTEE*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | Filed/Docketed |
| **GREEN COPPER HOLDINGS, LLC** | ) | **CASE NO. 25-10088-T** |
| EIN # xx-xxx9708 | ) | **Chapter 7** Nov 10, 2025 |
| | ) | |
| **COPPER TREE, INC.** | ) | **Substantively Consolidated** |
| EIN # xx-xxx6608 | ) | |
| | ) | |
| **THE INN AT PRICE TOWER INC.** | ) | |
| | ) | |
| Debtors. | ) | |

### ORDER

This matter having come on for consideration this 10th day of November 2025, on the *TRUSTEE'S NOTICE AND MOTION TO SETTLE DISPUTED MATTER AND NOTICE OF OPPORTUNITY FOR HEARING* (the "Motion") (Doc. No. 156), the Court finds:

1. The Motion was filed on July 15, 2025, seeking an order approving a settlement between the Trustee and the Frank Lloyd Wright Conservancy ("Conservancy") under the following conditions:

    a. The Trustee will release any and all claims against the Conservancy arising out of or related to the above referenced state court proceeding and shall cause to be filed in the state court matter a dismissal of all claims;

    b. The Conservancy shall withdraw its Proof of Claim and shall release any and all claims against this estate; and

    c. The Trustee shall release any and all avoidance claims with respect to the pre-petition transfers of property to 20C.

2.  The Trustee provided timely and proper Notice of the proposed settlement to all necessary and interested parties.

3.  On July 21, 2025, objections to the proposed settlement were filed by Craig Brand and Adriana Soto JTRWOS (Doc. No. 173), Dale Takio and Takitik Enterprises, Inc. ("Takio") (Doc. No. 175) and Pictoria Studios USA, Inc. ("Pictoria") (Doc. No. 179).

4.  On September 29, 2025, the Trustee filed a separate motion for approval of a settlement between the estate, Takio and Pictoria (Doc. No. 324) effectively settling all of the matters contested by Takio and Pictoria in this case, including the settlement with the Conservancy. An order approving the settlement with Takio and Pictoria was entered on October 28, 2025 (Doc. No. 345).

5.  The proposed settlement is fair and equitable and in the best interests of the estate.

IT IS THEREFORE ORDERED that the Trustee be and is hereby authorized to settle all matters by and between this estate and the Conservancy pursuant to the terms and conditions stated above.

BY THE COURT:

PAUL R. THOMAS, CHIEF JUDGE
UNITED STATES BANKRUPTCY

Submitted By:
Patrick J. Malloy III, OBA #5647
MALLOY LAW FIRM, P.C.
401 S. Boston Ave. Suite 500
Tulsa, Oklahoma  74103
Telephone:      918-699-0345
Fax:            918-699-0325
*ATTORNEYS FOR TRUSTEE*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

IN RE:                     )

                          )

**GREEN COPPER HOLDINGS, LLC**     )     **CASE NO. 25-10088-T**

**EIN # xx-xxx9708**               )     **Chapter 7**

                          )

**COPPER TREE, INC.**            )     **Substantively Consolidated**

**EIN # xx-xxx6608**               )

                          )

**THE INN AT PRICE TOWER INC.**     )

                          )

           Debtors.        )

Filed/Docketed
Nov 10, 2025

### ORDER

This matter having come on for consideration this 10th day of November 2025, on the *TRUSTEE'S MOTION TO SETTLE PROOF OF CLAIM 20-2 FILED HEREIN BY DONNA KEFFER ("Keffer") PURSUANT TO FED. R BANK P. 9019; FOR ORDER AUTHORIZING INTERIM DISTRIBUTION OF PRIORITY WAGE CLAIM; FOR ORDER DENYING OBJECTION TO CLAIM AND NOTICE OF OPPORTUNITY FOR HEARING* (the "Motion") (Doc. No. 263), the Court finds:

    1.   The Motion was filed on August 29, 2025, seeking an order approving a settlement between the Trustee and Donna Keffer ("Keffer") under the following conditions:

        a.   The penalty portion of Keffer's claim will be disallowed;

        b.   Keffer will have an allowed general unsecured claim in the amount of $50,000;

        c.   $15,150 of the allowed claim would constitute a priority wage claim pursuant to 11 U.S.C. § 507(a)(4);

        d.   Subject to the Court's approval, the Trustee will effect an interim distribution of the priority wage claim totaling $15,150; and

e.  Upon approval of the proposed settlement, the Trustee will request that the Court enter an order denying the Objection filed by Pictoria and Taktik on the basis of mootness.

2.  The Trustee provided timely and proper Notice of the proposed settlement to all necessary and interested parties.

3.  Objections to the Motion were filed herein by Pictoria Studios USA Inc. ("Pictoria") and Taktik Enterprises Inc. ("Taktik") (Doc. No. 267). No other objections to the Motion were filed. Pictoria and Taktik had additionally objected to Keffer's original claim (Doc. 251).

4.  On October 28, 2025, this Court entered an order approving a settlement between the Trustee, Pictoria and Taktik (Doc. No. 345). That settlement among other matters provided that Pictoria and Taktik consented to an entry of an order approving the Motion.

5.  The proposed settlement is fair and equitable and in the best interests of the estate and all necessary and interested parties.

IT IS THEREFORE ORDERED that the Trustee be and is hereby authorized to settle his objection to Proof of Claim 20-2 filed by Donna Keffer pursuant to the terms and conditions stated above.

BY THE COURT:

PAUL R. THOMAS, CHIEF JUDGE
UNITED STATES BANKRUPTCY

Submitted By:
Patrick J. Malloy III, OBA #5647
MALLOY LAW FIRM, P.C.
401 S. Boston Ave. Suite 500
Tulsa, Oklahoma 74103
Telephone:   918-699-0345
Fax:         918-699-0325
*ATTORNEYS FOR TRUSTEE*

# EXHIBIT 6

# U.S. Department of Justice FY 2026 Contingency Plan

- September 29, 2025 -

This FY 2026 Contingency Plan covers Department of Justice (DOJ or the Department) operations during a lapse in appropriations.

The Antideficiency Act restricts the Federal Government's ability to obligate funds in advance of appropriations or beyond appropriated levels. During a lapse in appropriations, the Department will only continue the following categories of activities:

1. Those funded by a source that has not lapsed, such as permanent indefinite appropriations and carryover of no-year funds appropriated in a prior year;

2. Those for which there is an express authority to continue during an appropriations lapse;

3. Those for which authority to continue during an appropriations lapse arises by necessary implication;

4. Those related to the discharge of the President's constitutional duties and powers; and

5. Those related to "emergencies involving the safety of human life or the protection of property," *i.e.,* where there is a reasonable likelihood that the safety of human life or the protection of property would be compromised, in some significant degree, by delay in the performance of the function in question.

The Department of Justice is comprised of components that have a broad array of national security, law enforcement, and criminal justice system responsibilities. The Department's mission is to enforce the law and defend the interests of the United States according to the law; to ensure public safety against threats foreign and domestic; to provide federal leadership in preventing and controlling crime; to seek just punishment for those guilty of unlawful behavior; and to ensure fair and impartial administration of justice for all Americans.

Therefore, a significant portion of the Department's mission relates to the safety of human life and the protection of property, and primarily for this reason, the Department has a high percentage of activities and employees that are excepted from the Antideficiency Act restrictions and can continue during a lapse in appropriations. Other activities and employees are excepted because they are funded with multi-year or no-year appropriations, or because they are Presidential appointees, most of whom are excepted from furlough because they are not covered by the leave system in 5 U.S.C. Chapter 63.[1]  Note that the contingency plan assumes that, at the

---

[1] Note: Former career Senior Executive Service (SES) appointees who receive a Presidential appointment that would

time of a shutdown, all Components and Subcomponents normally headed by a Presidential appointee are in fact headed by a Presidential Appointee.  If at the time of shutdown, the Department does not have Presidential appointees in one or more of those positions, the Department will determine the excepted status of those who are acting in those positions in accordance with the criteria above.

## Agency Summary

The total number of agency employees on board at the time the Department initially issued this Contingency Plan was 115,131[2] (see Table 2).  Based on onboard personnel data as of May 31, 2025, for a lapse in appropriations for the first five calendar days of FY 2026, beginning on October 1, 2025, 102,291 DOJ employees would be excepted from furlough (see Table 1), representing 89% of DOJ on-board employees.

### Table 1: Department of Justice FY 2026 Contingency Plan Exceptions
### Employees Excepted from Furlough

| Categories | | Total Excepted Employees |
|---|---|---|
| Category 1 | Employees whose compensation is financed by a resource other than annual appropriation (also referred to as "exempt employees") | 4,930 |
| Category 2 | Employees necessary to perform activities expressly authorized by law to continue during a lapse in appropriations | 1,408 |
| Category 3 | Employees necessary to perform activities necessarily implied by law | 3,190 |
| Category 4 | Employees necessary to the discharge of the President's constitutional duties and powers | 30 |
| Category 5 | Employees necessary to protect life and property | 92,733 |
| **Total** | | **102,291** |

---

normally convey an exemption from the leave system may be eligible to elect to retain SES leave benefits under 5 U.S.C. § 3392(c).  If SES leave benefits are so elected, such a Presidential Appointee would be subject to furlough under 5 CFR part 359, subpart H, unless otherwise excepted.

[2] With limited exceptions, onboard staffing data are derived from DOJ's payroll system and reflect information from pay period 10, 2025.

The Department's plan is consistent with Office of Legal Counsel (OLC) opinions and Office of Management and Budget (OMB) guidance and conforms to the following general principles:

- The law enforcement capacity of the U.S. Government should not be impaired or perceived to be impaired. To do so could constitute an imminent threat to the safety of human life and the protection of property.

- Components may call some employees back to work if the need for their services becomes critical, and furlough others as conditions change.

- Ancillary support services will be maintained to the extent necessary to support excepted operations. These ancillary functions include legislative affairs and other congressional support activities, public affairs activities, and community outreach, which may be conducted to the extent the failure to perform those functions prevents or significantly damages the functioning of a funded component, the operations of other funded parts of the Government, or the performance of an excepted function.

- Employees may not be reassigned or given new duties, and offices may not be restructured, in order to move individuals from a non-excepted function into an excepted function (although some rotational coverage of excepted positions will occur).

With respect to litigation, the Department's plan assumes that the Judicial Branch will continue to operate, though possibly at a reduced level, through the lapse. Therefore:

- Criminal litigation will continue without interruption as an activity essential to the safety of human life and the protection of property. Domestic and international extraditions are also necessary to protect life and property and therefore excepted. Extradition requests are made pursuant to bilateral and multilateral treaties which carry obligations to extradite within a treaty deadline timeframe that cannot be extended due to a lapse in appropriation.

- Civil litigation will be curtailed or postponed to the extent that this can be done without compromising to a significant degree the safety of human life or the protection of property. Litigators will approach the courts and request that active cases, except for those in which a delay would compromise to a significant degree the safety of human life or the protection of property, be postponed until funding is available. If a court denies such a request and orders a case to continue, the Government will comply with the court's order, which would constitute express legal authorization for the activity to continue. The Department will limit its civil litigation staffing to the minimum level needed to comply with the court's order and to protect life and property. Receipt of summonses, pleadings and motions by mail may be delayed.

because they support active counternarcotics investigations, particularly in light of recent authoritative actions – including the Department of Homeland Security Memorandum issued on January 22, 2025, expanding immigration enforcement authority – and Presidential directives, such as *Guaranteeing the States Protection Against Invasion* and *Designating Cartels and Other Organizations as Foreign Terrorist Organizations and Specially Designated Global Terrorists*. It is critical that DEA's operational activities be maintained in the event of a lapse in appropriations given its essential roles in national security, public safety, and health. Headquarters personnel who provide critical support to excepted activities in the field will be maintained to the extent necessary to support those operations, which would include providing direction and priorities, legal support, and integrity assurance and investigative oversight.

