## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| GREEN COPPER HOLDINGS, LLC | ) | CASE NO. 25-10088-T |
| EIN # xx-xxx9708 | ) | Chapter 7 |
| | ) | |
| COPPER TREE, INC. | ) | Substantively Consolidated |
| EIN # xx-xxx6608 | ) | |
| | ) | |
| THE INN AT PRICE TOWER INC. | ) | |
| | ) | |
| Debtors. | ) | |

**TRUSTEE'S BRIEF IN SUPPORT OF *TRUSTEE'S OBJECTION TO (i) CLAIM NO. 2-2 FILED IN COPPER TREE INC. AND (ii) CLAIM NO. 1-2 FILED IN GREEN COPPER HOLDINGS LLC BY CYNTHIA DIANE BLANCHARD ("CYNTHIA") IN THE AMOUNT OF $269,554.69 AND $285,107.88 RESPECTIVELY WITH NOTICE OF OPPORTUNITY FOR HEARING***

### I. PRELIMINARY STATEMENT

It should be noted at the outset that the claims asserted by Cynthia are somewhat confusing—largely as a result of her filing claims for different amounts in both Green Copper Holdings LLC and Copper Tree Inc. However, given the substantive consolidation of these entities, the Trustee believes that the operative claim is claim 1-2 filed in Green Copper Holdings, LLC for the sum of $285,107.88.

Given the substantive consolidation of the specified entities, the Trustee shall hereinafter refer to all of the entities as the Debtor.

Cynthia's claim is based on alleged advances of monies by her to the Debtor after the Debtor had acquired the iconic center piece of these proceedings—the Price Tower in Bartlesville, Oklahoma. At the time of the acquisition, it was clear the Price Tower was incapable of standing on its own and the continued operations required the input of substantial capital. It is undisputed

that at all times relevant Cynthia owned 90% of the Debtor and was the President/CEO of the Debtor. See Statement of Financial Affairs Doc. 1 page 35. At no time prior to or after the acquisition did either Cynthia or any of the shareholders contribute any capital. Moreover, neither Cynthia nor her fellow shareholders were able to obtain any financing from alternative sources. This Debtor was not merely "thinly capitalized"—**it had no capital.**

In addition to the lack of any capital, the Debtor's own pre-bankruptcy financial statements did not show any liability to Cynthia and, with some minor exceptions, there were no substantial repayments of the alleged debt prior to bankruptcy. Based on these and other factors recognized by courts throughout the country, including the 10th Circuit, Cynthia's advances must be characterized as "capital contributions" and not "loans."

The Trustee would additionally point out that in his objection he specifically reserved the right to object to Cynthia's allegations relative to the total of any sums advanced. Cynthia has not provided this Court with sufficient evidence to support the actual dates and amounts of advances. In her discovery responses she has referred to an alleged "loan ledger" or "quickbooks." The problem is, there is no underlying support for these conclusory documents—no cancelled checks; no credit card receipts; no wire transfers etc. Apparently, Cynthia does not plan on attending the hearing or introducing any evidence at the hearing to support her claim. If that is the case, the record simply does not support the allowance for any alleged sums due.

## II. ARGUMENT

### A. ANY ADVANCES BY CYNTHIA SHOULD BE CHARACTERIZED AS CAPITAL CONTRIBUTIONS AND NOT LOANS.

In the matter of *In re Cold Harbor Assocs L.P.* 204 B.R. 904, 915 (Bankr. E.D. Va. 1997), a case relied on by the court in *Farr v. Phase Molecular Toxicology Inc. (In re Phase-I Molecular Toxicology Inc.)* 287 B.R. 571 (Bankr. D. New Mexico 2002), the court stated:

"The Court is not required to accept the label of 'debt' or 'equity' placed by the debtor upon a particular transaction but must inquire into the actual nature of a transaction to determine how best to characterize it." (Citations omitted)

Continuing, the court stated:

"The primary factor this Court is to consider when evaluating whether funds advanced by a shareholder are the result of an equity contribution or a loan is whether the transaction bears the earmarks of an arms length transaction." (Citations omitted.)

The court went on to discuss 13 separate criteria courts rely on when analyzing debt v. capital:

1. the names given to the certificates evidencing the indebtedness;
2. the presence or absence of a fixed maturity date;
3. the source of payments;
4. the right to enforce payment of principal and interest;
5. participation in management flowing as a result;
6. the status of the contribution in relation to regular corporate creditors;
7. the intent of the parties;
8. thin or inadequate capitalization;
9. identity of interests between creditor and stockholder;
10. source of interest payments;
11. the ability of the corporation to obtain loans from outside lending institutions;
12. the extent to which the advance was used to acquire capital assets; and
13. the failure of the debtor to repay on the due date or to seek postponement.

The court in *Cold Harbor* also noted that the Sixth Circuit added consideration of whether or not there was security for the alleged "loan". *See Roth Streel Tube Company v. Commissioner of Internal Revenue* 800 F.2d 625, 630-32 (6th Cir. 1980).

