# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| IN RE: | | |
| **GREEN COPPER HOLDINGS, LLC** | ) | **CASE NO. 25-10088-T** |
| EIN # xx-xxx9708 | ) | **Chapter 7** |
| | ) | |
| **COPPER TREE, INC.** | ) | **Substantively Consolidated** |
| EIN # xx-xxx6608 | ) | |
| | ) | |
| **THE INN AT PRICE TOWER INC.** | ) | |
| **Debtors.** | ) | |

_____/

### PICTORIA STUDIOS USA, INC. AND TAKTIK ENTERPRISES, INC. EXHIBIT LIST IN COMPLIANCE WITH ECF 412 RELATED TO JANUARY 27, 2026 SPECIAL SET HEARING

COMES NOW **PICTORIA STUDIOS USA, INC., (CLAIM NO. 14), AND CLAIMANT TAKTIK ENTERPRISES, INC. (CLAIM NO. 4)** by and through their undersigned counsel and hereby files this Exhibit List, along with each marked Exhibit as a composite hereto, as to the Special Set January 27, 2026 Hearing (ECF 412), paragraph 5, and states:

1.    As per ECF 412, paragraph 5, "Each parties' exhibits shall be named sequentially as follows, beginning with the number 1: e.g., PARTY_NAME_Ex_1, PARTY_NAME_Ex_2, PARTY_NAME_Ex_3, etc. The exhibit number should be visible at the bottom of each page of the exhibit. When an exhibit is comprised of multiple pages, each page shall be separately marked: e.g., PARTY_NAME_Ex_1-1, PARTY_NAME_Ex_1-2, etc."

Attached to this filing

2.      Attached to this Exhibit List, is Pictoria Studios USA and/or Taktik Enterprises and/or attorney Craig A. Brand's planned Exhibits and/or composite exhibits marked as set forth in paragraph 1, *supra*:

| Party: | Exhibit No with Composite: | Description: |
|---|---|---|
| Brand | 1 | Mrs. Blanchard's ECF 341 (M. Revoke Brand) |
| Brand | 2<br>2A-1-2<br><br>2B-1<br>2C-1-6<br>2D-1 | ECF 342 (Brand's Response)<br>ECF 342-1 (Sun Biz Public Records)<br>ECF 342-2 (Fl. Bar Cert)<br>Rule 83, Ok.N.D.C<br>Redacted Tax Payor Info |
| Pictoria Studios USA  1-6 | | ECF 340 (Response to Mrs. Blanchard's Motion for Protective Order (ECF 338) |
| Pictoria Studios USA | 1A-1-11 | Interrogatories served on Mrs. Blanchard on September 16, 2025 |
| Pictoria Studios USA | 1B-1-8 | September 16, 2025 RFP to Mrs. Blanchard |
| Pictoria Studios USA  2-1 – 2-2 | | ECF 346 Request for Hearing Compelling Answers/Requests to Discovery |
| Pictoria Studios USA | 2-A-1-2<br>2-B-1-10<br><br>2-C-1-8 | ECF 346-1 (N. Service)<br>ECF 346-2 (Roggs)<br><br>ECF 346-3 (RFP) |
| Taktik and Pictoria | 3-1-9 | ECF 289 (Resp. to Mrs. Blanchard's ECF 284 MPO) |
| Taktik and Pictoria | 4-1-2 | ECF 347 (Req for Hearing as to ECF 284 & 289) |

| | | |
|---|---|---|
| Taktik and Pictoria | 5-1-9 | ECF 289 in resp. to Mrs. Blanchard's ECF 279 MPO re Deposition |
| Taktik/Pictoria/Brand | 6-1-14 | ECF 388 (Resp to Mrs. Blanchards ECF 384) |

RESPECTFULLY SUBMITTED ON THIS 22nd day of January, 2026.


/s/ *Craig A. Brand, Esq.*

By: _____

    Craig Alan Brand, Esq.
    FBN: 896111
    Tel. (305) 878-1477
    6462 S. Jamaica Circle
    Englewood, Colorado 80111

    **On behalf of and for:**
    PICTORIA STUDIOS USA, INC. (Claim No. 14)


### <u>CERTIFICATE OF SERVICE</u>

    I hereby certify that a true and correct copy of this foregoing Request for Hearing was filed

with the Clerk of Court on this 22nd day of January, 2026. In addition, a copy was mailed by United

States first class mail to the following recipient(s):

        Cynthia Diane Blanchard, pro se
        414 SE Washington Blvd. Ste. 205
        Bartlesville, OK 74006
        310-435-5707


/s/ *Craig A. Brand, Esq.*

By: _____

   Craig Alan Brand, Esq.
   FBN: 896111
   Tel. (305) 878-1477
   6462 S. Jamaica Circle
   Englewood, Colorado 80111

**On behalf of and for:**
PICTORIA STUDIOS USA, INC. (Claim No. 14)

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF OKLAHOMA**

FILED

2025 OCT 20  PM 1:59

In re:
**GREEN COPPER HOLDINGS, LLC**
**COPPER TREE, INC.**
**INN AT PRICE TOWER, INC.**
Debtors.

Case No. 25-10088-T (Substantively Consolidated)
Chapter 7

## MOTION TO REVOKE PRO HAC VICE ADMISSION OF CRAIG BRAND

Creditor Cynthia Diane Blanchard, appearing pro se in her individual capacity ("Movant"),

respectfully moves this Court to revoke the pro hac vice admission of attorney Craig Brand for

repeated and continuing violations of the local counsel and court-authorization requirements of

LCvR 83.3(a) and (b) of the United States District Court for the Northern District of Oklahoma,

as incorporated by Local Bankruptcy Rule 9010-1(a), and for other misconduct inconsistent with

the standards governing attorneys admitted pro hac vice.

Mr. Brand has never associated local counsel and has repeatedly filed pleadings, objections, and

motions—including a procedurally improper sanctions motion—without required local counsel

signatures or obtaining leave of Court to act on behalf of his clients. Mr. Brand has further listed

his client's residential/business address as his own "Florida office" on his application. At no

point has he sought or received court authorization to file objections against other creditors, to

move for sanctions, or to otherwise act as lead counsel in this matter, despite these filings

spanning several months.

These violations constitute good cause for immediate revocation under LCvR 83.3(b), which expressly authorizes revocation "at any time for good cause without the necessity of a hearing."

## I. FACTUAL BACKGROUND

On July 21, 2025, Mr. Brand filed a Motion for Admission Pro Hac Vice (Doc. 172), seeking permission to appear in this case (Exhibit A). His application did not identify or associate any local counsel as required by LCvR 83.3(a) and (b). The application listed 11222 Oakshore Lane, Clermont, Florida 34711 as Mr. Brand's "Florida office". This is not a law office of Mr. Brand. It is the personal and business address of his client, TakTik Enterprises, Inc., as shown on a W-9 signed by Dale D. Takio, TakTik's CEO. A copy of this W-9 is attached (Exhibit B). This is a documented fact, not "upon information and belief."

Since admission, Mr. Brand has consistently filed pleadings and appeared before this Court without associating local counsel. Notably, on October 14, 2025, he filed a "Sanctions" Motion directed at two creditors, including Movant, solely under his signature (Docket No. 340). No local counsel has entered an appearance on behalf of Mr. Brand or his clients, no filings have been co-signed by local counsel, and no local counsel has appeared with him in Court. At no time has Mr. Brand sought or obtained leave of Court to file pleadings, motions, or objections on behalf of his clients, or to otherwise act beyond the scope of his limited pro hac vice admission.

These violations are clear from the face of the docket and his filings.

## II. LEGAL STANDARD

### A. Local Rules

LCvR 83.3(a) requires that any attorney who is not a resident of Oklahoma and does not maintain an office in the state must associate with local counsel who maintains an office in Oklahoma and is admitted to practice before this Court.

LCvR 83.3(b) provides:

"Admission pro hac vice may be revoked by the Court at any time for good cause without the necessity of a hearing."

BLR 9010-1(a) provides:

"All attorneys appearing before this Court shall comply with the local rules of the United States District Court for the Northern District of Oklahoma, as supplemented by these Local Bankruptcy Rules."

Taken together, these provisions make the association of local counsel a mandatory condition of pro hac vice admission and expressly authorize revocation for noncompliance.  In addition, pro hac vice admission does not authorize an attorney to file objections, sanctions motions, or other pleadings on behalf of clients without either associating local counsel or obtaining leave of Court. See LCvR 83.3(a)–(b); BLR 9010-1(a).

**B. Federal Authority**

Federal courts, including bankruptcy courts, have broad discretion to revoke pro hac vice status for violations of local rules or misconduct. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43–46 (1991); Fed. R. Bankr. P. 9010(a). The Tenth Circuit has confirmed that courts have "wide

latitude" to revoke such admission when attorney conduct undermines the administration of justice. *United States v. Collins*, 920 F.2d 619, 627 (10th Cir. 1990).

Courts consistently enforce local counsel rules. In *Ryan v. Astra Tech, Inc.*, 772 F.3d 50, 63 (1st Cir. 2014), the First Circuit affirmed revocation where an attorney's application omitted required local counsel information. In *In re Bundy*, 840 F.3d 1034, 1041–42 (9th Cir. 2016), the Ninth Circuit upheld revocation where local counsel requirements were not met and the application was misleading. *Lasar v. Ford Motor Co.*, 399 F.3d 1101 (9th Cir. 2005) upheld revocation for violations of court orders and litigation misconduct.

Courts place particular emphasis on compliance with local counsel requirements, because local counsel acts as the court's guarantor of compliance with local practice. Failure to meet these requirements defeats the basis on which pro hac vice admission is granted and constitutes independent good cause for revocation.

## III. ARGUMENT

### A. Mr. Brand's Violations of Local Counsel Rules Are Ongoing and Undisputed

Mr. Brand has violated LCvR 83.3(a) from the date of his admission by failing to associate local counsel. He has compounded these violations by repeatedly filing pleadings without the required local counsel signature—including the October 14, 2025 "Sanctions" motion—and by appearing at hearings without local counsel present.

He also misstated his business address by listing his client's Florida residence as his "Florida office." See Ex. B. This is a straightforward misstatement on his application and further underscores the absence of any legitimate local counsel arrangement.

These are not technical defects. The local counsel rule is a fundamental condition of pro hac vice admission, designed to ensure accountability to the Court and compliance with local practice. Mr. Brand's disregard for this rule undermines the integrity of these proceedings and places unnecessary burdens on both the Court and other parties.

Under LCvR 83.3(b), good cause exists to revoke his admission, and no evidentiary hearing is required. The record is clear.

**B. Additional Misconduct Supports Revocation**

In addition to his local counsel violations and false address representation, Mr. Brand has engaged in abusive and duplicative litigation conduct, including filing a procedurally improper sanctions motion against the movant creditor and submitting duplicative objections that mirror the Trustee's filings. The "sanctions" motion contained multiple misstatements of fact and unfounded accusations directed at a creditor in good standing, serving no legitimate purpose other than harassment. These actions, undertaken without leave of court or the association of local counsel, exemplify the very misconduct the local rules are designed to prevent.

This lack of authorization further underscores his improper participation in these proceedings. This type of conduct warranted revocation in *Collins* (10th Cir.), *Lasar*, and *Ryan*, and it further supports revocation here.

## IV. RELIEF REQUESTED

For the reasons set forth above, Movant respectfully requests that this Court:

1. Revoke Craig Brand's pro hac vice admission pursuant to LCvR 83.3(b), BLR 9010-1(a), and the Court's inherent authority;

2. Direct his clients to retain properly admitted local counsel for all future filings and appearances; and

3. Grant such other and further relief as the Court deems just and proper.

Movant rests on the docket and this filing, and respectfully submits that the Court may revoke pro hac vice status on the papers pursuant to LCvR 83.3(b), which expressly authorizes revocation without the necessity of a hearing, and Movant does not consent to or request oral argument.

**Date:  October 20, 2025**

Respectfully submitted,

*Cynthia Diane Blanchard*

Cynthia Diane Blanchard, Pro Se Movant
414 SE Washington Blvd. Ste. 205.
Bartlesville Ok 74006
310-435-5707

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF OKLAHOMA

IN RE:
**GREEN COPPER HOLDINGS, LLC** )      **CASE NO. 25-10088-T**
**EIN # xx-xxx9708** )      **Chapter 7**
     )
**COPPER TREE, INC.** )      **Substantively Consolidated**
**EIN # xx-xxx6608** )
     )
**THE INN AT PRICE TOWER INC.** )
         **Debtors.** )
_____/

## ATTORNEY CRAIG BRAND'S RESPONSE IN OPPOSITION
## TO CYNTHIA BLANCHARD'S MOTION TO REVOCATION (ECF 341)

COMES NOW **ATTORNEY CRAIG BRAND** and hereby files this Response In Opposition to Cynthia Blanchard's Motion for Revocation of Pro Hac Vice admission, ECF 341, and as grounds thereof states as follows:

I.    **CYNTHIA BLANCHARD'S MOTION.** Mrs. Blanchard seeks revocation of Mr. Brand's Admission to this Court citing as legal authority LCvR 83.3(a) and (b) of the U.S.D.C for the Northern District of Oklahoma, and attempting to incorporate this District Court Rule with Local Bankruptcy Rule 9010-1(a). Mrs. Blanchard's Revocation Motion misapplies rules, relies on speculative claims, and constitutes bad faith harassment meant as an attempt to circumvent Mr. Brand's client's discovery, the taking of her deposition and the possible adverse outcomes of her testimony and production of documents, as well as having to respond to Mr. Brand's clients' filings **ECF 340** (Response To ECF 338-Motion For Protective Order Re Propounded Discovery & Prayer For Sanctions) and **ECF 289** (Claimant Taktik Enterprises, Inc. Response/Objection To Motion For Protective Order ECF 283 & 284). A fair reading of Mrs. Blanchard's Motions and Responses are nothing short of an attack on the Undersigned Attorney, providing absolutely no

objective basis or support for any of her alleged "terms of art", nor do they address the fundamental issues which is the undersigned's clients ability to engage in the discovery process and her obligation to comply, as per the Local Rules, this Court's Order (ECF 278) and the FRCP.

II.    **LBR VS. LCvR SUPERSESSION PER LBR 1001-1 AND 9010-1.**

1.      Mrs. Blanchard has mis-read the Local Rules, or upon belief has not read but is writing and signing from information provided by her personal attorney, also a Claimant herein, Mr. Paul Aubert, Esq. (Claim No. 2).  ECF 341, wrongfully attempts to commingle District Court Rules into the Local Bankruptcy Rules.  LBR 9010-1 or LCvR 83.3(b) are not authority for this Honorable Court and are inapplicable to Mr. Brand's admission.

2.      Mrs. Blanchard attempts to deny Mr. Brand's clients their claim rights, objection rights and discovery rights, as well as now within ECF 341committed an egregious FRBP 9037 violation, as discussed herein below.

3.      In fact, given the facts demonstrated and argument raised by Mr. Brand's clients' in ECF 289 and 340, her willful and wanton refusal to participate in the answering of discovery, having her deposition taken, and providing any documents in response to Requests for Production, in addition to Mrs. Blanchard's Motion, ECF 341, and her FRBP 9037 violation calls into question her fitness pro se.

III.    **CLEAR READING OF THE RELEVANT RULES:**

1.    <u>USDC Northern District Court of Oklahoma</u>:

   a.    In spite of Mrs. Blanchard's cited authority, <u>from which she basis her entire motion on</u>, LCvR 83.3(a) and (b) of the U.S.D.C for the Northern District of Oklahoma <u>no</u>

longer exists. This Rule has been replaced within the USDC Northern District Court of Oklahoma and now can be found at: LGnR4-2 Admissions.

b. LGnR4-2 and LGnR4-3 Association of Local Counsel, are contained within the April 21, 2023 Local Rules governing the USDC Northern **District Court** of Oklahoma. [Emphasis Added]. This District Court rule has not been adopted by the Local Rules governing this Honorable Court.

c. The case law that Mrs. Blanchard also attempts to rely upon are distinguished below and are all District Court cases having no binding effect under the Local Rules.

2. <u>UNITED STATES BANKRUPTCY COURT NORTHERN DISTRICT OF OKLAHOMA, Updated March 21, 2025</u>, ("Local Rules"):

a. <u>The Local Rules governing the practice of this Bankruptcy Court</u> have a policy and practice procedure for the admission and allowances of Pro Hac Vice Admitted lawyers. This provision can be found at: 9010-1(B), page 34. This Rule states:

**B. Permission to Appear Pro Hac Vice.** An attorney who has been admitted to practice and remains in good standing before any other court of the United States, or before the highest court of any other State, and who is familiar with these Local Rules may practice before this Court by permission of and on such conditions as may be set by the Court. Permission to practice before the Court may be requested by filing a written motion in the main bankruptcy case (or by making an oral request during any proceeding before the Court, followed by a written motion) and paying the appropriate admission fee to the Clerk of the United States District Court for the Northern District of Oklahoma, 333 W. Fourth Street, Room 411, Tulsa, Oklahoma 74103. **An attorney so admitted shall file pleadings and documents electronically with the Court in compliance with these Local Rules and the ECF Administrative Guide**. Admission in a particular bankruptcy case shall also serve as admission in any and all adversary proceedings filed in the bankruptcy case. [Emphasis Added].

b. **RULE 1001-1. SCOPE OF RULES AND FORMS; DEFINITIONS.** Rule 1001-1, states in part:

c. **H. Definitions.**

1. Bankruptcy Court Clerk. References to the "Clerk" in these rules shall mean the Court Clerk of the United States Bankruptcy Court for the Northern District of Oklahoma.

2. Bankruptcy Code. References to the "Code" in these rules shall mean the United States Bankruptcy Code.

3. Bankruptcy Rules. References to "Bankruptcy Rules" in these rules shall mean the Federal Rules of Bankruptcy Procedure.

4. Local Rules. References to "Local Rules" in these rules shall mean these Local Rules of the United States Bankruptcy Court for the Northern District of Oklahoma.

5. District Court. References to "District Court" in these rules shall mean the United States District Court for the Northern District of Oklahoma.

6. District Court Local Rules. References to "District Court Local Rules" in these rules shall mean the Local Civil Rules of the United States District Court for the Northern District of Oklahoma.

- [Emphasis by Highlight Added].

3. **DISTINCTION BETWEEN DISTRICT COURT AND BANKRUPTCY COURT ARE SET FORTH**.

A. 9010-1(B), of the United States Bankruptcy Court Northern District Of Oklahoma, states that upon the admission of an attorney seeking to appear and granted the appearance Pro Hac Vice, that they are to be obligated to follow the "Local Rules and the ECF Administrative Guide". (See, Rule 1001-1, 4. Local Rules. References to "Local Rules" in these rules shall mean these Local Rules of the United States Bankruptcy Court for the Northern District of Oklahoma.)

B. RULE 1001-1, of the United States Bankruptcy Court Northern District Of Oklahoma, Updated March 21, 2025, H (3-6), demonstrates a clear distinction between the governing rules in the Northern District Court vs. the Bankruptcy Court of the Northern District of Oklahoma.

C. RULE 1001-1, of the United States Bankruptcy Court Northern District of Oklahoma, Updated March 21, 2025, H(4), clearly illustrates that the referenced term "Local Rules" as used in 9010-1(B), shall mean the rules of the United States Bankruptcy Court Northern District of Oklahoma, Updated March 21, 2025.

D.     A PDF word search of the entire Local Rules does not mention "Local Counsel" once.

E.     <u>The Local Rules have NO Local Counsel requirement</u>.   The absence of local counsel from the Local Rules was noticed and relied upon by Mr. Brand while engaging within the Pro Hac Vice process.  Mr. Brand had read the Local Rules prior to the filing of his application process for Pro Hac Vice admission.  This absence of the mention of Local Counsel was  furthered by:

    i.   There is no requirement for local counsel to be part of or perform the submission of an applicant's application nor the attestation as to the applicants standing and practice ability as readily held in District Courts. During the submission process and acceptance within the ECF system, Mr. Brand had a conversation with the Clerk of Court who, did not give legal advice, but confirmed that Mr. Brand did not first need to be associated with any other attorney and that his submission of a Petition was stand-alone, meaning that it would not have to be connected with local counsel or submitted by them.  Mr. Brand was able to and told to do all the submissions himself which he did.

    ii.  Page 36 of the Local Rules, "Signatures", has no commentary or application that anyone other than the appearing attorney sign.  Unlike the District Court which states that a local counsel must be the first signature on all pleadings; and,

    iii. The Local Rules do not have an Appearance Requirement for Local Counsel as written into many District Court Local Rules.

**F.  The USDC Northern District Court of Oklahoma Local Rules specifically state**:

1. **LGnR1-2 Rules of Procedure.**

    **(a)** The rules of procedure in any proceeding in this Court shall be as prescribed by the laws of the United States, the rules of the Supreme Court of the United States, the Federal Rules of Civil Procedure, the Federal Rules of Criminal Procedure, any applicable rules of the United States Court of Appeals for the Tenth Circuit, and these local rules.

    **(b)** If there is no applicable rule of procedure, a judge may adopt rules of procedure governing any proceeding before that judge. Information regarding each judge's Individual Judicial Practices is available on the Court's website.

    **(c)** A judge has discretion in any civil or criminal case to waive, supplement, or modify any requirement of these local rules when the administration of justice requires.

    **(d) These local rules do not apply in any case or proceeding which is pending in the Bankruptcy Court for the Northern District of Oklahoma.** [Emphasis added].

    **(e) These local general, civil, and criminal rules shall be known, respectively, as:**

    **(1) the Local General Rules of the United States District Court for the Northern District of Oklahoma (cited as "LGnR-");**

    **(2) the Local Civil Rules of the United States District Court for the Northern District of Oklahoma (cited as "LCvR-"); and**

    **(3) the Local Criminal Rules of the United States District Court for the Northern District of Oklahoma (cited as "LCrR-").**
    **[Emphasis added].**

2.   At all times material hereto did Mr. Brand read and rely upon the plain meaning of the  District Court Rules of the Northern District of Oklahoma prior to his submission of his application for Pro Hac Vice admission.

4.   **BRAND'S APPLICATION FOR PRO HAC ADMISSION IS COMPLIANT**.

A.   Contrary to Mrs. Blanchard's assertions, there is nothing incorrect about Brand's Motion/Petition which Mrs. Blanchard attached to her motion at ECF 341-3, for Pro Hac Admission.

B.     The Petition ECF 341-3, paragraph 4, correctly states that the undersigned is familiar with the Local Rules as required by 9010-1(B), page 34.

C.     The Petition ECF 341-3, paragraph 5, correctly states that the Petition is accompanied with a required payment.

D.     The Petition ECF 341-3, paragraphs 6-7, are in conformity with the ECF requirements.

5.     **<u>INTRODUCTION AND RELATED FACTS</u>**:

A.     The Court granted Brand's admission [Docket No. 182] on July 21, 2025, extending to all proceedings per LBR 9010-1(B).  Important and reading ECF 182, it states as follows with no conditions, pre-conditions or referrals to any other Local Rules which need to be followed.

