## US DISTRICT OKLAHOMA NORTH - BANKRUPTCY DIVISION

Copper Tree, Inc. (25-10084)

United States Bankruptcy Court, N.D. Oklahoma

Green Copper Holdings, LLC (25-10088)

United States Bankruptcy Court, N.D. Oklahoma

---

**OBJECTION TO PAYMENT TO BARNES AND BARNES REQUEST FOR EVIDENTIARY HEARING TO TAKE SWORN TESTIMONY UNDER** 30b(6) and Other Applicable rules in regards to BARNES AND BARNES ... **potentially illegal tax strategy** deployed, failing to recognize Tax Evasion in prior years, and other queries as stated.

IN THE COURT OF PUBLIC CONFUSION AND THE TRIBUNAL OF CHRONIC MISIDENTIFICATION ... COMETH NOW one *Mike Nelson* ... not *that* Mike Nelson, nor the other Mike Nelson, nor any of the approximately four-to-six thousand (4 - 6,000) similarly denominated citizens scattered across these United States—and respectfully moves this Honorable Court for emergency relief from the epidemic of Nominal Recklessness currently plaguing these proceedings.

STATEMENT OF JURISDICTION (Over the Republic of Mikes) This Court is hereby placed on notice that the name "Michael Nelson" exists in such staggering abundance within the territorial boundaries of the United States that it constitutes, for all practical and comedic purposes, a demographic phenomenon. By rough statistical extrapolation—using census surname frequency and the prolific propagation of the given name "Michael"—there are thousands of us. Thousands.

We are legion.
We are not organized.
We do not hold conventions.
We barely return each other's emails.

And yet, for reasons known only to fate and faulty Google searches, this particular Mike Nelson has been designated by certain excitable internet personalities as the Mike Nelson of their grievances.

Objection. Relevance. Foundation. Sanity. CLARIFICATION OF IDENTITY (Negative Pleading by Process of Elimination) Let the record reflect, clearly and without ambiguity:

I am not the fictional diver "Mike Nelson" portrayed by Lloyd Bridges in the television series *Sea Hunt*\*\*—a gentleman who resolved underwater emergencies with scuba tanks and dramatic narration.

If oxygen tanks were required in these proceedings, they would be for the suffocation caused by legal absurdity.

Nor am I Michael J. Nelson\* of *Mystery Science Theater 3000*\*\* fame.

Yes, I have heard the robot jokes.
No, I do not live in space.
Though during federal motion practice, I sometimes feel I do.

"I'm not that Mike Nelson. I'm the one who riffs… on municipal planning documents."

Nor am I the British installation artist known as Mike Nelson\*, architect of labyrinthine exhibitions in which patrons wander existentially through dimly lit corridors.

If you have recently found yourself lost in a maze, that was not my artistic commentary on modern capitalism.
That was my email inbox.   Nor am I Mike Nelson\*, who served in the Minnesota House of Representatives, nor am I currently stating MN is for Mike Nelson if when used MN is for Minnesota a US State!

Though I, too, possess strong feelings about committees, procedure, and the mystical belief that hearings must occasionally include listening.  Nor am I Michael B. Nelson\*, arranger for Prince and The Hornheads.  I do not arrange horns for Grammy-winning artists.
I arrange air horns for each time someone files "just one more extension."  Nor am I the Texas Tech football player named Michael Nelson\*.

I do not tackle running backs.
I tackle deadlines.
And occasionally fumble my scanner.

<u>ON THE MATTER OF ERRONEOUS WHISTLEBLOWER ATTRIBUTION</u> The undersigned further asserts, with solemnity and mild exasperation, that he is not the Mike Nelson alleged on social media to be a whistleblower against various persons of intrigue.

Despite this, threats, hate mail, and generalized hostility have been dispatched in my direction and toward my family, as though all Mike Nelsons share a single hive mind and collective litigation strategy.

We do not.

We cannot even coordinate lunch.

It appears that certain individuals believe that by locating *a* Mike Nelson, they have located *the* Mike Nelson.

This is the legal equivalent of suing every John Smith in North America because one forgot to return a lawnmower.

