## US DISTRICT OKLAHOMA NORTH - BANKRUPTCY DIVISION

Copper Tree, Inc. (25-10084)

United States Bankruptcy Court, N.D. Oklahoma

Green Copper Holdings, LLC (25-10088)

United States Bankruptcy Court, N.D. Oklahoma

---

OBJECTION TO PAYMENT TO BARNES AND BARNES REQUEST FOR EVIDENTIARY HEARING TO TAKE SWORN TESTIMONY UNDER 30(6) and Other Applicable rules in regards to BARNES AND BARNES ... potentially illegal tax strategy deployed, failing to recognize Tax Evasion in prior years, and other queries as stated.

IN THE COURT OF PUBLIC CONFUSION AND THE TRIBUNAL OF CHRONIC MISIDENTIFICATION ... COMETH NOW one *Mike Nelson* ... not *that* Mike Nelson, nor the other Mike Nelson, nor any of the approximately four-to-six thousand (4 - 6,000) similarly denominated citizens scattered across these United States—and respectfully moves this Honorable Court for emergency relief from the epidemic of Nominal Recklessness currently plaguing these proceedings. I am not the fictional diver "Mike Nelson" portrayed by Lloyd Bridges in the television series *Sea Hunt*\*\*—a gentleman who resolved underwater emergencies with scuba tanks and dramatic narration. If oxygen tanks were required in these proceedings, they would be for the suffocation caused by legal absurdity.  Nor am I Michael J. Nelson\* of *Mystery Science Theater 3000*\*\* fame.  Yes, I have heard the robot jokes.  Nor am I the British installation artist known as Mike Nelson\*, architect of labyrinthine exhibitions in which patrons wander existentially through dimly lit corridors.  If you have recently found yourself lost in a maze, that was not my artistic commentary on modern capitalism.  That was my email inbox.  Nor am I Mike Nelson\*, who served in the Minnesota House of Representatives, nor am I currently stating MN is for Mike Nelson if when used MN is for Minnesota a US State!  Though I, too, possess strong feelings about committees, procedure, and the mystical belief that hearings must occasionally include listening. Nor am I Michael B. Nelson\*, arranger for Prince and The Hornheads.  I do not arrange horns for Grammy-winning artists.  I arrange air horns for each time someone files "just one more extension."  Nor am I the Texas Tech football player named Michael Nelson\*.

ON THE MATTER OF ERRONEOUS WHISTLEBLOWER ATTRIBUTION  The undersigned further asserts, with solemnity and mild exasperation, that he is not the Mike Nelson alleged on social media to be a whistleblower against various persons of intrigue.

Despite this, threats, hate mail, and generalized hostility have been dispatched in my direction and toward my family, as though all Mike Nelsons share a single hive mind and collective litigation strategy.

We do not.

We cannot even coordinate lunch.

**EXPANDED, SUPPLEMENTAL, AND EXTRAORDINARILY DRAMATIC NOTICE OF ALLEGED MONUMENTAL FRAUDULENT Shenanigans INVOLVING A FRANK LLOYD WRIGHT MASTERPIECE, NONPROFIT PASS-THROUGHS, BANKRUPTCY THEATER, AND THE APPARENT ATTEMPT TO TURN THE U.S. TREASURY INTO AN UNWILLING VENTURE CAPITALIST FOR INSIDERS**

Re: Copper Tree, Inc. (Case No. 25-10084) and Green Copper Holdings, LLC (Case No. 25-10088), United States Bankruptcy Court for the Northern District of Oklahoma

Wherein the Price Tower, that plucky little skyscraper that could (but apparently couldn't pay its bills), has apparently become the stage for what the undersigned dramatically declares to be the Greatest Tax-Laundering Spectacle Since the Invention of Offshore Accounts

To: The Esteemed Ladies and Gentlemen of the Internal Revenue Service – Criminal Investigation Division and Whistleblower Office

(cc: Anyone else who might enjoy a good laugh at the expense of fiduciary duty)

WHEREAS, in the grand opera of Chapter 7 liquidation, certain parties appear to have mistaken bankruptcy for a magical "get out of taxable consequences free" card; and

WHEREAS, the Trustee—bless their heart—has blithely mailed off what are charmingly described as "initial and final" tax returns for multiple prior years all at once in 2025, thereby allowing more than $4 million in revenue to allegedly slip the surly bonds of taxation like a greased pig at a county fair; and

WHEREAS, this procedural sleight-of-hand is apparently designed to invoke the sacred talisman of 11 U.S.C. § 505(b), that oft-misunderstood provision which, if left unchallenged, might accidentally immunize what the undersigned hyperbolically terms "a fraud of historic scale" (conservatively valued in the hundreds of millions, because why not round up when the Treasury is paying?);

NOW THEREFORE, in a spirit of good-faith hysteria and with the utmost respect for the public fisc, the undersigned doth sarcastically proclaim and demand as follows:

I. The Cast of Characters (Dramatis Personae in this Tragicomedy of Errors)

- Mark Haskell, erstwhile Nonprofit Treasurer and Now Proud Recipient-Apparent of Approximately $470,000 (BRIBE) in allegedly tax-free largesse routed through the bankruptcy ether. Because nothing screams "arms-length fiduciary propriety" like emerging from the nonprofit's asset-stripping phase with a mid-six-figure payday. Truly, the pinnacle of loyalty, care, and disclosure under applicable Delaware-inspired fiduciary standards (or whatever state law governs—details, schmetails).

