FILED

2026 FEB 23 PM 1:20

**Price Tower / Related Nonprofits / Bankruptcy Estate Scam**

Copper Tree, Inc. (25-10084)

United States Bankruptcy Court, N.D. Oklahoma

Green Copper Holdings, LLC (25-10088)

United States Bankruptcy Court, N.D. Oklahoma

**COME NOW and WITH SO Bringeth the Queries to Be asked of BARNES & BARNES and MADE PURSUANT TO LAW that the Court should sui ponte see to it each and every query presented herein is informed upon the PUBLIC FEDERAL RECORD, as with this and other matters contained herein this Federal Bankruptcy case will be continually reopened as artifacts, artwork, one-of-a-kind works of art the only known pieces in the totality of the Corpus of works by Frank Lloyd Wright and Bruce Goff deserve constant reexamination.**

**SUPPLEMENTAL CROSS-EXAMINATION FOR EVIDENTIARY HEARING DEMANDED PURSUANT WITH RIGHT … AS NOTED by the Court**

<u>EXAMINATION:</u> Barnes & Barnes, Inc. & <u>Darren Barnes</u>

(Expanded to address § 505(b) use)

A. Knowledge of § 505(b) and Its Limits

1. You are familiar with 11 U.S.C. § 505(b), correct?

2. You understand that § 505(b) applies **only to the specific tax return submitted**, correct?

3. § 505(b) does **not** discharge liability for tax years that were **never filed**, correct?

4. § 505(b) does **not** cure an improperly sequenced or misleading return, correct?

---

## B. Prior-Year Non-Filing

5. Before preparing the 2025 Form 1120, you knew Copper Tree existed prior to 2025, correct?

6. You were aware that Ms. Blanchard stated no corporate returns had been filed, correct?

7. You did not prepare or file corporate returns for 2022, correct?

8. You did not prepare or file corporate returns for 2023, correct?

9. You did not prepare or file corporate returns for 2024, correct?

10. You did not advise the trustee that **those returns must be filed before seeking § 505(b) protection**, correct?

---

## C. "Initial and Final Return" Representation

11. Your invoice states: *"2025 Indicated as Initial and Final Return,"* correct?

12. That statement was included **without IRS confirmation**, correct?

13. You did not include any disclosure explaining the absence of prior-year filings, correct?

14. You agree that a return cannot be "initial" if the corporation existed and operated previously, correct?

### D. Contradiction With 2026 Filings

15. You prepared 2026 W-2s, correct?

16. You prepared payroll tax returns extending into 2026, correct?

17. A corporation issuing W-2s in 2026 is not terminated in 2025, correct?

18. That directly contradicts the "final return" designation, correct?

---

### E. Tax-Minimization Strategy vs. Compliance

19. You advised on offsetting capital gains with losses, correct?

20. You advised on cost-basis implications of debt assumption, correct?

21. These strategies reduce tax liability, correct?

22. You did not first require correction of delinquent filings, correct?

23. You did not warn the Court that § 505(b) would not protect missing years, correct?

---

### F. Candor and Risk

24. You understood this case involves allegations of insider misconduct, correct?

25. You understood heightened scrutiny applies to tax filings in such cases, correct?

26. You nevertheless allowed a return to be filed that omitted required years, correct?

(Stop.)

---

## II. TRUSTEE FIDUCIARY-BREACH ANALYSIS

(Expanded for § 505(b))

### A. Governing Duties

Under **11 U.S.C. § 704(a)**, a Chapter 7 trustee must:

- Collect and reduce property to money
- Be accountable for estate property
- Ensure lawful tax compliance
- Supervise professionals competently
- Make **full and accurate disclosures** to the Court

---

### B. Breach Elements (All Satisfied)

**1. Knowledge**

The trustee knew or should have known:

- The debtor corporation existed before 2025; in fact the Trustee DID KNOW and heard first person approximately one year ago @ meeting of creditors.

