IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| IN RE:<br><br>**GREEN COPPER HOLDINGS, LLC,**<br><br>**Debtor,**<br><br>**COPPER TREE, INC.,**<br><br>**Debtor,**<br><br>**THE INN AT PRICE TOWER INC.,**<br><br>**Debtor.** | Case No. 25-10088-T<br>Chapter 7<br><br>Substantively consolidated with<br>Case No. 25-10084-T |

Filed/Docketed
Feb 27, 2026

## MEMORANDUM OPINION

THIS MATTER comes before the Court pursuant to Trustee's Objection to (i) Claim No. 2-2 Filed in Copper Tree Inc., and (ii) Claim No. 1-2 filed in Green Copper Holdings, LLC, . . . in the Amount of $269,554.69 and $285,107.88 Respectively (the "Objection"),[1] filed by Patrick J. Malloy ("Trustee"), the chapter 7 trustee appointed to administer this case; the Response,[2] filed by Cynthia Diane Blanchard ("Blanchard"); Notice of Intent to Rest on the Docket for Claim 1-2,[3] filed by Blanchard; Claimant's Designation of Record and Notice of Non-Appearance Regarding January 12, 2026 Claim Hearing,[4] filed by Blanchard; Notice of Filing Previously-Produced Discovery in Support of Claimant's Designation of Record,[5] filed by Blanchard; Trustee's Brief in Support of the Objection,[6] filed by Trustee; and Notice of Non-Appearance and Continuing

---

[1] ECF No. 144.
[2] ECF No. 202.
[3] ECF No. 357.
[4] ECF No. 391.
[5] ECF No. 396.
[6] ECF No. 401.

Objection,[7] filed by Blanchard. The Court held a hearing in this contested matter on January 12, 2026 (the "Hearing"), after which the Court took the Objection and related matters under advisement. The following findings of fact and conclusions of law are made pursuant to Federal Rule of Civil Procedure 52, made applicable to this contested matter by Federal Rules of Bankruptcy Procedure 7052 and 9014.[8]

## Jurisdiction

The Court has jurisdiction over this bankruptcy case pursuant to 28 U.S.C. § 1334(b).[9] Venue is proper pursuant to 28 U.S.C. § 1409. Reference to the Court of the bankruptcy case is proper pursuant to 28 U.S.C. § 157(a). Matters concerning allowance or disallowance of claims against the estate are core proceedings under 28 U.S.C. § 157(b)(2)(B).

## Findings of Fact

Green Copper Holdings, LLC ("GCH") and Copper Tree, Inc. ("Copper Tree") each filed voluntary petitions for relief under chapter 7 of the United States Bankruptcy Code on January 22, 2025 (the "Petition Date").[10] The cases were substantively consolidated under Case No. 25-10088 on June 11, 2025. The Court later substantively consolidated an entity named The Inn at Price Tower Inc. (the "Inn"), a wholly owned subsidiary of Copper Tree, with the consolidated debtors under Case No. 25-10088 (hereinafter referring to all three entities as the "Debtors").

Included among the assets of this bankruptcy estate is a building and contents located in Bartlesville, Oklahoma, known as the Price Tower (the "Price Tower") designed by Frank Lloyd

---

[7] ECF No. 404.
[8] Unless otherwise noted, all references to "Rules" are to the Federal Rules of Bankruptcy Procedure, as amended and effective December 1, 2025.
[9] Unless otherwise noted, all statutory references are to sections of the United States Bankruptcy Code, 11 U.S.C. § 101 et seq.
[10] Case No. 25-10088-T and 25-10084-T, respectively. Unless otherwise noted, all references to ECF document or claim numbers are to Case No. 25-10088.

Wright, which since 1974 has been included in the National Register of Historic Places, and since 2007 has been included on the United Nations Environment, Scientific and Cultural Organization ("UNESCO") list of World Heritage Sites. On May 1, 2025, this Court authorized the sale of the Price Tower, inclusive of real and tangible personal property located therein, to a third party. The sale generated funds that are being administered and distributed by Trustee for the benefit of creditors and the estate. Among the claimants for those funds is Blanchard.