**Antitrust Division (ATR)**: As a Presidential Appointee, the Assistant Attorney General is not subject to furlough. The excepted employees are needed to conduct or directly support ongoing criminal trials, prepare for criminal proceedings that have been scheduled for court (including the handling of arraignments, pleas, and sentencing hearings), and conduct or support ongoing civil litigation in which a continuance cannot be obtained. They will also prepare cases that must be filed due to statutory deadlines, but only when an extension or waiver cannot be obtained and ATR leadership determines that allowing a proposed merger to go forward without objection would pose a reasonable likelihood of peril to property in which the United States has an immediate interest. The work conducted by the Division is funded from no-year appropriations, as are the employees. As a result, these activities may continue during a lapse as long as sufficient carryover funds remain and based upon input from Department leadership regarding mission requirements. However, for the sake of the FY 2026 contingency exercise, the Division is reflecting the level of personnel that would be needed if they had to reduce the personnel to only those most critical during a shutdown, 457 positions (60% of the total 761 positions on board),

**U.S. Trustees Program (USTP)**: The USTP has excepted personnel who would continue to work without pay throughout the lapse. These excepted employees are needed to protect bankruptcy estate property through the appointment and oversight of fiduciaries and through other means. Excepted employees are responsible for coordinating meetings of debtors and creditors, as well as civil and criminal matters, including cases with the U.S. Attorneys and the FBI. Excepted employees are limited to performing only those functions in which there is a definite risk of substantial property loss or violation of law. Of the excepted staff about fifty-eight percent of staff would be attorneys, primarily in Program field offices, and forty-two percent would be other staff. Other staff include auditors in the field, as well as primary and back-up support for ongoing bankruptcy fee collection duties, statutory trustee oversight responsibilities and public affairs activities. In addition, this period would necessitate coverage in the areas of budget, physical security, and facilities support for our excepted field operations.



MY PLAYLIST

 **KOSU**                                                                        DONATE

**2025 government shutdown**

# The government shutdown is over, but not everything is back to normal

UPDATED NOVEMBER 13, 2025 · 2:00 PM ET

By Rachel Treisman



A tour guide leads a group through the U.S. Capitol in Washington, D.C. on November 13, 2025, a day after the U.S. government reopened.
*Andrew Caballero-Reynolds/AFP via Getty Images*

The longest government shutdown in U.S. history is officially over after President Trump signed a bill passed by Congress on Wednesday night.

The federal government is reopening. But after 43 days on pause, things may not return to business as usual right away. For instance, federal workers are still awaiting backpay and air travel disruptions are expected to linger.



**2025 GOVERNMENT SHUTDOWN**
**The longest government shutdown in U.S. history comes to a close**

# EXHIBIT 7

FILED

2025 NOV -7   PH 12: 33

[illegible stamp]

**UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

In re:
**GREEN COPPER HOLDINGS, LLC**     **Case No. 25-10088-T**
**COPPER TREE, INC.**
**INN AT PRICE TOWER, INC.,** Substantively Consolidated


# NOTICE OF INTENT TO REST ON THE DOCKET FOR CLAIM 1-2


Comes now creditor Cynthia Diane Blanchard, appearing *pro se*, and hereby notifies the Court of

her intent to rest on the docket as to all filings, pleadings, and motions relating to her Proof of

Claim 1-2 and any associated matters in the above-captioned case.

This notice is submitted pursuant to the Court's prior guidance allowing parties to rely on the

written record to avoid unnecessary hearings and expense to the estate. Ms. Blanchard

respectfully requests that all pending matters involving her filings be considered and decided on

the existing docket and written record.

**Date:** November 7, 2025


Respectfully submitted,

*Cynthia Diane Blanchard*

Cynthia Diane Blanchard Pro Se Creditor
414 SE Washington Blvd. Ste. 205.
Bartlesville Ok, 74006.
PH: 310-435-5707

## CERTIFICATE OF SERVICE

I hereby certify that on November 7, 2025 that I, Cynthia Diane Blanchard, mailed via certified mail a true and correct copy of the foregoing Notice Of Intent To Rest On The Docket For Claim 1-2, to the following:

**Patrick J. Malloy III**
Chapter 7 Trustee
401 South Boston Avenue, Suite 500
Tulsa, OK 74103

**Karen Walsh**
Office of the United States Trustee
224 South Boulder Avenue, Suite 225
Tulsa, OK 74103

Dated: November 7, 2025

**Cynthia Diane Blanchard, Pro Se Movant**
**414 SE Washington Blvd. Ste. 205.**
**Bartlesville Ok 74006**
**310-435-5707**

## UNITED STATES BANKRUPTCY COURT
### NORTHERN DISTRICT OF OKLAHOMA



Filed/Docketed
Sep 04, 2025

IN RE: GREEN COPPER
HOLDINGS, LLC AND THE INN
AT PRICE TOWER INC.,

    **Debtor.**

Case No.  25-10088-T
Chapter  7

### SCHEDULING ORDER

THIS MATTER comes on for Scheduling Conference before the Court. The Court finds cause exists to establish a schedule regarding the Trustee's Objections to Proof of Claims as set forth below.

IT IS THEREFORE ORDERED that Discovery shall be completed by November 7, 2025.

IT IS FURTHER ORDERED that the parties shall file a report regarding completion of discovery by November 10, 2025. The Court will set the matter for hearing by separate order.

FURTHER, no date set by this Order shall be modified except upon good cause shown and by filing a written application with a proposed Order at least five (5) days before the scheduled date.

DATED:  September 04, 2025

BY THE COURT:

PAUL R. THOMAS, CHIEF JUDGE
UNITED STATES BANKRUPTCY

# EXHIBIT 8

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **IN RE:** | ) | |
| | ) | |
| **GREEN COPPER HOLDINGS, LLC** | ) | **CASE NO. 25-10088-T** |
| **EIN # xx-xxx9708** | ) | **Chapter 7** |
| | ) | |
| **COPPER TREE, INC.** | ) | **Substantively Consolidated** |
| **EIN # xx-xxx6608** | ) | |
| | ) | |
| **THE INN AT PRICE TOWER INC.** | ) | |
| | ) | |
| **Debtors.** | ) | |

### TRUSTEE'S EX PARTE MOTION TO STAY CONTESTED MATTERS

COMES NOW Patrick J. Malloy, III, Trustee (the "Trustee") and states:

1.     The following are pending contested matters (collectively, the "Pending Matters") involving the bankruptcy estate, on the one hand, and Pictoria Studios USA, Inc. ("Pictoria") and Taktik Enterprises, Inc. ("Taktik") on the other hand:

a.   Trustee's Objection to Pictoria's Proof of Claim for the sum of $217,975 [Doc. No. 135];

b.   Trustee's Objection to Taktik's Proof of Claim for the sum of $513,918.65 [Doc. No. 132];

c.   Trustee's motion to settle claims related to the Frank Lloyd Wright Conservancy [Doc. No. 156] and Pictoria's and Taktik's Objections thereto;

d.   Trustee's motion to settle proof of claim filed by Donna Keffer [Doc. No. 263] and Pictora's and Taktik's objections thereto;

e.   Trustee's motion to settle proof of claim of Linda Jones [Doc. No. 264] and Pictoria's and Taktik's objections thereto;

f.  Trustee's motion to settle proof of claims filed by Mark Haskell [Doc. No. 265] and Pictoria's and Taktik's objections thereto;

g.  Trustee's motion to settle proof of claim filed by The Price Tower Arts Center [Doc. No. 286] and Pictoria's and Taktik's objections thereto;

h.  Trutee's motion to settle proof of claim filed herein by Enterprise Global [Doc. No. 300] and Pictoria's and Taktik's objections thereto;

i.  Pictoria's and Taktik's motions to compel the Trustee to undertake certain acts [Doc. No. 249] and the Trustee's objection thereto.

2.  Coincident with this motion, the Trustee has filed herein a motion for approval of settlement of pending contested matters by and between the estate, Taktik and/or Pictoria [Doc. No. 324]. If approved, the proposed settlement (the "Settlement") will resolve all of the Pending Matters. The motion to settle provides all necessary and interested parties 24 days' notice of the proposed Settlement pursuant to Fed. R. Bank. P. 2002.

3.  Scheduling orders have been entered relative to some of the Pending Matters, and scheduling conferences are required for the remaining Pending Matters. In order to avoid unnecessary time and expense, the Trustee now seeks an order staying all of the Pending Matters pending consideration of the proposed Settlement.

4.  Pursuant to 11 U.S.C. § 105 this Court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of Title 11. An order staying the Pending Matters pending consideration of the proposed Settlement may well ensure a more cost effective and timely administration of this estate.

5.      None of the movants or objectors in the Pending Matters has any objection to entry of the temporary stay requested herein. Thus, the Trustee asserts that a stay order may enter at this time without further notice or hearing.

WHEREFORE the Trustee prays for an order staying the specified Pending Matters, pending consideration of the Trustee's motion for approval of settlement of pending contested matters.

Respectfully Submitted by:                  /s/ Patrick J. Malloy III
                                            Patrick J. Malloy III, OBA #5647
                                            MALLOY LAW FIRM, P.C.
                                            401 S. Boston Ave. Suite 500
                                            Tulsa, Oklahoma 74103
                                            Telephone:    918-699-0345
                                            Fax:          918-699-0325
                                            *ATTORNEYS FOR TRUSTEE*

# EXHIBIT 9

**UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

In re:
**GREEN COPPER HOLDINGS, LLC**      **Case No. 25-10088-T**
**COPPER TREE, INC.**
**INN AT PRICE TOWER, INC.,** Substantively Consolidated

## MOTION TO QUASH UNAUTHORIZED AND UNTIMELY INTERROGATORIES SERVED BY ATTORNEY CRAIG BRAND ON BEHALF OF TAKTIK ENTERPRISES, INC.

Creditor Cynthia Diane Blanchard, appearing pro se, respectfully moves the Court to quash the

interrogatories served upon her by attorney Craig Brand on November 8, 2025 regarding her

Proof of Claim No. 1-2, and states:

### I. BACKGROUND

1. On September 2, 2025, during the status conference, the Court stated that Ms. Blanchard
   could elect to rest on the docket regarding the Trustee's objection to her Proof of Claim
   No. 1-2.

2. Ms. Blanchard elected that option and completed all required written discovery.

3. This Court set November 7, 2025 as the discovery deadline in this contested matter.
   No party sought or obtained an extension.

4. On November 8, 2025 — one day after the Court-ordered discovery cutoff — attorney
   Craig Brand served a series of interrogatories by email and mail.

5. No order of this Court authorizes any discovery in this contested matter beyond what has already occurred.

   No order of this Court authorizes Mr. Brand to conduct discovery at all.

6. A Protective Order (Dkt. 338) is pending before the Court regarding Mr. Brand's conduct and improper filings.

## II. GROUNDS FOR QUASHING THE INTERROGATORIES

### A. Interrogatories Are Not Permitted in Contested Matters Absent Court Order

Under Fed. R. Bankr. P. 9014(c), discovery in a contested matter is permitted only if the Court directs.

Rule 7033 (governing interrogatories) does not automatically apply.   Here, the Court has not authorized interrogatories.

Therefore, the interrogatories are procedurally improper and void.

### B. The Interrogatories Were Served *After* the Court-Ordered Discovery Deadline

The discovery deadline expired on November 7, 2025.

Mr. Brand's interrogatories were served on November 8, 2025, making them:

- untimely,

- unauthorized, and

- in violation of the Court's scheduling requirements.

## C. Mr. Brand Is Out of Compliance With Local Counsel Requirements

Mr. Brand appears pro hac vice but has never obtained local counsel as required by Local Rule 83.3(a), nor has he complied with Local Rule 83.3(b) by seeking or obtaining leave of Court for any of the filings or discovery he has attempted to serve in this matter.