The Trustee would address certain of these criteria as follows:

1. **The name given the alleged indebtedness**: Attached as an exhibit to one Cynthia's proofs of claim is a document entitled *Loan Agreement*. However, the signature page of that

document is not dated. It is impossible to determine when that document was actually signed. Secondly, and as related to the arm's length analysis, the document is signed by Cynthia as alleged lender on the one hand and as CEO for the borrower Debtor on the other hand. Thirdly, there are no promissory notes signed in connection with any or all of the advances. The lack of a promissory note, in conjunction with a lack of other formalities, may indicate that advances are equities. *See Estate of Mixon v. United States 464 F.2d 394, 403* (5th Cir. 1972).

2. **The presence or absence of a fixed maturity date**—The loan agreement has no fixed maturity date. It is in essence a demand note. The court in *Cold Harbor* 204 B.R. at 915 provided:

"The more specific and complete the parties are in identifying and codifying the terms of the alleged loan agreement, the more like a loan the transaction appears. By contrast, if the terms of such an agreement are vague and non-specific, **such transaction appears more like a shareholder contributing capital to keep his investment afloat.**" (emphasis added)

Continuing on 917:

"The basic question asked when addressing these factors is: how definite were the plans for repayment. If the terms were vague and nonspecific, then the advance takes on the appearance of equity as it is assumed that a non-shareholder bargaining at arms length would demand specifics and formalities to protect their investment. **First the absence of a fixed maturity date indicates that advances are capital contributions and not loans.** *Roth Steel Tube* 800 F.2d at 631; *Lane v. United States* 742 F. 2d 1311 (11th Cir. 1984).'(emphasis added)

Not only is there no fixed maturity date, the so-called loan limits are vague and imprecise.

Section 1.1 entitled Loan Amount provides, in part:

"The total outstanding principal shall not exceed an aggregate amount determined and recorded in the parties' bookkeeping software, reconciled with the parties' bank account records."

It is almost impossible to discern what this language means. In essence, Cynthia, wearing her hat as CEO of the Debtor subject to all of the duties and responsibilities attendant to that role decided when and how much to borrow from herself –with no fixed maturity date and subject to demand by Cynthia as an individual without regard for fiduciary duties owed by Cynthia as CEO of the Debtor.

3. **Source of payments**—As discussed below, the Debtor had no ability to borrow funds from any other source. The Debtor's ability to repay the alleged debt was tied inextricably to the future success of the business. If the expectation of repayment depends solely on the success of the borrower's business, the transaction has the appearance of a capital contribution. *See In re Autostyle Plastics Inc.* 269 F.3d 726, 751 (6th Cir. 2001).

4. **Right to enforce principal and interest**—The alleged loan agreement fails to provide for payment of any interest prior to the demand for repayment by Cynthia. In *Cold Harbor* 204 B.R. at 918, the court stated:

"Although there is a defined rate of interest on the face of the notes, no provisions have been made for the payment of interest payments prior to a demand for repayment in full by a shareholder. An open ended repayment term such as this tends to demonstrate that the advances in question bear the earmarks of an equity contribution."

Continuing:

"This Court finds that formalities evidencing a method of repayment to be either nonexistent, or so vague as to be nonexistent. Any advance made for such little return on a risky investment was not made on an arm's length basis and does not bear the earmarks of a loan."

5. **Presence or absence of security**—As noted, the alleged debt was wholly unsecured. Lack of security for a transaction is considered to be a significant indicator that an advance is not a loan. *See Roth Steel Tube* 800 F.2d 625, 631 (6th Cir. 1986).

6. **Intent of the parties**—Trustee's Exhibit 4 represents a list of the Debtor's liabilities as of March 2024 prepared by the Debtor's accountant and provided to both Cynthia and Donna Keffer, an executive director of the Debtor. It represents a corporate document maintained in the normal course of business and will be authenticated by Ms. Keffer at the hearing. Cynthia's alleged debt is not reflected in the document. At no time prior to the commencement of these proceedings did Cynthia demand payment from the Debtor of the alleged sums due. With minor exceptions, the Debtor made no substantial repayment of debt. As already noted, there were no provisions for the payment of interest and no interest payments made. The parties never intended for these advances to be treated as debt. Cynthia's advances were intended to preserve her investment—however undercapitalized it was.

7. **Thin or inadequate capitalization**—As already noted, this Debtor from its inception was not merely "thinly" capitalized"—it had no capital. In *Cold Harbor* 204 B.R. at 916, the court noted that "this factor is relevant when a corporation is started by the shareholders with a minimal amount of capital who then make a large loan of money to the newly formed corporation, and thus the relevant time for determining whether capitalization was adequate is generally at the corporation's creation. *See e.g. Hillsborough* 176 Bankr. At 249." It is undisputed that this Debtor had no capital from its inception and the alleged 'loans" were effected to keep the undercapitalized "investment" afloat. What is particularly egregious about this case is Cynthia knew and understood from the onset the operations of the Price Tower would not succeed absent substantial capital contributions.