**Docket Text:**
ORDER GRANTING MOTION TO APPEAR PRO HAC VICE. This matter comes before the Court for consideration of the Motion for Craig Alan Brand to appear Pro Hac Vice as attorney for Craig A. Brand, Craig A. Brand and Adriana Soto, JTRWOS, Dale Takio a/k/a Dale Douglas Takio and Taktik Enterprises, Mike Moran a/k/a Michael J. Moran and Pictoria Studio USA Inc., Mystic Enterprises, Inc., and Erinne Moran. IT IS HEREBY ORDERED that Craig Alan Brand is admitted pro hac vice as attorney for Craig A. Brand, Craig A. Brand and Adriana Soto, JTRWOS, Dale Takio a/k/a Dale Douglas Takio and Taktik Enterprises, Mike Moran a/k/a Michael J. Moran and Pictoria Studio USA Inc, Mystic Enterprises, Inc., and Erinne Moran in this case. BY THE COURT: Chief Judge Paul R. Thomas. (text-only order) *This entry is the Official Order of the Court. No document is attached.* (related document(s): [172] Motion to Appear Pro Hac Vice) (CR)

B.     Upon information and belief, at all times material hereto, all attorneys, Cynthia Blanchard (herself), the Court and the Trustee were aware that Mr. Brand did not have local counsel and was representing the best interests of his clients by himself.

C.     At all times material hereto, the docket reflects that Mr. Brand solely signed the pleadings on behalf of his clients and that no other attorney sponsored his admission to this Honorable Court.

D.     At all times material hereto, the Court has properly recognized Mr. Brand on behalf of his clients.

E.    As stated in the Trustee's September 29, 2025 Motion, ECF 324, the undersigned helped the Trustee come to a far-reaching resolution in this case, including but not limited to the undersigned's clients, representing:

a. the proposed settlement will result in a reduction of claims against this estate totaling approximately $960,000;

b. the proposed settlement will avoid six months to a year of claims litigation and likely more time related to any appeals;

c. the proposed settlement will avoid administrative costs incurred in resolving the Pending Matters of approximately $100,000 or more;

d. without admitting the merits of any of the pending claims, there are complex issues related to all of the Pending Matters;

e. witness testimony relative to all of the Pending Matters is conflicting, and most witnesses for or against the subject claims also assert competing claims against the estate; and

f. there are arguably controlling written documents that are subject to conflicting interpretations.

4. Settlements are favored in bankruptcy.

*[See, paragraphs 3 & 4, of **ECF 324**].

F.    Mr. Brand has worked long and hard on behalf of his clients and in helping move this case forward. ECF 324 is proof of that.  The Court Granted the Trustee's Motion to Stay acknowledging relevant recitations of ECF 324 in the Court's Order found at ECF 331.

G.      The prejudice that Mrs. Blanchard is seeking is as far reaching as ECF 324 involves, effecting the case in its entirety as well as to the Undersigned's clients who cannot easily afford a different attorney of their choosing, and this case is now far along.

H.      As to Mr. Brand's clients, Mr. Brand is the attorney most knowledgeable and best suited for this case.  Mr. Brand has been living this case with his clients since the inception and formation of the Debtor entities, in fact before, when a plan to create these entities and to purchase the Price Tower was being born. Mr. Brand knows the property, first hand, knows the issues and documents associated with this case, knows the Blanchards' since approximately 2021, knows the witnesses, has obtained and filed supporting third party affidavits against Mrs. Blanchard in this case, has investigated the issues, and has access and knowledge that can cut through and sort out much of the noise and irrelevance that most lawyers need extensive time to sift and learn in representing clients in such matters, especially involving potentially multiple forums.

i.      Mrs. Blanchard's Revocation Motion incorrectly alleges LCvR 83.3 violations (no local counsel), alleges a false Florida address, illegitimate W-9, and "abusive/duplicative" conduct—**but ignores** LBR 1001-1.A.1's supersession of conflicting rules making LBR 9010-1 controlling without the need of retaining additional local counsel. It should be noted that at no time does Mrs. Blanchard support and make specific reference to any abusive conduct or prejudicial duplicity.  Mrs. Blanchard has generally referenced, no specifics, in her Motions for Protective Order that the act of discovery are "abusive".  The Local Rules provide for as this Court in ECF 278, Ordered.

J.      Further disturbing is the fact that Mrs. Blanchard, who has no idea about, never been to, never seen, Mr. Brand's Florida office or where it is situated or sits as a free standing entity, attempts to improperly make this address an issue.  Not that it is relevant, but Mr. Brand's

Florida office conforms with Florida Bar Rules and is properly registered with the State of Florida. (<u>See</u>, Exhibits 1 (Secretary of State registration) and 2 (Florida Bar Certification and address display), attached hereto).

K.    Mrs. Blanchard furthermore filed and made public ECF 341-4, an Unredacted W9 belonging to Taktik Enterprises, Inc., an innocent party in Mrs. Blanchard's Motion against the undersigned, in complete violation of FRBP 9037 and the Local Rules for the Northern District Court of Oklahoma, REDACTION – PRIVACY 5005-1(F). (<u>See</u> Exhibit 3, attached hereto however, Mr. Brand has redacted this document not to repeat the same violation).

L.    <u>The Undersigned Respectfully Moves to Strike from Mrs. Blanchard's Motion and the docket and/or Seal Mrs. Blanchard's improper filing ECF 341-4 as it is a tax filing belonging to Taktik Enterprises, that she came into possession of under Confidentiality, and failed or refused to redact personal and confidential information contained on an IRS tax filing</u>. See, **In re Whitson, 572 B.R. 836 (Bankr. N.D. Ga. 2017)**: (Court seals unredacted pro se docs but warns of sanctions for FRBP 9037 non-compliance).

1.    Contained in **APPENDIX A CM/ECF ADMINISTRATIVE GUIDE OF POLICIES AND PROCEDURES, page 6, X. REDACTION:**

> **Tax Documents.** A CM/ECF User filing tax returns that are required to be filed pursuant to a request under 11 U.S.C. § 521(f) shall redact all personal data identifiers before filing the tax return. To file a tax return as a secure event (i.e., a document that cannot be viewed by the general public) as required by Local Rule 4002-1(C), the CM/ECF User shall choose "Miscellaneous/Other" on the Bankruptcy Events screen and choose "Tax Documents" as the document to be filed. The ECF System will automatically limit access to "Tax Documents" to the filer and the Court.

2.    Mrs. Blanchard is clearly in direct violation of the District and Bankruptcy Court's redaction rules evidencing a continued violation and ignorance of the rules and laws of Federal practice.

6.    **MRS. BLANCHARD SHARES THE SAME DUTIES AND RESPONSIBILITIES TO KNOW THE LOCAL RULES AS MR. BRAND**.

A.    Mrs. Blanchard' acts and violations should be unexcused by pro se status. Pro se litigants must know and follow court rules, including FRBP 9037 redaction and proper application of local rules like LBR 9010-1 (no local counsel required). <u>McNeil v. United States</u>, 508 U.S. 106, 113 (1993) (pro se "must comply with relevant rules of procedural and substantive law"). Her unredacted W-9 exposes sensitive data, violating FRBP 9037(a); she should have known this from the rule's plain text and court guides. *In re Smith*, No. 15-00012, 2015 Bankr. LEXIS 456, at *5 (Bankr. D. Idaho Feb. 10, 2015) (sanctions for unredacted filings, no pro se exception); In re Smith, No. 15-00012, 2015 Bankr. LEXIS 456 (Bankr. D. Idaho Feb. 10, 2015): Sanctions for unredacted filings under FRBP 9037; pro se must comply with privacy rules.

B.    Similarly, misapplying LCvR 83.3 or not even knowing that this rule had been changed, (ignoring LBR 9010-1) shows failure to research—accessible via the court's website. <u>Malautea v. Suzuki Motor Co</u>., 987 F.2d 1536, 1542 (11th Cir. 1993) (pro se bound by rules; ignorance no excuse).

C.    Court's have consistently upheld a pro se litigant's duty to be held accountable as an attorney appearing before the Court. *See*: <u>McNeil v. United States, 508 U.S. 106 (1993)</u>: Supreme Court: "We have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel." (Applies to redaction/local rules duty.); <u>Faretta v. California, 422 U.S. 806 (1975)</u>: Pro se assume full responsibility for compliance; no special treatment for rules ignorance; <u>Malautea v. Suzuki Motor</u>

<u>Co.</u>, 987 F.2d 1536 (11th Cir. 1993): Pro se bound by procedural rules; failure to comply (e.g., discovery) leads to sanctions—no excuse.

      D.    Mrs. Blanchard's Motion concerns with Mr. Brand's Florida Office has no relevancy.

    i.   Mr. Brand produced a Certificate of Good Standing from the Florida Bar along with his Application for Pro Hac Vice Admission.

    ii.   Mr. Brand's registered address in this Court and within the ECF system is his Colorado office at: 6462 S. Jamaica Circle, Englewood, Colorado 80111. The only litigant, claimant or attorney in this case who incorrectly sends mail to the Florida office is Mrs. Blanchard. Mr. Brand's filings and registered address is Colorado after he obtained the ECF admission to this Court and the Clerk corrected by notification to Mr. Brand to use the address used to register ECF privileges, i.e., Colorado. Mrs. Blanchard's entire argument as to Florida is non-sensical and irrelevant.

    iii.   Attached hereto is the Secretary of State, Business Search Registration for The Brand Law Firm, P.A., in Florida.

    iv.   Attached hereto is an updated Certificate of Good Standing from the Florida Bar. Notice the address on file with the Florida Bar.

    v.   At all times material hereto, Mr. Brand's Florida office is following Forida Bar rules.

7.    **MRS. BLANCHARD'S RELIANCE FAILS**.

a.    LBR 9010-1: "An attorney... familiar with these Local Rules may practice before this Court by permission... Admission in a particular bankruptcy case shall also serve as admission in any and all adversary proceedings..."

b.    The Local Rules, as established, <u>Do Not</u> require local counsel as represented by Mrs. Blanchard.   LBR 9010-1(B) is distinguishable from District LCvR 83.3 (now LGnR4-2). LBR 1001-1.A.1 supersedes conflicts: "These rules govern... and shall supersede all local rules..."

> ***RULE 1001-1. SCOPE OF RULES AND FORMS; DEFINITIONS***
> **A. Application**.
> 1. These rules govern all cases and proceedings pending before this Court on
> the effective date specified above and thereafter and shall supersede all local rules and
> standing orders pertaining to rules of procedure previously adopted and entered by the
> Court, unless such standing order is specifically incorporated herein.
> 2. These rules, the CM/ECF Administrative Guide of Policies and Procedures,
> and the Standing Orders, General Orders and Miscellaneous Orders entered by this Court
> shall govern all cases and proceedings before this Court.

c.    Mrs. Blanchard's District Court district case law reliance also fails.  For instance, in  <u>Chambers v. NASCO</u>, 501 U.S. 32.  In <u>Chambers</u>, <u>supra</u>,  the court noted that the alleged sanctionable conduct was that Chambers had (1) attempted to deprive the court of jurisdiction by acts of fraud, nearly all of which were performed outside the confines of the court, (2) filed false and frivolous pleadings, and (3) "attempted, by other tactics of delay, oppression, harassment and massive expense to reduce [NASCO] to exhausted compliance." <u>Supra</u>.

d.    In, <u>Ryan v. Astra Tech</u>, 772 F.3d 50, the district court granted discovery sanctions, concluding that Ryan did attempt to communicate surreptitiously with his client, that Ryan manufactured false evidence, and that Ryan lied to the court. The court fined Ryan and asked him to explain why his pro hac vice status for the plaintiff should not be revoked due to major breaches of the Massachusetts Rules of Professional Conduct;

e.    In, <u>Lasar v. Ford</u>, 399 F.3d 1101, the district court determined that Sutter deliberately violated two pretrial in limine orders.

f.    In, <u>Johnson v. Trueblood</u>, 629 F.2d 287 (3d Cir. 1980), the crucial question was what procedures should be used where a district court seeks to revoke an attorney's pro hac vice status. "As we have noted in the past, we have inherent supervisory power over the district courts to regulate certain procedural matters of significance." E. g., <u>United States v. Schiavo</u>, 504 F.2d 1 & n.7 (3d Cir.) (in banc), cert. denied, 419 U.S. 1096, 95 S. Ct. 690, 42 L. Ed. 2d 688 (1974). "Here, we believe that some type of notice and an opportunity to respond are necessary when a district court seeks to revoke an attorney's pro hac vice status." *Supra*, 302.

"Such procedures are desirable for two reasons. First, although at one time pro hac vice status was considered to be granted and held at the grace of the court, we believe that in this era of interstate practice of law, such a notion cannot be applied too literally or strictly. Second, some sort of procedural requirement serves a number of salutary purposes. It ensures that the attorney's reputation and livelihood are not unnecessarily damaged, protects the client's interest, and promotes more of an appearance of regularity in the court's processes." *Supra*, 302.

8.    **<u>ESTOPPEL</u>**.

a.    At all times material hereto, Mrs. Blanchard knew that the undersigned was a licensed and practicing attorney outside the state of Oklahoma. Mrs. Blanchard has known Mr. Brand since approximately 2021.  Mr. Brand's credentials and business addresses were always known to her.

b.    <u>Mrs. Blanchard did not object to Mr. Brand's application for Pro Hac Vice admission knowing that it was not tied with a sponsoring local attorney</u>.

c. Mrs. Blanchard has been the subject of direct challenges by Mr. Brand's clients, i.e., Taktik Enterprises, Inc and Pictoria Studios (herein referred to as "Clients"). Mr. Brand's Clients have filed objections to Mrs. Blanchard's claims alleging criminality and/or wrongful conduct. Mrs. Blanchard knows that Mr. Brand and his Clients sought to file a derivative lawsuit against her and the Debtors prior to this bankruptcy and served her with Evidence Preservation Notices amongst other writings. Mr. Brand's Clients have propounded written discovery onto Mrs. Blanchard who refuses to answer and respond and the time to do so has long expired. Mrs. Blanchard has filed two Motions for Protective Orders that are fully briefed. One such motion is to the taking of her deposition (ECF 279) and the other as to the propounded discovery, i.e., Interrogatories and Requests For Production (ECF 298). The Court in ECF 280 sui sponte Denied Mrs. Blanchard's first Motion for Protective Order without prejudice. Mrs. Blanchard's discovery answers and responses are long overdue and no objections were served. It is believed that Mrs. Blanchard is doing everything possible to attempt at avoiding the taking of her deposition and the answering of specific interrogatories and the production of documentation requested. It is believed that despite Mrs. Blanchard knowing that Mr. Brand, Esq., was not associated with local counsel, Mrs. Blanchard has been sending each of her filings to Mr. Brand's Florida office despite knowing that the Clerk of Court registered to this case Mr. Brand's Colorado address. Mrs. Blanchard's motives for her recent filing, the subject hereof, is highly suspect and given all that has transpired since July 21, 2025, her Motion is incredibly prejudicial to the Clients and defamatory to Mr. Brand. Wherefore, given the untimeliness of her motion and the fact that she consented, by not objecting to Mr. Brand's admission, this Motion ECF 341 should be time barred and denied based on Estoppel.

9.    **REASONABLE RELIANCE AND GOOD-FAITH**.

A.    For all the reasons stated herein above, the undersigned counsel reasonably believes that he has committed no wrong and that Mrs. Blanchard's Motion incorrectly is attempting to commingle two rules from different judicial systems that cannot be commingled.  Had the undersigned had any knowledge that local counsel would have been needed or retained, it would have been done. As stated above, there has been a lot of information and acts that inure to the undersigned's belief and confirmation that the Local Rules do not require local counsel to sponsor a Pro Hac Vice admitted attorney in this Court.

B.    No prejudice has occurred by the undersigned's representation.  In fact, it is argued just the opposite.  See, Trustee's Motion to Stay Pending Settlement Approval, ECF 324.

**REQUEST FOR HEARING SHOULD THE COURT DETERMINE A NEED:**

Craig A. Brand, ESQ. hereby requests a hearing on this matter at least 24 day's out or at a convenient time for the Court.

WHEREFORE, the Movant hereby prays that this Honorable Court:

1.     Deny ECF 341 in its entirety sui sponte or by way of holding a hearing.

2.    Rule on the issue involving Mrs. Blanchard's filing of a confidential and unredacted IRS document belonging to Taktik Enterprises, Inc.

3.    Find that Mrs. Blanchard is Estopped from the bringing of this Motion

4.    Strike the unredacted filing from Mrs. Blanchard's Motion, not to be considered or viewed and sealed from public view.  ECF 341-4.

5.    Access, Mrs. Blanchard's conduct taken in this case. And,

6.    Any and all other relief deemed just and proper.

RESPECTFULLY SUBMITTED ON THIS 24th day of October, 2025.

/s/ *Craig A. Brand, Esq.*

By: _____

    Craig Alan Brand, Esq.
    FBN: 896111
    Tel. (305) 878-1477
    6462 S. Jamaica Circle
    Englewood, Colorado 80111

**On behalf of and for:**
PICTORIA STUDIOS USA, INC. (Claim No. 14)
TAKTIK ENTERPRISES, INC. (Claim No. 4)

## <u>CERTIFICATE OF SERVICE</u>

    I hereby certify that a true and correct copy of this foregoing Response to ECF 338 was

filed with the Clerk of Court on this 24th day of October, 2025, as well as mailed by US first class

mail to:

        Cynthia Diane Blanchard, pro se
        414 SE Washington Blvd. Ste. 205
        Bartlesville, OK 74006
        310-435-5707

/s/ *Craig A. Brand, Esq.*

By: _____

    Craig Alan Brand, Esq.
    FBN: 896111
    Tel. (305) 878-1477
    6462 S. Jamaica Circle
    Englewood, Colorado 80111

**On behalf of and for:**
PICTORIA STUDIOS USA, INC. (Claim No. 14)
TAKTIK ENTERPRISES, INC. (Claim No. 4)



Department of State  /  Division of Corporations  /  Search Records  /  Search by Entity Name  /

# Detail by Entity Name

Florida Profit Corporation
THE BRAND LAW FIRM, P.A.

**Filing Information**

| | |
|---|---|
| **Document Number** | P13000015986 |
| **FEI/EIN Number** | 27-0342914 |
| **Date Filed** | 02/18/2013 |
| **Effective Date** | 02/11/2013 |
| **State** | FL |
| **Status** | ACTIVE |

**Principal Address**

11222 Oakshore Lane
SUITE 500
Clermont, FL 34711

Changed: 07/19/2020

**Mailing Address**

4650 Indian Creek Road
Loveland, CO 80538

Changed: 07/19/2020

**Registered Agent Name & Address**

Takio, Dale
11222 Oakshore Lane
Lake View Suite
Clermont, FL 34711

Name Changed: 01/31/2023

Address Changed: 07/19/2020

**Officer/Director Detail**

**Name & Address**

Title P

BRAND, CRAIG A
4650 Indian Creek Road
Loveland, CO 80538

**Annual Reports**

| Report Year | Filed Date |
|---|---|
| 2023 | 01/31/2023 |
| 2024 | 02/05/2024 |
| 2025 | 02/10/2025 |

**Document Images**

| | |
|---|---|
| 02/10/2025 -- ANNUAL REPORT | View image in PDF format |
| 02/05/2024 -- ANNUAL REPORT | View image in PDF format |
| 01/31/2023 -- ANNUAL REPORT | View image in PDF format |
| 03/04/2022 -- ANNUAL REPORT | View image in PDF format |
| 03/22/2021 -- ANNUAL REPORT | View image in PDF format |
| 07/19/2020 -- ANNUAL REPORT | View image in PDF format |
| 06/14/2019 -- ANNUAL REPORT | View image in PDF format |
| 03/25/2018 -- ANNUAL REPORT | View image in PDF format |
| 04/01/2017 -- ANNUAL REPORT | View image in PDF format |
| 03/08/2016 -- ANNUAL REPORT | View image in PDF format |
| 01/13/2015 -- ANNUAL REPORT | View image in PDF format |
| 01/12/2014 -- ANNUAL REPORT | View image in PDF format |
| 02/18/2013 -- Domestic Profit | View image in PDF format |

Brand_Ex_2A-2



# The Florida Bar

**651 East Jefferson Street**
**Tallahassee, FL 32399-2300**

**Joshua E. Doyle**
**Executive Director**

**850/561-5600**
**www.FLORIDABAR.org**

State of Florida          )

County of Leon          )

In Re:  0896111
Craig Alan Brand
The Brand Law Firm, P.A.
11122 Oakshore Ln
Clermont, FL 34711-5424

I CERTIFY THE FOLLOWING:

I am the custodian of membership records of The Florida Bar.

Membership records of The Florida Bar indicate that The Florida Bar member listed above was admitted to practice law in the state of Florida on **September 27, 1991**.

The Florida Bar member above is an active member in good standing of The Florida Bar who is eligible to practice law in the state of Florida.

Dated this  21st  day of **October, 2025**.



Cynthia B. Jackson, CFO
Administration Division
The Florida Bar

PG:R10
CTM-376380

# Rule 83 – Rules by District Courts/Judge's Directives

**LCvR83.1  Committee on Local Civil Rules.**

A Committee on Local Rules comprised of members of the bar of this Court and the Court Clerk or the Court Clerk's designee shall be appointed by the Court. Such Committee shall accept comments and recommendations regarding the local rules from any member of the bar of this Court or any other interested person.

**MOVED TO LGnR 7.**

**LCvR83.2  Attorneys.**

**(a)  Roll of Attorneys.** The bar of this Court shall consist of those attorneys admitted to practice before this Court who have taken the prescribed oath and submitted the required fee.

**(b)  Committee on Admissions and Grievances.** A Committee on Admissions and Grievances shall be appointed by the Court.

**(c)  Procedure for Admission.** Every applicant for admission shall submit the required fee and shall submit to the Court Clerk, on a form prescribed by the Court, a written application for admission, which shall be referred to the Committee on Admissions and Grievances for investigation into the applicant's qualifications and fitness to be admitted to the bar of this Court. The Committee shall report its recommendations in writing to the Court Clerk. Upon a favorable report of the Committee, the applicant may be admitted by any judge of this court or the court clerk. Admission ceremonies may be scheduled from time to time by the court.

**(d)  Eligibility.** Any member of the bar of the Supreme Court of the United States, or of any United States Court of Appeals, or of any District Court of the United States, or a member in good standing of the bar of the highest court of any state of the United States, is eligible for admission to the bar of this Court.

**(e)  Reciprocity.** Any attorney who shall have been admitted to practice in any other United States District Court of Oklahoma may be admitted to practice in this district without referral to the Committee on Admissions and Grievances by submitting a written application for submission and certificate of good standing from such other district in Oklahoma, along with the required fee.

**(f)  Attorneys for the United States.** Attorneys who are employed or retained by the United States or its agencies may practice in this Court in all cases or proceedings in which they represent the United States or such agencies.

**(g)  Admission Pro Hac Vice.** Any attorney who is eligible for admission to the bar of this Court may in the discretion of a judge of this Court be granted temporary admission to practice in a pending case. Attorneys requesting such admission are required to file a motion and attach a completed Request for Admission Pro Hac Vice form provided by the Court Clerk's office along with the required fee.

**LCvR83.3 Association of Local Counsel.**

**(a)  Responsibilities of Non-Resident Counsel.** When representing a party in this Court, any attorney who is not a resident of, and does not maintain an office in, Oklahoma shall show association with an attorney who is personally appearing in the action and who is a resident of the State and maintains a law office within the State of Oklahoma, and who has been duly and regularly admitted to practice in this Court.