## THE DOCTRINE OF COMMON NOMINALITY

Where a name is so statistically abundant as to populate entire LinkedIn search results in scrollable perpetuity, due process demands precision. To threaten "Mike Nelson" without further specification is to cast a net so wide it ensnares comedians, artists, legislators, musicians, athletes, fictional scuba divers, and at least one person currently trying to file a motion without being confused for all of them. This Court is respectfully urged to recognize the emerging tort of Reckless Indiscriminate Googling. Heck this Court already has bore witness to arguing with Cynthia Blanchard over CHATGPT prompts for which Cindy French (as she is called in many places around the interwebs) has successfully put multiple attorneys in their place by her regurgitated Chat GPT lawyering which alone is pretty humorous as everyone around the world watches an American Court in full action letting the grifter run the show with ChatGPT as the lawyer! What a Joke the American Jurisprudence system has become, just look at how Cindy Blanchard ran the tables on everyone especially Craig Crand, that lawyer had to expend dozens of hours probably wasted better than 75 hours dealing with Blanchard's shenanigans. There are thousands of Mike Nelsons in this country. We are not a conspiracy. We are not a syndicate. We are not a cinematic universe. We are simply victims of alphabetical probability. NOW with this said and done and not to encourage Kane, Koehn, Blanchard and their thugs to carry out their threatened brutal murder, we do now herein sayeth, and shall regularly file to bring to the Court's attention the facts that seem to be absent in the proceedings given the horrific demonstration of the american judicial system by those herein playing with this measly million dollars remaining in the bankruptcy estate although everyone is remiss in the filing of TAXES, EYES the TAXES owed and due and payable should equal nearly $2.3 million according to many we have interviewed.

Barnes & Barnes expressly acknowledged unresolved entity-classification issues under the Internal Revenue Code—an issue that goes directly to federal tax liability, reporting obligations, and potential exposure under 26 U.S.C. §§ 7701, 1361–1362, and the "check-the-box" regulations, Treas. Reg. § 301.7701-1 et seq. The invoice further references the use of "strategy" to avoid or minimize tax exposure, language that, in the context of a Chapter 7 fiduciary administration, implicates the Trustee's statutory duties under 11 U.S.C. §§ 704(a)(1) and (a)(8) to faithfully administer estate property and file accurate tax returns. See *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343 (1985) (trustee assumes fiduciary responsibilities of debtor's management); *Mosser v. Darrow*, 341 U.S. 267 (1951) (trustee personally liable for willful or negligent breach of fiduciary duty).

This bankruptcy concerns a nationally recognized architectural landmark that functioned as a museum and repository of unique artwork, exhibits, and historically significant artifacts. The asset disposition at issue—reportedly conveyed for nominal consideration of Ten Dollars ($10.00)—raises serious valuation and tax consequences under 26 U.S.C. §§ 1001, 1011, and 1221–1222. Where property is transferred for consideration materially below fair market value, the Internal Revenue Service may recharacterize the transaction according to its substance rather than its form. See *Commissioner v. Court Holding Co.*, 324 U.S. 331 (1945); *Gregory v. Helvering*, 293 U.S. 465 (1935).

Any amounts realized in excess of adjusted basis constitute capital gain—short-term or long-term depending upon the holding period—with attendant reporting obligations and potential penalties under 26 U.S.C. §§ 6651, 6662, and 7201 where underreporting or evasion is implicated.

Moreover, to the extent the property was previously held or operated by a § 501(c)(3) organization, transactions conferring excess economic benefit upon insiders may trigger intermediate sanctions under 26 U.S.C. § 4958, including excise taxes of 25% and, if uncorrected, an additional 200% penalty on the excess benefit. See also Treas. Reg. § 53.4958-1 et seq. Transfers of charitable assets to insiders for inadequate consideration may also constitute self-dealing under 26 U.S.C. § 4941 (if a private foundation context applies), further compounding federal tax exposure.

In light of the nominal purchase price and the alleged insider relationships, the Court should scrutinize whether the transaction reflects bona fide arm's-length consideration or constitutes a constructive distribution, fraudulent transfer (11 U.S.C. §§ 548, 544), or excess benefit transaction subject to federal excise penalties. See *In re Taneja*, 743 F.3d 423 (4th Cir. 2014) (trustee obligated to maximize value and avoid improvident transfers); *In re Roco Corp.*, 701 F.2d 978 (1st Cir. 1983) (substance of transaction governs over form in bankruptcy context).

Accordingly, any "strategy" designed to suppress, defer, or recharacterize taxable gain arising from the disposition of nationally significant assets must be examined under both the Bankruptcy Code's fiduciary standards and the Internal Revenue Code's anti-abuse doctrines, including substance-over-form, step-transaction, and economic-substance principles (26 U.S.C. § 7701(o)). The record, as presently described, presents material questions regarding capital-gain realization, insider benefit, fiduciary compliance, and exposure to substantial civil—and potentially criminal—tax penalties.