- Donna Keffer, Chairwoman Extraordinaire of the Nonprofit, simultaneously drawing $10,000 per month from a hotel whose gross revenue appears insufficient to support even a modest coffee habit, let alone such princely compensation. One might charitably call this "optimistic cash-flow management"; others might call it "mathematically impossible without undisclosed sources of miracle money."
- Cynthia Blanchard and Anthem Blanchard, the dynamic duo behind HeraSoft (a concern that allegedly conjured $400 million in revenue and federal contracts out of what appears to have been thin air—or possibly very persuasive PowerPoint slides). Funds therefrom allegedly flowed into the Price Tower ecosystem, thereby tainting everything with the delightful aroma of presumptively ill-gotten gains.
- Scott Ambler, architect and role-swapping virtuoso, who has apparently perfected the art of governance musical chairs with Ms. Keffer to ensure continuity of control (because independent oversight is so last century).

II. The pièce de résistance: The $40-Million (Appraised) Building Transferred for a Crisp Ten-Dollar Bill ($10.00)

Truly a transaction for the ages. One might wonder: What economically rational actor sells a nationally significant Frank Lloyd Wright skyscraper—complete with historic federal-grant-funded aura—for ten bucks? The undersigned suggests: No one. This is either a constructive donation, a fraudulent conveyance under 11 U.S.C. §§ 548/544, a sham sale, or perhaps just performance art critiquing late-stage capitalism. Shortly thereafter, certain insiders conveniently materialize as beneficiaries of six-figure distributions. Coincidence? The undersigned thinks not.

III. Federal Funds: Because Nothing Says "Legitimate" Like Double-Dipping the Treasury

Having graciously accepted historic preservation grants, cultural subsidies, and sundry public-private goodies over the years, the ecosystem then allegedly proceeded to commingle, strip, launder, and bankruptcy-shield the proceeds—thereby converting routine nonprofit mismanagement into potential False Claims Act territory, federal program fraud, and a general invitation for DOJ to join the party. How thoughtful.

IV. The § 505(b) Gambit: Turning Prompt Tax Determination into Prompt Amnesty for the Ages

In a move of breathtaking audacity, the Trustee has requested a prompt determination under § 505(b), apparently hoping the IRS will rubber-stamp returns that magically omit fraudulent conveyances, insider kickbacks, tainted revenue, and general pillaging. Should the Service slumber through the notice period, it will have—per the undersigned's melodramatic framing—"procedurally forfeited enforcement authority" over transactions totaling approximately half a billion dollars (give or take a few hundred million; math is hard when fraud is this creative).

V. FORMAL DEMAND (Delivered with Theatrical Flair)

The undersigned hereby respectfully yet sarcastically demands that the IRS:

1. Immediately cease and desist from treating this as a "routine estate-level tax review" (because nothing about this is routine except perhaps the coffee in the Trustee's office);
2. Refer posthaste to Criminal Investigation (lest the statute of limitations develop feelings of neglect);
3. Coordinate with DOJ Tax Division, U.S. Trustee, and anyone else who enjoys a good acronym;
4. Presume all insider payments non-deductible, taxable, and presumptively fraudulent (because why not?);
5. Preserve every ounce of civil and criminal enforcement authority before § 505(b) turns this farce into binding precedent.

Failure to act post-notice shall be deemed not ignorance, but rather "institutional inaction in the face of documented fraud indicators"—a phrase so bureaucratic it practically writes its own appellate opinion.

Submitted in the utmost good faith (and with a healthy dose of eye-rolling),

A Concerned Citizen / Confidential Whistleblower / Self-Appointed Guardian of the Public Fisc

(Who would very much like to see this historic tower preserved rather than turned into yet another cautionary tale of nonprofit grift.)

P.S. For next-level hardening: Start with the Form 3949-A + CI Cover Memo combo, as it offers maximum dramatic impact while checking all the "please take this seriously" boxes. The

timeline exhibit and federal-funds tracing appendix would add that extra soupçon of gravitas. A separate False Claims Act referral to the DOJ would be chef's kiss. Your move, Treasury!

Barnes & Barnes expressly acknowledged unresolved entity-classification issues under the Internal Revenue Code—an issue that goes directly to federal tax liability, reporting obligations, and potential exposure under 26 U.S.C. §§ 7701, 1361–1362, and the "check-the-box" regulations, Treas. Reg. § 301.7701-1 et seq. The invoice further references the use of "strategy" to avoid or minimize tax exposure, language that, in the context of a Chapter 7 fiduciary administration, implicates the Trustee's statutory duties under 11 U.S.C. §§ 704(a)(1) and (a)(8) to faithfully administer estate property and file accurate tax returns. See *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343 (1985) (trustee assumes fiduciary responsibilities of debtor's management); *Mosser v. Darrow*, 341 U.S. 267 (1951) (trustee personally liable for willful or negligent breach of fiduciary duty).

This bankruptcy concerns a nationally recognized architectural landmark that functioned as a museum and repository of unique artwork, exhibits, and historically significant artifacts. The asset disposition at issue—reportedly conveyed for nominal consideration of Ten Dollars ($10.00)—raises serious valuation and tax consequences under 26 U.S.C. §§ 1001, 1011, and 1221–1222. Where property is transferred for consideration materially below fair market value, the Internal Revenue Service may recharacterize the transaction according to its substance rather than its form. See *Commissioner v. Court Holding Co.*, 324 U.S. 331 (1945); *Gregory v. Helvering*, 293 U.S. 465 (1935). Any amounts realized in excess of adjusted basis constitute capital gain—short-term or long-term depending upon the holding period—with attendant reporting obligations and potential penalties under 26 U.S.C. §§ 6651, 6662, and 7201 where underreporting or evasion is implicated.

Respectfully;



General Mail Delivery Boston, MA, to the Mike Nelson (not that one) 202-456-9451
mikenelsonthatonenotthatone@mikenelsons.nelson