- Prior returns were not filed (by debtor's own admission), when questioned by the Trustee Cynthia Blanchard testified under oath to having "never" filed a

- Barnes & Barnes expressly acknowledged unresolved entity-classification issues under the Internal Revenue Code—an issue that goes directly to federal tax liability, reporting obligations, and potential exposure under 26 U.S.C. §§ 7701, 1361–1362, and the "check-the-box" regulations, Treas. Reg. § 301.7701-1 et seq. The invoice further references the use of "strategy" to avoid or minimize tax exposure, language that, in the context

of a Chapter 7 fiduciary administration, implicates the Trustee's statutory duties under 11 U.S.C. §§ 704(a)(1) and (a)(8) to faithfully administer estate property and file accurate tax returns. See *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343 (1985) (trustee assumes fiduciary responsibilities of debtor's management); *Mosser v. Darrow*, 341 U.S. 267 (1951) (trustee personally liable for willful or negligent breach of fiduciary duty).

- This bankruptcy concerns a nationally recognized architectural landmark that functioned as a museum and repository of unique artwork, exhibits, and historically significant artifacts. The asset disposition at issue—reportedly conveyed for nominal consideration of Ten Dollars ($10.00)—raises serious valuation and tax consequences under 26 U.S.C. §§ 1001, 1011, and 1221–1222. Where property is transferred for consideration materially below fair market value, the Internal Revenue Service may recharacterize the transaction according to its substance rather than its form. See *Commissioner v. Court Holding Co.*, 324 U.S. 331 (1945); *Gregory v. Helvering*, 293 U.S. 465 (1935). Any amounts realized in excess of adjusted basis constitute capital gain—short-term or long-term depending upon the holding period—with attendant reporting obligations and potential penalties under 26 U.S.C. §§ 6651, 6662, and 7201 where underreporting or evasion is implicated.
- Moreover, to the extent the property was previously held or operated by a § 501(c)(3) organization, transactions conferring excess economic benefit upon insiders may trigger intermediate sanctions under 26 U.S.C. § 4958, including excise taxes of 25% and, if uncorrected, an additional 200% penalty on the excess benefit. See also Treas. Reg. § 53.4958-1 et seq. Transfers of charitable assets to insiders for inadequate consideration may also constitute self-dealing under 26 U.S.C. § 4941 (if a private foundation context applies), further compounding federal tax exposure.
- In light of the nominal purchase price and the alleged insider relationships, the Court should scrutinize whether the transaction reflects bona fide arm's-length consideration or constitutes a constructive distribution, fraudulent transfer (11 U.S.C. §§ 548, 544), or excess benefit transaction subject to federal excise penalties. See *In re Taneja*, 743 F.3d 423 (4th Cir. 2014) (trustee obligated to maximize value and avoid improvident transfers); *In re Roco Corp.*, 701 F.2d 978 (1st Cir. 1983) (substance of transaction governs over form in bankruptcy context).

- Accordingly, any "strategy" designed to suppress, defer, or recharacterize taxable gain arising from the disposition of nationally significant assets must be examined under both the Bankruptcy Code's fiduciary standards and the Internal Revenue Code's anti-abuse doctrines, including substance-over-form, step-transaction, and economic-substance principles (26 U.S.C. § 7701(o)). The record, as presently described, presents material questions regarding capital-gain realization, insider benefit, fiduciary compliance, and exposure to substantial civil—and potentially criminal—tax penalties.

- § 505(b) only applies to filed periods, what the Court is allowing here is a breach of ethics, morals and common sense, allowing the Trustee to essentially play "God" deciding what taxes to pay and which not to or which taxes to use aggressive "strategies" is equivalent of structure tax evasion demanding the harshest possible sentence.

---

## 2. Breach of Duty

The trustee:

- Approved preparation of **only one 'favorable' year (2025)**
- Allowed it to be labeled "initial and final" (questionable at best)
- Failed to require filing of 2022–2024 returns
- Invoked § 505(b) **without curing antecedent non-compliance**

This is **not discretion. It is dereliction.**

---

## 3. Causation

The trustee's failure resulted in:

- Misleading filings before the Court

- False appearance of tax finality
- Continued exposure of the estate and creditors
- Potential tolling of IRS statutes of limitation