Blanchard has opted to proceed without the benefit of legal counsel, or pro se, in this matter. Most of these facts regarding Blanchard are drawn from pleadings and documents she filed in this case in support of her claim. The Court takes judicial notice of their filing and contents.[11] The majority of the facts presented herein are provided for background and context to the reader, but their truth or falsity are not critical to the outcome of the issues before the Court. Early in this litigation, Blanchard indicated that she intended to "rest on the docket" with respect to her claim, that she would submit all arguments in writing, and that she would not appear at any further hearings in this matter.[12] This is, of course, her right. At a hearing held in this matter on September 2, 2025, the Court stated as much. Blanchard has since indicated that she "relied" on the Court's statement that she would be allowed to rest on the docket.[13] The Court is unsure what this statement means. The Court cannot require a claimant to participate in the claims litigation process or to provide evidentiary support for their claim. However, Blanchard's decision to stand on the written record does not operate to deny an objecting party the opportunity to present evidence at a properly noticed hearing.[14]

---

[11] *See* Fed. R. Evid. 201.
[12] See also ECF Nos. 391, 404.
[13] *See* ECF No. 384, at 26 ¶ 19.
[14] Rule 3007.

Blanchard is the founder and majority shareholder of Copper Tree. On the Petition Date, Blanchard held approximately 90.48% of the equity of Copper Tree. Blanchard served as Chief Executive Officer of Copper Tree from its formation in 2022 until the Petition Date. She also served as a managing member of GCH from its formation in 2022 until the Petition Date, and as President/Corporate Officer of the Inn from its formation in 2022 until the Petition Date. She took no salary or other form of compensation for her roles with any of the Debtors.

Blanchard filed claims in both the GCH and Copper Tree cases prior to their consolidation. The parties have agreed that the claims are duplicative and that Claim No. 1-2, filed in Case No. 25-10088, is the operative claim (the "Blanchard Claim").[15] The Blanchard Claim is filed on Official Form 410 and seeks $285,107.88 from the estate as an unsecured, non-priority claim, noting the basis for the claim is a "loan."[16] Attached to the Blanchard Claim is an agreement purportedly "made and entered into as of" September 30th, 2022 (the "Loan Agreement"), between Blanchard, individually, as "Lender" and Copper Tree, signed by Blanchard as CEO, as "Borrower."[17] The signatures on the Loan Agreement are undated. The operative terms of the Loan Agreement are as follows:

---

[15] *See* Case No. 25-10084 ECF Claim No. 2-2 Pt. 2.
[16] *See* ECF Claim No. 1-2.
[17] *Id.* Pt. 2, at 1.

**1. Loan Terms**

**1.1 Loan Amount.** This Agreement establishes an open-ended loan facility under which Borrower may borrow and repay funds from time to time. The total outstanding principal shall not exceed an aggregate amount determined and recorded in the Parties' bookkeeping software, reconciled with the Parties' bank account records.

**1.2 Disbursement.** Loan disbursements shall be made by Lender to Borrower upon mutual agreement of the Parties and recorded in the Parties' bookkeeping software.

**1.3 Interest Rate.** The Loan shall bear interest at the rate of 5% per annum, calculated on the basis of a 365-day year and the actual number of days elapsed.

**1.4 Repayment Terms.**

**(a) Lump-Sum Repayment.** Borrower shall repay the full outstanding principal and all accrued interest in a single lump sum upon mutual agreement or on demand, provided that Lender gives Borrower at least 30 days written notice of the repayment date.

**(b) Loan Reconciliation.** Loan balances and accrued interest shall be reconciled periodically based on records maintained in the Parties' bookkeeping software and corresponding bank account statements.

**1.5 Prepayment.** Borrower may prepay all or part of the outstanding Loan balance at any time without penalty, provided that any prepayment is accompanied by all accrued interest as of the prepayment date.

. . .