Because he has not complied with the Rule, he is not permitted to file, serve, or conduct discovery in this case.

His interrogatories therefore must be quashed on that basis alone.

## D. The Interrogatories Are Overly Broad and Unrelated to the Claim

Even if they were procedurally proper (they are not), the interrogatories:

- seek extensive information wholly unrelated to Proof of Claim No. 1-2,

- are not narrowly tailored,

- constitute harassment, and

- impose an undue burden on a pro se creditor.

This is especially concerning given the pending Protective Order.

## III. REQUEST FOR RELIEF

For all the reasons stated above, Ms. Blanchard respectfully requests that the Court enter an order:

1.  Quashing the interrogatories served by attorney Craig Brand on November 8, 2025;

2.  Prohibiting Mr. Brand from serving, filing, requesting, noticing, or initiating any further unauthorized discovery *or any hearing-related filings or requests*, including but not limited to interrogatories, subpoenas, requests for production, requests for admission, notices of hearing, requests for evidentiary hearings, or any other action directed at this creditor, unless expressly authorized in advance by Order of this Court.

3.  Clarifying that Ms. Blanchard is not required to respond to any discovery not authorized by the Court or served outside the discovery period; and

4.  Granting such further relief as the Court deems just and proper.

**Date: November 17, 2025**

Respectfully submitted,

Cynthia Diane Blanchard Pro Se Creditor
414 SE Washington Blvd. Ste. 205.
Bartlesville Ok, 74006.
PH: 310-435-5707

## CERTIFICATE OF SERVICE

I hereby certify that on November 17, 2025 that I, Cynthia Diane Blanchard, mailed via certified mail a true and correct copy of the foregoing MOTION TO QUASH UNAUTHORIZED AND UNTIMELY INTERROGATORIES SERVED BY ATTORNEY CRAIG BRAND ON BEHALF OF TAKTIK ENTERPRISES, INC. to the following:

**Patrick J. Malloy III**
Chapter 7 Trustee
401 South Boston Avenue, Suite 500
Tulsa, OK 74103

**Karen Walsh**
Office of the United States Trustee
224 South Boulder Avenue, Suite 225
Tulsa, OK 74103

**Craig Brand, ESQ**
11222 Oakshore Lane.
Clermont, FL. 34711

Dated: November 17, 2025

*(signature)* Cynthia Diane Blanchard

**Cynthia Diane Blanchard, Pro Se Movant**
**414 SE Washington Blvd. Ste. 205.**
**Bartlesville Ok 74006**
**310-435-5707**

# EXHIBIT 10

12/1/25, 2:14 PM                                        Gmail - Scan May 15, 2025 at 1.57 PM

 Gmail                                        **Cynthia French blanchard <cdfblanchard@gmail.com>**

---

## Scan May 15, 2025 at 1.57 PM

**Cynthia** <cynthiadblanchard@gmail.com>                                    Tue, Jun 10, 2025 at 10:42 AM
To: Pat Malloy <pjmiiim@sbcglobal.net>, Mark Sanders <msanders@gablelaw.com>, Paul Aubert <paubert@me.com>
Bcc: cdfblanchard@gmail.com

Pat,

Thank you again for the clarification regarding the status of Inn at Price Tower, Inc. We now understand why there was confusion, and it's understandable that Ron may not have fully realized IPT's inclusion within the Copper Tree estate.

I will not respond to the attached letter, as I had previously believed I might be personally liable for this debt. I'm grateful for your guidance on this point. If we receive any further correspondence regarding IPT, we will promptly forward it directly to you.

Best,
Cynthia

--------- Forwarded message ---------
From: **Cynthia** <cynthiadblanchard@gmail.com>
Date: Mon, May 26, 2025 at 10:50AM
Subject: Re: Scan May 15, 2025 at 1.57 PM
To: Ron Brown <ron@ronbrownlaw.com>
Cc: <paubert@me.com>, <reneenichols7260@att.net>


Ron,

Inn at Price Tower, Inc. (IPT) is a wholly owned subsidiary of CT Operations, LLC, which is itself wholly owned by Copper Tree, Inc. From our understanding, CT Operations, LLC was included in the Copper Tree Chapter 7 bankruptcy filing.

Much of the debt listed in the Copper Tree bankruptcy schedule originated from IPT operations, and we believed those liabilities were therefore covered under the filing. No one advised us that IPT needed to be listed as a separate debtor in order for the stay or protections to apply directly to its tax obligations.

Can you please confirm whether IPT was in fact excluded from the bankruptcy and, if so, what the implications are regarding any outstanding taxes? We're very concerned that this was never brought to our attention.

Thank you,
Cynthia


On Mon, May 26, 2025 at 10:16AM Ron Brown <ron@ronbrownlaw.com> wrote:

> Cynthia
>
> These are taxes owed by you and/or Inn at Price Tower.  They are not owed by the 2 entities in
> bankruptcy.
>
> ---
>
> **From:** Cynthia <cynthiadblanchard@gmail.com>
> **Sent:** Thursday, May 15, 2025 2:02 PM
> **To:** Ron Brown <ron@ronbrownlaw.com>
> **Subject:** Fwd: Scan May 15, 2025 at 1.57 PM

12/1/25, 2:13 PM                              Gmail - Scan May 15, 2025 at 1.57 PM

 Gmail                                          Cynthia French blanchard <cdfblanchard@gmail.com>

## Scan May 15, 2025 at 1.57 PM

**Cynthia** <cynthiadblanchard@gmail.com>                          Tue, Jun 10, 2025 at 10:34 AM
To: Pat Malloy <pjmiiim@sbcglobal.net>, Mark Sanders <msanders@gablelaw.com>
Cc: Paul Aubert <paubert@me.com>
Bcc: cdfblanchard@gmail.com

---------- Forwarded message ---------
From: **Cynthia** <cynthiadblanchard@gmail.com>
Date: Thu, May 15, 2025 at 2:01 PM
Subject: Fwd: Scan May 15, 2025 at 1.57 PM
To: Ron Brown <ron@ronbrownlaw.com>

Ron,

I received this from the Oklahoma Tax Commission in the mail for Inn At Price Tower.  Please forward to the trustee.

Thank you so much,

Best,
Cynthia

Created and shared using Scanner Pro. Get the app

Sent from my iPhone

📄 **Scan May 15, 2025 at 1.57 PM.pdf**
    988K

Gmail - Scan May 15, 2025 at 1.57 PM

Ron,

I received this from the Oklahoma Tax Commission in the mail for Inn At Price Tower.  Please forward to the trustee.

Thank you so much,

Best,

Cynthia

Created and shared using Scanner Pro. Get the app

Sent from my iPhone

 **OKLAHOMA**
Tax Commission



CYNTHIA BLANCHARD
414 SE WASHINGTON BLVD APT 205
BARTLESVILLE OK  74006-2428

| | |
|---|---|
| Customer ID: | ***-**-2003 |
| Letter ID: | L0234333728 |
| Issued: | May 7, 2025 |

OCA

Dear Taxpayer,

Enclosed is a schedule for INN AT PRICE TOWER, INC. of unpaid tax balances. The
Oklahoma Tax Commission (OTC) proposes to individually assess tax, penalty and
interest for the referenced account(s) as stated for the period(s) in which you were an
officer.

If you disagree with this assessment, a written protest must be filed within 60 days
from the date of this letter. If a protest is not timely filed, this assessment will become
final.

Tax payments may be made by credit card by visiting OkTAP via **tax.ok.gov**.
Payments may also be made by certified funds or by personal check. Use of a
personal check will increase processing time of the payment.

For assistance, call **405.521.2970** or visit **tax.ok.gov**.

Sincerely,

Sharita Ramsey
Oklahoma Tax Commission
Collections Division

Enclosure(s)

L0234333728

Page   2



| Account | Period | Report | Tax | Penalty | Interest | Period Total |
|---|---|---|---:|---:|---:|---:|
| Mixed Beverage Tax | Jul-2024 | Filed | $729.54 | $191.38 | $76.02 | $996.94 |
| Mixed Beverage Tax | Aug-2024 | Filed | $35.51 | $3.55 | $3.26 | $42.32 |
| Sales Tax | Jun-2024 | Filed | $4,557.25 | $691.72 | $559.05 | $5,808.02 |
| Sales Tax | Jul-2024 | Filed | $2,807.93 | $516.79 | $309.37 | $3,634.09 |
| Sales Tax | Aug-2024 | Filed | $372.93 | $37.29 | $36.50 | $446.72 |
| **Total** | | | | | | $10,928.09 |

12/1/25, 1:37 PM                     Gmail - IPT Closure Confirmation – OTC Correspondence Attached

 Gmail                                      **Cynthia <cynthiadblanchard@gmail.com>**

## IPT Closure Confirmation – OTC Correspondence Attached

**Cynthia** <cynthiadblanchard@gmail.com>                                Thu, Jun 19, 2025 at 2:53 PM
To: Pat Malloy <pjmiiim@sbcglobal.net>, Ron Brown <ron@ronbrownlaw.com>, Mark Sanders <msanders@gablelaw.com>
Cc: Paul Aubert <paubert@me.com>, reneenichols7260@att.net
Bcc: Cynthia French blanchard <cdfblanchard@gmail.com>

Pat,

Attached is the Oklahoma Tax Commission's (OTC) confirmation email dated November 21, 2024, stating that Inn at Price Tower, Inc. (IPT) ceased operations effective August 9, 2024, applied retroactively.

The letter I submitted to the OTC included a clerical error identifying me as the "owner." I did not draft the letter, and when it was sent to me for signature, I signed it hastily without detailed review. That designation appears to have come from Ms. Keffer's earlier message to the OTC (see attached OTC response email). I had planned to clarify this when responding to the May 7, 2025 letter—under the mistaken impression that I might need to address the matter directly—but since this falls under your authority and direction as trustee, I wanted to ensure you have the correct context.

Please note that Ms. Keffer was assisting part-time by November 2024. We will follow up shortly with more detailed documentation regarding her involvement with the company following IPT's closure.

Thank you,
Cynthia

**2 attachments**

📄 **Email Response from OTC PDF (2) (1).pdf**
   366K

📄 **Oklahoma Tax Commission IPT Closing Letter (2) (1).pdf**
   600K

# EXHIBIT 11

12/1/25, 2:22 PM      Gmail - Urgent: Incorrect Tax Liens – Immediate Removal Required:Tax Warrant 103426048 (Letter ID L0257334816) & 1177167872 (Letter ID …

 Gmail                                              **Cynthia <cynthiadblanchard@gmail.com>**

## Urgent: Incorrect Tax Liens – Immediate Removal Required:Tax Warrant 103426048 (Letter ID L0257334816) & 1177167872 (Letter ID L0695639584)

**Cynthia** <cynthiadblanchard@gmail.com>                              Thu, Aug 28, 2025 at 10:22 AM
To: Pat Malloy <pjmiiim@sbcglobal.net>
Cc: Ron Brown <ron@ronbrownlaw.com>

Pat,

Thank you for your email and the information. I'll keep watch for updates and move forward accordingly if needed.

Thank you again,
Cynthia

On Thu, Aug 28, 2025 at 9:42 AM Pat Malloy <pjmiiim@sbcglobal.net> wrote:
Cynthia--I cannot give you any advice. I think what the OTC is saying is that individual officers are liable for the tax irrespective of the corporations liability. She advised yesterday that she would file a claim in the bankruptcy. If any or all of the claim is entitled to priority treatment I will consider a proposed interim distribution to pay it.

On Thursday, August 28, 2025 at 09:24:46 AM CDT, Cynthia <cynthiadblanchard@gmail.com> wrote:

Pat,

Pat,

Ms. Wise at the OTC has said the Inn at Price Tower tax liability rests with both the corporation and its officers, and that a tax warrant will remain in my name until the estate pays in full.