8. **Identity of interest between creditor and stockholder**—In *Cold Harbor* 204 B.R. at 918-919, the court provided:

"The final factor to be considered is the relationship between those owning equity and making the advance. **The Court considers this to be the most critical factor in its determination due to** the exact identity between the two groups. The purported loan was made on a pro rata basis with each partner contributing a percentage of the entire advance exactly equal to his or her equity interest in the partnership." (Emphasis added.)

Cynthia owned **90% of the Debtor**. She had and exercised total control over the Debtor.

There was for all practical purposes a 100% relationship between lender and shareholder.

9. **Ability of Debtor to obtain loans from outside lending institutions**—Cynthia's discovery responses establish conclusively that despite numerous efforts this Debtor was unable to obtain "loans" from any outside lender. Equally important is the fact that no lender would even consider a loan based on the terms and conditions applicable to Cynthia's alleged loans. In *Cold Harbor* 204 B.R. at 918, the court stated:

"The question to be asked here is whether a reasonable outside creditor would have made a loan to the debtor on similar terms. *Roth Steel Tube* 800 F.2d. at 631. This Court does not hesitate to hold that the answer to this question is an unequivocal "no.""

The court in *Cold Harbor* 204 B.R. at 915 stated:

"The list of factors is not exclusive and no one factor is predominant, nor are the factors to be given rigidly equal weight. Instead the Court is to apply these factors to the particular case at hand keeping in mind the specific circumstances surrounding the present factual situation."

Almost all of the specified factors under the facts of this case support characterizing Cynthia's advances as capital contributions effected by Cynthia in an attempt to save her "investment." The Trustee would ask this Court to take judicial notice of the prior orders entered in this case approving claims filed for sums in excess of $ 1 million—debt incurred

under Cynthia's watch in her desperate attempt to operate a grossly undercapitalized Debtor for her own benefit.

### B. Cynthia Has failed To Establish The Total Sums Advanced

In support her claims, Cynthia merely attached as an exhibit an alleged "loan ledger." It was attached to Claim 1-1. The document is a conclusory "summary" which provides no supporting documents of any kind. In *Thompson v. Short (In re Short)* 669 B.R. 81, 93 (Bankr. Utah 2025), provides the following discussion:

"Bankruptcy Rule 3001(f) provides that a 'proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim. However, for a proof of claim to be accorded that evidentiary presumption, it must meet certain requirements, including attaching supporting documentation, proof of a perfected security interest and an itemization of accrued interest."

Continuing:

"However, when a party fails to attach supporting documentation to a claim, the burden more readily shifts to the creditor who then bears the obligation of persuasion to establish the enforceability, amount, and perfection of an asserted secured claim. "

The Trustee asserts that Cynthia failed to attach to her proof of claim or frankly otherwise produce in these proceedings any documents to support the alleged advances. The problems related to this claim are heightened given Cynthia's insider status. The court in *Thompson v. Short (In re Short)* 699 B.R. at 93 also stated:

"While insider claims are entitled to the presumption of allowance under Bankruptcy Rule 3001(f) the Supreme Court holds that such claims are need not be accorded 'pari passu treatment with the claims of other creditors' and that their disallowance 'may be necessitated by certain cardinal principles of equity jurisprudence.' Thus when an insider claim is challenged, its allowance is 'subject to rigorous scrutiny.' And the burden is on the insider to 'not only prove the good faith of the transaction but also to show the inherent fairness from the view point of the' debtor and other parties in interest. 'The essence of the test is whether or not under all the circumstances the transaction carries the earmarks of an arms length bargain. If it does not equity will set it aside.' "

Cynthia's claim based on alleged loans simply does not stand up under any rigorous analysis –leaving aside the capital characterization issue discussed above.  There are no earmarks of an arm's length transaction and she has provided no underlying supporting documents of any kind.

**III. CONCLUSION**

To the extent Cynthia is able to establish actual advances by her to the Debtor, those advances should be characterized as capital contributions for the reasons stated herein. Her claim as a general unsecured claim should be denied in its entirety.

Moreover, Cynthia failed to attach sufficient supporting documents to her proofs of claim and under the rigorous scrutiny required of insider claims the transaction doe not bear the earmarks of an arm's length and good faith transaction. As a result, the claims should be denied.

Respectfully Submitted by:         /s/ Patrick J. Malloy III
                                   Patrick J. Malloy III, OBA #5647
                                   MALLOY LAW FIRM, P.C.
                                   401 S. Boston Ave. Suite 500
                                   Tulsa, Oklahoma  74103
                                   Telephone:    918-699-0345
                                   Fax:          918-699-0325
                                   Email:        pjmiiim@sbcglobal.net
                                   *ATTORNEYS FOR TRUSTEE*