**(b) Responsibilities of Local Counsel.** It is the responsibility of local counsel appearing in any civil case to certify to the satisfaction of the Committee on Admissions and Grievances or the Court that the non- resident attorney is a member in good standing of the bar of the highest court of the state where the non- resident attorney resides or is licensed. The local attorney shall sign the first pleading filed and shall continue in the case unless other local counsel is substituted. Any notice, pleading or other paper may be served upon the local counsel with the same effect as if personally served on the non-resident attorney.

**(c) Relief from this Rule.** Relief from this rule is within the Court's discretion upon motion establishing financial hardship, special qualifications of non-resident counsel, or other good cause, provided that out-of- state counsel certifies familiarity with the local civil court rules.

**LCvR83.4 Appearance of Counsel.**

**(a)** An attorney appearing for a party in a civil case shall enter an appearance by signing and filing an entry of appearance on the form prescribed by the Court Clerk.

**(b)** In the event a party should change counsel or add additional counsel, the new or additional counsel for such party shall enter an appearance by signing and filing an entry of appearance on the form prescribed by the Court Clerk.

**LCvR83.5 Attorney Withdrawal from Case.**

In civil cases, attorneys of record shall not withdraw from the case except upon reasonable notice to the client and all other parties who have appeared in the case and by leave of the judge to whom the case is assigned.

**LCvR83.6 Discipline by the Court.**

**(a) Discipline by Other Courts; Criminal Convictions.** Whenever any member admitted to practice in this Court, including a person admitted pro hac vice, has been suspended, disbarred or resigned pending disciplinary proceedings from the practice of law by the Supreme Court of Oklahoma or by any other court of competent jurisdiction or has been convicted of a felony or any crime involving moral turpitude in any court, such disbarment, suspension, or conviction shall operate as an automatic suspension of the attorney's right to practice in this Court, and an order of suspension shall be issued by the Court. Any attorney subject to this rule must notify the Court immediately upon any such suspension, disbarment or resignation. The automatic suspension from this Court shall remain in effect unless the attorney has by motion to the Court within twenty- eight (28) days of the order of suspension shown good cause as to why the suspension should not remain in effect. The Chief Judge or his or her designee shall rule on such motion. If the attorney was disbarred, resigned or was convicted as stated above, an order of disbarment will issue if no motion for good cause has been filed within the required time period.

**(b) Standard Governing Attorney Conduct.** The Court adopts the Oklahoma Rules of Professional Conduct as adopted and amended from time to time by the Supreme Court of Oklahoma as the standard governing attorney conduct in this Court.

**(c) Misconduct.** Complaints of professional misconduct by counsel are subject to Fed. R. Civ. P. 11. Complaints of professional misconduct may be submitted by a judge of the Court, at his or her discretion, to the Committee on Admissions and Grievances. Upon receipt of a complaint regarding the professional conduct of an attorney, the Committee on Admissions and Grievances shall, after notice and opportunity to be heard, report and recommend to the Court whether:

   (1) The inquiry should be terminated because the question raised is unsupported or insubstantial;

   (2) The alleged professional misconduct justifies further inquiry and, for members of the Oklahoma Bar Association, the matter should be referred to the Office of the General

Brand_Ex_2C2

Counsel of the Oklahoma Bar Association for investigation and prosecution by that Office, if warranted.

(3)    The alleged professional misconduct warrants consideration of prompt disciplinary action by this Court regarding the attorney's right to practice before the Court;

(4)    The alleged professional misconduct of an attorney not a member of the Oklahoma Bar Association justifies further inquiry by the Court. Any attorney whose conduct in this Court is under investigation by the Committee on Admissions and Grievances shall not be admitted pro hac vice until the pending investigation is concluded. Any action taken by the Court pursuant to a report and recommendation by the Committee on Admissions and Grievances shall be by a majority vote of the active judges.

Nothing contained in this Local Rule shall limit the right of an individual judge to manage the cases assigned to that judge, which right shall include, without limitation, the authority to impose any sanctions, penalties or other restrictions which may be appropriate in a particular case, or the authority to refer a matter for consideration to the Committee on Admissions and Grievances on an advisory basis.

**(d)    Right to a Hearing.** Except as otherwise provided under subsection (a), this Court shall not impose any disciplinary action affecting an attorney's right to practice before the Court until after a hearing on the matter has been held before a judge or panel of judges. The attorney may waive the right to a hearing. At the hearing, the attorney whose conduct is the subject of the complaint shall be afforded an opportunity to appear in person and/or by counsel, to present oral and documentary evidence, to compel the attendance of witnesses or the production of documents, to cross-examine witnesses, and to present argument orally or in writing. If not called by the attorney whose conduct is being investigated, it is within the discretion of the judge or panel to call the complaining party to appear at the hearing.

**(e)    Sanctions.** Discipline by this Court may include disbarment, suspension from practice for a definite time, reprimand, or other discipline which the Court deems proper. Referral of a complaint to the Office of the General Counsel of the Oklahoma Bar Association for investigation shall not constitute such discipline as to entitle the attorney to a hearing in this Court on the propriety of the referral.

**(f)    Contempt of Court.** Disciplinary proceedings under this rule shall not affect or be affected by any proceeding for contempt under Title 18 of the United States Code or under Fed. R. Crim. P. 42.

**(g)    Unauthorized Practice.** Any person who before admission to the bar of this Court or who during disbarment or suspension exercises any of the privileges bestowed upon members of this bar, or who pretends to be entitled to such privileges, or who otherwise engages in the unauthorized practice of law before the Court, shall be guilty of contempt of this Court and shall be subject to punishment therefor and shall be subject to any other discipline which the Court may impose.

**(h)    Reinstatement.** Persons disbarred indefinitely from practice before this Court may not petition for reinstatement until three (3) years following disbarment or until two (2) years following an adverse decision upon a previous petition for reinstatement; provided, however, that a person disbarred under subsection (a) may apply for reinstatement at any time upon being reinstated by the disciplining body. Persons suspended indefinitely must satisfy all conditions to reinstatement imposed by the Court at the time of suspension.

**LCvR83.7 Professional Conduct.**

**(a)    Oklahoma Rules of Professional Conduct** Apply. Attorneys practicing in this Court are expected to conduct themselves in accordance with the Oklahoma Rules of Professional Conduct, as adopted by the Oklahoma Supreme Court, as the standard of conduct of all members of the Oklahoma Bar Association. See, Title 5 O.S.A. Ch.1, App. 3A. As set forth in the preamble:

A lawyer's conduct should conform to the requirements of the law, both in professional service to clients and in the lawyer's business and personal affairs. A lawyer should use the law's procedures only for legitimate purposes and not to harass or

Brand_Ex_2C-3

intimidate others. A lawyer should demonstrate respect for the legal system and for those who serve it, including judges, other lawyers and public officials. While it is a lawyer's duty, when necessary, to challenge the rectitude of official action, it is also a lawyer's duty to uphold legal process.

In this spirit, all lawyers should become familiar with their duties and obligations, as defined and classified generally in the Oklahoma Rules of Professional Conduct, any interpretive decisions, applicable statutes, and the usages, customs, and practices of the bar.

**(b) Courtroom Behavior.** The purpose of this rule is to emphasize, not to supplant, certain portions of those ethical principles applicable to the lawyer's conduct in the courtroom. In addition to all other requirements, therefore, lawyers appearing in this Court shall adhere to the following:

(1) Be punctual in attendance at Court.

(2) Refrain from addressing anyone in Court by first names -- use last names only.

(3) Refrain from leaving the courtroom while court is in session, unless it is absolutely necessary, and then only if the Court's permission has been obtained first.

(4) At all times, counsel for plaintiff shall occupy the table nearest the jury box and counsel for defendant shall occupy the table furthermost from the jury box.

(5) Ascertain that only one lawyer is standing at a time, unless an objection is being made.

(6) Bench conferences will be kept to a minimum. Counsel should anticipate issues which will arise during the trial and inform the Court and opposing counsel at the earliest opportunity. Permission must be obtained from the Court to approach the bench, a witness, an exhibit, or the clerk.

(7) Refrain from employing dilatory tactics.

(8) Hand all papers intended for the Court to see to the clerk who, in turn, will pass them up to the judge.

(9) Hand to the clerk any exhibits offered into evidence.

(10) Advise clients, witnesses, and others concerning rules of decorum to be observed in court.

(11) Use the lectern when interrogating witnesses or addressing the jury, unless otherwise permitted by the Court. Appropriate exceptions to this rule shall be made for disability or infirmity.

(12) Never conduct or engage in experiments or demonstrations unless prior permission is granted by the Court.

(13) Refrain from conducting a trial when they know, prior thereto, that they will be necessary witnesses, other than as to merely formal matters such as identification or custody of a document or the like. If, during the trial, it is discovered that the ends of justice require the lawyers' testimony, they should from that point on, if feasible and not prejudicial to their client's case, leave further conduct of the trial to other counsel. If circumstances do not permit withdrawal from the conduct of the trial, lawyers should not argue the credibility of their own testimony.

(14) Avoid disparaging personal remarks or acrimony toward opposing counsel and remain wholly uninfluenced by all ill feeling between the respective clients. Attorneys should abstain from any allusion to personal peculiarities and idiosyncrasies of opposing counsel.

(15)   Rise when addressing or being addressed by the Court. Appropriate exception will be made for disability or medical infirmity.

(16)   Refrain from assuming an undignified posture. Counsel should always be attired in a proper and dignified manner and should abstain from any apparel or ornament calculated to attract attention to themselves.

(17)   At all times exemplify conduct consistent with their obligation as an officer of the Court.

(18)   In making representations to the Court, know or honestly believe them to be supported by fact.

(19)   Comply, along with all other persons in the courtroom, with the following:

    (A) No tobacco in any form will be permitted at any time.
    (B) No propping of feet on tables or chairs will be permitted at any time.
**(b)** No water bottles or other beverage containers, bottles or cups, or edibles shall be brought into the courtroom, except with permission of the marshal or courtroom deputy clerk.

**(c)** No gum chewing or reading of newspapers or magazines (except as a part of the evidence in a case) will be permitted while Court is in session.

**(d)** No talking or other unnecessary noises will be permitted while Court is in session.

**(e)** Everyone must rise when instructed to do so upon opening, closing, or declaring recesses of Court. Appropriate exception shall be made for disability or medical infirmity.

**(f)** Any attorney who appears in court intoxicated or under the influence of intoxicants, drugs, or narcotics may be summarily held in contempt.

**LCvR83.8 Standards of Practice.**

The following are principles intended to guide attorneys in practicing in the Northern District of Oklahoma:

(a)   In fulfilling his or her primary duty to the client, a lawyer must be ever conscious of the broader duty to the judicial system that serves both attorney and client.

(b)   A lawyer owes, to the judiciary, candor, diligence and utmost respect.

(c)   A lawyer owes, to opposing counsel, a duty of courtesy and cooperation, the observance of which is necessary for the efficient administration of our system of justice and the respect of the public it serves.

(d)   A lawyer owes, to the administration of justice, the fundamental duties of personal dignity and professional integrity.

(e)   Lawyers should treat each other, the opposing party, the Court, and members of the Court staff with courtesy and civility and conduct themselves in a professional manner at all times.

(f)   A client has no right to demand that counsel abuse the opposite party or indulge in offensive conduct. A lawyer shall always treat adverse witnesses and suitors with fairness and due consideration.

(g) In adversary proceedings, clients are litigants and though ill feeling may exist between clients, such ill feeling should not influence a lawyer's conduct, attitude, or demeanor towards opposing lawyers.

(h) A lawyer should not use any form of discovery, or the scheduling of discovery, as a means of harassing opposing counsel or counsel's client.

(i) Lawyers will be punctual in communications with others and in honoring scheduled appearances and will recognize that neglect and tardiness are demeaning to the lawyer and to the judicial system.

(j) If a fellow member of the bar makes a just request for cooperation, or seeks scheduling accommodation, a lawyer will not arbitrarily or unreasonably withhold consent.

(k) Effective advocacy does not require antagonistic or obnoxious behavior and members of the bar will adhere to the higher standard of conduct which judges, lawyers, clients, and the public may rightfully expect.

**MOVED TO LGnR 04**

# EXHIBIT B

**Form W-9**
(Rev. October 2018)
Department of the Treasury
Internal Revenue Service

## Request for Taxpayer Identification Number and Certification

▶ Go to *www.irs.gov/FormW9* for instructions and the latest information.

**Give Form to the requester. Do not send to the IRS.**

**1** Name (as shown on your income tax return). Name is required on this line; do not leave this line blank.

Taktik Enterprises, Inc.

**2** Business name/disregarded entity name, if different from above

**3** Check appropriate box for federal tax classification of the person whose name is entered on line 1. Check only **one** of the following seven boxes.

☐ Individual/sole proprietor or single-member LLC     ☐ C Corporation     ☒ S Corporation     ☐ Partnership     ☐ Trust/estate

☐ Limited liability company. Enter the tax classification (C=C corporation, S=S corporation, P=Partnership) ▶

**Note:** Check the appropriate box in the line above for the tax classification of the single-member owner. Do not check LLC if the LLC is classified as a single-member LLC that is disregarded from the owner unless the owner of the LLC is another LLC that is **not** disregarded from the owner for U.S. federal tax purposes. Otherwise, a single-member LLC that is disregarded from the owner should check the appropriate box for the tax classification of its owner.

☐ Other (see instructions) ▶

**4** Exemptions (codes apply only to certain entities, not individuals; see instructions on page 3):

Exempt payee code (if any) _____

Exemption from FATCA reporting code (if any) _____

*(Applies to accounts maintained outside the U.S.)*

**5** Address (number, street, and apt. or suite no.) See instructions.

**6** City, state, and ZIP code

**7** List account number(s) here (optional)

Requester's name and address (optional)

*(left margin)* Print or type.  See Specific Instructions on page 3.

### Part I   Taxpayer Identification Number (TIN)

Enter your TIN in the appropriate box. The TIN provided must match the name given on line 1 to avoid backup withholding. For individuals, this is generally your social security number (SSN). However, for a resident alien, sole proprietor, or disregarded entity, see the instructions for Part I, later. For other entities, it is your employer identification number (EIN). If you do not have a number, see *How to get a TIN*, later.

**Note:** If the account is in more than one name, see the instructions for line 1. Also see *What Name and Number To Give the Requester* for guidelines on whose number to enter.

**Social security number**

| | | | – | | | – | | | | |

**or**

**Employer identification number**

### Part II   Certification

Under penalties of perjury, I certify that:

1. The number shown on this form is my correct taxpayer identification number (or I am waiting for a number to be issued to me); and
2. I am not subject to backup withholding because: (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding; and
3. I am a U.S. citizen or other U.S. person (defined below); and
4. The FATCA code(s) entered on this form (if any) indicating that I am exempt from FATCA reporting is correct.

**Certification instructions.** You must cross out item 2 above if you have been notified by the IRS that you are currently subject to backup withholding because you have failed to report all interest and dividends on your tax return. For real estate transactions, item 2 does not apply. For mortgage interest paid, acquisition or abandonment of secured property, cancellation of debt, contributions to an individual retirement arrangement (IRA), and generally, payments other than interest and dividends, you are not required to sign the certification, but you must provide your correct TIN. See the instructions for Part II, later.

**Sign Here**   Signature of U.S. person ▶   Date ▶

Dale D. Takio, CBDO
Digitally signed by Dale D. Takio, CBDO
Date: 2022.02.28 13:15:33 -05'00'

## General Instructions

Section references are to the Internal Revenue Code unless otherwise noted.

**Future developments.** For the latest information about developments related to Form W-9 and its instructions, such as legislation enacted after they were published, go to *www.irs.gov/FormW9*.

## Purpose of Form

An individual or entity (Form W-9 requester) who is required to file an information return with the IRS must obtain your correct taxpayer identification number (TIN) which may be your social security number (SSN), individual taxpayer identification number (ITIN), adoption taxpayer identification number (ATIN), or employer identification number (EIN), to report on an information return the amount paid to you, or other amount reportable on an information return. Examples of information returns include, but are not limited to, the following.

• Form 1099-INT (interest earned or paid)

• Form 1099-DIV (dividends, including those from stocks or mutual funds)

• Form 1099-MISC (various types of income, prizes, awards, or gross proceeds)

• Form 1099-B (stock or mutual fund sales and certain other transactions by brokers)

• Form 1099-S (proceeds from real estate transactions)

• Form 1099-K (merchant card and third party network transactions)

• Form 1098 (home mortgage interest), 1098-E (student loan interest), 1098-T (tuition)

• Form 1099-C (canceled debt)

• Form 1099-A (acquisition or abandonment of secured property)

Use Form W-9 only if you are a U.S. person (including a resident alien), to provide your correct TIN.

*If you do not return Form W-9 to the requester with a TIN, you might be subject to backup withholding. See What is backup withholding, later.*

Cat. No. 10231X                    Form **W-9** (Rev. 10-2018)

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF OKLAHOMA**

| | | | |
|---|---|---|---|
| IN RE: | | | |
| **GREEN COPPER HOLDINGS, LLC** | ) | **CASE NO. 25-10088-T** | |
| **EIN # xx-xxx9708** | ) | **Chapter 7** | |
| | ) | | |
| **COPPER TREE, INC.** | ) | **Substantively Consolidated** | |
| **EIN # xx-xxx6608** | ) | | |
| | ) | | |
| **THE INN AT PRICE TOWER INC.** | ) | | |
| Debtors. | ) | | |
| | / | | |

**CLAIMANT PICTORIA STUDIOS USA, INC., (Claim No. 14),  RESPONSE TO ECF 338-MOTION FOR PROTECTIVE ORDER RE PROPOUNDED DISCOVERY & PRAYER FOR SANCTIONS**

COMES NOW **PICTORIA STUDIOS USA, INC., (CLAIM NO. 14)**, by and through their undersigned counsel and hereby files this Response to Cynthia Blanchards Motion for Protective Order, ECF 338, and Moves For Sanctions against Mrs. Blanchard, and as grounds thereof states as follows:

1.    *Case 25-10088-T Document 298 Filed in USBC ND/OK on 09/16/25:* Mrs. Blanchard was served with:

      A.    Interrogatories Nos. 1-8; and,

      B.    Requests for Production Nos. 1 – 17.

2.    As Mrs. Blanchard knows full well and even cited to, Discovery was permitted pursuant to a Status Conference held on September 2, 2025. *See Orders*, ECF 276 and ECF 278.

3.    Pictoria Studios is challenging Mrs. Blanchard's claim for a host of reasons, many differing and expanding upon the Trustee's limited but valid argument from where his Discovery arises from.  The Trustee has focused on the value of any monies allegedly provided to the Debtor by

Mrs. Blanchard, arguing that any monies placed are to be charged as legal consideration for her shares in the Debtor as no other proofs of legal consideration has been provided. As such Mrs. Blanchard's claims are not truly a legal claim for bankruptcy purposes, but that she would possibly have an unsecure interest subservient to any true bankruptcy claims. Valid.

4.     Meanwhile, Pictoria Studios as well as other claimants are challenging the validity, authenticity, legality and lawfulness of Mrs. Blanchard's conduct, sources of money, truth and veracity of the expenditures, handling of the Debtor and the monies taken or used, the comingling of accounts and improper intermixing and comingling of monies, legitimacy of any actual expenses, legitimacy of transfers, legitimacy of monies taken or reimbursed, the entirety of any alleged loan, as well as payments to have been made for legal consideration for her shares and officer position within the Debtor disguised as a loan. These "White Collar" markers each warrant considerable discovery, however, Pictoria Studios has shown by its limited first set of discovery to be very efficient and judicious. Pictoria's discovery follows its Objections to Mrs. Blanchard's Claim and attaches affidavits in support of the serious allegations against her. *See*, ECF 285, 285(1-3).

5.     Mrs. Blanchard continues to allow herself to be guided by her ChatGPT lawyer. She argues by use of adjectives, instead of fact and sound legal basis, that the undersigned is being mean because he has sent out discovery when so too did the Trustee. In essence, this is her argument comprising ECF 338!  While ChatGPT provided Mrs. Blanchard with buzz words, it did not provide a valid legal argument against the propounded discovery which she needs to answer and provide documentation in response.

6.     On October 8, 2025, Mrs. Blanchard sent the undersigned an email that stated in part "…Because the Trustee (cc'd) has already propounded discovery on my claim, I believe your

interrogatories are unnecessary and duplicative. In the interest of avoiding unnecessary burden and expense for all parties, I respectfully request that you withdraw them."

      A.    The undersigned responded to Mrs. Blanchard informing her that just because the Trustee sent out his discovery requests doesn't mean that I can't do the same.

      B.    The undersigned responded to Mrs. Blanchard stating that if she really believes there to be any overlap, creating "unnecessary and duplicative" the undersigned was open to discussion and would need to see the Trustee's specific discovery request to compare with what she was complaining of.

      1.    Mrs. Blanchard chose to take the tact that she would not show the undersigned any specifics, not answer or respond to discovery and that it was her opinion she was only bound to respond to the Trustee and no one else.

      2.    Mrs. Blanchard chose to write a motion using derogatory adjectives when referring to the undersigned or the propounded discovery as opposed to arguing facts. She desperation would generally mean that she has no facts to pound, no legalities or legalese to cite as controlling, just adjectives to tout. This is bad-faith litigation and meant only to cause delays, prejudice, self-serving interests taken, and cause the responding party to incur needless fees.

7.    On October 9, 2025, Mrs. Blanchard filed her frivolous motion for Protective Order against Pictoria Studio's ability to propound discovery as opposed to arguing any factual based objections. See, Mrs. Blanchard's Motion ECF 338. Mrs. Blanchard claims that there was a "meet and

conferral" however, there was not. Mrs. Blanchard chose to make a demand from the undersigned to withdraw the propounded discovery and when the undersigned responded by stating 'lets see your factual contention(s)', her reply was not to resolve or talk "facts", but to file a frivolous motion. This is NOT a "Meet and Conferral". Pictoria Studios has incurred attorney fees due to Mrs. Blanchard's wrongful conduct, for which she was warned prior to her filing, and should be sanctioned.

8. It is par for the course, as evidenced by Mrs. Blanchard's prior conduct and the undersigned's dealings with her while she was operating the Debtor companies, that she continues to believe things are only as she sees them. Not Once, did she evidence any of Pictoria Studio's discovery allegedly overlapping with the Trustees. Not Once did she attempt to confer on any conflicting, duplicative or harassing alleged discovery. NO, SHE CHOSE TO BE THE JUDGE AND SELF DETERMINED THAT SHE WILL ONLY ANSWER THE TRUSTEE'S DISCOVERY. While attaching Pictoria's Discovery to her Motion as an exhibit, ECF 338-3, she refused to attach and highlight the Trustee's discovery and any numbers that would rise to the adjectives she used against the undersigned and the propounded discovery. Sanctions are warranted.

9. In truth, Mrs. Blanchard has again taken it upon herself to do for herself as she wants. Copper Tree, Inc and Green Copper Holdings wound up in bankruptcy because of this same conduct and many shareholders have already sounded the alarm that this bankruptcy proceedings was an escape from a derivative shareholder lawsuit that she knew was coming. Unlike the limited approach taken by the Trustee, the fact that Mrs. Blanchard had all of this money to allegedly loan or pay for her shares as consideration or had all of this very expensive art work to sell off, money

should not have been the cause of the bankruptcy filing as Mrs. Blanchard has evidenced there was available funds due from herself or from the sale of company assets.