Breach of Duty The trustee:

- Approved preparation of only one 'favorable' year (2025)
- Allowed it to be labeled "initial and final" (questionable at best)
- Failed to require filing of 2022–2024 returns
- Invoked § 505(b) without curing antecedent non-compliance

This is not discretion. It is dereliction.

EXAMINATION: Barnes & Barnes, Inc. & Darren Barnes

(Expanded to address § 505(b) use)

A. Knowledge of § 505(b) and Its Limits

1. You are familiar with 11 U.S.C. § 505(b), correct?

2. You understand that § 505(b) applies only to the specific tax return submitted, correct?

3. § 505(b) does not discharge liability for tax years that were never filed, correct?

4. § 505(b) does not cure an improperly sequenced or misleading return, correct?

B. Prior-Year Non-Filing

5. Before preparing the 2025 Form 1120, you knew Copper Tree existed prior to 2025, correct?

6. You were aware that Ms. Blanchard stated no corporate returns had been filed, correct?

7. You did not prepare or file corporate returns for 2022, correct?

8. You did not prepare or file corporate returns for 2023, correct?

9. You did not prepare or file corporate returns for 2024, correct?

10. You did not advise the trustee that those returns must be filed before seeking § 505(b) protection, correct?

C. "Initial and Final Return" Representation

11. Your invoice states: "2025 Indicated as Initial and Final Return," correct?

12. That statement was included without IRS confirmation, correct?

13. You did not include any disclosure explaining the absence of prior-year filings, correct?

14. You agree that a return cannot be "initial" if the corporation existed and operated previously, correct?

D. Contradiction With 2026 Filings

15. You prepared 2026 W-2s, correct?
16. You prepared payroll tax returns extending into 2026, correct?
17. A corporation issuing W-2s in 2026 is not terminated in 2025, correct?
    That directly contradicts the "final return" designation, correct?

E. Tax-Minimization Strategy vs. Compliance

19. You advised on offsetting capital gains with losses, correct?
20. You advised on cost-basis implications of debt assumption, correct?
21. These strategies reduce tax liability, correct?
22. You did not first require correction of delinquent filings, correct?
23. You did not warn the Court that § 505(b) would not protect missing years, correct?

F. Candor and Risk

24. You understood this case involves allegations of insider misconduct, correct?
25. You understood heightened scrutiny applies to tax filings in such cases, correct?
26. You nevertheless allowed a return to be filed that omitted required years, correct?

Stop. SUI SPONTE Court should ask further questions to give the APPEARANCE of Impartiality and the APPEARANCE that the American Judicial system is not a FARCE!

II. TRUSTEE FIDUCIARY-BREACH ANALYSIS

(Expanded for § 505(b))   Governing Duties

Under 11 U.S.C. § 704(a), a Chapter 7 trustee must:

- Collect and reduce property to money
- Be accountable for estate property
- Ensure lawful tax compliance
- Supervise professionals competently
- Make full and accurate disclosures to the Court

B. Breach Elements (All Satisfied)

1. Knowledge  The trustee knew or should have known:

- The debtor corporation existed before 2025; in fact the Trustee DID KNOW and heard first person approximately one year ago @ meeting of creditors.
- Prior returns were not filed (by debtor's own admission), when questioned by the Trustee Cynthia Blanchard testified under oath to having "never" filed a Barnes & Barnes expressly acknowledged unresolved entity-classification issues under the Internal Revenue Code—an issue that goes directly to federal tax liability, reporting obligations, and potential exposure under 26 U.S.C. §§ 7701, 1361–1362, and the "check-the-box" regulations, Treas. Reg. § 301.7701-1 et seq. The invoice further references the use of "strategy" to avoid or minimize tax exposure, language that, in the context of a Chapter 7 fiduciary administration, implicates the Trustee's statutory duties under 11 U.S.C. §§ 704(a)(1) and (a)(8) to faithfully administer estate property and file accurate tax returns. See *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343 (1985) (trustee assumes fiduciary responsibilities of debtor's management); *Mosser v. Darrow*, 341 U.S. 267 (1951) (trustee personally liable for willful or negligent breach of fiduciary duty).
- This bankruptcy concerns a nationally recognized architectural landmark that functioned as a museum and repository of unique artwork, exhibits, and historically significant artifacts. The asset disposition at issue—reportedly conveyed for nominal consideration of Ten Dollars ($10.00)—raises serious valuation and tax consequences under 26