## 4. Harm

- Estate exposed to future assessments and penalties
- Creditors misled regarding final distributions
- Court deprived of complete tax posture
- Trustee's neutrality compromised

## C. Why § 505(b) Aggravates the Breach

Invoking § 505(b):

- Proves awareness of unresolved tax exposure
- Demonstrates intent to obtain a liability shield
- Without ensuring completeness

**Using § 505(b) without first curing known delinquent years is not diligence—it is evasion of duty.**

## D. Remedies Available

- Disallowance or disgorgement of accounting fees

- Surcharge or removal of trustee

- Appointment of independent tax examiner

- Referral to U.S. Trustee Program

- Preservation of tax-authority referral rights

## III. IRS CRIMINAL-REFERRAL (FORM 3949-A) TRIGGER MAP

This invoice and filing posture satisfy multiple **IRS referral criteria**.

### A. Willful Failure to File

**IRC § 7203**

- Known requirement to file (2022–2024)
- Admission of non-filing
- Continued corporate activity

**Trigger: YES**

### B. False or Misleading Statements

**IRC § 7206**

- "Initial and Final Return" designation
- Contradicted by facts and 2026 filings

**Trigger: YES**

### C. Aiding or Assisting Non-Compliance

**IRC § 6701**

- Accountant knowingly prepared a return ignoring delinquent years
- Facilitated tax minimization without curing defects

**Trigger: YES**

### D. Bankruptcy-Related Tax Evasion Indicators

- Capital-gain shielding
- Basis manipulation
- Substantive-consolidation ambiguity
- Reliance on § 505(b) without full disclosure

**Trigger: YES**

### E. Core Narrative (Drop-In Language)

*"Professionals prepared and submitted a corporate tax return falsely labeled as the 'initial and final return' while knowingly omitting multiple required prior years, and then sought prompt-determination protection under 11 U.S.C. § 505(b) despite that statute's inapplicability to missing years."*

## IV. COURT-READY OBJECTION & OVERSIGHT MEMORANDUM

*(Integrated § 505(b) Version)*

## TITLE

Objection to Professional Fee Application, Request for Oversight Review, and Reservation of Tax-Compliance Remedies

---

### I. Introduction

The accounting fees requested by Barnes & Barnes arise from work that **mischaracterized the debtor's tax posture, ignored mandatory prior-year filings, and attempted to invoke § 505(b) protections that cannot legally apply.**

---

### II. Defective Filing Sequence

- Copper Tree, Inc. existed and operated prior to 2025
- Returns for 2022–2024 were required and not filed
- 2025 was improperly labeled "initial and final"

This alone renders the work **non-compliant.**

---

### III. Misuse of § 505(b)

The trustee's request for prompt determination under 11 **U.S.C. § 505(b)**:

- Applies **only** to the specific year filed
- Does **not** cure missing years
- Does **not** validate a misleading return

- Does **not** shield the trustee from liability for omissions

**§ 505(b) is a procedural closure mechanism—not a retroactive absolution for non-filing.**

---

### IV. Contradictory Professional Conduct

- Preparation of 2026 W-2s and payroll filings
- Directly contradicts "final return" claim
- Undermines credibility of the accounting work

---

### V. Trustee Oversight Failure

The trustee:

- Approved incomplete professional work
- Relied on defective filings
- Sought § 505(b) protection prematurely
- Failed to disclose unresolved tax years to the Court

This constitutes **breach of fiduciary duty**.

---

### VI. Relief Requested

The Court should:

1. **Deny or disgorge** Barnes & Barnes fees

2. Order preparation and filing of all delinquent returns

3. Appoint an independent tax examiner

4. Refer the matter to the U.S. Trustee Program

5. Preserve rights of the

    - **Internal Revenue Service** and

    - **Oklahoma Tax Commission**

---

### VII. Reservation of Rights

All rights are expressly reserved relating to:

- Tax penalties

- Professional misconduct

- Fiduciary breach

- Referral to taxing authorities

---

*"The Court should not permit professional compensation for work that narrows the truth, obscures statutory obligations, and substitutes tax engineering for compliance—particularly where the trustee then seeks § 505(b) protection without first ensuring the estate's tax history is complete and accurate."*