**4. Miscellaneous**

**4.1 Governing Law.** This Agreement shall be governed by and construed in accordance

with the laws of the State of Delaware.[18] No other supporting documents are attached to the Blanchard Claim.[19]

Attached to the proof of claim filed by Blanchard in the Copper Tree case,[20] is a spreadsheet containing entries dated between February 27, 2023, and January 21, 2025 (the "Spreadsheet").[21] The Spreadsheet does not contain any title, label, or certification regarding its creation or maintenance. At times referred to as the QuickBooks Online Transaction Log[22] or the Loan Ledger,[23] the Spreadsheet has been described by Blanchard as a record of deposits and withdrawals between her and the individual Debtors.[24] The Court accepts the Spreadsheet as a document submitted by Blanchard in support of her claim. Beyond that, the Court gives the Spreadsheet very little evidentiary weight. No party has presented evidence, either by testimony or certification, regarding how, when, or by whom the Spreadsheet was created and maintained. Without evidence of these foundational facts, the Spreadsheet does not meet the criteria to qualify for an exception under Federal Rule of Evidence 803(6) as a business record.

At the Hearing, Trustee offered the testimony of Donna Keffer ("Keffer") regarding the operations and business affairs of Debtors. Both before and after the acquisition of the Price Tower by Debtors, Keffer served as Executive Director of the Price Tower Arts Center and as the General Manager of the Inn. After the acquisition of the Price Tower, Keffer was involved in the financial affairs of Debtors, including writing checks and reviewing financial statements, and was aware of

---

[18] *Id*. at 2.
[19] *See infra* note 21.
[20] *See* Case No. 25-10084 ECF Claim No. 2-1 Pt. 2.
[21] *Id. See also* Trustee's Ex. No. 5. For purposes of this proceeding, the Court will treat both the Loan Agreement and the Spreadsheet as if they had been attached to the Blanchard Claim in Case No. 25-10088.
[22] *See* ECF No. 202, Ex. C at 15.
[23] ECF No. 396-1 at 6.
[24] *Id*.

Debtors' monthly income and expenses. According to Keffer, when one of the Debtors was in need of funds, she would reach out to Blanchard, who would then write a check to be deposited in the appropriate business account. The requests for funds made by Keffer were generally made on an emergency basis for the payment of payroll, outstanding bills, and debt. Keffer was not aware of any long-term planning or regularity of the funds advanced by Blanchard. At no time during her tenure with Debtors or the Price Tower was Keffer aware of the Loan Agreement or any promissory notes between Blanchard and any of the Debtor entities.

Keffer testified that she had not seen any supporting documents, such as cancelled checks or wire transfers, related to the entries on the Spreadsheet. Keffer was not aware of any internal corporate documents kept by Debtors that recorded interest due on the funds advanced by Blanchard. Although Keffer indicated some familiarity with the Spreadsheet, she did not testify whether it was a document kept during the regular course of business of Debtors. Keffer testified that despite making several withdrawals of funds from Debtors, Blanchard did not indicate that those funds were repayment of a loan; nor did Blanchard make any formal demand for repayment of the advanced funds. Keffer testified that she was not aware of any "aggregate amount determined and recorded in the Parties' bookkeeping software," as described in the Loan Agreement, or of any efforts to reconcile a loan from Blanchard with the bank account records of Debtors.[25]

Although Blanchard did not introduce evidence or testify at the Hearing, Trustee offered documents filed by Blanchard in this case, which the Court admitted as evidence.[26] The statements contained in those documents may be considered by the Court when offered against Blanchard by

---

[25] *See* Case No. 24-10088 ECF Claim No. 1-2 Pt. 2, at 1, § 1.1.
[26] Trustee's Ex. 2 (ECF No. 396 with attachments).

the Trustee.[27] In addition to the Spreadsheet, Trustee introduced a copy of responses by Blanchard to interrogatories issued by Trustee during the discovery phase of this contested matter (the "Blanchard Responses").[28] In the Blanchard Responses, Blanchard asserts her belief that all advances she made to Debtors were loans. Blanchard describes the process of making advances to Debtors based on requests for funding made by accounting personnel.[29] Blanchard indicates that her loan balance was reflected in the Debtors' monthly financial statements and debt schedules, although no evidence of these records was provided.[30]