Since the Inn was already consolidated into the bankruptcy before these liens were issued, I don't understand why she is taking this stance. As you know, I did turn this matter over to the estate in June, so I'm unsure why it is continuing to be treated this way.

Any help you can provide in addressing this with the Commission would be greatly appreciated.

Thank you,

Cynthia

On Thu, Aug 28, 2025 at 8:28 AM Marina Wise <Marina.Wise@tax.ok.gov> wrote:

Ms. Blanchard,

The tax liability rests with each responsible party until it is paid, meaning the corporation itself and its officers. In other words, even if the estate does eventually pay the liability, a tax warrant will also remain in your name until the debt has been fully paid by the estate.

Any issues you may have with the tax warrants must be pursued via the protest process I mentioned previously.



**Marina Wise**

**Assistant General Counsel**

201 W. 5th Ste., Ste. 400

Tulsa, OK  74103
Phone: 918-581-2979
marina.wise@tax.ok.gov l tax.ok.gov
Oklahoma Tax Commission





This email is sent by The OTC, a State Agency, and may contain information that is privileged or confidential. If you received this email in error, please notify the sender by reply email and delete the email and any attachments. If you are a government employee or intended Taxpayer, you should not share this email with others.  Sharing this email may result in a breach of confidentiality.

**From:** Cynthia <cynthiadblanchard@gmail.com>
**Sent:** Wednesday, August 27, 2025 4:40 PM
**To:** Marina Wise <Marina.Wise@tax.ok.gov>
**Cc:** Pat Malloy <pjmiiim@sbcglobal.net>; Melody Suess <msuess@tax.ok.gov>; Robbie Crauthers <rcrauthers@tax.ok.gov>; Amanda Lewis <Amanda.Lewis@tax.ok.gov>; Ron Brown <ron@ronbrownlaw.com>
**Subject:** Re: [EXTERNAL] Urgent: Incorrect Tax Liens – Immediate Removal Required:Tax Warrant 103426048 (Letter ID L0257334816) & 1177167872 (Letter ID L0695639584)

Ms. Wise,

Thank you for clarifying. I appreciate you confirming that the OTC will proceed by filing its claim in the bankruptcy case, and I also request that the tax lien be removed from me personally since the liability now rests with the consolidated debtor estate.

Best regards,

Cynthia Blanchard

On Wed, Aug 27, 2025 at 4:32 PM Marina Wise <Marina.Wise@tax.ok.gov> wrote:

Mr. Malloy,

No problem. Yes, we do intend to file our EOA and claim no later than tomorrow afternoon.

Thank you,

**Marina Wise**

**Assistant General Counsel**

201 W. 5th Ste., Ste. 400



Tulsa, OK  74103
Phone: 918-581-2979
marina.wise@tax.ok.gov | tax.ok.gov
Oklahoma Tax Commission



This email is sent by The OTC, a State Agency, and may contain information that is privileged or confidential. If you received this email in error, please notify the sender by reply email and delete the email and any attachments. If you are a government employee or intended Taxpayer, you should not share this email with others. Sharing this email may result in a breach of confidentiality.

---

**From:** Pat Malloy <pjmiiim@sbcglobal.net>
**Sent:** Wednesday, August 27, 2025 4:26 PM
**To:** Cynthia <cynthiadblanchard@gmail.com>; Marina Wise <Marina.Wise@tax.ok.gov>
**Cc:** Melody Suess <msuess@tax.ok.gov>; Robbie Crauthers <rcrauthers@tax.ok.gov>; Amanda Lewis <Amanda.Lewis@tax.ok.gov>; Ron Brown <ron@ronbrownlaw.com>
**Subject:** Re: [EXTERNAL] Urgent: Incorrect Tax Liens – Immediate Removal Required:Tax Warrant 103426048 (Letter ID L0257334816) & 1177167872 (Letter ID L0695639584)

Ms. Wise--I appreciate you including me in this email. Do you assert these claims against the debtor as well? The Inn at Price Tower has been consolidated in the bankruptcy case and I don't think the stay applies to you filing a claim. .

On Wednesday, August 27, 2025 at 04:11:34 PM CDT, Marina Wise <marina.wise@tax.ok.gov> wrote:

Ms. Blanchard,

Upon review of your account, I do not find that the following tax warrants were issued in error:

1. Washington County TW#1177167872, naming Cynthia Blanchard, filed August 20, 2025, for INN AT PRICE TOWER, INC.'s June 2024 sales tax liability. The current balance of this tax warrant is $5,414.92.
2. Washington County TW#103426048, naming Cynthia Blanchard, filed August 20, 2025, for INN AT PRICE TOWER, INC.'s July 2024 and August 2024 sales tax liability. The current balance of this tax warrant is $4,218.17.

Case 25-10088-T   Document 384   Filed in USBC ND/OK on 12/04/25   Page 129 of 168

12/1/25, 2:22 PM          Gmail - Urgent: Incorrect Tax Liens – Immediate Removal Required:Tax Warrant 103426048 (Letter ID L0257334816) & 1177167872 (Letter ID ...

On July 13, 2023, you signed a Form BT-191 for submission to the Oklahoma Tax Commission. This form is a Change of Officer, Member or Partner Notification. By signing this form, you agreed to be named an official officer of INN AT PRICE TOWER, INC. The business is registered as a corporation with both the Oklahoma Secretary of State and the Oklahoma Tax Commission. As an officer of a corporation, you are liable for the business's sales tax debt described above.

Pursuant to the automatic stay statute you cited, government entities like the OTC are allowed to audit to determine tax liability, issue notice to the debtor of tax deficiency, and make a demand for tax returns during bankruptcy. Government entities are **not** allowed to demand payment or otherwise attempt to collect debts during the automatic bankruptcy stay. The stay only applies, however, to the actual debtor itself. In this case, the debtor is GREEN COPPER HOLDINGS, LLC, and any entities that have been consolidated with it for purposes of the bankruptcy case. You are considered a non-debtor officer of a debtor corporation. Since you personally are not in bankruptcy currently, collection efforts towards your personal estate are permissible. Any tax warrant issued against you personally will only impact your personal property – not the bankruptcy estate's.

Any issue you may have with the OTC's assessment may be protested within sixty (60) days of the assessment letter. This means you have until September 6, 2025, to file a protest application with the OTC. You can find more information on that process here: Form L-25 Application for Protest or Demand for Hearing

Feel free to respond to this email if you'd like clarification on anything.

Thank you,

**Marina Wise**

**Assistant General Counsel**

201 W. 5ᵗʰ Ste., Ste. 400

Tulsa, OK 74103
Phone: 918-581-2979
marina.wise@tax.ok.gov | tax.ok.gov
Oklahoma Tax Commission

  

**OKLAHOMA**
Tax Commission



This email is sent by The OTC, a State Agency, and may contain information that is privileged or confidential. If you received this email in error, please notify the sender by reply email and delete the email and any attachments. If you are a government employee or intended Taxpayer, you should not share this email with others. Sharing this email may result in a breach of confidentiality.

**From:** Cynthia <cynthiadblanchard@gmail.com>
**Sent:** Tuesday, August 26, 2025 2:23 PM

Case 25-10088-T   Document 384   Filed in USBC ND/OK on 12/04/25   Page 130 of 168

12/1/25, 2:22 PM                    Gmail - Urgent: Incorrect Tax Liens – Immediate Removal Required:Tax Warrant 103426048 (Letter ID L0257334816) & 1177167872 (Letter ID …

**Cc:** Pat Malloy <pjmiiim@sbcglobal.net>
**Subject:** Re: [EXTERNAL] Urgent: Incorrect Tax Liens – Immediate Removal Required:Tax Warrant 103426048 (Letter ID L0257334816) & 1177167872 (Letter ID L0695639584)

Marina,

Thank you for your quick reply.  That sounds good.  If I don't hear from you by 3:00 p.m. tomorrow I will follow up with a call.

Thank you again,

Cynthia

On Tue, Aug 26, 2025 at 1:20 PM Marina Wise <Marina.Wise@tax.ok.gov> wrote:

> Cynthia,
>
> I received your email. I won't be able to respond until tomorrow – if you haven't gotten an email from me by 3 pm, go ahead and give me a call.
>
> Thanks,
>
>
> **Marina Wise**
>
> **Assistant General Counsel**
>
> 201 W. 5th Ste., Ste. 400
>
> Tulsa, OK  74103
> Phone: 918-581-2979
> marina.wise@tax.ok.gov l tax.ok.gov
> Oklahoma Tax Commission



  

This email is sent by The OTC, a State Agency, and may contain information that is privileged or confidential. If you received this email in error, please notify the sender by reply email and delete the email and any attachments. If you are a government employee or intended Taxpayer, you should not share this email with others.  Sharing this email may result in a breach of confidentiality.

**From:** Cynthia <cynthiadblanchard@gmail.com>
**Sent:** Monday, August 25, 2025 2:15 PM
**To:** Marina Wise <Marina.Wise@tax.ok.gov>
**Cc:** Pat Malloy <pimiiim@sbcglobal.net>

**Subject:** [EXTERNAL] Urgent: Incorrect Tax Liens – Immediate Removal Required:Tax Warrant 103426048 (Letter ID L0257334816) & 1177167872 (Letter ID L0695639584)

Ms. Wise,

I am writing regarding two tax warrants--Tax Warrant 103426048 (Letter ID L0257334816) & 1177167872 (Letter ID L0695639584)-- I received today indicating that a lien has been placed on me personally for taxes allegedly owed by *Inn at Price Tower, Inc.*

This is an error. I do not own Inn at Price Tower, Inc., and the entity is currently in **Chapter 7 Federal Bankruptcy**. The appointed trustee, **Mr. Pat Malloy** (cc'd), is responsible for all matters concerning the bankruptcy estate, including any tax obligations.

Additionally, placing a lien on me personally for a corporate tax liability violates the protections provided under the U.S. Bankruptcy Code, including the **automatic stay provision under 11 U.S.C. § 362**, which prohibits collection actions against the debtor or its estate during bankruptcy proceedings.

For reference:

- **Lead Bankruptcy Case:** Green Copper Holdings, LLC
- **U.S. Bankruptcy Court:** Northern District of Oklahoma
- **Case No.:** 25-10088-T

Please **remove the lein from my personal name immediately** and update your records accordingly. This lien has no legal basis and interferes with an active federal bankruptcy proceeding.

The two letters are scanned for your convenience. Kindly confirm once these liens have been removed.

Thank you for your urgent attention to this matter.

Best regards,
Cynthia Blanchard

12/1/25, 1:46 PM                         Gmail - Oklahoma Tax Commission – Incorrect Personal Lien

 Gmail                                    **Cynthia <cynthiadblanchard@gmail.com>**

---

## Oklahoma Tax Commission – Incorrect Personal Lien

3 messages

**Cynthia** <cynthiadblanchard@gmail.com>                                      Mon, Aug 25, 2025 at 2:22 PM
To: Pat Malloy <pjmiiim@sbcglobal.net>
Bcc: Cynthia French blanchard <cdfblanchard@gmail.com>


Dear Pat,

I wanted to make you aware that I just sent an email (cc'd) to the Oklahoma Tax Commission regarding an error where
they have placed a lien on me personally for taxes owed by *Inn at Price Tower, Inc.*—the same matter I previously
forwarded to you in June.

The contact person at the Commission is **Marina Wise** (marina.wise@tax.ok.gov). I will also forward you the June email
along with the original letter I received for your reference and convenience.

Thank you for your assistance with this matter. Please let me know if you need anything further from me.