10.     It is anticipated, should Mrs. Blanchard and Mr. Paul Aubert continue with their claims that this limited, first set of discovery will lead to an additional set, as well as depositions, which might then lend credence to other legal action.  Mrs. Blanchard's motion was filed as a delay tacit and sanctionable offense.


WHEREFORE, the Movant hereby prays that this Honorable Court:

1.      Deny ECF 338,

2.      award Pictoria Studio's sanctions,

3.      Order Pictoria Studios First Set of Interrogatories and Requests for Production due within (7) days and that full and complete answers and responses be provided,

4.      extend the discovery cut off periods effecting Mrs. Blanchard and Mr. Aubert given these intentional delays, and,

5.      as well as any and all other relief deemed just and proper.

RESPECTFULLY SUBMITTED ON THIS 14TH day of October, 2025.


/s/ *Craig A. Brand, Esq.*

By: _____

   Craig Alan Brand, Esq.
   FBN: 896111
   Tel. (305) 878-1477
   6462 S. Jamaica Circle
   Englewood, Colorado 80111

   **On behalf of and for:**
   PICTORIA STUDIOS USA, INC. (Claim No. 14)

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of this foregoing Response to ECF 338 was filed with the Clerk of Court on this 14th day of October, 2025, as well as mailed by US first class mail to:

Cynthia Diane Blanchard, pro se
414 SE Washington Blvd. Ste. 205
Bartlesville, OK 74006
310-435-5707

/s/ *Craig A. Brand, Esq.*

By: _____
Craig Alan Brand, Esq.
FBN: 896111
Tel. (305) 878-1477
6462 S. Jamaica Circle
Englewood, Colorado 80111

**On behalf of and for:**
PICTORIA STUDIOS USA, INC. (Claim No. 14)

# EXHIBIT B

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF OKLAHOMA

IN RE:

**GREEN COPPER HOLDINGS, LLC** )          **CASE NO. 25-10088-T**

**EIN # xx-xxx9708** )          **Chapter 7**

)

**COPPER TREE, INC.** )          **Substantively Consolidated**

**EIN # xx-xxx6608** )

)

**THE INN AT PRICE TOWER INC.** )

Debtors. )

_____/

### NOTICE OF SERVICE OF

### CLAIMANT PICTORIA STUDIOS USA, INC. (Claim No. 14) INTERROGATORIES

### TO CYNTHIA BLANCHARD (Claim 1, et.al.)

COMES NOW Claimant PICTORIA STUDIOS USA, INC. (herein after from time to time referred to as "Pictoria"),  (Claim No. 14), Pursuant to Rule 33, Fed. R. Civ. P.,  by and through their undersigned counsel and hereby serves this Notice of Service of First Set of Interrogatories, dated September 16, 2025, onto **CYNTHIA BLANCHARD (Claim 1, et.al.)** and states:

### DEFINITIONS

1.      "Claimant " or "Pictoria Studios USA Inc." or more readily stated, "Pictoria", is Claimant No. 14, herein this action.

2.      "Trustee" is Patrick J. Malloy III, Chapter 7 Trustee, in this styled cause of action.

3.      "Debtor" or Debtors" are: Copper Tree, Inc., Green Copper Holdings, LLC., and the Inn at Price Tower, as set forth within this cause of action for which the Mr. Malloy is the presiding Trustee of.

4.      Cynthia French Blanchard or Cynthia Diane Blanchard is the Claimant or "Blanchard".

5.      You filed in Case 25-10088-T Claim 1-1 Part 2 Filed 02/28/25.  This document appears to be a QuickBooks online transaction log.  This shall be referred to from time to time as either, "log", "QuickBooks", "QuickBooks entry log or QuickBooks entry journal", or " journal".

6.       The term "person" means any person or entity, and includes individuals, corporations, limited liability companies, partnerships, associations, joint ventures, and other business enterprises, or legal entities and includes both the singular and plural.

7.      "Third Party" includes any person not a party to this action and/or counsel for a party to this action.

8.      The term "representative" refers to any employee, agent, attorney or accountant.

9.      "Business Entity" means a sole proprietorship, corporation, limited liability company, limited partnership, general partnership, association, joint venture, and any other business name through which business is conducted.

10.     The term "identify" means to state:

        (a)     in the case of a natural person, the person's name, business address, residence address, and residential telephone number, employer or identify the entity for whom the person serves as an independent contractor, and title or position;

        (b)     in the case of a person other than a natural person, its name, address, and telephone number and identify the natural person acting on its behalf;

        (c)     in the case of a communication or meeting, its date, type (e.g., telephone conversation, discussion, or meeting), the place where it occurred, the identity of the participants, and the subject matter; and

     (d)     in the case of a document, the title of the document, the author, the title or position of the author, the addressee(s), each recipient and copy recipient or blind-copy recipient, the type of document, the subject matter, the date of preparation, and Bates stamp numbers.

     (e)     In the case of an electronic mail address ("email address"), the complete email address,  the name and business and residence address of each person authorized to access, send and/or receive information utilizing the email address, the Universal Resource Locater ("URL") and Domain Name to which the email is attached, and the name of the registrar of the Domain Name.

     (f)     In the case of a text messaging device, the country code, area code, city code and telephone number assigned to the text messaging device, the name and business and residence address of the person in whose name the telephone number is billed by the carrier, the carrier name, the manufacturer's name of the text messaging device, the name and business and residence address of the person who had custody of the text messaging device.

11.    The word "document" or "documents" includes, without limitation, the following items, whether printed, recorded, photographed filmed or reproduced by any other mechanical process, or written or produced by hand, and whether an original master, or copy, namely: Electronically Stored Information ("ESI")(described below); work sheets; agreements; books; records; opinions or report of consultant; bank statements; financial statements; check books; checks; cancelled checks; deposit slips; charge slips; stubs or registers; diaries; communications, including intra-company communications; correspondence; cablegrams; radiograms; telexes; e-mails; instant messages; short messaging service (SMS); Blackberry Messenger Messages (BBM); voicemails; statements posted on or the internet, memoranda, including intra-company memoranda; summaries; notes and records of telephone conversations, meetings and conferences; notes and records of personal conversations and interviews; ledgers, invoices; contracts; notices; drafts of any documents; marginal or other comments or notes appearing on any documents; business records; charts; plans; specifications; schedules; computer printouts; computer tapes; microfilms; microfiches; photographs; slides; negatives; motion pictures; video recordings; tape or other voice recordings and transcription thereof; and data compilations (including meta-data) from which information can be obtained, translated, if necessary, by you through detection devices into reasonably usable form; and any other information containing paper, writing or physical thing including all underlying, supporting or preparatory material now in your possession, custody or control, or available to you, your counsel, accountants, agents, representatives or associates. "Document" or "documents" specifically includes documents kept by individuals in their desks, at home or elsewhere.

12.    The word "document" or "documents" also includes, without limitation, the original and all file copies and other copies that are not identical to the original no matter how or by whom prepared, and all drafts prepared in connection with any documents, whether used or not.  If the original of any document is not in your possession, custody or control, a copy of that document should be produced.

13. "Copy" when used in reference to a document means any color, or black or white facsimile reproduction of a document, regardless of whether the facsimile reproduction is made by means of carbon papers, pressure sensitive paper, xerography or other means or process.

14. The term "communication," "communications," or "communicate" means any writing, or oral conversation, including, but not limited to, telephone conversations and meetings, letters, e-mails, text messages, voice mails, telegraphic and telex communications, instant messages, and includes all information relating to all oral communications and "documents" (as hereinabove defined), whether or not any such document, or the information contained therein, was transmitted by its author to any other person.

15. The term "including" means "including without limitation."

16. The term "exchanged" and the term 'transfer' each mean delivering in any form whatsoever by the person or persons initiating the delivery to the person or persons receiving the delivery

17. If not expressly stated, "control" means in your possession, custody, or control or under your direction, and includes in the possession, custody or control of those under the direction of you or your employees, subordinates, counsel, accountant, consultant, expert, parent or affiliated corporation, and any person purporting to act on your behalf.

18. "Pertaining to," "pertains to" and "pertain to" means directly or indirectly, refer to, reflect, describe, pertain to, arise out of or in connection with, or in any way legally, logically, or factually be connected with the matter discussed.

19. "Relating to," "relates to" and "related to" means, without limitation, comprising, concerning, containing, embodying, referring to, alluding to, responding to, about, regarding, explaining, discussing, showing, describing, studying, reflecting, analyzing or constituting. A communication or document "relating to" any given subject means any communication or document that constitutes, contains, embodies, reflects, identifies, states, refers to, deals with, or is in any way pertinent to that subject, including, without limitation, documents concerning the preparation of other documents.

20. "Applicable Time Period" means any time on and after February 2023.

## INSTRUCTIONS

1. Any word written in the singular herein shall be construed as plural or *vice versa* when necessary to facilitate the response to any request.

2.      The use of the present tense includes the past tense, and the use of the past tense includes the present tense, so as to be inclusive of any information that otherwise may be excluded from disclosure.

3.      With respect to each answer, document, or electronically stored information that you presently intend to refuse to identify or answer such Interrogatory under a claim of privilege or other exemption from discovery, state the title and nature of the document, and furnish a list signed by the attorney of record giving the following information with respect to each answer, document, and electronically stored information withheld:

    a.  The nature of the privilege claimed (including work product);
    b.  If the privilege is being asserted in connection with a claim or defense governed by state law, the privilege rule being invoked;
    c.  The date of the document, ESI, or oral communication, or if no date appears, the date on which the document was prepared;
    d.  The type of document (*e.g.*, letter or memorandum);
    e.  If electronically store information, the software application used to create it (*e.g.*, MS Word or MS Excel Spreadsheet);
    f.  If a communication (*e.g.*, e-mail), the sender, recipient, subject matter, and date of the communication was made; and
    g.  The general subject matter of the document, ESI, or communication.

4.      If a document identified in an answer to an interrogatory once existed and has subsequently been lost, destroyed, or is otherwise unavailable for production, please state with respect to such document:

    a.  The last known location of the document;
    b.  The last date or time period the document was known to be in existence;
    c.  The person who last had control or custody of the document;
    d.  The circumstances under which the document was destroyed or otherwise rendered unavailable for production;
    e.  Whether the document was stored under conditions of controlled access, and, if so, the names of all persons having access to the document;
    f.  The person who requested or directed the destruction of the document; and
    g.  The reasons for the request or direction resulting in the document becoming unavailable for production.
    5.  Please also identify all persons capable of offering testimony on the subject matter or contents of the document destroyed or otherwise rendered unavailable for production.

### **INTERROGATORIES**

1.  You filed in Case 25-10088-T Claim 1-1 Part 2 Filed 02/28/25.  This document appears to
    be a QuickBooks online transaction log or QuickBooks.  As to this Claim 1-1, Part 2, please
    answer the following:

    a.  As to this 6 page QuickBooks entry log, name all people, including their phone
        numbers, addresses, emails and whether they were W2 employees or Sub-
        Contractors, who participated in the data entry and the dates of such entry.  (The
        dates should be noted and referenced within the program).

    b.  Please provide copies of the back up support for all such data entries such as the
        transaction statements that the data entries came from, receipts, bank statements,
        credit card statements, deposit slips, wire confirmations, credit card receipts,
        invoices, copies of checks, copies of wire transfers and/or any evidence of actual
        payment that you contend you made and in which the Debtors owe to you.

    c.  For each of your QuickBooks entries there is no explanation as to why you
        allegedly lent these monies. Please provide a detailed explanation for each of your
        journal entries including but not limited to: to which Debtor entity did this money
        go to for each data entry, for what purpose was each deposit used for, under whose
        authority did the Debtor request each of these loans, what was done with the lent
        money, whether the transaction was "emergency" and if so, the reason for the stated
        emergency.

    d.  Please specify how it was that the you believed the Debtor would repay the loans
        you were lending.

    e.  Please state whether or not the Debtor at any time in which you were lending as per
        the QuickBooks entries had sufficient liquidity to repay the debts as they became
        due.  If so, please state when, which Debtor's account had that money, how much
        money was in the account at the time, what was the bank and account number, and
        whether or not you provided notice to the Debtor to repay the loan(s) given your
        contention that there was sufficient money in the bank account to repay you, include
        dates of when the account had sufficient monies and the date you provided notice
        to repay.

    f.  Whether the Debtor was able to bargain, negotiate or have open terms with a third
        party, other than yourself, including whether the Debtor sought out other suitable
        loans from other parties and if so, please provide details as to how and who the

Debtor sought other loans from including the last contact information you had with these others whom the Debtor sought loans from.

g. Who is Forked Pine Consulting and why were they paid $10,000 on 3/7,2023 and what did they for that sum of money.

h. Who instructed you to describe your account entries as "28000 Long term loans" and what does 28100 Loans mean as you utilize these terms throughout your 6 page of your journal.

i. In your Quickbooks spread sheet you have a column for "split". What does that mean?

i. Throughout your spread sheet you, at times, use the memo/Description column to state monthly expenses. For each of these entries, please list out what the monthly expenses are and how much money is attributable to each such expense.

(j) Throughout the QuickBooks Entry Log you show allegedly having made payments for the IPT. Please confirm that IPT stands for "The Inn at Price Tower". Please state in detail what each of these payments were for.

k. On page 3 of 6 of Claim 1-1 Part 2, your Quick Books Entry Log shows in yellow highlight two transfers from the Debtor to yourself. The dates are: 03/28/2024 and 04/22/2024. Please detail which Debtors account these alleged highlighted payments came from, which financial account of yours did they go into, who authorized these payments to yourself, what the purpose was for these transfers, what documents do you have which permitted you to transfer Debtor monies to yourself.

l. Throughout your QuickBooks Entry Log it shows in the "split" column the following: 10023 Cash: Truity x….-40 (Hotel). What is your understanding of what "10023 Cash means". What does "Truity x….-40 (Hotel)" mean as you understand the column. Include what was the specific purpose for each of these payments.

m. On page 6 of 6 of Claim 1-1 Part 2, your QuickBooks Entry Log shows on 12/13/2024 an interest payment of $9,922.19. Please state what this interest payment was for, to whom did it go to, for whose benefit, and who authorized this transfer.

n.   On page 6 of 6 of Claim 1-1 Part 2, your Quick Books Entry Log shows on 1/21/2025 a transfer from the Ron Brown Law.  Please detail why this transfer was made and who authorized it and what was the repayment Agreement supposed to have been.  Please state whether there are board and/or shareholder approvals for this loan.  Please state whether this loan is included within the value of the Claim you made against the Debtor.

o.   In each of these your QuickBooks Entry Log data entries, you left out which Debtor was the beneficiary of the alleged loans you made. Please list for each data entry the correct Debtor who received such funds.

p.   Who informed you that you were permitted to make alleged loans to the Debtor, what actions were necessary to effectuate the lending of monies effectively to yourself despite having shareholders to account to, and additionally who told you what to do in order to take monies from the Debtor.

q.   For each alleged loan made, please detail your source of funds used and how these sourced funds were derived at.

r.   In your filing: Case 25-10088-T Document 202 Filed in USBC ND/OK on 07/24/25 Page 16 of 27, pages 16-21 look a certain way, while pages 22-27 are completely different in form, scope, entries and appearance.  Please describe the differences between these two documents, who performed the data entries and the dates performed, and what back up support for each entry exists.  Please provide for each such entry the backup supporting document(s) along with an explanation to support or justify such an alleged loan.

2.  You filed Case 25-10088-T Claim 1-2 Part 2 Filed 05/20/25 Attachment 1.  This document is an alleged Loan Agreement by and between yourself and Copper Tree Inc. As to this agreement, please answer the following:

a.   Who prepared this document or gave you the template to use, include their name and contact information;

b.   When did you present this agreement to the Board of Directors, list who the Board members were, and describe what the meeting minutes would represent and the dates of these meeting(s).

c.   When did you present this agreement to the shareholders of Copper Tree Inc, list who the shareholders were and the dates of these meeting(s) where this agreement was presented. If not by meeting then state and tell how the presentment was.

    d.    Please describe how you believed you were in compliance with:

*1.1 Loan Amount. This Agreement establishes an open-ended loan facility under which Borrower may borrow and repay funds from time to time. The total outstanding principal shall not exceed an aggregate amount determined and recorded in the Parties' bookkeeping software, reconciled with the Parties' bank account records.*

    e.    Please describe how you personally believe, as you are aware, that a conflict of interest does not exist for the following term:

*1.2 Disbursement. Loan disbursements shall be made by Lender to Borrower upon mutual agreement of the Parties and recorded in the Parties' bookkeeping software.*

    f.    In paragraph 1.3, who set the interest rate.

    g.    In paragraph 2(b), as you understand it, how do you believe that no "conflict of interest" exists between Copper Tree Inc as the Borrower and yourself as the lender.

    h.    Please confirm that you are aware that under Delaware law, you have breached your fiduciary duties as to Conflict of Interest.

    i.    Please confirm that you are the signatory for both lender and borrower.

3.      In your filing: Case 25-10088-T Document 297 Filed in USBC ND/OK on 09/15/25, you accuse Attorney Brand of "relying on false, defamatory and malicious personal character attacks rather than addressing the merits of the Motion".  Please state:

    a.    What "false, defamatory and malicious personal character attacks" you are referring to.

    b.    What you believe are the "merits of the Motion".

4.    On the first page, it appears the second paragraph of Case 25-10088-T Document 297 Filed in USBC ND/OK on 09/15/25, you claim and represent to the Court that "The Trustee already has documentation in his possession that directly contradicts the affidavits previously filed in Mr. Brand's objection to my proof of claim… and in his reply to the Trustee's objection (docket file 287), underscoring his ongoing effort to inject false, irrelevant material intended only to harass". Please address with specificity:

    a.    What documentation the Trustee already has "in his possession that directly contradicts the affidavits….".  Set forth in detail what such documentation is that the Trustee has to contradict Mr. Brand's filings as you represent to the Court in ECF 297.

    b.    ECF 287 is your reply not the Trustees Objection, so what document are you actually referring to.

    c.    What "false, irrelevant material intended only to harass" is Mr. Brand specifically attempting to interject as you represent to the Court in ECF 297.

5.    Please state whether or not you agree that the Debtor  owes Pictoria Studios and Taktik Enterprises as per their submitted invoices and that had the Debtor been profitable or profitable from a sale, the Debtor would have paid Pictoria and Taktik for their services.

6.      List and state every reason that you contend is adverse to Pictoria's claim for monies owed, including but not limited to detailing your reasons why you believe Pictoria shouldn't be paid for their services in whole and/or in part, and if in part, state the value you believe is owed to Pictoria from Debtor.

7.      List every reason that you are aware of as to why Pictoria was not paid when the Debtor was invoiced by Pictoria month after month. For any of those months in which Pictoria submitted an invoice, state the month and year, that you are aware of, in which the Debtor(s) had sufficient monies in the bank accounts to cover the Pictoria invoice submitted.

8.      What is your correct full name and what alias's or names do you use or have used within the past 10 years.

### CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of this foregoing Interrogatories to Cynthia Blanchard was ECF filed with the Clerk of Court on this 16th  day of September, 2025, emailed to Mrs. Blanchard at her email address used during these proceedings with the undersigned counsel:

cdfblanchard@gmail.com , as well as mailed by US first class mail to:

Cynthia Diane Blanchard, pro se
414 SE Washington Blvd. Ste. 205
Bartlesville, OK 74006
310-435-5707

/s/ **Craig A. Brand, Esq.**

By: _____

Craig Alan Brand, Esq.
FBN: 896111
Tel. (305) 878-1477
6462 S. Jamaica Circle
Englewood, Colorado 80111

**On behalf of and for:**
PICTORIA STUDIOS USA, INC. (Claim No. 14), and
TAKTIK ENTERPRISES, INC. (Claim No. 4).

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF OKLAHOMA

IN RE:

GREEN COPPER HOLDINGS, LLC )       CASE NO. 25-10088-T

EIN # xx-xxx9708 )       Chapter 7

)

COPPER TREE, INC. )       **Substantively Consolidated**

EIN # xx-xxx6608 )

)

THE INN AT PRICE TOWER INC. )

Debtors. )

_____/

### NOTICE OF SERVICE OF
### CLAIMANT PICTORIA STUDIOS USA, INC. (Claim No. 14)
### REQUESTS FOR PRODUCTION
### TO CYNTHIA BLANCHARD (Claim 1, et.al.)

Pursuant to Rule 34, Fed. R. Civ. P., Claimant **PICTORIA STUDIOS USA, INC. (Claim No. 4), (Herein after from time to time referred to as "Pictoria"),** by and through its undersigned counsel, herewith requests **CYNTHIA BLANCHARD** (Claimant No. 1), to produce the following documents to the undersigned counsel on or before thirty (30) days from the date set forth in the Certificate of Service below.

### DEFINITIONS

1.      "Debtor" or Debtors" are: Copper Tree, Inc., Green Copper Holdings, LLC., and the Inn at Price Tower, as set forth within this cause of action for which the Mr. Malloy is the presiding Trustee of.

2.      Cynthia French Blanchard or Cynthia Diane Blanchard is the Claimant or "Blanchard".

3.      The term "person" means any person or entity, and includes individuals, corporations, limited liability companies, partnerships, associations, joint ventures, and other business enterprises, or legal entities and includes both the singular and plural.

4.      "Third Party" includes any person not a party to this action and/or counsel for a party to this action.

5.      The term "representative" refers to any employee, agent, attorney or accountant.

6.      "Business Entity" means a sole proprietorship, corporation, limited liability company, limited partnership, general partnership, association, joint venture, and any other business name through which business is conducted.

7.      The term "identify" means to state:

        (a)      in the case of a natural person, the person's name, business address, residence address, and residential telephone number, employer or identify the entity for whom the person serves as an independent contractor, and title or position;

        (b)      in the case of a person other than a natural person, its name, address, and telephone number and identify the natural person acting on its behalf;

        (c)      in the case of a communication or meeting, its date, type (e.g., telephone conversation, discussion, or meeting), the place where it occurred, the identity of the participants, and the subject matter; and

        (d)      in the case of a document, the title of the document, the author, the title or position of the author, the addressee(s), each recipient and copy recipient or blind-copy recipient, the type of document, the subject matter, the date of preparation, and Bates stamp numbers.

(e)     In the case of an electronic mail address ("email address"), the complete email address, the name and business and residence address of each person authorized to access, send and/or receive information utilizing the email address, the Universal Resource Locater ("URL") and Domain Name to which the email is attached, and the name of the registrar of the Domain Name.

(f)     In the case of a text messaging device, the country code, area code, city code and telephone number assigned to the text messaging device, the name and business and residence address of the person in whose name the telephone number is billed by the carrier, the carrier name, the manufacturer's name of the text messaging device, the name and business and residence address of the person who had custody of the text messaging device.