- U.S.C. §§ 1001, 1011, and 1221–1222. Where property is transferred for consideration materially below fair market value, the Internal Revenue Service may recharacterize the transaction according to its substance rather than its form. See *Commissioner v. Court Holding Co.*, 324 U.S. 331 (1945); *Gregory v. Helvering*, 293 U.S. 465 (1935). Any amounts realized in excess of adjusted basis constitute capital gain—short-term or long-term depending upon the holding period—with attendant reporting obligations and potential penalties under 26 U.S.C. §§ 6651, 6662, and 7201 where underreporting or evasion is implicated.
- Moreover, to the extent the property was previously held or operated by a § 501(c)(3) organization, transactions conferring excess economic benefit upon insiders may trigger intermediate sanctions under 26 U.S.C. § 4958, including excise taxes of 25% and, if uncorrected, an additional 200% penalty on the excess benefit. See also Treas. Reg. § 53.4958-1 et seq. Transfers of charitable assets to insiders for inadequate consideration may also constitute self-dealing under 26 U.S.C. § 4941 (if a private foundation context applies), further compounding federal tax exposure.
- In light of the nominal purchase price and the alleged insider relationships, the Court should scrutinize whether the transaction reflects bona fide arm's-length consideration or constitutes a constructive distribution, fraudulent transfer (11 U.S.C. §§ 548, 544), or excess benefit transaction subject to federal excise penalties. See *In re Taneja*, 743 F.3d 423 (4th Cir. 2014) (trustee obligated to maximize value and avoid improvident transfers); *In re Roco Corp.*, 701 F.2d 978 (1st Cir. 1983) (substance of transaction governs over form in bankruptcy context).
- Accordingly, any "strategy" designed to suppress, defer, or recharacterize taxable gain arising from the disposition of nationally significant assets must be examined under both the Bankruptcy Code's fiduciary standards and the Internal Revenue Code's anti-abuse doctrines, including substance-over-form, step-transaction, and economic-substance principles (26 U.S.C. § 7701(o)). The record, as presently described, presents material questions regarding capital-gain realization, insider benefit, fiduciary compliance, and exposure to substantial civil—and potentially criminal—tax penalties.
- § 505(b) only applies to filed periods, what the Court is allowing here is a breach of ethics, morals and common sense, allowing the Trustee to essentially play "God" deciding what taxes to pay and which not to or which taxes to use aggressive "strategies" is equivalent of structure tax evasion demanding the harshest possible sentence.

2. Breach of Duty The trustee:

- Approved preparation of only one 'favorable' year (2025)
- Allowed it to be labeled "initial and final" (questionable at best)
- Failed to require filing of 2022–2024 returns
- Invoked § 505(b) without curing antecedent non-compliance

This is not discretion. It is dereliction.

3. Causation The trustee's failure resulted in:

- Misleading filings before the Court
- False appearance of tax finality
- Continued exposure of the estate and creditors
- Potential tolling of IRS statutes of limitation

4. Harm

- Estate exposed to future assessments and penalties
- Creditors misled regarding final distributions
- Court deprived of complete tax posture
- Trustee's neutrality compromised

Why § 505(b) Aggravates the Breach Invoking § 505(b):

- Proves awareness of unresolved tax exposure
- Demonstrates intent to obtain a liability shield
- Without ensuring completeness

    Using § 505(b) without first curing known delinquent years is not diligence—it is evasion of duty.

IRS CRIMINAL-REFERRAL (FORM 3949-A) TRIGGER MAP

This invoice and filing posture satisfy multiple IRS referral criteria.

A. Willful Failure to File IRC § 7203

- Known requirement to file (2022–2024)
- Admission of non-filing
- Continued corporate activity

Trigger: YES

False or Misleading Statements IRC § 7206

- "Initial and Final Return" designation
- Contradicted by facts and 2026 filings

Trigger: YES

Aiding or Assisting Non-Compliance IRC § 6701

- Accountant knowingly prepared a return ignoring delinquent years
- Facilitated tax minimization without curing defects

Trigger: YES

Bankruptcy-Related Tax Evasion Indicators

- Capital-gain shielding
- Basis manipulation
- Substantive-consolidation ambiguity
- Reliance on § 505(b) without full disclosure
  Trigger: YES

This Court must respectfully review the false filings and taxes submitted and thus remitted to the US Treasury which is where the Court and its personnel derive their very pay checks and where they are expected to act upon the interests of the American People not just the interests of their buddies who are running around threatening to MURDER the WRONG Mike Nelson!

RESPECTFULLY with ALL CONSTITUTIONAL RIGHTS,



GENERAL MAIL DELIVERY in the name of the above herein signed @ BOSTON, Commonwealth of Massachusetts

**202-456-9451**
**A Mike Nelson**
**(Not That One)**