At the Hearing, Trustee presented a document titled "Price Tower Itemized List of Debt Owed," dated as of March 6, 2024 (the "Debt Schedule").[31] Keffer testified that the Debt Schedule was a business record of Debtors that was prepared monthly, was kept in the ordinary course of Debtors' business, and reflected all debt owed by Debtors. Keffer stated the Debt Schedule was a record used by Debtors that was presented to potential lenders and investors in Blanchard's presence to solicit additional capital for business operations. The Debt Schedule shows the total liability of Debtors on March 6, 2024, including disputed liabilities, is $1,505,710.68. Notably, there is no mention of Blanchard anywhere on the Debt Schedule, either as a vendor, wage or contract laborer, loan creditor, disputed liability, or otherwise.

To the extent the "Conclusions of Law" contain any items which should more appropriately be considered "Findings of Fact," such items are incorporated herein by this reference.

---

[27] Fed. R. Evid. 801(c), (d)(2)(A).
[28] Trustee's Ex. 2, at 2-5 (ECF No. 396-1).
[29] *Id.* at 2-7 to -8 (Response to Interrogatory No. 5).
[30] *Id.* at 2-9 (Response to Interrogatory No. 7).
[31] Trustee's Ex. 4.

**Conclusions of Law**

A. *The Prima Facie Effect of Proof of Claim and Burdens of Proof*

Section 101(5) of the United States Bankruptcy Code defines a "claim" to be a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured[.]"[32] A "creditor" is defined as an "entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor[.]"[33] Section 501 provides that "[a] creditor . . . may file a proof of claim."[34] Section 502 states that a claim filed under § 501 is deemed allowed unless a party in interest objects.[35] That section also provides that upon such objection, after notice and a hearing, the court shall determine the amount of the claim and allow it in that amount, except in nine specifically enumerated situations.[36] Courts have no discretion to disallow claims for reasons beyond those stated in § 502(b)(1)–(9).[37] Section 502(b)(1), relevant here, states that the court shall allow a claim, "except to the extent that—such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured[.]"[38]

In addition to the Code provisions cited above, the Federal Rules of Bankruptcy Procedure also govern the filing of proofs of claim. Rule 3001(a) tells us that "[a] proof of claim is a written

---

[32] § 101(5)(A).
[33] § 101(10)(A).
[34] § 501(a).
[35] § 502(a).
[36] § 502(b).
[37] *In re Aerospace Eng'g & Support, Inc.*, 662 B.R. 168, 178-79 (Bankr. D. Utah 2024); *In re Cluff*, 313 B.R. 323, 331 (Bankr. D. Utah 2004), *aff'd sub nom. Cluff v. eCast Settlement*, No. 2:04-CV-978, 2006 WL 2820005 (D. Utah Sept. 29, 2006).
[38] § 502(b)(1).

9

statement of a creditor's claim. It must substantially conform to Form 410."[39] Rule 3001(c) goes on to require that when a claim is based on a writing, "the creditor must file a copy with the proof of claim."[40] Rule 3001(f) provides the evidentiary effect of a properly filed proof of claim by stating that "[a] proof of claim signed and filed in accordance with these rules is prima facie evidence of the claim's validity and amount."[41] Prima facie evidence of a claim creates a rebuttable presumption of its validity—it is sufficient to establish a fact or raise a presumption *unless* contradictory evidence is produced to disprove or rebut the initial claim.[42] If no party objects to the proof of claim, the claim may be allowed as filed.[43] If a party in interest objects, the court, after notice to the parties and an opportunity for hearing, will make a determination of the validity and amount of the claim.[44] The objecting party will bear the initial burden of production to overcome the presumption of validity.[45] The objector must present evidence of probative force equal to that of the allegations contained in the proof of claim.[46] If the objecting party raises sufficient evidence to cause the court to question the validity or amount of the claim, the burden then shifts back to the claimant, who must present sufficient evidence to prove, by a preponderance of the evidence, that it holds a valid claim against the bankruptcy estate.[47]