Best regards,
Cynthia

---

**2 attachments**

📄 **Oklahoma Tax Commission Warrant 177167872.pdf**
1713K

📄 **Oklahoma Tax Comission Warrant 103426428.pdf**
1633K

---

**Pat Malloy** <pjmiiim@sbcglobal.net>                                      Mon, Aug 25, 2025 at 3:06 PM
To: Cynthia <cynthiadblanchard@gmail.com>

### Cynthia what is the nature of the tax owed

[Quoted text hidden]

---

**Cynthia** <cynthiadblanchard@gmail.com>                                      Mon, Aug 25, 2025 at 3:16 PM
To: Pat Malloy <pjmiiim@sbcglobal.net>

I believe they are for beverage tax and sales tax.  I forwarded you my initial email that had the invoice attached but  I will
upload again to this email for your convenience.

Thank you.
[Quoted text hidden]

---

📄 **Oklahoma Tax Invoice Scan May 15, 2025 at 1.57 PM (1).pdf**
988K

# EXHIBIT 12

12/1/25, 2:25 PM          Gmail - Urgent: Incorrect Tax Liens – Immediate Removal Required:Tax Warrant 103426048 (Letter ID L0257334816) & 1177167872 (Letter ID ...

 Gmail                                          **Cynthia <cynthiadblanchard@gmail.com>**

## Urgent: Incorrect Tax Liens – Immediate Removal Required:Tax Warrant 103426048 (Letter ID L0257334816) & 1177167872 (Letter ID L0695639584)

**Cynthia** <cynthiadblanchard@gmail.com>                        Wed, Oct 8, 2025 at 4:36 PM
To: Marina Wise <Marina.Wise@tax.ok.gov>
Cc: Pat Malloy <pjmiiim@sbcglobal.net>, Melody Suess <msuess@tax.ok.gov>, Robbie Crauthers <rcrauthers@tax.ok.gov>,
Amanda Lewis <Amanda.Lewis@tax.ok.gov>

Ms. Wise,

Marina,

Thank you for your email and quick reply. I understand your position as stated below. While I recognize your explanation regarding the issuance of the warrants, my understanding of the circumstances differs, as I've previously outlined, but I greatly appreciate your clarification regarding the process for release.

Best Regards,
Cynthia Blanchard

On Wed, Oct 8, 2025 at 2:34 PM Marina Wise <Marina.Wise@tax.ok.gov> wrote:

Ms. Blanchard,

Once a tax warrant is paid in-full, it will be released. If and until then, however, the warrants will remain tied to each liable party. Please refer to my previous emails explaining why these warrants were not issued in error.

Thank you,

**Marina Wise**

**Assistant General Counsel**

201 W. 5th Ste., Ste. 400

Tulsa, OK 74103
Phone: 918-581-2979
marina.wise@tax.ok.gov | tax.ok.gov
Oklahoma Tax Commission






This email is sent by The OTC, a State Agency, and may contain information that is privileged or confidential. If you received this email in error, please notify the sender by reply email and delete the email and any attachments. If you are a government employee or intended Taxpayer, you should not share this email

12/1/25, 2:25 PM          Gmail - Urgent: Incorrect Tax Liens – Immediate Removal Required:Tax Warrant 103426048 (Letter ID L0257334816) & 1177167872 (Letter ID …

with others.  Sharing this email may result in a breach of confidentiality.

**From:** Cynthia <cynthiadblanchard@gmail.com>
**Sent:** Wednesday, October 8, 2025 9:41 AM
**To:** Marina Wise <Marina.Wise@tax.ok.gov>
**Cc:** Pat Malloy <pjmiiim@sbcglobal.net>; Melody Suess <msuess@tax.ok.gov>; Robbie Crauthers <rcrauthers@tax.ok.gov>; Amanda Lewis <Amanda.Lewis@tax.ok.gov>
**Subject:** Re: [EXTERNAL] Urgent: Incorrect Tax Liens – Immediate Removal Required:Tax Warrant 103426048 (Letter ID L0257334816) & 1177167872 (Letter ID L0695639584)

Ms. Wise,

Recently, Chapter 7 Trustee Patrick J. Malloy III informed me that the State's tax claim is a priority claim and that he will expedite payment from the bankruptcy estate.

Because these warrants were filed against me personally in error, I respectfully request that the tax warrants be released/removed from my personal name if they have not been removed already.. The warrants at issue are:

- Washington County TW#1177167872, naming Cynthia Blanchard, filed August 20, 2025, for INN AT PRICE TOWER, INC.'s June 2024 sales tax liability. Current balance: $5,414.92.
- Washington County TW#103426048, naming Cynthia Blanchard, filed August 20, 2025, for INN AT PRICE TOWER, INC.'s July 2024 and August 2024 sales tax liability. Current balance: $4,218.17.

Please feel free to confirm this information directly with Mr. Malloy, and kindly notify me once the warrants have been removed.

Thank you,
Cynthia Blanchard

cc: Patrick J. Malloy III, Chapter 7 Trustee

On Wed, Aug 27, 2025 at 4:32 PM Marina Wise <Marina.Wise@tax.ok.gov> wrote:

Mr. Malloy,

No problem. Yes, we do intend to file our EOA and claim no later than tomorrow afternoon.

Thank you,



**Marina Wise**

**Assistant General Counsel**

201 W. 5th Ste., Ste. 400

Tulsa, OK  74103
Phone: 918-581-2979



marina.wise@tax.ok.gov | tax.ok.gov
Oklahoma Tax Commission



This email is sent by The OTC, a State Agency, and may contain information that is privileged or confidential. If you received this email in error, please notify the sender by reply email and delete the email and any attachments. If you are a government employee or intended Taxpayer, you should not share this email with others. Sharing this email may result in a breach of confidentiality.

**From:** Pat Malloy <pjmiiim@sbcglobal.net>
**Sent:** Wednesday, August 27, 2025 4:26 PM
**To:** Cynthia <cynthiadblanchard@gmail.com>; Marina Wise <Marina.Wise@tax.ok.gov>
**Cc:** Melody Suess <msuess@tax.ok.gov>; Robbie Crauthers <rcrauthers@tax.ok.gov>; Amanda Lewis <Amanda.Lewis@tax.ok.gov>; Ron Brown <ron@ronbrownlaw.com>
**Subject:** Re: [EXTERNAL] Urgent: Incorrect Tax Liens – Immediate Removal Required:Tax Warrant 103426048 (Letter ID L0257334816) & 1177167872 (Letter ID L0695639584)

Ms. Wise--I appreciate you including me in this email. Do you assert these claims against the debtor as well? The Inn at Price Tower has been consolidated in the bankruptcy case and I don't think the stay applies to you filing a claim. .

On Wednesday, August 27, 2025 at 04:11:34 PM CDT, Marina Wise <marina.wise@tax.ok.gov> wrote:

Ms. Blanchard,

Upon review of your account, I do not find that the following tax warrants were issued in error:

1. Washington County TW#1177167872, naming Cynthia Blanchard, filed August 20, 2025, for INN AT PRICE TOWER, INC.'s June 2024 sales tax liability. The current balance of this tax warrant is $5,414.92.
2. Washington County TW#103426048, naming Cynthia Blanchard, filed August 20, 2025, for INN AT PRICE TOWER, INC.'s July 2024 and August 2024 sales tax liability. The current balance of this tax warrant is $4,218.17.

On July 13, 2023, you signed a Form BT-191 for submission to the Oklahoma Tax Commission. This form is a Change of Officer, Member or Partner Notification. By signing this form, you agreed to be named an official officer of INN AT PRICE TOWER, INC. The business is registered as a corporation with both the Oklahoma Secretary of State and the Oklahoma Tax Commission. As an officer of a corporation, you are liable for the business's sales tax debt described above.

Pursuant to the automatic stay statute you cited, government entities like the OTC are allowed to audit to determine tax liability, issue notice to the debtor of tax deficiency, and make a demand for tax returns during

the automatic bankruptcy stay. The stay only applies, however, to the actual debtor itself. In this case, the debtor is GREEN COPPER HOLDINGS, LLC, and any entities that have been consolidated with it for purposes of the bankruptcy case. You are considered a non-debtor officer of a debtor corporation. Since you personally are not in bankruptcy currently, collection efforts towards your personal estate are permissible. Any tax warrant issued against you personally will only impact your personal property – not the bankruptcy estate's.

Any issue you may have with the OTC's assessment may be protested within sixty (60) days of the assessment letter. This means you have until September 6, 2025, to file a protest application with the OTC. You can find more information on that process here: Form L-25 Application for Protest or Demand for Hearing

Feel free to respond to this email if you'd like clarification on anything.

Thank you,

**Marina Wise**

**Assistant General Counsel**

201 W. 5th Ste., Ste. 400

Tulsa, OK 74103
Phone: 918-581-2979
marina.wise@tax.ok.gov I tax.ok.gov
Oklahoma Tax Commission







This email is sent by The OTC, a State Agency, and may contain information that is privileged or confidential. If you received this email in error, please notify the sender by reply email and delete the email and any attachments. If you are a government employee or intended Taxpayer, you should not share this email with others. Sharing this email may result in a breach of confidentiality.

**From:** Cynthia <cynthiadblanchard@gmail.com>
**Sent:** Tuesday, August 26, 2025 2:23 PM
**To:** Marina Wise <Marina.Wise@tax.ok.gov>
**Cc:** Pat Malloy <pjmiiim@sbcglobal.net>
**Subject:** Re: [EXTERNAL] Urgent: Incorrect Tax Liens – Immediate Removal Required:Tax Warrant 103426048 (Letter ID L0257334816) & 1177167872 (Letter ID L0695639584)

Marina,

Thank you for your quick reply. That sounds good. If I don't hear from you by 3:00 p.m. tomorrow I will follow up with a call.

Thank you again

Cynthia

On Tue, Aug 26, 2025 at 1:20 PM Marina Wise <Marina.Wise@tax.ok.gov> wrote:

Cynthia,

I received your email. I won't be able to respond until tomorrow – if you haven't gotten an email from me by 3 pm, go ahead and give me a call.

Thanks,

**Marina Wise**

**Assistant General Counsel**



201 W. 5th Ste., Ste. 400

Tulsa, OK  74103
Phone: 918-581-2979
marina.wise@tax.ok.gov | tax.ok.gov
Oklahoma Tax Commission





This email is sent by The OTC, a State Agency, and may contain information that is privileged or confidential. If you received this email in error, please notify the sender by reply email and delete the email and any attachments. If you are a government employee or intended Taxpayer, you should not share this email with others.  Sharing this email may result in a breach of confidentiality.

**From:** Cynthia <cynthiadblanchard@gmail.com>
**Sent:** Monday, August 25, 2025 2:15 PM
**To:** Marina Wise <Marina.Wise@tax.ok.gov>
**Cc:** Pat Malloy <pjmiiim@sbcglobal.net>
**Subject:** [EXTERNAL] Urgent: Incorrect Tax Liens – Immediate Removal Required:Tax Warrant 103426048 (Letter ID L0257334816) & 1177167872 (Letter ID L0695639584)

Ms. Wise,

I am writing regarding two tax warrants--Tax Warrant 103426048 (Letter ID L0257334816) & 1177167872 (Letter ID L0695639584)-- I received today indicating that a lien has been placed on me personally for taxes allegedly owed by *Inn at Price Tower, Inc.*

This is an error. I do not own Inn at Price Tower, Inc., and the entity is currently in **Chapter 7 Federal Bankruptcy**. The appointed trustee, **Mr. Pat Malloy** (cc'd), is responsible for all matters concerning the bankruptcy estate, including any tax obligations.

Additionally, placing a lien on me personally for a corporate tax liability violates the protections provided under the U.S. Bankruptcy Code, including the **automatic stay provision under 11 U.S.C. § 362**, which prohibits collection actions against the debtor or its estate during bankruptcy proceedings.

For reference:

- **Lead Bankruptcy Case:** Green Copper Holdings, LLC
- **U.S. Bankruptcy Court:** Northern District of Oklahoma
- **Case No.:** 25-10088-T

Please **remove the lein from my personal name immediately** and update your records accordingly. This lien has no legal basis and interferes with an active federal bankruptcy proceeding.

The two letters are scanned for your convenience.  Kindly confirm once these liens have been removed.