8.     The word "document" or "documents" includes, without limitation, the following items, whether printed, recorded, photographed filmed or reproduced by any other mechanical process, or written or produced by hand, and whether an original master, or copy, namely: Electronically Stored Information ("ESI")(described below); work sheets; agreements; books; records; opinions or report of consultant; bank statements; financial statements; check books; checks; cancelled checks; deposit slips; charge slips; stubs or registers; diaries; communications, including intra-company communications; correspondence; cablegrams; radiograms; telexes; e-mails; instant messages; short messaging service (SMS); Blackberry Messenger Messages (BBM); voicemails; statements posted on or the internet, memoranda, including intra-company memoranda; summaries; notes and records of telephone conversations, meetings and conferences; notes and records of personal conversations and interviews; ledgers, invoices; contracts; notices; drafts of any documents; marginal or other comments or notes appearing on any documents; business records; charts; plans; specifications; schedules; computer printouts; computer tapes; microfilms; microfiches; photographs; slides; negatives; motion pictures; video recordings; tape or other voice recordings and transcription thereof; and data compilations (including meta-data) from which information can be obtained, translated, if necessary, by you through detection devices into reasonably usable form; and any other information containing paper, writing or physical thing including all underlying, supporting or preparatory material now in your possession, custody or control, or available to you, your counsel, accountants, agents, representatives or associates. "Document" or "documents" specifically includes documents kept by individuals in their desks, at home or elsewhere.

9.     The word "document" or "documents" also includes, without limitation, the original and all file copies and other copies that are not identical to the original no matter how or by whom prepared, and all drafts prepared in connection with any documents, whether used or not. If the original of any document is not in your possession, custody or control, a copy of that document should be produced.

10.     "Copy" when used in reference to a document means any color, or black or white facsimile reproduction of a document, regardless of whether the facsimile reproduction is made by means of carbon papers, pressure sensitive paper, xerography or other means or process.

11.     The term "communication," "communications," or "communicate" means any writing, or oral conversation, including, but not limited to, telephone conversations and meetings, letters, e-mails, text messages, voice mails, telegraphic and telex communications, instant messages, and includes all information relating to all oral communications and "documents" (as hereinabove defined), whether or not any such document, or the information contained therein, was transmitted by its author to any other person.

12.     The term "including" means "including without limitation."

13.     The term "exchanged" and the term 'transfer' each mean delivering in any form whatsoever by the person or persons initiating the delivery to the person or persons receiving the delivery

14.     If not expressly stated, "control" means in your possession, custody, or control or under your direction, and includes in the possession, custody or control of those under the direction of you or your employees, subordinates, counsel, accountant, consultant, expert, parent or affiliated corporation, and any person purporting to act on your behalf.

15.     "Pertaining to," "pertains to" and "pertain to" means directly or indirectly, refer to, reflect, describe, pertain to, arise out of or in connection with, or in any way legally, logically, or factually be connected with the matter discussed.

16.     "Relating to," "relates to" and "related to" means, without limitation, comprising, concerning, containing, embodying, referring to, alluding to, responding to, about, regarding, explaining, discussing, showing, describing, studying, reflecting, analyzing or constituting. A communication or document "relating to" any given subject means any communication or document that constitutes, contains, embodies, reflects, identifies, states, refers to, deals with, or is in any way pertinent to that subject, including, without limitation, documents concerning the preparation of other documents.

## **INSTRUCTIONS**

1.     Any word written in the singular herein shall be construed as plural or *vice versa* when necessary to facilitate the response to any request.

2.      The use of the present tense includes the past tense, and the use of the past tense includes the present tense, so as to be inclusive of any information that otherwise may be excluded from disclosure.

3.      With respect to each answer, document, or electronically stored information that you presently intend to refuse to identify or produce under a claim of privilege or other exemption from discovery, state the title and nature of the document, and furnish a list signed by the attorney of record giving the following information with respect to each answer, document, and electronically stored information withheld:

  a.  The nature of the privilege claimed (including work product);
  b.  If the privilege is being asserted in connection with a claim or defense governed by state law, the privilege rule being invoked;
  c.  The date of the document, ESI, or oral communication, or if no date appears, the date on which the document was prepared;
  d.  The type of document (*e.g.*, letter or memorandum);
  e.  If electronically store information, the software application used to create it (*e.g.*, MS Word or MS Excel Spreadsheet);
  f.  If a communication (*e.g.*, e-mail), the sender, recipient, subject matter, and date of the communication was made; and
  g.  The general subject matter of the document, ESI, or communication.

4.      If a document identified in a response to a Request for Production once existed and has subsequently been lost, destroyed, or is otherwise unavailable for production, please state with respect to such document:

  a.  The last known location of the document;
  b.  The last date or time period the document was known to be in existence;
  c.  The person who last had control or custody of the document;
  d.  The circumstances under which the document was destroyed or otherwise rendered unavailable for production;
  e.  Whether the document was stored under conditions of controlled access, and, if so, the names of all persons having access to the document;
  f.  The person who requested or directed the destruction of the document; and
  g.  The reasons for the request or direction resulting in the document becoming unavailable for production.
  5.  Please also identify all persons capable of offering testimony on the subject matter or contents of the document destroyed or otherwise rendered unavailable for production.

### REQUESTS FOR PRODUCTION

1. In Case 25-10088-T Claim 1-1 Filed 02/28/25, you filed a claim for $15,553.19.  Please provide all supporting documentation which would substantiate this claim and value.

2. In Case 25-10088-T Claim 1-2 Filed 05/20/25 Main Document Pg 1 of 3, you filed a claim for 285107.88.  Please provide all supporting documentation which would substantiate this claim and value.

3. Please provide documentation that you notified the existing shareholders of Copper Tree, Inc. that you were making personal loans to the company and provide documentation that the shareholders approved your making of loans.

4. Please provide documentation that you notified the existing shareholders of a loan agreement between yourself and Copper Tree, Inc. (See, Case 25-10088-T Claim 1-2 Part 2 Filed 05/20/25 Attachment 1 Pg 1 of 3).  Please include the documentation that the shareholders approved your this loan agreement i.e, Case 25-10088-T Claim 1-2 Part 2 Filed 05/20/25 Attachment 1 Pg 1 of 3.

5. As to Requests No. 2, 3 above, please also provide the relevant board meeting and the board's approval of these personal loans and the loan agreement's approval.  Please provide this documentation in native format.

6. On page 3 of 6 of Claim 1-1 Part 2, your Quick Books Entry Log shows in yellow highlight two transfers from the Debtor to yourself.  The dates are: 03/28/2024 and 04/22/2024.  Please provide in native format what documents you have which permitted you, authorized you, to transfer Debtor monies to yourself.

7. On page 6 of 6 of Claim 1-1 Part 2, your Quick Books Entry Log shows on 1/21/2025 a transfer from the Ron Brown Law.  Please provide board and/or shareholder approvals for this loan.

8. In your filing: Case 25-10088-T Document 202 Filed in USBC ND/OK on 07/24/25 Page 16 of 27, pages 16-21 look a certain way, while pages 22-27 are completely different in form, scope, entries and appearance.   Please provide for each such entry the backup supporting document(s) along with an explanation to support or justify such an alleged loan.

9. In native format, provide ALL meeting minutes from the Copper Tree Inc Board or Shareholder Meeting Approvals for any and all loans the Debtor engaged in and any and all payments made in response to the loans.

10. In native format, provide ALL Board Member meeting minutes of Copper Tree from inception of the company through the date of dissolution.

11. Provide Notices of all Board Member meetings of Debtor.

12. Provide Notices of ALL Shareholder meetings of Debtor.

13. For each Interrogatory Answer related to Pictoria's first set of Interrogatories dated September 16, 2025, please provide whatever documents, data, digital information, financial information you relied upon or looked at in formulating your answer(s).

14. Please produce a copy of any and all invoices that Pictoria submitted that you believe should have been paid, and if all of them, just write "ALL" in response as opposed to having to produce documents.

15. Please produce every, as in all, documents, data (digital or otherwise), that you believe supports your contention and belief that Pictoria should not be paid for its services. [The term "supports" is meant as any justification, any reason – big or small.]

16. Produce every, as in all, documents, data (digital or otherwise), that you believe supports your contention and belief that Pictoria failed to perform its contractual duties or obligation in any manner, to any degree. [The term "supports" is meant as any justification, any reason – big or small.]

17. Please produce a copy of your current state issued driver's license showing your full name as well as a copy of your current or last used United States of America passport showing your full name. [You are permitted to redact the ID Nos.].

### CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of this foregoing Requests for Production to Cynthia Blanchard was ECF filed with the Clerk of Court on this 16th day of September, 2025, emailed to Mrs. Blanchard at her email address used during these proceedings with the undersigned counsel: cdfblanchard@gmail.com , as well as mailed by US first class mail to:

Cynthia Diane Blanchard, pro se
414 SE Washington Blvd. Ste. 205
Bartlesville, OK 74006
310-435-5707

/s/ **Craig A. Brand, Esq.**

By: _____

Craig Alan Brand, Esq.
FBN: 896111
Tel. (305) 878-1477
6462 S. Jamaica Circle
Englewood, Colorado 80111

**On behalf of and for:**
PICTORIA STUDIOS USA, INC. (Claim No. 14), and
TAKTIK ENTERPRISES, INC. (Claim No. 4).

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF OKLAHOMA**

IN RE:
GREEN COPPER HOLDINGS, LLC     )         **CASE NO. 25-10088-T**
EIN # xx-xxx9708                   )         **Chapter 7**
                               )
COPPER TREE, INC.              )         **Substantively Consolidated**
EIN # xx-xxx6608                   )
                               )
THE INN AT PRICE TOWER INC.    )
          Debtors.                )
_____/

## CLAIMANT PICTORIA STUDIOS USA, INC.'s
## REQUEST FOR HEARING

COMES NOW **PICTORIA STUDIOS USA, INC., (CLAIM NO. 14)**, by and through their undersigned counsel and hereby files this Request for Order and states:

1.     Claimant, Cynthia Blanchard filed a Motion for Protective Order, ECF 338.

2.     ECF is in response to ECF 298, which is Interrogatories and Requests for Production that Pictoria served upon her. *See* a copy of said Interrogatories and Requests for Production attached hereto as **Exhibit 1** (Roggs) and **Exhibit 2** (RFP).

3.     In response to ECF 338, Pictoria filed, on October 14, 2025, a Response found at ECF 340.

4.     The time period for which to respond to Pictoria's propounded Discovery or Object thereto has long come and gone.

      WHEREFORE, the Movant hereby prays that this Honorable Court shall set a hearing on this matter as well as any and all other relief deemed just and proper.

RESPECTFULLY SUBMITTED ON THIS 1st day of November, 2025.

/s/ *Craig A. Brand, Esq.*

By: _____

   Craig Alan Brand, Esq.
   FBN: 896111
   Tel. (305) 878-1477
   6462 S. Jamaica Circle
   Englewood, Colorado 80111

**On behalf of and for:**
PICTORIA STUDIOS USA, INC. (Claim No. 14)


## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of this foregoing Request for Hearing was filed

with the Clerk of Court on this 1st day of November, 2025. In addition, a copy was mailed by

United States first class mail to the following recipient(s):

   Cynthia Diane Blanchard, pro se
   414 SE Washington Blvd. Ste. 205
   Bartlesville, OK 74006
   310-435-5707


/s/ *Craig A. Brand, Esq.*

By: _____

   Craig Alan Brand, Esq.
   FBN: 896111
   Tel. (305) 878-1477
   6462 S. Jamaica Circle
   Englewood, Colorado 80111

**On behalf of and for:**
PICTORIA STUDIOS USA, INC. (Claim No. 14)

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF OKLAHOMA

---

IN RE:

GREEN COPPER HOLDINGS, LLC )  CASE NO. 25-10088-T

EIN # xx-xxx9708 )  Chapter 7

 )

COPPER TREE, INC. )  Substantively Consolidated

EIN # xx-xxx6608 )

 )

THE INN AT PRICE TOWER INC. )

Debtors. )

_____ /

---

### NOTICE OF SERVICE OF

### CLAIMANT PICTORIA STUDIOS USA, INC. (Claim No. 14) FIRST SET OF INTERROGATORIES AND REQUESTS FOR PRODUCTION

### SERVED UPON CLAIM NO. 1, CYNTHIA BLANCHARD

COMES NOW Claimant PICTORIA STUDIOS USA, INC. (herein after from time to time referred to as "Pictoria"),  (Claim No. 14), Fed. R. Civ. P.,  by and through their undersigned counsel and hereby serves this Notice of Service of First Set of Interrogatories and Requests for Production dated September 16, 2025, onto **CYNTHIA BLANCHARD (CLAIM NO. 1).**

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of this foregoing Requests for Production to Cynthia Blanchard was ECF filed with the Clerk of Court on this 16th day of September, 2025, emailed to Mrs. Blanchard at her email address used during these proceedings with the undersigned counsel:  cdfblanchard@gmail.com , as well as mailed by US first class mail to:

> Cynthia Diane Blanchard, pro se
> 414 SE Washington Blvd. Ste. 205
> Bartlesville, OK 74006
> 310-435-5707

> /s/ **Craig A. Brand, Esq.**

By: _____

> Craig Alan Brand, Esq.
> FBN: 896111
> Tel. (305) 878-1477
> 6462 S. Jamaica Circle
> Englewood, Colorado 80111

> **On behalf of and for:**
> PICTORIA STUDIOS USA, INC. (Claim No. 14), and
> TAKTIK ENTERPRISES, INC. (Claim No. 4).

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF OKLAHOMA

---

IN RE:

| | | |
|---|---|---|
| **GREEN COPPER HOLDINGS, LLC** | ) | **CASE NO. 25-10088-T** |
| **EIN # xx-xxx9708** | ) | **Chapter 7** |
| | ) | |
| **COPPER TREE, INC.** | ) | **Substantively Consolidated** |
| **EIN # xx-xxx6608** | ) | |
| | ) | |
| **THE INN AT PRICE TOWER INC.** | ) | |
| **Debtors.** | ) | |
| _____ | / | |

---

## NOTICE OF SERVICE OF
## CLAIMANT PICTORIA STUDIOS USA, INC. (Claim No. 14) INTERROGATORIES
## TO CYNTHIA BLANCHARD (Claim 1, et.al.)

COMES NOW Claimant PICTORIA STUDIOS USA, INC. (herein after from time to time referred to as "Pictoria"),  (Claim No. 14), Pursuant to Rule 33, Fed. R. Civ. P.,  by and through their undersigned counsel and hereby serves this Notice of Service of First Set of Interrogatories, dated September 16, 2025, onto **CYNTHIA BLANCHARD (Claim 1, et.al.)** and states:

## DEFINITIONS

1.      "Claimant " or "Pictoria Studios USA Inc." or more readily stated, "Pictoria", is Claimant No. 14, herein this action.

2.      "Trustee" is Patrick J. Malloy III, Chapter 7 Trustee, in this styled cause of action.

3.      "Debtor" or Debtors" are: Copper Tree, Inc., Green Copper Holdings, LLC., and the Inn at Price Tower, as set forth within this cause of action for which the Mr. Malloy is the presiding Trustee of.

4.      Cynthia French Blanchard or Cynthia Diane Blanchard is the Claimant or "Blanchard".

5.      You filed in Case 25-10088-T Claim 1-1 Part 2 Filed 02/28/25.  This document appears to be a QuickBooks online transaction log.  This shall be referred to from time to time as either, "log", "QuickBooks", "QuickBooks entry log or QuickBooks entry journal", or " journal".

6.      The term "person" means any person or entity, and includes individuals, corporations, limited liability companies, partnerships, associations, joint ventures, and other business enterprises, or legal entities and includes both the singular and plural.

7.      "Third Party" includes any person not a party to this action and/or counsel for a party to this action.

8.      The term "representative" refers to any employee, agent, attorney or accountant.

9.      "Business Entity" means a sole proprietorship, corporation, limited liability company, limited partnership, general partnership, association, joint venture, and any other business name through which business is conducted.

10.     The term "identify" means to state:

        (a)     in the case of a natural person, the person's name, business address, residence address, and residential telephone number, employer or identify the entity for whom the person serves as an independent contractor, and title or position;

        (b)     in the case of a person other than a natural person, its name, address, and telephone number and identify the natural person acting on its behalf;

        (c)     in the case of a communication or meeting, its date, type (e.g., telephone conversation, discussion, or meeting), the place where it occurred, the identity of the participants, and the subject matter; and

(d)     in the case of a document, the title of the document, the author, the title or position of the author, the addressee(s), each recipient and copy recipient or blind-copy recipient, the type of document, the subject matter, the date of preparation, and Bates stamp numbers.

(e)     In the case of an electronic mail address ("email address"), the complete email address,  the name and business and residence address of each person authorized to access, send and/or receive information utilizing the email address, the Universal Resource Locater ("URL") and Domain Name to which the email is attached, and the name of the registrar of the Domain Name.

(f)     In the case of a text messaging device, the country code, area code, city code and telephone number assigned to the text messaging device, the name and business and residence address of the person in whose name the telephone number is billed by the carrier, the carrier name, the manufacturer's name of the text messaging device, the name and business and residence address of the person who had custody of the text messaging device.

11.     The word "document" or "documents" includes, without limitation, the following items, whether printed, recorded, photographed filmed or reproduced by any other mechanical process, or written or produced by hand, and whether an original master, or copy, namely: Electronically Stored Information ("ESI")(described below); work sheets; agreements; books; records; opinions or report of consultant; bank statements; financial statements; check books; checks; cancelled checks; deposit slips; charge slips; stubs or registers; diaries; communications, including intra-company communications; correspondence; cablegrams; radiograms; telexes; e-mails; instant messages; short messaging service (SMS); Blackberry Messenger Messages (BBM); voicemails; statements posted on or the internet, memoranda, including intra-company memoranda; summaries; notes and records of telephone conversations, meetings and conferences; notes and records of personal conversations and interviews; ledgers, invoices; contracts; notices; drafts of any documents; marginal or other comments or notes appearing on any documents; business records; charts; plans; specifications; schedules; computer printouts; computer tapes; microfilms; microfiches; photographs; slides; negatives; motion pictures; video recordings; tape or other voice recordings and transcription thereof; and data compilations (including meta-data) from which information can be obtained, translated, if necessary, by you through detection devices into reasonably usable form; and any other information containing paper, writing or physical thing including all underlying, supporting or preparatory material now in your possession, custody or control, or available to you, your counsel, accountants, agents, representatives or associates. "Document" or "documents" specifically includes documents kept by individuals in their desks, at home or elsewhere.

12.     The word "document" or "documents" also includes, without limitation, the original and all file copies and other copies that are not identical to the original no matter how or by whom prepared, and all drafts prepared in connection with any documents, whether used or not.  If the original of any document is not in your possession, custody or control, a copy of that document should be produced.

13.    "Copy" when used in reference to a document means any color, or black or white facsimile reproduction of a document, regardless of whether the facsimile reproduction is made by means of carbon papers, pressure sensitive paper, xerography or other means or process.

14.    The term "communication," "communications," or "communicate" means any writing, or oral conversation, including, but not limited to, telephone conversations and meetings, letters, e-mails, text messages, voice mails, telegraphic and telex communications, instant messages, and includes all information relating to all oral communications and "documents" (as hereinabove defined), whether or not any such document, or the information contained therein, was transmitted by its author to any other person.

15.    The term "including" means "including without limitation."

16.    The term "exchanged" and the term 'transfer' each mean delivering in any form whatsoever by the person or persons initiating the delivery to the person or persons receiving the delivery

17.    If not expressly stated, "control" means in your possession, custody, or control or under your direction, and includes in the possession, custody or control of those under the direction of you or your employees, subordinates, counsel, accountant, consultant, expert, parent or affiliated corporation, and any person purporting to act on your behalf.

18.    "Pertaining to," "pertains to" and "pertain to" means directly or indirectly, refer to, reflect, describe, pertain to, arise out of or in connection with, or in any way legally, logically, or factually be connected with the matter discussed.

19.    "Relating to," "relates to" and "related to" means, without limitation, comprising, concerning, containing, embodying, referring to, alluding to, responding to, about, regarding, explaining, discussing, showing, describing, studying, reflecting, analyzing or constituting. A communication or document "relating to" any given subject means any communication or document that constitutes, contains, embodies, reflects, identifies, states, refers to, deals with, or is in any way pertinent to that subject, including, without limitation, documents concerning the preparation of other documents.

20.    "Applicable Time Period" means any time on and after February 2023.

## **INSTRUCTIONS**

1.    Any word written in the singular herein shall be construed as plural or *vice versa* when necessary to facilitate the response to any request.

2.     The use of the present tense includes the past tense, and the use of the past tense includes the present tense, so as to be inclusive of any information that otherwise may be excluded from disclosure.

3.     With respect to each answer, document, or electronically stored information that you presently intend to refuse to identify or answer such Interrogatory under a claim of privilege or other exemption from discovery, state the title and nature of the document, and furnish a list signed by the attorney of record giving the following information with respect to each answer, document, and electronically stored information withheld:

    a.  The nature of the privilege claimed (including work product);
    b.  If the privilege is being asserted in connection with a claim or defense governed by state law, the privilege rule being invoked;
    c.  The date of the document, ESI, or oral communication, or if no date appears, the date on which the document was prepared;
    d.  The type of document (*e.g.*, letter or memorandum);
    e.  If electronically store information, the software application used to create it (*e.g.*, MS Word or MS Excel Spreadsheet);
    f.  If a communication (*e.g.*, e-mail), the sender, recipient, subject matter, and date of the communication was made; and
    g.  The general subject matter of the document, ESI, or communication.

4.     If a document identified in an answer to an interrogatory once existed and has subsequently been lost, destroyed, or is otherwise unavailable for production, please state with respect to such document:

    a.  The last known location of the document;
    b.  The last date or time period the document was known to be in existence;
    c.  The person who last had control or custody of the document;
    d.  The circumstances under which the document was destroyed or otherwise rendered unavailable for production;
    e.  Whether the document was stored under conditions of controlled access, and, if so, the names of all persons having access to the document;
    f.  The person who requested or directed the destruction of the document; and
    g.  The reasons for the request or direction resulting in the document becoming unavailable for production.
    5.  Please also identify all persons capable of offering testimony on the subject matter or contents of the document destroyed or otherwise rendered unavailable for production.

## **INTERROGATORIES**

1. You filed in Case 25-10088-T Claim 1-1 Part 2 Filed 02/28/25.  This document appears to be a QuickBooks online transaction log or QuickBooks.  As to this Claim 1-1, Part 2, please answer the following:

   a. As to this 6 page QuickBooks entry log, name all people, including their phone numbers, addresses, emails and whether they were W2 employees or Sub-Contractors, who participated in the data entry and the dates of such entry.  (The dates should be noted and referenced within the program).

   b. Please provide copies of the back up support for all such data entries such as the transaction statements that the data entries came from, receipts, bank statements, credit card statements, deposit slips, wire confirmations, credit card receipts, invoices, copies of checks, copies of wire transfers and/or any evidence of actual payment that you contend you made and in which the Debtors owe to you.

   c. For each of your QuickBooks entries there is no explanation as to why you allegedly lent these monies. Please provide a detailed explanation for each of your journal entries including but not limited to: to which Debtor entity did this money go to for each data entry, for what purpose was each deposit used for, under whose authority did the Debtor request each of these loans, what was done with the lent money, whether the transaction was "emergency" and if so, the reason for the stated emergency.

   d. Please specify how it was that the you believed the Debtor would repay the loans you were lending.

   e. Please state whether or not the Debtor at any time in which you were lending as per the QuickBooks entries had sufficient liquidity to repay the debts as they became due.  If so, please state when, which Debtor's account had that money, how much money was in the account at the time, what was the bank and account number, and whether or not you provided notice to the Debtor to repay the loan(s) given your contention that there was sufficient money in the bank account to repay you, include dates of when the account had sufficient monies and the date you provided notice to repay.

   f. Whether the Debtor was able to bargain, negotiate or have open terms with a third party, other than yourself, including whether the Debtor sought out other suitable loans from other parties and if so, please provide details as to how and who the

Debtor sought other loans from including the last contact information you had with these others whom the Debtor sought loans from.

    g.  Who is Forked Pine Consulting and why were they paid $10,000 on 3/7,2023 and what did they for that sum of money.

    h.  Who instructed you to describe your account entries as "28000 Long term loans" and what does 28100 Loans mean as you utilize these terms throughout your 6 page of your journal.

    i.  In your Quickbooks spread sheet you have a column for "split". What does that mean?

    i.  Throughout your spread sheet you, at times, use the memo/Description column to state monthly expenses. For each of these entries, please list out what the monthly expenses are and how much money is attributable to each such expense.