---

[39] Rule 3001(a).
[40] Rule 3001(c).
[41] Rule 3001(f).
[42] *Prima Facie Evidence*, Black's Law Dictionary (12th ed. 2024).
[43] § 502(a).
[44] § 502(b); Rule 3007.
[45] *In re Broadband Wireless Int'l Corp.*, 295 B.R. 140, 145 (10th Cir. BAP 2003) (citing *In re Geneva Steel Co.,* 260 B.R. 517, 524 (10th Cir. BAP 2001), *aff'd*, 281 F.3d 1173 (10th Cir. 2002).
[46] *Id.*; *Wright v. Holm (In re Holm)*, 931 F.2d 620, 623 (9th Cir. 1991) (citing 3 L. King, *Collier on Bankruptcy* § 502.02, at 502–22 (15th ed. 1991)).
[47] *In re Broadband Wireless*, 295 B.R. at 145 (citing *In re Geneva Steel Co.*, 260 B.R. at 524); *Agricredit Corp. v. Harrison (In re Harrison)*, 987 F.2d 677, 680 (10th Cir. 1993); *In re Aerospace Eng'g*, 662 B.R. at 179.

B. *Blanchard Claim as Prima Facie Evidence*

The Blanchard Claim is properly filed on Official Form 410, indicates GCH owes Blanchard an unsecured debt based on a "loan," and is executed by Blanchard in her personal capacity.[48] The Loan Agreement, which is the writing upon which Blanchard bases her claim, is attached.[49] In addition, the Court considers the Spreadsheet as if it were attached to the Blanchard Claim, given the agreement between Blanchard and Trustee to treat the Blanchard Claim as the operative claim. Together these documents satisfy the requirement of Rule 3001(c) that a claim that is based on a writing include a copy of that writing. While the substance and legal effect of the Blanchard Claim are the subject of the Objection, the Court finds it is sufficient to serve as prima facie evidence of Blanchard's claim against the estate. As a result, the Trustee bears the initial burden of production to rebut the presumption of validity of the Blanchard Claim.

C. *Trustee's Objection and Burden of Production*

Trustee raises several evidentiary challenges to the Blanchard Claim, but the discussion of one will suffice.[50] Trustee offered the Debt Schedule and Keffer's testimony that it was kept as a business record evidencing the total debt owed by Debtors to their creditors, as loans, trade debt, deferred salaries, or disputed liabilities, as of March 6, 2024. The Debt Schedule is credible evidence that Debtors did not treat Blanchard's advances as a loan or debt as of March 6, 2024. This evidence directly contradicts the supporting documents submitted by Blanchard. The Loan Agreement suggests advances made by Blanchard to Debtors after September 30, 2022, would be

---

[48] Trustee's Ex. 1.
[49] Trustee's Ex. 1-4.
[50] In addition to the concerns regarding the Spreadsheet, discussed *supra*, Trustee also challenges the validity of the Loan Agreement, based on the fact that the signatures are not dated or notarized, calling into question when the document was actually signed. Based on the resolution of this matter, the Court need not address these issues.

11

treated as a loan; the Spreadsheet shows that as of March 6, 2024, the balance of Blanchard's unrepaid advances to Debtors was $191,608.69. The Debt Schedule, at a minimum, raises serious doubts whether Debtors considered the advances made by Blanchard to be debt, and whether they were treated as such by Debtors and Blanchard in their pre-bankruptcy business dealings. The Debt Schedule, along with Keffer's testimony, is sufficient to cause the Court to doubt the veracity of the allegations contained in the Blanchard Claim. The Court finds the Trustee has met his burden of production to shift the burden of going forward to Blanchard.[51]

D. *Blanchard's Burden of Persuasion to Prove Validity and Amount of Claim*

The burden of persuasion lies with Blanchard to show, by a preponderance of evidence, that she holds a valid, enforceable claim against Debtors in an amount certain.[52] Under Delaware law, made applicable to this case under the Loan Agreement, "a party seeking to enforce a contract bears the burden of proving the existence of a contract by a preponderance of the evidence. The elements necessary to prove the existence of an enforceable contract are: (1) the intent of the parties to be bound; (2) sufficiently definite terms; and (3) consideration."[53] "Whether a party manifested an intent to be bound is a question of fact."[54] The Debt Schedule and the testimony of Keffer have raised serious doubts in the mind of the Court whether the signatures on the Loan Agreement and

---

[51] *In re Harrison*, 987 F.2d at 680 ("If objection is made to the proof of claim, the creditor has the ultimate burden of persuasion as to the validity and amount of the claim."); *Redmond v. Jenkins (In re Alternate Fuels, Inc.)*, 789 F.3d 1139, 1153 (10th Cir. 2015).