Thank you for your urgent attention to this matter.

Best regards,
Cynthia Blanchard

# EXHIBIT 13

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| **GREEN COPPER HOLDINGS, LLC** | ) | **CASE NO. 25-10088-T** |
| **EIN # xx-xxx9708** | ) | **Chapter 7** |
| | ) | |
| **COPPER TREE, INC.** | ) | **Substantively Consolidated** |
| **EIN # xx-xxx6608** | ) | |
| | ) | |
| **THE INN AT PRICE TOWER INC.** | ) | |
| | ) | |
| **Debtors.** | ) | |

## TRUSTEE'S MOTION TO PAY SECURED CLAIM OF THE OKLAHOMA TAX COMMISSION (OTC) AND NOTICE OF OPPORTUNITY FOR HEARING

Comes now the Trustee and states:

1. The OTC filed proof of claim No. 27-1 for the total sum of $10,590.53. $9,633.09 of this sum is a "secured claim" based on Tax Warrants filed in Washington County in October and November of 2024.

2. The Trustee does not dispute the claim or the secured portion of the claim.

3. The Trustee intends to seek an order of the Court authorizing the Trustee to pay the secured portion of the claim or the sum of $9,633.04 unless an interested and necessary party objects and requests a hearing on the matter.

**NOTICE OF OPPORTUNITY FOR HEARING - Your rights may be affected. You should read this document carefully and consult your attorney about your rights and the effect of this document. If you do not want the Court to grant the requested relief, or you wish to have your views considered, you must file a written response or objection to the**

requested relief with the Clerk of the United States Bankruptcy Court for the Northern District of Oklahoma, 224 South Boulder, Tulsa, Oklahoma 74103 no later than 24 days from the date of filing of this request for relief. You should also serve a file-stamped copy of your response or objection to the undersigned movant/movant's attorney [and others who are required to be served] and file a certificate of service with the Court. If no response or objection is timely filed, the Court may grant the requested relief without a hearing or further notice. The 24-day period includes the three (3) days allowed for mailing provided for in Fed. R. Bankr. P. 9006(f).

Respectfully Submitted by:

/s/ Patrick J. Malloy III
Patrick J. Malloy III, OBA #5647
MALLOY LAW FIRM, P.C.
401 S. Boston Ave. Suite 500
Tulsa, Oklahoma 74103
Telephone:    918-699-0345
Fax:          918-699-0325
*ATTORNEYS FOR TRUSTEE*

# EXHIBIT 14

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

IN RE:                                           )
                                                 )
**GREEN COPPER HOLDINGS, LLC**                   )   **CASE NO. 25-10088-T**
**EIN # xx-xxx9708**                             )   **Chapter 7**
                                                 )
**COPPER TREE, INC.**                            )   **Substantively Consolidated**
**EIN # xx-xxx6608**                             )
                                                 )
                     **Debtors.**                )

## TRUSTEE'S NOTICE AND MOTION TO SUBSTANIVELY CONSOLIDATE THE INN AT PRICE TOWER INC. ("Price Tower") AND NOTICE OF OPPORTUNITY FOR HEARING

Comes now the Trustee and states:

1.  The Price Tower is a wholly owned subsidiary of Copper Tree Inc., a Debtor in this substantively consolidated estate.

2.  Prior to the commencement of these proceedings, the control persons of the Debtor entities and Price Tower were one and the same.

3.  This Motion seeks an order from the Court substantively consolidating Price Tower with this estate pursuant to 11 U.S.C. § 105.

4.  In the matter of *In re Limited Gaming of Am* 228 B.R. 275, 286 (Bankr. N.D. Okla. 1988), the court provided the following:

    "The equitable power of a bankruptcy court to order the substantive consolidation of two or more bankruptcy estates has long been recognized. *See Holywell Corp. v. Bank of New York (In re Holywell)* 59 B.R. 340, 346 (S.D. Fla. 1986) (citations omitted)."

    At 287 the court provided:

"Under this standard, the proponent of substantive consolidation must show that (1) there is substantial identity between the entities to be consolidated; and (2) consolidation is necessary to avoid harm or to realize some benefit. When this showing is made, a presumption rise that 'creditors have not relied solely on the credit of one of the entities involved.'"

*See also AHF Development* 426 B.R. 186, 195-96 (Bankr. N.D. Tex. 2011) (citing 1 Collier

On Bankruptcy § 105.09[2][a] (16th ed. 2010); *Union Sav. Bank v. Augie/Restivo Baking*

*Ltd (In Re Augie/Restivo Baking Co. Ltd)* 860 F.2d 515, 519 (2d Cir. 1988).

5. As applied to the proposed substantive consolidation of Price Tower, there is substantial identity between Price Tower and the Debtor entities:

   a. the control persons are the same;

   b. prior to the commencement of these proceedings there had been substantial comingling of assets and monies between the two entities without regard to the separateness of the entities and without regard to formalities;

   c. most of the creditors scheduled in these proceedings are creditors of Price Tower.

6. Substantive consolidation of Price Tower will provide a benefit to this estate. The Trustee has recovered to date two tax refunds payable to Price Tower totaling $68,676.15 in one instance and $60,357.00 in another.

7. Substantive consolidation will likewise avoid harm. Attached as **Ex A** is a list of creditors of Price Tower who were not listed on the schedules of either Debtor entity and who, as a result of the substantial identity of these entities, should be permitted the opportunity to file claims herein and participate in any distribution.

8. The Trustee intends to seek an order of the Court substantively consolidating Price Tower with this estate.

**NOTICE OF OPPORTUNITY FOR HEARING - Your rights may be affected. You should read this document carefully and consult your attorney about your rights and the effect of this document. If you do not want the Court to grant the requested relief, or you wish to have your views considered, you must file a written response or objection to the requested relief with the Clerk of the United States Bankruptcy Court for the Northern District of Oklahoma, 224 South Boulder, Tulsa, Oklahoma 74103 no later than 24 days from the date of filing of this request for relief. You should also serve a file-stamped copy of your response or objection to the undersigned movant/movant's attorney [and others who are required to be served] and file a certificate of service with the Court. If no response or objection is timely filed, the Court may grant the requested relief without a hearing or further notice. The 24-day period includes the three (3) days allowed for mailing provided for in Fed. R. Bankr. P. 9006(f).**

Respectfully Submitted by:

/s/ Patrick J. Malloy III
Patrick J. Malloy III, OBA #5647
MALLOY LAW FIRM, P.C.
401 S. Boston Ave. Suite 500
Tulsa, Oklahoma 74103
Telephone:    918-699-0345
Fax:             918-699-0325
*ATTORNEYS FOR TRUSTEE*

Case 25-10088-T   Document 205   Filed in USBC ND/OK on 07/24/25   Page 1 of 2

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

IN RE:                                )
                                      )
**GREEN COPPER HOLDINGS, LLC**        )      **CASE NO. 25-10088-T**
**EIN # xx-xxx9708**                  )      **Chapter 7**
                                      )
**COPPER TREE, INC.**                 )      **Substantively Consolidated**
**EIN # xx-xxx6608**                  )
                                      )
            **Debtors.**              )



Filed/Docketed
Jul 24, 2025

### ORDER

This matter having come on for consideration this 24th day of July 2025, on the *TRUSTEE'S*

*NOTICE AND MOTION TO SUBSTANTIVELY CONSOLIDATE THE INN AT PRICE TOWER*

*INC. AND NOTICE OF OPPORTUNITY FOR HEARING* (the "Motion") (Doc. No. 146), the

Court finds:

1. The motion was filed on June 27, 2025, seeking an order authorizing the substantive
   consolidation of The Inn at Price Tower Inc. ("Price Tower") on the basis that Price
   Tower is a wholly owned subsidiary of Copper Tree Inc. ("Copper Tree"), a Debtor in
   this substantively consolidated case, and there is substantial identity between Price Tower
   and Copper Tree and on the basis that such consolidation will result in benefit to the
   estate.

2. The Trustee provided timely and proper Notice of the proposed consolidation to all
   necessary and interested parties.

3. No objections to the proposed consolidation were filed within the time prescribed in the
   motion.

4. The proposed consolidation is fair and equitable and in the best interests of the estate.

IT IS THEREFORE ORDERED that The Inn At Price Tower Inc. shall be substantively
consolidated with this estate effective the date these proceedings were filed.

BY THE COURT:

PAUL R. THOMAS, CHIEF JUDGE
UNITED STATES BANKRUPTCY

Submitted By:
Patrick J. Malloy III, OBA #5647
MALLOY LAW FIRM, P.C.
401 S. Boston Ave. Suite 500
Tulsa, Oklahoma 74103
Telephone:     918-699-0345
Fax:               918-699-0325
*ATTORNEYS FOR TRUSTEE*

# EXHIBIT 15

Case 25-10088-T   Document 384   Filed in USBC ND/OK on 12/04/25   Page 150 of 168

12/1/25, 2:45 PM          Gmail - NOTICE OF SERVICE OF CLAIMANT TAKTIK ENTERPRISES, INC. (Claim No. 4) REQUESTS FOR PRODUCTION TO CYNTHI...



**Cynthia French blanchard <cdfblanchard@gmail.com>**

## NOTICE OF SERVICE OF CLAIMANT TAKTIK ENTERPRISES, INC. (Claim No. 4) REQUESTS FOR PRODUCTION TO CYNTHIA BLANCHARD (Claim 1, et.al.)

**The Brand Law Firm** <craig@thebrandlawfirm.com>                    Mon, Nov 10, 2025 at 12:48 PM
To: Cynthia French blanchard <cdfblanchard@gmail.com>, Cynthia Blanchard <cynthia@herasoft.com>
Cc: Craig Brand <craig@thebrandlawfirm.com>

### UNITED STATES BANKRUPTCY COURT
### NORTHERN DISTRICT OF OKLAHOMA

**IN RE:**

| | | |
|---|---|---|
| **GREEN COPPER HOLDINGS, LLC** | ) | **CASE NO. 25-10088-T** |
| **EIN # xx-xxx9708** | ) | **Chapter 7** |
| | ) | |
| **COPPER TREE, INC.** | ) | **Substantively Consolidated** |
| **EIN # xx-xxx6608** | ) | |
| | ) | |
| **THE INN AT PRICE TOWER INC.** | ) | |
| **Debtors.** | ) | |
| | / | |

### NOTICE OF SERVICE OF
### CLAIMANT TAKTIK ENTERPRISES, INC. (Claim No. 4)
### REQUESTS FOR PRODUCTION
### TO CYNTHIA BLANCHARD (Claim 1, et.al.)

Pursuant to Rule 34, Fed. R. Civ. P., Claimant **TAKTIK ENTERPRISES, INC. (Claim No. 4), (Herein after from time to time referred to as "Taktik"),** by and through its undersigned counsel, herewith requests **CYNTHIA BLANCHARD** (Claimant No. 1), to produce the following documents to the undersigned counsel on or before thirty (30) days from the date set forth in the Certificate of Service below.

**2 attachments**

Taktik's RFP to Blanchard-11.10.2025.pdf
229K

Notice of Service of Taktik's 11.10.2025. RFP to Blanchard.pdf
180K

 **Gmail**

Cynthia French blanchard <cdfblanchard@gmail.com>

## NOTICE OF SERVICE OF CLAIMANT TAKTIK ENTERPRISES, INC. (Claim No. 4) REQUESTS FOR PRODUCTION TO CYNTHIA BLANCHARD (Claim 1, et.al.)

**Cynthia French blanchard** <cdfblanchard@gmail.com>          Mon, Nov 10, 2025 at 2:31 PM
To: The Brand Law Firm <craig@thebrandlawfirm.com>
Cc: Craig Brand <craig@thebrandlawfirm.com>, Pat Malloy <pjmiiim@sbcglobal.net>, Mark Sanders
<msanders@gablelaw.com>

Mr. Brand,

Discovery closed on November 7, 2025 by Court order (Doc. 278). Your November 8 request is outside the discovery window and unauthorized. I will not engage with it.