    (j) Throughout the QuickBooks Entry Log you show allegedly having made payments for the IPT. Please confirm that IPT stands for "The Inn at Price Tower". Please state in detail what each of these payments were for.

k.  On page 3 of 6 of Claim 1-1 Part 2, your Quick Books Entry Log shows in yellow highlight two transfers from the Debtor to yourself. The dates are: 03/28/2024 and 04/22/2024. Please detail which Debtors account these alleged highlighted payments came from, which financial account of yours did they go into, who authorized these payments to yourself, what the purpose was for these transfers, what documents do you have which permitted you to transfer Debtor monies to yourself.

l.  Throughout your QuickBooks Entry Log it shows in the "split" column the following: 10023 Cash: Truity x….-40 (Hotel). What is your understanding of what "10023 Cash means". What does "Truity x….-40 (Hotel)" mean as you understand the column. Include what was the specific purpose for each of these payments.

m.  On page 6 of 6 of Claim 1-1 Part 2, your QuickBooks Entry Log shows on 12/13/2024 an interest payment of $9,922.19. Please state what this interest payment was for, to whom did it go to, for whose benefit, and who authorized this transfer.

n. On page 6 of 6 of Claim 1-1 Part 2, your Quick Books Entry Log shows on 1/21/2025 a transfer from the Ron Brown Law. Please detail why this transfer was made and who authorized it and what was the repayment Agreement supposed to have been. Please state whether there are board and/or shareholder approvals for this loan. Please state whether this loan is included within the value of the Claim you made against the Debtor.

o. In each of these your QuickBooks Entry Log data entries, you left out which Debtor was the beneficiary of the alleged loans you made. Please list for each data entry the correct Debtor who received such funds.

p. Who informed you that you were permitted to make alleged loans to the Debtor, what actions were necessary to effectuate the lending of monies effectively to yourself despite having shareholders to account to, and additionally who told you what to do in order to take monies from the Debtor.

q. For each alleged loan made, please detail your source of funds used and how these sourced funds were derived at.

r. In your filing: Case 25-10088-T Document 202 Filed in USBC ND/OK on 07/24/25 Page 16 of 27, pages 16-21 look a certain way, while pages 22-27 are completely different in form, scope, entries and appearance. Please describe the differences between these two documents, who performed the data entries and the dates performed, and what back up support for each entry exists. Please provide for each such entry the backup supporting document(s) along with an explanation to support or justify such an alleged loan.

2. You filed Case 25-10088-T Claim 1-2 Part 2 Filed 05/20/25 Attachment 1. This document is an alleged Loan Agreement by and between yourself and Copper Tree Inc. As to this agreement, please answer the following:

a. Who prepared this document or gave you the template to use, include their name and contact information;

b. When did you present this agreement to the Board of Directors, list who the Board members were, and describe what the meeting minutes would represent and the dates of these meeting(s).

c. When did you present this agreement to the shareholders of Copper Tree Inc, list who the shareholders were and the dates of these meeting(s) where this agreement was presented. If not by meeting then state and tell how the presentment was.

    d.      Please describe how you believed you were in compliance with:

*1.1 Loan Amount. This Agreement establishes an open-ended loan facility under which Borrower may borrow and repay funds from time to time. The total outstanding principal shall not exceed an aggregate amount determined and recorded in the Parties' bookkeeping software, reconciled with the Parties' bank account records.*

    e.      Please describe how you personally believe, as you are aware, that a conflict of interest does not exist for the following term:

*1.2 Disbursement. Loan disbursements shall be made by Lender to Borrower upon mutual agreement of the Parties and recorded in the Parties' bookkeeping software.*

    f.      In paragraph 1.3, who set the interest rate.

    g.      In paragraph 2(b), as you understand it, how do you believe that no "conflict of interest" exists between Copper Tree Inc as the Borrower and yourself as the lender.

    h.      Please confirm that you are aware that under Delaware law, you have breached your fiduciary duties as to Conflict of Interest.

    i.      Please confirm that you are the signatory for both lender and borrower.

3.     In your filing: Case 25-10088-T Document 297 Filed in USBC ND/OK on 09/15/25, you accuse Attorney Brand of "relying on false, defamatory and malicious personal character attacks rather than addressing the merits of the Motion".  Please state:

    a.      What "false, defamatory and malicious personal character attacks" you are referring to.

    b.      What you believe are the "merits of the Motion".

4.     On the first page, it appears the second paragraph of Case 25-10088-T Document 297 Filed in USBC ND/OK on 09/15/25, you claim and represent to the Court that "The Trustee already has documentation in his possession that directly contradicts the affidavits previously filed in Mr. Brand's objection to my proof of claim… and in his reply to the Trustee's objection (docket file 287), underscoring his ongoing effort to inject false, irrelevant material intended only to harass". Please address with specificity:

    a.      What documentation the Trustee already has "in his possession that directly contradicts the affidavits….".  Set forth in detail what such documentation is that the Trustee has to contradict Mr. Brand's filings as you represent to the Court in ECF 297.

    b.      ECF 287 is your reply not the Trustees Objection, so what document are you actually referring to.

    c.      What "false, irrelevant material intended only to harass" is Mr. Brand specifically attempting to interject as you represent to the Court in ECF 297.

5.     Please state whether or not you agree that the Debtor  owes Pictoria Studios and Taktik Enterprises as per their submitted invoices and that had the Debtor been profitable or profitable from a sale, the Debtor would have paid Pictoria and Taktik for their services.

6.      List and state every reason that you contend is adverse to Pictoria's claim for monies owed, including but not limited to detailing your reasons why you believe Pictoria shouldn't be paid for their services in whole and/or in part, and if in part, state the value you believe is owed to Pictoria from Debtor.

7.      List every reason that you are aware of as to why Pictoria was not paid when the Debtor was invoiced by Pictoria month after month. For any of those months in which Pictoria submitted an invoice, state the month and year, that you are aware of, in which the Debtor(s) had sufficient monies in the bank accounts to cover the Pictoria invoice submitted.

8.      What is your correct full name and what alias's or names do you use or have used within the past 10 years.

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of this foregoing Interrogatories to Cynthia Blanchard was ECF filed with the Clerk of Court on this 16th day of September, 2025, emailed to Mrs. Blanchard at her email address used during these proceedings with the undersigned counsel: cdfblanchard@gmail.com , as well as mailed by US first class mail to:

> Cynthia Diane Blanchard, pro se
> 414 SE Washington Blvd. Ste. 205
> Bartlesville, OK 74006
> 310-435-5707

/s/ **Craig A. Brand, Esq.**

By: _____

Craig Alan Brand, Esq.
FBN: 896111
Tel. (305) 878-1477
6462 S. Jamaica Circle
Englewood, Colorado 80111

**On behalf of and for:**
PICTORIA STUDIOS USA, INC. (Claim No. 14), and
TAKTIK ENTERPRISES, INC. (Claim No. 4).

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF OKLAHOMA

---

IN RE:

**GREEN COPPER HOLDINGS, LLC**     )        **CASE NO. 25-10088-T**

**EIN # xx-xxx9708**               )        **Chapter 7**

                            )

**COPPER TREE, INC.**            )        **Substantively Consolidated**

**EIN # xx-xxx6608**               )

                            )

**THE INN AT PRICE TOWER INC.**     )

         **Debtors.**           )

_____/

---

## NOTICE OF SERVICE OF

## CLAIMANT PICTORIA STUDIOS USA, INC. (Claim No. 14)

## REQUESTS FOR PRODUCTION

## TO CYNTHIA BLANCHARD (Claim 1, et.al.)

Pursuant to Rule 34, Fed. R. Civ. P., Claimant **PICTORIA STUDIOS USA, INC. (Claim No. 4), (Herein after from time to time referred to as "Pictoria"),** by and through its undersigned counsel, herewith requests **CYNTHIA BLANCHARD** (Claimant No. 1), to produce the following documents to the undersigned counsel on or before thirty (30) days from the date set forth in the Certificate of Service below.

## DEFINITIONS

1.      "Debtor" or Debtors" are: Copper Tree, Inc., Green Copper Holdings, LLC., and the Inn at Price Tower, as set forth within this cause of action for which the Mr. Malloy is the presiding Trustee of.

2.      Cynthia French Blanchard or Cynthia Diane Blanchard is the Claimant or "Blanchard".

3.       The term "person" means any person or entity, and includes individuals, corporations, limited liability companies, partnerships, associations, joint ventures, and other business enterprises, or legal entities and includes both the singular and plural.

4.      "Third Party" includes any person not a party to this action and/or counsel for a party to this action.

5.      The term "representative" refers to any employee, agent, attorney or accountant.

6.      "Business Entity" means a sole proprietorship, corporation, limited liability company, limited partnership, general partnership, association, joint venture, and any other business name through which business is conducted.

7.      The term "identify" means to state:

        (a)      in the case of a natural person, the person's name, business address, residence address, and residential telephone number, employer or identify the entity for whom the person serves as an independent contractor, and title or position;

        (b)      in the case of a person other than a natural person, its name, address, and telephone number and identify the natural person acting on its behalf;

        (c)      in the case of a communication or meeting, its date, type (e.g., telephone conversation, discussion, or meeting), the place where it occurred, the identity of the participants, and the subject matter; and

        (d)      in the case of a document, the title of the document, the author, the title or position of the author, the addressee(s), each recipient and copy recipient or blind-copy recipient, the type of document, the subject matter, the date of preparation, and Bates stamp numbers.

(e)     In the case of an electronic mail address ("email address"), the complete email address,  the name and business and residence address of each person authorized to access, send and/or receive information utilizing the email address, the Universal Resource Locater ("URL") and Domain Name to which the email is attached, and the name of the registrar of the Domain Name.

(f)     In the case of a text messaging device, the country code, area code, city code and telephone number assigned to the text messaging device, the name and business and residence address of the person in whose name the telephone number is billed by the carrier, the carrier name, the manufacturer's name of the text messaging device, the name and business and residence address of the person who had custody of the text messaging device.

8.     The word "document" or "documents" includes, without limitation, the following items, whether printed, recorded, photographed filmed or reproduced by any other mechanical process, or written or produced by hand, and whether an original master, or copy, namely: Electronically Stored Information ("ESI")(described below); work sheets; agreements; books; records; opinions or report of consultant; bank statements; financial statements; check books; checks; cancelled checks; deposit slips; charge slips; stubs or registers; diaries; communications, including intra-company communications; correspondence; cablegrams; radiograms; telexes; e-mails; instant messages; short messaging service (SMS); Blackberry Messenger Messages (BBM); voicemails; statements posted on or the internet, memoranda, including intra-company memoranda; summaries; notes and records of telephone conversations, meetings and conferences; notes and records of personal conversations and interviews; ledgers, invoices; contracts; notices; drafts of any documents; marginal or other comments or notes appearing on any documents; business records; charts; plans; specifications; schedules; computer printouts; computer tapes; microfilms; microfiches; photographs; slides; negatives; motion pictures; video recordings; tape or other voice recordings and transcription thereof; and data compilations (including meta-data) from which information can be obtained, translated, if necessary, by you through detection devices into reasonably usable form; and any other information containing paper, writing or physical thing including all underlying, supporting or preparatory material now in your possession, custody or control, or available to you, your counsel, accountants, agents, representatives or associates.  "Document" or "documents" specifically includes documents kept by individuals in their desks, at home or elsewhere.

9.     The word "document" or "documents" also includes, without limitation, the original and all file copies and other copies that are not identical to the original no matter how or by whom prepared, and all drafts prepared in connection with any documents, whether used or not.  If the original of any document is not in your possession, custody or control, a copy of that document should be produced.

10.    "Copy" when used in reference to a document means any color, or black or white facsimile reproduction of a document, regardless of whether the facsimile reproduction is made by means of carbon papers, pressure sensitive paper, xerography or other means or process.

11.    The term "communication," "communications," or "communicate" means any writing, or oral conversation, including, but not limited to, telephone conversations and meetings, letters, e-mails, text messages, voice mails, telegraphic and telex communications, instant messages, and includes all information relating to all oral communications and "documents" (as hereinabove defined), whether or not any such document, or the information contained therein, was transmitted by its author to any other person.

12.    The term "including" means "including without limitation."

13.    The term "exchanged" and the term 'transfer' each mean delivering in any form whatsoever by the person or persons initiating the delivery to the person or persons receiving the delivery

14.    If not expressly stated, "control" means in your possession, custody, or control or under your direction, and includes in the possession, custody or control of those under the direction of you or your employees, subordinates, counsel, accountant, consultant, expert, parent or affiliated corporation, and any person purporting to act on your behalf.

15.    "Pertaining to," "pertains to" and "pertain to" means directly or indirectly, refer to, reflect, describe, pertain to, arise out of or in connection with, or in any way legally, logically, or factually be connected with the matter discussed.

16.    "Relating to," "relates to" and "related to" means, without limitation, comprising, concerning, containing, embodying, referring to, alluding to, responding to, about, regarding, explaining, discussing, showing, describing, studying, reflecting, analyzing or constituting. A communication or document "relating to" any given subject means any communication or document that constitutes, contains, embodies, reflects, identifies, states, refers to, deals with, or is in any way pertinent to that subject, including, without limitation, documents concerning the preparation of other documents.

## **INSTRUCTIONS**

1.    Any word written in the singular herein shall be construed as plural or *vice versa* when necessary to facilitate the response to any request.

2.      The use of the present tense includes the past tense, and the use of the past tense includes the present tense, so as to be inclusive of any information that otherwise may be excluded from disclosure.

3.      With respect to each answer, document, or electronically stored information that you presently intend to refuse to identify or produce under a claim of privilege or other exemption from discovery, state the title and nature of the document, and furnish a list signed by the attorney of record giving the following information with respect to each answer, document, and electronically stored information withheld:

a.  The nature of the privilege claimed (including work product);
b.  If the privilege is being asserted in connection with a claim or defense governed by state law, the privilege rule being invoked;
c.  The date of the document, ESI, or oral communication, or if no date appears, the date on which the document was prepared;
d.  The type of document (*e.g.,* letter or memorandum);
e.  If electronically store information,  the software application used to create it (*e.g.,* MS Word or MS Excel Spreadsheet);
f.  If a communication (*e.g.,* e-mail), the sender, recipient, subject matter, and date of the communication was made; and
g.  The general subject matter of the document, ESI, or communication.

4.      If a document identified in a response to a Request for Production once existed and has subsequently been lost, destroyed, or is otherwise unavailable for production, please state with respect to such document:

a.  The last known location of the document;
b.  The last date or time period the document was known to be in existence;
c.  The person who last had control or custody of the document;
d.  The circumstances under which the document was destroyed or otherwise rendered unavailable for production;
e.  Whether the document was stored under conditions of controlled access, and, if so, the names of all persons having access to the document;
f.  The person who requested or directed the destruction of the document; and
g.  The reasons for the request or direction resulting in the document becoming unavailable for production.
5.  Please also identify all persons capable of offering testimony on the subject matter or contents of the document destroyed or otherwise rendered unavailable for production.

## REQUESTS FOR PRODUCTION

1. In Case 25-10088-T Claim 1-1 Filed 02/28/25, you filed a claim for $15,553.19. Please provide all supporting documentation which would substantiate this claim and value.

2. In Case 25-10088-T Claim 1-2 Filed 05/20/25 Main Document Pg 1 of 3, you filed a claim for 285107.88. Please provide all supporting documentation which would substantiate this claim and value.

3. Please provide documentation that you notified the existing shareholders of Copper Tree, Inc. that you were making personal loans to the company and provide documentation that the shareholders approved your making of loans.

4. Please provide documentation that you notified the existing shareholders of a loan agreement between yourself and Copper Tree, Inc. (See, Case 25-10088-T Claim 1-2 Part 2 Filed 05/20/25 Attachment 1 Pg 1 of 3). Please include the documentation that the shareholders approved your this loan agreement i.e, Case 25-10088-T Claim 1-2 Part 2 Filed 05/20/25 Attachment 1 Pg 1 of 3.

5. As to Requests No. 2, 3 above, please also provide the relevant board meeting and the board's approval of these personal loans and the loan agreement's approval. Please provide this documentation in native format.

6. On page 3 of 6 of Claim 1-1 Part 2, your Quick Books Entry Log shows in yellow highlight two transfers from the Debtor to yourself. The dates are: 03/28/2024 and 04/22/2024. Please provide in native format what documents you have which permitted you, authorized you, to transfer Debtor monies to yourself.

7. On page 6 of 6 of Claim 1-1 Part 2, your Quick Books Entry Log shows on 1/21/2025 a transfer from the Ron Brown Law. Please provide board and/or shareholder approvals for this loan.

8. In your filing: Case 25-10088-T Document 202 Filed in USBC ND/OK on 07/24/25 Page 16 of 27, pages 16-21 look a certain way, while pages 22-27 are completely different in form, scope, entries and appearance. Please provide for each such entry the backup supporting document(s) along with an explanation to support or justify such an alleged loan.

9. In native format, provide ALL meeting minutes from the Copper Tree Inc Board or Shareholder Meeting Approvals for any and all loans the Debtor engaged in and any and all payments made in response to the loans.

10. In native format, provide ALL Board Member meeting minutes of Copper Tree from inception of the company through the date of dissolution.

11. Provide Notices of all Board Member meetings of Debtor.

12. Provide Notices of ALL Shareholder meetings of Debtor.

13. For each Interrogatory Answer related to Pictoria's first set of Interrogatories dated September 16, 2025, please provide whatever documents, data, digital information, financial information you relied upon or looked at in formulating your answer(s).

14. Please produce a copy of any and all invoices that Pictoria submitted that you believe should have been paid, and if all of them, just write "ALL" in response as opposed to having to produce documents.

15. Please produce every, as in all, documents, data (digital or otherwise), that you believe supports your contention and belief that Pictoria should not be paid for its services. [The term "supports" is meant as any justification, any reason – big or small.]

16. Produce every, as in all, documents, data (digital or otherwise), that you believe supports your contention and belief that Pictoria failed to perform its contractual duties or obligation in any manner, to any degree. [The term "supports" is meant as any justification, any reason – big or small.]

17. Please produce a copy of your current state issued driver's license showing your full name as well as a copy of your current or last used United States of America passport showing your full name. [You are permitted to redact the ID Nos.].

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of this foregoing Requests for Production to Cynthia Blanchard was ECF filed with the Clerk of Court on this 16th day of September, 2025, emailed to Mrs. Blanchard at her email address used during these proceedings with the undersigned counsel: cdfblanchard@gmail.com , as well as mailed by US first class mail to:

Cynthia Diane Blanchard, pro se
414 SE Washington Blvd. Ste. 205
Bartlesville, OK 74006
310-435-5707

/s/ **Craig A. Brand, Esq.**

By: _____

Craig Alan Brand, Esq.
FBN: 896111
Tel. (305) 878-1477
6462 S. Jamaica Circle
Englewood, Colorado 80111

**On behalf of and for:**

PICTORIA STUDIOS USA, INC. (Claim No. 14), and
TAKTIK ENTERPRISES, INC. (Claim No. 4).

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF OKLAHOMA**

IN RE:
**GREEN COPPER HOLDINGS, LLC**       )        **CASE NO. 25-10088-T**
EIN # xx-xxx9708                      )        **Chapter 7**
                                      )
**COPPER TREE, INC.**                 )        **Substantively Consolidated**
EIN # xx-xxx6608                      )
                                      )
**THE INN AT PRICE TOWER INC.**       )
            Debtors.                  )
_____ /

**CLAIMANT PICTORIA STUDIOS USA, INC., (Claim No. 14), AND CLAIMANT TAKTIK ENTERPRISES, INC. (Claim No. 4) RESPONSE/OBJECTION TO MOTION FOR PROTECTIVE ORDER ECF 283 & 284, AND NOTICE OF OPPORTUNITY TO BE HEARD**

COMES NOW **PICTORIA STUDIOS USA, INC., (CLAIM NO. 14)**, and, Claimant **TAKTIK ENTERPRISES, INC. (Claim No. 4), (together "Movants"),** by and through their undersigned counsel and hereby files this Objection/Response to Cynthia Blanchards Renewed Motion for Protective Order, ECF 283 & 284, and Notice of Opportunity to be heard, and as grounds thereof states as follows:

I.      **Back Ground And Yet Another Defective Attempt At Conferral**:

a.      On September 4, 2025, Mrs. Blanchard filed ECF 279. This filing was a Motion for Protective Order against some possible future, undefined discovery events that might or might not happen.

b.      On September 5, 2025, The Court, Sui Sponte, ECF 280, issued a Denial of ECF 279 as the Court noted that Mrs. Blanchard failed to meet and confer regarding the relief she was requesting.

c.      On September 8, 2025, Mrs. Blanchard emails the undersigned attorney the following:

> Mr. Brand,
>
> Pursuant to Fed. R. Civ. P. 26(c), made applicable through the Bankruptcy Rules, I am making a good-faith attempt to confer regarding discovery directed to me. Please provide in writing any discovery issues you wish to address within two business days of this email. I will respond in writing, with the Trustee included, within two business days of receiving your list.
>
> Respectfully,
> Cynthia Diane Blanchard
>
> cc: Trustee Patrick J. Malloy III

d.      Mrs. Blanchard's above stated email does not represent a Meet and Conferral as Fed. R. Civ. P. 26(c)(1); Fed. R. Bankr. P. 7026, 9014(c), hold that the representation "must include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action."

e.      Mrs. Blanchard's September 8, 2025 Email:

i.   Is not a meet and conferral as contemplated under the rules.  <u>It is a demand that the undersigned attorney, within two days, provide her in writing with discovery issues I want to present</u>.  This demand holds very little relation to her motion which is to try and prevent the taking of her depositon.

ii.   Nothing within this email talks about or discusses any issue concerning any deposition as suggested by her Renewed Motion for Protective Order.

iii.   There is no showing that the undersigned must forecast his discovery or deposition questions to a deponent in advance; defeating some of the purposes and objectives of taking a deposition or merely putting the witness on the stand so as to avoid any pre-tells.

iv.   Wherefore, this email attempt at conferral is fatally defective.

f.      On September 8, 2025, Mrs. Blanchard files ECF 283 & 284 which appear to be the same Renewed Motion for Protective Order only in ECF 284 a Certificate of Service is added which takes the document to the next page.