[52] *In re Harrison*, 987 F.2d at 680.

[53] *REM OA Holdings, LLC v. N. Gold Holdings, LLC*, No. 2022-0582, 2023 WL 6143042, at *26 (Del. Ch. Sept. 20, 2023). Although no party has raised the issue, the Court will assume the law of Delaware applies to the validity of the Loan Agreement based on its choice of law provision. *See Dang v. UNUM Life Ins. Co. of Am.*, 175 F.3d 1186, 1190 (10th Cir. 1999) ("A federal court adjudicating state law claims must apply the forum state's choice of law principles."); *SFF-TIR, LLC v. Stephenson*, 250 F. Supp. 3d 856, 1026 (N.D. Okla. 2017) ("In Oklahoma, the state choice-of-law rule for contracts is that the Oklahoma courts will enforce a contract's choice-of-law clause whenever that choice-of-law clause is valid under ordinary Oklahoma contract law principles.").

[54] *Eagle Force Holdings, LLC v. Campbell*, 235 A.3d 727, 735 (Del. 2020).

their subsequent course of dealing indicated an intent of the parties to be bound by its terms. Without proof of the parties' intent to be bound by the Loan Agreement, the Court cannot find it is an enforceable contract. The Court also finds that the Spreadsheet lacks sufficient indicia of trustworthiness for it to be considered credible evidence of the amount Blanchard advanced to Debtors. In the absence of credible evidence regarding the creation and maintenance of the Spreadsheet, its contents are of little evidentiary value. Even if the Court were to find the Loan Agreement was an enforceable contract, the Court has no credible evidence on which to determine the amount of her claim. The Court finds Blanchard has not met her burden to prove she holds a valid claim against the estate. As a result, the Blanchard Claim must be disallowed pursuant to § 502(b)(1).[55]

E. *Recharacterization of Debt as Equity*

**Conclusion**

The Trustee's Objection is sustained. Claim No. 1-2, in Case No. 25-10088-T, filed by Cynthia Diane Blanchard, is disallowed.[56] A separate judgment consistent with this Memorandum Opinion is entered concurrently herewith.

Dated this 27th day of February, 2026.

BY THE COURT:

PAUL R. THOMAS, CHIEF JUDGE
UNITED STATES BANKRUPTCY

---

[55] Trustee also requests that if the Court finds Blanchard holds a valid claim, that any advances made to Debtors be "recharacterized" as equity contributions. *In re Alternate Fuels*, 789 F.3d at 1147 ("The practical effect of recharacterizing a putative debt claim as an equity interest is subordination, since a corporation repays capital contributions only if and when it has satisfied all other obligations.") (citing *In re AutoStyle Plastics, Inc.*, 269 F.3d 726, 749 (6th Cir. 2001)). While the Court acknowledges that it has the power pursuant to § 105(a) to recharacterize putative debt as equity, it does not find cause to pursue that route in this case. *In re Alternate Fuels*, 789 F.3d at 1146. *See also Sender v. Bronze Group, Ltd. (In re Hedged-Invs. Assocs., Inc.)*, 380 F.3d 1292, 1297 (10th Cir. 2004) (adopting 13 factor test for recharacterization); *Sinclair v. Barr (In re Mid–Town Produce Terminal, Inc.)*, 599 F.2d 389, 392-94 (10th Cir. 1979) (adopting procedure for recharacterization). In the absence of a valid claim, there is nothing for the Court to recharacterize.

[56] For the avoidance of doubt, the corresponding order will also disallow Blanchard's claim in Case No. 25-10084-T.