Cynthia Diane Blanchard


cc'd.  Patrick Malloy III
cc'd.  Mark Sanders

On Mon, Nov 10, 2025 at 1:49 PM The Brand Law Firm <craig@thebrandlawfirm.com> wrote:

### UNITED STATES BANKRUPTCY COURT
### NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| IN RE: | | |
| **GREEN COPPER HOLDINGS, LLC** | ) | **CASE NO. 25-10088-T** |
| EIN # xx-xxx9708 | ) | **Chapter 7** |
| | ) | |
| **COPPER TREE, INC.** | ) | **Substantively Consolidated** |
| EIN # xx-xxx6608 | ) | |
| | ) | |
| THE INN AT PRICE TOWER INC. | ) | |
| Debtors. | ) | |
| | / | |

### NOTICE OF SERVICE OF
### CLAIMANT TAKTIK ENTERPRISES, INC. (Claim No. 4)
### REQUESTS FOR PRODUCTION
### TO CYNTHIA BLANCHARD (Claim 1, et.al.)

Pursuant to Rule 34, Fed. R. Civ. P., Claimant **TAKTIK ENTERPRISES, INC. (Claim No. 4), (Herein after from time to time referred to as "Taktik"),** by and through its undersigned counsel, herewith requests **CYNTHIA BLANCHARD** (Claimant No. 1), to produce the following documents to the undersigned counsel on or before thirty (30) days from the date set forth in the Certificate of Service below.

**Order for Discovery to End on 11:7:2025 by Judge.pdf**
153K

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **IN RE:** | ) | |
| **GREEN COPPER HOLDINGS, LLC** | ) | **CASE NO. 25-10088-T** |
| **EIN # xx-xxx9708** | ) | **Chapter 7** |
| | ) | |
| **COPPER TREE, INC.** | ) | **Substantively Consolidated** |
| **EIN # xx-xxx6608** | ) | |
| | ) | |
| **THE INN AT PRICE TOWER INC.** | ) | |
| **Debtors.** | ) | |
| | / | |

### CLAIMANT TAKTIK ENTERPRISES, INC. 'S RESPONSE TO BLANCHARD'S MOTION TO QUASH, ECF 368, AND CLAIMANT'S MOTION TO PERMIT THE PROPOUNDED NOVEMBER 10, 2025 REQUESTS FOR PRODUCTION (RFP)

COMES NOW **CLAIMANT TAKTIK ENTERPRISES, INC. (CLAIM NO. 4), (from time to time be referred to as "movant"),** by and through its undersigned counsel and hereby files this Response to ECF 368, and states:

1.      Mrs. Blanchard is correct in that discovery was propounded upon her however, with no prejudice inuring and for good cause.  The undersigned mistakenly mis-read the Court's Order, ECF 278, in that the Order, in part, stated, "… completion of discovery by November 10, 2025." The undersigned admittingly read the Order too fast, however, did serve Mrs. Blanchard with just (9) Requests for Production on November 10, 2025.  The Court's Order closed discovery on the 7th of November and Ordered a discovery report to be filed by November 10, 2025.

2.      Mrs. Blanchard is incorrect representing to the Court that Interrogatories and Requests for Production were served on her from Taktik Enterprises.  Only (9) simple RFP were served.

3.      Mrs. Blanchard within minutes of receiving the Requests for Production from Taktik Enterprises sent the undersigned an email that she would not be responding to the service as they

were untimely. The undersigned did not push on these Requests for Production any further, recognizing the mistake in reading ECF 278, and was going to bring the matter up at the next status conference, upon its scheduling seeking permission and having them deemed served on extension for good cause. Taktik Enterprises and Pictoria Studios requested a hearing on Mrs. Blanchard's open matters and filed a status report with the Court ECF 358.

4.      Mrs. Blanchard's Motion, ECF 368, also misrepresents what the Court stated on September 2, 2025 during the status hearing. The Court never agreed to allow Mrs. Blanchard, as she represents to the Court, that she would be permitted to rest on her filings. During the hearing, Mrs. Blanchard made that request, however, the issue was never taken up and the fact that the Court Ordered for Discovery to proceed is evidence enough that she was going to endure discovery upon herself.

5.      Additionally, Mrs. Blanchard continues to and knowingly and intentionally mail her pleadings or communications to Mr. Brand at an incorrect address. This act of maleficence needs to be corrected and she continues to be the only one doing so.

6.      Mrs. Blanchard's Motion to Quash ECF 368, further grossly misrepresents to the Court what her Motion for Protective Order, ECF 338, is about. Fabricating arguments that do not exist are mis-statements to the Court.

7.      The remainder of Mrs. Blanchard's Motion to Quash as it talks about discovery, is all false, irrelevant and not applicable. Mrs. Blanchard rambles on about Interrogatories and how they are over broad, not authorized, harassing, excessive, impede upon a pending motion for Protective Order, etc. All of this would be of possible relevance if true, but shamefully for Mrs. Blanchard, like all her other filings, they are all a knowing and gross misrepresentations made to the Court. Amazing how non-existent Interrogatories can be all those things she represents in her motion!

Taktik Enterprises on November 10, 2025, served Mrs. Blanchard with 9 Requests for Production, not interrogatories. Wherefore, again, proving Mrs. Blanchard's propensity of mis-stating facts, even to the Court. (See a copy of the Requests served upon Mrs. Blanchard on November 10, 2025, attached hereto as well as an email service which is by way of her response back. Notice the title within the email, as no Interrogatories are mentioned).

8.      As Mrs. Blanchard's Motion to Quash requests only that the Interrogatories be quashed and no Interrogatories were served, her Motion should be Denied with no need for further argument.

9.      Movants still have the following open matters for which a court hearing has been requested:

A.      Movant's ECF 285 (1-3), is an Objection to Mrs. Cynthia Blanchard's *Claims No. 1and 1-2.*

B.      Mrs. Blanchard also untimely filed a Motion for Protective Order as to the Movant's propounded Discovery, See, ECF 338. Movants filed a Response and request for hearing at ECF 340.

1.      Movant's are challenging Mrs. Blanchard's claim for a host of reasons, many differing and expanding upon the Trustee's limited but valid argument from where his Discovery arises from. The Trustee has focused on the value of any monies allegedly provided to the Debtor by Mrs. Blanchard, arguing that any monies placed are to be charged as legal consideration for her shares in the Debtor as no other proofs of legal consideration has been provided. As such Mrs. Blanchard's claims are not truly a legal claim for bankruptcy purposes, but that she would possibly have an unsecure interest subservient to any true bankruptcy claims.

2.      Movants, additionally, are challenging the validity, authenticity, legality and lawfulness of Mrs. Blanchard's conduct, sources of money, truth and veracity of the expenditures, handling of the Debtor and the monies taken or used, the comingling of accounts and improper intermixing and comingling of monies, legitimacy of any actual expenses, legitimacy of transfers, legitimacy of monies taken or reimbursed, the entirety of any alleged loan, as well as payments to have been made for legal consideration for her shares and officer position within the Debtor disguised as a loan. These "White Collar" markers each warrant considerable discovery. The undersigned's client Pictoria Studios has shown by its limited first set of discovery to be very efficient and judicious. Pictoria's discovery follows its Objections to Mrs. Blanchard's Claim and attaches affidavits in support of the serious allegations against her. See, ECF 285, 285(1-3). Taktik Enterprises Requests for Production filed just 3 days after the mis-read cut off, have no prejudice to Mrs. Blanchard, and she has refused to provide answers or responses to earlier propounded discovery by Pictoria, and but for Mrs. Blanchard not timely answering and responding to the Pictoria discovery the issues raised within the Taktik's Requests, served November 10, 2025 would have been sooner thought of. The only parties to be prejudiced herein are the Movants Taktik and Pictoria while Mrs. Blanchard continues to play avoidance games not wanting to be under oath and answering questions that she knows the truth is out there to controvert any mis-steps.

C.      Mrs. Blanchard has also filed ECF 279 which is her Motion for Protective Order From Being Deposed. Movants filed ECF 289 in Response as well as requested a hearing.

D.    Pictoria filed ECF 346 (1-3) requesting a Hearing upon and complaining of Mrs. Blanchard's delay tactics, bad-faith conduct and obstruction of the discovery process for which the Court had already ordered to proceed.

WHEREFORE, the Movant hereby prays that this Honorable Court Deny Mrs. Blanchard's Motions, in whole, grant the Movant's motions and permit Taktik's Requests for Production as an extension of time allowance, attorney fees, as well as any and all other relief deemed just and proper.

RESPECTFULLY SUBMITTED ON THIS 26th day of November, 2025.

/s/ *Craig A. Brand, Esq.*

By: _____
    Craig Alan Brand, Esq.
    FBN: 896111
    Tel. (305) 878-1477
    6462 S. Jamaica Circle
    Englewood, Colorado 80111
    **On behalf of and for:** PICTORIA STUDIOS USA, INC. (Claim No. 14) and, TAKTIK ENTERPRISES (Claim 4)

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of this foregoing Response to ECF 368 was filed with the Clerk of Court on this 26th day of November, 2025. In addition, a copy was mailed by United States first class mail to the following recipient(s):

    Cynthia Diane Blanchard, pro se
    414 SE Washington Blvd. Ste. 205
    Bartlesville, OK 74006
    310-435-5707

/s/ *Craig A. Brand, Esq.*

By: _____
    Craig Alan Brand, Esq.
    FBN: 896111
    Tel. (305) 878-1477

6462 S. Jamaica Circle
Englewood, Colorado 80111

**On behalf of and for:**
PICTORIA STUDIOS USA, INC. (Claim No. 14) and, TAKTIK ENTERPRISES (Claim 4)

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF OKLAHOMA

IN RE:

| | | |
|---|---|---|
| **GREEN COPPER HOLDINGS, LLC** | ) | **CASE NO. 25-10088-T** |
| **EIN # xx-xxx9708** | ) | **Chapter 7** |
| | ) | |
| **COPPER TREE, INC.** | ) | **Substantively Consolidated** |
| **EIN # xx-xxx6608** | ) | |
| | ) | |
| **THE INN AT PRICE TOWER INC.** | ) | |
| **Debtors.** | ) | |
| | / | |

### NOTICE OF SERVICE OF
### CLAIMANT TAKTIK ENTERPRISES, INC. (Claim No. 4)
### REQUESTS FOR PRODUCTION
### TO CYNTHIA BLANCHARD (Claim 1, et.al.)

Pursuant to Rule 34, Fed. R. Civ. P., Claimant **TAKTIK ENTERPRISES, INC. (Claim**

**No. 4), (Herein after from time to time referred to as "Taktik"),** by and through its undersigned

counsel, herewith requests **CYNTHIA BLANCHARD** (Claimant No. 1), to produce the following

documents to the undersigned counsel on or before thirty (30) days from the date set forth in the

Certificate of Service below.

### DEFINITIONS

1.      "Debtor" or Debtors" are: Copper Tree, Inc., Green Copper Holdings, LLC., and the Inn at Price Tower, as set forth within this cause of action for which the Mr. Malloy is the presiding Trustee of.

2.      Cynthia French Blanchard or Cynthia Diane Blanchard is the Claimant or "Blanchard".

3.      The term "person" means any person or entity, and includes individuals, corporations, limited liability companies, partnerships, associations, joint ventures, and other business enterprises, or legal entities and includes both the singular and plural.

4.      "Third Party" includes any person not a party to this action and/or counsel for a party to this action.

5.      The term "representative" refers to any employee, agent, attorney or accountant.

6.      "Business Entity" means a sole proprietorship, corporation, limited liability company, limited partnership, general partnership, association, joint venture, and any other business name through which business is conducted.