II.    **ECF 283 & 284 Should Be Denied**.

**1.**

a.      On Page 1, "Introduction" section, Mrs. Blanchard states that a deposition of herself would, "… impose undue burden, risk of intimidation, and invite questions far outside the scope of the settlement at issue".  There is no showing, no specifics, nothing but fear of her answers under oath which would support or justify these conclusory statements.

b.      "The lady doth protest too much, me thinks," from William Shakespeare's Hamlet.

c.      On September 4, 2025, a hearing was held and two Orders issued.  The first Order, ECF 276 pertains to the Trustees Motion for Approval of a Settlement with the Frank Lloyd Write Conservancy, ECF 156.  Movants filed Objections to the Trustee's proposed settlement, ECF 208, 208-1 & 207, 207-1.

**As stated within the Movant's Objections (ECF 207 & 208), the:**

(2)     **Relevant Portions Of The Trustee's Motion [ECF 156] Are As**

**Follows**:

a.  Par. 1: The debtor herein filed a civil action against the **Frank Lloyd Wright Building Conservancy,** an Illinois not-for- profit corporation ("Conservancy"), Case No. CJ-2024-237, in the District Court for Washington County, Oklahoma. "The claims asserted by the consolidated Debtors constitute property of the estate."

b.   Par. 2: "Subsequent to the commencement of these proceedings, the Conservancy filed a Proof of Claim No. 16 for the sum of $170,000 relative to legal fees incurred in enforcing the terms of the Easement."

c.   Par. 3: The Debtor transferred personal property belonging to the estate to a Third Party, i.e., 20C, for $150,000.   The Trustee motion represents to the Court that this transfer possibly is against applicable Bankruptcy and/or Oklahoma State law.   The paragraph further goes on to read that the Conservancy is in the process of reacquiring these (improperly transferred items) and returning them to the Price Tower and its new owners, i.e., the McFarlin and Mayo Group. As per Case No. CJ-2024-237, in the District Court for Washington County, Oklahoma, the Debtor did not believe so.

d. Par. 4: "The Trustee and the Conservancy have entered into a Settlement Agreement regarding the referenced claims and any potential avoidance claims."  Paragraph 4, continues by stating that the Trustee will further:

a. The Trustee will release any and all claims against the Conservancy arising out of or related to the above referenced state court proceeding and shall cause to be filed in the state court matter a dismissal of all claims.

b. The Conservancy shall withdraw its Proof of Claim and shall release any and all claims against this estate.

b. The Trustee shall release any and all avoidance claims with respect to the pre-petition transfers of property to 20C.

II (2).  As seen from the above highlights, supra, the Trustee's Motion to Settle centers around (1) a district court action that the Debtor, through its representative Cynthia Blanchard, rightfully filed against the FLWC as it relates to an easement that the Trustee believes applies and the debtor.

Obviously through her legal filings, on behalf of the Debtor Mrs. Blanchard did not placing the case and the issues therein which overlap with the Trustee's proposed settlement at issue. The Movants, are also shareholders within the Debtor, agree with the legal position Mrs. Blanchard took in the Oklahoma District Court action and believe that the Debtor would have won that case had it proceeded and would be possibly seeking deposition and/or trial testimony.

II (3). Movant's believe that the Trustee should be prosecuting the district court action brought by the Debtor through Mrs. Blanchard, not rewarding the FLWC for engaging in the allegations already set forth within the Movants' Objections. This would be an added reason for the taking of Mrs. Blanchard's testimony as the Trustee is looking to dismiss what the Movants believe is a valid lawsuit and the issues thereon are on point as to the Trustee's proposed settlement. Only Mrs. Blanchard can speak to the issues and matters which she would be the one with the firsthand knowledge and participation.

II (4). The individual best suited to speak for the Debtor, is certainly not the Trustee who has taken the side of the FLWC against the Debtor as indicated by the terms of the proposed settlement. Cynthia Blanchard is the person believed to be with the most knowledgeable and was the one who filed or caused the filing of the lawsuit on behalf of the Debtor against the FLWC, with whom the Trustee wants to settle with as well as allow a company known as 20C Design to benefit off of the conspiracy and possession argued within the Movant's objections.

II (5). As the Movant's have alleged throughout these proceedings, including against the claim filed personally by Mrs. Blanchard, that Mrs. Blanchard is alleged to have been self-dealing, self-profiting, and engaged in improper disposal of Debtor's assets, amongst other things, the issues arising from and out of the FLWC's claim, the Trustee's Motion to Settle and the Movant's Objections all overlap. Mrs. Blanchard is in the best position to talk about the alleged missing

property and its transference, monies allegedly made, the whereabouts of these missing art collectables, her dealings with this third party company 20C Designs who the Movants had placed on Notice through Evidence Preservation Letters prior to the end of the believed transactions, Mrs. Blanchard's receipt of an several evidence preservation letters on behalf of the Movants, and even the FLWC's allegations that the Debtor might have illegally moved at least $150,000 dollars of assets.

II (6). Bottom line is Mrs. Blanchard is a material witness and whether she wants to retain counsel or exercise a Constitutional Amendment challenge as to certain questions, that is her right, however, that does not provide legal justification to prevent a deposition. At this juncture, the undersigned attorney has not noticed her and does not even have the questions in mind as to what he would specifically ask.

### III.    **ECF 278, September 4, 2025, Scheduling Order**:

1.    As a result of the Scheduling Hearing held on the Trustee's Objections to Movants' claims, the Court issued ECF 278.  The Court ruled, in part, that, "*THIS MATTER comes on for Scheduling Conference before the Court. The Court finds cause exists to establish a schedule regarding the Trustee's Objections to Proof of Claims…*".

2.    ECF 278 has allowed for discovery to be taken as to the Movants' claims.  Part of the discovery to be taken, as noted by Mrs. Blanchard, are depositions.  If and when it is decided that Mrs. Blanchard's deposition is warranted, the Movants shall serve notice unless ordered otherwise.

3.    Mrs. Blanchard, as president of the Debtors, the person who retained and hired the Movants, the person who the Movants answered to, and one of the people with the most

knowledge, is also a material witness as to the Movants' claims, making her testimony completely relevant.

IV.     **MRS. BLANCHARD'S RENEWED MOTIONS FOR PROTECTIVE ORDER ARE NOT RIPE**.

1.      At this juncture, the undersigned has not formulated what trial strategy or witnesses he will be calling for deposition, discovery or trial.  As Mrs. Blanchard is aware, just prior to the Debtors bankruptcy filing, the Movants were close to filing a Shareholder Derivative Action alleging intentional torts, and the Parties were in settlement discussions.  The artwork, also at issue involving third party companies such as 20C Design which is involved within the Trustee's Settlement terms with the FLWC were part of discussions that the Movants were having with the Debtor through its General Counsel.  Thus, when Mrs. Blanchard alleges that she has had prior proceedings with Mr. Brand, this intended Derivative Shareholder Lawsuit is assumed to be what she is referring to as there have been no actual prior proceedings and these discussions were 99% done not with Mrs. Blanchard but with her legal counsel, Paul Aubert.

2.      The Movants have not yet sent out discovery nor set depositions.  Mrs. Blanchard's attempted Conferral doesn't address a deposition as she was not served, but is a demand that the Movants serve her with Document Requests within the next two business days.


WHEREFORE, the Movants hereby pray that this Court grant the relief sought herein, including but not limited to, a complete Denial of Cynthia Blanchard's Motions (Renewed) for Protective Order (ECF 283 & 284), as well as any and all other relief deemed just and proper.

RESPECTFULLY SUBMITTED ON THIS 10TH day of September, 2025.

/s/ *Craig A. Brand, Esq.*

By: _____

    Craig Alan Brand, Esq.
    FBN: 896111
    Tel. (305) 878-1477
    6462 S. Jamaica Circle
    Englewood, Colorado 80111

**On behalf of and for:**
PICTORIA STUDIOS USA, INC. (Claim No. 14), and
TAKTIK ENTERPRISES, INC. (Claim No. 4).

## NOTICE OF OPPORTUNITY FOR HEARING

Your rights may be affected. You should read this document carefully and consult your attorney about your rights and the effect of this document. If you do not want the Court to grant the requested relief, or you wish to have your views considered, you must file a written response objection to the requested relief with the Clerk of the United States Bankruptcy Court for the Northern District of Oklahoma, 224 South Boulder, Tulsa, Oklahoma 74103 no later than 7 days from the date of filing of this request for relief. You should also serve a file-stamped copy of your response or objection to the undersigned movant/movant's attorney [and others who are required to be served] and file a certificate of service with the Court. If no response or objection is timely filed, the Court may grant the requested relief without a hearing or further notice. The 7 day period includes the three (3) days allowed for mailing provided for in Fed. R. Bankr. P. 9006(f). *The moving party shall calculate the appropriate response time. If a response time is prescribed by applicable statute, rule, or order, the moving party shall add to the prescribed response time unless service is accomplished by hand delivery, the three (3) days required for mailing under Bankruptcy Rule 9006(f). If a response time is not prescribed by applicable statute, rule, or order, the response time shall be fourteen (7) days, which includes the three (3) days required for mailing under Bankruptcy Rule 9006(f).

## <u>CERTIFICATE OF SERVICE</u>

    I hereby certify that a true and correct copy of this foregoing Motion to Compel Trustee for a Proper Accounting was ECF filed with the Clerk of Court on this 10th day of September, 2025, as well as mailed by US first class mail to:

Cynthia Diane Blanchard, pro se
414 SE Washington Blvd. Ste. 205
Bartlesville, OK 74006
310-435-5707

/s/ *Craig A. Brand, Esq.*

By: _____
    Craig Alan Brand, Esq.
    FBN: 896111
    Tel. (305) 878-1477
    6462 S. Jamaica Circle
    Englewood, Colorado 80111

**On behalf of and for:**
PICTORIA STUDIOS USA, INC. (Claim No. 14), and
TAKTIK ENTERPRISES, INC. (Claim No. 4).

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF OKLAHOMA

IN RE:
**GREEN COPPER HOLDINGS, LLC** )    **CASE NO. 25-10088-T**
**EIN # xx-xxx9708** )    **Chapter 7**
                                 )
**COPPER TREE, INC.** )    **Substantively Consolidated**
**EIN # xx-xxx6608** )
                                 )
**THE INN AT PRICE TOWER INC.** )
           **Debtors.** )
_____/

## CLAIMANT PICTORIA STUDIOS USA, INC., AND CLAIMANT TAKTIK ENTERPRISES, INC.
## REQUEST FOR HEARING

       COMES NOW **PICTORIA STUDIOS USA, INC., (CLAIM NO. 14)**, **AND CLAIMANT TAKTIK ENTERPRISES, INC. (CLAIM NO. 4)** by and through their undersigned counsel and hereby files this Request for Hearing and states:

1.     Claimant, Cynthia Blanchard filed her Renewed Motions for Protective Order, ECF 283 & 284.

2.     In response, Pictoria and Taktik filed their Response to her Motions, found at ECF 289.

3.     Nothing further is due or needed.

4.     The timing is ripe to have this matter heard.

5.     WHEREFORE, the Movant hereby prays that this Honorable Court shall set a hearing on this matter as well as any and all other relief deemed just and proper.

RESPECTFULLY SUBMITTED ON THIS 1st day of November, 2025.

/s/ *Craig A. Brand, Esq.*

By: _____

Craig Alan Brand, Esq.
FBN: 896111
Tel. (305) 878-1477
6462 S. Jamaica Circle
Englewood, Colorado 80111

**On behalf of and for:**
PICTORIA STUDIOS USA, INC. (Claim No. 14)

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of this foregoing Request for Hearing was filed with the Clerk of Court on this 1st day of November, 2025. In addition, a copy was mailed by United States first class mail to the following recipient(s):

Cynthia Diane Blanchard, pro se
414 SE Washington Blvd. Ste. 205
Bartlesville, OK 74006
310-435-5707

/s/ *Craig A. Brand, Esq.*

By: _____

Craig Alan Brand, Esq.
FBN: 896111
Tel. (305) 878-1477
6462 S. Jamaica Circle
Englewood, Colorado 80111

**On behalf of and for:**
PICTORIA STUDIOS USA, INC. (Claim No. 14)

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF OKLAHOMA**

IN RE:
**GREEN COPPER HOLDINGS, LLC**    )       **CASE NO. 25-10088-T**
EIN # xx-xxx9708             )       **Chapter 7**
                             )
**COPPER TREE, INC.**           )       **Substantively Consolidated**
EIN # xx-xxx6608             )
                             )
**THE INN AT PRICE TOWER INC.**  )
       **Debtors.**         )
_____/

---

### CLAIMANT PICTORIA STUDIOS USA, INC., (Claim No. 14),  AND CLAIMANT TAKTIK ENTERPRISES, INC. (Claim No. 4) RESPONSE/OBJECTION TO MOTION FOR PROTECTIVE ORDER ECF 283 & 284, AND NOTICE OF OPPORTUNITY TO BE HEARD

COMES NOW **PICTORIA STUDIOS USA, INC., (CLAIM NO. 14)**, and, Claimant **TAKTIK ENTERPRISES, INC. (Claim No. 4), (together "Movants"),** by and through their undersigned counsel and hereby files this Objection/Response to Cynthia Blanchards Renewed Motion for Protective Order, ECF 283 & 284, and Notice of Opportunity to be heard, and as grounds thereof states as follows:

I.    **Back Ground And Yet Another Defective Attempt At Conferral**:

a.    On September 4, 2025, Mrs. Blanchard filed ECF 279.  This filing was a Motion for Protective Order against some possible future, undefined discovery events that might or might not happen.

b.    On September 5, 2025, The Court, Sui Sponte, ECF 280, issued a Denial of ECF 279 as the Court noted that Mrs. Blanchard failed to meet and confer regarding the relief she was requesting.

c. On September 8, 2025, Mrs. Blanchard emails the undersigned attorney the following:

> Mr. Brand,
>
> Pursuant to Fed. R. Civ. P. 26(c), made applicable through the Bankruptcy Rules, I am making a good-faith attempt to confer regarding discovery directed to me. Please provide in writing any discovery issues you wish to address within two business days of this email. I will respond in writing, with the Trustee included, within two business days of receiving your list.
>
> Respectfully,
> Cynthia Diane Blanchard
>
> cc: Trustee Patrick J. Malloy III

d. Mrs. Blanchard's above stated email does not represent a Meet and Conferral as Fed. R. Civ. P. 26(c)(1); Fed. R. Bankr. P. 7026, 9014(c), hold that the representation "must include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action."

e. Mrs. Blanchard's September 8, 2025 Email:

    i. Is not a meet and conferral as contemplated under the rules. <u>It is a demand that the undersigned attorney, within two days, provide her in writing with discovery issues I want to present</u>. This demand holds very little relation to her motion which is to try and prevent the taking of her depositon.

    ii. Nothing within this email talks about or discusses any issue concerning any deposition as suggested by her Renewed Motion for Protective Order.

    iii. There is no showing that the undersigned must forecast his discovery or deposition questions to a deponent in advance; defeating some of the purposes and objectives of taking a deposition or merely putting the witness on the stand so as to avoid any pre-tells.

    iv. Wherefore, this email attempt at conferral is fatally defective.

f.     On September 8, 2025, Mrs. Blanchard files ECF 283 & 284 which appear to be the same Renewed Motion for Protective Order only in ECF 284 a Certificate of Service is added which takes the document to the next page.

II.     **ECF 283 & 284 Should Be Denied**.

**1.**

a.     On Page 1, "Introduction" section, Mrs. Blanchard states that a deposition of herself would, "… impose undue burden, risk of intimidation, and invite questions far outside the scope of the settlement at issue".   There is no showing, no specifics, nothing but fear of her answers under oath which would support or justify these conclusory statements.

b.     "The lady doth protest too much, me thinks," from William Shakespeare's Hamlet.

c.     On September 4, 2025, a hearing was held and two Orders issued.  The first Order, ECF 276 pertains to the Trustees Motion for Approval of a Settlement with the Frank Lloyd Write Conservancy, ECF 156.  Movants filed Objections to the Trustee's proposed settlement, ECF 208, 208-1 & 207, 207-1.

**As stated within the Movant's Objections (ECF 207 & 208), the:**

<u>(2)</u>     **Relevant Portions Of The Trustee's Motion [ECF 156] Are As Follows**:

a.  Par. 1: <mark>The debtor herein</mark> filed a civil action against the **Frank Lloyd Wright Building Conservancy,** an Illinois not-for- profit corporation ("Conservancy"), Case No. CJ-2024-237, in the District Court for Washington County, Oklahoma. "The claims asserted by the consolidated Debtors constitute property of the estate."

b.  Par. 2: "Subsequent to the commencement of these proceedings, the Conservancy filed a Proof of Claim No. 16 for the sum of $170,000 relative to legal fees incurred in enforcing the terms of the Easement."

c.  Par. 3: The Debtor transferred personal property belonging to the estate to a Third Party, i.e., 20C, for $150,000.  The Trustee motion represents to the Court that this transfer possibly is against applicable Bankruptcy and/or Oklahoma State law.  The paragraph further goes on to read that the Conservancy is in the process of reacquiring these (improperly transferred items) and returning them to the Price Tower and its new owners, i.e., the McFarlin and Mayo Group. As per Case No. CJ-2024-237, in the District Court for Washington County, Oklahoma, the Debtor did not believe so.

d. Par. 4: "The Trustee and the Conservancy have entered into a Settlement Agreement regarding the referenced claims and any potential avoidance claims."  Paragraph 4, continues by stating that the Trustee will further:

a. The Trustee will release any and all claims against the Conservancy arising out of or related to the above referenced state court proceeding and shall cause to be filed in the state court matter a dismissal of all claims.

b. The Conservancy shall withdraw its Proof of Claim and shall release any and all claims against this estate.

b. The Trustee shall release any and all avoidance claims with respect to the pre-petition transfers of property to 20C.

II (2).  As seen from the above highlights, supra, the Trustee's Motion to Settle centers around (1) a district court action that the Debtor, through its representative Cynthia Blanchard, rightfully filed against the FLWC as it relates to an easement that the Trustee believes applies and the debtor.

Obviously through her legal filings, on behalf of the Debtor Mrs. Blanchard did not placing the case and the issues therein which overlap with the Trustee's proposed settlement at issue. The Movants, are also shareholders within the Debtor, agree with the legal position Mrs. Blanchard took in the Oklahoma District Court action and believe that the Debtor would have won that case had it proceeded and would be possibly seeking deposition and/or trial testimony.

II (3). Movant's believe that the Trustee should be prosecuting the district court action brought by the Debtor through Mrs. Blanchard, not rewarding the FLWC for engaging in the allegations already set forth within the Movants' Objections. This would be an added reason for the taking of Mrs. Blanchard's testimony as the Trustee is looking to dismiss what the Movants believe is a valid lawsuit and the issues thereon are on point as to the Trustee's proposed settlement. Only Mrs. Blanchard can speak to the issues and matters which she would be the one with the firsthand knowledge and participation.

II (4). The individual best suited to speak for the Debtor, is certainly not the Trustee who has taken the side of the FLWC against the Debtor as indicated by the terms of the proposed settlement. Cynthia Blanchard is the person believed to be with the most knowledgeable and was the one who filed or caused the filing of the lawsuit on behalf of the Debtor against the FLWC, with whom the Trustee wants to settle with as well as allow a company known as 20C Design to benefit off of the conspiracy and possession argued within the Movant's objections.

II (5). As the Movant's have alleged throughout these proceedings, including against the claim filed personally by Mrs. Blanchard, that Mrs. Blanchard is alleged to have been self-dealing, self-profiting, and engaged in improper disposal of Debtor's assets, amongst other things, the issues arising from and out of the FLWC's claim, the Trustee's Motion to Settle and the Movant's Objections all overlap. Mrs. Blanchard is in the best position to talk about the alleged missing

property and its transference, monies allegedly made, the whereabouts of these missing art collectables, her dealings with this third party company 20C Designs who the Movants had placed on Notice through Evidence Preservation Letters prior to the end of the believed transactions, Mrs. Blanchard's receipt of an several evidence preservation letters on behalf of the Movants, and even the FLWC's allegations that the Debtor might have illegally moved at least $150,000 dollars of assets.

II (6). Bottom line is Mrs. Blanchard is a material witness and whether she wants to retain counsel or exercise a Constitutional Amendment challenge as to certain questions, that is her right, however, that does not provide legal justification to prevent a deposition. At this juncture, the undersigned attorney has not noticed her and does not even have the questions in mind as to what he would specifically ask.

III.   **ECF 278, September 4, 2025, Scheduling Order**:

1.   As a result of the Scheduling Hearing held on the Trustee's Objections to Movants' claims, the Court issued ECF 278.  The Court ruled, in part, that, "*THIS MATTER comes on for Scheduling Conference before the Court. The Court finds cause exists to establish a schedule regarding the Trustee's Objections to Proof of Claims…*".

2.   ECF 278 has allowed for discovery to be taken as to the Movants' claims.  Part of the discovery to be taken, as noted by Mrs. Blanchard, are depositions.  If and when it is decided that Mrs. Blanchard's deposition is warranted, the Movants shall serve notice unless ordered otherwise.

3.   Mrs. Blanchard, as president of the Debtors, the person who retained and hired the Movants, the person who the Movants answered to, and one of the people with the most

knowledge, is also a material witness as to the Movants' claims, making her testimony completely relevant.

IV. **MRS. BLANCHARD'S RENEWED MOTIONS FOR PROTECTIVE ORDER ARE NOT RIPE**.

1. At this juncture, the undersigned has not formulated what trial strategy or witnesses he will be calling for deposition, discovery or trial. As Mrs. Blanchard is aware, just prior to the Debtors bankruptcy filing, the Movants were close to filing a Shareholder Derivative Action alleging intentional torts, and the Parties were in settlement discussions. The artwork, also at issue involving third party companies such as 20C Design which is involved within the Trustee's Settlement terms with the FLWC were part of discussions that the Movants were having with the Debtor through its General Counsel. Thus, when Mrs. Blanchard alleges that she has had prior proceedings with Mr. Brand, this intended Derivative Shareholder Lawsuit is assumed to be what she is referring to as there have been no actual prior proceedings and these discussions were 99% done not with Mrs. Blanchard but with her legal counsel, Paul Aubert.

2. The Movants have not yet sent out discovery nor set depositions. Mrs. Blanchard's attempted Conferral doesn't address a deposition as she was not served, but is a demand that the Movants serve her with Document Requests within the next two business days.

WHEREFORE, the Movants hereby pray that this Court grant the relief sought herein, including but not limited to, a complete Denial of Cynthia Blanchard's Motions (Renewed) for Protective Order (ECF 283 & 284), as well as any and all other relief deemed just and proper.

RESPECTFULLY SUBMITTED ON THIS 10TH day of September, 2025.