7.      The term "identify" means to state:

      (a)      in the case of a natural person, the person's name, business address, residence address, and residential telephone number, employer or identify the entity for whom the person serves as an independent contractor, and title or position;

      (b)      in the case of a person other than a natural person, its name, address, and telephone number and identify the natural person acting on its behalf;

      (c)      in the case of a communication or meeting, its date, type (e.g., telephone conversation, discussion, or meeting), the place where it occurred, the identity of the participants, and the subject matter; and

      (d)      in the case of a document, the title of the document, the author, the title or position of the author, the addressee(s), each recipient and copy recipient or blind-copy recipient, the type of document, the subject matter, the date of preparation, and Bates stamp numbers.

      (e)      In the case of an electronic mail address ("email address"), the complete email address, the name and business and residence address of each person authorized to access, send and/or receive information utilizing the email address, the Universal Resource Locater ("URL")

and Domain Name to which the email is attached, and the name of the registrar of the Domain Name.

     (f)     In the case of a text messaging device, the country code, area code, city code and telephone number assigned to the text messaging device, the name and business and residence address of the person in whose name the telephone number is billed by the carrier, the carrier name, the manufacturer's name of the text messaging device, the name and business and residence address of the person who had custody of the text messaging device.

8.     The word "document" or "documents" includes, without limitation, the following items, whether printed, recorded, photographed filmed or reproduced by any other mechanical process, or written or produced by hand, and whether an original master, or copy, namely: Electronically Stored Information ("ESI")(described below); work sheets; agreements; books; records; opinions or report of consultant; bank statements; financial statements; check books; checks; cancelled checks; deposit slips; charge slips; stubs or registers; diaries; communications, including intra-company communications; correspondence; cablegrams; radiograms; telexes; e-mails; instant messages; short messaging service (SMS); Blackberry Messenger Messages (BBM); voicemails; statements posted on or the internet, memoranda, including intra-company memoranda; summaries; notes and records of telephone conversations, meetings and conferences; notes and records of personal conversations and interviews; ledgers, invoices; contracts; notices; drafts of any documents; marginal or other comments or notes appearing on any documents; business records; charts; plans; specifications; schedules; computer printouts; computer tapes; microfilms; microfiches; photographs; slides; negatives; motion pictures; video recordings; tape or other voice recordings and transcription thereof; and data compilations (including meta-data) from which information can be obtained, translated, if necessary, by you through detection devices into reasonably usable form; and any other information containing paper, writing or physical thing including all underlying, supporting or preparatory material now in your possession, custody or control, or available to you, your counsel, accountants, agents, representatives or associates. "Document" or "documents" specifically includes documents kept by individuals in their desks, at home or elsewhere.

9.     The word "document" or "documents" also includes, without limitation, the original and all file copies and other copies that are not identical to the original no matter how or by whom prepared, and all drafts prepared in connection with any documents, whether used or not. If the original of any document is not in your possession, custody or control, a copy of that document should be produced.

10.     "Copy" when used in reference to a document means any color, or black or white facsimile reproduction of a document, regardless of whether the facsimile reproduction is made by means of carbon papers, pressure sensitive paper, xerography or other means or process.

11.     The term "communication," "communications," or "communicate" means any writing, or oral conversation, including, but not limited to, telephone conversations and meetings, letters, e-mails, text messages, voice mails, telegraphic and telex communications, instant messages, and includes all information relating to all oral communications and "documents" (as hereinabove

defined), whether or not any such document, or the information contained therein, was transmitted by its author to any other person.

12.     The term "including" means "including without limitation."

13.     The term "exchanged" and the term 'transfer' each mean delivering in any form whatsoever by the person or persons initiating the delivery to the person or persons receiving the delivery

14.     If not expressly stated, "control" means in your possession, custody, or control or under your direction, and includes in the possession, custody or control of those under the direction of you or your employees, subordinates, counsel, accountant, consultant, expert, parent or affiliated corporation, and any person purporting to act on your behalf.

15.     "Pertaining to," "pertains to" and "pertain to" means directly or indirectly, refer to, reflect, describe, pertain to, arise out of or in connection with, or in any way legally, logically, or factually be connected with the matter discussed.

16.     "Relating to," "relates to" and "related to" means, without limitation, comprising, concerning, containing, embodying, referring to, alluding to, responding to, about, regarding, explaining, discussing, showing, describing, studying, reflecting, analyzing or constituting. A communication or document "relating to" any given subject means any communication or document that constitutes, contains, embodies, reflects, identifies, states, refers to, deals with, or is in any way pertinent to that subject, including, without limitation, documents concerning the preparation of other documents.

## INSTRUCTIONS

1.      Any word written in the singular herein shall be construed as plural or *vice versa* when necessary to facilitate the response to any request.

2.      The use of the present tense includes the past tense, and the use of the past tense includes the present tense, so as to be inclusive of any information that otherwise may be excluded from disclosure.

3.      With respect to each answer, document, or electronically stored information that you presently intend to refuse to identify or produce under a claim of privilege or other exemption from discovery, state the title and nature of the document, and furnish a list signed by the attorney of record giving the following information with respect to each answer, document, and electronically stored information withheld:

    a.  The nature of the privilege claimed (including work product);

    b.  If the privilege is being asserted in connection with a claim or defense governed by state law, the privilege rule being invoked;

    c.  The date of the document, ESI, or oral communication, or if no date appears, the date on which the document was prepared;

    d.  The type of document (*e.g.*, letter or memorandum);

    e.  If electronically store information, the software application used to create it (*e.g.*, MS Word or MS Excel Spreadsheet);

    f.  If a communication (*e.g.*, e-mail), the sender, recipient, subject matter, and date of the communication was made; and

    g.  The general subject matter of the document, ESI, or communication.

4.    If a document identified in a response to a Request for Production once existed and has subsequently been lost, destroyed, or is otherwise unavailable for production, please state with respect to such document:

    a.  The last known location of the document;

    b.  The last date or time period the document was known to be in existence;

    c.  The person who last had control or custody of the document;

    d.  The circumstances under which the document was destroyed or otherwise rendered unavailable for production;

    e.  Whether the document was stored under conditions of controlled access, and, if so, the names of all persons having access to the document;

    f.  The person who requested or directed the destruction of the document; and

    g.  The reasons for the request or direction resulting in the document becoming unavailable for production.

    5.  Please also identify all persons capable of offering testimony on the subject matter or contents of the document destroyed or otherwise rendered unavailable for production.

## **REQUESTS FOR PRODUCTION**

1.    Please provide All communications (email, text, iMessage, Signal, WhatsApp, Slack, Facebook Messenger, or any other platform) between Cynthia Blanchard and Paul Aubert, in his capacity as legal counsel for Copper Tree Inc., from the date of incorporation of Copper Tree, Inc, (a debtor herein) to present as it applies to, arises out of, arises from, related to, directly or indirectly mentions Copper Tree, Inc.

2.      Please provide All communications (email, text, iMessage, Signal, WhatsApp, Slack, Facebook Messenger, or any other platform) between Cynthia Blanchard and Anthem Blanchard from the date of incorporation of Copper Tree, Inc, (a debtor herein) to present as it applies to, arises out of, arises from, related to, directly or indirectly mentions Copper Tree, Inc,

3.      Please provide All communications (email, text, iMessage, Signal, WhatsApp, Slack, Facebook Messenger, or any other platform) between Cynthia Blanchard and any and all Shareholders of Copper Tree Inc., from the date of incorporation of Copper Tree, Inc, (a debtor herein) to present as it applies to, arises out of, arises from, related to, directly or indirectly mentions Copper Tree, Inc.

4.      Please provide All communications (email, text, iMessage, Signal, WhatsApp, Slack, Facebook Messenger, or any other platform) between Cynthia Blanchard and Paul Aubert, in his capacity as legal counsel for Green Copper Holdings, LLC., from the date of incorporation of Green Copper Holdings, LLC, (a debtor herein) to present as it applies to, arises out of, arises from, related to, directly or indirectly mentions Green Copper Holdings, LLC.

5.      Please provide All communications (email, text, iMessage, Signal, WhatsApp, Slack, Facebook Messenger, or any other platform) between Cynthia Blanchard and Anthem Blanchard from the date of incorporation of Green Copper Holdings, LLC, (a debtor herein) to present as it applies to, arises out of, arises from, related to, directly or indirectly mentions Green Copper Holdings, LLC.

6.      Please provide All communications (email, text, iMessage, Signal, WhatsApp, Slack, Facebook Messenger, or any other platform) between Cynthia Blanchard and any and all Members of Green Copper Holdings, LLC., from the date of incorporation of Green Copper Holdings, LLC,

(a debtor herein) to present as it applies to, arises out of, arises from, related to, directly or indirectly mentions Green Copper Holdings, LLC.

7.      Please provide All communications (email, text, iMessage, Signal, WhatsApp, Slack, Facebook Messenger, or any other platform) between Cynthia Blanchard and Paul Aubert, in his capacity as legal counsel for Copper Tree Inc., from the date of incorporation of THE INN AT PRICE TOWER INC, (a debtor herein) to present as it applies to, arises out of, arises from, related to, directly or indirectly mentions THE INN AT PRICE TOWER INC.

8.      Please provide All communications (email, text, iMessage, Signal, WhatsApp, Slack, Facebook Messenger, or any other platform) between Cynthia Blanchard and Anthem Blanchard from the date of incorporation of THE INN AT PRICE TOWER INC, (a debtor herein) to present as it applies to, arises out of, arises from, related to, directly or indirectly mentions THE INN AT PRICE TOWER INC.

9.      Please provide All communications (email, text, iMessage, Signal, WhatsApp, Slack, Facebook Messenger, or any other platform) between Cynthia Blanchard and any and all Shareholders of THE INN AT PRICE TOWER INC., from the date of incorporation of THE INN AT PRICE TOWER INC (a debtor herein) to present as it applies to, arises out of, arises from, related to, directly or indirectly mentions THE INN AT PRICE TOWER INC.

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of this foregoing Requests for Production to Cynthia Blanchard was served on this 10th day of November, 2025, emailed to Mrs. Blanchard at her email address used during these proceedings with the undersigned counsel: cdfblanchard@gmail.com , as well as mailed by US first class mail to:

Cynthia Diane Blanchard, pro se
414 SE Washington Blvd. Ste. 205
Bartlesville, OK 74006
310-435-5707

/s/ **Craig A. Brand, Esq.**

By: _____

Craig Alan Brand, Esq.
FBN: 896111
Tel. (305) 878-1477
6462 S. Jamaica Circle
Englewood, Colorado 80111

**On behalf of and for:**
PICTORIA STUDIOS USA, INC. (Claim No. 14), and
TAKTIK ENTERPRISES, INC. (Claim No. 4).

# EXHIBIT 16

12/3/25, 1:57 PM                                          Gmail - (no subject)

 Gmail                                 Cynthia <cynthiadblanchard@gmail.com>

## (no subject)

**Cynthia** <cynthiadblanchard@gmail.com>                          Tue, Dec 2, 2025 at 9:59 AM
To: Pat Malloy <pjmiiim@sbcglobal.net>
Cc: Mark Sanders <msanders@gablelaw.com>
Bcc: Cynthia French blanchard <cdfblanchard@gmail.com>


Pat,

Thank you for sending the call information — I appreciate you making sure I had the details.

Unfortunately, I do have a conflict at that time. If possible, I will try to at least listen in for part of the call, but I'm not sure I will be able to do so. Thank you in advance for letting the Court know.

Hope you had a good holiday weekend,

Cynthia

On Mon, Dec 1, 2025 at 3:55 PM Pat Malloy <pjmiiim@sbcglobal.net> wrote:
> Cynthia--I wanted to make sure you had notice of the status conferences re my objection to your claim and your
> response and your motion to quash set on 12/03/2025 at 10:00 am --650-479-3207 and access code 2314055439
>
> I also wanted to formally withdraw all prior settlement offers.