/s/ *Craig A. Brand, Esq.*

By: _____
    Craig Alan Brand, Esq.
    FBN: 896111
    Tel. (305) 878-1477
    6462 S. Jamaica Circle
    Englewood, Colorado 80111

**On behalf of and for:**
PICTORIA STUDIOS USA, INC. (Claim No. 14), and
TAKTIK ENTERPRISES, INC. (Claim No. 4).

## NOTICE OF OPPORTUNITY FOR HEARING

Your rights may be affected. You should read this document carefully and consult your attorney about your rights and the effect of this document. If you do not want the Court to grant the requested relief, or you wish to have your views considered, you must file a written response objection to the requested relief with the Clerk of the United States Bankruptcy Court for the Northern District of Oklahoma, 224 South Boulder, Tulsa, Oklahoma 74103 no later than 7 days from the date of filing of this request for relief. You should also serve a file-stamped copy of your response or objection to the undersigned movant/movant's attorney [and others who are required to be served] and file a certificate of service with the Court. If no response or objection is timely filed, the Court may grant the requested relief without a hearing or further notice. The 7 day period includes the three (3) days allowed for mailing provided for in Fed. R. Bankr. P. 9006(f). *The moving party shall calculate the appropriate response time. If a response time is prescribed by applicable statute, rule, or order, the moving party shall add to the prescribed response time unless service is accomplished by hand delivery, the three (3) days required for mailing under Bankruptcy Rule 9006(f). If a response time is not prescribed by applicable statute, rule, or order, the response time shall be fourteen (7) days, which includes the three (3) days required for mailing under Bankruptcy Rule 9006(f).

## <u>CERTIFICATE OF SERVICE</u>

    I hereby certify that a true and correct copy of this foregoing Motion to Compel Trustee

for a Proper Accounting was ECF filed with the Clerk of Court on this 10th day of September,

2025, as well as mailed by US first class mail to:

Cynthia Diane Blanchard, pro se
414 SE Washington Blvd. Ste. 205
Bartlesville, OK 74006
310-435-5707


/s/ *Craig A. Brand, Esq.*

By: _____
    Craig Alan Brand, Esq.
    FBN: 896111
    Tel. (305) 878-1477
    6462 S. Jamaica Circle
    Englewood, Colorado 80111

**On behalf of and for:**
PICTORIA STUDIOS USA, INC. (Claim No. 14), and
TAKTIK ENTERPRISES, INC. (Claim No. 4).

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF OKLAHOMA

| | | | |
|---|---|---|---|
| IN RE: | | | |
| **GREEN COPPER HOLDINGS, LLC** | ) | **CASE NO. 25-10088-T** | |
| EIN # xx-xxx9708 | ) | **Chapter 7** | |
| | ) | | |
| **COPPER TREE, INC.** | ) | **Substantively Consolidated** | |
| EIN # xx-xxx6608 | ) | | |
| | ) | | |
| **THE INN AT PRICE TOWER INC.** | ) | | |
| Debtors. | ) | | |
| | / | | |

## CLAIMANT PICTORIA STUDIOS, TAKTIK ENTERPRISES & ATTORNEY CRAIG BRAND'S RESPONSE IN OPPOSITION TO CYNTHIA BLANCHARD'S MOTION TO VACATE (ECF 384) AND REQUEST THAT THE COURT INVOKE IT'S INHERENT SANCTION AUTHORITY

COMES NOW **PICTORIA STUDIOS, TAKTIK ENTERPRISES & ATTORNEY CRAIG BRAND** and hereby files this Response In Opposition to Cynthia Blanchard's Motion To Vacate and Overturn, (filed as "ECF 384"), and Request that the Court Invoke its Inherent Sanction Authority, and as grounds thereof states as follows:

I.     **INHERENT POWER OF THE COURT TO ISSUE SANCTIONS**.

1.     Federal Court's have the inherent power to issue sanctions or take appropriate actions when in the best interest of justice. *See*, Chambers v. NASCO, Inc., 501 U.S. 32, 46, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991), where the Defendant asks the court to sanction plaintiff under its "inherent power to impose sanctions for ... bad-faith conduct" and "litigation abuses[.]". Indeed, the Supreme Court recognizes this inherent authority "includes 'the ability to fashion an appropriate sanction for conduct which abuses the judicial process.'" Goodyear Tire & Rubber Co. v. Haeger, 581 U.S. 101, 137 S. Ct. 1178, 1186, 197 L.Ed.2d 585 (2017) (quoting Chambers, 501 U.S. at 44–45, 111 S.Ct. 2123).

2.      One kind of "permissible sanction is an 'assessment of attorney's fees'" which is an order "instructing a party that has acted in bad faith to reimburse legal fees and costs incurred by the other side." <u>Goodyear Tire & Rubber Co.</u>, 137 S. Ct. at 1186 (quoting <u>Chambers</u>, 501 U.S. at 45, 111 S.Ct. 2123).  But an order imposing attorney's fees in a civil case "must be compensatory rather than punitive in nature." *Id.*

3.      A court may award attorney's fees to the prevailing party if the court finds that the other party asserted a claim that was frivolous, unreasonable, or groundless, or litigated an action in bad faith.

4.      Here the Respondents would represent that Mrs. Blanchard's bad-faith litigation has caused substantial, unnecessary attorney's fees having to be generated, at the expense of the Estate by the Trustee. and by the Respondents through counsel.

5.      In the United States Bankruptcy Court for the Northern District of Oklahoma, courts also possess inherent authority—rooted in 11 U.S.C. § 105(a) and federal common law principles—to impose sanctions, including awards of reasonable attorney's fees and costs to the prevailing party, for abusive, frivolous, unreasonable, groundless, or bad faith litigation conduct by any party, including pro se litigants.  This authority supplements but is distinct from statutory or rule-based sanctions (e.g., FRBP 9011), allowing courts to deter misconduct that undermines the judicial process, even absent a specific rule violation. <u>Pro se status does not shield litigants from such sanctions; courts hold them to the same standards and may impose them upon a finding of objective unreasonableness or subjective bad faith, tailored to deter repetition without being punitive</u>.  *See*, <u>In re Wallace</u>, 288 B.R. 139 (Bankr. N.D. Okla. 2002), <u>In re Nichols</u>, 221 B.R. 275 (Bankr. N.D. Okla. 1998), <u>In re Ray</u> (Ray v. University of Tulsa), 283 B.R. 70 (Bankr. N.D. Okla. 2002).

6.     Case law for the Northern District of Oklahoma Bankruptcy Court consistently recognizes and application of inherent powers to address pro se misconduct, with fee awards available to prevailing parties upon findings of frivolity or bad faith. For instance, while _Wallace_ focused on non-monetary deterrence, it explicitly contemplates fee sanctions, aligning with broader Tenth Circuit precedent applying *Chambers* to bankruptcy contexts. *Id*.

II.     **CYNTHIA BLANCHARD, AS A PRO SE, MUST MEET THE SAME STANDARDS AS REPRESENTED PARTIES**.

9. The Blanchard's would like to garner the Court's sympathy by intentionally choosing to prosecute her claim pro se.  Respondents believe this is a deliberate strategy rather than a financial necessity.

10.     The undersigned counsel, has first-hand knowledge and plenty of evidence, that Mrs. Blanchard uses Attorney Paul Aubert, also a claimant herein, as personal counsel as does her husband who is intertwined herein.  Part of Mrs. Blanchard's 168 page motion and Exhibits (ECF 384, et.al.), attaches numerous emails copying Mr. Aubert, Esq. and Ron Brown, Esq., another lawyer for Cynthia Blanchard, on legal issues or matters being discussed herein this litigation.  Thus, the ability to retain or possess counsel is not the issue for Mrs. Blanchard, but playing to the Court's sympathy as well as her on-line followers is the working strategy.

11.    Mrs. Blanchard also claims to be the vast majority shareholder[1] of the two debtor entities whom both utilized an attorney to file their bankruptcies as well as Mr. Aubert, Esq., as supposed General Counsel[2].

12.    Mrs. Blanchard would like the Court and public to believe her woe-me fictional tales, not only in her "made for Disney" fictional filings, but that she is forced to represent herself. However, out of the other side of her web of deceit and alleged intentional misrepresentations made to the Court and Trustee, Mrs. Blanchard claims to have "lent" the debtors in excess of a fungible amount exceeding $500,000. (*See*, Claims 1-1, 1-2).

13.    A large sum of money that if true, any reasonable person would lawyer up and/or fight to the end utilizing discovery and depositions as tools of the trade.  Yet, she treats this sum in excess of a half million dollars as insignificant, refusing to provide proof, engage in discovery, or defend it further (see ECF 202, 357).

14.    Ms. Blanchard has been intentionally avoiding being placed under oath, where conflicting evidence could emerge. Upon being informed by third parties, the Blanchards now live or looking to live outside the U.S. If correct, this might be a motive why Mrs. Blanchard is trying so hard to  cause discovery delays and not give sworn testimony.

15.    Mrs. Blanchard knows what will happen when she is placed under oath, and faced with competing evidence, as she is doing everything possible, vis-a-vis engaging in bad-faith and filing frivolous motions so as to prevent her participation in discovery and transparency, as to her actions or inactions.

---

[1] Mrs. Blanchard's stock position is challenged as she never paid for the equity received despite the company's establishment being predicated on her capitalizing the company in equal consideration to the Respondents. Otherwise, the equity Mrs. Blanchard took should have been treasury stock to have been used to raise money for the debtor entities.

[2] It is alleged that despite Mr. Aubert supposedly being General Counsel for the debtor entities he was really acting within the interests and under the direction of Mrs. Blanchard in any capacity she asked and at the detriment of the shareholders; thus at the detriment of the debtor entities.

16. In this court, pro se litigants like Ms. Blanchard, must follow the same procedural and substantive rules as those with lawyers, including the Federal Rules of Bankruptcy Procedure and local rules. Lack of legal training does not excuse mistakes, though judges may occasionally provide basic procedural guidance. See In re Wallace, 288 B.R. 139 (Bankr. N.D. Okla. 2002); In re Nichols, 221 B.R. 275 (Bankr. N.D. Okla. 1998); In re Ray (Ray v. University of Tulsa), 283 B.R. 70 (Bankr. N.D. Okla. 2002).

### III. MS. BLANCHARD'S MOTION (ECF 384) CONSTITUTES FRAUD ON THE COURT AND A FURTHER EFFORT TO AVOID TESTIMONY UNDER OATH

17. The Respondents are also claimants and shareholders of the Debtors.

18. Prior to Mrs. Blanchard instructing her lawyers to place the Debtors' into bankruptcy, the Respondents placed the entities, Mrs. Blanchard and her attorney Paul Aubert, Esq., on legal notice with Evidence Preservation Letters and Notices of Intent to Initiate Litigation.[3] Some of the claims the Respondents intended on prosecuting, of which Mrs. Blanchard is aware, included but not limited to claims for intentional wrongdoing that may have other implications and malpractice as to Claimant and personal counsel Paul Aubert.

19. Mrs. Blanchard's ECF 384 is really a Hail Mary or last ditch effort to divert the Court from her refusals to:

    a. Answer Interrogatories from Claimant Pictoria Studios;

    b. Respond to Requests for Production from Claimant Pictoria Studios;

---

[3] Some of these Notices and Evidence Preservation Demands, for which the Respondents believe Mrs. Blanchard have been breached as per affidavits filed, have been attached as Exhibits to Respondent's claims, motions and responses to motions filed by Mrs. Blanchard.

c.      Pictoria Studios Request for Hearing and Compel (ECF 346) Mrs. Blanchard to comply with Discovery and Deny her Motion for Protective Order as baseless;

d.      Respond to Requests for Production by Taktik Enterprises;

e.      Mrs. Blanchard has filed no less than 3 frivilous Motions for Protective Orders as to the taking of her deposition and engaging in the Respondent's Discovery.  The Respondents have filed appropriate responses to each of these groundless, delay tactics and have requested a hearing be held to deny her motions;

f.      Mrs. Blanchard refuses to be deposed and put under oath;

g.      Mrs. Blanchard in her ECF 381 Motion, knowingly violated, continues to violate and fails to cure a material Confidentiality Filing obligation.  Filed and made public ECF 341-4, an Unredacted W9 belonging to Taktik Enterprises, Inc., an innocent party in Mrs. Blanchard's Motion against the undersigned, in complete violation of FRBP 9037 and the Local Rules for the Northern District Court of Oklahoma, REDACTION – PRIVACY 5005-1(F). *See*, Brand's Response ECF 342.

h.      Mrs. Blanchard had come into possession of Taktik's tax information under and pursuant to a Confidentiality Clause contained within its employment agreement and has now proven herself to be a danger to the public with her either ignorance to the law she is supposed to have become familiar with or her entitlement attitude towards this Court and these proceedings.  *See,* In re Whitson, 572 B.R. 836 (Bankr. N.D. Ga. 2017): (Court seals unredacted pro se docs but warns of sanctions for FRBP 9037 non-compliance).

i.   Contained in APPENDIX A CM/ECF ADMINISTRATIVE GUIDE OF

POLICIES AND PROCEDURES, page 6, X. REDACTION:

**Tax Documents.** A CM/ECF User filing tax returns that are required to be filed
pursuant to a request under 11 U.S.C. § 521(f) shall redact all personal data
identifiers before filing the tax return. To file a tax return as a secure event (i.e., a
document that cannot be viewed by the general public) as required by Local Rule
4002-1(C), the CM/ECF User shall choose "Miscellaneous/Other" on the
Bankruptcy Events screen and choose "Tax Documents" as the document to be
filed. The ECF System will automatically limit access to "Tax Documents" to the
filer and the Court.

20.   Mrs. Blanchard is clearly in direct violation of the District and Bankruptcy Court's

redaction rules evidencing a continued violation and ignorance of the rules and laws of Federal

practice.

21.   Mrs. Blanchard filed a completely frivolous Motion against the undersigned

attorney (ECF 341), showing her ignorance and lack of due diligence towards the Federal Rules

and Rules of this Court.  The undersigned filed a Response (ECF 342) taking great care to educate

Mrs. Blanchard so that we could dispense with the needlessness and the fact that she does not

engage in proper Meet and Conferrals as required. However, despite the Response filed and served

on her, ECF 342, Mrs. Blanchard improperly doubles down in her new and repetitive motion (ECF

384).  Mrs. Blanchard can no longer claim ignorance as ECF 342 vitiates her claim that the

undersigned was improperly admitted.  Her current allegations are intentional deceptions, bad-

faith tactics, and possibly aimed at her online audience based on related social media activity.

22.   Given this conduct, the Respondents request that the Court revoke Ms. Blanchard's

pro se status and require her to retain counsel. To prevent repetition, we also seek attorney fees,

costs, and dismissal of her claims stemming from the disruption caused by her frivolous,

intentional and on-going filings, including but not limited to her three frivolous Motions for

Protective Orders and disturbing motions filed as "ECF 341 and 384".

23.     As ECF 342, appropriately responds to the material aspects of Mrs. Blanchard's Motion (ECF 384), her motion should be Denied with Prejudice.  In ECF 384, on the first page, she requests the following 3 prayers for relief:

a.  Unauthorized filings by noncompliant counsel in violation of Local Rule 83.3;

b.  The absence of statutorily required oversight due to the temporary furlough of the Office of the US Trustee, and

c.  Additional procedural irregularities that materially impacted Movant's rights as a creditor and the administration of this estate. Movant requests review and correction of orders entered during this defective period and preservation of remaining estate assets pending proper oversight and compliance.

24.     Respondent's ECF 342 completely addresses and refutes Mrs. Blanchard's outrageous and frivolous allegations contained in her first and third (a)(c) prayers cited to above in paragraph 5, those prayers should be denied and sanctions awarded.

25.     Respondents defer paragraph 5(b) to the Trustee.

26.     Mrs. Blanchard has had every opportunity to timely object to everything she has claimed about, including the tax warrants she now brings into these procedures due to her failure to object to them as well.  She is at fault for all done but blames all others.

27.     She should be estopped from any late and last ditch efforts to object when she should have done so on a timely basis.  She has shown no good cause and excusable neglect.

IV. **CYNTHIA BLANCHARD'S OUTRAGEOUS AND FALSE ATTACK ON THE COURT, THE TRUSTEE, AND THE RESPONDENTS (*See*, ECF 384).**

28.     As the saying goes, "Desperate Times call for Desperate Measures" (*See*, Hippocrates in his work Aphorisms).

29.     ECF 384 is an abusive, frivolous, and bad-faith filing—a desperate attempt to shift blame from Ms. Blanchard to others.

30.     ECF 384 is a mud slinger, a smoke screen, serving to help Mrs. Blanchard hide from as well as hide the truth which will deny her claims and possibly open up other legal theories.

31.     Mrs. Blanchard, despite being placed on notice, continues to ignore the proper Meet and Conferral procedures as well as continuously and purposefully mails her Certificates of Service to the incorrect address for the undersigned.  Again, contemptuous conduct as her actions are demonstrative of an individual believing she is above the law.

32.     ECF 384 is convoluted and contemptuous and should be outright denied.

33.     On December 3, 2025, a Court Ordered Hearing was scheduled.  The Trustee and the Respondents were on the Court call.  The Court requested, more than once, for participants to announce themselves.  Mrs. Blanchard did not announce herself despite having ample opportunity.  Nor did she call in to the Court's judicial assistant a head of the hearing.   Reading ECF 384, Mrs. Blanchard admits in her Motion that she was on that call and listening, but did not announce herself.  She now hypocritically claims due process violations.

34.     Just touching upon some other highlighted areas of Mrs. Blanchard's Motion and further reasons for the Court to issue its inherent powers against Mrs. Blanchard, including the striking of her claim is as follows:

a. Mrs. Blanchard falsely claims that Taktik, Pictoria, FLWC, Haskell Keffer and Jones settlements should be reversed based on her unfounded suggestion that because some employees at the US Trustee's office were furloughed between October 1, and November 10, 2025, this limited furlough somehow effected the Court's job, performance and issuance of orders.

b. However, Mrs. Blanchard carefully leaves out that Taktik, Pictoria, FLWC, Haskell Keffer and Jones settlements were in advance of any furlough issues. In fact, Mrs. Blanchard fails to identify any furlough issues actually effecting this case.

c. Mrs. Blanchard's very own ECF 384-102 states that the United States Trustees Program (USTP) would be largely unaffected by the Government shutdown. The Court on its website states that the US Government's shut down will not effect this case or the Court's normal operations. Wherefore, Mrs. Blanchard's own exhibit undermines her own frivolous motion.

d. Even if the USTP had been shut down, which it had not, but if it had, Mrs. Blanchard fails to demonstrate how the Court's execution of any Order during this time would have been impacted by the USTP's furlough. The USTP has oversight on Trustees not Federal Judges.

35. **ND OK BK Court Website and/or vis-a-vis PACER**: Official **Phase 1** shut down notice from ND OK BK Court **–** October 1, 2025 to October 20, 2025 – "*A lapse in appropriations (aka "a shutdown") occurred for the federal government on October 1, 2025. However, the United States Bankruptcy for the Northern District of Oklahoma will remain open and all court hearings and operations will continue as scheduled*."

a. Mrs. Blanchard's Motion argues that the Government shut down between October 1, 2025 and October 20, 2025 would have tainted and void all settlements and Court Orders.

b.   However, not only does Mrs. Blanchard cite to ECF 384-102 and the rest of Exhibit 6, which proves her motion to be a farce but AT NO TIME DOES MRS. BLANCHARD OBJECT TO ANY OF THE ON-GOINGS IN THIS CASE AND **SHOULD BE JUDICIALLY ESTOPPED**.

c.   She cites ECF 384-102 (and Exhibit 6), which disproves her motion, yet she never objected contemporaneously. She is judicially estopped from arguing this now, as it causes prejudice, delay, and damage through bad-faith tactics.

d.   Ms. Blanchard does not believe her own claims: If the period was invalid, why did she file ECF 337 (October 7) and ECF 338 (October 9) without seeking to void them?

e.   **MRS. BLANCHARD DOES NOT BELIEVE HER OWN MOTION**. Mrs. Blanchard knows that the Court and this case was in proper order, if not, Mrs. Blanchard would not have filed ECF 337 on October 7, 2025 and ECF 338 on October 9, 2025.  While, Mrs. Blanchard in her current motion ECF 384 argues everything occurring from October 1 – October 20th should be voided, she conveniently leaves out the voidance of her own filings.

36.   **ND OK BK Court Website and/or vis-a-vis PACER**:  Official **Phase 2** shutdown notice from ND OK BK Court – October 20, 2025 to November 12, 2025  - "*Your bankruptcy case will proceed as normal and you should continue to pay all required fees, meet deadlines, and attend hearings. Failure to do so may result in the dismissal of your case……….  The Court may be operating at a reduced staffing level beginning October 20 but will continue to fulfill its constitutional duty of processing cases and holding hearings.*"

a.   This was the message Mrs. Blanchard would have received during this time period whereby informing her that all was well and proceeding normally.

b.      Yet, Mrs. Blanchard failed to make any objections to these proceedings or settlements and should be estopped from doing so.

c.      Mrs. Blanchard knew that this Honorable Court was functioning properly and normally as on October 20, 2025 and November 7, 2025, <u>she filed two more documents</u>. See, ECF 341 & 357.

d.      All along during the course of the closure period, which did not adversely affect this case, Mrs. Blanchard filed during this period 4 affirmative action pleadings.

e.      The fact that Mrs. Blanchard filed her Exhibit 6, as a document relied upon, demonstrates that had she actually read the content of this Exhibit it goes against her motion.  It should be assumed that Mrs. Blanchard did read Exhibit 6 and that is why not only she filed 4 affirmative action pleadings during that period, but that her Motion ECF 384 is knowingly and patently frivolous and meant for purposes of bad-faith litigation for which she should be held accountable.

## <u>REQUEST FOR HEARING SHOULD THE COURT DETERMINE A NEED:</u>

Craig A. Brand, ESQ. hereby requests a hearing on or after January 27, 2026 due to International commitments.

WHEREFORE, the Movant hereby prays that this Honorable Court:

1.       Deny ECF 384 in its entirety sui sponte or by way of holding a hearing.

2.      Revoke Mrs. Blanchard's rights to continue pro-se as her actions have proven disruptive, harassing, bad-faith litigation, in complete defiance of the rules of this Court and District, nothing more than delay tactics and smoke screens attempting to hide truths Mrs. Blanchard doesn't want to get on record.

3. Access, Mrs. Blanchard's conduct taken in this case and issue sanctions including but not limited to attorney fees in having to defend against her motions for Protective Orders, motion to revoke admission, and ECF 384.

4. Declare Mrs. Blanchard's late and prejudicial attempts at now objecting to matters long ago due to be denied on the basis of Estoppel. And,

5. Any and all other relief deemed just and proper.

RESPECTFULLY SUBMITTED ON THIS 15th day of December, 2025.

/s/ *Craig A. Brand, Esq.*

By: _____

    Craig Alan Brand, Esq.
    FBN: 896111
    Tel. (305) 878-1477
    6462 S. Jamaica Circle
    Englewood, Colorado 80111

**On behalf of and for:**
PICTORIA STUDIOS USA, INC. (Claim No. 14)
TAKTIK ENTERPRISES, INC. (Claim No. 4)

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of this foregoing Response to ECF 338 was filed with the Clerk of Court on this 15th day of December, 2025, as well as mailed by US first class mail to:

    Cynthia Diane Blanchard, pro se
    414 SE Washington Blvd. Ste. 205
    Bartlesville, OK 74006
    310-435-5707

/s/ *Craig A. Brand, Esq.*

By: _____

Craig Alan Brand, Esq.
FBN: 896111
Tel. (305) 878-1477
6462 S. Jamaica Circle
Englewood, Colorado 80111

**On behalf of and for:**
PICTORIA STUDIOS USA, INC. (Claim No. 14)
TAKTIK ENTERPRISES, INC. (Claim No. 4)